1   Rosemary M. Rivas (State Bar No. 209147)
    Email: rrivas@zlk.com
2   **LEVI & KORSINSKY, LLP**
    44 Montgomery Street, Suite 650
3   San Francisco, California 94104
    Telephone: (415) 291-2420
4   Facsimile: (415) 484-1294

5   Donald J. Enright (admitted *pro hac vice*)
    Email: denright@zlk.com
6   **LEVI & KORSINSKY, LLP**
    1101 30th St., NW, Ste. 115
7   Washington, DC 20007
    Telephone: (202) 524-4292
8   Facsimile: (202) 333-2121

9   Eduard Korsinsky (to be admitted *pro hac vice*)
    Email: ek@zlk.com
10  **LEVI & KORSINSKY, LLP**
    30 Broad Street, 24th Floor
11  New York, New York 10004
    Telephone: (212) 363-7500
12  Facsimile: (212) 636-7171

13  *Attorneys for Movants Nicolas Andreasson,*
    *Paul Martin, and Richard Reckenbeil*

14

15              **UNITED STATES DISTRICT COURT**

16          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17                  **SAN FRANCISCO DIVISION**

18  GGCC, LLC, an Illinois Limited Liability        Case No. 3:17-cv-06779-RS
    Company, Individually and on Behalf of All
19  Others Similarly Situated,                      **THE TEZOS INVESTOR GROUP'S**
                                                    **MEMORANDUM OF POINTS AND**
20                  Plaintiff,                      **AUTHORITIES IN OPPOSITION TO THE**
                                                    **COMPETING MOTIONS FOR LEAD**
21          v.                                      **PLAINTIFF AND APPROVAL OF COUNSEL**

22  DYNAMIC LEDGER SOLUTIONS, INC., a
    Delaware Corporation, TEZOS STIFTUNG, a
23  Swiss Foundation, KATHLEEN BREITMAN,            Date:    March 1, 2018
    an Individual, and ARTHUR BREITMAN, an          Time:    1:30 p.m.
24  Individual,                                     Judge:   Hon. Richard Seeborg
                                                    Crtrm.:  3, 17th Floor
25                  Defendants.

26

27

28
                                                    Case No. 3:17-cv-06779-RS

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      STANDARDS OF LAW ......................................................................................... 2

II.     THE TEZOS INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF............. 3

        A.     Anvari Is Not Eligible for Consideration.................................................. 3

                1.     Anvari Filed Late ...................................................................... 3

                2.     Anvari Submitted a Deficient PSLRA Certification.................... 6

                3.     Anvari's Choice of Counsel Evidences His Inadequacy to Serve as Class Representative .............................................. 6

        B.     Trigon Is Subject to Unique Defenses and Filed a Deficient PSLRA Certification and Is Thus Not the Presumptive Most Adequate Plaintiff .................................................. 9

                1.     Trigon Is Subject to Disqualifying Unique Defenses ......................................... 9

                2.     Trigon Submitted a Deficient PSLRA Certification ........................................ 12

        C.     The Gaviria Group Is Ineligible for Appointment as Lead Plaintiff............................ 14

                1.     Gaviria, Silver Miller, and Wites Law Firm and Are Inadequate to Represent the Interests of the Class ................................................ 14

                        a.     Gaviria's, Silver Miller's, and Wites Law Firm's Failure to Comply With the PSLRA ................................................ 15

                        b.     Gaviria's, Silver Miller's, and Wites Law Firm's Deficient Prosecution of the *Gaviria* Florida Action ................................................ 15

                2.     The Gaviria Group Fails to Establish Direct Cohesiveness Between Its Members ................................................ 16

        D.     The Tezos Investor Group Has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23....................................... 18

III.    ALL RELATED ACTIONS SHOULD BE CONSOLIDATED ............................................. 21

CONCLUSION................................................................................................................ 22

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Bolling v. Gold*,
   2015 U.S. Dist. LEXIS 151867 (W.D. Wash. Nov. 9, 2015) ...................................8, 9

5

6

*Carson v. Clarent Corp.*,
   2001 U.S. Dist. LEXIS 22059 (N.D. Cal. Dec. 14, 2001) ....................................5

7

*Currie v. Cayman Resources Corp.*,
   835 F. 2d 780 (11th Cir. 1988) ..........................................................16

8

9

*Foley Bros., Inc. v. Filardo*,
   336 U.S. 281 (1949) ....................................................................10

10

*Guohua Zhu v. UCBH Holdings, Inc.*,
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..........................................4, 5, 15

11

12

*Hodges v. Akeena Solar, Inc.*,
   263 F.R.D. 528 (N.D. Cal. 2009) ....................................................16, 17

13

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..............................................................3

14

15

*In re Cent. European Distribution Corp. Sec. Litig.*,
   2012 U.S. Dist. LEXIS 160248 (D.N.J. Nov. 8, 2012) ...............................11

16

*In re Chase Bank United States, N.A.*,
   274 F.R.D. 286 (N.D. Cal. 2011) ........................................................19

17

18

*In re Enzymotec Ltd. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 25720 (D.N.J Mar. 3, 2015) ...............................13

19

*In re IMAX Sec. Litig.*,
   2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) ..........................18

20

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ..............................................5, 18

21

22

*In re Netflix, Inc., Sec. Litig.*,
   2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) ......................11, 19

23

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................16

24

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) ............................................................16

25

26

*In re Silicon Storage Tech., Inc.*,
   2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ..........................17

27

28

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

*In re SolarCity Corp. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ........................................................3, 14

*In re Tarragon Corp. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ..................................................19

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999).........................................................................5

*In re Versata, Inc.*,
    2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20, 2001).......................................17, 20

*In re Washington Public Power Supply System Sec. Litig.*,
    823 F. 2d 1349 (9th Cir. 1987) ................................................................................16

*Inchen Huang v. Depomed, Inc.*,
    2017 U.S. Dist. LEXIS 202580 (N.D. Cal. Dec. 8, 2017) ......................................3, 11

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)...........................................................................21, 22

*Johnson v. OCZ Tech. Group*,
    2013 U.S. Dist. LEXIS 1610 (N.D. Cal. Jan. 4, 2013) ...............................................20

*Knox v. Yingli Green Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2017) ......................................................................5

*Mitchell v. Complete Mgmt., Inc.*,
    1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) ...........................................21

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)............................................................................................10, 12

*Nasin v. Hongli Clean Energy Technologies. Corporation*,
    2017 U.S. Dist. LEXIS 192673 (D.N.J. Nov. 21, 2017)..........................................13, 14

*Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
    2017 U.S. Dist. LEXIS 140268 (E.D. Tx. Aug. 31, 2017) ................................4, 5, 14, 15

*Rocco v. Nam Tai Elecs., Inc.*,
    245 F.R.D. 131 (S.D.N.Y. 2007) .............................................................................11

*Sabbagh v. Cell Therapeutics, Inc.*,
    2010 U.S. Dist. LEXIS 93614 (W.D. Wash. Aug. 2, 2010) ..........................................16

SEC v. World Capital Mkt., Inc.,
    864 F.3d 996 (9th Cir. 2017) ..................................................................................12

*See In re Vonage IPO Sec. Litig.*,
    2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) .................................................9

