Joel A. Fleming (SBN 281264)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
joel@blockesq.com
jake@blockesq.com

*Attorneys for Movant Trigon Trading Pty. Ltd.*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GGCC, LLC, an Illinois Limited Liability Company, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware Corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, and ARTHUR BREITMAN, an Individual,<br><br>Defendants. | Case No. 3:17-cv-06779-RS<br><br>**TRIGON TRADING PTY. LTD.'S REPLY IN SUPPORT OF MOTION FOR CONSOLIDATION OF PSLRA CASES, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF COUNSEL**<br><br>Date:      March 1, 2018<br>Time:      1:30 p.m.<br>Courtroom: 3<br>Judge:     Hon. Richard Seeborg |

| | |
|---|---|
| ANDREW OKUSKO, individually and on behalf of all others similarly situated, | Case No. 3:17-cv-06829 |
| Plaintiff, | |
| v. | |
| DYNAMIC LEDGER SOLUTIONS, INC., THE TEZOS FOUNDATION, KATHLEEN BREITMAN, ARTHUR BREITMAN, and TIMOTHY DRAPER, | |
| Defendants. | |
| ANDREW BAKER, individually and on behalf of all others similarly situated, | Case No. 3:17-cv-06850-RS |
| Plaintiff, | *Removed from San Francisco County Superior Court (Case No. CGC-17-562144)* |
| v. | |
| DYNAMIC LEDGER SOLUTIONS, INC., a Delaware Corporation, THE TEZOS FOUNDATION, a Swiss foundation, KATHLEEN BREITMAN, an individual, ARTHUR BREITMAN, an individual, JOHANN GEVERS, an individual, STRANGE BREW STRATEGIES, LLC, a California limited liability company, and DOES 1 through 100 inclusive, | |
| Defendants. | |

**TABLE OF CONTENTS**

I. Introduction ............................................................................................................... 1
II. Argument ................................................................................................................... 3
   B. No One Disputes That Trigon Has The Largest Financial Interest After Anvari ................ 3
   C. Trigon's Australian Citizenship Does Not Make It Atypical ............................................... 4
   D. Minor Clerical Defects In Trigon's Certifications Are Not Disqualifying ......................... 8
   E. The PSLRA Presumes That The Movant With The Largest Interest Can Be Trusted To Make Strategic Decisions For The Class ....................................................................................... 10
   F. The Court Does Not Need to Appoint Niche Plaintiffs ..................................................... 11
III. Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012) .................................................................................................. 4

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................................. 9, 11

*Blaich v. Employee Sols., Inc.*,
   No. 97-545-PHX-RGS, 1997 WL 842417 (D. Ariz. Nov. 21, 1997) ....................................... 9

*Borochoff v. Glaxosmithkline PLC*,
   246 F.R.D. 201 (S.D.N.Y. 2007) ....................................................................................... 6, 7

*Citizens Ins. Co. of Am. v. Daccach*,
   217 S.W.3d 430 (Tex. 2007) .................................................................................................. 6

*Gonzalez-Servin v. Ford Motor Co.*,
   662 F.3d 931 (7th Cir. 2011) ................................................................................................. 1

*Hufnagle v. Rino Int'l Corp.*,
   No. CV 10-8695-VBFVBKX, 2011 WL 710704 (C.D. Cal. Feb. 14, 2011) ....................... 4, 7

*In re DaimlerChrysler AG Sec. Litig.*,
   216 F.R.D. 291 (D. Del. 2003) ............................................................................................... 6

*In re Herley Indus. Inc. Sec. Litig.*,
   No. CIV.A. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) ..................................... 11

*In re Hyundai & Kia Fuel Econ. Litig.*,
   No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018) ..................................................... 6

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003) ........................................................................................... 6, 7

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .............................. 11

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................................ 2, 9

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    No. 1:08-CV-7281 (JFK), 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ........................... 2, 10

*Mohanty v. BigBand Networks, Inc.*,
    No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008)............................................ 7

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010).................................................................................................. 1, 4, 11

