| | |
|---|---|
| 1 | **LTL ATTORNEYS LLP** |
| 2 | Enoch H. Liang (SBN 212324) |
|   | 601 Gateway Boulevard, Suite 1010 |
| 3 | South San Francisco, California 94080 |
|   | Tel: 650-422-2130 |
| 4 | Fax: 213-612-3773 |
|   | enoch.liang@ltlattorneys.com |
| 5 | |
| 6 | James M. Lee (SBN 192301) |
|   | Caleb H. Liang (Bar No. 261920) |
| 7 | 300 S. Grand Ave., 14th Floor |
|   | Los Angeles, California 90071 |
| 8 | Tel: 213-612-8900 |
|   | Fax: 213-612-3773 |
| 9 | james.lee@ltlattorneys.com |
|   | caleb.liang@ltlattorneys.com |

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STAY *BAKER* ACTION** |
| ALL ACTIONS. | |
| | Date: May 24, 2018 |
| | Time: 1:30 p.m. |
| | Crtrm: 3 |
| | Judge: Hon. Richard Seeborg |

1 | **TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

2 | **PLEASE TAKE NOTICE THAT**, on May 24, 2018, at 1:30 p.m., before the Honorable Richard Seeborg of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Lead Plaintiff Arman Anvari ("Lead Plaintiff") will move before this court pursuant to 28 U.S.C. § 1651(a) for an order staying *Baker v. Dynamic Ledger Solutions, Inc., et al.*, No. 3:17-cv-06850-RS in the event that the action is remanded. This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order filed herewith, all pleadings and papers filed herein, the arguments made regarding this matter, and any other information properly before the Court.

Respectfully Submitted,

Date: April 18, 2018

LTL ATTORNEYS LLP

By: *s/ Enoch H. Liang*
    Enoch H. Liang
    LTL ATTORNEYS LLP
    601 Gateway Boulevard, Suite 1010
    South San Francisco, California 94080
    Tel:  650-422-2130
    Fax: 213-612-3773
    enoch.liang@ltlattorneys.com

    James M. Lee
    Caleb H. Liang
    LTL ATTORNEYS LLP
    300 S. Grand Ave., 14th Floor
    Los Angeles, California 90071
    Tel: 213-612-8900
    Fax: 213-612-3773
    james.lee@ltlattorneys.com
    caleb.liang@ltlattorneys.com

    Hung G. Ta
    JooYun Kim
    HUNG G. TA, ESQ., PLLC
    250 Park Avenue, 7th Floor
    New York, New York 10177
    Tel: 646-453-7288
    Fax: 646-453-7289
    hta@hgtlaw.com
    jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*

**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | Master File No. 17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO STAY *BAKER* ACTION**<br><br>Date: May 24, 2018<br>Time: 1:30 p.m.<br>Crtrm: 3<br>Judge: Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ................................................................................................................ ii

ISSUE TO BE DECIDED ....................................................................................................................1

PRELIMINARY STATEMENT .........................................................................................................1

I.     THE POWER OF FEDERAL COURTS TO ENJOIN STATE COURT
PROCEEDINGS UNDER THE ALL WRITS ACT AND ANTI-INJUNCTION ACT..........1

II.    THE PSLRA CONFERS ON LEAD PLAINTIFF ANVARI A UNIQUELY
FEDERAL RIGHT, AND THEREFORE "EXPRESSLY AUTHORIZES" THE
REQUESTED INJUNCTION. .......................................................................................................2

    A.     The PSLRA Creates "A Specific And Uniquely Federal Right" For Lead
Plaintiffs To Control Federal Securities Class Actions. ............................................3

    B.     Lead Plaintiff's Federal Right To Control The *In Re Tezos Securities Litigation*
Can Be Given Its Intended Scope Only If The *Baker* Action Is Enjoined. ..................8

CONCLUSION..................................................................................................................................12

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

# **TABLE OF AUTHORITIES**

**Page No(s).**

**CASES**

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970) ..................................................................................................... 2

