James Q. Taylor-Copeland (SBN 284743)
james@taylorcopelandlaw.com
**TAYLOR-COPELAND LAW**
501 W. Broadway Suite 800
San Diego, CA 92101
Tel:   619-400-4944

Attorney for Individual and Representative

Plaintiff Andrew Baker

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br>This document relates to:<br>ALL ACTIONS. | Master File No. 17-cv-06779-RS<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO STAY *BAKER* ACTION**<br><br>Date:   May 25, 2018<br>Time:  10:00 a.m.<br>Crtrm: 3<br>Judge: Hon. Richard Seeborg |

## I. STATEMENT OF ISSUES TO BE DECIDED

**Issue 1:** Does the Private Securities Litigation Reform Act of 1995 ("PSLRA") "*expressly authorize*" the issuance of a federal injunction against an earlier filed state proceeding?

**Issue 2:** Even if it did, has Arman Anvari ("Anvari") made a *strong and unequivocal showing* that the drastic step of staying or enjoining the putative class action *Baker v. Dynamic Ledger Solutions*, No. CGC 17562144 (Cal. Super. Ct., San Francisco Cty.) ("State Action"), is "necessary or appropriate" in aid of this Court's jurisdiction?

## II. INTRODUCTION

Plaintiff Andrew Baker ("Baker") filed the State Action under the express jurisdiction of the Securities Act on October 25, 2017—over six months ago. Defendant DLS removed the State Action to this Court under 28 U.S.C. § 1441 and 15 U.S.C. § 77v(a), and Plaintiff filed a motion to remand on December 28, 2017. The Court declined to consolidate the State Action with the federal actions and stayed this case in order to await guidance from the Supreme Court's decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund, et al.*, No. 15-1439 ("*Cyan*").

After the Supreme Court issued its order in *Cyan*, holding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") "did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations," Baker renewed his motion to remand. 138 S. Ct. at 1063. Recognizing that the Supreme Court's unanimous decision in *Cyan* mandated remand of this case, defendant DLS filed a non-opposition to Baker's Motion to Remand. Baker Action, ECF No. 23. However, ignoring the *Cyan* decision, Anvari's counsel filed an opposition repeating many of the arguments rejected by the Supreme Court. The Court declined Anvari's invitation to "do exactly what the Supreme Court just cautioned against in *Cyan*: to give the statutory text a 'broader reading than its language can bear' in the hopes of making 'the world of securities litigation more consistent and pure,'" and remanded Baker's case. Baker Action, ECF No. 34 at 3 quoting *Cyan*, 138 S. Ct. at 1073, 1075.

Undeterred, Anvari now seeks to circumvent *Cyan* by staying the earlier filed State Action, thereby stripping state courts of their longstanding jurisdiction over Securities Act claims. Although the Anti-Injunction Act "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of the recognized exceptions," *Mitchum v. Foster*, 407 U.S. 225, 228-229, Anvari argues that a drastic stay is "expressly authorized" by the PSLRA. ECF No. 109 at 1. This is simply not the case. The PSLRA does not provide ***any*** authority for the issuance of such an injunction. Enjoining an earlier filed state court action would interfere with the jurisdiction of the state court and render the Supreme Court's recent decision in *Cyan* dead law.

In fact, even before *Cyan,* every court in this district that has been asked to enjoin a related state court securities action has summarily rejected that request. *In re Lendingclub Sec. Litig.*, 282 F.Supp.3d 1171, 1190 (N.D. Cal. 2017) ("*Lendingclub*"); *Primo v. Pac. Biosciences of California, Inc.*, No. C 11-6599 CW, 2013 WL 4482739, at *3 (N.D. Cal. Aug 20, 2013). As Judge Alsup recognized in *Lendingclub*, "the Supreme Court has cautioned that, 'any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.'" 282 F.Supp.3d at 1190 *quoting Atl. Coast Line R. Co v. Bhd. Of Locomotovie Eng'rs*, 398 U.S. 281, 282 (1970). "The limited exceptions to the Anti-Injunction Act ***will not 'be enlarged by loose statutory construction***.'" *Sandpiper Village Condominium Ass'n, Inc. v. Louisiana-Pacific Corp.* (9th Cir. 2005) quoting *quoting Atl. Coast* 398 U.S. at 287 (emphasis added). Accordingly, the Ninth Circuit will "uphold an injunction only on 'a strong and unequivocal showing' that such relief is necessary." *Id.* quoting *Bechtel Petroleum, Inc. v. Webster*, 796 F.2d 252, 253-54 (9th Cir. 1986).

