**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE TEZOS SECURITIES LITIGATION

This document relates to:

ALL ACTIONS.

Master File No. 17-cv-06779-RS

**CLASS ACTION**

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO STAY *BAKER* ACTION**

Date: May 25, 2018
Time: 10:00 a.m.
Crtrm: 3
Judge: Hon. Richard Seeborg

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES .................................................. ii

I. THE PSLRA "EXPRESSLY AUTHORIZES" AN INJUNCTION OF THE BAKER ACTION, AND SUCH AN INJUNCTION IS NOT PRECLUDED BY *CYAN* .................. 2

A. A Stay Of The *Baker* Action Is "Expressly Authorized" By The PSLRA .................. 2

B. The *LendingClub* And *Primo* Decisions Are Inapposite .................. 4

II. LEAD PLAINTIFF HAS MADE THE REQUIRED SHOWING THAT AN INJUNCTION IS NECESSARY UNDER THE CIRCUMSTANCES OF THIS CASE ........ 6

A. Baker And His Counsel Are Seeking An End Run Around The PSLRA. .................. 6

B. Baker And His Counsel Have Conducted Themselves In A Manner Solely To Further Their Interests And That Is Detrimental To The Interests Of The Class. ........ 9

C. Litigation Of The *Baker* Action Creates The Risk Of A Reverse Auction. ............... 10

III. AT THE VERY LEAST, THE COURT SHOULD GRANT LEAD PLAINTIFF'S REQUESTED RELIEF IN PART, BY ENJOINING DEFENDANTS FROM CONDUCTING SETTLEMENT DISCUSSIONS WITH ANY OTHER PLAINTIFF WITHOUT COURT APPROVAL .................. 11

CONCLUSION .................................................. 14

# TABLE OF AUTHORITIES

**Page No(s).**

### CASES

*Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) .......... 6

*Carlough v. Amchem Products Inc.*, 10 F.3d 189 (3d Cir. 1990) .......... 11

*Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S.Ct. 1061 (2018).......... 1, 2, 3

*Hillman v. Webley*, 115 F.3d 1461 (10th Cir. 1997) .......... 12

*In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795 (8th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002) .......... 1, 8

*In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000) .......... passim

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 134 F.3d 133 (3rd Cir. 1998).......... 12

*In re Jamster Mktg. Litig.*, MDL No. 1751, 2008 U.S. Dist. LEXIS 80251 (S.D. Cal. Sept. 29, 2008).......... 13, 14

*In re Lease Oil Antitrust Litig. (No. II)*, 48 F. Supp. 2d 699 (S.D. Tex. 1998).......... 12

*In re LendingClub Sec. Litig.*, Nos. C16-02627, C16-02670, 16-03072, 2017 U.S. Dist. LEXIS 174208 (N.D. Cal. Oct. 20, 2017).......... 1, 4, 5

*In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002).......... 13

*Lopez v. County of L.A.*, No. 15-cv-03804-TEH, 2016 U.S. Dist. LEXIS 1339 (N.D. Cal. Jan. 5, 2016) .......... 7

*Mitchum v. Foster*, 407 U.S. 225 (1972) .......... 1, 3, 14

*Primo v. Pac. Biosciences of Cal., Inc.*, No. C11-6599, 2013 U.S. Dist. LEXIS 118149 (N.D. Cal. Aug. 20, 2013) .......... 1, 5

*S. Cal. Petroleum Corp. v. Harper*,
273 F.2d 715 (5th Cir. 1960) .......... 6

**OTHER AUTHORITIES**

John C. Coffee Jr., *Class Actions: Interjurisdictional Warfare; Corporate Update; Corporate Securities*, NEW YORK LAW JOURNAL (Sept. 25, 1997) .......... 12, 13, 14

The Court is empowered under the All Writs Act to enjoin the *Baker* Action, and should exercise that power. Under the controlling test in *Mitchum v. Foster*, 407 U.S. 225 (1972), the PSLRA conferred important federal rights on Lead Plaintiff Anvari, and an injunction of the *Baker* Action is necessary to give those rights their intended scope. At the very least, the Court should enjoin Defendants from engaging in any class settlement discussions with Baker or any plaintiff other than Anvari, without the prior approval of this Court.

In his opposition, Baker talks right past *Mitchum*, declining any attempt to satisfy the inquiry mandated by the Supreme Court. Instead, Baker makes two arguments.

