1  Christopher L. Wanger (CA Bar No. 164751)
   Cwanger@manatt.com
2  Ana Guardado (CA Bar No. CA 286732)
   Aguardado@manatt.com
3  MANATT, PHELPS & PHILLIPS, LLP
   One Embarcadero Center
4  30th Floor
   San Francisco, CA  94111
5  Telephone:  (415) 291-7400
   Facsimile:  (415) 291-7474
6
   Attorneys for Defendants
7  TIMOTHY C. DRAPER and DRAPER ASSOCIATES V
   CRYPTO LLC
8

9              UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13  | IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |

14  This document relates to the All Actions.

    CLASS ACTION

15  **NOTICE OF MOTION AND MOTION OF
    DEFENDANTS TIMOTHY C. DRAPER
16  AND DRAPER ASSOCIATES V CRYPTO
    LLC TO DISMISS CONSOLIDATED
17  COMPLAINT PURSUANT TO FED. R.
    CIV. PROC. 12(b)(6); MEMORANDUM
18  OF POINTS AND AUTHORITIES IN
    SUPPORT OF MOTION**

19
    **Date:        July 19, 2018
20  Time:        1:30 pm
    Courtroom: 3, 17th Floor
21  Judge:       Hon. Richard Seeborg**

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS
CASE NO. 17-CV-06779-RS**

1    TO PLAINTIFF AND ALL COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on July 19, 2018 at 1:30 p.m. in the Courtroom of the

3    Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

4    Courtroom 3, 17th Floor, Defendants TIMOTHY C. DRAPER ("Draper") and DRAPER

5    ASSOCIATES V CRYPTO LLC ("Draper Associates Crypto" and, collectively, with Draper, the

6    "Draper Defendants") will and hereby do move pursuant to Federal Rules of Civil Procedure Rule

7    12(b)(6) to dismiss the Lead Plaintiff's Consolidated Complaint (Doc. # 108) against them.

8    The Draper Defendants seek dismissal under Rule 12(b)(6) of the claims against them for

9    alleged violations of Sections 5, 12(a)(1) and 15(a) of the Securities Act of 1933 (the "Act") on

10   the grounds that the Consolidated Complaint fails to state claims upon which relief can be

11   granted.  Plaintiff fails to allege and cannot properly allege that either Draper Defendant solicited

12   the purchase of securities by Plaintiff as required under Sections 5 and 12(a)(1).  Plaintiff fails to

13   allege that he had any knowledge of or direct contact with either Draper Defendant or that any

14   communication from them had any impact whatsoever on Plaintiff's alleged investment decision.

15   Plaintiff also fails to allege and cannot properly allege that either Draper Defendant is a

16   control person under Section 15(a).  Plaintiff fails to allege any facts that give rise to an inference

17   that either Draper Defendant had any specific or general control over the actions of the alleged

18   primary violators - Defendants Dynamic Ledger Solutions, Inc. ("DLS") or the Tezos Foundation

19   (the "Foundation") - that form the basis of the alleged securities violations.

20   This Motion is based upon this Notice of Motion and Motion, the accompanying

21   Memorandum of Points and Authorities, the Declaration of Christopher L. Wanger and

22   accompanying exhibits, all pleadings, records and files herein and upon such other and further

23   matters as may be presented in connection with this Motion.

24   Dated:  May 15, 2018                          MANATT, PHELPS & PHILLIPS, LLP

25

26                                                By:  /s/ Christopher L. Wanger
                                                      Christopher L. Wanger
27                                                    Attorneys for Defendants TIMOTHY C.
                                                      DRAPER  and DRAPER ASSOCIATES V
28                                                    CRYPTO LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

# TABLE OF CONTENTS

Page

I.  ISSUES TO BE DECIDED ................................................................................................. 1

II. INTRODUCTION ............................................................................................................ 1

III. STATEMENT OF FACTS .............................................................................................. 3

IV. LEGAL STANDARD ...................................................................................................... 7

V. DISCUSSION .................................................................................................................. 8

   A.  The First Count for Violations of Sections 5 and 12(a)(1) of the Securities
       Act Fails to State a Claim Against the Draper Defendants .................................... 8

       1.  Plaintiff's Claim Under Section 5 Fails to State A Claim Because
           There Is No Private Right of Action Under Section 5 ................................ 8

       2.  Plaintiff's Claim Under Section 12 Fails to State a Claim Against
           the Draper Defendants Because He Has Not Alleged that Either
           Draper Defendant Solicited His Purchase of Tezos Tokens ...................... 9

   B.  The Second Count for Violation of Section 15 of the Securities Act Fails to
       State a Claim Against the Draper Defendants Because Plaintiff Alleges No
       Facts to Suggest that Either Had the Power to Direct the Management and
       Policies of DLS or the Foundation ........................................................................ 12

VI. CONCLUSION ............................................................................................................... 16

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................7

*Baker v. Seaworld Entm't, Inc.*,
  No. 14cv2129-MMA (KSC), 2016 U.S. Dist. LEXIS 72409 (S.D. Cal. 2016) ..................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................7

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) ...............................................................................8

*Brody v. Homestore, Inc.*,
  2003 U.S. Dist. LEXIS 17267 (N.D. Cal 2003) .................................................11

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984) ............................................................................14

*Central Bank of Denver v. First Interstate Bank of Denver*,
  511 U.S. 164 (1994) ..........................................................................................10

*Durham v. Kelly*,
  810 F.2d 1500 (9th Cir. 1987) ..........................................................................13

