Neal A. Potischman (SBN 254862)
Serge A. Voronov (SBN 298655)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
         serge.voronov@davispolk.com

Edmund Polubinski III (*pro hac vice*)
Andrew S. Gehring (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:   (212) 701-5800
Email: edmund.polubinski@davispolk.com
         andrew.gehring@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to: All Actions | Master File No. 17-cv-06779-RS<br><br>CLASS ACTION<br><br>**DEFENDANT TEZOS STIFTUNG'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date:   July 19, 2018<br>Time:   1:30 p.m.<br>Dept.:  Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO DISMISS ......................................................................1

STATEMENT OF ISSUES ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................2

PRELIMINARY STATEMENT ..........................................................................................................2

STATEMENT OF FACTS AND ALLEGATIONS ..............................................................................4

I.      The Development of the Tezos Blockchain and Tokens ............................................................4

II.     The Tezos Fundraiser....................................................................................................................5

LEGAL STANDARDS .......................................................................................................................6

ARGUMENT .......................................................................................................................................7

I.      This Court Lacks Personal Jurisdiction Over the Foundation ..................................................7

        A.      The Foundation's Alleged Conduct Did Not Purposefully Target the United
                States or Give Rise to Plaintiff's Claim .........................................................................8

                1.      The Foundation Did Not Target U.S. Contributors Through Tezos.com ......10

                2.      Plaintiff's Claim Does Not Arise from Any Activity of Mr. Kenyon ...........11

                3.      DLS and the Foundation Are Separate Entities .............................................13

        B.      Exercising Jurisdiction Over the Foundation Would Be Unreasonable ...................13

II.     This Action Should Be Dismissed Under the Doctrine of Forum Non Conveniens ............16

        A.      Switzerland Is an Adequate Alternative Forum.........................................................16

        B.      The Forum-Selection Clause Requires Dismissal, Which Is Supported by the
                Private and Public Interest Factors ............................................................................17

                1.      Plaintiff Has Agreed to Litigate His Dispute in Switzerland........................18

                2.      The Private and Public Interest Factors Also Favor Dismissal.....................20

III.    U.S. Securities Laws Do Not Apply to the Fundraiser ...........................................................21

CONCLUSION..................................................................................................................................25

# TABLE OF AUTHORITIES

PAGE

## Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)....................................................................................... 22, 24

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) .............................................................................................. 15

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  571 U.S. 49 (2013).................................................................................................... passim

*Azzarello v. Navagility, LLC*,
  No. C-08-2371 MMC, 2008 WL 4614667 (N.D. Cal. Oct. 16, 2008).................................. 8, 10

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ............................................................................................ 6

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ...................................................................................... 6, 11

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
  125 F. Supp. 2d 1194 (C.D. Cal. 2000) .......................................................................... 15

*Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.*,
  No. 08-cv-01381-MSK-CBS, 2011 WL 1211511 (D. Colo. Mar. 31, 2011) ............................ 24

*Casualty Assur. Risk Ins. Brokerage Co. v. Dillon*,
  976 F.2d 596 (9th Cir. 1992) ............................................................................................ 7

*Cloud v. Ness*,
  No. 2:14-CV-02308-TLN-AC, 2015 WL 7271760 (E.D. Cal. Nov. 18, 2015).......................... 9

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ..................................................................................... 14, 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ............................................................................... 7, 12, 13

*DeBenedictis v. Merrill Lynch & Co.*,
  492 F.3d 209 (3d Cir. 2007)............................................................................................ 19

*Delta Alcohol Distrs. v. Anheuser-Busch Int'l, Inc.*,
  28 F. Supp. 3d 682 (E.D. Mich. 2014)............................................................................ 18

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ............................................................................ 10

ii

*Dickenson v. Stevens*,
   No. 2:10-cv-09460-JHN-CWX, 2011 WL 13217926 (C.D. Cal. Dec. 16, 2011) ..................... 12

*Dynamic Software Servs. v. Cyberbest Tech., Inc.*,
   No. C-13-04217 DMR, 2014 WL 3373924 (N.D. Cal. July 9, 2014) ........................................ 9

*Ellicott Mach. Corp. v. John Holland Party Ltd.*,
   995 F.2d 474 (4th Cir. 1993) ........................................................................................... 15

*EnLink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*,
   No. C 09-03524 CW, 2009 WL 4544694 (N.D. Cal. Nov. 30, 2009) ........................................ 9

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
   940 F. Supp. 528 (S.D.N.Y. 1996).................................................................................... 21

*Gemini Capital Grp., Inc. v. Yap Fishing Corp.*,
   150 F.3d 1088 (9th Cir. 1998) ......................................................................................... 21

*Gray & Co. v. Firstenberg Mach. Co., Inc.*,
   913 F.2d 758 (9th Cir. 1990) ....................................................................................... 9, 10

*HaloSongs, Inc. v. Sheeran*,
   No. SACV 16-1062 JVS (JCGx), 2017 WL 5198248 (C.D. Cal. Jan. 13, 2017)..................... 12

*In re Alcon S'holder Litig.*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010)....................................................................... 17, 20, 21

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013)................................................................................ 23

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................................ 4, 5

*Levine Leichtman Capital Partners III, L.P. v. Shaker Constr. Grp., LLC*,
   No. CV 08-01252 DDP (EX), 2008 WL 11336663 (C.D. Cal. May 2, 2008) ........................... 9

*LiveCareer Ltd v. Su Jia Techs. Ltd.*,
   No. 14-cv-03336-JST, 2015 WL 1448505 (N.D. Cal. Mar. 31, 2015)........................................ 10

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ........................................................................... 7, 16, 17, 20

*Mehr v. Féderation Internationale de Football Ass'n*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) ................................................................ 7, 8, 12, 13

*Mencanin v. Fat Head's Bales to Hoppy Ales, LLC*,
   No. SACV 14-1718 AG(RNBx), 2015 WL 12743686 (C.D. Cal. Mar. 16, 2015) ................... 10

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010).......................................................................................... 15, 21, 22

iii

*MVP Asset Mgmt. (USA) LLC v. Vestbirk*,
  No. 2:10-CV-02483-GEB, 2013 WL 1726359 (E.D. Cal. Mar. 22, 2013)..........................22, 23

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ..............................................................................................18, 19

*Pac. Atl. Trading Co. v. M/V Main Express*,
  758 F.2d 1325 (9th Cir. 1985) ......................................................................................................16

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ........................................................................................................8

*Phillips v. Worldwide Internet Sols.*,
  No. C 05-5125 SBA, 2006 WL 1709189 (N.D. Cal. June 20, 2006) .............................................14

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ......................................................................................................11

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)................................................................................................................16, 17

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
  753 F. Supp. 2d 166 (S.D.N.Y. 2010)..................................................................................22, 23, 25

*Quigley v. Guvera IP Pty Ltd.*,
  No. C10-03569 CRB, 2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) ...........................................10

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ......................................................................................................13

*Rhapsody Int'l Inc. v. Lester*,
  No. C13-05489 CRB, 2014 WL 709899 (N.D. Cal. Feb. 24, 2014) ............................................10

*Richards v. Lloyd's of London*,
  135 F.3d 1289 (9th Cir. 1998) ....................................................................................17, 18, 19, 21

*S.H. Silver Co. v. David Morris Int'l*,
  No. C 08-03550, 2008 WL 4058364 (N.D. Cal. Aug. 28, 2008)..............................................14, 15

*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..........................................................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .......................................................................................................7, 8

*SEC v. Benger*,
  No. 09 C 676, 2013 WL 593952 (N.D. Ill. Feb. 15, 2013)..........................................................23

*Steckman v. Hart Brewing Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ......................................................................................................23

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ...................................................................... 13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................................................. 11

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................................... 7

*Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n*,
    No. 14-00013 MMM (MANX), 2014 WL 12631652 (C.D. Cal. June 9, 2014) .......................... 15

*Xu v. Nobel Assembly at Karolinska Institutet*,
    No. SACV 13-320-JLS ANX, 2013 WL 9760036 (C.D. Cal. Nov. 20, 2013) ............................ 14

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) ................................................................................. 17

## Statutes

Fed. R. Civ. P. 12(b) ...................................................................................................... 1, 6

Fed. R. Civ. P. 45(b) ......................................................................................................... 20

Swiss Civ. Code, art. 80 ............................................................................................... 4, 15

Swiss Civ. Code, art. 83 ..................................................................................................... 5

Swiss Civ. Code, art. 84 ..................................................................................................... 5

Swiss Civ. Code, art. 325.1 ............................................................................................... 20

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on July 19, 2018 at 1:30 p.m., or as soon thereafter as the matter maybe heard, in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, defendant Tezos Stiftung (the "Foundation") will and hereby does move the Court under Federal Rule of Civil Procedure 12(b)(2) for an order dismissing with prejudice the claim against the Foundation in the Consolidated Complaint filed by Lead Plaintiff Arman Anvari, and, alternatively, under the doctrine of forum non conveniens and Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Consolidated Complaint in its entirety.

This motion is based on this Notice of Motion and the supporting Memorandum of Points and Authorities, the Foundation's Request for Judicial Notice, the concurrently filed declarations and exhibits, other materials in the record, argument of counsel, and such other matters as the Court may consider.

## STATEMENT OF ISSUES

1.  Whether plaintiff's claim against the Foundation should be dismissed under Rule 12(b)(2) because the Complaint does not sufficiently allege the existence of personal jurisdiction over the Foundation.

2.  Whether the action should be dismissed under the doctrine of forum non conveniens because Switzerland—where plaintiff has agreed to litigate—is the appropriate forum for this action.

3.  Whether the action should be dismissed under Rule 12(b)(6) because the securities laws do not apply extraterritorially and irrevocable liability was not incurred in the United States.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This case arises from a July 2017 fundraiser (the "Fundraiser") to pay for the development of a new blockchain technology, the Tezos protocol.  The Fundraiser was conducted by the Foundation, a Swiss nonprofit based in Zug, a city in the region known as "Crypto Valley" because it has become a hub of blockchain and cryptocurrency innovation.  Contributors around the world made donations to the Fundraiser using specific software that was located in Europe—so that the Foundation could pay its development team, located in France, and eventually launch the Tezos protocol.  The written terms that governed those contributions (the "Contribution Terms") made clear that the contributions were nonrefundable.  Under the Contribution Terms, contributions were deemed made in Europe, and contributors agreed to have any disputes arising therefrom adjudicated in Switzerland.  Notwithstanding the obviously foreign locus of these events, plaintiff claims that the Fundraiser was an offering of unregistered securities in violation of U.S. law because he happened to arrange his donation to the Fundraiser from his home in Illinois.  That single allegation cannot bear the weight plaintiff has placed on it and cannot justify dragging a Swiss foundation with no U.S. presence into American court, to litigate a case that plaintiff previously agreed should be brought in Switzerland, in connection with a donation that plaintiff previously agreed was made in Europe.

As a threshold matter, the Court does not have personal jurisdiction over the Foundation.  The Foundation's lack of connection to the United States is obvious:  It has no offices and conducts no business in the United States.  Its headquarters are in Zug, and the developers working on the protocol are located in France.  And as a Swiss entity, it is subject to Swiss law and overseen by Swiss regulatory agencies.  Plaintiff asserts that specific jurisdiction exists because the Foundation has two connections with the United States.  But that claim does not withstand scrutiny as either a factual or legal matter.  Plaintiff first points to an individual who made a video about the Fundraiser; plaintiff alleges that he is the Foundation's agent.  Setting aside that plaintiff's allegations of agency and the video being made in the United States are based on unwarranted inferences, his claim does not arise

from that video (which he does not claim to have seen before he made his contribution), so it cannot serve as the basis for specific jurisdiction.  Plaintiff then suggests that the contribution website that he voluntarily sought out to make his donation establishes jurisdiction because it is hosted in the United States.  But that website nowhere even mentions the United States, let alone *purposefully* targets it—as required by Ninth Circuit law—nor was it even controlled by the Foundation.  There are thus no grounds on which to assert jurisdiction over the Foundation.

In keeping with the Foundation's lack of U.S. contacts, the Contribution Terms require that any disputes be adjudicated by Swiss courts.  Longstanding precedent gives primacy to such forum-selection clauses as long as the chosen forum provides an adequate remedy to the plaintiff.  Switzerland makes available private rights of action to purchasers of a security in the event that the issuer did not follow proper procedures—just like plaintiff's Section 5 claim here.  The result dictated by the Contribution Terms is consistent with general principles of forum non conveniens: The crucial witnesses and evidence are located in Europe, which would require much of the discovery to occur through the Hague Convention if the case remained before this Court, while non-party international witnesses could not be compelled to testify here.  And Switzerland's interest in the case is significant, as the country has specific regulators to oversee both foundations and financial institutions, including issuers of crypto tokens, and the country is a center for cryptocurrency and blockchain development and innovation.

Even setting aside jurisdictional defects and forum non conveniens principles, this case must be dismissed because U.S. law does not apply to plaintiff's contribution.  The U.S. securities laws do not apply extraterritorially and can be asserted only if the Foundation incurred liability in this country.  But plaintiff's contribution was made using software located in Europe, where the contribution was executed, recognized, and recorded.  The only link to the United States is plaintiff's happenstance location when he accessed the contribution website—which is no different than the cases holding that submitting a purchase order in the United States does not mean that U.S. law applies when the order is executed and irrevocable liability is incurred overseas.  The U.S. securities laws do not reach what is fundamentally a foreign transaction.

3

Plaintiff has attempted to make this case U.S.-centric, but his residency here does not change the underlying facts: The Foundation has no U.S. presence, and the Fundraiser was conducted in Europe. Neither the Foundation nor the case as a whole belongs before this Court.

## STATEMENT OF FACTS AND ALLEGATIONS

### I.   The Development of the Tezos Blockchain and Tokens

Defendant Dynamic Ledger Solutions, Inc. ("DLS"), which was cofounded by defendants Arthur and Kathleen Breitman, initially developed the Tezos blockchain. (*See* Decl. of Andrew S. Gehring ("Gehring Decl."), Ex. A, *Tezos: The self-amending cryptographic ledger* (the "Overview") § 3.1.)[1] The blockchain's development team has been primarily located in France since at least early 2017. (*See id.* § 3.2.) DLS was funded in part by defendant Draper Associates V Crypto LLC, a venture capital firm controlled by defendant Tim Draper (together, "Draper"). (Compl. ¶¶ 22-23.)

The Tezos blockchain seeks to provide advantages over other such technologies by addressing deficiencies in governance, verification, and proof-of-stake. (*See* Overview §§ 2.1-2.3.) Tezos tokens (also called XTZ) will be issued in connection with the launch of that blockchain. (*See id.* § 2.1.) While the design of existing cryptocurrencies and blockchains is in the hands of "centralized core development teams," Tezos tokens are being designed to have "on chain" governance, wherein token holders themselves propose and approve upgrades to the platform's design. (*Id.*)

The Foundation, a duly organized Swiss nonprofit that is based in Zug, Switzerland, was founded in or around May 2017 and is furthering the development and use of the Tezos blockchain. (Compl. ¶¶ 16, 47.) As a Swiss foundation, it is an autonomous legal entity consisting of a pool of assets irrevocably committed to a defined purpose, *see* Swiss Civ. Code, art. 80—here, "to promote and foster the use of the Tezos blockchain, its technology and its ongoing development." (Overview § 3.3.) The Foundation is administered by its board, and the Foundation is subject to

---

[1] Because the Overview is repeatedly discussed and quoted in the Consolidated Complaint (*see, e.g.*, Compl. ¶¶ 17, 48, 87, 97, 118), it has been incorporated by reference therein and may be considered for all purposes on this motion. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (courts may consider documents "whose contents are alleged in a complaint," even though they "are not physically attached to the pleading" (internal quotation marks omitted)).

