1   BAKER MARQUART LLP
    BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
2   SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
    DONALD R. PEPPERMAN (109809) (dpepperman@bakermarquart.com)
3   2029 Century Park East, Suite 1600
    Los Angeles, CA 90067
4   Telephone:   (424) 652-7814
    Facsimile:   (424) 652-7850
5
    Counsel for Defendants
6   DYNAMIC LEDGER SOLUTIONS, INC.,
    KATHLEEN BREITMAN and ARTHUR BREITMAN
7
8   COOLEY LLP
    PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
9   JEFFREY M. KABAN (235743) (jkaban@cooley.com)
    SAMANTHA A. KIRBY (307917) (skirby@cooley.com)
10  3175 Hanover Street
    Palo Alto, CA  94304-1130
11  Telephone:   (650) 843-5355
    Facsimile:   (650) 618-0387
12
    Counsel for Defendant
13  DYNAMIC LEDGER SOLUTIONS, INC.

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | <u>CLASS ACTION</u> |
| This document relates to: | **DLS DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED COMPLAINT** |
| ALL ACTIONS | Date:       July 19, 2018<br>Time:       1:30 p.m.<br>Judge:      Hon. Richard Seeborg<br>Courtroom:  3, 17th Fl.<br>Trial Date: Not yet set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................................ 2

II.    FACTUAL BACKGROUND .............................................................................................. 4

    A.    Tezos and the Blockchain Technology ................................................................ 4

    B.    The Tezos Foundation ........................................................................................... 5

    C.    The Fundraiser and Contribution Terms .............................................................. 6

    D.    The Present Action ................................................................................................ 8

III.   ARGUMENT ...................................................................................................................... 8

    A.    This Case Should Be Dismissed on Forum Non Conveniens Grounds ..................... 8

        1.    Under the forum non conveniens doctrine, forum selection clauses
            must be enforced ...................................................................................... 9

        2.    The forum selection clause requires litigation of this dispute in
            Switzerland .............................................................................................. 9

        3.    Plaintiff cannot carry his heavy burden of showing that enforcement of
            the forum selection clause is unreasonable ............................................. 11

        4.    Even in the absence of the forum selection clause, dismissal is
            appropriate on forum non conveniens grounds ....................................... 14

    B.    The DLS Defendants did not "Sell" the Tezos Tokens or Solicit Plaintiff's
        Contributions ........................................................................................................ 16

        1.    Plaintiff sent his fundraiser contribution to the Tezos Foundation, not
            the DLS Defendants ................................................................................. 18

        2.    The DLS Defendants did not "successfully solicit" Plaintiff's alleged
            purchase of Tezos Tokens ....................................................................... 19

    C.    Kathleen and Arthur Breitman did not Control the Tezos Foundation ..................... 21

IV.   CONCLUSION ................................................................................................................. 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DLS DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**Cases**

4

*ACLI Intern. Commodity Servs., Inc. v. Banque Populaire Suisse*,
  652 F. Supp. 1289 (S.D.N.Y. 1987)....................................................................12

5

6

*Alpine Atl. Asset Mgmt. AG v. Comstock*,
  552 F. Supp. 2d 1268 (D. Kan. 2008) ............................................................12, 15

7

*In re Am. Apparel, Inc. S'holder Litig.*,
  No. CV-10-06352, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)........................21, 22

8

9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................16

10

*Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  571 U.S. 49 (2013)........................................................................................9, 11

11

12

*AVC Nederland B.V. v. Atrium Inv. P'ship*,
  740 F.2d 148 (2d Cir. 1984)..............................................................................13

13

14

*Bank Leumi USA v. Ehrlich*,
  98 F. Supp. 3d 637 (S.D.N.Y. 2015)....................................................................10

15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................16

16

17

*Bonny v. Society of Lloyd's*,
  3 F.3d 156 (7th Cir. 1993) ................................................................................11

18

19

*Brody v. Homestore, Inc.*,
  No. CV02-08068, 2003 WL 22127108 (C.D. Cal. Aug. 8, 2003)........................20, 21

20

21

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991)........................................................................................10

22

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) ...........................................................................16

23

24

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
  918 F.2d 1446 (9th Cir. 1990) ...........................................................................16

25

*Creative Tech., Ltd. v. Aztech Sys. PTE Ltd.*,
  61 F.3d 696 (9th Cir. 1995) ........................................................................9, 14, 15

26

27

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) .............................................................................16

28

**TABLE OF AUTHORITIES**
(continued)

PAGE(S)

*Diatronics, Inc. v. Elbit Computs., Ltd.*,
    649 F. Supp. 122 (S.D.N.Y 1986) *aff'd*, 812 F.2d 712 (2d Cir. 1987) ..........................13

*Docksider, Ltd. v. Sea Tech., Ltd.*,
    875 F.2d 762 (9th Cir. 1989) ..............................................................................9, 10

*Dukane Fabrics Int'l, Inc. v. M.V. Hreljin*,
    600 F. Supp. 202 (S.D.N.Y. 1985)........................................................................12

*Durham v. Kelly*,
    810 F.2d 1500 (9th Cir. 1987) ...............................................................................21

*Fouad v. Isilon Sys. Inc.*,
    No. C07-1764, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008)....................18, 20, 21

*Fustok v. Banque Populaire Suisse*,
    546 F. Supp. 506 (S.D.N.Y. 1982)........................................................................13

*Gemini Capital Grp., Inc. v. Yap Fishing Corp.*,
    150 F.3d 1088 (9th Cir. 1998) ...............................................................................16

*Giordano v. UBS, AG*,
    134 F. Supp. 3d 697 (S.D.N.Y. 2015)..............................................10, 11, 13, 15

*Griffin v. PaineWebber, Inc.*,
    No. 99 CIV. 2292, 2001 WL 740764 (S.D.N.Y. June 29, 2001)............................19

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)..............................................................................................15

*Heinz v. Grand Circle Travel*,
    329 F. Supp. 2d 896 (W.D. Ky. 2004)...................................................................13

*Horvath v. Banco Comercial Portugues, S.A.*,
    461 F. App'x 61 (2d Cir. 2012) .............................................................................10

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ...............................................................................21

*Jackson v. First Fed. Sav. of Ark., F.A.*,
    709 F. Supp. 863 (E.D. Ark. 1988) .......................................................................19

*Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft mbH*,
    618 F. Supp. 344 (N.D. Ill. 1985) .........................................................................12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**DLS DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 17-CV-06779-RS**

**TABLE OF AUTHORITIES**
(continued)

PAGE(S)

*LaSala v. UBS AG,*
510 F. Supp. 2d 213 (S.D.N.Y. 2007)...........................................................................13

*Lawrence v. Swiss Bank Corp.,*
No. 87-C-7916, 1987 WL 28288 (N.D. Ill. Dec. 9, 1987).............................................14

*Levitt v. J.P. Morgan Sec. Inc.,*
9 F. Supp. 3d 259 (E.D.N.Y. 2014) ...............................................................................17

*Lipcon v. Underwriters at Lloyd's, London,*
148 F.3d 1285 (11th Cir. 1998) ...............................................................................13, 15

*Lockman Found. v. Evangelical All. Mission,*
930 F.2d 764 (9th Cir. 1991) ..........................................................................9, 12, 15, 16

*M/S Bremen v. Zapata Off-Shore Co.,*
407 U.S. 1 (1972).............................................................................................................9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
No. 2:10-CV-0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011)..................................20