*Serafimov v. Netopia, Inc.*,
    2014 U.S. Dist. LEXIS 25184 (N.D. Cal. Dec. 3, 2007)..............................................11

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

*Staton v. Boeing Co.*,
    328 F. 3d 938 (9th Cir. 2003) .................................................................... 14

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
    2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22, 2012) ........................... 11

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...................................................... 21

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................... 21

**Statutes**

15 § U.S.C. 77l(a)(1) ........................................................................................ 11

15 U.S.C. § 77e ......................................................................................... 11, 18

15 U.S.C. § 77l ................................................................................................ 18

15 U.S.C. § 77q(a) ........................................................................................... 18

15 U.S.C. § 77z-1(a) ........................................................................................ 17

15 U.S.C. § 77z-1(a)(1) ..................................................................................... 4

15 U.S.C. § 77z-1(a)(2)(A) ............................................................................... 6

15 U.S.C. § 77z-1(a)(3)(A) ......................................................................... 17, 18

15 U.S.C. § 77z-1(a)(3)(A)(II) ...................................................................... 3, 4

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ..................................................................... 2

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) .............................................................. 3, 17

15 U.S.C. 77z-1(a)(2) ...................................................................................... 18

15 U.S.C. 77z-1(a)(2)(A) ................................................................................. 13

28 U.S.C. § 1746 ............................................................................................. 14

**Rules**

17 CFR 230.901 (2018) ................................................................................... 11

Fed. R. Civ. P. 23 .................................................................................... 1, 2, 22

Fed. R. Civ. P. 42(a) ....................................................................................... 25

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

Movant Tezos Investor Group[1] respectfully submits this memorandum of points and authorities in opposition to the competing motions for appointment as lead plaintiff and approval of selection of counsel. The Tezos Investor Group has the largest financial interest among the adequate movants, and thus is the presumptive lead plaintiff under the PSLRA and controlling authority in this District and the Ninth Circuit.[2] The Tezos Investor Group also satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Accordingly, the Tezos Investor Group should be appointed lead plaintiff and its selection of counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), should be approved.

## PRELIMINARY STATEMENT

On January 25, 2018, the Gaviria Group,[3] the Tezos Investor Group, the GGCC Group,[4] and Trigon Trading Pty. Ltd. ("Trigon"), each submitted competing motions for appointment as lead plaintiff and approval of lead counsel that were *timely* filed. Additionally, on January 26, 2018, movant Arman Anvari ("Anvari") filed his untimely motion seeking appointment as lead plaintiff and approval of lead counsel. In order of largest to smallest claimed financial interests, the four timely motions and one untimely motion are as follows:[5]

---

[1] The Tezos Investor Group is comprised of Nicolas Andreasson, Paul Martin, and Richard Reckenbeil.

[2] Capitalized terms contained herein have the same meaning ascribed to them in the Memorandum of Points and Authorities in Support of Motion of The Tezos Investor Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, unless otherwise defined. ECF No. 49.

[3] The Gaviria Group is comprised of David Lang, Ryan Coffey, and Alejandro R. Gaviria ("Gaviria"). Movant Gaviria had been a plaintiff in a related class action pending before the United States District Court for the Middle District of Florida entitled, *Gaviria v. Dynamic Ledger Solutions, Inc., et al.*, No. 6:17-cv-01959-PGB (the "*Gaviria* Florida Action"). Counsel for the *Gaviria* Action were Silver Miller and Wites Law Firm. The *Gaviria* Florida Action was withdrawn on January 24, 2018.

[4] The GGCC Group is comprised of GGCC, LLC; Pumaro, LLC; and Nick Anthony.

[5] The financial interests reflected in the following chart are rounded to the second decimal point and were obtained from the, respective, motions for lead plaintiff and approval of lead counsel. Additionally, the order in which the financial interests are presented is based on calculations using ETH's and BTC's relative valuations as of January 25, 2018. To note, the valuations of BTC and ETH rapidly change by the hour and thus, the order of financial interests set forth is subject to some measure of deviation. For example, per www.tradingview.com, on June 12, 2017, December 10, 2017, and February 2, 2018, 1 BTC's value in ETH was approximately 6.65 ETH, 32 ETH, and 8.5 ETH, respectively.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

| Movant | Proposed Counsel | Financial Interest |
|---|---|---|
| Anvari | <u>Co-Lead</u>: LTL Attorneys LLP<br><u>Co-Lead</u>: Hung G. Ta, Esq. PLLC | 250 ETH |
| Trigon Trading Pty. Ltd. ("Trigon") | <u>Lead</u>: Block & Leviton LLP | Approximately 18.99 BTC |
| The Gaviria Group | <u>Co-Lead</u>: Robbins Geller Rudman & Dowd LLP<br><u>Co-Lead</u>: Silver Miller<br><u>Additional Counsel</u>:<br>Wites Law Firm | Approx. 9.62 BTC<br><br>Approx. 53.08 ETH |
| The Tezos Investor Group | <u>Lead</u>: Levi & Korsinsky | 4 BTC<br><br>Approx. 64.98 ETH |
| The GGCC Group | <u>Co-Lead</u>: Restis Law Firm, P.C.<br><u>Co-Lead</u>: Lite DePalma Greenberg, LLC | Approx. 1.94 BTC<br><br>11 ETH |

The PSLRA provides for the Court to appoint as lead plaintiff the movant with the largest financial interest in the litigation that **also** meets the adequacy and typicality requirements under Rule 23.  As discussed *infra*, Anvari, Trigon, and the Gaviria Group are ineligible for consideration because, *inter alia*: (1) Anvari failed to comply with the PSLRA's statutory requirements and has already demonstrated ample evidence of his inadequacy to effectively represent the Class, (2) Trigon is subject to unique defenses that render it incapable of adequately representing the proposed Class, and (3) the Gaviria Group contains an ineligible group member who failed to comply with the PSLRA's statutory requirements—movant Gaviria—and is also an improper aggregation of unaffiliated investors lacking the hallmarks of a cohesive group.  Accordingly, the Tezos Investor Group is the presumptive lead plaintiff because it has the largest loss of any movant qualified for appointment under Rule 23.

## ARGUMENT

## I.   STANDARDS OF LAW

Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) of the PSLRA, the presumptive "most adequate plaintiff" to serve as lead plaintiff is the movant: (1) that has the largest financial interest in the relief sought by the class; and (2) that has made a *prima facie* showing that he, she, or it satisfies the

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

requirements to serve as class representative under Rule 23. *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The presumption, however, may be rebutted upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). If the presumption is rebutted, the process restarts "to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *Inchen Huang v. Depomed, Inc.*, 2017 U.S. Dist. LEXIS 202580, at *5 (N.D. Cal. Dec. 8, 2017) (quoting *Cavanaugh*, 306 F.3d at 731); *see also In re SolarCity Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 11553, at *10 (N.D. Cal. Jan. 25, 2017) ("If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing.") (citation omitted).