*Niederklein v. PCS EdventuresA.com, Inc.*,
    No. 1:10-CV-00479, 2011 WL 759553 (D. Idaho Feb. 24, 2011) ....................................... 2, 10

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014)....................................................................................... 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................ 9

*Rao v. Quorum Health Corp.*,
    221 F. Supp. 3d 987 (M.D. Tenn. 2016)........................................................................... 2, 9

*Roby v. Ocean Power Techs., Inc.*,
    No. 14-CV-3799 FLW LHG, 2015 WL 1334320 (D.N.J. Mar. 17, 2015)......................... 2, 4, 9

*Sec. & Exch. Comm'n v. Traffic Monsoon, LLC*,
    245 F. Supp. 3d 1275 (D. Utah 2017) .................................................................................. 5

*Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*,
    864 F.3d 996 (9th Cir. 2017) ............................................................................................... 4

*Sgalambo v. McKenzie*,
    268 F.R.D. 170 (S.D.N.Y. 2010) ........................................................................................ 7

*Stone v. Agnico-Eagle Mines Ltd.*,
    280 F.R.D. 142 (S.D.N.Y. 2012) ........................................................................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................... 11

*Willcox v. Lloyds TSB Bank, PLC*,
    No. CV 13-00508 ACK-RLP, 2016 WL 8679353 (D. Haw. Jan. 8, 2016)............................... 6

**Other Authorities**

1 MCLAUGHLIN ON CLASS ACTIONS
   § 5:72 (14th ed.) ................................................................................................................ 7

Bishop, Douglas, Scott Grahame & Garth Williams,
   *Enforcing US judgments in Australia*, CLAYTON UTZ (June 2013) ........................................ 2, 6

Clark, S. Stuart et al.,
   *Enforcing U.S. and Other Foreign Judgments in Australia - What Are the Rules?*, 75 DEF.
   COUNS. J. 244, 251 (2008) ................................................................................................ 2, 6

McDonald, Scott & Kirk Simmons,
   *Litigation Update: Enforcement of Foreign Judgments In Australia*, DLA PIPER (Aug. 2013) ..
   ............................................................................................................................................ 2, 7

## I. INTRODUCTION

There is no dispute that Trigon has the largest financial interest of any movant who sought leadership of the PSLRA Cases by the PSLRA's sixty-day deadline. Therefore, to decide Trigon's motion seeking appointment as lead plaintiff, the Court must answer just two questions:

(1) Is Anvari disqualified by his failure to meet the deadline?

(2) Is Trigon typical and adequate?

The answer to both questions is yes.

Anvari is disqualified. A long line of cases, from within and without this District, stand for the same well-known proposition: the PSLRA's sixty-day deadline for filing a lead plaintiff motion is unequivocal and mandatory. Anvari's papers are silent on this critical question.[1] These tactics—*i.e.*, saving for reply whatever argument he has on this core issue and thereby depriving other movants of the opportunity to respond—are an implicit admission of the weakness of Anvari's position. "The … tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless."[2]

The movants with the weakest positions (Anvari, the Tezos Investor Group, and the GGCC Group)[3] attack Trigon's Australian citizenship.[4] None of these movants, however, address the post-*Morrison* authority cited in Trigon's opposition papers.[5] Those cases hold that a transaction is domestic under *Morrison* where, as here, the seller incurs irrevocable liability to

---

[1] This argument was not a secret to Anvari or his counsel. Undersigned counsel informed Anvari's counsel that he had missed the deadline during meet-and-confer discussions on January 31, 2018—more than a week before the opposition papers were filed.

[2] *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (Posner, J.).

[3] The Robbins Geller Group—which would, most likely, be next in line if Trigon was disqualified—does not make this argument.

[4] Notably, the *Okusko* complaint (filed by the Levi & Korsinsky firm representing the Tezos Investor Group) proposed a class definition that included both foreign and domestic investors. *See Okusko*, Compl. ECF No. 1 ¶ 17 (defining class to include "all investors in the Tezos ICO who are being, and will be, harmed by Defendants' actions described herein … absent judicial intervention."). The Tezos Investor Group is silent on the basis for its counsel's change of heart.