*Blalock Eddy Ranch v. MCI Telecomm. Corp.*,
  982 F.2d 371 (9th Cir. 1992) ........................................................................................ 2

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) ........................................................................................ 7

*Cyan, Inc. v. Beaver County Employees Ret. Fund*,
  200 L. Ed. 2d 332 (2018) ..................................................................................... 3, 7, 8

*In re Baan Co. Sec. Litig.*,
  271 F. Supp. 2d 3 (D.D.C. 2002) .................................................................................. 7

*In re BankAmerica Corp. Sec. Litig.*,
  263 F.3d 795 (8th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002) ................................... 5, 7, 8, 11

*In re BankAmerica Corp. Sec. Litig.*,
  95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th Cir. 2001),
  *cert. denied*, 535 U.S. 970 (2002) ......................................................................... passim

*In re Cendant Corp.*,
  260 F.3d 183 (3d Cir. 2001) ......................................................................................... 7

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) .................................................................................. 7

*In re Lucent Techs. Sec. Litig.*,
  194 F.R.D. 137 (D.N.J. 2000) .................................................................................... 11

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......................................................................... 7

*In re Silicon Storage Tech., Inc.*,
  No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ........... 11

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ....................................................................................................... 3

*Mitchum v. Foster*,
  407 U.S. 225 (1972) .................................................................................................. 2, 3

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

*Reno v. Bossier Par. Sch. Bd.*,
   520 U.S. 471 (1997) .................................................................................................................. 8

*U.S. v. Price*,
   361 U.S. 304 (1960) .................................................................................................................. 8

**STATUTES**

15 U.S.C. § 77z-1(a)(2)(A)(ii) ........................................................................................................ 5

15 U.S.C. § 77z-1(a)(3)(A) ............................................................................................................ 4

15 U.S.C. § 77z-1(a)(3)(B)(i) ......................................................................................................... 5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) ............................................................................................. 5

15 U.S.C. § 77z-1(a)(3)(B)(v) ........................................................................................................ 5

15 U.S.C. § 77z-1(a)(3)(B)(vi) ....................................................................................................... 5

15 U.S.C. § 78u-4(a)(2)(A)(ii) ....................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A) ............................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(vi) ...................................................................................................... 5

28 U.S.C. § 1651(a) ....................................................................................................................... 1

28 U.S.C. § 2283 ............................................................................................................................ 1

**OTHER AUTHORITIES**

*H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess.* (1995) ........................................................ 3, 4

**TREATISES**

17A Fed. Prac. & Proc. Juris. § 4224 (3d ed.) ............................................................................... 3

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

## ISSUE TO BE DECIDED

Whether a writ in aid of this Court's jurisdiction staying *Baker v. Dynamic Ledger Solutions, Inc., et al.*, No. 3:17-cv-06850-RS in the event that the action is remanded ("*Baker* Action"), is "necessary or appropriate" under the All Writs Act, 28 U.S.C. § 1651(a).

## PRELIMINARY STATEMENT

Should this Court grant the remand motion that Plaintiff Andrew Baker ("Baker") filed on March 20, 2018 in the *Baker* Action, Dkt. No. 21, and that Lead Plaintiff opposed on April 3, 2018, Dkt. No. 22, Lead Plaintiff Anvari respectfully submits this memorandum of law in support of his motion to stay the *Baker* Action upon remand to San Francisco County Superior Court.

None of the provisions in the Private Securities Litigation Reform Act of 1995 ("PSLRA") concerning the appointment of a lead plaintiff can be given their intended scope if, contemporaneously with a federal district court's appointment of a lead plaintiff, a state court can vest control of duplicative litigation in another class member whose sole qualification is that his or her lawyer was first to file the same case in state court. Indeed, the lead plaintiff framework is a sham if state courts are free to empower class members, who have relatively insignificant financial interests, to direct discovery, assert legal theories, retain consultants and expert witnesses, make admissions, negotiate binding settlement agreements, and ultimately try cases to judgments that are *res judicata* as to the lead plaintiff and the class he or she already represents.