Now, with *Cyan*, the Supreme Court has expressly upheld plaintiff's right to file a class action alleging Securities Act claims in state court despite the fact that such cases are not subject to the PSLRA, and in so doing rejected policy arguments to the contrary that such cases should proceed in federal court. *Cyan*, 138 S. Ct. at 1074 (rejecting policy argument that allowing Securities Act class actions to proceed in state court was "'bypass[ing] . . . the Reform Act.'"). To the extent there

was even a shadow of doubt, in light of *Cyan* there can be no question that a plaintiff is expressly authorized to file and pursue Securities Act claims in state court, and a later copy-cat suit filed in federal court cannot serve as a pretext to enjoin the earlier filed state court action.

### III.  ARGUMENT

Anvari's request that this Court enjoin the State Action would violate the Anti-Injunction Act, which strictly limits federal courts' power to issue injunctions against a pending state court proceeding.  28 U.S.C. §2283; *Atl. Coast Line R. Co v. Bhd. Of Locomotovie Eng'rs*, 398 U.S. 281, 282 (1970).  Anvari has also failed to make a ***strong and unequivocal showing*** that the drastic step of staying or enjoining the State Action is "necessary or appropriate" in aid of this Court's jurisdiction. Indeed, such drastic action would be wholly inappropriate and unnecessary. Barely after the ink dries in *Cyan*, Anvari is asking this Court to circumvent the instructions of a unanimous Supreme Court and allow a follow-on federal case to usurp the express statutory right of a plaintiff to pursue Securities Act claims in state court.  His motion should be denied.

### a.  The PSLRA Does Not Expressly Authorize Enjoining the State Action

As Anvari acknowledges, the Anti-Injunction Act prohibits federal courts from enjoining state court proceedings unless: (1) "it is ***expressly authorized*** by Act of Congress"; (2) "necessary in aid of [the federal court's] jurisdiction"; or (3) necessary "to protect or effectuate [the federal court's] judgments." 28 U.S.C. §2283 (emphasis added). Here, Anvari argues only that the first exception applies, asserting that the PSLRA *expressly authorizes* federal courts to stay related state court securities actions.  What Anvari fails to mention is that every Court in this District to address the issue has found that it does not.

Anvari concedes that the PSLRA does not contain language expressly allowing a federal court to grant the injunction of state proceedings he seeks here. ECF No. 109 at 1-3.  He nevertheless argues that it expressly authorizes enjoining a related state court securities action because (1) Congress "created a specific and uniquely federal right or remedy, enforceable in federal court," and (2) such right can "be given its intended scope ***only by the stay*** of a state court proceeding." *Id.*

4

quoting *Mitchum v. Foster*, 407 U.S. 225, 237-38 (1972).  This argument ignores the PSLRA's text and purpose, case law in the Northern District, and the Supreme Court's unanimous decision in *Cyan*.

### i. Anvari's Reliance on *BankAmerica* is Misplaced

It is thus unsurprising that Anvari is forced to rely on a single, decades old, out-of-Circuit decision.  ECF No. 109 at 5-10 *citing In re BankAmerica Corp. Sec. Litig.,* 95 F. Supp. 2d 1044 (E.D. Mo. 2000) *("BankAmerica I"), aff'd,* 263 F.3d 795 (8th Cir. 2001) *("BankAmerica II"), cert. denied,* 535 U.S. 970 (2002).  *BankAmerica* exemplifies the maxim that "hard cases make bad law."[1]  It is distinguishable from the instant case, nearly universally disapproved of, and contradicted by the Supreme Court's reasoning in *Cyan*.