*First*, Baker simplistically asserts that the PSLRA cannot "expressly authorize" injunctions of parallel state court proceedings asserting claims under the Securities Act, because the Supreme Court in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S.Ct. 1061 (2018) preserved concurrent state court jurisdiction for Securities Act cases. But Baker misunderstands *Cyan*, because an *injunction* under the All Writs Act does nothing to divest the San Francisco Superior Court of *jurisdiction* over the *Baker* Action. In other words, *Cyan* is irrelevant to the issue at hand.

Baker also cites two district court decisions, *In re LendingClub Sec. Litig.*, Nos. C16-02627, C16-02670, 16-03072, 2017 U.S. Dist. LEXIS 174208 (N.D. Cal. Oct. 20, 2017) and *Primo v. Pac. Biosciences of Cal., Inc.*, No. C11-6599, 2013 U.S. Dist. LEXIS 118149 (N.D. Cal. Aug. 20, 2013), for his argument that the PSLRA can *never* authorize an injunction of state court claims. However, Baker mischaracterizes those two decisions. The courts in *LendingClub* and *Primo* did *not* hold that the PSLRA can never qualify under the "expressly authorized" exception of the Anti-Injunction Act, but merely held that an injunction was not appropriate on the facts of those two cases.

*Second*, Baker argues that Lead Plaintiff Anvari has failed to make a "strong and unequivocal" showing that an injunction of the *Baker* Action is necessary or appropriate. Apart from the fact that Baker has misstated the test in *Mitchum*, Lead Plaintiff has shown that, as in *In re BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000) ("*BankAmerica I*"), *aff'd*, 263 F.3d 795 (8th Cir. 2001) ("*BankAmerica II*"), *cert. denied*, 535 U.S. 970 (2002), an injunction is necessary and appropriate to give Lead Plaintiff's PSLRA-conferred rights their intended scope under the

circumstances of this case. Specifically, Baker had little to no chance of being appointed lead plaintiff under the PSLRA, with Lead Plaintiff Anvari's financial interest in this litigation dwarfing (by more than 26 times) Baker's interest. Under the circumstances, Baker and his counsel partnered with Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to hedge their bets by simultaneously moving for lead in federal court, and filing in state court. Having subjected themselves to the PSLRA by partnering with Robbins Geller, Baker's counsel should not be permitted to circumvent the statute with a second opportunity to represent class interests in state court. Allowing the *Baker* Action to proceed under these circumstances rewards and incentivizes "lawyer-driven machinations" by Baker's counsel and other attorneys. Further, Baker's counsel and Robbins Geller have already demonstrated disregard for the interests of the Class, arguing for parallel federal and state actions that serve no interests other than the interests of the attorneys. Finally, the *Baker* Action creates the possibility of a reverse auction detrimental to the interests of the Class.

## I. THE PSLRA "EXPRESSLY AUTHORIZES" AN INJUNCTION OF THE BAKER ACTION, AND SUCH AN INJUNCTION IS NOT PRECLUDED BY *CYAN*

### A. A Stay Of The *Baker* Action Is "Expressly Authorized" By The PSLRA

Baker first argues that, as a result of *Cyan*, "[t]he PSLRA does not provide ***any*** authority for the issuance of [ ] an injunction" under the All Writs Act/Anti-Injunction Act. Baker Opp.[1] at 3 (emphasis in original). According to Baker, the "express statutory right of a plaintiff to pursue Securities Act claims in state court" means that the PSLRA may ***never*** confer authority on a district court to enjoin a state court action under the All Writs Act. *Id.* at 4. Baker is wrong.

As an initial matter, the question presented to the Supreme Court in *Cyan* concerned state courts' concurrent jurisdiction of Securities Act claims, specifically, "did SLUSA strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933?" *Cyan*, 138 S.Ct. at 1066. *Cyan* answered this question in the negative, holding that SLUSA "leaves in place state courts' jurisdiction over 1933 Act claims, including when brought in class actions." *Id*. at 1069.

[1] "Baker Opp." refers to Andrew Baker's Opposition to Plaintiff's Motion to Stay *Baker* Action (Dkt. No. 113).