*Fouad v. Isilon Sys.*,
  No. C07-1764 MJP, 2008 U.S. Dist. LEXIS 105870 (W.D. Wash. Dec. 29,
  2008) ..................................................................................................................11

*Howard v. Everex Sys.*,
  228 F.3d 1057 (9th Cir. 2000) ..........................................................................14

*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ..........................................................................13

*In re All. Equip. Lease Program Sec. Litig.*,
  No. 98cv2150 J (NLS), 2007 U.S. Dist. LEXIS 12713 (S.D. Cal. Feb. 23,
  2007) ....................................................................................................................9

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...............................................................15

*In re Calpine Corp. Sec. Litig.*,
  288 F. Supp. 2d 1054 (N.D. Cal. 2003) .............................................................13

*In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D 534 (N.D. Cal. 2009) .......................................................................10

*In re Daou Systems. Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ..........................................................................10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Deutsche Telekom*,
   2002 U.S. Dist. LEXIS 2627, 2002 WL 244597 .......................................................15

*In re Diasonics Sec. Litig.*,
   599 F. Supp. 447 (N.D. Cal. 1984) ........................................................................15

*In re Flag Telecom Hldgs., Ltd. Sec. Litig.*,
   352 F. Supp. 2d 429 (S.D.N.Y. 2005) ....................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   308 F. Supp. 2d 249 (S.D.N.Y. 2004) ....................................................................15

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ..................................................................................7

*In re GlenFed Securities Litig.*,
   60 F.3d 591 (9th Cir. 1995) ....................................................................................14

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ....................................................................12

*In re Int'l Rectifier Corp. Sec. Litig.*,
   No. CV 07-02544-JFW, 2008 U.S. Dist. LEXIS 44872 (C.D. Cal. May 23, 2008)...............14

*In re OSG Secs. Litig*,
   971 F.Supp 2d 387 (S.D.N.Y. 2013)........................................................................10

*In re Rigel Pharm., Inc. Sec. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage*,
   697 F.3d 869 (9th Cir. 2012)....................................................................................12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   No. 99-0109, 2000 U.S. Dist. LEXIS 15369, 2000 WL 1727405 (N.D. Cal.
   Sept. 29, 2000) ........................................................................................................14

*In re Stratosphere Corp. Sec. Litig.*,
   1 F. Supp. 2d 1096 (D. Nev. 1998) ........................................................................14

*In re Wells Fargo Mortg. Backed Certificates Litig.*,
   712 F.Supp.2d 958 (N.D. Cal. 2010) ......................................................................14

*In re Worldcom*
   377 B.R. 77 (Bankr. S.D.N.Y. 2007) ......................................................................13

*In re Worlds of Wonder Sec. Litig.*,
   721 F.Supp. 1140 (N.D. Cal. 1989) ........................................................................10

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005) ............................................................................14

*Kowal v. MCI Communications Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ..................................................................................7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**                                    iii

# TABLE OF AUTHORITIES
### (continued)

Page

*Maher v. Durango Metals, Inc.*,
    144 F.3d 1302 (10th Cir. 1998)........................................................................................11

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-0302 MRP, 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. 2011) ...............10, 11, 12

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) .......................................................................................................15

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)..............................................................................................7

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996).......................................................................................13, 14

*Pinter v. Dahl*,
    486 U.S. 622 (1988) .........................................................................................9, 10, 11, 12

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003)............................................................................................11

*Rubke v. Capitol Bancorp Ltd.*,
    460 F. Supp. 2d 1124 (N.D. Cal. 2006) ...........................................................................13

*SEC v. CMKM Diamonds, Inc.*,
    729 F.3d 1248 (9th Cir. 2013)............................................................................................9

*SEC v. Todd*,
    642 F.3d 1207 (2011)......................................................................................................14

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946)..........................................................................................................3

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998)............................................................................................8

*Steed Fin. LDC v. Nomura Secs Int'l, Inc.*,
    2001 U.S. Dist. LEXIS 1476 (S.D.N.Y. 2001) ................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .........................................................................................................8

*Theoharous v. Fong*,
    256 F.3d 1219 (11th Cir. 2001)........................................................................................15

*Travelers Ins. Co. v. Lewis*,
    756 F. Supp. 172 (S.D.N.Y. 1991)...................................................................................15

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003).............................................................................................8

*Unicorn Field v. Cannon Grp.*,
    60 F.R.D. 217 (S.D.N.Y. 1973) ........................................................................................9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Wanetick v. Mel's of Modesto, Inc.*,
    811 F.Supp. 1402 (N.D. Cal. 1992) ..............................................................15

## STATUTES

15 U.S.C. § 77k ......................................................................................12, 13

15 U.S.C. § 77e ...............................................................................3, 6, 8, 9

15 U.S.C. § 77h ...........................................................................................8

15 U.S.C. § 77l ................................................................................... passim

15 U.S.C. § 77o ................................................................................... passim

15 U.S.C. § 78t(a) .....................................................................................13

15 U.S.C. § 78u(a) ......................................................................................3

## OTHER AUTHORITIES

17 C.F.R. § 230.405 ..................................................................................14

## RULES

Fed. R. Civ. P. 12(b)(6)............................................................................1, 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

v

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    ISSUES TO BE DECIDED**

3       1.    Can a plaintiff state a claim under 15 U.S.C. § 77l(a)(1) ("Section 12(a)(1)" of the

4   Securities Act of 1933) against a defendant for soliciting the alleged purchase of an unregistered

5   security without alleging that the plaintiff had knowledge of or contact with the defendant prior to

6   the purchase and without alleging that the defendant's activities influenced the plaintiff's

7   purchase decision?