1   oversight by the Swiss Federal Foundation Supervisory Authority (the "Swiss Foundation

2   Authority").  Swiss Civ. Code, arts. 83, 84.  The Swiss Financial Market Supervisory Authority

3   ("FINMA") also regulates participants in Switzerland's financial markets and monitors issuers of

4   crypto tokens.  (Decl. of Eric Stupp ("Stupp Decl.") ¶¶ 17-18.)

5   **II.     The Tezos Fundraiser**

6         To fund development of the Tezos blockchain and other related projects, the Foundation held

7   the Fundraiser in July 2017, the proceeds of which the Foundation collected for use in developing and

8   promoting use of the blockchain.  (Compl. ¶ 47.)  At the end of the fundraising period, the

9   Foundation had received cryptocurrency donations valued at approximately $232 million.  (*Id.* ¶ 2.)

10        The Fundraiser was governed by the Tezos Contribution and XTZ Allocation Terms and

11   Explanatory Notes.  (Gehring Decl., Ex. B (as previously defined, the "Contribution Terms") ¶ 1;

12   *see also* Overview § 4 (referring readers "to the legal document that will be issued by the

13   Foundation for more details" regarding the Fundraiser).)[2]  Prominently linked to on the front page

14   of tezos.ch, the terms explained the mechanics of donating, such as that "[c]ontributions can be

15   made using ether (ETH) or bitcoin (BTC)" and "must be made using the contribution software

16   ('Contribution Software') provided by TEZOS."  (Contribution Terms ¶¶ 14, 17.)  As the terms

17   further explained, that "Contribution Software and the Client [the Tezos blockchain software] are

18   located in Alderney.  Consequently, the contribution procedure, the XTZ creation and XTZ

19   allocation [are] considered to be executed in Alderney."[3]  (*Id.* ¶ 46.)  On July 8, 2017, plaintiff

20   donated 250 ether to the Foundation through the Contribution Software.  (Compl. ¶¶ 14, 71.)

21        The Contribution Terms also contain a list of representations and warranties to which all

22   donors agreed.  Among other things, donors expressly represented that they "understand[] and

23   accept[] that XTZ do not represent or constitute any ownership right or stake, share or security or

24

25   [2] The Complaint makes extensive representations about the content of the Contribution Terms
    (Compl. ¶¶ 125-26) and relies on their terms in describing the Fundraiser (*compare, e.g.*, *id.* ¶¶ 41-
26   43, *with* Contribution Terms ¶¶ 13, 16, 26).  The Contribution Terms are accordingly incorporated
    by reference therein.  *See Knievel*, 393 F.3d at 1076.

27   [3] Alderney is a European island in the English Channel between the United Kingdom and France.

28
                                                5

equivalent right in or relating to TEZOS, the Client, the Tezos Network and/or any software, any public or private company, corporation, entity or property." (Contribution Terms ¶ 10.) Further, donors represented that they "intend[] to use XTZ to participate in network governance, mining activities or connecting private networks" and "[are] not contributing to TEZOS to obtain XTZ for the purpose of speculative investment." (*Id.* ¶ 11(a), (f).) The terms stated explicitly that contributors were making "donation[s]." (*Id.* ¶ 12.)

While plaintiff alleges that he was promised a return of XTZ in exchange for his donation, the Foundation expressly stated in the Contribution Terms that it "**cannot guarantee that Contributors shall have any allocation of XTZ when the TEZOS Network is created.**" (*Id.* ¶ 3 (emphasis in original).) Rather, any future allocation would be determined by "an independent community of participants around the world" who operated the network, and that "community has discretion to adopt or not to adopt" any allocation recommended by the Foundation. (*Id.*) Accordingly, "TEZOS cannot guarantee to any party that they will have an initial allocation of XTZ, because this depends upon the discretion of the community." (*Id.*) This concept was so important that the Foundation repeated it later in the Contribution Terms: "It remains in the community's discretion to adopt or not to adopt [the Foundation's recommendations]. TEZOS cannot guarantee to Contributors that they shall have any allocation and/or creation of XTZ as set forth in these terms." (*Id.* ¶ 29.)

The Contribution Terms also provided that Swiss law governed the contributions, and that any dispute arising therefrom "shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland." (*Id.* ¶ 48.)

## LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court may grant dismissal based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

6

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). But the Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Mehr v. Féderation Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1047, 1061 (N.D. Cal. 2015).

Dismissing an action on forum non conveniens grounds requires merely a determination of "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In all except "unusual cases," a governing forum-selection clause will control the outcome of the forum non conveniens analysis. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

## ARGUMENT

## I.   This Court Lacks Personal Jurisdiction Over the Foundation

A court may exercise personal jurisdiction over a defendant only if the plaintiff establishes that the defendant has constitutionally adequate "minimum contacts" with the United States. *See Casualty Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 599 (9th Cir. 1992). Plaintiff does not claim that this Court can exercise general jurisdiction over the Foundation,[4] and he must therefore establish the existence of specific jurisdiction. The exercise of specific jurisdiction over a foreign defendant requires the Court to find that (1) the defendant "*purposefully* direct[ed]" activity toward or "*purposefully* avail[ed]" itself of the laws of the forum; (2) the claim arises out of the defendant's forum-related contact; and (3) the exercise of jurisdiction comports with notions of fair play and substantial justice, i.e., that it is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).

---

[4] Nor could he. General jurisdiction lies only if the defendant's activities in the forum "are so 'continuous and systematic' as to render [it] essentially at home in the forum." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Ops., SA v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff has not alleged any facts demonstrating that the Swiss Foundation could plausibly be "at home" anywhere in the United States.

1  Plaintiff's assertion of specific jurisdiction in this case (Compl. ¶¶ 17-19) is wholly

2  inadequate.  Even as alleged, nothing about the Foundation's conduct purposefully targeted the

3  United States:  Plaintiff's unsolicited contribution was made through software located in Europe and

4  predicated on an express agreement with the Foundation that it was subject to Swiss law.  Plaintiff's

5  allegations of the Foundation having a U.S.-based agent—which plaintiff nowhere connects to his

6  claim—and website are based on unwarranted factual leaps and do not alter the Foundation's lack of

7  connection to the United States.  In these circumstances, any exercise of jurisdiction over a Swiss

8  nonprofit, overseen by a Swiss regulatory authority, with virtually no ties to the United States, fails to

9  comport with notions of "fair play and substantial justice."  *Schwarzenegger*, 374 F.3d at 801.

10  **A.      The Foundation's Alleged Conduct Did Not Purposefully Target the United**

11  **States or Give Rise to Plaintiff's Claim**

12  Establishing specific jurisdiction first requires plaintiff to show that the Foundation

13  "purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State, thus

14  invoking the benefits and protections of its laws," *Schwarzenegger*, 374 F.3d at 802, or that its

15  actions were "expressly aimed" at the forum and caused harm that it knew was likely to be suffered

16  there, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir. 2006).  No matter which lens

17  is applied, though, the "constitutional touchstone" of specific jurisdiction is clear:  The defendant

18  must have "*purposefully* established minimum contacts with the forum [state]."  *Azzarello v.*

19  *Navagility, LLC*, No. C-08-2371 MMC, 2008 WL 4614667, at *4 (N.D. Cal. Oct. 16, 2008)

20  (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (emphasis added)).  And not

21  just any contacts will suffice; they must specifically give rise to his claim.  *See Mehr*, 115 F. Supp.