*Mallen v. Alphatec Holdings, Inc.,*
861 F. Supp. 2d 1111 (S.D. Cal. 2012).........................................................................21

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
858 F.2d 509 (9th Cir. 1988) .........................................................................................11

*Martinez v. Bloomberg LP,*
740 F.3d 211 (2d Cir. 2014)...........................................................................................11

*MBC Fin. Servs. v. Boston Merchant Fin. Ltd.,*
704 F. App'x 14 (2d Cir. 2017) .....................................................................................13

*In re McKesson HBOC, Inc. Sec. Litig.,*
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................................21

*Medoil Corp. v. Citicorp,*
729 F. Supp. 1456 (S.D.N.Y. 1990)......................................................................9, 12, 13

*Middlesex Ret. Sys. v. Quest Software Inc.,*
527 F. Supp. 2d 1164 (C.D. Cal. 2007) .........................................................................22

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.,*
476 F. Supp. 2d 414 (S.D.N.Y. 2007) ...........................................................................13

**TABLE OF AUTHORITIES**
(continued)

PAGE(S)

*Murken v. Barrow*,
No. CV88-2492, 1989 WL 168062 (C.D. Cal. Oct. 30, 1989) ......................................17

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ......................................................................................20

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ............................................................................................9

*Pinter v. Dahl*,
486 U.S. 622 (1988) ..................................................................................17, 18, 19, 20

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ........................................................................................9, 12, 16

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) ............................................................................11

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) ..........................................................................11, 12, 13

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
969 F.2d 953 (10th Cir. 1992) ......................................................................................13

*S.E.C. v. Phan*,
500 F.3d 895 (9th Cir. 2007) ........................................................................................17

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ................................................................................................12, 13

*Schertenleib v. Traum*,
589 F.2d 1156 (2d Cir. 1978) ........................................................................................12

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ..........................................................................................11

*Starkey v. G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015) ......................................................................................9, 10

*Steed Finance LDC v. Nomura Sec. Int'l, Inc.*,
No. 00 Civ. 8058, 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ............................17, 19

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
915 F.2d 1351 (9th Cir. 1990) ................................................................................10, 13

**TABLE OF AUTHORITIES**
(continued)

PAGE(S)

*Vanguard Specialized Funds v. VEREIT Inc.*,
  No. CV-15-02157, 2016 WL 5858735 (D. Az. Oct. 3, 2016) ................................................20, 21

*Wealth by Health, Inc. v. Ericson*,
  No. C09-1444, 2011 WL 1214176 (W.D. Wash. Mar. 29, 2011) ................................................17

*In re Xoma Corp. Sec. Litig.*,
  No. C-91-2252, 1990 WL 357807 (N.D. Cal. Dec. 27, 1991)......................................................19

*Yavuz v. 61 MM, Ltd.*,
  576 F.3d 1166 (10th Cir. 2009) ..........................................................................................13, 15

**Statutes**

Swiss Civ. Code
  Art. 81 ............................................................................................................................................6
  Art. 84 ............................................................................................................................................6
  Art. 83b ..........................................................................................................................................6

15 U.S.C. § 77l............................................................................................................. *passim*

15 U.S.C. § 77o(a) ................................................................................................................21, 22

### NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on July 19, 2018 at 1:30 p.m., or as soon thereafter as this motion may be heard, defendants Dynamic Ledger Solutions, Inc. ("DLS") and Kathleen and Arthur Breitman (collectively, with DLS, the "DLS Defendants") will and hereby do move to dismiss the Consolidated Class Action Complaint filed by Lead Plaintiff Arman Anvari for failure to state a claim upon which relief can be granted. This motion is made under the doctrine of *forum non conveniens* and Federal Rule of Civil Procedure 12(b)(6), and is based on the accompanying Memorandum of Points and Authorities, the DLS Defendants' Request for Judicial Notice, the supporting Declaration of Samantha A. Kirby, the papers on file in this matter, and such other matters as may be presented to the Court at the hearing on this motion.

### STATEMENT OF RELIEF SOUGHT

The DLS Defendants seek dismissal of the Consolidated Class Action Complaint under the *forum non conveniens* doctrine and Rule 12(b)(6) for failure to state a claim.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether this action should be dismissed under the doctrine of *forum non conveniens* because Switzerland is the proper and adequate forum for this action.

2. Whether Plaintiff has failed to adequately and plausibly allege that the DLS Defendants qualify as solicitors or sellers of securities under Section 12 of the 1933 Securities Act (15 U.S.C. § 77l).

3. Whether Plaintiff has failed to adequately allege that the DLS Defendants controlled the Tezos Foundation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff has filed this action in the wrong place and against the wrong defendants.  Plaintiff's claims arise out of a fundraiser conducted by a Swiss non-profit entity called the Tezos Foundation.  Plaintiff claims he made a contribution to the Tezos Foundation's fundraiser.  By its terms, and under Swiss law, that contribution was non-refundable.  Moreover, the terms governing the fundraiser designated Switzerland as the exclusive forum for all disputes "arising out of or in connection with" the fundraiser.  Notwithstanding all of that, Plaintiff has filed suit in the United States seeking a refund of his contribution.  Even worse, Plaintiff has sued three defendants— Dynamic Ledger Solutions (or "DLS") and its cofounders, Arthur Breitman and Kathleen Breitman —who did not conduct the fundraiser, did not solicit Plaintiff's contribution to it, and did not receive any part of Plaintiff's contribution.

The Tezos Foundation conducted the fundraiser to promote the use of a new blockchain protocol named Tezos.  At a high level, a blockchain protocol is a software system that allows many different, unrelated, and anonymous computers to maintain the same record (or ledger) of transactions at the same time.  For that reason, it is sometimes referred to as a "distributed ledger."  By definition, a blockchain network is highly decentralized—just as there is no one location in which the distributed ledger is maintained, there is no central authority governing a blockchain.  The units used to transact on the shared ledger (such as Ether) can also be used to purchase goods and services, and so they are commonly referred to as a "cryptocurrency" or a "token."

The Tezos protocol was developed by DLS and its co-founders, Kathleen Breitman and Arthur Breitman (collectively, the "DLS Defendants"), beginning in 2014.  In 2017, a Swiss foundation called the Tezos Foundation was formed.  The Foundation is an independent Swiss non-profit entity.  None of the DLS Defendants has any ownership stake in the Foundation, nor do they have any control over it.  Instead, the Foundation is directed by a foundation council, which is akin to a board of directors.  As a Swiss non-profit, the Foundation is regulated by Swiss authorities and is subject to Swiss law.  Its mission includes, among other things, the promotion and development of the Tezos protocol.  To that end, the Foundation conducted a fundraiser in July of 2017.  The terms

governing any contributions made during the fundraiser were posted to a website dedicated to providing information about the fundraiser.  Pursuant to those terms, individuals who contributed to the fundraiser were eligible (but not guaranteed) to receive an allocation of Tezos Tokens when the network launched.

Plaintiff now claims that the fundraiser amounted to a "sale" of Tezos Tokens, and that those tokens are "securities."  Consequently, he contends that the fundraiser violated Section 12 of the Securities Act of 1933 because the Foundation did not file a registration statement covering the Tezos Tokens.  But under the terms of the fundraiser, any such claims must be adjudicated in Switzerland.  The contribution terms include a clause making the Swiss courts the exclusive forum for such actions, and that clause is enforceable here.  The Foundation reasonably communicated the terms to contributors by posting them on the fundraiser's informational website.  In addition, there are no allegations suggesting that the forum selection clause was the product of fraud or that application of the clause would harm Plaintiff or violate public policy.  As a result, Plaintiff cannot maintain an action in a United States district court.