## II.    THE TEZOS INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    Anvari Is Not Eligible for Consideration

In submitting his motion, Anvari failed to follow the PSLRA's clear and unequivocal requirements to move for appointment as lead plaintiff, and therefore, Anvari is not eligible for consideration. Specifically, Anvari initially filed for appointment as lead plaintiff in the *MacDonald* Action, No. 3:17-cv-07095-RS (ECF No. 70), a non-PSLRA case, and subsequently updated his motion and filed it past the deadline in the instant action. ECF No. 61. Further, Anvari filed a facially deficient PSLRA certification improperly signed by his counsel rather than by Anvari himself and selected co-lead counsel with little to no experience in prosecuting securities class actions, as evidenced by their respective firm resumes and their manifest failure to adhere to the plain requirements of the PSLRA. ECF Nos. 61-3, 61-5, 61-6.

#### 1.    Anvari Filed Late

The PSLRA states that "not later than 60 days after the date on which the [PSLRA] notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 77z-1(a)(3)(A)(II). On November 26, 2017, plaintiff GGCC commenced the first-filed Action in this District and caused the PSLRA notice (the "Notice") to be issued the same

3                                        Case No. 3:17-cv-06779-RS

day. ECF. No. 12. As such, the "notice" referenced in 15 U.S.C. § 77z-1(a)(3)(A)(II) is the November 26, 2017 GGCC Notice. *Id.* The Notice informed the members of the proposed Class that if they wished to serve as lead plaintiff, they "must move the Court no later than 60 days from November 26, 2017," which was January 25, 2018. *Id.* Therefore, the only *timely* motions were those made in response to the GGCC Notice, and filed by January 25, 2018, in the instant Action.

On January 25, 2018, Anvari filed his motion in the *MacDonald* Action ECF No. 70, the <u>fourth</u> Related Action pending in this District. The *MacDonald* Action did not allege any federal securities law claims, but solely California state law claims, ECF No. 1. Based on a plain reading of the PSLRA, the *MacDonald* Action is not a PSLRA case. *See* 15 U.S.C. § 77z-1(a)(1) ("The provisions of this subsection shall apply to each private action arising **under this subchapter** that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.") (emphasis added). Indeed, MacDonald's counsel argues that the *MacDonald* Action should not even be consolidated with the instant Action. ECF No. 55-5 at n.1. Accordingly, Anvari's initial motion for lead plaintiff was filed in, and sought appointment as lead plaintiff in, a non-PSLRA case. Importantly, the Actions while related, are not consolidated, and thus, the act of filing in the *MacDonald* Action does not constitute filing in the instant Action, especially considering the fact that Anvari did not seek to consolidate the Actions at all. Further, it should be noted that Anvari and his counsel's error could not have been a mere clerical error that resulted in filing in the incorrect action. Anvari's motion filed in the *MacDonald* Action explicitly sought to be appointed lead in the *MacDonald* Action, per the caption listed throughout the motion. *MacDonald* Action ECF No. 70. Indeed, Anvari failed to even mention the existence of the Related Actions in his motion. *Id.* The four other movants *timely* filed their motions in the instant Action.

Despite the fact that the PSLRA is abundantly clear with respect to the sixty-day time-frame, on January 26, 2018, Anvari filed his motion in the instant Action. ECF No. 61. This motion was thus filed too late. "The PSLRA is unequivocal and allows for no exceptions." *Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010); *see also Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13 (E.D. Tex. Aug. 31, 2017) ("[C]ompliance with the procedural requirements of the PSLRA should be strictly enforced") (citations

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

omitted).   Given his failure to meet the PSLRA's filing requirements, Anvari is ineligible for consideration as lead plaintiff.  *See Zhu*, 682 F. Supp. at 1053 ("'The plain language of the statutes precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.'  The intent of the provisions is to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.  Thus, filing the complaint or **a timely motion is the threshold requirement to serve as lead plaintiff**.") (citations omitted) (emphasis added); *see also Knox v. Yingli Green Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2017) (setting forth same standard); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000) ("District courts applying the PSLRA note that the sixty-day time period is a significant element of the statute, and reflects Congress's sensible intent that the led plaintiff be appointed as early in the litigation as possible") (citations omitted).

The principle that untimely filed motions seeking appointment as lead plaintiff are ineligible for consideration is well-established.  For example, in *Carson v. Clarent Corp.*, the court denied an untimely movant's "invitation to ignore the PSLRA's time requirements."  2001 U.S. Dist. LEXIS 22059, at *6-7 (N.D. Cal. Dec. 14, 2001).  In doing so, the *Carson* court explained that each of the PSLRA's, "three statutory factors must be separately considered.

> The first factor is procedural, and requires consideration of whether the movant has satisfied the statute's filing requirements.  A potential lead plaintiff satisfies the procedural requirement to be named lead plaintiff within sixty days of the notice provided by the plaintiff who files the first complaint . . . A motion filed after the sixty day period by a person who has not filed a complaint, however, is untimely, and may not, except perhaps in rare circumstances, be considered by a court."

*Id*. at *6-7 (citations omitted).

Additionally, the fact that Anvari filed a deficient motion seeking lead in the wrong case—a related, non-PSLRA, case—on January 25, 2018, does not permit him to update his motion and then file *untimely* in the instant Action.  *See Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13 ("A motion for appointment as lead plaintiff cannot be supplemented or augmented beyond the sixty (60) day window established by the PSLRA.") (quoting *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999)).  Accordingly, Anvari's untimely motion for appointment as lead plaintiff should be rejected.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

### 2.    Anvari Submitted a Deficient PSLRA Certification

The declaration of James M. Lee submitted in support of Anvari's motion for appointment as lead plaintiff and approval of counsel purported to attach "Exhibit B: PSLRA Certification by Movant in the above-captioned action."  *MacDonald* Action ECF No. 70-1; ECF No. 61-1.  The "PSLRA Certification" was signed and executed as "Arman Avari / by permission, Hung Ta."  *MacDonald* Action ECF No. 70-3; ECF No. 61-3.  PSLRA Certifications cannot be executed "by permission." Rather, the PSLRA clearly states that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff," 15 U.S.C. § 77z-1(a)(2)(A), and thus, Anvari's Certification is invalid.[6]

### 3.    Anvari's Choice of Counsel Evidences His Inadequacy to Serve as Class Representative

As mentioned, Anvari initially filed for lead in the *MacDonald* Action, which is not a PSLRA case.  Indeed, Anvari claimed that plaintiff MacDonald alleged claims for "violations of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act of 1933."  *MacDonald* Action ECF No. 70 at 5.  However, plaintiff MacDonald did not allege any claims under the federal securities laws. *MacDonald* Action ECF No. 1.  Accordingly, Anvari's motion stating that he was moving for lead plaintiff "pursuant to Section 21D(a)(3) of the Exchange Act" and under the "procedures for selection of a lead plaintiff in class actions brought under the Exchange Act" is an impossibility. *MacDonald* Action ECF. No. 70 at 3, 5.  In fact, none of the Actions allege any claims under the *Exchange Act*.  Rather, the Related Actions that do allege federal securities claims contain claims solely pursuant to the *Securities Act*.  Accordingly, not only did Anvari seek appointment as lead plaintiff in a case without any federal securities laws claims, and failed to even mention any of the Related Actions, including the instant Action, but he also moved for lead plaintiff pursuant to the Exchange Act when none of the Related Actions assert Exchange Act claims.  These clear errors confirm that the counsel Anvari retained have little to no experience with securities class actions and

---

[6] Moreover, the fact that "Hung Ta" executed the Certification also makes the language of the Certification likely false.  For example, the Certification states, "Executed this 25th day of January 2018 in Chicago Illinois."  However, "Hung Ta" appears to operate out of New York, as such, unless he traveled to Chicago to sign the Certification, the Certification apparently contains false statements.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

failed to conduct even the most basic due diligence regarding in which case his motion should be filed.