[5] *See Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247 (2010) (cited in ECF No. 79).

deliver the security in the United States. In the Tezos ICO, the seller that incurred that liability is Dynamic Ledger Solutions—which is incorporated in Delaware and headquartered in this District. No competing movant has suggested any other way to interpret the facts or apply the relevant case law. Cross-movants' remaining cases all involve foreign investors from countries that don't recognize U.S. judgments. But Australia does enforce U.S. judgments.[6] Thus, Trigon's status as an Australian entity is simply not relevant to its adequacy or typicality.

*Third*, Anvari and the Tezos Investor Group offer immaterial criticisms of supposed clerical defects in certifications submitted with Trigon's motion. In addition to being misplaced on the merits, these arguments miss a more fundamental problem. In this District, Local Rule 3-7(c) provides that a movant (such as Trigon) that does not file a complaint is not required to file a sworn PSLRA certification, period. Thus, any clerical defects in Trigon's supererogatory certification cannot be disqualifying. Even in those districts where all movants are required to file a certification, courts routinely allow certifications to be amended to address potential minor non-disqualifying issues.[7] Here, for avoidance of doubt, Trigon has filed an amended

---

[6] Douglas Bishop, Scott Grahame, Garth Williams, *Enforcing US judgments in Australia*, CLAYTON UTZ (June 2013), http://bit.ly/2EdMYIc; *see also* S. Stuart Clark et al., *Enforcing U.S. and Other Foreign Judgments in Australia - What Are the Rules?*, 75 DEF. COUNS. J. 244, 251 (2008) ("The recognition and enforcement of U.S. judgments in Australian courts is governed by common law principles."); Scott McDonald, Kirk Simmons, *Litigation Update: Enforcement of Foreign Judgments In Australia*, DLA PIPER (Aug. 2013), http://bit.ly/2H3RnPU ("If a bilateral instrument does not apply, a judgment creditor might apply to the Court to enforce a foreign judgment (*e.g.* a judgment from the USA) under common law.").

[7] *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) (collecting cases); *see also Roby v. Ocean Power Techs., Inc.*, No. 14-CV-3799 FLW LHG, 2015 WL 1334320, at *9 (D.N.J. Mar. 17, 2015) ("Courts have found supplemental certifications sufficient to remedy deficiencies in the PSLRA certification.") (collecting cases); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538–39 (S.D.N.Y. 2015) ("The failure to correct obvious or inconsequential clerical errors, like the ones at issue, simply is not the type of adequacy issue that would divert the fact finders' attention from the merits and thus infect the claims of the class as a whole."); *Niederklein v. PCS EdventuresA.com, Inc.*, No. 1:10-CV-00479, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011) ("minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-CV-7281 (JFK), 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("Central States submitted an amended certificate correcting the defect promptly after it

certification mooting any minor clerical errors.

*Finally*, the Robbins Geller Group appropriately acknowledges that Trigon has the largest financial interest of any timely movant and otherwise satisfies the requirements of Rule 23. The Robbins Geller Group asks the Court to be appointed *with* Trigon because it invested both Bitcoin and Ethereum and its members are based in the United States. But the appointment of multiple niche plaintiffs is unnecessary. Trigon's investment was a domestic transaction, making its citizenship irrelevant. And no movant has explained why Bitcoin investors are differently situated than Ethereum investors.

## II. ARGUMENT

### A. Anvari Is Disqualified

As set forth in Trigon's opposition papers, the PSLRA's sixty-day deadline is strict and Anvari missed it. *See* ECF No. 79 at 5-6. That Anvari filed a motion on the sixtieth day in the *MacDonald* Action is irrelevant; that action alleges state-law claims only and is not subject to the PSLRA. *Id.* at 5. Anvari's motion in *MacDonald* did not seek consolidation with (or even mention) any of the PSLRA Cases. *Id.*[8]

### B. No One Disputes That Trigon Has The Largest Financial Interest After Anvari

The Robbins Geller Group and the Tezos Investor Group agree that Trigon has the largest financial interest of any timely filer. ECF No. 77 at 2; ECF No. 76 at 2. Anvari, of course, asserts that he is qualified but recognizes that Trigon's financial interest is the next largest. ECF No. 80 at 5. Anvari's supporter—the GGCC Group—implicitly acknowledges that Trigon has the largest financial interest if Anvari is disqualified. ECF No. 82 at 3.