A ship cannot have two captains. Based on the specific facts of this case, the control of this litigation vested by the PSLRA in Lead Plaintiff Anvari would be frustrated if Plaintiff Baker were allowed to hijack the rudder and proceed with the *Baker* Action in state court.

## I. THE POWER OF FEDERAL COURTS TO ENJOIN STATE COURT PROCEEDINGS UNDER THE ALL WRITS ACT AND ANTI-INJUNCTION ACT.

A federal court's power to enjoin pending state court proceedings lies at the junction of two of the oldest and most fundamental statutes addressing federal judicial power: the All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act, 28 U.S.C. § 2283. The All Writs Act gives federal courts authority to enjoin state court actions, and provides: "The Supreme Court and all courts

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Anti-Injunction Act limits that power, and provides that: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Courts harmonize the All Writs Act and the Anti-Injunction Act by holding that, if a proposed injunction of a state court proceeding comes within any of the three exceptions stated in the Anti-Injunction Act, then it is authorized under the All Writs Act. *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286-87 (1970). The decision to enjoin state court proceedings is committed to the discretion of the district court. *Blalock Eddy Ranch v. MCI Telecomm. Corp.*, 982 F.2d 371, 375 (9th Cir. 1992).

In this case, the Anti-Injunction Act's first exception applies.

## II. THE PSLRA CONFERS ON LEAD PLAINTIFF ANVARI A UNIQUELY FEDERAL RIGHT, AND THEREFORE "EXPRESSLY AUTHORIZES" THE REQUESTED INJUNCTION.

The relevant test for determining whether a statute expressly authorizes an injunction was stated by the Supreme Court in *Mitchum v. Foster*, 407 U.S. 225 (1972), in which the Court held:

> [I]n order to qualify as an "expressly authorized" exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding. This is not to say that in order to come within the exception an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunction statute. *The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding.*

*Id.* at 237-38 (citations omitted, emphasis added). Thus, an injunction may be "expressly authorized" where (1) Congress "created a specific and uniquely federal right or remedy, enforceable in a federal court," and (2) such right can "be given its intended scope only by the stay of a state court proceeding." *Id.* Further, as the *Mitchum* Court explained, "in order to qualify under the 'expressly

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

authorized' exception of the anti-injunction statute, a federal law need not contain an express reference to that statute." *Id.* at 237. In addition, "a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." *Id.*

As discussed below, the injunction requested by Lead Plaintiff in this Motion satisfies the test enunciated in *Mitchum*. By enacting the PSLRA and establishing a mechanism to appoint a lead plaintiff in federal securities class actions, Congress created a "uniquely federal right" to control the *In re Tezos Securities Litigation*, which this Court effectuated by appointing Anvari as Lead Plaintiff and approving his selection of Lead Counsel. Dkt. No. 101 at 11-12. If this right is to be given its intended scope, and if Anvari's appointment is to fulfill its Congressional purpose, the *Baker* Action needs to be enjoined in order to prevent Plaintiff Baker from wresting control over this litigation from Lead Plaintiff Anvari. A stay of the *Baker* Action is thus authorized by the PSLRA and allowed by the Anti-Injunction Act.[1]

### A. The PSLRA Creates "A Specific And Uniquely Federal Right" For Lead Plaintiffs To Control Federal Securities Class Actions.

The PSLRA easily satisfies the first part of the *Mitchum* test, by granting lead plaintiffs the "specific and uniquely federal right" to control federal securities class actions, and by providing for court approval and appointment of lead counsel.