The *BankAmerica* court's hands were forced "due to the woefully inadequate representation in the state action, which it found threatened the rights of the federal litigants."  *Lendingclub*, 282 F.Supp.3d at 1190.  Courts in this district have thus consistently disapproved of *BankAmerica* and refused to enjoin pending state court actions.

As Judge Alsup noted in *Lendingclub*, "only one court [*BankAmerica*]. . . has found an express right to enjoin a state court proceeding based on the PSLRA."  *Id* at 1190.  Counsel for state plaintiffs in *BankAmerica* "filed numerous inadequate motions for class certification, overlooked potential conflicts of interest among the class members . . . [and] pushed for settlement despite the early stage of the proceedings and the fact that almost no substantive discovery had been completed."  *Id.*  The *Lendinclub* court held that where "there is no intimation of the improprieties that were afoot in *BankAmerica*" and "no party has raised the specter of a settlement . . . the state action does not so threaten the integrity of the PSLRA that failing to enjoin it would amount to an

---

[1] Justice Bye observes as much in his dissent, where, in a presage to *Cyan*, he "disagree[d] with the court's conclusion that an exception to the Anti–Injunction Act permitted an injunction here. It appears unlikely that a lead plaintiff's right 'could be given its intended scope only by the stay of a state court proceeding,' when all plaintiffs possess a constitutional right to opt out of a coercive state court settlement.  More important still—and irrespective of whether opt-out rights prove illusory in practice—nothing in the legislative history of the PSLRA suggests that Congress sanctioned the injunction of state court securities actions. To the contrary, that history reveals that Congress countenanced their continued availability."  *BankAmerica II*, 263 F.3d 795, 804-805.

abrogation of a Congressional mandate." *Id.* So too here. Anvari does not, and cannot, allege that Baker's counsel has engaged in premature settlement discussions or engaged in ***any*** conduct that would undermine the rights of the putative class. To the contrary, Baker's counsel ***filed the first case*** on behalf of Tezos investors, developed facts and legal theories appropriated by later copy-cat litigants and diligently sought to return these claims to their proper forum so that they can be pursued for the benefit of all class members.

In *Primo v. Pac. Biosciences of California, Inc.*, Judge Wilken similarly rejected a federal lead plaintiff's motion to stay related state court securities litigation. In doing so, she noted that *BankAmerica* "had already been certified and there were problems with the certification of the later filed state action. In contrast, Plaintiffs in this federal action have not yet filed a motion to certify the class." No. C 11-6599 CW, 2013 WL 4482739, at *3 (N.D. Cal. Aug 20, 2013). Just as in *Primo*, Anvari has yet to file a motion to certify in this later filed federal action, and Defendants intend to file a motion to dismiss Anvari's consolidated complaint. Moreover, Anvari's case is subject to a mandatory discovery stay under the PSLRA, which will not be applicable to Baker's claims on return to state court.

### ii. *Cyan* Makes it Clear That the PSLRA Does Not Authorize Enjoining the State Action

Anvari all but concedes that the PSLRA does not ***expressly authorize*** enjoining a parallel state court securities action, noting that he does not "propose that *every* PSLRA case proceeding in parallel before federal and state courts falls within the Anti-Injunction Act Exception." ECF No. 109 at 8. Rather, Anvari contends that "an injunction of the *Baker* Action is appropriate here based on the particular facts of this case." *Id.* But this cannot be the case. Either the PSLRA ***expressly authorizes*** enjoining parallel state court actions, or it does not. Moreover, the "particular facts" that Anvari points to, are common of all parallel securities class actions and are exactly the types of policy arguments rejected by the Supreme Court in *Cyan* and this Court in its ruling on Baker's Motion to Remand. If anything, the facts of this case, in which the state court plaintiff developed the

facts and legal theories on behalf of the putative class and later litigants attempted to duplicate these efforts in a later-filed federal cases, makes it particularly inappropriate to stay.