However, the *Cyan* court did not hold that concurrent state court jurisdiction forever precludes federal courts from enjoining parallel state proceedings under the All Writs Act, as Baker argues. Nor can such a holding be implied. First, the *Cyan* court was not presented with parallel state and federal court actions – the plaintiffs in *Cyan* commenced their action in state court and the appeal arose from the state court's denial of the defendants' motion to dismiss under SLUSA. *Id.* at 1068. But more importantly, in *Mitchum*, the Supreme Court already held that an injunction of a state court proceeding is "expressly authorized" by 42 U.S.C. § 1983, *even though state courts have concurrent jurisdiction of Section 1983 lawsuits*. *Mitchum*, 407 U.S. at 242-43; *see* Opening Br.[2] at 7-8. For precisely this reason, the district court in *BankAmerica I* considered the argument presently made by Baker, and rejected it. The district court held that "such preemption [of the right to proceed in state court] is not required for a court to find that the Act of Congress expressly authorizes injunctions of state court proceedings." *BankAmerica I*, 95 F. Supp. 2d 1050-51.

As a related argument, Baker contends that nothing in the text of the PSLRA "expressly authorize[s] a federal court to enjoin pending state court claims," and that the only way to "divine such a provision" is by inferring a Congressional intent to strip state courts of the right to hear Securities Act claims. Baker Opp. at 8. However, Baker misstates the *Mitchum* test. As the *Mitchum* court explained, "in order to qualify under the 'expressly authorized' exception of the anti-injunction statute, a federal law need not contain an express reference to that statute," and "a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." *Mitchum*, 407 U.S. at 237. Nor is there any requirement that "an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunction statute." *Id* at 237-38. "The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238.

[2] "Opening Br." refers to the Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion to Stay *Baker* Action (Dkt. No. 109).

Here, contrary to Baker's argument, Lead Plaintiff does not seek to contradict *Cyan* and strip state courts of their jurisdiction over Securities Act claims. Rather, an injunction is appropriate under the circumstances of this case because Lead Plaintiff's ability to exercise his right – and duty – to protect class interests as provided by the PSLRA will be frustrated if the *Baker* Action is allowed to proceed. As held by the courts in *BankAmerica I* and *BankAmerica II*, an injunction is appropriate where one or more of the following factors is present: (a) the state court plaintiff previously moved for, or had the opportunity to move for, lead status in the federal court proceeding, but seeks to end run around the PSLRA; (b) the state court plaintiff and its lawyers engage in conduct that demonstrates that their motivation is to further their own selfish interests, as opposed to the interests of the class; and (c) the state court plaintiff embarks on settlement discussions with the defendant, or otherwise creates the risk of a reverse auction scenario, thereby harming the interests of the class. As discussed in further detail in Section II, all three factors are present here.[3]

### B. The *LendingClub* And *Primo* Decisions Are Inapposite

To support his argument that an injunction should not issue here, Baker relies on two cases, *LendingClub* and *Primo*, arguing that the courts in these two cases "disapproved" *BankAmerica* and held that the PSLRA can *never* "expressly authorize" an injunction of parallel state court proceedings. Baker Opp. at 4, 5. This is manifestly incorrect. Neither the *LendingClub* nor the *Primo* court so held. Instead, both courts discussed *BankAmerica* and *distinguished* that case, holding that an injunction was not appropriate based on the circumstances of their respective cases.

In *LendingClub*, the state court certified a class several months before briefing on class certification was even complete in the federal action. *LendingClub*, 2017 U.S. Dist. LEXIS 174208, at *11. The state class representatives then moved to intervene in the federal action to oppose certification. The federal plaintiffs opposed intervention, and sought simultaneously to enjoin the

[3] Baker criticizes the notion that the PSLRA may authorize an injunction depending on the circumstances of a particular case. Baker Opp. at 6. However, Baker ignores that, under *Mitchum*, even where there is a federally-conferred right, an injunction is to be granted insofar as it is needed to give that right its intended scope. In addition, the decision whether to enjoin state court proceedings is committed to the discretion of the district court.

state action under the All Writs Act. *Id.* at *43-44. The district court discussed *BankAmerica*, and noted the "woefully inadequate representation in the state action" in that case. *Id.* at *46 (citations omitted). In contrast to the *BankAmerica* case, *LendingClub* was "a vastly different scenario [because] the state court has certified a class, the state plaintiffs are advanced in discovery, and there is no intimation of the improprieties that were afoot in *BankAmerica*." *Id.* at *47. The court further stated that, "[g]iven these critical distinctions, the state action does not so threaten the integrity of the PSLRA that failing to enjoin it would amount to an abrogation of a Congressional mandate." *Id.* However, the court noted that "this order is without prejudice to the future imposition of an injunction or stay of either the state or federal action should it become necessary." *Id.* at *52. This express statement debunks Baker's argument that the Anti-Injunction Act absolutely precludes a stay.