8       2.    Can a plaintiff state a claim under 15 U.S.C. § 77o ("Section 15" of the Securities

9   Act of 1933) against a defendant for control person liability without alleging any non-conclusory

10  facts that give rise to an inference that the defendant exercised actual control over the actions of

11  the primary violator?

12  **II.   INTRODUCTION**

13      The Draper Defendants move to dismiss the Consolidated Complaint against them for

14  alleged violations of the Securities Act.   Plaintiff alleges that the Draper Defendants' co-

15  defendants - DLS and the Foundation - committed securities fraud in connection with the Tezos

16  Initial Coin Offering[1] ("ICO") conducted by the Foundation in July 2017.  Plaintiff asserts two

17  claims against the Draper Defendants: (1) a claim that they are statutory sellers under Section

18  12(a)(1) for promoting the sale of unregistered securities through the Tezos ICO; and (2) a claim

19  under Section 15 related to the sales of unregistered securities by the Foundation and/or DLS

20  based on "control person" liability.  Neither claim states a claim against the Draper Defendants.

21      Plaintiff alleges that the Draper Defendants should be liable under Section 12 because,

22  even though they were not the direct sellers of securities, they "promoted" the Tezos ICO and

23  thus were "necessary participants" and a "substantial factor" in the Tezos ICO.  But Plaintiff's

24

25  _____

[1] Plaintiff refers to the events giving rise to his claims as an "Initial Coin Offering" or "ICO".
26  (See e.g., Consolidated Complaint, ¶ 1.)  Plaintiff's characterization of the event is contradicted
    by numerous documents referenced in the Consolidated Complaint.  (See e.g., The "Tezos
27  Overview" document referenced at paragraph 17 and the You Tube video referenced in paragraph
    18 both of which refer to the Foundation's "Fundraiser".)  Nevertheless, consistent with the
    mandates of Rule 12(b)(6), the Draper Defendants adopt Plaintiff's "ICO" terminology when
28  referring herein to the Tezos Fundraiser.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

**Motion to Dismiss**
**Case No. 17-cv-06779-RS**                    1

conclusory allegations are precisely the type of allegations that the U.S. Supreme Court has held are insufficient to state a claim under Section 12 against an indirect seller.  Instead, to state a claim for soliciting the purchase of an unregistered security in violation of Section 12, the plaintiff must allege not only that the defendant actively solicited the plaintiff's purchase but also that the plaintiff purchased the security *as a result of the defendant's solicitation*.  Here, Plaintiff's Complaint fails to approach that standard.  Plaintiff makes no allegations that he personally had any knowledge of or communications with either Draper Defendant or that any alleged statement of the Draper Defendants had any impact on his decision to allegedly purchase Tezos tokens.  Absent such allegations, Plaintiff's Section 12 claim for solicitation fails to state a claim.

Plaintiff's Section 15 claim that the Draper Defendants are liable as control persons for the securities violations of DLS and the Foundation is similarly deficient.  Plaintiff has not alleged and cannot allege any facts that give rise to an inference that either Draper Defendant meets the requirements of a control person under Section 15(a).  The Complaint does not allege any specific facts to suggest that either Draper Defendant had any specific or general control over the actions of DLS or the Foundation that are the basis of the securities violations.  Plaintiff has not alleged and cannot allege that Draper was an officer, director or manager in either DLS or the Foundation or that the Draper Defendants otherwise possessed the power to direct or cause the direction of the management and policies of either DLS or the Foundation.  Instead, Plaintiff merely alleges that Draper Associates Crypto - the venture capital firm with which Draper is associated - owns a minority stake in DLS.  But such ownership in DLS is insufficient as a matter of law to establish either Draper Defendant as a control person of DLS or the Foundation.  In short, Plaintiff's conclusory allegations of control fail to state a Section 15 claim against the Draper Defendants.

For these reasons and the reasons set forth more fully below, the Court should dismiss Plaintiff's Complaint against the Draper Defendants.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

2

### III.    STATEMENT OF FACTS[2]

In this putative class action suit, Plaintiff asserts securities law claims arising out of the Tezos ICO conducted from July 1, 2017 through July 14, 2017 by the Foundation.   Plaintiff alleges that the Tezos ICO was a fundraising mechanism by which the founders of the Tezos "blockchain" project sold Tezos tokens in exchange for cryptocurrencies.   (Complaint, ¶ 2.) Plaintiff alleges that the ICO raised the equivalent of $232 million in the digital currencies of Bitcoin and Ethereum.  Plaintiff alleges he invested 250 ether in the Tezos ICO on July 8, 2017. (Complaint, ¶ 14.)

Plaintiff's Complaint implicitly acknowledges that prior to July 25, 2017, the Securities and Exchange Commission (the "SEC") had never determined that a virtual coin or token was a security subject to the federal securities law.  The SEC first offered guidance on that issue in its July 25, 2017 Release No. 81207 entitled "Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO." (See Complaint, ¶ 82-83 and footnote 29.)