22  3d at 1051 (plaintiff must demonstrate "but for causation—that is, a showing that the claims would

23  not have arisen but for [defendant's] contacts with the forum" (internal quotation marks omitted)).

24  Plaintiff's allegations do not meet these standards.

25  All of the Foundation's actions demonstrate that it was *not* targeting the United States.  The

26  Foundation is a Swiss entity, and the Fundraiser was intended to further the development of the

27  Tezos Network by a team of developers in Europe.  (Compl. ¶¶ 16, 119 (the Foundation would use

28

8

Fundraiser proceeds to set up an institution to work on the Tezos protocol in Europe); Overview § 3.2.)  The Foundation used Switzerland-based Bitcoin Suisse as its financial service provider and intermediary in connection with the Fundraiser.  (Compl. ¶ 25.)  And the Contribution Terms governing the Fundraiser explain that the relevant software was located in Europe in Alderney, which was where the contributions were deemed concluded; that the contributions were subject to Swiss law; and that any disputes arising between the parties are relegated exclusively to the courts of Switzerland.  (Contribution Terms ¶¶ 46, 48.)  These terms show unequivocally that the Foundation made no attempt to benefit from U.S. law when conducting the fundraiser, and they undermine any attempt to assert jurisdiction over the Foundation.  *See Levine Leichtman Capital Partners III, L.P. v. Shaker Constr. Grp., LLC*, No. CV 08-01252 DDP (EX), 2008 WL 11336663, at *4 (C.D. Cal. May 2, 2008) (granting motion to dismiss for lack of jurisdiction because of, *inter alia*, choice-of-law clauses selecting Mississippi or New York law); *see also Dynamic Software Servs. v. Cyberbest Tech., Inc.*, No. C-13-04217 DMR, 2014 WL 3373924, at *4 (N.D. Cal. July 9, 2014) (noting "choice-of-law provision may be one consideration in a jurisdictional analysis").

Plaintiff suggests that, even though the Fundraiser was anchored in Switzerland, the fact that he arranged a contribution to the Fundraiser from the United States creates jurisdiction over the Foundation.  It does no such thing.  *See, e.g.*, *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760-61 (9th Cir. 1990) (foreign defendant's "receipt of payment" in a foreign forum was an "attenuated contact[] insufficient . . . to establish defendants have purposefully availed themselves of the benefits and protections of [plaintiff's] forum's law"); *Cloud v. Ness*, No. 2:14-CV-02308-TLN-AC, 2015 WL 7271760, at *1 (E.D. Cal. Nov. 18, 2015) (declining to exercise jurisdiction over a nonprofit on the basis that it accepted donations from California); *EnLink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*, No. C 09-03524 CW, 2009 WL 4544694, at *4 (N.D. Cal. Nov. 30, 2009) ("[U]nilateral activity by plaintiff . . . does not satisfy the purposeful availment requirement." (internal quotation marks omitted)).  Plaintiff's assertion of specific jurisdiction therefore rests on two conclusory, factually incorrect, and legally insufficient allegations.

1           **1.**     **The Foundation Did Not Target U.S. Contributors Through Tezos.com**

2         First, plaintiff asserts that the Foundation "owns and otherwise controls the website

3  tezos.com, which is hosted in the U.S." and that he made his contribution through that website.

4  (Compl. ¶¶ 17, 19.)  Plaintiff's allegations amount to little more than that he voluntarily sought out

5  tezos.com and used it to donate money to the Foundation.  He does not allege that tezos.com was

6  aimed in any way at soliciting U.S. donors, had U.S. advertisers, or even mentioned the United

7  States.  That is far from the *purposeful targeting* of a forum that the Ninth Circuit requires to

8  exercise specific jurisdiction.  *See, e.g.*, *Mencanin v. Fat Head's Bales to Hoppy Ales, LLC*,

9  No. SACV 14-1718 AG(RNBx), 2015 WL 12743686, at *2 (C.D. Cal. Mar. 16, 2015) (dismissing

10  for lack of personal jurisdiction where allegedly infringing clothing was sold over a website that did

11  not specifically target California); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D.

12  Cal. 2012) (holding that "an interactive, commercial website" did not create specific jurisdiction in

13  the absence of allegations that it specifically targeted California); *see also Gray*, 913 F.2d at 761

14  (no specific jurisdiction where plaintiff initiated the underlying transaction).[5]

15         *Azzarello*, 2008 WL 4614667, is illustrative.  There, the court found that a $300,000 bridge

16  loan by a California plaintiff to a New York defendant did not establish the defendant's purposeful

17  targeting of California even though the defendant specifically emailed plaintiff in California to

18  solicit the loan.  Because the plaintiff's location "ha[d no] bearing on the terms of the agreement,"

19  the court held that the plaintiff's having sent a payment from within California was too attenuated

20  to create the necessary contacts *by the defendant* with California.  *Id.* at *4.  Here, the Foundation is

21  not even alleged to have solicited plaintiff, and nothing about plaintiff's contribution would have

---

22  [5] Cases that have allowed websites to establish personal jurisdiction in California involved sites that
*expressly* targeted California residents.  *See, e.g.*, *LiveCareer Ltd v. Su Jia Techs. Ltd.*, No. 14-cv-
23  03336-JST, 2015 WL 1448505, at *4-5 (N.D. Cal. Mar. 31, 2015) (defendant's website's "terms of
use include specific directions for California residents," and defendant utilized "California-based
24  vendors to support its business"); *Rhapsody Int'l Inc. v. Lester*, No. C13-05489 CRB, 2014 WL
709899, at *7 (N.D. Cal. Feb. 24, 2014) (defendants used their domain to specifically target
25  California plaintiff by infringing on its trademark and demanding money from it); *Quigley v. Guvera
IP Pty Ltd.*, No. C10-03569 CRB, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010) (defendant
26  specifically targeted California by "establish[ing] a California-specific privacy policy in order to
comply with California law" and used a California resident as an example for its payment model).

27

28

changed if he had made it outside the United States entirely.  That is simply not the purposeful contact this Circuit requires.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (holding that it is "impermissibl[e]" either to "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis" or to rely on a defendant's "random, fortuitous, or attenuated contacts" with the forum); *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (determining whether a defendant purposefully targeted a forum requires the Court to "focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum").

Moreover, plaintiff's allegations do not hold up as a factual matter.  Plaintiff's legal conclusion that the Foundation owns and controls tezos.com is based on domain information stating that former Foundation director Johann Gevers is the administrative contact (Compl. ¶ 19), but plaintiff omits that the domain's registrant is not the Foundation but rather a Panamanian company.[6]  Likewise, that information shows that the domain was created in 2014, long before the Foundation existed.  (*Id.* ¶ 47.)  The better, and correct, inference from this information is that the website was created and controlled by others.  (*See id.* ¶ 48 (quotation from Mr. Gevers that the Foundation did not "control [its] domains, websites and email servers").)  The Complaint's allegations regarding tezos.com, a site that the Foundation did not control, are therefore irrelevant to assessing the *Foundation's* forum contacts.[7]  *See Boschetto*, 539 F.3d at 1018 (concluding that, because a website was only a "conduit" through which defendant's transaction was consummated, it did not constitute a contact for jurisdictional purposes).

## 2.    Plaintiff's Claim Does Not Arise from Any Activity of Mr. Kenyon

Second, plaintiff alleges in conclusory fashion that an individual named Ross Kenyon was the Foundation's "employee or agent located in the United States" and made a video on contributing to the Fundraiser.  (Compl. ¶ 18.)  But that allegation is irrelevant to the specific jurisdiction analysis:  Plaintiff does not allege that he was induced to contribute to the Fundraiser

---

[6] *See* Gehring Decl., Ex. C (tezos.com, ICANN WHOIS).