Separate and apart from Plaintiff's choice of the wrong forum, he has asserted his claims against the wrong defendants.  Section 12 of the '33 Act only permits plaintiffs to bring claims against the "the person [they] purchas[ed the] security *from*."  15 U.S.C. § 77l(a)(1) (emphasis added).  Here, there was no "sale" at all.  Plaintiff made a non-refundable contribution to a Swiss non-profit entity, and he was not promised anything in return for that contribution.  But even setting aside that point, Plaintiff has not alleged that he purchased anything at all from any of the DLS Defendants.  He does not allege (and cannot allege) that any of the DLS Defendants solicited his contribution, urged him to make a contribution, or caused him to participate in the fundraiser.  Without such allegations, he cannot assert any claims against the DLS Defendants under Section 12 of the '33 Act.

For each of these reasons and the additional reasons stated below, Kathleen and Arthur Breitman and DLS respectfully request that the Court dismiss the Complaint[1] with prejudice.

---

[1] "Complaint" or "Compl." refers to Lead Plaintiff's Consolidated Complaint (Dkt. No. 108).  All citations to "Ex." are to the Declaration of Samantha A. Kirby in Support of Defendants' Motion To

## II.   FACTUAL BACKGROUND

### A.   Tezos and the Blockchain Technology

This case revolves around a fundraiser conducted by the Tezos Foundation (the "Foundation") in July 2017 to promote and foster the use of the Tezos network ("Tezos" or the "Network").   Like its predecessors Bitcoin and Ethereum, Tezos is a blockchain network—a distributed ledger "maintained by various participants in a network of computers."  (Compl. ¶ 27.) (Citation omitted.)   Put more simply, a blockchain network is a record of transactions listed on "nodes" maintained by computers throughout the world.  (*See* Compl. ¶¶ 27-30.)   In this way, blockchains are distributed and decentralized—the nodes are anonymous and unrelated to one another and to the blockchain's founders or developers.  (*See* Compl. ¶ 28.)   To ensure that the transactions are recorded accurately, blockchains require each node on a network to reach a "distributed consensus" on the validity of any individual transaction.  (*See* Compl. ¶ 30.)   To do so, each node uses "the same cryptographic algorithm to verify each transaction."  (*Id.*)

Virtual "tokens" (also called "coins") are a critical feature of blockchain networks.   Tokens often serve two functions.   *First*, tokens play a critical role in enabling the network to function. They are a currency used to incentivize and compensate the network participants whose contributions are necessary to process and record transactions on the network.   *Second*, tokens may be used by network participants as a medium of exchange.   The Ethereum network, for instance, supports a token ("Ether" or "ETH") that serves both functions.   Ethereum describes "ETH" as "a fuel . . . for operating the distributed application platform" because it is how "clients of the platform [pay and incentivize] the machines executing the requested operations [the nodes]."   Separately, ETH can also function as a currency.   *See What is Ether*, https://www.ethereum.org/ether (last visited May 15, 2018).   Similarly, the Tezos network supports the XTZ token (or "Tezos Token"). (*See* Compl. ¶ 2.)   The Tezos Token is a native, digital token that enables transactions and applications on the network.  (*Cf.* Compl. ¶¶ 2, 31.)   That is, like Ether, Tezos Tokens serve as both a way to compensate the network nodes and as a medium of exchange among developers and consumers that use the Tezos network and its applications.  (*Cf. id.*)

Dismiss Lead Plaintiff's Consolidated Complaint ("Kirby Decl.").

But while Tezos is similar to earlier blockchains like Bitcoin and Ethereum in some respects, it is different from them in other respects. Among other things, the Tezos protocol was designed to address certain challenges that earlier blockchains have struggled to solve.[2] (*See* Compl. ¶ 33.) Because all blockchains are decentralized, they do not have a central governing authority. That makes it difficult to maintain and update the underlying technology. (*See* Ex. 1 at 2-6.) If, for example, it becomes apparent that the consensus rules used by one of those networks are flawed, there is no obvious mechanism for amending and improving those rules. (*See id.*) The Tezos network seeks to address the need for governance in a decentralized network by including in the protocol a set of "governance rules for stakeholders to approve of protocol upgrades that are then automatically deployed on the network." (*Id.* at 4.) Essentially, this process allows stakeholders to "vote" on changes to the underlying Tezos protocol, which are then automatically pushed to the Network if approved. These features make Tezos the first cryptocurrency that can be "democratically" governed by members of the Tezos community.

## B.    The Tezos Foundation

In or around May 2017, the Tezos Foundation was founded as a Swiss nonprofit based in Zug, Switzerland to "oversee" the fundraiser and "receive and manage all contributions" made by participants. (Compl. ¶¶ 17, 47.) It was established as an independent entity because "Tezos' founders thought it that it would be beneficial for the Tezos Network if a nonprofit foundation could guide its early steps and complement the decentralized nature of its governance model." (Compl. ¶ 48.)

Tezos Foundation's primary goal is to "promote and foster the use of the Tezos blockchain, its technology and its ongoing development." (Ex. 1 at 8; *see also* Compl. ¶ 47.) To fulfill that purpose, the Foundation and DLS have entered into a series of agreements by which the Foundation will ultimately acquire the rights to the Tezos project. (Compl. ¶¶ 16, 47.) The Foundation is led by a Foundation council (which functions as the board of directors under Swiss law), the initial members of which had expertise in cryptocurrency, computer science, and business. (*See* Ex. 1 at

---

[2] In August 2015, Arthur Breitman formed DLS, a Delaware corporation that holds all Tezos-related intellectual property. (Compl. ¶¶ 15, 35.)

8.)  Kathleen and Arthur Breitman are not members of the Foundation council, and have no formal role with the Foundation or control over the Foundation.  (*Cf.* Compl. ¶ 48.)

The Foundation is subject to regulatory oversight by the Swiss Federal Foundation Supervisory Authority (the "Swiss Foundation Authority").  Swiss Civ. Code, Arts. 81, 84.  The Swiss Foundation Authority acts to ensure that a foundation's assets are used to further the foundation's purpose.  Under Swiss law, the Foundation must provide the Swiss Foundation Authority with an annual activity report, an audit report, and accounts of the foundation.  *See id*. Further, Swiss law provides that a foundation must appoint an external and independent auditor to audit the foundation's financial statements.  *See* Swiss Civ. Code, Art. 83b.

### C.   The Fundraiser and Contribution Terms

In July 2017, the Foundation—not the DLS Defendants—conducted a fundraiser.  (*See* Compl. ¶¶ 17, 19, 41, 47; *see also* Ex. 1 at 10-12.)  Individuals who decided to participate in the fundraiser sent non-refundable donations to the Foundation, which was responsible for "collecting and managing contributions" from the fundraiser.  (*See* Compl. ¶¶ 47, 72.)  The fact that contributions were non-refundable was featured prominently in the fundraiser materials.  (*See, e.g.*, Ex. 2 at ¶ 12.)  The Foundation explained that it would use the contributions it received to pursue its mission of "promoting the development and use of the Tezos blockchain."  (Compl. ¶ 47; *see also* Ex. 1 at 8, 13.)