While Anvari claims that his selection of "Co-Lead Counsel should be approved because the firms possess extensive experience in the prosecution of securities class actions . . ." (*MacDonald* Action ECF No. 61 at 4), a review of LTL Attorneys LLP ("LTL") and Hung G. Ta, Esq. PLLC's ("HGT") firm resumes leads to the contrary conclusion that—both LTL and HGT have minimal, if any, experience prosecuting securities class actions. *MacDonald* Action ECF No. 61-5, 61-6.  LTL clearly focuses on patent and employment litigation. *MacDonald* Action ECF No. 61-5.  The firm resume lists but one individual, Damian Martinez ("Martinez"), who appears to have had some experience in the field of securities.  *Id*. at 7.  This "experience" relates to having "represented corporate officers and directors against the Department of Justice and the Securities and Exchange Commission in matters involving subprime lending, stock options pricing, stock sales by corporate insiders and international antitrust investigations," and having "represented the senior most officer of a public mortgage originator company in litigation brought by the Securities and Exchange Commission."  *Id*.  The experience of defending corporate insiders during SEC investigations and actions is a far-cry from Anvari's claim that he retained firms that are "both" "highly experienced in vigorously and efficiently prosecuting securities class actions, such as this action . . . ."  *MacDonald* Action ECF No. 61 at 8-9.  Indeed, based on its firm resume, LTL does not appear to have ever prosecuted a single securities class action.  *Id*. at 61-5.

HGT's firm resume appears to list only two cases that are securities class actions as "Representative Cases" of the firm's work: *Colonial First State Investments Limited, et al v. Valeant Pharmaceuticals, Inc., et al*, 18-cv-00383 (D.N.J.) (the "*Colonial* Action") and *Bolling, et al. v. Dendreon Corp., et al.*, No. 13-cv-00872 (W.D. Wash.) (the "*Bolling* Action").[7]  The *Colonial* Action was filed on January 10, 2018—well after dozens of related actions alleging similar and/or identical

---

[7] In addition to its sparse and questionable experience prosecuting securities class actions, HGT also appears to have financial concerns.  Specifically, a tax warrant was filed just a few months ago against HGT.  *See NYC Department of Finance v. Hung G. Ta Esq., PLLC*, 3669340/2017 (Nov. 6, 2017).  Such inability to manage its own operation and finances, to the point necessitating a tax warrant, further call into question HGT's ability to effectively manage and prosecute a case of this magnitude on behalf of the proposed Class.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

claims had been filed against Valeant.[8]  On January 11, 2018, pursuant to a stipulation executed in 16 of the earlier filed actions, the court ordered that all proceedings in the *Colonial* Action were stayed pending the conclusion of the criminal trial in *United States v. Tanner, et al.*, Case No. 17-cr-61. *Colonial* Action ECF No. 4.   Accordingly, this "Representative Case"—apparently intended to evidence HGT's experience "vigorously and efficiently prosecuting securities class actions"—merely shows that HGT filed a placeholder in an action that has been prosecuted for years.[9]

The *Bolling* Action led to the court denying, in full, HGT's motion for partial summary judgment in *Bolling v. Gold*, 2015 U.S. Dist. LEXIS 151867 (W.D. Wash. Nov. 9, 2015).  In doing so, the court was clearly less than impressed with the quality of HGT's prosecution:

> Plaintiffs also purport to move for partial summary judgment 'with respect to their common law claims for negligent and fraudulent omission/misrepresentation (to the extent falsity, scienter and materiality are elements of these common law claims).' (Mot. at 1.)  Plaintiffs offer no specific analysis concerning their state law claims or how the evidence presently before the court relates to the elements of those claims. Without some analysis from Plaintiffs as to how the elements of their Section 10(b) claims overlap with their common law state law claims, the court declines to consider partial summary judgment on those claims.  It is not the role of the court to perform this analysis on behalf of the Plaintiffs.  It is Plaintiffs' counsel's job to provide that analysis to the court and permit Defendants an opportunity to respond.

*Id*. at n.1.

Similarly, the *Bolling* court also raised questions as to HGT's use of a declaration from a "confidential witness" and a report supposedly obtained from said witness, after the witness "denie[d] ever providing the report or any other documents to Plaintiffs' attorneys, denie[d] that she agreed to serve as a confidential witness in this case, and denie[d] that she ever met with Plaintiffs' attorney or 'anyone who identified himself or herself as representing plaintiffs in the (present) litigation.'"  *Id*. at *18.  In discussing this issue, the court stated:

---

[8] The earliest of such actions in the United States District Court for the District of New Jersey District was filed on October 22, 2015, and is entitled *Potter v. Valeant Pharmaceuticals International, Inc. et al*, 3:15-cv-7658 (D.N.J.).

[9] Additionally, HGT also filed another securities class action against Valeant on January 19, 2018, entitled *Ahuja, et al. v. Valeant Pharmaceuticals International, Inc. et al.*, 3:18-cv-846 (D.N.J.). Unsurprisingly, this action was also stayed for the same reasons on January 24, 2018.  *Id*., ECF No. 4.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

> Indeed, if Ms. Carruth [the purported witness] were working as cooperatively with Plaintiffs as their counsel's declaration suggests, then the court is puzzled as to why Plaintiffs' counsel did not simply contact her to secure a declaration authenticating Exhibits 39 and 39A.
>
> Instead, it appears to the court that Plaintiffs' counsel has never directly contacted Ms. Carruth to verify any of her testimony – testimony that is central to Plaintiffs' complaint and Plaintiffs' motion for partial summary judgment.  More than one court has criticized this type of conduct in the context of a securities fraud lawsuit."

*Id*. at \*20-21.

The foregoing situation is particularly concerning, considering the fact that the Anvari PSLRA Certification was not executed by Anvari, but rather by HGT's owner, "Hung Ta."  In sum, Anvari cannot be entrusted to serve as lead plaintiff given that he was unable to execute his own signature within a sixty-day window, retained inadequate counsel, and has, at best, a poor understanding of the claims or facts asserted in the Actions (as is clear given his unawareness of the fact that the *MacDonald* Action did not allege any federal securities claims).  *See In re Vonage IPO Sec. Litig.*, 2007 U.S. Dist. LEXIS 66258, at \*27-28, \*30, \*n.8 (D.N.J. Sept. 6, 2007) (holding proposed lead plaintiff inadequate, including because of "misinformation" stated in certification).  As Anvari has failed to demonstrate the requisite standards required of a fiduciary for the putative Class, he is an inadequate representative.

**B.      Trigon Is Subject to Unique Defenses and Filed a Deficient PSLRA Certification and Is Thus Not the Presumptive Most Adequate Plaintiff**

As detailed below, Trigon should be disqualified from serving as lead plaintiff because: (1) it is subject to unique defenses which will seriously hinder its ability to effectively represent the proposed Class; and (2) it failed to comply with the PSLRA's requirements in moving for lead plaintiff.