---

was discovered.").

[8] Anvari makes a belated pitch for consolidation in his opposition papers, purporting to "join" the request for consolidation included with the Tezos Investor Group's timely lead plaintiff motion. ECF No. 80 at 2-4. This request was two weeks too late. *Griego v. County of Maui*, No. 15-00122 SOM-KJM, 2017 WL 2882695, at *5 (D. Haw. July 6, 2017) ("[A]n opposition memorandum is not usually an appropriate vehicle for a new motion.").

3

## C. Trigon's Australian Citizenship Does Not Make It Atypical

The other movants' central attack is on Trigon's Australian citizenship.[9]

But as set out in Trigon's opposition papers, before and after *Morrison*, courts routinely appoint foreign investors as lead plaintiffs as long as the transactions were subject to the U.S. securities laws. *See* ECF No. 79 at 7-8 and cases cited therein; *see also Roby*, 2015 WL 1334320, at *12 ("foreign entities are regularly appointed as lead plaintiffs in securities class actions."; concerns arise "only in cases involving 'foreign cubed' plaintiffs—foreign investors who purchased shares of a foreign company on a foreign securities exchange."); *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBFVBKX, 2011 WL 710704, at *7 (C.D. Cal. Feb. 14, 2011) (concerns regarding "foreign lead plaintiffs [have] been explicitly rejected when the foreign lead plaintiff movants are suing as a result of [domestic] purchases[.]").

Post-*Morrison*, a securities transaction which does not take place on an exchange—such as the Tezos ICO—is domestic if the seller incurred "irrevocable liability within the United States to deliver a security." ECF No. 79 at 7-8 (quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67-68 (2d Cir. 2012); *Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1008 (9th Cir. 2017)).[10] Here, the securities to be delivered are the Tezos tokens, which will exist on the Tezos blockchain. *GGCC* Complaint, ECF No. 1 ¶¶ 1, 18, 21, 33, 34, 86. The liability to deliver those securities was incurred by Dynamic Ledger Solutions, which owns all of the intellectual property in the Tezos project, including the source code for the Tezos

---

[9] The GGCC Group's accusation that Trigon was somehow trying to hide its citizenship (ECF No. 82 at 6) is absurd. The fifth word in the first Google search result for "Trigon Trading Pty" is "Australia."

[10] The Tezos Investor Group's citation of *World Capital Market* is, to say the least, incomplete. The Tezos Investor Group says "Further as noted in *SEC v. World Capital Mkt., Inc.*, the Ninth Circuit has 'yet to address what constitutes a domestic transaction under *Morrison* . . . .' 864 F.3d 996, 1008 [n.11] (9th Cir. 2017)." ECF No. 76 at 12 n.15.

What the Tezos Investor Group conceals by ellipses is the Ninth Circuit's endorsement of *Absolute Activist v. Ficeto*: "We have yet to address what constitutes a domestic transaction under Morrison, <u>but the Second Circuit's analysis of this issue in *Ficeto* is instructive</u>." *World Capital Market*, 864 F.3d at 1009 n.11 (emphasis added).

4

blockchain. *Id.* ¶ 13. DLS is a California-headquartered, Delaware-incorporated corporation. *Id.* Thus, it incurred that liability in the United States. *See Sec. & Exch. Comm'n v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1295 (D. Utah 2017) ("Traffic Monsoon sold all of the AdPacks over the internet to both foreign and domestic purchasers. In all of these transactions, the seller of these securities, a Utah LLC, incurred irrevocable liability in the United States to deliver this security. Thus, all of the transactions satisfy the domestic transaction test under Morrison and Absolute Activist."). None of the other movants provide any analysis of *Absolute Activist* or other post-*Morrison* cases or provide any way to interpret the facts other than a domestic transaction in which DLS incurred irrevocable liability to deliver a security in the United States.