In 1995, Congress passed the PSLRA to correct what it perceived as unsatisfactory and abusive practices in the prosecution of securities class actions. *Cyan, Inc. v. Beaver County Employees Ret. Fund*, 200 L. Ed. 2d 332, 339-40 (2018) ("Congress passed the Reform Act principally to stem 'perceived abuses of the class-action vehicle in litigation involving nationally traded securities.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). One of Congress's chief concerns was the method by which class representatives and class counsel were selected. *H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess.*, pp. 32-35 (1995). It was Congress's view that there were individuals who acted as "professional plaintiffs" in securities class actions. These individuals would purchase a small number of shares in many public companies not

---

[1] Indeed, many other statutes, like the PSLRA, have been deemed to fall within the Anti-Injunction Act's "express authority" exception. *See* 17A Fed. Prac. & Proc. Juris. § 4224 at n.20 (3d ed.).

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

for investment but to be available as plaintiffs in class actions filed by attorneys with whom they had ongoing relationships. *Id.* at 32-33 ("Floor debate in the Senate highlighted that many of the 'world's unluckiest investors' repeatedly appear as lead plaintiffs in securities class action lawsuits").

Under the law and practice in effect prior to the PSLRA, the first plaintiff to file a purported class action was typically selected to serve as class representative once a class was certified, and his attorney was selected as class counsel. *Id.* at 33 (describing selection process as being on a "first come, first serve" basis). Control of securities class actions usually went to the plaintiff and attorney who won the "race to the courthouse." In Congress's view, the combination of professional plaintiffs and a race to the courthouse meant that securities class actions were typically controlled not by "real" plaintiffs with a substantial interest in the case or in advancing the interests of absent class members, but by attorneys primarily interested in the fees they could generate. *Id.* at 32-33.

To correct these problems and eliminate the "race to the courthouse," Congress sought to vest control of securities class actions in lead plaintiffs selected on the basis of their financial interest in the outcome of the litigation rather than on the basis of their sprinting ability. *Id.* at 33-34. Under the PSLRA, control of the case does not vest in the first plaintiff to file. Instead, when a class action lawsuit that is national in scope has been filed in federal court, that fact is widely published and all potential class members are given the right to apply to be lead plaintiff, so that the right to control the case can vest in the most adequate plaintiff, as defined by Congress.

Specifically, the PSLRA provides that when a securities class action is filed in federal court, the first plaintiffs to file shall, within 20 days of filing, "cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" that the case has been filed, the claims being asserted in the action, the purported class period, and the right of class members to move to serve as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A); 15 U.S.C. § 78u-4(a)(3)(A). Class members can move to be appointed lead plaintiff any time within 60 days of publishing of the first notice; the moving class members need not be named plaintiffs in any case. Within 90 days of the publishing of the notice, the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

capable of adequately representing the interests of class members . . ." 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" shall be the person, otherwise qualified, who "in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

"Professional plaintiffs" are expressly prohibited under the PSLRA from serving as lead plaintiffs in federal securities class actions. Any person seeking to be lead plaintiff must certify that he or she "did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this subchapter." 15 U.S.C. § 77z-1(a)(2)(A)(ii); 15 U.S.C. § 78u-4(a)(2)(A)(ii). Furthermore, no person may serve as a lead plaintiff in more than five securities class actions in any three-year period except as the court may otherwise permit. 15 U.S.C. § 77z-1(a)(3)(B)(vi); 15 U.S.C. § 78u-4(a)(3)(B)(vi).

To complete the effort to take control of securities class actions from class action attorneys rather than plaintiffs, the PSLRA provides that the attorneys who file a federal securities class action will not necessarily serve as class counsel. Instead, the lead plaintiff – that is, the plaintiff selected by the court as the most adequate plaintiff – selects the class counsel: "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v).

Based on its text and the above legislative history, the PSLRA thus confers a "specific and uniquely federal right," within the meaning of *Mitchum*, on lead plaintiffs appointed pursuant to the PSLRA's provisions.