Anvari argues that a stay is warranted in this case because (1) the State Action is duplicative of the consolidated federal actions, (2) that Baker did not subject himself to the PSLRA process, and that (3) allowing the State Action to proceed would "undermine the primary objective of the PSLRA to eradicate 'the race to the courthouse.'" ECF No. 109 at 10-11.[2] These were the very arguments raised by Petitioner's in *Cyan*—contending that SLUSA must have been intended to eliminate state court jurisdiction over Securities Act claims, because otherwise "[t]he same defendant could even face 'parallel' litigation in both stated and federal court, each forum applying a different set of rules governing the conduct of class-action plaintiffs." No. 15-1439, Brief of Petitioners Cyan, Inc. et al. at 24. The Supreme Court rejected these arguments and held that the Securities Act, as amended by the PSLRA and SLUSA, did not eliminate state court jurisdiction over Securities Act claims. *Cyan*, 138 S. Ct. 1061.

The fact is that the PSLRA was not intended to prevent plaintiffs from maintaining Securities Act cases in state court. It did nothing to strip state courts of jurisdiction over Securities Act claims. And if congress had intended to do so, it had a second opportunity to do so when it passed the SLUSA three years later. But that too "did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations." *Cyan*, 138 S. Ct. 1061, 1078.

Nor are the PSLRA's procedural lead plaintiff provisions applicable to actions filed in state court. *Cyan,* 138 S. Ct. 1061 at 1066-67 ("Other Reform Act provisions modified the procedures used in litigating securities actions and applied only when such a suit was brought in federal court. To take one example, the statute required a lead plaintiff in any class action brought under the Federal Rules of Civil Procedure to file a sworn certification . . .").

---

[2] Anvari also casts aspersions on Baker's counsel that are neither legally relevant nor factually accurate. These allegations are addressed more fully in Section III(b) below.

As the Supreme Court noted in *Cyan*, the "statute says what it says—or perhaps better put here, does not say what it does not say. State-court jurisdiction over 1933 Act claims thus continues undisturbed." *Cyan* 138 S. Ct. at 1069. So too for the PSLRA. The PSLRA does not expressly authorize a federal court to enjoin pending state court claims. In asking the Court to divine such a provision, Anvari "makes the same mistake as Cyan:" He distorts the PSLRA's text because he "thinks Congress simply must have wanted 1933 Act class actions to be litigated in federal court. But this Court has no license to 'disregard clear language' based on an intuition that 'Congress must have intended something broader.'" *Id.* The unanimous *Cyan* decision vindicates Justice Bye's dissent in *BankAmerica II*, where he observed that, "nothing in the legislative history of the PSLRA suggests that Congress sanctioned the injunction of state court securities actions. To the contrary, that history reveals that Congress countenanced their continued availability." *BankAmerica II*, 263 F.3d 795, 804-805 (J. Bye, dissenting).

In *Cyan* the Supreme Court recognized that "[s]tate courts thus had as much or more power over the 1933 Act's enforcement as over any federal statutes. To think Cyan right, we would have to believe that Congress upended that entrenched practice not by any direct means, but instead by way of a conforming amendment to §77v(a) . . ." *Cyan* 138 S. Ct. at 1071. Yet that is exactly the reasoning Anvari applies here—contending that Congress effectively stripped state courts of the right to hear 1933 Act claims, not by saying so, but by modifying the procedures used in litigating securities actions brought in federal court. That would be an absurd result. "If Congress had wanted to deprive state courts of jurisdiction over 1933 Act class actions, it had an easy way to do so. . ." *Id.* It did not.