Similarly, in *Primo*, three state court class actions alleging violation of the Securities Act were filed and consolidated in state court and were well-advanced. *Primo*, 2013 U.S. Dist. LEXIS 118149, at *4. Before the federal plaintiffs had even filed their second amended complaint, the state court entered an order preliminarily approving a settlement and setting a date for the final approval hearing. *Id.* The defendants moved to stay the federal action, and the federal plaintiffs cross-moved to stay the state action under the All Writs Act. *Id.* The *Primo* court stated that, "to the extent the Court has the authority to issue such an injunction, it declines to do so." *Id.* at *9. The court stated that "*BankAmerica* is distinguishable from this case on multiple grounds," including that the state court actions were earlier filed; the federal plaintiffs had not yet moved to certify the class and was still in the motion to dismiss phase; and the named plaintiffs in the state action owned significantly more shares than the plaintiffs in the federal action. *Id.* at *10.

As set forth in Section II below, the facts and circumstances here closely track the facts and circumstances in *BankAmerica*, and not *LendingClub* and *Primo*. Unlike *Primo* (and like *BankAmerica*), Lead Plaintiff Anvari has *over 26 times* the financial interest of Baker in the Tezos ICO. Unlike in *LendingClub* and *Primo*, the *Baker* Action was filed just one month before the first federal action was filed, was served on just one defendant (Dynamic Ledger Solutions, Inc.), and was

then stayed.[4] In the meantime, the federal actions have been consolidated, a lead plaintiff has been appointed under the PSLRA, and a consolidated complaint has now been filed and served on all Defendants. And, unlike in *LendingClub* and *Primo*, where the conduct of the state action attorneys could not be impeached, here, Baker's attorneys engaged in precisely the sort of "lawyer-driven machinations" that justified an injunction in *BankAmerica*.

## II. LEAD PLAINTIFF HAS MADE THE REQUIRED SHOWING THAT AN INJUNCTION IS NECESSARY UNDER THE CIRCUMSTANCES OF THIS CASE

Baker's second argument is that Lead Plaintiff has not made a "strong and unequivocal" showing that an injunction is warranted. Baker Opp. at 9. To begin, this requirement of a "strong and unequivocal" showing is found in neither *Mitchum* (which stated the test for the "expressly authorized" exception) nor *Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) (the other Supreme Court decision Baker cites). The language cited by Baker actually derives from a Fifth Circuit decision that discussed the third, "relitigation" exception to the Anti-Injunction Act, *i.e.*, injunctions necessary to "protect or effectuate [a district court's] judgments." *See S. Cal. Petroleum Corp. v. Harper*, 273 F.2d 715, 718-19 (5th Cir. 1960) ("We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings."). In any event, to the extent necessary, Lead Plaintiff has made a "strong and unequivocal" showing that an injunction is warranted here, based on the circumstances described immediately below.

### A. Baker And His Counsel Are Seeking An End Run Around The PSLRA.

Here, the *Baker* Action was filed just one month before the first federal action was filed, and

[4] Baker repeatedly asserts that he developed the factual theory first, and that the subsequent federally-filed class actions were "copy-cat." Baker Opp. at 4, 6-7. This is far from the truth. As the Court will see by comparing Lead Plaintiff's 40-page Consolidated Complaint Class Action Complaint with Baker's 20-page complaint, Baker asserted, among others, a theory based on *fraud*, never addressed critical questions such as personal jurisdiction over the Swiss defendants or the implications of *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), and his complaint was arguably subject to dismissal. Unsurprisingly, Baker has already indicated that he "anticipates amending the complaint following the Court's ruling on the [ ] Motion to Remand." *Baker v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-06850-RS, Joint Case Management Statement, Dkt. No. 32, at ¶ 5.