Nevertheless, Plaintiff alleges that the Tezos tokens qualify as securities under the U.S. securities laws and, accordingly, the Tezos ICO constituted an offering and sale of securities. Plaintiff specifically alleges that the Tezos tokens exhibit the hallmarks of a security under the U.S. Supreme Court's test set out in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) and therefore an offering of Tezos tokens was required to be registered with the Securities and Exchange Commission ("SEC").[3]   (Complaint, ¶¶ 81-84.)   Plaintiff alleges that Defendants violated 15 U.S.C. § 77e ("Section 5"), Section 12(a)(1), and Section 15 by failing to file a registration statement with the SEC in connection with the sale of Tezos tokens in the ICO. (Complaint, ¶ 10.)

---

[2]   Unless otherwise indicated, the following facts are taken from Plaintiff's Consolidated Complaint in this action ("Complaint") (Doc. #108).

[3] The Draper Defendants dispute Plaintiff's allegations that the Tezos tokens are securities that were required to be registered with the SEC and intend to challenge that claim in subsequent proceedings.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**                                             3

1    Plaintiff alleges that each defendant had a different role in the ICO but concludes that the

2    Defendants "jointly conducted the Tezos ICO". (Complaint, ¶¶ 44 and 45.) Plaintiff identifies in

3    paragraphs 46-64 the specific roles that he alleges each defendant had in the Tezos ICO.

4    Defendant DLS is the developer of Tezos and owns all of the Tezos-related intellectual

5    property, including the source code of the Tezos cryptographic ledger and the Tezos trademarks

6    and domain names. (Complaint, ¶ 46.) Defendant Arthur Breitman is the primary developer of

7    the Tezos cryptographic ledger. (Complaint, ¶ 20.) Defendant Kathleen Breitman is the Chief

8    Executive Officer of DLS. (Complaint, ¶ 21.)

9    The Breitmans and DLS established the Tezos Foundation to oversee the ICO and to

10   receive and manage all contributions. (Complaint, ¶ 48.) The Tezos Foundation and DLS

11   "jointly conducted the Tezos ICO." (Complaint, ¶ 48.) Prior to the Tezos ICO, the Foundation

12   posted a "Transparency Memo" on tezos.com disclosing that the Foundation and DLS had a

13   contractual agreement in which the Foundation will acquire DLS and its intellectual property.

14   (Complaint, ¶ 47.) The Transparency Memo states that, provided that the Tezos blockchain

15   launches and operates successfully (as described in a whitepaper and technical papers) as a public

16   blockchain for a period of three months, DLS shareholders will receive (1) 10% of all Tezos

17   tokens (76.3 million tokens), which vest monthly over a period of four years; and (2) 8.5% of the

18   contributions received in the ICO. (Complaint, ¶ 79 and Transparency Memo referenced at

19   footnotes 17, 19 and 20 attached as <u>Exhibit A</u> to the accompanying Declaration of Christopher L.

20   Wanger ("Wanger Decl."))

21   Draper is a venture capitalist and the founder of Draper Associates. (Complaint, ¶ 22.)

22   Plaintiff alleges that Draper "personally has a substantial ownership interest in Defendant DLS."[4]

23   (Complaint, ¶ 22.) Plaintiff makes no allegation, nor could he, that Draper is an officer, director

24   or manager of, or holds any position at, either DLS or the Foundation. Plaintiff references

25   throughout his complaint the "Tezos Overview" document, which describes DLS and the Tezos

26   Foundation and the people involved with those entities. (*See e.g.*, Complaint ¶¶ 17, 47, 48, 87,

27

28

---

[4] Plaintiff fails to cite any source for this erroneous allegation. Draper does not personally own any shares of DLS.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS
CASE NO. 17-CV-06779-RS**                    4

97, 103 and Tezos Overview document referenced at footnotes 5,18, 30, 37, 42 and 55 and attached as Exhibit B to the Wanger Decl.)  Draper is nowhere mentioned in that document.

Plaintiff alleges that Draper Associates Crypto is an entity associated with Draper that holds shares in DLS.  Plaintiff specifically alleges that Draper Associates Crypto is "a primary shareholder in Defendant DLS" but acknowledges that Draper Associates Crypto acquired only a "minority stake in DLS."[5]  (Complaint, ¶¶ 23 and 38.)  Plaintiff does not allege, nor could he, that either Draper or Draper Associates Crypto owns a controlling stake in DLS.  In fact, Draper Associates Crypto holds a mere 10% interest in DLS and nothing in Plaintiffs' Complaint suggests otherwise.

In support of his allegations that the Draper Defendants had a role in the ICO, Plaintiff alleges that the Draper Defendants "promoted the Tezos ICO."  (Complaint, ¶ 64.)  Plaintiff cites internet and other articles posted before the July 2017 ICO that "announced that Draper was an early investor in the Tezos project."[6]  For example, Plaintiff cites a May 5, 2017 article posted on Reuters.com in which Draper is described as "an early supporter of bitcoin and its underlying blockchain financial ledger technology" and is quoted as stating that he would participate in the Tezos ICO.  (Complaint, ¶ 61.)  Draper is further quoted in the same article as saying, "The best thing I can do is lead by example … Over time I actually feel that some of those tokens are going to improve the world, and I want to make sure those tokens get promoted as well.  I think Tezos is one of those tokens."  (Id.)