[7] In addition, as discussed further below, tezos.com acts only as a portal to the functional, contribution elements of the website, which are located in Europe in Alderney.  (Contribution Terms ¶ 46.)

by Mr. Kenyon's video, that he learned how to contribute from that video, or that he even saw the video prior to making his contribution.  The video is therefore irrelevant when analyzing whether the Court may assert specific jurisdiction over the Foundation.  *See HaloSongs, Inc. v. Sheeran*, No. SACV 16-1062 JVS (JCGx), 2017 WL 5198248, at *8 (C.D. Cal. Jan. 13, 2017) ("[T]he defendant will only be subject to specific jurisdiction if the plaintiff's claim arises out of its [alleged] agent's contacts."); *Mehr*, 115 F. Supp. 3d at 1051-52.

In addition to being legally insufficient, plaintiff's allegation regarding Mr. Kenyon is also factually insufficient.  Plaintiff asks the Court to infer that Mr. Kenyon made his video in the United States because, "[b]ased on Mr. Kenyon's LinkedIn profile, Mr. Kenyon has at all relevant times been located in the United States."  (Compl. ¶ 18.)  But a LinkedIn profile is no basis on which to infer that an individual did not leave the country for a few days or weeks—particularly when Mr. Kenyon was giving interviews to *French* publications during the relevant time period. (*Id.*)  *See Daniels-Hall*, 629 F.3d at 998 (the Court need not accept "unwarranted deductions of fact, or unreasonable inferences").

Plaintiff's other assertion about Mr. Kenyon—that he was an agent of the Foundation—is a mere legal conclusion without support.  The Complaint alleged that Mr. Kenyon represented that he was a Tezos "community manager" and "spokesperson."  (Compl. ¶ 18.)[8]  It is blackletter law, however, that Mr. Kenyon's statements cannot be the basis of an agency relationship with the Foundation.  *See Dickenson v. Stevens*, No. 2:10-cv-09460-JHN-CWX, 2011 WL 13217926, at *3 n.3 (C.D. Cal. Dec. 16, 2011) (dismissing claim for lack of jurisdiction because plaintiff "fail[ed] to identify any acts, declarations, conduct or omissions *on the part of defendants* upon which she based her belief that Macken was an authorized agent" (emphasis added)).  Those representations are a particularly poor basis for plaintiff's allegation when the very LinkedIn profile he cites does not indicate that Mr. Kenyon ever worked for the Foundation, DLS, or anyone associated with the Fundraiser.  (Gehring Decl., Ex. D.)  The Court therefore should disregard the Complaint's

[8] Plaintiff's allegation that Mr. Kenyon's video was posted to tezos.com is irrelevant to the Foundation's jurisdiction because, as discussed above, the Foundation did not control tezos.com.

unwarranted legal conclusion about Mr. Kenyon's relationship with the Foundation.  *See Daniels-Hall*, 629 F.3d at 998.

### 3.  DLS and the Foundation Are Separate Entities

Without expressly relying on DLS's presence in the United States to assert jurisdiction over the Foundation, the Complaint blurs the lines between the two entities and alleges that, "despite [their] purportedly separate legal status," they "are in fact closely affiliated."  (Compl. ¶ 48.)  None of plaintiff's allegations, however, demonstrate that the two do not have separate corporate existences or that DLS's jurisdictional contacts should be imputed to the Foundation.

To establish jurisdiction under an alter ego theory, a plaintiff must show, *inter alia*, "a unity of interest and ownership" between the two entities such that separate corporate personalities no longer exist.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  Here, plaintiff has alleged only that the Breitmans founded the Foundation, that DLS "advises" the Foundation on technology issues, and that DLS controls the Tezos domains and websites.  (Compl. ¶ 48.)  There are no allegations that DLS has any ownership interest in the Foundation; that the Foundation and DLS have commingled their assets, share office space or employees, are inadequately capitalized, disregard corporate formalities; or of any other indication that the entities are not independent.  The lack of any such allegations defeats any effort to establish jurisdiction over the Foundation on an alter ego basis.  *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014); *cf. Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954-56 (N.D. Cal. 2015) (despite companies having overlapping officers operating in same office space, they were not alter egos because there was no evidence of commingling or disregard of formalities).[9]

### B.  Exercising Jurisdiction Over the Foundation Would Be Unreasonable

Plaintiff's claim thus does not arise out of any purposeful forum-related contact by the Foundation, and the Foundation therefore should be dismissed.  It should also be dismissed for the independent reason that, given the paucity of the Foundation's contacts with the United States, the

---

[9] Plaintiff also alleges that the Foundation has a contractual relationship with DLS (Compl. ¶ 16), but it has no bearing on the Court's jurisdictional analysis because he does not and cannot allege that his securities claim arises out of that contract.  *See Mehr*, 115 F. Supp. 3d at 1051.

13

exercise of jurisdiction would be unreasonable.  The determination of whether jurisdiction comports with Due Process requires consideration of the extent of a defendant's purposeful interjection into the forum; the burden on the defendant of defending litigation in the forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in adjudicating the dispute; the most efficient judicial resolution of the controversy; the importance of the forum to the plaintiff's interest in relief; and the existence of an alternative forum.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  These factors weigh decisively against exercising jurisdiction over the Foundation.

*First*, there can be no doubt that the Foundation has not meaningfully interjected itself into the United States.[10]  The Foundation is based and operates in Switzerland, and there is not a single allegation that it does regular business in the United States, has offices in the United States, or otherwise maintains any U.S. presence.  What little is alleged about the Foundation makes clear that its operations are primarily in Europe—using a Swiss financial services company and continuing its development work in France.  (*E.g.*, Compl. ¶¶ 16, 25, 119; Overview at 7.)  The Foundation's level of interjection into the United States is, at most, de minimis.

*Second*, the burden on the Foundation to defend this case in the United States would be substantial.  Courts have emphasized that the "unique burden placed upon foreign corporations asked to defend themselves in the United States carries significant weight in assessing the reasonableness of asserting jurisdiction over that defendant."  *Phillips v. Worldwide Internet Sols.*, No. C 05-5125 SBA, 2006 WL 1709189, at *7 (N.D. Cal. June 20, 2006).  With no meaningful U.S. connections, the Foundation's status as a nonprofit entity means that the burden of litigating abroad weighs against exercising jurisdiction, *see Xu v. Nobel Assembly at Karolinska Institutet*, No. SACV 13-320-JLS ANX, 2013 WL 9760036, at *5 (C.D. Cal. Nov. 20, 2013), which is exacerbated by "the significant

---

[10] Regardless of the Court's determination as to whether the Foundation purposefully targeted the United States, the Court must separately weigh its degree of interjection in assessing reasonableness. *S.H. Silver Co. v. David Morris Int'l*, No. C 08-03550, 2008 WL 4058364, at *5 (N.D. Cal. Aug. 28, 2008) (citing *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)).

1   distance between Switzerland and California," *Worldwide Subsidy Grp., LLC v. Fed'n Int'l de*

2   *Football Ass'n*, No. 14-00013 MMM (MANX), 2014 WL 12631652, at \*12 (C.D. Cal. June 9, 2014).

3        *Third*, Swiss sovereignty concerns weigh heavily against exercising personal jurisdiction.