Any contributions the Foundation received were governed by a set of "Tezos Contribution and XTZ Allocation Terms and Explanatory Notes" (the "Contribution Terms").  (Ex. 2.)  The Contribution Terms were made available to the contributors on a website dedicated to providing information                about                the                fundraiser, https://www.tezos.ch/pages/static/Tezos%20Contribution%20Terms.pdf.    Indeed, the Contribution Terms described how to make a donation, explaining that, "[c]ontributions can be made using ether (ETH) or bitcoin (BTC)" and "must be made using the contribution software ('Contribution Software') provided by TEZOS [the Foundation]."  (Ex. 2 at ¶¶ 14, 17.)

Pursuant to the Contribution Terms, Plaintiff and other persons who participated in the Tezos fundraiser agreed, *inter alia*, to a class action waiver, a choice of law clause and a forum selection

clause:

> [T]he Contributor waives the right to participate in a class action lawsuit . . . against any entity or individual involved with the Contribution to TEZOS [the Foundation], with the allocation of XTZ and with the operation of the Tezos Network.  (Ex. 2 at ¶ 11(h).)

> The applicable law is Swiss law.  Any dispute arising out of or in connection with the creation of the XTZ and the development and execution of the Tezos Network shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland.  (*Id.* at ¶ 48.)

The Contribution Terms also made clear that a contribution made during the fundraiser "qualified as a non-refundable donation," except for a portion of an administrative support fee.  (*Id.* at ¶ 12.)  Other provisions in the Contribution Terms repeatedly emphasized that the fundraiser did not constitute a securities offering and that persons who chose to participate knowingly assumed the risks.  (*See, e.g.*, *id.* at ¶ 8 ("This document does not constitute a prospectus of any sort, is not a solicitation for investment and does not pertain in any way to an offering of securities in any jurisdiction."); *id.* at ¶ 10 ("The Contributor understands and accepts that XTZ do not represent or constitute any ownership right or stake, share or security or equivalent right in or relating to TEZOS, the Client, the Tezos Network and/or any software, any public or private company, corporation, entity or property."); *id.* at ¶ 11(a) ("By donating to TEZOS [the Foundation] . . . the Contributor represents and warrants that . . . the Contributor deeply understands the functionality, usage, storage . . . and intricacies associated with cryptographic tokens . . . and intends to use XTZ to participate in network governance, mining activities or connecting private networks.").)

Additionally, prior to the fundraiser, the Foundation stated that it would recommend an XTZ token allocation based on contributions when the Tezos network begins operating.  (Compl. ¶¶ 17, 47; Ex. 1 at 10, 12.)  It directed potential contributors to refer to the Contribution Terms for more detail.  (Ex. 1 at 10.)  Per the Contribution Terms, the Foundation would recommend allocations of XTZ tokens "to reflect early contributions made," but that "since the Tezos Network will be operated by an independent community of participants" with the discretion to not adopt those recommendations, the Foundation "cannot guarantee to any party that they will have an initial allocation of XTZ."  (Ex. 2 at ¶ 3; *see also id.* at ¶ 29 ("TEZOS cannot guarantee to Contributors that they shall have any allocation and/or creation of XTZ as set forth in these terms.").)

1    In the weeks and months leading up to the fundraiser, Kathleen and Arthur Breitman spoke

2    publicly about the Tezos protocol, and provided potential contributors with certain information about

3    the fundraiser itself.  In particular, according to the Complaint, Kathleen and Arthur Breitman made

4    statements: (1) explaining the benefits of an uncapped fundraiser (Compl. ¶ 51), (2) explaining how

5    the fundraiser worked (Compl. ¶¶ 52, 57-58), and (3) responding to questions regarding the mailing

6    address provided by the Tezos website (Compl. ¶ 53).  Plaintiff does not allege that Kathleen or

7    Arthur Breitman urged anyone to contribute or solicited contributions from anyone, much less from

8    Plaintiff.

9    The fundraiser took place from July 1 through July 14, 2017, and was highly successful.

10    Contributors from around the world donated over 65,000 Bitcoin and over 300,000 Ether—the

11    equivalent of over $232 million at the time.  (Compl. ¶¶ 2, 78.)  The Foundation holds title to those

12    funds, which it has used to promote the development of the Tezos network.  (*See* Compl. ¶¶ 47, 80.)

13    **D.    The Present Action**

14    Following a meteoric rise in the value of Bitcoin and Ether, a few contributors filed class

15    action lawsuits against the Foundation and the other defendants in October, November, and

16    December 2017 seeking a return of their Bitcoin or Ether.

17    On March 16, 2018, the Court consolidated those actions and appointed Arman Anvari as

18    Lead Plaintiff.  (Dkt. No. 101.)  Mr. Anvari filed the Complaint on April 3, 2018.  (Dkt. No. 108.)

19    The Complaint maintains that the Foundation, the DLS Defendants, and others violated Sections 5

20    and 12 of the Securities Act of 1933 (15 U.S.C. §§ 77e, 77l) by offering "securities" to the public

21    through the fundraiser without filing a registration statement with the SEC.  (*See* Compl. ¶¶ 137-50.)

22    **III.    ARGUMENT**

23    **A.    This Case Should Be Dismissed on *Forum Non Conveniens* Grounds**

24    A mandatory forum selection clause within the Contribution Terms of the fundraiser

25    designates Switzerland as the exclusive forum to adjudicate the instant dispute.  Plaintiff cannot

26    meet his heavy burden of showing enforcement of this clause would be unreasonable.  Even in the

27    absence of an agreed-upon forum, the balance of private and public interest factors weigh heavily in

28    favor of dismissal under the *forum non conveniens* doctrine.

### 1. Under the *forum non conveniens* doctrine, forum selection clauses must be enforced

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Ordinarily, a party moving to dismiss on grounds of *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2) that the balance of private and public interest factors weighs in favor of dismissal. *Id.* at 241; *Creative Tech., Ltd. v. Aztech Sys. PTE Ltd.*, 61 F.3d 696, 703-04 (9th Cir. 1995). This showing must overcome the deference owed to the plaintiff who has chosen to sue in his home forum. *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

However, when a valid foreign forum selection clause is present, the *forum non conveniens* doctrine's "usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Starkey v. G Adventures, Inc*., 796 F.3d 193, 196 (2d Cir. 2015). The court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63-64 (2013). The burden on the party challenging the enforcement of a forum selection clause "is a heavy one, as 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Medoil Corp. v. Citicorp,* 729 F. Supp. 1456, 1459 (S.D.N.Y. 1990) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972)); *see also Atlantic Marine*, 571 U.S. at 59-60 (an enforceable forum selection clause requiring that disputes be adjudicated in a foreign forum must be given "controlling weight in all but the most exceptional cases").

### 2. The forum selection clause requires litigation of this dispute in Switzerland

The Contribution Terms designates Switzerland as the exclusive forum for resolution of this dispute. Where a forum selection clause contains mandatory language that requires litigation take place in certain venue, "the clause will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989); *see also Phillips v. Audio Active Ltd*., 494 F.3d 378, 386 (2d Cir. 2007) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

The forum selection clause provides that "[a]ny dispute arising out of or in connection with the creation of the XTZ and the development and execution of the Tezos Network shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland." (Ex. 2 at ¶ 48.) By specifying an exclusive forum for resolution of disputes, this clause is mandatory in nature. *See Docksider*, 875 F.2d at 763-64 (forum selection clause stating that "[v]enue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia," found to be "mandatory"); *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 702-03 (S.D.N.Y. 2015) (finding that a forum selection clause was mandatory in nature because it specified Switzerland as the "exclusive place of jurisdiction" for any disputes).