**1.      Trigon Is Subject to Disqualifying Unique Defenses**

Trigon is an Australian Private Company that has been active since April 1, 2016.[10]  Anna Dupont, the signatory to Trigon's PSLRA Certification, executed the certification in "Varsity Lakes," Queensland, Australia.  ECF No. 56-2.  In *Morrison v. National Australia Bank Ltd.*, the Supreme Court

---

[10] *See* Current Details for ABN 46 610 865 533, AUSTRALIAN GOV'T BUS. REGISTRAR, available at https://abr.business.gov.au/SearchByAbn.aspx?SearchText=46610865533.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

addressed the extraterritorial application of the federal securities laws.  561 U.S. 247 (2010).[11]  The key

questions under *Morrison* are: "[1] whether the purchase or sale is made in the United States, or [2]

involves a security listed on a domestic exchange."  *Id*. at 269-70.  Under this reasoning, if the security

at issue is not registered, as in this case, the applicability of the federal securities laws hinges on whether

a part of the actual transaction effectuating the purchase and sale of such security occurred within the

United States.  *Id*.  If no part of the purchase or sale occurred in the United States, then a presumption

against extraterritorial application would apply and the plaintiff would not be entitled to relief.  *Id*.

      The Supreme Court also applied the same reasoning to a discussion of section 5 of the Securities

Act,[12] and reached the same conclusion:

> The same focus on domestic transactions is evident in the Securities Act of 1933,
> 48 Stat. 74, enacted by the same Congress as the Exchange Act, and forming the same
> comprehensive regulation of securities trading.  See *Centra Bank of Denver, N.A. v.
> First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 170-171, 114 S. Ct. 1439, 128
> L. Ed. 2d 119 (1994).  That legislation makes it unlawful to sell a security, through a
> prospectus or otherwise, making use of 'any means or instruments of transportation
> or communication in interstate commerce or of the mails,' unless a registration
> statement is in effect.  15 U.S.C. § 77e(a)(1).  The Commission has interpreted that
> requirement 'not to include . . . sales that occur outside of the United States.' 17 CFR
> §230.901 (2009).

*Id*. at 268.[13]

      Given that Trigon is located in Australia, if it were appointed lead plaintiff here, it is highly

probable that the Foundation would contest Trigon's adequacy as a class representative by pursuing a

---

[11] *Morrison* involved "'foreign-cubed actions'—actions in which '(1) *foreign* plaintiffs [are] suing (2) a *foreign* issuer in an American court for violations of American securities laws based on securities transactions in (3) *foreign* countries.'"  *Id*. at n.11 (Stevens, J., joined Ginsburg, J., concurring) (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)).  Specifically, *Morrison* involved Australian investors who purchased securities of an Australian bank on an Australian exchange and then brought an action in the alleging that the bank and one of its U.S.-based subsidiaries made false or misleading statements in violation of section 10(b) of the Exchange Act.  *Id*. at 247.

[12] Such analysis is particularly relevant to the Actions, as the operative claim in the Actions is brought pursuant to Section 12(a)(1) of the Securities Act, 15 § U.S.C. 77l(a)(1), which grants a private right of action for Section 5.  15 U.S.C. § 77e.

[13] As noted by the *Morrison* Court, the SEC has promulgated Rule 901, which specifically states: "[f]or the purposes only of section 5 of the Act (15 U.S.C. § 77e), the terms *offer*, *offer to sell*, *sell*, *sale*, and *offer to buy* shall be deemed to include offers and sales that occur within the United States and shall be deemed not include offers and sales that occur outside of the United States."  17 CFR 230.901 (2018).

Case No. 3:17-cv-06779-RS

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

unique defense against Trigon under *Morrison*.[14]  Given that "[m]otions to appoint lead counsel and lead plaintiff resemble class certification motions to the extent that they consider issues of typicality and adequacy under Rule 23," the Court should evaluate the probability of the unique defense at this time.  *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, 2012 U.S. Dist. LEXIS 118693, at *22 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom.  In re Cent. European Distribution Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 160248, at *2 (D.N.J. Nov. 8, 2012); *see id.* at *10-12 (evaluating movants arguments concerning unique defenses).

Here, Trigon is subject to such disqualifying unique defenses.  "A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to become the focus of the litigation." *Serafimov v. Netopia, Inc.*, 2014 U.S. Dist. LEXIS 25184, at *16 (N.D. Cal. Dec. 3, 2007).  Importantly, "a competing [PSLRA] movant need not prove the defense at this stage of the case, but merely 'show a degree of likelihood that a unique defense might play a significant role at trial.'" *Huang*, 2017 U.S. Dist. LEXIS 202580, at * 11(citing *In re Netflix, Inc., Sec. Litig.*, 2012 U.S. Dist. LEXIS 59465 at *17 (N.D. Cal. Apr. 26, 2012)).  "[W]here a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification for the class is improper because he or she can no longer act in the best interest of the class." *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (citation omitted).  The "[r]ationale for this approach to unique defenses" is "because class members are entitled to be represented by someone unhindered by unique defenses." *Rocco*, 245 F.R.D. at 135.  "The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *In re Netflix, Inc., Sec. Litig.*, 2012 U.S. Dist. LEXIS 59465, at *17.

The Foundation could raise a defense under *Morrison* that: (1) plaintiff's purchase of Tezos

---

[14] Given that "[m]otions to appoint lead counsel and lead plaintiff resemble class certification motions to the extent that they consider issues of typicality and adequacy under Rule 23," the Court should evaluate the probability of the unique defense at this time.  *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, 2012 U.S. Dist. LEXIS 118693, at *22 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom.  In re Cent. European Distribution Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 160248, at *2 (D.N.J. Nov. 8, 2012); *see id.* at *10-12 (evaluating movants arguments concerning unique defenses).

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

Tokens during the Tezos ICO did not occur within the United States; and (2) the Foundation's sale of Tezos Tokens during the Tezos ICO did not occur within the United States. *Morrison*, 561 U.S. at 269-70. The Foundation has already taken the position that the Tezos ICO took place outside of the United States arguing that, "the Tezos Terms are clear that any contribution to the Foundation is deemed to have taken place in Alderney"—a sub-jurisdiction of Bailiwick of Guernsey, which itself is one of three British Crown dependencies. *MacDonald* Action ECF No. 63 at 10. Irrespective of whether the Foundation will succeed in this position, it is clear that this issue would quickly become a major focus of the litigation if Trigon were appointed lead plaintiff. Further, should the Foundation fail with its claim that the ICO occurred in "Alderney," it is reasonable to assume that it would thereafter simply argue that the ICO took place in Switzerland—where the Foundation is located.