Because Trigon's purchases were domestic, the cross-movants' Australian arguments collapse. None of the cases they cite support the rejection of an Australian lead-plaintiff movant that purchased its securities in a domestic transaction. Most have nothing to do with *Morrison* or foreign-investor issues at all and simply state generic principles relating to the typicality inquiry. Only the GGCC Group even cited cases addressing the suitability of foreign lead plaintiffs.[11] None supports disqualifying Trigon.

Particularly puzzling is the GGCC Group's citation to *Citizens Ins. Co. of Am. v.*

---

[11] The GGCC Group has joined with (and appears to be acting as a cat's paw for) Anvari. *See* ECF No. 80 at 9 ("Counsel for the GGCC Group has offered to support Mr. Anvari's motion and to collaborate with Mr. Anvari in the prosecution of this action").

This "support" is irrelevant. Coalition-building and logrolling may be a familiar practice in tag-along derivative cases. *See, e.g.*, Jessica Erickson, *The Market for Leadership in Corporate Litigation*, 2015 U. ILL. L. REV. 1479, 1496–97 (2015) (quoting members of the plaintiffs' bar on leadership negotiations in derivative and other intra-corporate litigation in which the leadership appointment process is not governed by the PSLRA: "It looks a lot like politics."; "The rules lead to leadership structures that are 'inefficient' and 'ridiculous.'"; "The negotiations do not have 'anything to do with the merits of the case.'"). But those practices are antithetical to the policies underlying the PSLRA. *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) ("The inquiry into whether a party should be lead plaintiff begins with comparing the party's financial interest with that of the other movants. In structuring the inquiry this way, Congress intended that securities class actions, as far as possible, be client-driven and not lawyer-driven."); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation."). One losing movant's support for another adds nothing to the PSLRA analysis.

5

1  *Daccach*, 217 S.W.3d 430 (Tex. 2007) (ECF No. 82 at 4-5) in support of the argument that
2  Trigon's Australian citizenship renders it inadequate. There, the Supreme Court of Texas
3  *affirmed* the trial court's ruling that the Texas Securities Act applied to claims by a nationwide
4  class because the defendant sold "securities in or from Texas without registering as a dealer." *Id.*
5  at 447. The court's remand on adequacy issues was based on the trial court's failure to analyze
6  the effect of the class representative's abandonment of certain claims. *Id.* at 460. Here, no one
7  has identified any claims that Trigon has (or would) abandon.[12]

8        The GGCC Group's remaining cases all focused on foreign plaintiffs from countries that
9  don't recognize U.S. judgments. *See Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 203
10 (S.D.N.Y. 2007) (declining to appoint German lead plaintiff "because any judgment in this
11 action (whether favoring plaintiffs or defendants) may be refused enforcement by a German
12 court.") (cited in ECF No. 82 at 4); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343,
13 353 (D. Md. 2003) (cited in ECF No. 82 at 4) (expressing concern about "the possibility that
14 foreign courts will not enforce a decision in favor of Royal Ahold against foreign plaintiffs in the
15 class"); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 301 (D. Del. 2003) (cited in ECF
16 No. 82 at 5) (excluding class members whose "foreign courts will not recognize and enforce a
17 United States judgment"); *Willcox v. Lloyds TSB Bank, PLC*, No. CV 13-00508 ACK-RLP, 2016
18 WL 8679353, at *9 (D. Haw. Jan. 8, 2016) (cited in ECF No. 82 at 5) (recognizing trend of
19 "excluding from the class those whose home countries would not honor a class judgment from
20 the United States.").