The Eighth Circuit has reached the same conclusion. *See In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000) ("*BankAmerica I*"), *aff'd*, 263 F.3d 795 (8th Cir. 2001) ("*BankAmerica II*"), *cert. denied*, 535 U.S. 970 (2002). *BankAmerica* arose from allegations that the defendants violated federal securities laws by failing to make certain material disclosures in connection with the 1998 merger between the former BankAmerica Corporation and the former NationsBank Corporation to form new BankAmerica. *BankAmerica I*, 95 F. Supp. 2d at 1046. In the weeks that followed the merger, a number of class actions were filed in federal district courts and

California state court alleging claims against the same defendants for the same alleged misconduct. *Id.* One of the law firms, Milberg Weiss, filed both a federal class action and several California state class actions. *Id.* As explained by the district court, "[w]hen it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the federal case to focus on the California cases where no financial stake rules govern the selection of lead plaintiffs and lead counsel." *Id.* The plaintiffs in the federal case then sought to enjoin the California cases pursuant to the All Writs Act.

The district court granted the injunction. *Id.* at 1048-49, 1053. The district court recognized that the intent of Congress in enacting the PSLRA was to curb certain abusive practices in the prosecution of securities law class actions, and concluded that the lead plaintiff mechanism necessarily created new federal rights:

> Clearly, the PSLRA creates rights in plaintiffs possessing the greatest financial stake in the litigation. They have the right to be appointed lead plaintiffs, to control the course of the class action litigation, and to select class counsel of their choice.

*Id.* at 1049. "Accordingly, they have a federal right, created by Congress in the PSLRA, to control the course of this litigation through counsel of their choice." *Id.* at 1049-50. The district court further held that "[t]his right will be frustrated if this Court fails to enjoin the California proceeding." *Id.* at 1050. In particular, the district court noted the attempts by Milberg Weiss to circumvent the PSLRA, stating that "Milberg Weiss's behavior in these cases are precisely the sort of lawyer-driven machinations the PSLRA was designed to prevent. Hindsight now reveals that the simultaneous filing of suits in state and federal court was a blatant attempt at forum shopping. When the federal forum proved unsavory because Milberg Weiss would not be able to control that case, the firm simply took its marbles and went to play in the state court." *Id.*

On appeal, the Eighth Circuit upheld the district court's decision. The Eighth Circuit expressly agreed that lead plaintiffs appointed under the PSLRA are afforded "significant federal rights" and "decisional muscle" that other class members lack:

> We think it plain that the lead-plaintiff provisions of the PSLRA create significant federal rights that previously did not exist. It can hardly be gainsaid that the right to steer litigation of this magnitude is an important

6

> privilege. The lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff decisional muscle that other members of the class lack.

*BankAmerica II*, 263 F.3d at 801. *BankAmerica I* and *II* thus concluded, consistent with the legislative history, that the PSLRA bestowed significant legal authority on lead plaintiffs.

The Eighth Circuit is hardly alone in his regard. It is well established in the Ninth Circuit, and elsewhere, that lead plaintiffs have a duty to "monitor, manage and control the litigation, making, as is the case in ordinary cases, litigation decisions on resource allocation and settlement with, of course, the advice of, but not the prerogative of, class counsel." *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009) ("The [PSLRA] expressly provides that lead plaintiff has the power to select lead counsel, suggesting that the identity of the party selecting lead counsel was of substantial importance to Congress."); *In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001) ("Congress' clear intent in enacting the PSLRA was to transfer control of securities class actions from the attorneys to the class members (through a properly selected lead plaintiff)."); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (finding the "responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and direct class counsel"); *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 11 (D.D.C. 2002) ("[T]he legislative history makes clear that the lead plaintiff must do two things—select the lead counsel and control the litigation.").

The Supreme Court's recent ruling in *Cyan*, 200 L. Ed. 2d 332, affirming concurrent federal and state jurisdiction over Securities Act claims, does not compel a different result. The district court in *BankAmerica I* specifically rejected a similar argument as inconsistent with *Mitchum*. *Mitchum* concerned claims brought under 42 U.S.C. § 1983, which may be brought in federal or state court:

> While the PSLRA did not prevent the filing of securities litigation in state courts, such preemption is not required for a court to find that the Act of Congress expressly authorizes injunctions of state court proceedings. Indeed, *Mitchum* [ ], the case which provides the definitive test for the expressly authorized exception, involved a 42 U.S.C. § 1983 suit. Section 1983 suits may be brought in state court.