In short, Anvari once again "invites the Court to do exactly what the Supreme Court just cautioned against in *Cyan*: to give the statutory text a 'broader reading than its language can bear' in the hopes of making 'the world of securities litigation more consistent and pure.'" Baker Action, ECF No. 34 at 3 quoting *Cyan*, 138 S. Ct. at 1073, 1075.

### b. Anvari Has Failed to Make a "Strong and Unequivocal Showing" that it is "Necessary or Appropriate" For this Court to Enjoin the State Action

Even if the PSLRA did "*expressly authorize*" the issuance of a federal injunction against an earlier filed state proceeding—which it does not—Anvari has failed to make a ***strong and unequivocal showing*** that the drastic step of staying the State Action is "necessary or appropriate" in aid of this Court's jurisdiction. *See Sandpiper Village Condominium Ass'n, Inc. v. Louisiana-Pacific Corp.* (9th Cir. 2005). Even where an injunction is authorized by an exception to the Anti-Injunction Act, the court must still consider "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243.

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). As a result, the Supreme Court noted in *Younger* that "it has been perfectly natural for our cases to repeat time and time gain that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is ***not to issue such injunctions***." *Id.* (emphasis added). The *Younger* doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of a great and immediate injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

"Parallel state and federal litigation is common. The first to reach final decision can affect the other, either through rules of claim and issue preclusion (res judicata and collateral estoppel) or through effects such as reducing the scope of a class from 50 to 49 states. Yet the potential effect of one suit on the other does not justify an injunction." *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484 (7th Cir. 2015). As discussed, in Section III(a)(ii) above, three of Anvari's four arguments regarding why an injunction is appropriate here are common of all parallel securities class actions, and cannot form the basis for a ***strong and unequivocal showing*** that the drastic step of staying the State Action is "necessary or appropriate" in aid of this Court's jurisdiction. *See Sandpiper Village Condominium Ass'n, Inc. v. Louisiana-Pacific Corp.* (9th Cir. 2005).

Anvari's final argument regarding Baker's counsel also falls flat.  Anvari criticizes Baker for arguing that his case should not be consolidated with the federal cases, an argument that was also made by lead plaintiff movants represented by Robbins Geller Rudman & Dowd LLP and Silver Miller.  Far from evidencing some inadequacy to represent the putative class, this argument simply reflects the legally correct position—a position that has already been adopted by this Court in denying consolidation of the Baker Action (ECF No. 101 at 4), conceded by defendant DLS in not opposing remand of the Baker Action (Baker Action, ECF No. 23 at 2), and sanctioned by a unanimous Supreme Court in *Cyan*, which expressly held that Securities Act claims can proceed in state court and are not subject to removal (and thus, by extension, cannot be consolidated with federal cases). Ironically, it is also the position that ***Anvari himself took*** in seeking to be appointed lead plaintiff. Anvari previously acknowledged that consolidation was only appropriate "should the U.S. Supreme Court find that 1933 Act claims filed in state court are removable."  ECF 80 at 4.  Anvari's attempt to deride a position he once embraced reveals the absurdity of his argument and its basis in strategic expediency rather than the facts or the law.

## IV.    CONCLUSION

Since being appointed lead plaintiff, Anvari and his counsel have ignored defendants in this case and focused nearly all their attention on delaying the State Action—first filing a frivolous opposition to Baker's Motion to Remand and now asking the Court to invent a new means "to strip state courts of their longstanding jurisdiction to adjudicate" Securities Act claims.  *Cyan*, 138 S. Ct. at 1063.  Both these filings could have been avoided had Anvari's counsel bothered to read the Supreme Court's unanimous decision in *Cyan*, where it found that nothing in the PSLRA or SLUSA stripped state courts of that jurisdiction.  *Id.*  Baker respectfully asks that the Court decline Anvari's renewed invitation to toss *Cyan* aside and deny his motion to stay the State Action.

Dated:  May 2, 2018                    **TAYLOR-COPELAND LAW**

By: /James Taylor-Copeland
James Q. Taylor-Copeland
Attorney for Lead Plaintiff Andrew Baker