was served on just one defendant (Dynamic Ledger Solutions, Inc.), before the action was stayed by the Court pending the decision in *Cyan*. Because of this stay, all interested persons and their counsel focused their efforts in the federal actions,[5] where they were provided with a fair and equal opportunity to obtain leadership. It is undisputed that Lead Plaintiff Anvari acquired the right to receive *over 26 times* the number of Tezos tokens Baker claims to be entitled to receive, that he was the "most adequate plaintiff" under the PSLRA, and that he had an unequivocal right to control the Tezos litigation. Opening Br. at 9; *BankAmerica I*, 95 F. Supp. 2d at 1049-50 ("The federal plaintiffs, representing over 26 times the amount of stock as the [state court] plaintiffs, clearly have a greater financial stake in the outcome of this litigation [and] have a federal right, created by Congress in the PSLRA, to control the course of this litigation through counsel of their choice."). It is further undisputed that, although afforded every opportunity to do so, Baker himself chose not to move for lead in the federal actions. Instead, Baker and his counsel hedged their bets by partnering with counsel for the Gaviria movants,[6] Robbins Geller. It was Robbins Geller who then argued for the Gaviria movants to be appointed lead plaintiff, while arguing (on behalf of Baker) that the *Baker* Action should be remanded. Dkt. No. 38. Working in unison in this manner, Baker and the Gaviria movants, and their counsel Taylor-Copeland Law and Robbins Geller, availed themselves of the PSLRA, and should be deemed to have subjected themselves to that vetting process. Having failed to attain leadership under the PSLRA, those same plaintiffs and their counsel should not now be permitted to proceed in state court and circumvent the PSLRA.

In response, Baker asserts in a one sentence footnote that "aspersions on Baker's counsel … are neither legally relevant nor factually accurate." Baker Opp. at 7 n.2. But these are not mere "aspersions," and the conduct of Baker's counsel is indeed the *central* inquiry here.[7] Indeed, as the

---

[5] Because of the stay, no movant sought to seek leadership in state court. If there had been no stay, it is highly unlikely that Baker would have been appointed lead in state court.

[6] "Gaviria movants" refers to movants David Lang, Ryan Coffey, and Alejandro R. Gaviria.

[7] Baker's attempt to bury a central issue in a non-responsive footnote should be construed by the Court as a concession that "lawyer-driven machinations" are indeed afoot. *See Lopez v. County of L.A.*, No. 15-cv-03804-TEH, 2016 U.S. Dist. LEXIS 1339, at *9 (N.D. Cal. Jan. 5, 2016) ("Plaintiff failed to oppose – and thus conceded – this argument.").

district court stated in *BankAmerica I*, such "lawyer-driven machinations" amount to "a blatant attempt at forum shopping," and subverts the PSLRA. *BankAmerica I*, 95 F. Supp. 2d at 1050; *BankAmerica II*, 263 F.3d at 804 (affirming injunction in *BankAmerica I* because district court concluded that the state court action "was but an end run around the PSLRA" and because the state court litigation "would have subverted the PSLRA by putting small stakeholders in the driver's seat"). Permitting plaintiffs to try their luck for appointment as lead in federal court under the PSLRA, and when unsuccessful, to relitigate in state court, would render the PSLRA wholly nugatory. *BankAmerica II*, 263 F.3d at 803 ("the rights created by § 77z-1(a)(3)(B) are meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims"). Every unsuccessful lead plaintiff movant would be incentivized to disregard the federal court's careful vetting process and end run the PSLRA by filing in state court.

Indeed, this perverse result has already happened here. Subsequent to the Court's remand of the *Baker* Action on April 19, 2018, two other plaintiffs, Trigon Trading Pty Ltd. ("Trigon") and Bruce MacDonald, filed a parallel action in state court, represented by the law firms of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Block & Leviton LLP ("Block & Leviton"). *See Trigon Trading Pty Ltd v. Dynamic Ledger Solutions, Inc.*, No. 18-civ-02045 (Cal. Superior Court, San Mateo Cty.) ("*Trigon* Action"). As the Court will recall, Trigon and its counsel Block & Leviton moved for appointment as lead plaintiff/lead counsel in this consolidated *In re Tezos Securities Litigation*, but were unsuccessful. Dkt. No. 101. The other plaintiff, MacDonald, and his counsel, Hagens Berman and Block & Leviton, sought to pursue a standalone class action on behalf of California investors under California's Corporations and Business and Professions Codes. *See MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-07095-RS ("*MacDonald* Action"). The Court rejected this argument and consolidated the *MacDonald* Action into this action. Dkt. No. 101.