Plaintiff alleges that "Draper's announcement of his investment in the Tezos project caused an explosion of investor enthusiasm for the Tezos project."  (Complaint, ¶ 105.)  Plaintiff

---

[5] Plaintiff erroneously alleges that Draper Associates Crypto "made an equity investment of approximately $1.5 million in … DLS." (Complaint, ¶ 38.)  Plaintiff bases this allegation on a misreading of an October 18, 2017 Reuters article that Plaintiff references in footnote 15 of his Complaint.  The article states that "[Draper] invested $1.5 million through his firm, Draper Associates, which included taking a minority stake in DLS."  The true facts are that Draper Associates Crypto alone invested $500,000 for a 10% interest in DLS.  Separately, Draper Associates Crypto and a related entity collectively contributed $1 million to the Tezos Fundraiser.

[6] Plaintiff cites other articles in his Complaint that are dated after July 8, 2017 – the date that he alleges that he invested in the ICO. Obviously, any such post-investment articles could not have had any influence on and cannot constitute a solicitation of Plaintiff's alleged investment in Tezos.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

5

goes on to quote or cite a handful of other pre-ICO articles that Plaintiff alleges "appeared promoting the Tezos project and extolling the value of Draper's financial backing." (*Id*.)  For example, Plaintiff alleges that *The Wall Street Journal* reported in a July 7, 2017 article that Tezos "was helped by having one prominent backer: Tim Draper, a founder of the Silicon Valley venture capital firm Draper Fisher Jurvetson" and that Draper's "small undisclosed personal investment in the firm, and his public pledge to buy into the initial coin offering significantly raised Tezos' profile."  (Complaint, ¶ 62.)  Plaintiff also quotes an article posted on bitcoinist.com that stated "with Draper as a backer, the community will no doubt be eager to get on board this latest offering." (Complaint, ¶ 105.)  Similarly, Plaintiff alleges that *Bitcoin News* reported on May 6, 2017 that "Draper rightly believes that by participating in the ICO, he will be setting an example for the rest of the investor community to follow the new age of fundraising" and that "Draper's participation in the ICO will not only encourage others to take part in it, but it will also increase the chances of a successful completion of many crowdsales." (Complaint, ¶ 106.)

Based on foregoing allegations, Plaintiff concludes that "[i]n this manner [generally described in paragraphs 48 through 63 of the Complaint], each of the [Draper] Defendants directly or indirectly sold or offered Tezos tokens to investors" and that "each of the [Draper] Defendants was a necessary participant and a substantial factor in the Tezos ICO." (Complaint, ¶ 64.)

Significantly, nowhere in his Complaint does Plaintiff allege that he knew of Draper or Draper Associates Crypto prior to the ICO or that Plaintiff had any pre-ICO communications with either Draper Defendant.  Plaintiff also fails to allege that, prior to the ICO, he was aware of or had read any of articles about Draper cited in his Complaint or that any action of either Draper Defendant had any role whatsoever in Plaintiff's decision to allegedly purchase Tezos tokens.

Plaintiff's Complaint contains two counts.  Plaintiff alleges in his First Count that each of the Foundation, DLS, the Breitmans, and the Draper Defendants violated Sections 5 and 12(a)(1) in connection with the Tezos ICO by offering, selling or delivering unregistered securities. (Complaint, ¶ 140.)  Plaintiff alleges in his Second Count that the Breitmans and the Draper

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

6

1  Defendants are liable as control persons for the securities fraud of DLS and the Foundation under

2  Section 15.  (Complaint, ¶¶ 146-147.)

3  **IV.   LEGAL STANDARD**

4        Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

5  upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion

6  to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

7  face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility"

8  standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a

9  defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facts that are

10  "merely consistent with," rather than suggestive of, a finding of liability will not support a

11  reasonable inference of violative conduct.  *Id*.  Pleading labels or conclusions is no longer

12  sufficient.  *Twombly*, *supra*, 550 U.S. at 555.  A plaintiff must allege sufficient factual matter to

13  "raise a right to relief above the speculative level."  *Id*. at 555, 570. "A claim has facial

14  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

15  inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the

16  elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  "In

17  sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and

18  reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

19  plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citations

20  omitted).

21        In adjudicating a motion to dismiss under Rule 12(b)(6), the court is not required to accept

22  as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

23  inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  The courts also

24  have distinguished between "facts" and "inferences" from facts and have held that the latter do

25  not have to be assumed to be true on a motion to dismiss.  *Kowal v. MCI Communications Corp.*,

26  16 F.3d 1271, 1276 (D.C. Cir. 1994).

27        Although the Court is generally confined to consideration of the allegations in the

28  pleadings, "a document is not 'outside' the complaint if the complaint specifically refers to the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

**Motion to Dismiss**
**Case No. 17-cv-06779-RS**                                    7

1   document and its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.

2   1994).  Documents may be incorporated into a complaint when the plaintiff refers extensively to

3   the document or when the document forms the basis of the plaintiff's claims.  *Tellabs, Inc. v.*

4   *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007);  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

5   2003).  The court is not "required to accept as true conclusory allegations which are contradicted

6   by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

7   1295 (9th Cir. 1998).

8   **V.    DISCUSSION**

9   **A.    The First Count for Violations of Sections 5 and 12(a)(1) of the Securities Act**
        **Fails to State a Claim Against the Draper Defendants.**

10

11      **1.    Plaintiff's Claim Under Section 5 Fails to State A Claim Because**
              **There Is No Private Right of Action Under Section 5.**

12      Section 5, subdivisions (a) and (c) make it unlawful to offer or sell a security in interstate

13  commerce if a registration statement has not been filed as to that security, unless the transaction

14  qualifies for an exemption from registration.  Specifically, Section 5 provides in pertinent part:

15      (a)  Unless a registration statement is in effect as to a security, it shall be unlawful
        for any person, directly or indirectly (1) to make use of any means or instruments
16      of transportation or communication in interstate commerce or of the mails to sell
        such security through the use or medium of any prospectus or otherwise; or (2) to
17      carry or cause to be carried through the mails or in interstate commerce, by any
        means or instruments of transportation, any such security for the purpose of sale or
18      for delivery after sale.