4   *See Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993) (holding that

5   "the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction" when

6   the defendant is from another country); *Core-Vent*, 11 F.3d at 1489 ("Sovereignty concerns weigh

7   more heavily when the defendants have no United States-based relationships.").  The Foundation is

8   already subject to oversight by the Swiss Foundation Authority and FINMA.  *See* Swiss Civ. Code,

9   art. 80.  (Stupp Decl. ¶¶ 12-19.)  Those regulatory bodies ensure that the Foundation's assets are

10   spent in accordance with its mission and that Tezos tokens will be appropriately and lawfully

11   distributed under Swiss law.  (*See id.* ¶¶ 15, 18-19.)  Switzerland's policy interests are therefore

12   clearly implicated because plaintiff seeks to assert U.S. law regarding the alleged conduct of a

13   Swiss-chartered entity, the conduct of which is subject to supervision by Swiss authorities.  *See*

14   *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1206 (C.D. Cal. 2000)

15   (holding that the exercise of jurisdiction was "undermine[d]" by the Canadian defendant's

16   "corporate charter [issued] by the Canadian government").[11]

17        *Fourth*, the United States' own interest in providing a forum to U.S. residents "'must give

18   way' where the defendant is a foreign-based corporation that lacks connections to [the forum] and

19   whose purposeful interjection into the forum state has been very limited."  *S.H. Silver*, 2008 WL

20   4058364, at \*6 (quoting *Core-Vent*, 11 F.3d at 1490).  Indeed, as the Fourth Circuit has recognized,

21   the forum's interest under this factor is diminished when individuals reach out to transact with a

22   foreign entity to participate in a foreign project.  *See Ellicott Mach. Corp. v. John Holland Party Ltd.*,

23   995 F.2d 474, 479 (4th Cir. 1993) (noting "concern diminishes . . . when [U.S. residents] compete for

24   a slice of foreign pie made entirely from foreign materials and intended primarily for foreign

25   consumption").  Here, plaintiff donated to a Swiss foundation, under terms governed by Swiss law,

26

27

28

---

[11] The Supreme Court has expressly noted the "probability of incompatibility with the applicable laws of other countries" when U.S. securities laws are applied abroad.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 269 (2010).

via a transaction completed in Europe, to support development of a project by a team of developers in Europe.  (*See* Contribution Terms ¶¶ 46, 48; Overview at 7.)  Plaintiff cannot inject himself into European affairs and then demand that the Foundation be haled into the United States.

*Finally*, plaintiff cannot establish that Switzerland is unavailable as an alternative forum to hear his complaint.  *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) (plaintiffs "must carry the burden of proving the unavailability of an alternative forum" under this factor).  To the contrary, Swiss courts are an available alternative forum for plaintiff to seek redress for his claims.  *See infra* Part II.A.

Taken together, these factors demonstrate that an exercise of jurisdiction over the Foundation would be unreasonable and in contravention of the Due Process Clause.

## II.     This Action Should Be Dismissed Under the Doctrine of Forum Non Conveniens

The Contribution Terms expressly require that any disagreement arising from plaintiff's contribution be adjudicated in Switzerland.  Pursuant to the doctrine of forum non conveniens, because Switzerland provides "an adequate alternative forum," that forum selection clause strongly counsels that "the balance of private and public interest factors favors dismissal."  *Lueck*, 236 F.3d at 1142; *see Atl. Marine*, 134 S. Ct. at 582.  The action should be dismissed on this independent ground.

### A.     Switzerland Is an Adequate Alternative Forum

The central question for the Court in determining whether Switzerland is an adequate alternative forum is whether Swiss courts would "provide the plaintiff with some remedy for his wrong."[12]  *Lueck*, 236 F.3d at 1143.  This is a generous, flexible standard that does not require a comparison of "the rights, remedies, and procedures available under the law that would be in applied in each forum."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981).  Rather, the forum

---

[12] As the entity that "receive[d] and manage[d] all contributions" (Compl. ¶ 47), the Foundation is the only necessary defendant for this suit.  However, DLS previously contended that one of the consolidated actions should be dismissed on the basis of forum non conveniens, indicating its own amenability to service of process in Switzerland as well.  *See* DLS Opp'n to TRO, *MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-07095-RS, ECF No. 23, at 19-20 (Dec. 15, 2017).  As discussed in separate motions to dismiss, plaintiff's allegations against Draper and the Breitmans do not establish independent claims against them, and in any event they are not necessary parties to secure the relief that plaintiff seeks.

1   non conveniens analysis permits differences in substantive law between the two forums so long as

2   the general subject matter of plaintiff's claim may be heard.  *See id.* at 247; *Lueck*, 236 F.3d at

3   1144-45 (an alternative forum is inadequate only if the alternative remedy "is tantamount to no

4   remedy at all").  Given the breadth of alternative actions that are acceptable under the forum non

5   conveniens analysis, an alternative forum's remedy will be inadequate "only in rare

6   circumstances." *Lueck*, 236 F.3d at 1143 (internal quotation marks omitted).

7        Switzerland readily meets this standard.  Plaintiff's claim is that the Fundraiser involved

8   securities that were not registered.  Like U.S. law, Swiss law requires that issuers of securities follow

9   certain procedures to apprise potential investors of the risks associated with the securities—such as

10   publishing a prospectus that discloses material information.  (*See* Stupp Decl. ¶¶ 21-22.)  Failure to

11   publish such a prospectus, just like failing to register in the United States, entitles purchasers of the

12   security to recover from the issuer.  (*Id.* ¶ 23.)  Swiss law also provides for recovery under broader

13   causes of action, such as negligence and misrepresentation.  (*Id.* ¶¶ 25-27.)  Plaintiff can thus have a

14   Swiss court consider the same type of matter that he has brought before this Court, and the courts of

15   Switzerland are an available alternative forum.  *See Lueck*, 236 F.3d at 1144-45; *Richards v. Lloyd's*

16   *of London*, 135 F.3d 1289, 1296 (9th Cir. 1998) (holding that English remedies are adequate

17   substitutes for U.S. securities laws under theories of "fraud, breach of fiduciary duty, or negligent

18   misrepresentation"); *see also Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 (10th Cir. 2009) (holding

19   that the unavailability of plaintiff's RICO claim in Switzerland did not make it an inadequate forum);

20   *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010) (holding that Switzerland was

21   an adequate alternative forum in an action arising out of a securities transaction).

22       **B.**    **The Forum-Selection Clause Requires Dismissal, Which Is Supported by the**

23             **Private and Public Interest Factors**

24        The second aspect of the Court's analysis is to determine whether the private and public

25   interest factors favor dismissal.  The private interest factors typically control this analysis, and they

26   in turn are controlled by the Contribution Terms' dispositive forum-selection clause:  That clause

27   mandates that "the private-interest factors [] weigh entirely in favor of the preselected forum" in

28

Switzerland.  *Atl. Marine*, 571 U.S. at 64.  Even absent that clause, however, the factors would still favor dismissal.

### 1.    Plaintiff Has Agreed to Litigate His Dispute in Switzerland

The Contribution Terms provide unequivocally not only that plaintiff's contribution is governed by Swiss law but also that "[a]ny dispute" that "aris[es] out of or in connection with the creation of the XTZ and the development and execution of the Tezos Network shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland."  (Contribution Terms ¶ 48.) Because of the importance of forum-selection clauses to ordering international transactions, "absent some compelling and countervailing reason [a forum-selection clause] should be honored by the parties and enforced by the courts."  *Richards*, 135 F.3d at 1294 (internal quotation marks omitted). Accordingly, plaintiff has waived his "right to challenge the preselected forum as inconvenient or less convenient for [himself] or [his] witnesses, or for [his] pursuit of the litigation."  *Atl. Marine*, 571 U.S. at 64; *see also Delta Alcohol Distrs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 3d 682, 690 (E.D. Mich. 2014).  On that basis, because "forum-selection clauses should control except in unusual cases," *Atl. Marine*, 571 U.S. at 64, this action should be dismissed.