The mere fact that the forum selection clause appeared in a standardized contract and was not signed by individual contributors does not invalidate the clause. The Supreme Court has explicitly *rejected* the argument that a "nonnegotiated forum-selection clause in a form . . . contract is never enforceable simply because it is not the subject of bargaining." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). Additionally, the fact that the document containing the forum selection clause was not "signed" does not negate its enforceability. *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990).

The Contribution Terms were made available to the contributors in printed form on a website dedicated to providing information about the Tezos fundraiser, https://www.tezos.ch/pages/static/Tezos%20Contribution%20Terms.pdf. As such, the clause was reasonably communicated to any contributors, many of whom may be putative class members, who chose to access and review the Contribution Terms. *See, e.g.*, *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 650 (S.D.N.Y. 2015) (enforcing clause found in separate "terms and conditions" incorporated by reference into application for bank account despite plaintiff's claim that he did not receive them); *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (forum selection clause found to be reasonably communicated to plaintiff despite his claim that it appeared in separate "terms and conditions" document he did not receive or review); *Starkey*, 796 F.3d at 197-98 (finding that hyperlink sent via email linking to terms and conditions constituted reasonable communication of a forum selection clause contained in those terms and conditions).

Indeed, contributors will attest that they were on notice of and aware of the Contribution Terms before they made their non-refundable contributions to the fundraiser, and that the Contribution Terms required that any related disputes be decided in Switzerland and governed by Swiss law. (*See, e.g.*, Ex. 4 (Declaration of Woodrow H. Levin) at ¶¶ 4, 6-7.)[3]

Finally, it is reasonable to assume that Plaintiff was also aware of the conspicuous forum selection clause at or about the time he decided to participate in the Tezos fundraiser and knew that such provisions are common place in international transactions.   Mr. Anvari is a licensed corporate/business/securities attorney in Illinois and practiced at Latham & Watkins, Baker McKenzie, and most recently, Perkins Coie.  At the very least, Mr. Anvari was on "inquiry notice" of the applicable Contribution Terms and is bound because a "reasonably prudent" person "would be on notice of the terms at issue." *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012)).

### 3.     Plaintiff cannot carry his heavy burden of showing that enforcement of the forum selection clause is unreasonable

Absent "extraordinary circumstances unrelated to the convenience of the parties," a forum selection clause will be enforced.  *Atlantic Marine*, 571 U.S. at 62.  The Supreme Court has identified three grounds for repudiating a forum selection clause:

> [F]irst, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, if enforcement would contravene a strong public policy of the forum in which suit is brought.

*Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (internal quotations and citation omitted); *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514–15 (9th Cir. 1988).[4] None of these three grounds are present here.

---

[3] Courts can consider affidavits when making *forum non conveniens* determinations. *See, e.g.*, *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits."); *Giordano*, 134 F. Supp. 3d at 706 (considering expert affidavit).

[4] Notably, a claim of current financial distress is *not* a relevant fact in determining the reasonableness of a forum selection clause. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 n.11 (7th Cir. 1993). Nor do advanced age, inability to travel, or inconvenience of litigating abroad constitute exceptional circumstances. *Giordano*, 134 F. Supp. 3d at 706.

*First*, the forum selection clause was not the product of fraud or overreaching.  The Supreme Court has held that simply alleging that one was duped into signing a contract is not enough.  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (the fraud exception in *Bremen* "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable").  "For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'"  *Richards*, 135 F.3d at 1297 (internal quotations and citations omittted).  That is not the case here.

*Second*, Plaintiff cannot show that enforcement of the forum selection clause would effectively deprive him or the putative class of their day in court; to the contrary, Switzerland is an available, adequate forum.    In determining whether an alternative forum is "available," it is *irrelevant* that the foreign court may apply substantive law less favorable to plaintiff unless "the remedy provided . . . is so clearly inadequate or unsatisfactory that it is *no remedy* at all."  *Piper Aircraft Co.*, 454 U.S. at 254 (emphasis added); *see also Lockman*, 930 F.2d at 769 (possible unavailability of statutory claims in Japanese court did not make Japan an inadequate forum because plaintiff could bring other causes of action); *Medoil*, 729 F. Supp. at 1460; *Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft mbH*, 618 F. Supp. 344, 348-49 (N.D. Ill. 1985); *Dukane Fabrics Int'l, Inc. v. M.V. Hreljin*, 600 F. Supp. 202, 203-04 (S.D.N.Y. 1985).  The requirement of an adequate alternative forum is usually satisfied if the defendant is amenable to service of process in the other jurisdiction.  *Lockman*, 930 F.2d at 767.

Here, the Foundation—which conducted the fundraiser at issue and holds title to the contributions—is a Swiss entity and amenable to service of process in Switzerland.  As many courts across the country have previously found, Switzerland is an adequate alternative forum for *non conveniens* purposes.  *See, e.g.*, *Schertenleib v. Traum*, 589 F.2d 1156, 1164-66 (2d Cir. 1978) (Switzerland provides alternate forum under doctrine of *forum non conveniens*); *Alpine Atl. Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1283 (D. Kan. 2008) ("Switzerland is an adequate and available forum."); *Medoil*, 729 F. Supp. at 1460 ("Swiss courts are a fair and reasonable forum for resolution of disputes."); *ACLI Intern. Commodity Servs., Inc. v. Banque Populaire Suisse*, 652

F. Supp. 1289, 1292-96 (S.D.N.Y. 1987) (same); *LaSala v. UBS AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007) (same).

Many courts have enforced similar forum selection clauses specifying Switzerland as the foreign forum to litigate or arbitrate a legal dispute. *See, e.g.*, *TAAG Linhas Aereas de Angola*, 915 F.2d at 1355-56 (trial court's dismissal based on enforceable Switzerland forum selection clause upheld); *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1182-83 (10th Cir. 2009) (affirming dismissal based on Switzerland forum selection clause); *MBC Fin. Servs. v. Boston Merchant Fin. Ltd.*, 704 F. App'x 14, 18-19 (2d Cir. 2017) (same); *Medoil*, 729 F. Supp. at 1460-61 (enforcing Switzerland forum selection provision in fraudulent securities case); *Giordano*, 134 F. Supp. 3d at 706 (dismissing complaint based on valid and enforceable Switzerland forum selection clause); *Heinz v. Grand Circle Travel*, 329 F. Supp. 2d 896, 900-05 (W.D. Ky. 2004) (dismissing complaint based on forum selection clause designating Switzerland as venue); *Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 414 (S.D.N.Y. 2007) (forum selection clause designating Switzerland found to be applicable and enforceable).

*Third*, enforcement of the forum selection clause would not contravene any—let alone a strong—public policy of this forum. The Supreme Court and Ninth Circuit have recognized that "parties to an international securities transaction may choose law other than that of the United States" to govern their transactions. *Richards*, 135 F.3d at 1295; *see also Scherk*, 417 U.S. at 517–18. Civil actions alleging *securities* violations, such as this one, with foreign venue selection clauses are routinely dismissed on *forum non conveniens* grounds. *See, e.g.*, *Richards*, 135 F.3d at 1292-94 (anti-waiver provisions of U.S. securities laws do not invalidate foreign forum selection clause); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir. 1998) (same); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956-58 (10th Cir. 1992) (dismissing alleged securities violation); *Medoil*, 729 F. Supp. at 1460-61 (Swiss forum selection provision enforced in securities violation action); *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 155-56 (2d Cir. 1984) (forum selection clause enforced in securities action); *Fustok v. Banque Populaire Suisse*, 546 F. Supp. 506, 513-14 (S.D.N.Y. 1982) (*forum non conveniens* applied to transfer action under Commodity Exchange Act to Switzerland); *Diatronics, Inc. v. Elbit Computs., Ltd.*, 649 F. Supp.