In contrast, the Foundation would be unable to raise a *Morrison* defense against the U.S.-based movants—including the Tezos Investor Group—as their purchases of Tezos Tokens were executed from within the United States (*e.g.*, using a computer from within the United States), and thus would automatically satisfy the domestic transaction requirement of *Morrison*. 561 U.S. 247. Accordingly, there is a likelihood that this unique defense would be raised against Trigon and, consequently, risk the proposed Class' ability to recover the relief sought as well as result in a significant amount of effort and resources being diverted from the Action.[15]

### 2.    Trigon Submitted a Deficient PSLRA Certification

Trigon's PSLRA Certification is deficient under 15 U.S.C. 77z-1(a)(2)(A), and thus Trigon may be ineligible to serve as lead plaintiff and/or subject to additional unique defenses. Specifically, the Trigon Certification fails to provide any indication as to Anna Dupont's authority to execute the Certification on behalf of Trigon. ECF No. 56-2. For example, in *In re Enzymotec Ltd. Sec. Litig.*, the United States District Court for the District of New Jersey stated:

---

[15] Further as noted in *SEC v. World Capital Mkt., Inc.*, the Ninth Circuit has "yet to address what constitutes a domestic transaction under *Morrison* . . . ." 864 F.3d 996, 1008 (9th Cir. 2017). Accordingly, a dispute over a *Morrison* defense, where the lead plaintiff is domiciled and resident in a foreign country, would likely be unnecessarily protracted, significantly delay the progress of the litigation, and pose a significant risk and expense to the lass.

1    Here, 3B's certification could be subject to attack because it provides no indication
2    that its signer, Ami Baksis, is authorized to sign the certification on 3B's behalf.
     Indeed, nowhere in 3B's certification does Mr. Baksis identify himself or provide any
3    indication of his role within 3B . . . Of course 3B is correct that the PSLRA does not
     explicitly require the signer of a certification on behalf of a corporation to identify
4    his/her position within the company and provide a basis for his/her signing authority.
     It seems plain to this Court, however, that any proper certification would include such
5    basic information . . . .

6    Therefore, because the Court finds that 3B would be subject to a unique defense with
     respect to its certification, EIG has successfully rebutted the presumption in favor of
7    3B as lead plaintiff.

8    2015 U.S. Dist. LEXIS 25720, at *8-10 (D.N.J Mar. 3, 2015)

9           Additionally, Trigon's Certification failed to comply with the penalty of perjury requirement in

10   28 U.S.C. § 1746.  ECF No. 56-2.  28 U.S.C. § 1746 applies to "any law of the United States" that

11   requires "verification, certificate, or affidavit," and requires that any such "certificate" include a

12   statement, "as true under penalty of perjury, and dated, in substantially the following form: (1) If

13   executed without the United States: 'I declare (or certify, verify, or state) under penalty of perjury under

14   the laws of the United States of America that the foregoing is true and correct.  Executed on (date).

15   (Signature).'"  Given the fact that Trigon's Certification was executed in Australia (ECF. No. 56-2)

16   Trigon should have submitted a statement substantially similar to the foregoing.  Instead, Trigon's

17   Certification states, "I hereby, certify, under penalty of perjury, that the foregoing is true and correct."

18   *Id.*  Such language is reserved for Certifications made from within the United States, per 28 U.S.C.

19   § 1746(2), and thus, Trigon may yet be subject to additional unique defenses regarding the adequacy

20   of its Certification in terms of Anna DuPont's authorization to represent Trigon, as well as its validity

21   pursuant to 28 U.S.C. § 1746.

22          *Nasin v. Hongli Clean Energy Techs. Corp.*, is particularly instructive on this point.  In *Nasin*,

23   the movants with the largest financial interest submitted a PSLRA certification that lacked the requisite

24   "under penalty of perjury" language as required by the PSLRA.  2017 U.S. Dist. LEXIS 192673 at *8-

25   9 (D.N.J. Nov. 21, 2017).  Despite the movants subsequently filing corrected certifications—"[o]nly

26   after having the benefit of the [competing] movants' opposition papers"—that cured what the movants

27   described as a "technicality," the court found the original certifications deficient for failing to comply

28   with the enumerated requirements of the PSLRA.  *Id.*  Additionally, the court found the subsequently

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

filed corrected certifications deficient for being untimely given they were filed after the 60-day deadline established by the PSLRA. *Id.* Thus, having concluded that both certifications were deficient, the court expounded that these deficiencies "will subject [movants] to a unique defense that renders them 'incapable of adequately representing the class' and, as a result, they are not the presumptively most adequate lead plaintiff." *Id.*

The Court should find the same as the court did in *Nasin*, especially considering the fact that, as of the date of this filing, Trigon still has not corrected the deficiencies in its Certification. *See Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13 (recognizing that "[a]ny supplement or augmentation of the motion must also take place within the sixty-day deadline").

**C.     The Gaviria Group Is Ineligible for Appointment as Lead Plaintiff**

"In the Ninth Circuit, to test the adequacy of a class representative, a court must answer two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *SolarCity*, 2017 U.S. Dist. LEXIS 11553, at *15 (quoting *Staton v. Boeing Co.*, 328 F. 3d 938, 957 (9th Cir. 2003)). As detailed below, the Gaviria Group is not the presumptive most adequate plaintiff because (1) movant Gaviria failed to adhere to PSLRA procedures in the *Gaviria* Florida Action; (2) movant Gaviria's prosecution of *Gaviria* Florida Action was deficient; and (3) the Gaviria Group is an improper aggregation of unaffiliated investors lacking the hallmarks of a cohesive group.

**1.     Gaviria, Silver Miller, and Wites Law Firm and Are Inadequate to Represent the Interests of the Class**

The presumption that a movant is the "most adequate plaintiff" may be rebutted by providing proof that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). Silver Miller's, Wites Law Firm's, and Gaviria's failure to follow the plain language requirements of the PSLRA when prosecuting the *Gaviria* Florida Action as well as the numerous deficiencies in Gaviria's legal theories and claims in the *Gaviria* Florida Action establishes their inadequacy to represent the interests of the Class.

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

**a.      Gaviria's, Silver Miller's, and Wites Law Firm's Failure to Comply With the PSLRA**

Under the PSLRA, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff.  15 U.S.C. § 77z-1(a)(3)(A).  "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter is filed, only **the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published** in accordance with clause (i)."  *Id*. (emphasis added).

The *Gaviria* Florida Action was the first-filed action (November 13, 2017) in a federal district court (United States District Court for the Middle District of Florida) against Tezos alleging claims under the Securities Act, Gaviria failed to **ever** publish the PSLRA notice **required** by 15 U.S.C. § 77z-1(a)(3)(A).  "The PSLRA is unequivocal and allows for no exceptions."  *Zhu*, 682 F. Supp. 2d at 1053; *see also Adeptus Health Inc.*, 2017 U.S. Dist. LEXIS 140268, at *13 ("[C]ompliance with the procedural requirements of the PSLRA and should be strictly enforced") (citations omitted).

Further, Gaviria and his counsel failed to file the required PSLRA Certification pursuant to 15 U.S.C. 77z-1(a)(2) upon initiating the case.  *See Gaviria* Florida Action ECF No. 1.  The PSLRA clearly requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint."  *Id*. (emphasis added).