21       These cases have no application to Trigon or other Australian plaintiffs. Judgments of
22 U.S. courts "can be enforced in Australia under the common law procedure." Bishop, Grahame
23 & Williams, *supra*; *see also* Clark et al., *supra* at 251 ("The recognition and enforcement of U.S.

---

[12] The GGCC Group's citation to the Ninth Circuit's decision reversing class certification in *Hyundai* (a/k/a *Espinosa v. Ahearn*) is similarly far afield. There, certification foundered on the district court's failure to "rigorously analyze potential differences in state consumer protection laws." *In re Hyundai & Kia Fuel Econ. Litig.*, No. 15-56014, 2018 WL 505343, at *12 (9th Cir. Jan. 23, 2018). Here, the PSLRA Cases assert claims only under the federal Securities Act.

judgments in Australian courts is governed by common law principles."); McDonald & Simmons, *supra* ("If a bilateral instrument does not apply, a judgment creditor might apply to the Court to enforce a foreign judgment (*e.g.* a judgment from the USA) under common law.").

Courts, in this District and elsewhere, have regularly rejected this same argument where, as here, competing movants utterly failed to meet their burden[13] of demonstrating that the movant's country would not enforce a U.S. judgment. *See, e.g.*, *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) (distinguishing *Borochoff* and *Royal Ahold* and refusing to disqualify Cypriot lead-plaintiff-movant where "the arguments and evidence presented by [the competing movant were] a totally inadequate basis for this Court to form any opinion as to whether Cypriot courts would give binding effect to this Court's judgments."); *Hufnagle*, 2011 WL 710704 at *7 (refusing to disqualify lead-plaintiff-movant from Luxembourg where opposing movants "failed to provide adequate proof showing that a judgment of this Court would not be granted res judicata effect in Luxembourg."); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 407 (D. Del. 2014) (distinguishing *Borochoff* and *Royal Ahold* and refusing to disqualify French lead-plaintiff-movant where competing movant "provided no proof that French courts would not give a judgment against [the movant] res judicata effect…"); *Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012) ("The Court is not persuaded that AP1 is inadequate to serve as lead plaintiff due to the risk of Swedish courts denying res judicata effect to this Court's ruling. No proof has rebutted the presumption that AP1 should serve as lead plaintiff."); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176 (S.D.N.Y. 2010) (distinguishing *Borochoff* and refusing to disqualify Belgian lead-plaintiff-movant where "[n]o evidence or expert submissions on Belgian law [was] presented[.]"). This Court should do the same.

---

[13] 1 MCLAUGHLIN ON CLASS ACTIONS § 5:72 (14th ed.) (challenge to a foreign investor's appointment as lead plaintiff will be denied where "the party opposing a foreign investor's appointment as lead plaintiff [fails] to substantiate the assertion that a strong possibility exists that the courts of the foreign investor will not recognize the U.S. judgment").

7

**D.     Minor Clerical Defects In Trigon's Certifications Are Not Disqualifying**

The Tezos Investor Group and Anvari quibble with the details of Trigon's "Certification of Plaintiff Pursuant to Federal Securities Laws" (ECF No. 56-2) and its "Certification of Interested Entities or Persons" filed pursuant to Local Rule 3-15 (ECF No. 58), respectively.

With respect to the latter, Anvari argues that Trigon's Certification of Interested Entities or Persons (ECF No. 58) should have disclosed all of its officers and directors and the fact that they are Australian lawyers. *See* ECF No. 80 at 7. As set forth in Trigon's Supplemental Statement Regarding Certification Of Interested Entities Or Persons (ECF No. 73), Anvari's reading of the Local Rule is overly literal and not consistent with the practice of other parties in this litigation. *Compare* ECF No. 58 *with* ECF No. 28 (DLS's certification of interested entities, identifying only a single 10% shareholder: Draper Associates). Even if Anvari were correct, there was no prejudice. These relationships were readily identifiable and available to Anvari (and other movants) through Trigon's public filings. Anvari—himself an American lawyer—fails to connect any dots about the significance of these relationships or offer any explanation about why Australian lawyers might be suspicious or unsuited to participate in this action. Finally, L.R. 3-15 is not a statutory mandate of the PSLRA and, thus, cannot be a basis for disqualifying Trigon. This is particularly true because Trigon supplemented its LR 3-15 statement (before Anvari's brief was filed) by disclosing all of the additional information that Anvari highlights. *See* ECF No. 73 and 73-1.