7

*BankAmerica I*, 95 F. Supp. 2d at 1050-51.[2]  Nor does Lead Plaintiff propose that *every* PSLRA case proceeding in parallel before federal and state courts falls within the Anti-Injunction Act exception. Rather, as argued in more detail in the next section, Lead Plaintiff Anvari argues that an injunction of the *Baker* Action is appropriate here based on the particular facts of this case.

### B. Lead Plaintiff's Federal Right To Control The *In Re Tezos Securities Litigation* Can Be Given Its Intended Scope Only If The *Baker* Action Is Enjoined.

In this case, allowing the *Baker* Action to proceed would frustrate Lead Plaintiff Anvari's PSLRA-conferred right to monitor, manage and control the litigation against Defendants.

*First*, allowing the *Baker* Action to proceed would inexorably force Lead Plaintiff to cede some measure of control over this litigation, because Plaintiff Baker's action is duplicative of the consolidated federal actions.  Like the federal cases, the *Baker* Action arises from the Tezos ICO; the primary wrongdoers are Dynamic Ledger Solutions, Inc., Tezos Stiftung, and Arthur and Kathleen Breitman; all the actions advance the legal theory that the Tezos ICO should have been registered with the Securities and Exchange Commission; and all seek to recover similar relief on behalf of the same proposed class. *Compare Baker* Action, Dkt. No. 1-1 (Baker Complaint), *with In re Tezos Sec. Litig.*, Dkt. No. 108 (Lead Plaintiff's Consolidated Complaint).  As this Court held, the *Baker* Action therefore "arises from the same factual predicate, advances similar legal theories, and seeks similar relief" as the consolidated actions, *In re Tezos Sec. Litig.*, Dkt. No. 101 at 4, and allowing the *Baker* Action to proceed following remand "would force DLS (and the other defendants) to expend resources defending against state court litigation that is likely to be largely duplicative of the federal actions," *Baker* Action, Dkt. No. 18.  Indeed, Plaintiff Baker has conceded his action and the federal actions are "duplicative." *Baker* Action, Dkt. 29 at 5.

---

[2] Moreover, *Cyan* only resolved a split among state and federal courts about whether SLUSA deprived state courts of jurisdiction over "covered class actions" asserting only Securities Act claims. *Cyan*, 200 L. Ed. 2d at 342.  Any conclusions it drew about Congressional purpose and intent as they relate to SLUSA would signify little about the PSLRA. *See Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 484-85 (1997) (observing "'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one'") (quoting *U.S. v. Price*, 361 U.S. 304, 313 (1960)); *see also BankAmerica II*, 263 F.3d at 802 (same).

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

*Second*, although Plaintiff Baker did not subject himself to the PSLRA's lead plaintiff process, he was afforded every opportunity to do so, and it is clear that he would not have been able to mount a credible challenge to Lead Plaintiff. Lead Plaintiff purchased the right to receive over 26 times the number of Tezos tokens Baker claims to be entitled to receive.[3] As the district court explained in *BankAmerica I*, Congress intended that the plaintiff with the greatest financial stake in the outcome of the litigation would control its course, and thereby ensure it progresses in an orderly fashion:

> The federal plaintiffs, representing over 26 times the amount of stock as the [state court] plaintiffs, clearly have a greater financial stake in the outcome of this litigation. Accordingly, they have a federal right, created by Congress in the PSLRA, to control the course of this litigation through counsel of their choice.
>
> \*   \*   \*
>
> This federal right cannot be given its intended scope if competing state court plaintiffs, representing a significantly smaller number of shares, can institute premature settlement negotiations which threaten the orderly conduct of the federal case and which could result in the release of the federal claims.

*BankAmerica I*, 95 F. Supp. 2d at 1049-50.