Dissatisfied with the outcome of the Court's vetting under the PSLRA, Trigon and MacDonald have chosen to simply ignore the Court's March 16 Order (Dkt. No. 101). In contumelious disregard of that Order, Trigon and MacDonald have dismissed the *MacDonald* Action, and refiled in state court. Moreover, MacDonald and his attorneys have now revealed that their prior arguments for

carving out a separate state law action on behalf of a class of California investors, were a mere sham, and motivated solely by counsel's desire to carve out a role for themselves. In the newly-filed *Trigon* Action, MacDonald and Trigon nowhere assert any state law claims. Instead, they assert solely claims under the Securities Act of 1933. *See* Declaration of Hung G. Ta in Further Support of Lead Plaintiff Anvari's Motion to Stay *Baker* Action, dated May 9, 2018 ("Ta Reply Decl."), Ex. A (*Trigon* Complaint).

The above gamesmanship is precisely the type of "lawyer-driven machinations" that compelled the court to enjoin the state court actions in *BankAmerica*, and that similarly warrant an injunction in this case. In *BankAmerica*, the law firm Milberg Weiss engaged in precisely the same conduct that Hagens Berman/Block & Leviton have engaged in here. As explained by the court, "[w]hen it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the federal case to focus on the California cases where no financial stake rules govern the selection of lead plaintiffs and lead counsel." *BankAmerica I*, 95 F. Supp. 2d at 1046. Here, just as in *BankAmerica I*, "[w]hen the federal forum proved unsavory because [Hagens Berman/Block & Leviton] would not be able to control that case, the firm[s] simply took [their] marbles and went to play in the state court." *Id.* at 1050.[8]

**B. Baker And His Counsel Have Conducted Themselves In A Manner Solely To Further Their Interests And That Is Detrimental To The Interests Of The Class.**

Apart from their attempt to circumvent the PSLRA, Baker and his counsel (Taylor-Copeland in collaboration with Robbins Geller) have already conducted themselves in a manner inconsistent with the best interests of the Class, and for their own selfish interest in controlling this litigation.

As discussed in the Opening Brief at 10, Robbins Geller (purportedly representing only the Gaviria movants – and not Baker) argued that the *Baker* Action should not be consolidated or

[8] Troublingly, the resemblance between the conduct of Hagens Berman/Block & Leviton in this case, and Milberg Weiss in *BankAmerica I*, does not end here. The Milberg Weiss lawyer faulted in *BankAmerica I* (*id.* at 1048-52) is the same lawyer now repeating the same strategy at the Hagens Berman law firm on behalf of Trigon and MacDonald.

coordinated with the other Tezos-related lawsuits in federal court, even though the only conceivable outcome of this argument would be to create two, parallel actions in federal court and state court, and thus the possibility of chaos and confusion. The sole purpose of this argument was to preserve for Robbins Geller and Taylor-Copeland some role in the event that Robbins Geller was not appointed to lead the consolidated *In re Tezos Securities Litigation*. In other words, Baker and his counsel agreed to an arrangement with Robbins Geller that put the interests of the lawyers above the interests of their clients and the Class.

Based on similar conduct, the *BankAmerica I* court held that a stay of the state court lawsuits was warranted. The district court in *BankAmerica* noted that Milberg Weiss had filed numerous inadequate motions for class certification, overlooked potential conflicts of interest among classes, failed to propose class representatives who truly represented the entire class, then attempted to add non-party plaintiffs as class representatives, and when faced with the possibility that the action would result in removal of the entire case to federal court, attempted to restructure the classes, "not in the best interests of the class members, but to avoid federal court at all costs." *See BankAmerica I*, 95 F. Supp. 2d at 1050. Describing this conduct as "outrageous," the district court concluded that the "[state court] plaintiffs, and the law firm behind them, do not have the best interests of the class at heart and have proved themselves wholly inadequate to control the conduct of this suit." *Id.*

For the same reasons, Baker and his counsel, Taylor-Copeland and Robbins Geller, should not be rewarded for sacrificing class interests in order to get a seat at the table.

### C. Litigation Of The *Baker* Action Creates The Risk Of A Reverse Auction.

In *BankAmerica I*, a third factor that militated in favor of enjoining the state court action was that, when faced with the possibility of not being able to structure the state class in a manner that would avoid removal to federal court, Milberg Weiss immediately entered into "premature settlement negotiations" with the defendants, even though "[n]o depositions, including depositions of high-ranking officials involved in the alleged fraud, have been taken [and] only minimal written discovery and document exchanges have occurred at this time." 95 F. Supp. 2d at 1049-50.