19
        …
20

21      (c)  It shall be unlawful for any person, directly or indirectly, to make use of any
        means or instruments of transportation or communication in interstate commerce
22      or of the mails to offer to sell or offer to buy through the use or medium of any
        prospectus or otherwise any security, unless a registration statement has been filed
23      as to such security, or while the registration statement is the subject of a refusal
        order or stop order or (prior to the effective date of the registration statement) any
24      public proceeding or examination under section 77h of this title.

25

26      To establish a *prima facie* case for violation of Section 5, the SEC must show that (1) no

27  registration statement was in effect as to the securities; (2) the defendant directly or indirectly

28  sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**                                    8
**CASE NO. 17-CV-06779-RS**

*SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013).  There is no private right of action under Section 5; the only civil remedy available to private parties is that specified in Section 12.  *Unicorn Field v. Cannon Grp.*, 60 F.R.D. 217, 223 (S.D.N.Y. 1973).  Thus, Plaintiff's only potentially viable claim under Count One of the Consolidated Complaint is a claim under Section 12.

> **2.      Plaintiff's Claim Under Section 12 Fails to State a Claim Against the Draper Defendants Because He Has Not Alleged that Either Draper Defendant Solicited His Purchase of Tezos Tokens.**

Section 12 provides a private right of action for the solicitation or sale of securities in violation of Section 5.  Section 12(a) provides that "[a]ny person who . . . (1) offers or sells a security in violation of [Section 5] . . . shall be liable . . . to the person purchasing such security *from him*." 15 U.S.C. § 77l(a) (emphasis added).  Defendants are liable under Section 12 for transactions that violate Section 5 if they qualify as "sellers".  *In re All. Equip. Lease Program Sec. Litig.*, No. 98cv2150 J (NLS), 2007 U.S. Dist. LEXIS 12713, at *20 (S.D. Cal. Feb. 23, 2007) (brokers who solicited sale of securities and directly sold to plaintiffs are statutory sellers under Section 12).

Section 12 provides relief only against a person who "offers or sells a security" and only to the person "purchasing such security from him".  15 U.S.C. § 77l.  In 1988, the U.S. Supreme Court clarified the definition of seller under Section 12 in *Pinter v. Dahl*, 486 U.S. 622, 653-644 (1988).  In *Pinter*, the Court rejected the longstanding view of many courts that the term seller extends to persons who were a "substantial factors", "participants" in or the "proximate cause" of the securities transaction.  Instead, the Supreme Court held that Section 12(a)(1) applies only to persons who (1) pass title to the security to the plaintiff; or (2) "solicit securities purchases" provided that they are motivated at least in part by a desire to serve their own financial interests or those of the securities owner.  *Pinter*, *supra*, 486 U.S. at 646-647.  The *Pinter* Court concluded that the statutory language of Section 12 made it clear that Section 12 is not intended to embrace "those who merely assist in another's solicitation efforts."  *Id*. at 651, n. 27.  According to the *Pinter* court, Congress did not intend to extend Section 12 primary liability to "collateral

participants" in an unlawful securities transaction, such as "participants in the activities leading up to the sale."[7]  *Id.* at 650.

Here, there is no claim that the Draper Defendants passed to the Plaintiff title to Tezos tokens.  Instead, Plaintiff alleges that the Foundation created a digital wallet to which Plaintiff sent his contribution and it was the Foundation that received and managed his contribution. (Complaint, ¶¶ 47, 70-77.)  Thus, to the extent that Plaintiff can be said to have alleged that some defendant passed to him title to a security, Plaintiff has only identified the Foundation as the actual seller.

To the extent that Plaintiff seeks to state a claim against the Draper Defendants for soliciting a securities purchase, to state a Section 12 claim he must allege "not only that [the defendant] actively solicited investors, but that [the] plaintiff purchased the securities as a result of [the defendant's] solicitation."  *Steed Fin. LDC v. Nomura Secs Int'l, Inc.*, 2001 U.S. Dist. LEXIS 1476, at *24 (S.D.N.Y. 2001) (purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the defendant liable as a Section 12 seller); *In re OSG Secs. Litig*, 971 F.Supp 2d 387, 402 (S.D.N.Y. 2013); *In re Worlds of Wonder Sec. Litig.*, 721 F.Supp. 1140, 1148 (N.D. Cal. 1989) (absent direct sale of security by defendant to plaintiff, plaintiff must show that the defendant successfully solicited the purchase of securities and was motivated at least in part by a desire to serve his own financial interests or those of the security owner); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D 534, 549 (N.D. Cal. 2009) (defendant must be alleged to have had some direct role in the solicitation of the plaintiff).