In the face of the dispositive forum-selection clause, plaintiff asserts in the Complaint that the Contribution Terms "provide no contractual or other legal basis to govern the relations" between him and defendants.  (Compl. ¶ 126.)  But plaintiff "bears 'a heavy burden of proof'" in attempting to avoid the forum-selection clause, *Richards*, 135 F.3d at 1294 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)), and he has nowhere alleged that he was unaware of the Contribution Terms when he made his contribution.  Indeed, it would be utterly implausible that plaintiff made a contribution to the Foundation of 250 ether (Compl. ¶ 14)—worth approximately $50,000 at the time—without first determining the terms governing that contribution when the Tezos tokens did not even exist yet.

Because notice of the terms is sufficient to make them binding, *see Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) ("[C]ourts have consistently enforced browsewrap agreements where the user had actual notice of the agreement."), the Court's inquiry can end here.

18

But plaintiff protests that the Contribution Terms should not be enforced because they were located on tezos.ch rather than tezos.com.  (Compl. ¶ 126.)  That allegation cannot overcome plaintiff's actual notice of the terms, nor would it otherwise preclude their enforcement:  Browsewrap agreements are binding if a "a reasonably prudent user" would have been "on inquiry notice of [them]."  *Nguyen*, 763 F.3d at 1177.

Here, any reasonably prudent contributor would have been aware of the Contribution Terms, which were posted on the Foundation's website along with other important information about the Fundraiser.  That website, tezos.ch, prominently displayed a link to "Contribution Terms" on its main page, right above "Fundraiser FAQ."  (Gehring Decl., Ex. E.)  They were also distributed through the Tezos Foundation Twitter account.[13]  And the Overview document posted to tezos.com—on a slide bearing the heading "FUNDRAISER"—expressly instructs potential contributors to "refer to the legal document that will be issued by the Foundation for more details." (Overview § 4.)  Reasonable prudence would have required any contributor to seek out the only legal document pertaining to the Fundraiser, which contained details omitted from the summary Overview.  Indeed, the Tezos community at large was well aware of the Contribution Terms and discussed them on, among other places, Reddit and bitcointalk.org, which plaintiff describes as "popular" forums.[14]  (Compl. ¶¶ 40, 49.)  *Cf., e.g.*, *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 217-18 (3d Cir. 2007) (in the securities context, holding that plaintiff was put on inquiry notice by publicly available news articles).

The Contribution Terms thus indisputably governed plaintiff's contribution.  Unable to present a "compelling" reason his agreement should not be binding, the Court should dismiss the case.  *Richards*, 135 F.3d at 1294.

---

[13] Gehring Decl., Ex. F (Tezos Foundation (@TezosFoundation), Twitter (June 30, 2017, 9:15 a.m.)).

[14] *See, e.g.*, Gehring Decl., Exs. G (*Tezos Contribution Terms have just been released.*, Reddit (June 30, 2017, 4:10 p.m.), H (*Re: Tezos discussion*, Bitcointalk (July 1, 2017, 4:48 a.m.)).

1

2. **The Private and Public Interest Factors Also Favor Dismissal**

2
Supporting the result dictated by the forum-selection clause, the traditional private and

3
public interest factors that are utilized in the absence of such a clause also counsel in favor of

4
dismissing the case.  The private factors to be considered include "(1) the residence of the parties

5
and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and

6
other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

7
bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical

8
problems that make trial of a case easy, expeditious and inexpensive.'"  *Lueck*, 236 F.3d at 1145.

9
While the public interest factors will "rarely defeat" a forum non conveniens motion, *Atl. Marine*,

10
571 U.S. at 64, they include "(1) local interest of lawsuit; (2) the court's familiarity with governing

11
law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving

12
a dispute unrelated to this forum."  *Lueck*, 236 F.3d at 1147.

13
The foreign locus of this case means that the private interest factors militate strongly in

14
favor of dismissal.  The Foundation's operations are in Switzerland, the network developers are

15
located in France, and the actual contribution software is located in Europe.  The Foundation's

16
European presence and contacts mean that the witnesses and documents needed to understand the

17
technical function of the Tezos tokens—essential to a complete analysis of whether the tokens

18
constitute a security—are located in Europe.  Discovery in the United States would thus need to

19
proceed pursuant to the Hague Evidence Convention, creating delays, additional litigation, and a

20
significant burden on the parties.  *See Alcon*, 719 F. Supp. 2d at 276 (finding that taking testimony

21
from witnesses "who reside in Switzerland or elsewhere in Europe" would require proceedings

22
under the Hague Convention, "a prospect that entails significant amounts of time even in ordinary

23
cases," and would likely cause "greater financial hardships" and "additional litigation"); Swiss Civ.

24
Code, art. 325.1 (Federal Act on Data Protection imposing limitations on the use and disclosure of

25
documents abroad).  Likewise, non-party international witnesses with involvement in the

26
Fundraiser, such as Switzerland-based former Foundation director Johann Gevers, may not be

27
compelled to testify before this Court.  *See* Fed. R. Civ. P. 45(b)(2)-(3).  And, if plaintiff did obtain

28

20

a judgment in this action, the Foundation "receive[d] and manage[s] all contributions" from the Fundraiser (Compl. ¶ 47), which may create issues with enforceability.  *See Alcon*, 719 F. Supp. 2d at 277 ("Ultimately, it is undisputed that Plaintiffs would have less difficulty enforcing a Swiss judgment in Switzerland, whether embodying monetary or injunctive relief, or both, and thus the Court finds that this consideration weighs in favor of dismissal.").  There is, in short, nothing convenient to the parties about litigating in California—even plaintiff does not reside here. (Compl. ¶ 14 (plaintiff is a resident of Illinois).)  *See Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1090-91 (9th Cir. 1998) (affording plaintiffs' choice of forum "less deference" where they did not reside in the chosen forum state).

The Court need hardly consider the public interest factors, *see Atl. Marine*, 571 U.S. at 63-64, but they likewise favor dismissal.  Although U.S. courts may have an interest in enforcing U.S. securities laws, "this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens."  *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 539 (S.D.N.Y. 1996), *aff'd*, 147 F.3d 118 (2d Cir. 1998).  Indeed, as the Ninth Circuit has recognized, it simply is not the case that "federal and state securities laws are of 'fundamental importance to American democratic capitalism.'"  *Richards*, 135 F.3d at 1295. Whatever interest the Court may have in this case, it certainly has no interest in congesting its docket with a case that, as discussed above, will require extended time for discovery (and discovery disputes) proceeding through the Hague Convention.  Switzerland, meanwhile, has a significant interest in enforcing its own securities laws and controlling its own chartered entities.  That is particularly true here, where the Foundation's activities are overseen by Swiss authorities who are actively monitoring developments in Switzerland's "Crypto Valley."

## III.    U.S. Securities Laws Do Not Apply to the Fundraiser

It is a bedrock principle that, absent express direction from Congress, U.S. laws do not apply extraterritorially.  *See Morrison*, 561 U.S. at 273 .  Plaintiff attempts to manufacture a U.S. nexus in this case based solely on his location at the time of his donation, but the contribution software he used to make that donation was located abroad and the donation was executed and recognized abroad.  The

21

1    U.S. securities laws do not regulate transactions that a plaintiff has voluntarily reached outside U.S.

2    borders to conduct, and plaintiff's claim—based exclusively on U.S. securities laws that do not

3    apply—should therefore be dismissed.[15]

4         Simply because allegedly wrongful conduct may have "had a substantial effect in the United

5    States or upon United States citizens" or "occurred in the United States" does not mean that

6    application of U.S. law is appropriate; indeed, it would be "rare" that a case involving prohibited

7    extraterritorial application lacked domestic activity.  *Id.* at 257, 266 (cautioning courts to use care

8    when evaluating whether to assert U.S. laws abroad because "the presumption against

9    extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever

10   *some* domestic activity is involved in the case").  In the context of the U.S. securities laws—which

11   have an "exclusive focus on *domestic* purchases and sales"—the Supreme Court instead requires

12   that, in order to reach an alleged security not listed on an American stock exchange, the sale

13   transaction itself must have been domestic.  *Id.* at 268, 273 (emphasis added).