122, 126 (S.D.N.Y 1986) (forum selection clause enforced in Rule 10b-5 action) *aff'd*, 812 F.2d 712 (2d Cir. 1987).

Because Plaintiff cannot uphold his burden of showing that this is an exceptional case where it would be unreasonable to enforce the forum selection clause, this Court should dismiss this lawsuit on *forum non conveniens* grounds.

### 4.    Even in the absence of the forum selection clause, dismissal is appropriate on *forum non conveniens* grounds

Even without a forum selection clause, this case belongs in Switzerland where the Foundation is located and subject to regulatory oversight by Swiss authorities.  As a threshold matter, Switzerland is clearly an adequate alternative forum.  *See* Section III.A.3, *supra*. Additionally, the balance of private and public interest factors weigh in favor of dismissal of this action and resolution of this dispute in Switzerland.  Accordingly, dismissal is proper.  *See Lawrence v. Swiss Bank Corp.*, No. 87-C-7916, 1987 WL 28288, at *3 (N.D. Ill. Dec. 9, 1987) ("Even in the absence of a forum selection clause there would be very little reason to hear this case in this Court.").

Unlike Switzerland, California has no special public interest in resolution of this dispute. The public interest factors include the burden on local courts and juries; the local interest in having the matter decided locally; interest in having a case tried in a forum familiar with the applicable law; avoidance of unnecessary problems in conflicts of law; and pending litigation in an alternate forum. *Creative Tech.*, 61 F.3d at 703-04.  Plaintiff admits that the Foundation—an undeniably Swiss entity with its principal place of business in Zug, Switzerland—conducted the alleged "Tezos ICO that is the subject of this action[.]"  (Compl. ¶¶ 16-17.)  Additionally, the Contribution Terms stated that "the XTZ creation and XTZ allocation [are] considered to be executed in Alderney" where the "Contribution Software and the Client [the Tezos blockchain software] are located[.]"  (Ex. 2 at ¶ 46.)   The Foundation received donations from contributors around the world, and these "contributions were then digitally recorded in the Bitcoin and Ethereum blockchain ledgers maintained on computer systems and servers throughout the U.S. (as well as worldwide)." (Compl. ¶ 77.)  Given the international character of the fundraiser, it makes good sense to adjudicate this

dispute in Switzerland where the Foundation is subject to regulatory oversight and where the public has a strong interest in resolution of this dispute due to Switzerland's status as a global hub for cryptocurrencies and blockchain technologies. It would be an inefficient use of judicial resources for this case to proceed in California, especially when this Court's docket is already congested. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("Administrative difficulties follow for courts when litigation is piled up in congested centers.").

Additionally, the choice of law provision designating Swiss law as the governing law weighs heavily in favor of dismissal. Foreign choice of law provisions are presumptively valid and are to be enforced in the absence of fraud or coercion. *See Lipcon*, 148 F.3d at 1295; *Yavuz*, 576 F.3d at 1178-80 (trial court's determination that Swiss choice of law provision governed dispute affirmed). As explained by one district court: "[i]t would be more burdensome to litigate here [in the U.S.] rather than in Switzerland because the Court would be required to consider expert evidence on foreign law relating to virtually all of the issues in this case." *Giordano*, 134 F. Supp. 3d at 704-05. Accordingly, "[t]he courts of Switzerland, not this court, are familiar with the governing law" which is a major "factor [that] weighs heavily in favor" of dismissal. *Alpine Atl.*, 552 F. Supp. 2d at 1283.

The private interest factors fall into three categories: (1) relative ease of access to sources of proof; (2) availability of witnesses; and (3) all other practical factors favoring an expeditious and inexpensive trial. *Lockman,* 930 F.2d at 769-70; *Creative Tech.*, 61 F.3d at 703. Where, as here, the majority of witnesses and documents are located in an alternate forum, the action should be dismissed. *Creative Tech.*, 61 F.3d. at 703 (dismissal upheld in copyright action where design and manufacture of both parties' computer software took place in Singapore, so most of the witnesses and documents were located there). Here, there can be no dispute that Switzerland provides better access to sources of proof, the relevant witnesses and is a much more expeditious and inexpensive forum for the resolution of the instant disputes. The Foundation has no offices or places of business in California or the United States, and none of their employees or officers reside in California. It would be burdensome for the Foundation to litigate this dispute in California, and it certainly was reasonably foreseeable to Plaintiff and other contributors when they chose to donate Bitcoin and Ether to a Swiss foundation that any disputes would be resolved in Switzerland.

1   Plaintiff may argue that dismissal would deprive him of access to his home forum.  While a

2   plaintiff's choice of forum may often be respected, "[t]he deference due to plaintiff[] . . . is far from

3   absolute." *Lockman,* 930 F.2d at 767.  As the Supreme Court noted, "[a] citizen's forum choice

4   should not be given dispositive weight . . . . [I]f the balance of conveniences suggests that trial in the

5   chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is

6   proper." *Piper Aircraft*, 454 U.S. at 256 n.23.  This is why "[i]n practice, 'the cases demonstrate that

7   defendants *frequently* rise to the challenge' of showing an alternative forum is the more convenient

8   one." *Lockman,* 930 F.2d at 767 (quoting *Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d

9   1446, 1449 (9th Cir. 1990)) (emphasis added).  Accordingly, the mere "presence of American

10  plaintiffs . . . is not in and of itself sufficient to bar a district court from dismissing a case on the

11  ground of *forum non conveniens.*" *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).  Here,

12  although Plaintiff is an American citizen, his choice to sue in California rather than his home state of

13  Illinois is afforded less deference.  *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088,

14  1090-91 (9th Cir. 1998).  Because this action should be resolved in the agreed-upon forum in

15  Switzerland, this action should be dismissed.

16

17  **B.    The DLS Defendants did not "Sell" the Tezos Tokens or Solicit Plaintiff's Contributions**

18  Setting aside Plaintiff's choice of the wrong forum, Plaintiff's Complaint against the DLS

19  Defendants must be dismissed for failure to state a claim.  Rule 12(b)(6) requires Plaintiff to allege

20  facts sufficient to make his claims "plausible," not merely possible or conceivable.  *Bell Atl. Corp. v.*

21  *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining

22  whether a complaint states a plausible claim, the Court need not accept conclusory factual

23  allegations or unreasonable inferences.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th

24  Cir. 2010); *see also Iqbal*, 556 U.S. at 678-79 (conclusory allegations not taken as true).

25  Plaintiff asserts a single claim against the DLS Defendants under Section 12 of the Securities

26  Act (15 U.S.C. § 77l).  Setting aside, for now, the question of whether the Tezos Tokens qualify as a

27  "security" for purposes of the Securities Act, Plaintiff's Section 12 claim against the DLS

28  Defendants fails because he does not allege (and he cannot allege) that any of the DLS Defendants

1  "sold" him any Tezos Tokens.  Plaintiff's failure to allege this essential element of his claim means

2  that his claim against the DLS Defendants must be dismissed.[5]  *See, e.g.*, *Steed Finance LDC v.*

3  *Nomura Sec. Int'l, Inc.*, No. 00 Civ. 8058, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001).