**b.      Gaviria's, Silver Miller's, and Wites Law Firm's Deficient Prosecution of the *Gaviria* Florida Action**

In addition to Gaviria's failure to adhere to the plain language requirements of the PSLRA, the complaint in the *Gaviria* Florida Action alleges claims for which there is no private right of action. *Gaviria* Florida Action ECF. No 1.  Specifically, Gaviria alleged a direct claim for violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c).  There is, however, no direct private right of action under Section 5.  *Id*.  The private right of action to enforce Section 5 is located in section 12 of the Securities Act, 15 U.S.C. § 77l.  Gaviria failed to allege violations of Section 12.  Gaviria and his counsel also alleged claims under Section 17(a), 15 U.S.C. § 77q(a), of the Securities Act.  The majority

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

of Circuits have held that there is no implied private right of action under Section 17(a), including the Eleventh Circuit—where the *Gaviria* Florida Action was filed—and the Ninth Circuit.  *See Currie v. Cayman Resources Corp.*, 835 F. 2d 780, 784-85 (11th Cir. 1988) ("We therefore hold that section 17(a) does not imply a private cause of action and that the district court correctly dismissed this theory of relief."); *In re Washington Public Power Supply System Sec. Litig.*, 823 F. 2d 1349, 1358 (9th Cir. 1987) ("Because we decide that no private right of action lies under section 17(a), we need not and do not address whether such an action would lie against a municipality.").

It is evident that Gaviria and his counsel in the *Gaviria* Florida Action—both of which are seeking to represent the Gaviria Group in this instant Action—failed to conduct reasonable diligence on the legal theories and claims they asserted.  This raises significant concern as to Gaviria's ability to oversee and supervise any class counsel's litigation procedures, as well as counsels' ability to competently and adequately represent the interests of the Class.

"[A] court must be mindful that the lead plaintiff has significant responsibilities and duties, including the management of the direction of the case."  *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999); *accord In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) (internal quotation and citation omitted).  Gaviria's failure to comply with the PSLRA's certification requirements demonstrates a lack of diligence and credibility that, in conjunction with his other deficiencies, weighs against a finding of adequacy.  Accordingly, Gaviria should personally be disqualified from moving for an appointment as lead plaintiff, as part of a group or otherwise.

### 2.   The Gaviria Group Fails to Establish Direct Cohesiveness Between Its Members

While groups of unrelated investors "are not per se impermissible lead plaintiffs under the PSLRA," such movants "will not be deemed adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation."  *Sabbagh v. Cell Therapeutics, Inc.*, 2010 U.S. Dist. LEXIS 93614, at *14-15 (W.D. Wash. Aug. 2, 2010).  Courts in this District typically appoint a group with pre-existing relationships, or in the alternative, a group which provides sufficient evidence to show that it can effectively manage the litigation and function as a unified group.  *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532-33 (N.D. Cal. 2009) ("A group without a preexisting

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

relationship or decision making apparatus is likely to run afoul of the PSLRA's objective of placing control of the litigation with the parties instead of the lawyers.") (citation omitted).  To evidence such cohesiveness and ability to manage the litigation, the "proposed group should provide descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation." *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *32 (N.D. Cal. May 3, 2005) (citation omitted).

Here, the Gaviria Group's declaration fails to convey any evidence of pre-existing relationships or solidarity amongst its members.  ECF No. 39-2 at 2-5.  There is no evidence of a conference call between the members of the Gaviria Group regarding the group's structure, responsibilities, litigation strategies, or establishing a mechanism for resolving potential disagreements.  Indeed, the declaration provides no indication that any of the Gaviria Group members have ever communicated directly with each other.  Rather, the declaration merely contains a vague statement that "[w]e have established communication channels so we can efficiently communicate with each other and with our counsel regarding this litigation."  *Id.* at ¶ 7.  This is particularly concerning as, absent any cohesion, operating procedures, or even dispute resolution mechanisms, the Gaviria Group could not efficiently manage and direct this litigation and supervise two different firms serving as "co-lead counsel" and an additional third firm.  *See Hodges*, 263 F.R.D. at 532-33 ("A group without a preexisting relationship or decision making apparatus is likely to run afoul of the PSLRA's objective of placing control of the litigation with the parties instead of the lawyers.") (citation omitted); *In re Versata, Inc.*, 2001 U.S. Dist. LEXIS 24270, at *19-20 (N.D. Cal. Aug. 20, 2001) (in determining the adequacy of a group movant, "the singular focus [should] be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel").

Furthermore, the Gaviria Group's decision to appoint two firms as co-lead counsel, and a third as "additional counsel," calls into question its prospective ability to manage various its counsel.  *See, e.g.*, *Miller*, 2001 U.S. Dist. LEXIS 26027, at *48 ("Despite possible benefits for division of labor and sharing of resources, there is also a serious drawback when multiple firms are charged with representing

17 Case No. 3:17-cv-06779-RS

one group.  The potential for conflict between the firms in terms of strategy is apparent.  To the extent that one firm assume the leadership position in the litigation, it begs the question of the true need for additional firms.").

*In re Microstrategy*, 110 F. Supp. 2d 427, is particularly analogous to facts concerning the Gaviria Group's lack of cohesion, ability to manage its counsel, and overall ability to adequately represent the proposed Class.  In *Microstrategy*, the court denied a group's motion for lead plaintiff and lead counsel, finding it inadequate to represent the proposed class.  *Id*. at 437.  The movant group was comprised of members with no prior relationships who had not submitted any evidence indicating it was a cohesive group, and who proposed three firms to serve as co-lead counsel.  *Id*.  In denying the group's motion, the court explained:

> [T]here was nothing in the record to provide any assurance that the group was cohesive, comprised of like-minded members, or otherwise likely to function as a unified group.  The group failed to present evidence with respect to its formation, its operational structure, or whether the members of the group had ever communicated with one another about their roles.  Furthermore, the group retained *three* law firms to serve as co-lead counsel; this fact suggests the group was merely a diverse collection of plaintiffs assembled by these three firms for the purpose of winning the lead plaintiff role, allowing them to share the lead counsel role.  *Cf. In re Telxon*, 67 F. Supp. 2d at 813 (noting that the retention of multiple law firms to represent multiple members of a "group" is evidence that the group is not unified).

*Id*.

The appropriate time to disqualify the Gaviria Group and prevent the proposed Class from facing unnecessary risks attendant with Gaviria or the Gaviria Group serving as lead plaintiff is the present.  The proposed Class should not unnecessarily be subjected to these risks.  *See In re IMAX Sec. Litig.*, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009) (finding that "[w]ere we to permit [movant] to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal.  There seems little reason for us to subject the class members to such a risk.").