With respect to the former, the Tezos Investor Group—which has a smaller financial interest than Trigon, the Robbins Geller Group, and Anvari, and thus attacks the certifications of all three movants—attacks Trigon's Certification of Plaintiff Pursuant to Federal Securities Laws (ECF No. 56-2) on two grounds: (1) the Trigon Certification purportedly provides insufficient evidence of Anna Dupont's authority to execute the Certification on behalf of Trigon and (2) Trigon's certification's reference to signing under penalty of perjury does not specify "under penalty of perjury <u>under the laws of the United States of America</u>." ECF No. 76 at 12-13 (emphasis added).

8

1    These arguments fail for two independent reasons.

2    *First* and most importantly, the Tezos Investor Group ignores Local Rule 3-7(c), which
3    makes clear that a lead plaintiff movant who has not filed a complaint is under no obligation to
4    file *any* sworn certification. *See* L.R. 3-7(c); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d
5    1146, 1156 (N.D. Cal. 1999) ("It is difficult to argue that Florida has acted in bad faith when it
6    has complied with the Local Rules. … The court therefore does not find that Florida is barred
7    from serving as lead plaintiff because it failed to file a certification."). Given that Trigon was not
8    required to file *any* sworn certification, it cannot possibly be the case that minor, inadvertent
9    mistakes in a supererogatory filing are disqualifying. *Cf. Pirelli Armstrong Tire Corp. Retiree*
10   *Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 407 (S.D.N.Y. 2004) ("it is unsettled
11   whether a candidate for lead plaintiff who has not filed a complaint is even required to submit
12   such a certificate. In light of this dispute and of the court's acknowledged discretion in
13   conducting the appointment process, the existence or adequacy of any certificates submitted here
14   will not be considered a determinative factor at [the lead-plaintiff-appointment] stage[.]"); *Blaich*
15   *v. Employee Sols., Inc.*, No. 97-545-PHX-RGS, 1997 WL 842417, at *2 (D. Ariz. Nov. 21, 1997)
16   (rejecting argument "that the certification signed on behalf of the Philadelphia Group was
17   deficient in not listing other cases in which the City of Philadelphia was appointed as lead
18   plaintiff. … As discussed above, the Philadelphia Group had no obligation under the PSLRA to
19   file such a certification because it did not file the Complaint.").

20   *Second*, even in those Districts that do require all movants to file a certification, courts
21   routinely disregard minor, clerical errors or allow movants to file corrected certifications after
22   the 60-day deadline (as long as the original motion was timely filed). "As the certification
23   requirement in the PSLRA does not have a time limit, many courts have allowed lead plaintiff
24   movants to amend their certifications if issues arose." *Rao*, 221 F. Supp. 3d at 989 (collecting
25   cases); *see also Roby*, 2015 WL 1334320 at *9 ("Courts have found supplemental certifications
26   sufficient to remedy deficiencies in the PSLRA certification.") (collecting cases); *Khunt*, 102 F.
27   Supp. 3d at 538–39 ("The failure to correct obvious or inconsequential clerical errors, like the

28

9

ones at issue, simply is not the type of adequacy issue that would divert the fact finders' attention from the merits and thus infect the claims of the class as a whole."); *Niederklein*, 2011 WL 759553 at *11 ("minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement"); *Kuriakose*, 2008 WL 4974839 at *8 ("Central States submitted an amended certificate correcting the defect promptly after it was discovered.").

Here, to moot any possible issues with its certification, Trigon is submitting an amended certification that more clearly establishes Ms. Dupont's authority to sign on behalf of Trigon and which is executed "under penalty of perjury under the laws of the United States of America." *See* Reply Declaration of Jacob Walker, Ex. A.