Allowing the *Baker* Action to proceed in state court would undermine those important policy objectives. Among other things, the *Baker* Action would "threaten the orderly conduct" of the consolidated federal cases by inviting inconsistent legal determinations. This Court has already explained that these cases present novel questions related to the application of federal securities laws to cryptocurrencies:

> [T]his case involves novel questions of federal securities law. The Tezos-related actions currently pending before this Court are among the first to apply federal securities laws to cryptocurrency assets. There is no extensive body of federal law for the San Francisco County Superior Court to apply should this case be remanded. Thus, the risk is higher here than in the average securities case that parallel state and federal proceedings could produce inconsistent (and even contradictory) conclusions regarding key questions of fact and law.

---

[3] Lead Plaintiff invested 250 Ethereum in exchange for the right to receive 133,608.75 tokens. Dkt. No. 61-3, Schedule A. In contrast, Baker's PSLRA Certification states he invested 1 Bitcoin in exchange for the right to receive just 5,000 tokens. *Baker* Action, Dkt. No. 1-1, Ex. B.

9

*Baker* Action, Dkt. No. 18 at 4. The stakes in this case are clearly higher than the typical securities class action and, as a result, so is the necessity that Lead Plaintiff be permitted to control this litigation unencumbered by Plaintiff Baker's competing state court proceeding.[4]

*Third*, as in *BankAmerica I*, the *Baker* Action should be enjoined to preclude precisely the sort of "lawyer-driven machinations" designed to circumvent the PSLRA that was condemned by the district court in *BankAmerica I*. 95 F. Supp. 2d at 1050. Just as Milberg Weiss did in *BankAmerica I*, it appears that the group of lawyers behind the *Baker* Action sought to hedge their bets by filing in both state court and federal court and, having lost in federal court, now seek to take their marbles to play in state court.

Specifically, it appears that Robbins Geller Rudman & Dowd LLP (who so happens to be the progeny of the old Milberg Weiss) has teamed up with Baker's counsel, Taylor-Copeland Law.[5] As the Court will recall, when moving for lead plaintiff status on behalf of David Lang, Ryan Coffey, and Alejandro R. Gaviria, Robbins Geller expressly asked that the *Baker* Action should not be consolidated or coordinated with the other related actions. *See* Robbins Geller Motion, Dkt. No. 38, at 4 n. 3 ("*Baker* is not suitable for consolidation") and Robbins Geller Reply, Dkt No. 89, at § II.C ("*Baker* is currently stayed . . . and should not be consolidated or coordinated until [the *Cyan* decision] is rendered"). These were also Baker's arguments in opposing consolidation. Dkt. No. 75 at 4 ("Baker therefore respectfully asks that the Court deny the Motions to Consolidate the Baker Action and leave the stay of the Baker Action in place until the Supreme Court issues a decision in *Cyan*."). There was no reason for Robbins Geller to make such an argument on behalf of Baker – an argument that delivered no conceivable benefit to the Class, and an argument whose only conceivable effect

---

[4] In addition, as Lead Plaintiff argued previously, allowing the *Baker* Action to proceed creates strong incentives for Baker's counsel to engage in a "reverse auction" that jeopardizes class interests. *See Baker* Action, Dkt. No. 22 at 5.

[5] Robbins Geller and Taylor-Copeland have also teamed up in another securities class action involving an ICO. *See Motion and Accompanying Memorandum of Law of Wang Yun He for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel*, *Rensel v. Centra Tech, Inc.*, No. 1:17-24500-Civ-KING, 2018 WL 1376632, Dkt. No. 39 (S.D. Fla. Mar. 5, 2018) (requesting approval of Robbins Geller and Taylor-Copeland to serve as lead counsel for the class in a securities class action lawsuit involving the Centra Tech, Inc. ICO).

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

would be to create chaos and confusion by exposing the Class to a risk of two, parallel actions. *See BankAmerica I*, 95 F. Supp. 2d at 1050 (noting that Milberg Weiss had filed numerous inadequate motions for class certification, overlooked potential conflicts of interest among classes, failed to propose class representatives that truly represented the entire class, and attempted to restructure the classes, "not in the best interest of the class members, but to avoid federal courts at all costs").