Here, allowing Baker to bring a separate action on behalf of the same Class asserting the same claims against the same Defendants harms the interests of that Class. Specifically, Baker's presence creates the very real possibility of a reverse auction, by which Defendants play off the state court plaintiffs (whether Baker, Trigon/MacDonald or any other person) against the Court-appointed Lead Plaintiff. *See Carlough v. Amchem Products Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1990) (Third Circuit upheld a district court's injunction against a rival class action being maintained in state court where it found that the prospect for settlement was imminent). This danger further militates in favor of enjoining the *Baker* Action.

In rebuttal, Baker argues that the above factors cited by Lead Plaintiff as warranting an injunction are common to all parallel state court actions, so that these factors cannot warrant an injunction under the All Writs Act. Baker Opp. at 6, 9. This is incorrect. As *LendingClub* and *Primo* demonstrate, these factors are not generally present in other cases where an injunction was denied. Specifically, an injunction is not warranted where, for example, a state court plaintiff has filed much earlier than the federal plaintiff; the state plaintiff has a larger financial interest in the litigation; the state plaintiff never engaged in lawyer-driven machinations; and/or where settlement discussions have already taken place in the state court action and the federal court action is far behind.

## III. AT THE VERY LEAST, THE COURT SHOULD GRANT LEAD PLAINTIFF'S REQUESTED RELIEF IN PART, BY ENJOINING DEFENDANTS FROM CONDUCTING SETTLEMENT DISCUSSIONS WITH ANY OTHER PLAINTIFF WITHOUT COURT APPROVAL

Even if the Court declines to enjoin the *Baker* Action in its entirety, the Court should at least grant Plaintiff's requested relief in part, by exercising its authority under the All Writs Act to enjoin *Defendants* from engaging in any settlement negotiations with any plaintiff purporting to represent the Class (or part of the Class) other than Lead Plaintiff, without first notifying the Court and Lead Plaintiff, and obtaining the Court's approval.

Instead of enjoining a parallel *state court action*, a federal court undoubtedly has the power under the All Writs Act to enjoin the *parties* before it, over whom the court has personal jurisdiction. The court may use this more limited remedy in aid of its jurisdiction under the All Writs Act, to

prevent parties from pursuing conflicting litigation in state court, including conducting settlement negotiations or entering into settlement agreements. *In re Lease Oil Antitrust Litig. (No. II)*, 48 F. Supp. 2d 699, 706 (S.D. Tex. 1998) (where a court "has jurisdiction over parties in a federal case and when parallel state court cases threaten to undermine the federal claims," the court has "the power to enjoin the defendant from entering into a settlement class action with another plaintiff in another forum, at least without notice to the court and its approval") (quoting Coffee, *infra*); *Hillman v. Webley*, 115 F.3d 1461, 1469 (10th Cir. 1997) ("The district court undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in the state court, but unfortunately it did not pursue that route."); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 134 F.3d 133, 141 n.2 (3rd Cir. 1998) (affirming district court's refusal under the Anti-Injunction Act to enjoin state court proceedings, but indicating that the district court could have enjoined the parties over whom it had personal jurisdiction: "it is conceivable that we could direct the district court to enjoin those 200 plaintiffs [over whom the district court had personal jurisdiction] from pursuing their state damage remedies in Louisiana [state court]").

Professor John C. Coffee, Jr. has also proposed this practical approach to address the problem of "settlement shopping," which arises when there are overlapping, parallel class actions and "[r]epresentatives and their counsel are under pressure to give the defendant the settlement offer most favorable to the defendant." John C. Coffee Jr., *Class Actions: Interjurisdictional Warfare; Corporate Update; Corporate Securities*, NEW YORK LAW JOURNAL (Sept. 25, 1997) (Ta Reply Decl. Ex. B). According to Professor Coffee, the "practical answer" to this problem is as follows:

> Although courts – state and federal – normally lack the power to enjoin absent class members (or their attorneys) from bringing suit in another forum, they do have power over the parties before them. This includes the power to enjoin the defendant from entering into a settlement class action with another plaintiff in another forum, at least without notice to the court and its approval.
>
> …
>
> Such a prospective remedy fits the problem without creating the constitutional confrontation that results when one court refuses to give full faith and credit to the judgment of another court in another jurisdiction. After all, it takes two to tango, and collusion cannot occur without the active participation of the defendant. The federal court (or indeed a state court to the extent that it is not

> enjoining federal court litigation) could enter a ***standing order*** that the defendants in any pending class action before it could neither settle the claims in a class action in another forum nor receive any release of those claims that would be binding on the class as a whole – without its prior approval.

*Id*. (emphasis added).