In the Ninth Circuit, the defendant must be alleged to have had some "direct" role in the solicitation of the plaintiff.  *In re Daou Systems. Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).  In *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *37-38 (C.D. Cal. 2011), the Court addressed on a motion to dismiss plaintiffs' class action claim that certain defendants qualified as sellers by solicitation under Section 12.  *Id.* at *35.  The Court stated that in order to impose liability under Section 12 as a seller by

---

[7] The Supreme Court also has held that there is no liability for aiding and abetting under Section 12.  *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).

solicitation, "Plaintiffs would have to plead active participation in the solicitation of the immediate sale, *a direct relationship between the purchaser and the defendant*." *Id.* at *36 (emphasis added) (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998)). The court found plaintiffs' allegations that the defendants "promoted" the sale of securities and participated in road shows to promote the stoke did not constitute active solicitation under *Pinter* and were insufficient to state a claim under Section 12. *Id.* at *37. "Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs. [Citations omitted.] As the Supreme Court stated in *Pinter*, '[b]eing merely a "substantial factor" in causing the sale of unregistered securities is not enough to render a defendant liable.'" *Id.* at *37-38.

Similarly, in *Fouad v. Isilon Sys.*, No. C07-1764 MJP, 2008 U.S. Dist. LEXIS 105870, at *21-22 (W.D. Wash. Dec. 29, 2008), the court dismissed Section 12(a)(2) claims against issuer defendants where the complaint alleged that the defendants merely issued and participated in preparation of the Prospectus, and paid for and participated in road shows to promote the stock. S*ee also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003) (dismissing 12(a)(2) claims where defendants did not "directly communicate with the buyer" or otherwise "assume[] the 'unusual' role of becoming a 'vendor's agent'"); *and Brody v. Homestore, Inc.*, 2003 U.S. Dist. LEXIS 17267 at *17 (N.D. Cal 2003) (holding that allegations that defendants met with potential investors and money managers and presented highly favorable information about the Company were insufficient to establish the defendants as sellers within the meaning of Section 12).

Here, there is no allegation that the Draper Defendants "solicited" Plaintiff to purchase Tezos tokens in any sense of that word. There is no allegation that either Draper Defendant urged or encouraged Plaintiff to purchase Tezos tokens. There also is no allegation that Draper prepared or provided any information to Plaintiff in connection with his alleged investment. In fact, there is no allegation that Plaintiff knew of or had any communications or contacts whatsoever with either Draper Defendant.

Instead, Plaintiff makes conclusory allegations that because Draper promoted the Tezos ICO, he "was a necessary participant and substantial factor in the Tezos ICO." (Complaint, ¶ 64.)

Plaintiff has employed the old standard rejected by the *Pinter* Court and has failed to include any specific factual allegations to support a claim the Draper Defendants are sellers by solicitation. Because Plaintiff has not alleged that either Draper Defendant successfully solicited his purchase of Tezos tokens, Plaintiff has failed to state a claim under Section 12.  *See Baker v. Seaworld Entm't, Inc.*, No. 14cv2129-MMA (KSC), 2016 U.S. Dist. LEXIS 72409, *55 (S.D. Cal. 2016) (citing *Me. State Ret. Sys.*, 2011 U.S. Dist. LEXIS 125203) (plaintiffs' "barebones allegations" are insufficient to properly allege solicitation, when Plaintiffs fail to allege specific solicitation, including any direct communication with Plaintiffs).

### B.     The Second Count for Violation of Section 15 of the Securities Act Fails to State a Claim Against the Draper Defendants Because Plaintiff Alleges No Facts to Suggest that Either Had the Power to Direct the Management and Policies of DLS or the Foundation.

In the Second Count of the Complaint, Plaintiff asserts claims against the Draper Defendants for control person liability under Section 15(a).  Section 15, imposes secondary liability on persons who control those who have committed violations of federal securities law. 15 U.S.C. § 77o; *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005). Therefore, to the extent Plaintiff fails to assert a valid claim under Section 12, his claim for liability of controlling persons Section 15 fails as well.  *In re Rigel Pharm., Inc. Sec. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage*, 697 F.3d 869, 886 (9th Cir. 2012) (Section 15 requires an underlying primary violation of securities laws).

Section 15(a) provides as follows:
Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77(k) or 77(l) of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o(a).

15 U.S.C. § 77k creates civil liability for false registration statements and 15 U.S.C. § 77l creates liability contained in prospectuses and communications.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

12

Section 15 is similar to 15 U.S.C. § 78t(a) ("Section 20(a)" of the Securities and Exchange Act of 1934). Both statutes provide that one who controls a person liable under another provision of the Securities Act or Exchange Act is liable to the same extent as the controlled person (*i.e.*, the primary violator). Although courts in the Ninth Circuit have stated that the "controlling person" analysis is generally the same under Section 15 and Section 20, distinctions exist in regard to "culpable participation." *In re Worldcom* 377 B.R. 77, 103 (Bankr. S.D.N.Y. 2007). For Section 20 claims in the Ninth Circuit, culpable participation is not required. *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); see *also Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) (for Section 20 claims, "the plaintiff need not show the controlling person's scienter or that they 'culpably participated' in the alleged wrongdoing"). For Section 15 claims, however, some California federal courts have held that culpable participation is required. *See In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003) ("The Section 15 defendant must have exerted actual control and have been a culpable participant in the alleged Securities Act violations") (*citing Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987); *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1134 (N.D. Cal. 2006) ("To state a claim for control person liability under § 15(a), a plaintiff must allege that the individual defendants had the power to control or influence the company, and that the individual defendants were culpable participants in the company's alleged illegal activity.") (citing *Durham*, 810 F.2d at 1503).