14        The Ninth Circuit has not yet addressed the question of what constitutes a "domestic

15   transaction" to overcome the presumption against extraterritoriality.  But the courts that have

16   considered the issue require a plaintiff to "allege facts indicating that irrevocable liability was

17   incurred or that title was transferred within the United States."  *Absolute Activist Value Master*

18   *Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2012); *see also, e.g.*, *MVP Asset Mgmt. (USA) LLC v.*

19   *Vestbirk*, No. 2:10-CV-02483-GEB, 2013 WL 1726359, at *7 (E.D. Cal. Mar. 22, 2013).  Plaintiff

20   alleges that the Foundation incurred irrevocable liability to deliver Tezos tokens to him by virtue of

21   his use of tezos.com, "which was hosted on a U.S. server," to make his contribution.  (Compl.

22   ¶ 77.)  Plaintiff's allegation is contrary to the law, *see Plumbers' Union Local No. 12 Pension Fund*

23   *v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 179 (S.D.N.Y. 2010) ("For the purposes of

24   determining whether a securities transaction is a 'domestic' transaction under *Morrison*, the country

25   in which an investor happened to be located at the time that it placed its purchase order is

---

[15] Even if U.S. securities laws did apply to it, the Fundraiser would not constitute an offering of securities.  The Foundation does not, however, seek dismissal of the Complaint on that basis in this motion.

22

1  immaterial."), and to the Contribution Terms incorporated in his very Complaint, *see Steckman v.*

2  *Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as

3  true conclusory allegations which are contradicted by documents referred to in the complaint.").

4   As a preliminary matter, the Foundation has not incurred any liability to deliver Tezos tokens

5  to plaintiff.  The Contribution Terms are clear that the Foundation could only make recommendations

6  about token allocation.  (Contribution Terms ¶¶ 3, 29.)  That allocation "depends upon the discretion

7  of the community," and accordingly the Foundation "cannot guarantee that [plaintiff] shall have any

8  allocation of XTZ."  (*Id.* ¶ 3.)  Before the successful launch of the Tezos Network, the Foundation is

9  under no obligation to deliver any tokens to plaintiff.  It will become so obligated, if ever, only

10  following the Tezos community's approval of the Foundation's recommendation—which will occur

11  over the Tezos Client, located in Europe, not the United States.  (*Id.* ¶ 46.)

12   But even accepting plaintiff's allegation that the Foundation became liable at the time of his

13  contribution, liability still would only have been incurred abroad.  Plaintiff made his contribution in

14  ether.  (Compl. ¶ 14.)  He did so by using tezos.com to access the Foundation's contribution

15  software, which is located in Alderney.  It is irrelevant where tezos.com was being hosted—it was

16  simply the portal to access the functional software that actually effected the contribution, located

17  outside the United States.  That is precisely why the Contribution Terms clearly state that "the

18  contribution procedure, the XTZ creation and XTZ allocation is considered to be executed in

19  Alderney."  (Contribution Terms ¶ 46.)  And these are precisely the types of circumstances in

20  which courts routinely dismiss securities claims because U.S. law does not apply.  *See, e.g.*,

21  *Plumbers' Union*, 753 F. Supp. 2d at 178-79 (holding that, notwithstanding a purchase order being

22  placed in the United States, U.S. law did not apply because the transaction was executed, cleared,

23  and settled abroad); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 475

24  (S.D.N.Y. 2013) (dismissing securities claim because options were deemed exercised only when

25  the defendant received payment in India); *MVP Asset Mgmt.*, 2013 WL 1726359, at *7 (dismissing

26  securities claim after assessing the location of the transaction under the terms of the governing

27  agreement); *SEC v. Benger*, No. 09 C 676, 2013 WL 593952, at *12 (N.D. Ill. Feb. 15, 2013)

28

(dismissing securities claim where the terms of the agreement provided that the sale of securities "was consummated in Brazil").

As a fallback position, plaintiff suggests that perhaps his contribution should be deemed made when it was recorded on the Ethereum blockchain ledger, which is distributed worldwide. (Compl. ¶ 77.)  Putting aside that his reasoning would make every cryptocurrency transaction subject to U.S. regulation (even if between wholly foreign parties), it ignores both the facts of the contribution procedure and the provisions of the Contribution Terms.  Plaintiff's contribution of ether was sent "to an Ethereum contract that is a part of the CSS [the Tezos Contribution Software System, located in Alderney]."  (Contribution Terms ¶¶ 20, 46.)  That software then "extracted" the necessary information to be used for the Foundation's XTZ recommendation, which it calculated based on a conversion to bitcoin.  (*Id.* ¶¶ 20, 25.)  As the Complaint itself notes, the Tezos Client "go[es] through the Ethereum and Bitcoin blockchain [to] look for Tezos contributions," and only after identifying them sends confirmations to donors.  (Compl. ¶ 58; *see also* Contribution Terms ¶ 11(k) (the contribution software "execute[s]" contributions).)  At a minimum, the Foundation could not have incurred liability until its software—located in Europe—had recorded the donations and determined the appropriate notional token recommendation.  *See, e.g.*, *Absolute Activist*, 677 F.3d at 68 ("[T]he point of irrevocable liability can be used to determine the locus of a securities purchase or sale."); *Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.*, No. 08-cv-01381-MSK-CBS, 2011 WL 1211511, at *7 (D. Colo. Mar. 31, 2011) (dismissing securities claim despite the wiring of funds to New York because the terms of the agreement provided that the transaction only became complete once accepted by defendants in the Cayman Islands).

The Contribution Terms are dispositive of the *Morrison* analysis by their governing provision that the contribution and allocation are deemed to have occurred in Europe.  And that provision arises from the actual facts of what occurred:  Plaintiff made his contribution using software located in Europe, and that same software recorded the contribution and determined the recommended token allocation.  No relevant part of the transaction occurred in the United States.

24

1    *See Plumbers' Union*, 753 F. Supp. 2d at 178-79 (U.S. law does not apply to transactions executed,

2    cleared, and settled abroad, even if purchase orders are placed in the United States).

3                                 **CONCLUSION**

4          For the foregoing reasons, the Foundation respectfully requests that the Consolidated

5    Complaint be dismissed.

6

7    Dated:   May 15, 2018                      Respectfully submitted,

8                                      DAVIS POLK & WARDWELL LLP

9

10                            By:   */s/ Neal A. Potischman*

11                                  Neal A. Potischman (SBN 254862)
                                 Serge A. Voronov (SBN 298655)

12                                  DAVIS POLK & WARDWELL LLP
                                 1600 El Camino Real

13                                  Menlo Park, California  94025
                                 Telephone: (650) 752-2000

14                                  Facsimile:  (650) 752-2111
                                 Email:  neal.potischman@davispolk.com

15                                               serge.voronov@davispolk.com

16

17                                  Edmund Polubinski III (*pro hac vice*)
                                 Andrew S. Gehring (*pro hac vice*)

18                                  DAVIS POLK & WARDWELL LLP
                                 450 Lexington Avenue

19                                  New York, New York  10017
                                 Telephone: (212) 450-4000

20                                  Facsimile:  (212) 701-5800
                                 Email:  edmund.polubinski@davispolk.com

21                                               andrew.gehring@davispolk.com

22                                  *Attorneys for Defendant Tezos Stiftung*

23

24

25

26

27

28

DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT
MASTER FILE NO. 17-cv-06779-RS