4  The Complaint suggests that the DLS Defendants can be held liable under Section 12

5  because they "directly or indirectly sold or offered Tezos Tokens" to contributors and were "a

6  necessary participant and a substantial factor in the [fundraiser]."  (Compl. ¶ 64.)  Those allegations

7  parrot the test for liability under *Section 5* of the Securities Act (15 U.S.C. § 77e).  *See S.E.C. v.*

8  *Phan*, 500 F.3d 895, 906 (9th Cir. 2007) (defendants can be liable under Section 5 if they are "a

9  'necessary participant' and 'substantial factor' in the sales transaction").  There is "no private right

10  of action under Section 5 of the Securities Act of 1933."  *See, e.g.*, *Murken v. Barrow*, No. CV88-

11  2492, 1989 WL 168062, at *3 (C.D. Cal. Oct. 30, 1989); *Levitt v. J.P. Morgan Sec. Inc.*, 9 F. Supp.

12  3d 259, 273 (E.D.N.Y. 2014) (same).  Rather, for alleged violations of Sections 5(a) and 5(c), private

13  plaintiffs must bring their claims under Section 12.[6]  *See Wealth by Health, Inc. v. Ericson*, No. C09-

14  1444, 2011 WL 1214176, at *3 (W.D. Wash. Mar. 29, 2011); *accord Murken*, 1989 WL 168062, at

15  *3 (same).  Consequently, to state a claim Plaintiff's allegations must show that he is entitled to

16  relief under Section 12.

17  Section 12 applies a stricter standard.  *See Phan*, 500 F.3d at 906 n.13.  Section 12(a)(1)

18  permits plaintiffs to bring civil actions against "the person [they] purchas[ed the] security *from*."  15

19  U.S.C. § 77l(a)(1) (emphasis added).  That language limits liability to ***sellers*** and ***solicitors***.  *Pinter*

20  *v. Dahl*, 486 U.S. 622, 644-47 & n.21 (1988).  Plaintiff can only maintain Section 12 claims against

21  (1) the "direct sellers" of the Tezos Tokens, and (2) anyone else who "actively solicited" the "sale"

22  of Tezos Tokens.  *Steed Finance*, 2001 WL 1111508, at *7; *accord Pinter*, 486 U.S at 644-47 &

---

[5]  This analysis applies regardless of whether or not the Tezos Token qualifies as a "security" under the '33 Act.  If the case proceeds, the evidence will show that it is not a "security."  But that highly fact-specific question is not well suited for resolution at the pleading stage in this case, and in any event, there is no need for the Court to address the question at this stage because Plaintiff's Section 12 claim fails for all the reasons set forth in the text.

[6]  As a result, to the extent Plaintiff does allege an independent violation of Section 5 (*see* Compl. ¶ 138), those claims must be dismissed.

n.21; *Fouad v. Isilon Sys. Inc.*, No. C07-1764, 2008 WL 5412397, at \*7 (W.D. Wash. Dec. 29, 2008).  The DLS Defendants do not fall under either category.

### 1.     Plaintiff sent his fundraiser contribution to the Tezos Foundation, not the DLS Defendants

As an initial matter, the DLS Defendants plainly did not "sell" Tezos Tokens to Plaintiff directly.  Plaintiff does not allege that he obtained any Tezos Tokens from the DLS Defendants.  Nor could he.  As Plaintiff admits, to participate in the fundraiser, he sent his contribution to "the Tezos Foundation's . . . wallets."  (Compl. ¶¶ 14, 72-74.) (Emphasis added.)   The materials issued in connection with the fundraiser also confirm that contributions were being made "to the Tezos Foundation," (Ex. 2 at ¶ 1), and that the Foundation was responsible for recommending the initial allocation of Tezos Tokens to contributors.  (*See* Ex. 1 at 10-12.)  Plaintiff has not adequately alleged that a "sale" took place at all, as he simply made a non-refundable contribution—but in any event, he made that contribution to the Foundation, not to DLS or to Kathleen or Arthur Breitman.  As such, none of the DLS Defendants could have directly "sold" him anything.  Nor did the DLS Defendants own or control the Foundation, which "operates independently from DLS."  (Ex. 3 at 1; *cf.* Compl. ¶ 48.)

Plaintiff nevertheless suggests that the DLS Defendants "sold" Tezos Tokens because "Arthur Breitman and DLS were . . . heavily involved in planning and executing the Tezos ICO from a technical and operational perspective, including by designing, constructing, and deploying the software underlying the ICO."  (Compl. ¶ 55; *see also id.* ¶¶ 57-58, 64.)  But as a matter of law, such "involvement" is not enough to hold DLS or Arthur Breitman liable as a direct seller or as an active solicitor of any sale.  As the Supreme Court explained in *Pinter*, "[t]he buyer does not, in any meaningful sense, 'purchase the security from'" individuals who provide "professional services" such as "accountants and lawyers."  486 U.S. at 651-52.  For this purpose, there is no difference between the services provided by accountants and lawyers, on the one hand, and the kind of "technical and operational assistance" that Arthur Breitman and DLS allegedly provided here, on the other hand.  Like accountants and lawyers, software designers may help to facilitate the offering.

But buyers do not "purchase the security from" a software designer. *Id.* Even if Arthur Breitman and the DLS Defendants provided such services, they did not *sell* Plaintiff any securities.

### 2. The DLS Defendants did not "successfully solicit" Plaintiff's alleged purchase of Tezos Tokens

Section 12 liability may also attach to someone who "successfully solicit[s] [a] purchase." *Pinter*, 486 U.S. at 647. But, to the extent that Plaintiff intends to argue that the DLS Defendants qualify as solicitors, his allegations are deficient in two crucial respects. *First*, Plaintiff has not alleged that the DLS Defendants *successfully* solicited any "purchase." He has not alleged that he— or any other putative class members—participated in the fundraiser because of the DLS Defendants' statements. *Second*, he has not alleged that the DLS Defendants' statements constituted solicitation in the first place. Each of the remarks cited by Plaintiff in the Complaint simply demonstrate that the DLS Defendants provided interested parties with information about the Tezos protocol and fundraiser. That is not solicitation.

Plaintiff has failed to allege that any of the DLS Defendants caused him to participate in the fundraiser. "The 'purchase from' requirement . . . focuses on the defendant's relationship with the plaintiff-purchaser." *Pinter*, 486 U.S. at 651. To establish the requisite relationship, Plaintiff must allege "not only that [the DLS Defendants] actively solicited [contributors], *but that [P]laintiff purchased the [tokens] as a result of [the DLS Defendants'] solicitation.*" *Steed Finance*, 2001 WL 1111508, at *7 (emphasis added). There are no such allegations here. The Complaint does not even allege that Plaintiff (or any other class member) *read* the DLS Defendants' statements about the fundraiser. It certainly does not allege that Plaintiff contributed to the fundraiser *because of* those statements. The absence of such allegations is fatal to Plaintiff's Section 12 claim. *Id.* at *7 (dismissing Section 12 claim because the plaintiff "failed to allege that [it] in fact purchased the Certificates as a result of NACC's solicitation").[7]

---

[7] *See also, e.g.*, *Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing Section 12 claim because the plaintiff did not allege that "he purchased securities as a result of [the defendant's] solicitation"); *In re Xoma Corp. Sec. Litig.*, No. C-91-2252, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991) (dismissing Section 12 claim because the plaintiffs "do not allege that any particular defendants solicited *any particular plaintiff*, and that is what [Section 12] requires") (emphasis in original); *Jackson v. First Fed. Sav. of Ark., F.A.*, 709 F. Supp. 863, 884 (E.D. Ark. 1988) (dismissing Section 12 claim because "Plaintiff Gitlin does not