**D.     The Tezos Investor Group Has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule Civil Procedure 23**

After excluding the inadequate movants, the Tezos Investor Group is the plaintiff with the largest financial interest in the litigation that otherwise has made a *prima facie* showing of "typicality"

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

and "adequacy" under Rule 23.  *See* ECF No. 49-1 at 10-13.  The Tezos Investor Group's claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because its claims arise from the same course of conduct by Defendants that gives rise to the other proposed Class members' claims and are based on the same legal theories.  *See In re Chase Bank United States, N.A.*, 274 F.R.D. 286, 292 (N.D. Cal. 2011).  Like other members of the proposed Class, the members of the Tezos Investor Group purchased unregistered securities from Defendants, in the form of a promise for Tezos Tokens, and were injured thereby.  As detailed in the Tezos Investor Group's motion for lead plaintiff, the group collectively expended 64.97925707 ETH and 4 BTC to purchase the unregistered securities from Defendants during the Class Period.  *See* ECF No. 49-2.  Accordingly, the Tezos Investor Group is the largest applicant seeking appointment as lead plaintiff that also satisfies the typicality and adequacy requirements of Rule 23.[16]

Further, as noted above, and evidenced by the Tezos Investor Group's joint declaration in support of its motion for appointment as lead plaintiff, the group has made the requisite showing through cognizable evidence "that the members of the group will act collectively and separately from their lawyers."  *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 91418, at *6 (S.D.N.Y. Dec. 6, 2007) (noting that "[t]he issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may.  But . . . there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (citation omitted).  The group is comprised of three sophisticated investors experienced in cryptocurrency markets that each have a significant financial interest in the litigation.  ECF No. 49-2 at ¶¶ 2-4.  Moreover, two of the three group members have a pre-existing relationship, which involved them conferring on and determining to invest in the Tezos ICO, and ultimately resulted in both of them

---

[16] To note, the GGCC Group's financial interest in the Action is significantly less than the Tezos Investor Groups', and therefore, the Tezos Investor Group is the presumptive lead plaintiff. Additionally, it should be noted that to the extent the court were inclined to consider which individual in the various movant groups has the largest financial interest in reaching a decision, the Court should calculate Andreasson's and Reckenbeil's financial interest jointly. *See In re Netflix*, 2012 U.S. Dist. LEXIS 59465 at *17 (declining to aggregate losses of group comprised of unrelated investors and permitting aggregation of losses of movant group where they "have shown a pre-existing relationship which indicates their cohesion and ability to adequately control and oversee the litigation.") (quotation omitted).

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

1    reaching out to Levi & Korsinsky to serve as lead plaintiff together. *Id*. at ¶¶ 2, 4.

2    Furthermore the group held a joint conference call with all members present, during which the

3    group extensively discussed the merits of the Actions, their desire to zealously advocate on behalf of

4    the Class, a strategy for prosecuting the Actions, the responsibilities of serving as lead plaintiff, the

5    benefits of managing this litigation collectively, the groups' duty to oversee counsel and direct the

6    course of the litigation, and established a majority vote procedure to overcome any potential

7    disagreements concerning the management and direction of the litigation. *Id*. at ¶¶ 6-8. The Tezos

8    Investor Group members determined not only to connect via telephone, and email, but also to connect

9    on via their personal social media accounts so as to establish multiple methods of communication in

10   furtherance of ensuring regular, and efficient, discussions and deliberations can be held regarding the

11   group's oversight of counsel and direction and prosecution of the litigation. *Id*. at ¶ 6.

12   Such a cohesive group is appropriate for lead plaintiff appointment. *See Johnson v. OCZ Tech.*

13   *Group*, 2013 U.S. Dist. LEXIS 1610, at *8 (N.D. Cal. Jan. 4, 2013) (J. Seeborg) (stating that small and

14   cohesive groups are "routinely appointed as Lead Plaintiff in securities actions when they have shown

15   their ability to manage the litigation effectively in the interests of the class without undue influence of

16   counsel") (citing *Versata*, 2001 U.S. Dist. LEXIS 24270, at *6-7). Accordingly, the Tezos Investor

17   Group has provided ample evidence showing its cohesiveness, understanding of its responsibilities, and

18   willingness and ability to effectively and zealously advocate on behalf of the Class. *See Versata*, 2001

19   U.S. Dist. LEXIS 24270, at *25-26 (approving appointment where the group "expressed their

20   individual desire to take a pro-active role in vigorously representing the class and directing counsel . .

21   .; shown that it can and does intend to work collectively toward their goals;" established a regular

22   meeting schedule and emergency meeting procedures; and had "a procedure to resolve disagreements

23   between members and avoid impasse").

24   Moreover, the Tezos Investor Group has selected and retained Levi & Korsinsky as the

25   proposed Lead Counsel. The attorneys with Levi & Korsinsky have extensive experience in

26   successfully prosecuting complex securities class actions such as these, and are well-qualified to

27   represent the Class. Indeed, numerous courts throughout the country have appointed Levi & Korsinsky

28   as lead counsel in securities class action lawsuits. Within the Northern District of California alone, the

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF
COUNSEL

firm currently serves as lead counsel in *Huang v. Depomed, Inc.*, 3:17-cv-04830-JST (N.D. Cal.) (J. Tiger); and *Rodriguez v. Gigamon Inc.*, 5:17-cv-00434-EJD (N.D. Cal. July 26, 2017) (J. Davila), and has previously served as lead counsel in *In re Energy Recovery Inc. Sec. Litig.*, 3:15-cv-00265-EMC (N.D. Cal.) (J. Chen); *In re Violin Memory Securities Litigation*, No. 13-cv-5486-YGR (N.D. Cal.) (J. Rogers); and *In re OCZ Technology Group, Inc. Securities Litigation*, No. 3:12-cv-05265-RS (N.D. Cal.) (J. Seeborg).

Additionally, Levi & Korsinsky is prosecuting multiple ICO related securities class actions wherein the firm has secured efficient and significant benefits for investors. For example, in *Davy v. Paragon Inc., et al*, 13-cv-00671-JSW (J. White), Levi & Korsinsky was able to secure an agreement with defendants under which defendants are providing early discovery and certain assurances regarding the uses of any funds or assets raised during the ICO. *Davy* Action ECF No. 16. Significantly, due to Levi & Korsinsky's vigorous and efficient prosecution, this agreement was secured within six (6) days of filing the action. *Davy* Action ECF Nos. 1; 16. In sum, with approximately 30 attorneys across four different offices, Levi & Korsinsky stands ready, willing, and able to prosecute this case. ECF No. 49-2 at 26.

## III.   ALL RELATED ACTIONS SHOULD BE CONSOLIDATED

Counsel for Trigon's contention that the *MacDonald* Action should not be consolidated with the rest of the Related Actions ignores the actual test for when actions should be consolidated under Fed. R. Civ. P. 42(a). Under Rule 42(a), consolidation is appropriate when the actions involve common questions of law **or** fact. *See id*; *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999); *see also Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation.") (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, 1999 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted).

Here, despite the fact that the *MacDonald* Action is brought under state law claims, the factual

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL

circumstances underpinning the claims are identical—Defendants offered and sold unregistered securities in violation of the federal (and/or state) securities laws.  Accordingly, consolidation under Rule 42(a) is appropriate.  *See Celotex Corp.*, 899 F.2d at 1285.

## CONCLUSION

For the foregoing reasons, the Tezos Investor Group respectfully requests that this Court: (1) appoint the Tezos Investor Group as Lead Plaintiff for the Class in the Actions; (2) approve Levi & Korsinsky as Lead Counsel; and (3) consolidate the Related Actions.

Respectfully submitted,

Dated: February 8, 2018

**LEVI & KORSINSKY, LLP**

By: _/s/ Donald J. Enright_____
Donald J. Enright (admitted *pro hac vice*)
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121

Rosemary M. Rivas
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Attorneys for Movants Nicolas Andreasson, Paul Martin, and Richard Reckenbeil*

THE TEZOS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF AND APPROVAL OF COUNSEL