### E. The PSLRA Presumes That The Movant With The Largest Interest Can Be Trusted To Make Strategic Decisions For The Class

The GGCC Group repeats the argument from its opening brief that other movants whose counsel sought a TRO are antagonistic to the Class.[14] *See* ECF No. 82 at 2 n.1 ("As the development team for the Tezos project is headed by defendant Andrew [*sic*] Breitman, and the funds from the ICO are in the (reputed) possession of defendant Tezos Foundation, the motions for preliminary injunctive relief threatened to starve the Tezos project of funding. Such moves demonstrate sharp antagonism with members of the proposed class that wish to receive their yet to be completed Tezos tokens."). Of course, the GGCC complaint—like the others—requests rescission (GGCC Compl. ¶¶ 8, 97). This would also "starve the Tezos project of funding" and would require Class members to give up their yet-to-be-completed tokens in exchange for the consideration they paid.

In any event, the GGCC Group's preference for less-than-vigorous prosecution is no basis to question the adequacy or typicality of other movants. This sort of strategic choice is committed to the sound discretion of the movant with the largest financial interest. "[T]he legislative history" of the PSLRA shows Congress believed that "investors with the largest

---

[14] With its co-counsel at Hagens Berman, Block & Leviton sought a TRO on behalf of plaintiff MacDonald in the *MacDonald* Action.

10

financial loss are generally the party best positioned to balance the interests of the class with the long-term interests of the company and its public investors." *In re Herley Indus. Inc. Sec. Litig.*, No. CIV.A. 06-2596, 2009 WL 3169888, at *10 (E.D. Pa. Sept. 30, 2009) (internal quotation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320–21 (2007) (The PSLRA's lead-plaintiff provisions "aimed to increase the likelihood that institutional investors—parties more likely to balance the interests of the class with the long-term interests of the company—would serve as lead plaintiffs.").

### F. The Court Does Not Need to Appoint Niche Plaintiffs

Finally, the Robbins Geller Group recognizes that Trigon has the largest financial interest of any timely movant and satisfies Rule 23. ECF No. 77 at 2. The Robbins Geller Group asks the Court to be appointed *with* Trigon as additional lead plaintiffs because its members invested both Bitcoin and Ethereum and its members are based in the United States. *Id.*

If—and only if—the Court disagrees with Trigon's analysis above and believes that Trigon might have a *Morrison* problem, Trigon agrees that it would be appropriate to appoint Trigon and the Robbins Geller Group together. Otherwise, however, this request should be denied. Block & Leviton and Robbins Geller regularly work together amicably and efficiently as co-lead counsel in other cases. In this action, however, the Court simply does not need to appoint additional plaintiffs. For the reasons set forth above, Trigon's Australian citizenship does not render it atypical. And no one has explained why a Tezos investor who paid with Bitcoin is differently situated than a Tezos investor who paid with Ethereum (nor could they). Absent that explanation, there is no need to appoint additional niche plaintiffs. *Aronson*, 79 F. Supp. 2d at 1151 ("The 'niche' plaintiffs have not met their statutory burden. Their speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories."); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *9 (S.D. Cal. Jan. 5, 2004) ("the majority of courts have refused to appoint niche lead plaintiffs") (collecting cases).

11

### III. CONCLUSION

Trigon has the largest financial interest of any timely movant and has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Trigon respectfully requests the Court consolidate the PSLRA Cases, appoint it as lead plaintiff in the PSLRA Cases, and approve Trigon's selection of counsel.

February 15, 2018

Respectfully submitted,

**BLOCK & LEVITON LLP**

/s/ Jacob A. Walker
Joel A. Fleming (SBN 281264)
Jacob A. Walker (SBN 271217)
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600 (phone)
(617) 507-6020 (fax)
joel@blockesq.com
jake@blockesq.com

*Counsel to Trigon Trading Pty. Ltd. and Proposed Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2018, I authorized the electronic filing of the foregoing with the Clark of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

          /s/ Jacob A. Walker
          Jacob A. Walker