As in *BankAmerica I*, it is clear that Robbins Geller and Baker's counsel cut a deal so that the firms could hedge their bets in both federal court and state court. Now that Robbins Geller's lead plaintiff application in federal court has been denied, Robbins Geller seeks a second shot at leading the class action by pursing the *Baker* Action in state court. This cynical gamesmanship was condemned by the district court in *BankAmerica I*, and likewise should not be permitted here.

*Fourth*, and finally, permitting the *Baker* Action to proceed would undermine the primary objective of the PSLRA to eradicate "the race to the courthouse" as a means by which control over securities litigation is determined, and thereby undermine the vital protections the statute gave absent class members. The PSLRA procedures and this Court's lead plaintiff processes were designed to ensure that the lead plaintiff is the most qualified and committed party to protect the best interests of the class. *See In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *33 (N.D. Cal. May 3, 2005) (in reviewing lead plaintiff motions, the district court is "vetting that candidate against the requirements of the PSLRA"); *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 144 (D.N.J. 2000) ("Congress designed the PSLRA to 'protect investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer.'"). Plaintiff Baker is neither of those things. He simply "filed his action ***before*** the federal cases," as he explained in a recent filing. *Baker* Action, Dkt. 29 at 5 (emphasis original). However, as discussed at length above, "the consequences of [the lead plaintiff] mechanism have great significance for plaintiffs in class-action securities litigation," and such rights "are meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims." *BankAmerica II*, 263 F.3d at 801, 803.

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

## **CONCLUSION**

Lead Plaintiff was subjected to and prevailed in the rigorous selection process mandated by the PSLRA. Allowing the *Baker* Action to proceed would infringe upon Lead Plaintiff's federal right to control the litigation of his claims and satisfy his fiduciary obligations owed to the Class. Accordingly, the Court should grant Lead Plaintiff's Motion and enjoin the *Baker* Action.

Respectfully Submitted,

Date: April 18, 2018  LTL ATTORNEYS LLP

By: *s/ Enoch H. Liang*
    Enoch H. Liang
    LTL ATTORNEYS LLP
    601 Gateway Boulevard, Suite 1010
    South San Francisco, California 94080
    Tel: 650-422-2130
    Fax: 213-612-3773
    enoch.liang@ltlattorneys.com

    James M. Lee
    Caleb H. Liang
    LTL ATTORNEYS LLP
    300 S. Grand Ave., 14th Floor
    Los Angeles, California 90071
    Tel: 213-612-8900
    Fax: 213-612-3773
    james.lee@ltlattorneys.com
    caleb.liang@ltlattorneys.com

    Hung G. Ta
    JooYun Kim
    HUNG G. TA, ESQ., PLLC
    250 Park Avenue, 7th Floor
    New York, New York 10177
    Tel: 646-453-7288
    Fax: 646-453-7289
    hta@hgtlaw.com
    jooyun@hgtlaw.com

    *Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS

| | |
|---|---|
| 1 | William R. Restis |
| | THE RESTIS LAW FIRM, P.C. |
| 2 | 550 West C Street, Suite 1760 |
| | San Diego, California 92101 |
| 3 | Tel: 619.270.8383 |
| 4 | william@restislaw.com |
| 5 | Joe J. DePalma |
| | Bruce D. Greenberg |
| 6 | LITE DEPALMA GREENBERG, LLC |
| 7 | 570 Broad Street, Suite 1201 |
| 8 | Newark, NJ 07102 |
| | Tel: (973) 623-3000 |
| 9 | Fax: (973) 623-0858 |
| | Jdepalma@litedepalma.com |
| 10 | bgreenberg@litedepalma.com |

*Additional Counsel for the Class*

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF ANVARI'S MOTION TO STAY *BAKER* ACTION
NO. 3:17-CV-06850-RS