Based on this approach, courts have exercised their powers under the All Writs Act in aid of their respective jurisdictions, to enjoin defendants from entering into settlements in other actions. *See, e.g.*, *In re Jamster Mktg. Litig.*, MDL No. 1751, 2008 U.S. Dist. LEXIS 80251, at *30-31 (S.D. Cal. Sept. 29, 2008) (enjoining defendant from settling or otherwise litigating in a parallel Georgia state court action, the claims encompassed within the scope of the court's MDL jurisdiction, where the proposed settlement was inadequate, defendant was not forthright with the court about the parallel state court settlement and defendant did not correct the state court's misconception of the impact of the settlement on the federal case); *In re Managed Care Litig*., 236 F. Supp. 2d 1336, 1342-45 (S.D. Fla. 2002) (enjoining a defendant, its counsel and any party acting in concert with the defendant from proceeding with a preliminarily approved settlement in a parallel action, without the express approval of the court because the court could not "turn a blind eye to the underhanded maneuvers [the defendant] took to obtain this settlement," and noting that the defendant "snookered both this Court and [the judge in the parallel action] in an obvious attempt to avoid this Court's jurisdiction").

Here, enjoining Defendants from pursuing settlements with any plaintiff other than Lead Plaintiff, unless the Court and Lead Plaintiff are notified and Court approval is obtained, will protect the interests of the Class. As explained above, the parallel *Baker* Action (as well as the *Trigon* Action) creates the threat of a reverse auction, because Baker purports to represent the same Class asserting the same claims against the same Defendants. Further, a limited injunction directed at settlement negotiations ensures that parties like Baker, who previously (in partnership with Robbins Geller) subjected themselves to the PSLRA vetting process, are not able to circumvent the Court's vetting decision by filing in state court. It also ensures that parties and their counsel who have demonstrated their readiness to put their own selfish interests above the interests of the Class are not able to wrest

decision-making control from the Court-appointed Lead Plaintiff. Accordingly, such relief is necessary and appropriate to aid this court's jurisdiction over this case.

Finally, this partial relief will not prejudice Defendants. Defendants in this case did not file an opposition to Lead Plaintiff's motion to stay the *Baker* Action in its entirety and, thus, implicitly have no objection to the partial relief which is directed only to restraining any settlement discussions between Defendants and other plaintiffs purporting to represent the same Class. If the Court grants the partial relief, Defendants may still litigate the *Baker* Action (and any other parallel actions, such as the *Trigon* Action) in state court without interference from this Court. Indeed, the partial relief would serve to aid this Court's jurisdiction over the case, while still allowing the Court to later defer to the state court if the Court determines this to be appropriate. As Professor Coffee explained, "to the extent that a standing order entered at the outset of the case barred the defendant from settling or receiving a release of the class's claims without notice to, and prior approval by, the federal court, this order does not imply that the federal court could not decide to defer to the state forum. Essentially, the federal court is only protecting its jurisdiction and slowing the race to the courthouse for the speediest settlement." Coffee, *supra*; *see also Jamster*, 2008 U.S. Dist. LEXIS 80251, at *28-29 (enjoining defendants from settling parallel action would "not so much interfere with the [state] action[s] but, rather prevents [those] action[s] from interfering with this federal proceeding"). In this respect, a limited injunction directed at the Defendants would not impinge on the principles of "equity, comity and federalism." *Mitchum*, 407 U.S. at 243.

## **CONCLUSION**

Lead Plaintiff was subjected to and prevailed in the rigorous selection process mandated by the PSLRA. Allowing the *Baker* Action to proceed would frustrate Lead Plaintiff's federal right to control the litigation of his claims and satisfy his fiduciary obligations owed to the Class. Accordingly, the Court should grant Lead Plaintiff's Motion and stay the *Baker* Action, or at least grant the Motion in part by enjoining Defendants from pursuing settlement with any other plaintiffs representing the Class, without first notifying the Court and Lead Plaintiff, and obtaining the Court's approval.

Date: May 9, 2018

Respectfully Submitted,

LTL ATTORNEYS LLP

By: *s/ Enoch H. Liang*

Enoch H. Liang
LTL ATTORNEYS LLP
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee
Caleb H. Liang
LTL ATTORNEYS LLP
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

Hung G. Ta
JooYun Kim
Natalia Williams
HUNG G. TA, ESQ., PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
Fax: 646-453-7289
hta@hgtlaw.com
jooyun@hgtlaw.com
natalia@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joseph J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*