To state a claim for "control person" liability under Section 15(a), the Ninth Circuit requires a plaintiff to plead (1) a primary violation of Section 11 or Section 12; (2) that the alleged controlling person possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of the individual allegedly liable for the primary violation; and (3) that the defendant actively used this influence or control so as to be a "culpable participant" in the primary violation. *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 685 (9th Cir. 2005); *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. 99-0109, 2000 U.S. Dist. LEXIS 15369, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000); *see also* 17 C.F.R. § 230.405 (defining "control" as "the possession,

direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise").

In general, the determination of who is a controlling person is a factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions. *Paracor, supra,* 96 F.3d at 1161.  However, a plaintiff cannot simply base his claims on boilerplate allegations; he must provide some factual support that defendants were in a position to control a primary violator. *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 U.S. Dist. LEXIS 44872, at *69 (C.D. Cal. May 23, 2008).  A plaintiff must allege more than the defendant's position and committee membership. *In re GlenFed Securities Litig.*, 60 F.3d 591, 593 (9th Cir. 1995). There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed. *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).

In the Ninth Circuit, indicia of control include: "Whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements, which is sufficient to presume control over the transactions giving rise to the alleged securities violation." *SEC v. Todd*, 642 F.3d 1207, 1223 (2011) (internal citations omitted); *see also Howard*, *supra*, 228 F.3d at 1065.  *See also In re Wells Fargo Mortg. Backed Certificates Litig.*, 712 F.Supp.2d 958 (N.D. Cal. 2010) (conclusory allegations that defendants exercised substantial control over primary violator are insufficient without specific factual allegations that defendants had the "power to direct or cause the direction of the management and policies" of the primary violators). *See also In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1122 (D. Nev. 1998) ("Plaintiffs have merely alleged that 'but for' the Underwriters' participation, the Stock Offering could not have been accomplished.  This type of proximate causation is not a sufficient basis for 'control person' liability, which requires the exercise of actual power or influence over a company.")  A plaintiff basing allegations on "control person" status must inform the defendants who they are alleged to control and what acts or status indicate such control. *Wanetick v. Mel's of Modesto, Inc.*, 811 F.Supp. 1402 (N.D. Cal. 1992)

It is well settled that minority stock ownership interest does not establish control person liability under Section 15. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004); *In re Alstom SA*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005) (stating that "[m]inority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator"); *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-459 (S.D.N.Y. 2005) (ownership of 30 percent of voting shares and ability to appoint three of nine board members did not constitute control); *In re Deutsche Telekom*, 2002 U.S. Dist. LEXIS 2627, 2002 WL 244597, at *6-*7; *Travelers Ins. Co. v. Lewis*, 756 F. Supp. 172, 177 (S.D.N.Y. 1991); and *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 459 (N.D. Cal. 1984) (no basis for finding "control" over the corporate defendant when defendant has never been a director and his stock holdings represent only a small portion of the total outstanding stock).

In *Theoharous v. Fong*, 256 F.3d 1219, 1227-28 (11th Cir. 2001) (abrogated on other grounds by *Merck & Co. v. Reynolds*, 559 U.S. 633, 643 (2010)), plaintiffs asserted a controlling person claim against a significant minority shareholder of the offending corporation. The plaintiffs relied exclusively on two facts: (1) that the defendant owned 39% of the allegedly controlled corporation's stock; and (2) that an agreement guaranteed the defendant four of the nine directorships of the corporation. *Id.* at 1227. Since these facts only established a minority interest in the ownership and direction of the allegedly controlled corporation, the Eleventh Circuit held that these facts alone did not establish the defendant's liability as a controlling person of the offending corporation. *Id.* at 1227-28.

Here, the Plaintiff has failed to plead any facts that give rise to the inference that either Draper Defendant possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of DLS or the Foundation. Plaintiff has not alleged and cannot allege that Draper was an officer, director or manager of DLS or the Foundation or that he had any role in the management or policies of DLS or the Foundation.

Plaintiff also has not alleged any facts that give rise to an inference that either Draper Defendant has the power to control DLS or the Foundation. Plaintiff does not and cannot allege

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

15

1   that either Draper Defendant owns a controlling share of DLS or the Foundation.   Instead,

2   Plaintiff merely alleges that Draper Associates Crypto holds a minority interest in DLS.

3   (Complaint, ¶ 48 – Draper Associates Crypto "made an equity investment …for a minority stake

4   in DLS.")   But such a minority interest cannot give rise to an inference that Draper Associates

5   Crypto, let alone Draper personally, possesses the power to control DLS.   In short, Plaintiff has

6   not alleged and cannot allege any specific facts that give rise to an inference that either Draper

7   Defendant possesses the power to direct or control DLS or the Foundation.   Instead, Plaintiff

8   makes the conclusory allegation that, by virtue of Draper Associates Crypto's minority stake in

9   DLS, the Draper Defendants control DLS and the Foundation.   Plaintiff's allegations are the type

10  of allegations based solely on affiliation that fail to state a claim for control liability under Section

11  15.

12  **VI.   CONCLUSION**

13          For the foregoing reasons, the Draper Defendants respectfully request that this Court

14  dismiss Plaintiff's Complaint against them with prejudice.

15  Dated:  May 15, 2018                          MANATT, PHELPS & PHILLIPS, LLP

16

17                                               By:  /s/ Christopher L. Wanger
                                                      Christopher L. Wanger
18                                                    Attorneys for Defendants TIMOTHY C.
                                                      DRAPER and DRAPER ASSOCIATES V
19                                                    CRYPTO LLC

20

21

22

23

24

25

26

27

28