In addition, Plaintiff has not identified any acts of solicitation.  Only "persons who urge[] the buyer to purchase" securities qualify as solicitors.  *Pinter*, 486 U.S. at 644, 655.  "[M]ere participa[nts] in unlawful sales transactions" do not.  *See id.* at 650, 655.  And individuals who provide investors with information—or participate in informational events—are simply participants in a transaction.  *Cf. Vanguard Specialized Funds v. VEREIT Inc.*, No. CV-15-02157, 2016 WL 5858735, at *17 (D. Az. Oct. 3, 2016) (holding that allegations that defendants made statements describing a merger as a "win-win" and a good "fit" in conference calls and press releases were insufficient to establish solicitation); *Fouad*, 2008 WL 5412397, at *7 (participation in "road shows" promoting an IPO "does not constitute active solicitation under *Pinter*"); *Brody v. Homestore, Inc.*, No. CV02-08068, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (allegations that defendants "presented highly favorable information about the Company" insufficient to establish solicitation).  Consequently, a plaintiff cannot use statements that provide investors with information to hold defendants liable under Section 12.

But that is exactly what Plaintiff attempts to do here.  Setting aside Plaintiff's conclusory allegations,[8] the Complaint only shows that Kathleen and Arthur Breitman worked to educate potential donors.  Specifically, Plaintiff relies on Reddit posts where Kathleen and Arthur Breitman: (1) explained the benefits of an uncapped fundraiser (Compl. ¶ 51), (2) explained how the fundraiser worked (Compl. ¶¶ 52, 57-58), and (3) responded to questions regarding the mailing address provided by the Tezos website (Compl. ¶ 53).  Each of these allegations show that Kathleen and Arthur Breitman explained certain details of the fundraiser to interested parties.  They did not go beyond that—they did not seek any contributions.  As a result, these statements do not show that Kathleen and Arthur Breitman "urged" anyone to participate in the fundraiser.

---

allege that any of the defendants either sold *him* his shares or solicited *him* to buy his shares") (emphasis in original); *cf. Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302, 2011 WL 4389689, at *10 (C.D. Cal. May 5, 2011) ("Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs.").

[8] For example, the allegations that the DLS Defendants "tout[ed] the Tezos ICO" (Compl. ¶ 50) are conclusory and must be rejected. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("[W]e do not, however, accept as true allegations that are conclusory.").

1    Kathleen and Arthur Breitman's statements about the Tezos blockchain technology likewise

2    do not qualify as solicitation.  Plaintiff repeatedly notes that Kathleen and Arthur Breitman were

3    responsible for "promoting the protocol" and that they had been "evangelizing about the

4    technology." (Compl. ¶¶ 54, 110.)  But the underlying technology and the fundraiser are two

5    different things.  Explaining how the Tezos protocol worked (and the differences in Tezos'

6    approach) does not amount to a solicitation for contributions or participation in the fundraiser, and

7    none of the statements identified in the Complaint suggests that Kathleen or Arthur Breitman urged

8    anyone to participate in the fundraiser.  Such allegations do not show that Kathleen and Arthur

9    Breitman suggested that anyone should participate in the fundraiser.  Indeed, there are *no* allegations

10   connecting Kathleen and Arthur's statements explaining the Tezos technology to participation in the

11   fundraiser.  Without such allegations, Plaintiff cannot state a Section 12 claim against the DLS

12   Defendants.  *Cf. Vanguard*, 2016 WL 5858735, at *17; *Fouad*, 2008 WL 5412397, at *7; *Brody*,

13   2003 WL 22127108, at *5.

14          **C.      Kathleen and Arthur Breitman did not Control the Tezos Foundation**

15   Plaintiff also fails to plead a "control person" claim against Kathleen and Arthur Breitman

16   under Section 15(a) of the Securities Act (15 U.S.C. § 77o(a)).  To state a Section 15(a) claim,

17   Plaintiff must allege "(1) a primary violation of federal securities laws and (2) that the [Breitmans]

18   exercised actual power or control over the primary violator," *i.e.*, the Foundation.[9]   *Howard v.*

19   *Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).[10]   The second element requires Plaintiff to

20   demonstrate that Kathleen and Arthur Breitman had "the power to dictate [the Tezos Foundation's]

21   conduct or operations" and that they *actually controlled* the underlying violation of the securities

22   laws.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000); *In re Am.*

23

24

---

25   [9] Plaintiff also alleges that Kathleen and Arthur Breitman violated Section 15(a) by controlling DLS.
     That claim must be dismissed because Plaintiff has not alleged a primary violation on the part of

26   DLS.  *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1139 (S.D. Cal. 2012) ("For 'control
     person' liability to attach . . . there must be an underlying primary violation.").

27   [10] *Howard*'s interpretation of the analogous control person provision of the Securities Exchange Act
     of 1934, Section 20(a), applies equally here, because Section 15(a) and Section 20(a) are "given the

28   same interpretation."  *Durham v. Kelly*, 810 F.2d 1500, 1503 (9th Cir. 1987).

*Apparel, Inc. S'holder Litig.*, No. CV-10-06352, 2013 WL 10914316, at *33 (C.D. Cal. Aug. 8, 2013).

Plaintiff has not done so here.  His allegations concerning the DLS Defendants' relationship with the Foundation generally fall into two categories: (1) allegations that Kathleen and Arthur Breitman "advise[d] the Foundation closely," and (2) allegations that Kathleen and Arthur Breitman, through DLS "control[] the Tezos Foundation website."  (*See, e.g.*, Compl. ¶ 48.)  But neither of those allegations show that Kathleen and Arthur Breitman had any authority over the Foundation.  Advice is not authority, and control over the Foundation's website does not translate into control over corporate decision-making.  *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing control person claim where the plaintiff failed to allege how a defendant was able to exercise control over his peers or supervisors).  Moreover, those allegations certainly do not demonstrate that Kathleen and Arthur Breitman had any control over the Foundation's decision to conduct the fundraiser *without filing a registration statement*.  *Am. Apparel*, 2013 WL 10914316, at *3 (dismissing control person claim because plaintiff failed to allege that defendant exercised control over the primary defendant's immigration compliance, which was the subject of the alleged securities violation).  Consequently, Plaintiff's Section 15(a) claims must be dismissed as well.

## IV.  CONCLUSION

For the foregoing reasons, the DLS Defendants respectfully request that the Court grant their Motion and dismiss the Complaint with prejudice.

1

2 Dated:  May 15, 2018                                    **BAKER MARQUART LLP**

3

4                                                                 */s/ Brian E. Klein*

5                                                            Brian E. Klein (258486)

6                                                Attorneys for Defendants DYNAMIC LEDGER
                                                 SOLUTIONS, INC., KATHLEEN
7                                                BREITMAN, and ARTHUR BREITMAN

8                                                **COOLEY LLP**

9

10                                                               */s/ Patrick E. Gibbs*

11                                                          Patrick E. Gibbs (183174)

12                                               Attorneys for Defendant
                                                 DYNAMIC LEDGER SOLUTIONS, INC.,
13

14

15

16

17                                 **FILER'S ATTESTATION**

18       Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, Patrick E. Gibbs hereby attests

19 that concurrence in the filing of this document has been obtained from all the signatories above.

20 Dated:  May 15, 2018                           **COOLEY LLP**

21

22                                                               */s/ Patrick E. Gibbs*

23                                                             Patrick E. Gibbs

24

25

26

27

28