**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No.  17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS** |
| ALL ACTIONS. | |
| | Date:      July 19, 2018 |
| | Time:      1:30 p.m. |
| | Crtrm:    3 |
| | Judge:    Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ......................................................................................... vii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................2

I.     PERSONAL JURISDICTION.......................................................................................2

     A.     Applicable Legal Standards ...............................................................................2

     B.     The Tezos Foundation Availed Itself Of The Privilege Of Conducting Activities In The U.S. And Directed Its Activities At The U.S...................................3

     C.     The Claims Asserted In This Action Arise Out Of And Relate To The Tezos Foundation's Contacts ......................................................................................7

     D.     Defendant's Arguments Under The First Two Prongs Are Meritless .........................7

     E.     Defendant Cannot Establish A "Compelling" Case To Decline Jurisdiction.............10

     F.     Lead Plaintiff Has Made A "Colorable Showing" Of Personal Jurisdiction.............13

II.     FORUM NON CONVENIENS ....................................................................................13

     A.     Applicable Legal Standards .............................................................................13

     B.     The Purported Forum Selection Clause Is Inapplicable ............................................14

     C.     The Private Factors Do Not Favor Dismissal ............................................................18

     D.     The Public Factors Do Not Favor Dismissal .............................................................20

III.     THE SECURITIES ACT APPLIES TO THE TEZOS ICO UNDER *MORRISON* ...............20

CONCLUSION.....................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page No(s).**

### CASES

*188 LLC v. Trinity Indus. Inc.*,
  300 F.3d 730 (7th Cir. 2002) ........................................................ 14

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ............................................... 20, 21, 23, 25

*Advanced Skin & Hair, Inc. v. Bancroft*,
  858 F. Supp. 2d 1084 (C.D. Cal. 2012) ........................................... 5

*Advanced Targeting Sys. v. Advanced Pain Remedies, Inc.*,
  No. 3:12-CV-2915-JM (WMC), 2013 U.S. Dist. LEXIS 77779 (S.D. Cal. June 3, 2013) .......... 13

*Allstar Mktg. Group, LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........................................... 5

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
  No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472 (S.D.N.Y. Nov. 18, 2014) ................. 23

*Amtower v. Photon Dynamics, Inc.*,
  158 Cal. App. 4th 1582 (2008) ...................................................... 16

*Aqua Connect, Inc. v. Code Rebel, LLC*,
  No. 11-5764-RSWL (MANx), 2011 U.S. Dist. LEXIS 110092 (C.D. Cal. Sept. 26, 2011) .......... 5

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
  2 F. Supp. 3d 550 (S.D.N.Y. 2014) ................................................ 23

*Azarello v. Navagility, LLC*,
  No. C-08-2371 MMC, 2008 WL 4614667 (N.D. Cal. Oct. 16, 2008) .......................... 9

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) ................................................. 11, 12

*Binder v. Aetna Life Ins. Co.*,
  75 Cal. App. 4th 832 (1999) ........................................................ 16

*Cascade Fund LLLP v. Absolute Capital Mgmt. Holdings Ltd.*,
  No. 08-cv-01381-MSK-CBS, 2011 U.S. Dist. LEXIS 34748 (D. Colo. Mar. 31, 2011) ............. 25

*Chan v. Drexel Burnham Lambert, Inc.*,
  178 Cal. App. 3d 632 (1986) ...................................................... 14

*City of Almaty v. Khrapunov*,
  685 F. App'x 634 (9th Cir. 2017) ......................................... 13, 14, 20

ii

*Cloud v. Ness*,
  No. 2:14-cv-02308-TLN-AC, 2015 WL 7271760 (E.D. Cal. Nov. 18, 2015) ............................... 9

*Cornell & Co. v. Home Ins. Cos.*,
  No. 94-5118, 1995 U.S. Dist. LEXIS 1265 (E.D. Pa. Feb. 6, 1995) ............................................. 8

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*,
  No. CV 10-8736 PSG (JCx), 2011 U.S. Dist. LEXIS 73376 (C.D. Cal. July 1, 2011) ................ 13

*Cybersell, Inc. v. Cybersell, Inc.*,
  130 F.3d 414 (9th Cir. 1997) ................................................................................................... 4, 5

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ..................................................................................................... 13

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) .......................................................................................... 9

*Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*,
  828 F.2d 1439 (9th Cir. 1987) ..................................................................................................... 12

*Friedman v. Guthy-Renker LLC*,
  No. 14-cv-6009, 2015 U.S. Dist. LEXIS 24307 (C.D. Cal. Feb. 27, 2015) ................................ 17

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1985), *cert. denied*, 105 S. Ct. 2143 (1985) .......................................... 12

*Grand River Enters. Six Nations v. VMR Prods. LLC*,
  No. 13-cv-104-wmc, 2013 U.S. Dist. LEXIS 167601 (W.D. Wis. Nov. 26, 2013) ..................... 4

*Gray & Co. v. Firstenberg Mach. Co., Inc.*,
  913 F.2d 758 (9th Cir. 1990) ......................................................................................................... 9

*Grooms v. Legge*,
  No. 09cv489-IEG-POR, 2009 U.S. Dist. LEXIS 43526 (S.D. Cal. May 22, 2009) ...................... 7

*Hernandez v. City of Beaumont*,
  No. EDCV 13-00967 DDP (DTBx), 2014 U.S. Dist. LEXIS 169662 (C.D. Cal. Dec. 8, 2014) .... 7

*Imageline, Inc. v. Mintskovsky*,
  No. CV 09-01869 SJO (JCx), 2009 U.S. Dist. LEXIS 137950 (C.D. Cal. June 16, 2009) ....... 5, 12

*In re Alcon Shareholder Litig.*,
  719 F. Supp. 2d 263 (S.D.N.Y. 2010) ........................................................................................ 19

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (C.D. Cal. 2016) ...................................................................................... 15

*In re LDK Solar Secs. Litig.*,
  No. 07-5182 (WHA), 2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sep. 24, 2008) ......................... 4

iii

*In re Petrobas Sec. Litig.*,
862 F.3d 250 (2d Cir. 2017) ................................................................................ 21

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013) ................................................................... 25

*j2 Global Commc'ns., Inc. v. Vitelity Commc'ns.*,
No. CV 11-07904 DDP (Ex), LLC, 2012 U.S. Dist. LEXIS 51793 (C.D. Cal. Apr. 12, 2012).... 13

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) ............................................................................... 7

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ................................................................................ 23

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ........................................................................ 14, 18

*Magnum Def., Inc. v. Frontier Ins. Co.*,
37 Fed. App'x 903 (9th Cir. 2002) ....................................................................... 15

*Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*,
No. 15-CV-02504-AJB-BGS, 2016 U.S. Dist. LEXIS 76157 (S.D. Cal. Mar. 11, 2016) ........... 13

*Mencanin v. Fat Head's Bales to Hoppy Ales, LLC*,
No. SACV 14-1718 AG(RNBx), 2015 WL 12743686 (C.D. Cal. Mar. 16, 2015) ........................ 9

*Metter v. Uber Techns., Inc.*,
No. 16-cv-6652, 2017 U.S. Dist. LEXIS 58481 (N.D. Cal. Apr. 17, 2017)............................ 17

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ............................................................................................. 20

*Mvp Asset Mgmt. (USA) LLC v. Vestbirk*,
No. 2:10-cv-02483-GEB-CKD, 2013 U.S. Dist. LEXIS 40715 (E.D. Cal. Mar. 22, 2013) ......... 25

*Myun-Uk Choi v. Tower Research Capital LLC*,
No. 17-648-cv, 2018 U.S. App. LEXIS 12122 (2d Cir. Mar. 29, 2018) ................................ 22

*Nebenzahl v. Credit Suisse*,
705 F.2d 1139 (9th Cir. 1983) ........................................................................ 14, 18

*Neelon v. Bharti*,
596 F. App'x 532 (9th Cir. 2014) ......................................................................... 18

*Nghiem v. Dick's Sporting Goods, Inc.*,
No. 16-cv-97, 2016 U.S. Dist. LEXIS 89429 (C.D. Cal. July 5, 2016) ............................... 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ...................................................................... 15, 17

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ........................................................................... 11

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
   753 F. Supp. 2d 166 (S.D.N.Y. 2010) ............................................................... 25

*Pope Invs. II, LLC v Deheng Law Firm*,
   No. 10 Civ. 6608 (LLS), 2013 U.S. Dist LEXIS 108114 (S.D.N.Y. July 31, 2013) ............. 22, 24

*Rodman v. Safeway Inc.*,
   No. 11-cv-3003, 2015 U.S. Dist. LEXIS 17523 (N.D. Cal. Feb. 12, 2015) .................. 16

*Rosen v. Masterpiece Mktg. Grp., LLC.*,
   No. 15-06629-SJO (ASx), 2015 U.S. Dist. LEXIS 191659 (C.D. Cal. Dec. 23, 2015) .............. 6

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ............................................................................ 23

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ....................................................................... 3, 11

*SEC v. Benger*,
   No. 09 C 676, 2013 U.S. Dist. LEXIS 21539 (N.D. Ill. Feb. 15, 2013) ...................... 25

*SEC v. Geranio*,
   No. CV 12-04257 (DMG), 2013 U.S. Dist. LEXIS 201820 (C.D. Cal. Jan. 29, 2013) ........... 21

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ........................................................................... 3

*Sec. Inv. Protection Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ........................................................................... 3

*Segal v. Bitar*,
   No. 11-4521 (LBS), 2012 U.S. Dist. LEXIS 10812 (S.D.N.Y. Jan. 30, 2012) ................ 6

*Shaw v. Regents of Univ. of California*,
   58 Cal. App. 4th 44 (1997) ............................................................................ 14

*Shute v. Carnival Cruise Lines*,
   897 F.2d 377 (9th Cir. 1990) ............................................................................ 6

*St. Paul Mercury Ins. Co. v Am. Safety Indem. Co.*,
   No. 12-CV-05952-LHK, 2014 U.S. Dist. LEXIS 70785 (N.D. Cal. May 21, 2014) .............. 16

*Stomp, Inc. v. Neato*,
   61 F. Supp. 2d 1074 (C.D. Cal. 1999) ............................................................ 5, 7

*Tomar Elecs., Inc. v. Whelen Techs., Inc.*,
   819 F. Supp. 871 (D. Ariz. 1992) ...................................................................... 6

v

*Van Tassell v. United Mktg Grp., LLC*,
    795 F. Supp. 2d 770 (N.D. Ill. 2011) ........................................................................... 14

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*,
    No. C 12-02912-SI, 2012 U.S. Dist. LEXIS 144088 (N.D. Cal. Oct. 4, 2012) ........................... 4, 9

*Wash. v. www.dirtcheapcig.com, Inc.*,
    260 F. Supp. 2d 1048 (W.D. Wash. 2003) ........................................................................... 5

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) (*en banc*) ........................................................... 3, 7, 10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ........................................................................... 4, 5, 8

## STATUTES

15 U.S.C. § 77n ........................................................................................................... 25

15 U.S.C. § 77v(a) ........................................................................................................... 3

## RULES

Fed. R. Civ. P. 4(k)(1)(C) ........................................................................................................... 2

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
| --- | --- |
| "¶ [No.]" | Paragraph references to Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "Bitcoin Suisse" | Defendant Bitcoin Suisse AG |
| "Bitcoin Suisse Br." | Defendant Bitcoin Suisse AG's Motion to Dismiss the Consolidated Complaint, Dkt. No. 126 |
| "Breitmans" | Defendants Arthur and Kathleen Breitman |
| "Class" | All persons and entities who, directly or indirectly through an intermediary, contributed Bitcoin and/or Ethereum to the Tezos ICO, excluding Defendants and anyone affiliated with any Defendant. |
| "Complaint" | Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "DLS" | Defendant Dynamic Ledger Solutions, Inc. |
| "DLS Br." | DLS Defendants' Motion to Dismiss the Consolidated Complaint, Dkt. No. 123 |
| "DLS Defendants" | Defendants DLS and the Breitmans |
| "Draper" | Defendant Timothy C. Draper |
| "Draper Associates Crypto" | Defendant Draper Associates V Crypto LLC |
| "Draper Br." | Draper Defendants' Motion to Dismiss the Consolidated Complaint, Dkt. No. 117 |
| "Draper Defendants" | Defendants Draper and Draper Associates Crypto |
| "Gehring Decl." | Declaration of Andrew S. Gehring in Support of Tezos Stiftung's Motion to Dismiss the Consolidated Complaint, Dkt. No. 122 |
| "Securities Act" | Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* |
| "Ta Decl." | Declaration of Hung G. Ta in Opposition to Defendants' Motion to Dismiss |
| "Tezos Br." | Defendant Tezos Stiftung's Motion to Dismiss the Consolidated Complaint, Dkt. No. 119 |
| "Tezos Foundation" or "Foundation" | Defendant Tezos Stiftung |
| "Tezos ICO" | Tezos Initial Coin Offering conducted in July 2017 |
| "XTZ" or "tezzies" | Tezos tokens |

## **PRELIMINARY STATEMENT**

Over a period of two weeks in July 2017, Defendants conducted an initial coin offering (the "Tezos ICO") that raised the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices). The Tezos ICO was in all material respects an illegal, unregistered offering of securities by a U.S. enterprise directed at citizens of the U.S.  The U.S. enterprise was Defendant DLS, which was established by the Breitmans in 2015 and owned all the intellectual property and other assets constituting the Tezos project.  The securities were the Tezos "tokens" being offered for sale. However, instead of DLS *directly* offering the Tezos tokens (*i.e.*, the securities) to investors, as in a typical ICO, the Tezos ICO was structured so that the Tezos Foundation, a Swiss entity, sold the tokens to investors and collected the monies.  Simultaneously, as part of the Tezos ICO, DLS agreed to sell all its intellectual property and other assets to the Tezos Foundation.  In this manner, through this two-step structure, the Breitmans *indirectly* sold their business – DLS – to investors.

This indirect structure was arranged solely for the purpose of distancing the Tezos ICO from the U.S. and allowing Defendants to avoid the reach of the U.S. securities laws.  However, at all times, the center of gravity of the Tezos ICO was firmly planted in the U.S.

Under the Tezos ICO, the underlying business being offered for sale was DLS, a U.S. (Delaware) entity.  All the marketing for the Tezos ICO was conducted within the U.S.  Specifically, the Breitmans (who are U.S. residents) conducted the marketing of the Tezos ICO on behalf of the Tezos Foundation, and have publicly acknowledged that they limited their marketing activity to the U.S.  To conduct the Tezos ICO, the Tezos Foundation established an interactive website that was hosted on a server in the U.S. to register investors and receive their Bitcoin and Ethereum investments. Through this website, thousands of U.S. investors submitted their investments.  Importantly, despite its present arguments, the Tezos Foundation made no attempt to restrict U.S. investors from participating in the Tezos ICO, a restriction that would have required very simple technical tweaks to implement and in fact has been implemented by numerous other initial coin offerings.

In short, in moving for dismissal, the Tezos Foundation effectively contends that the federal courts of this country may not reach an issuer who conducts a U.S. ICO, of an underlying U.S.

1  business, that was marketed in the U.S., that targeted U.S. investors, and that used a U.S.-hosted

2  website as the front-end platform to interface with and solicit money from thousands of U.S. investors.

3  As discussed in detail below, the Tezos Foundation's specific arguments are baseless.

4       _First_, the Court has specific personal jurisdiction over the Tezos Foundation because it had

5  numerous contacts with the U.S., including making numerous sales to U.S. investors, using an

6  interactive website hosted in the U.S. to interact with and receive investments from investors in the

7  U.S., and conducting extensive marketing activities in the U.S. through the Breitmans.

8       _Second_, Switzerland is not the appropriate forum to hear this lawsuit.  Strong deference must

9  be accorded to Lead Plaintiff's choice of the United States District Court for the Northern District of

10  California.  Five of the seven Defendants reside in the U.S.  The Class's claims arise under the U.S.

11  Securities Act.  Many of the critical witnesses – including the DLS and the Breitmans – are residents

12  of the U.S.  Although Defendant cites the purported "Contribution Terms" and the forum selection

13  clause contained therein, this argument fails at the threshold because these terms were never made a

14  part of the investment process and so were never contractually binding.

15       _Third_, the Securities Act applies to the Tezos ICO because the Tezos sales were U.S. domestic

16  transactions.  Investors incurred irrevocable liability at the point that they transferred their payments

17  to the Tezos Foundation.  Because this transfer was made on a U.S.-hosted website, and because the

18  investments were then validated and irreversibly recorded on the Bitcoin and Ethereum blockchains

19  distributed over numerous computers in the U.S., irrevocable liability was incurred in the U.S.

20       For all of these reasons, Defendant's motion to dismiss should be denied in its entirety.

21  <u>**ARGUMENT**</u>

22  **I.    PERSONAL JURISDICTION**

23       **A.    Applicable Legal Standards**

24       Fed. R. Civ. P. 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service

25  establishes personal jurisdiction over a defendant … when authorized by a federal statute."  Because

26  Section 22 of the Securities Act provides for nationwide service of process, it confers personal

27  jurisdiction in any district over U.S. resident defendants, and personal jurisdiction over a non-resident,

28

---

2

foreign defendant so long as the defendant has minimum contacts with the United States as a whole (and not just any particular state).[1]  *See SEC v. Ross*, 504 F.3d 1130, 1139-40 (9th Cir. 2007); *Sec. Inv. Protection Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).

Personal jurisdiction may be "general" or "specific."  In the Ninth Circuit, for specific personal jurisdiction, there is a three-part test to establish "minimum contacts":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1205-1206 (9th Cir. 2006) (*en banc*).  The plaintiff bears the burden of establishing the first two prongs, upon which the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

Finally, where a motion to dismiss for lack of personal jurisdiction is made without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts using its pleadings and affidavits.  *Id.* at 800 (citations omitted).  "[U]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.*

**B.   The Tezos Foundation Availed Itself Of The Privilege Of Conducting Activities In The U.S. And Directed Its Activities At The U.S.**

The first prong of the minimum contacts test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo!*, 433 F.3d at 1206.  Here, the Tezos Foundation had numerous contacts

---

[1] Section 22 provides that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."  15 U.S.C. § 77v(a).

1   by which it availed itself of doing business in the United States.

2      First, the Tezos Foundation sold Tezos tokens to numerous investors located in the U.S.,

3   thereby accessing the U.S. capital markets.   ¶ 17.[2]   This alone is sufficient to confer personal

4   jurisdiction.  *In re LDK Solar Secs. Litig.*, No. 07-5182 (WHA), 2008 U.S. Dist. LEXIS 80717, *15-

5   16 (N.D. Cal. Sep. 24, 2008) (specific personal jurisdiction found where defendants sold shares on

6   the New York Stock Exchange, because "Defendants purposefully availed themselves of the forum

7   by taking advantage of this nation's laws and its capital markets"); *Vanity.com, Inc. v. Vanity Shop of

8   Grand Forks, Inc.*, No. C 12-02912-SI, 2012 U.S. Dist. LEXIS 144088, *10-11 (N.D. Cal. Oct. 4,

9   2012) (finding specific personal jurisdiction based on defendant's sales to California, which totaled

10  approximately 0.02% of total sales, because "while [they] may be small, it cannot be said that they

11  are not purposefully directed at California."); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp.

12  1119, 1127 (W.D. Pa. 1997) (finding specific personal jurisdiction because defendant conducted

13  business with Pennsylvania residents through its website, even though "only two percent of its

14  subscribers are Pennsylvania residents").[3]

15     Second, the Tezos Foundation operated an interactive website – the tezos.com domain and its

16  sub-domain, https://crowdfund.tezos.com – that was hosted on a U.S. server located in Phoenix,

17  Arizona. ¶ 19.  At the Foundation's direction, U.S. investors accessed this website when they made

18  their investments in the Tezos ICO.  *Id*.  The Ninth Circuit has endorsed the "sliding scale" approach

19  set forth in *Zippo* to determine whether the operation of a website supports the exercise of personal

20  jurisdiction.  *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997).  Under the

21  "sliding scale" approach, "the likelihood that personal jurisdiction can be constitutionally exercised

22  is directly proportionate to the nature and quality of commercial activity that an entity conducts over

23

24  [2] The Tezos Foundation does not dispute that numerous sales were made to U.S. investors.  As the
25  Court is aware, a number of U.S. lead plaintiff movants invested in Tezos.  Dkt. Nos. 39, 49, 53.

26  [3] *See also Grand River Enters. Six Nations v. VMR Prods. LLC*, No. 13-cv-104-wmc, 2013 U.S. Dist.
    LEXIS 167601 (W.D. Wis. Nov. 26, 2013) (specific personal jurisdiction where defendant VMR
27  made 38 internet sales which were shipped to 23 different customers in Wisconsin, and thus
    "purposefully targeted and exploited the Wisconsin marketplace by engaging in a pattern of repeated
28  commercial sales with customers in this state").

4

the internet." *Id.* at 419 (citing *Zippo*).  An *interactive* website through which "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files" will establish personal jurisdiction.  *Zippo*, 952 F. Supp. at 1124.[4]

Here, in accordance with *Zippo*, specific personal jurisdiction is established because the Tezos Foundation maintained an interactive website and used it to make numerous sales of Tezos tokens in the U.S.  *See Stomp, Inc. v. Neato*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (holding that, "[b]y maintaining a commercial website through which it markets and sells its goods, NeatO has reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum."); *Imageline*, 2009 U.S. Dist. LEXIS 137950, at *9 (finding purposeful availment where the "evidence presently before the Court suggests that CD Earth, through its Web site, has conducted a substantial amount of commercial activity in California, having 'offered for sale and sold its products to California citizens via the Internet.'"); *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1122 (C.D. Cal. 2009) (collecting cases, and finding that "the [defendants] have purposefully availed themselves of the benefits of doing business in this district" because they operated "a highly commercial website" that made "regular sales of allegedly infringing products [ ] to customers in this state"); *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1090 (C.D. Cal. 2012) (finding specific jurisdiction where "Defendant runs an interactive website" "through which sales of allegedly infringing products [were] made to customers in California").[5]

---

[4] *See also Imageline, Inc. v. Mintskovsky*, No. CV 09-01869 SJO (JCx), 2009 U.S. Dist. LEXIS 137950, at *6 (C.D. Cal. June 16, 2009) ("the strongest case for exercising personal jurisdiction over nonresident defendants who operate Web sites exists where the defendant clearly does business over the Internet, entering into contracts with residents of a foreign jurisdiction") (citing *Zippo*) (internal quotations omitted).

[5] *See also Aqua Connect, Inc. v. Code Rebel, LLC*, No. 11-5764-RSWL (MANx), 2011 U.S. Dist. LEXIS 110092, at *14 (C.D. Cal. Sept. 26, 2011) (purposeful availment where the defendant was "operating a highly commercial website through which regular sales of allegedly infringing software are made to customers in this state"); *Wash. v. www.dirtcheapcig.com, Inc.,* 260 F. Supp. 2d 1048, 1052 (W.D. Wash. 2003) (stating "it is well settled that a non-resident's maintenance of an interactive website through which consumers may purchase goods or services is sufficient to meet [the] element [of purposeful availment]" and finding that "Dirtcheap's sale of cigarettes to Washington residents through its interactive website constitutes purposeful availment") (citing *Stomp*).  In addition, the Tezos Foundation hosted its interactive website on a server in the U.S.  *See Rosen v. Masterpiece Mktg. Grp., LLC*., No. 15-06629-SJO (ASx), 2015 U.S. Dist. LEXIS 191659, at *28 (C.D. Cal. Dec.

5

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1    District courts in other circuits have adopted the same position.  In *Segal v. Bitar*, No. 11-

2  4521 (LBS), 2012 U.S. Dist. LEXIS 10812 (S.D.N.Y. Jan. 30, 2012), the district court found that it

3  had specific personal jurisdiction over various corporate defendants who operated and maintained the

4  gambling website, fulltiltpoker.com, because the website "allowed New York residents to purchase

5  the company's services while in the state; it also allowed them to consume those services while sitting

6  in their New York residences." *Id.* at *13.  Applying New York's long-arm statute (N.Y. C.P.L.R.

7  §302(a)(1)), the court held that the defendants "purposefully avail[ed] themselves of the privilege of

8  conducting business in a state when they operate a website that 'projects itself' into New York by

9  dynamically interacting with New York users." *Id.* at *12-13.  Here, the functionality and purpose of

10  the Tezos website was materially indistinguishable from the fulltiltpoker.com gambling website.

11    Third, the Tezos Foundation conducted extensive marketing centered in the U.S. through DLS

12  and the Breitmans, who solicited investments on behalf of the Tezos Foundation in the U.S.  ¶¶ 49-

13  58, 54 (Kathleen Breitman stating her hope that the Tezos Foundation would take over marketing

14  responsibilities "after the sale"), 110 (Kathleen Breitman admitting that "[w]e didn't do much

15  marketing outside of the U.S. … [W]e talk about the technology in mainstream U.S. press outlets");

16  *see further* Memorandum of Points and Authorities in Opposition to the DLS Defendants' Motion to

17  Dismiss, Section II (incorporated herein by reference).  "Where a non-resident defendant solicits

18  business in the forum state, if those activities result in the transaction of business, the defendant has

19  purposeful[ly] availed himself in the forum state." *Tomar Elecs., Inc. v. Whelen Techs., Inc.*, 819 F.

20  Supp. 871, 875 (D. Ariz. 1992) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.

21  1990)).

22    Fourth, in connection with its ICO, the Tezos Foundation employed at least one employee in

23  the U.S., Ross Kenyon, as a "community manager" and/or a spokesperson for the Tezos Foundation.

24  ¶ 18.  Mr. Kenyon created an instructional video instructing investors how to acquire Tezos tokens,

25  and communicated with the press.  *Id.  See Hernandez v. City of Beaumont*, No. EDCV 13-00967

26  _____

27  23, 2015) (finding specific personal jurisdiction where "[defendant] MMG contacted individuals and
companies in California, utilized web pages and servers hosted in California, solicited advertisements
28  from California companies, and sought out product and customer bases of California residents").

DDP (DTBx), 2014 U.S. Dist. LEXIS 169662, at *13-15 (C.D. Cal. Dec. 8, 2014) (finding purposeful availment where the Vice President of international sales of the Swiss defendant, Piexon, attended a single trade show in California and took the "affirmative step" of training one person, a California resident, on how to use a device sold by Piexon); *Grooms v. Legge*, No. 09cv489-IEG-POR, 2009 U.S. Dist. LEXIS 43526, at *9-10 (S.D. Cal. May 22, 2009) (finding purposeful direction where defendant "hired defendant Artillery Distribution, at the time a San Diego resident, to design the allegedly infringing mark. Further, [defendant's] sales representatives sold merchandise at the ASR trade show.").

### C. The Claims Asserted In This Action Arise Out Of And Relate To The Tezos Foundation's Contacts

In addition to purposeful availment, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Yahoo!*, 433 F.3d at 1205-6. "In a specific jurisdiction inquiry, [the Ninth Circuit] consider[s] the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Id.* at 1210. Thus, even a "a single forum state contact can support jurisdiction if 'the cause of action . . . arise[s] out of that particular purposeful contact of the defendant with the forum state.'" *Id.* (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

Here, the second prong is easily satisfied. The numerous contacts between the Tezos Foundation and the U.S. (including an interactive website used to solicit and receive investments) all directly led to the Class's Securities Act claims for the sale of unregistered securities. *See Stomp*, 61 F. Supp. 2d at 1077 ("[t]here is little question in the present case that the alleged contacts, [Defendants'] Internet sales of [infringing products], is closely related to the present action.").

### D. Defendant's Arguments Under The First Two Prongs Are Meritless

Defendant's arguments under the first and second prongs are without merit.

First, Defendant points to a number of factors to suggest that the Tezos ICO was purportedly "anchored in Switzerland." Tezos Br. at 8-9. Defendant's argument is meritless. For example, the Tezos Foundation's place of incorporation/organization in Switzerland does not bear on the central

1    question of its *contacts* with the U.S.[6]  Defendant contends that development of the Tezos project

2    purportedly occurs in Europe, but the Complaint alleges that DLS, a U.S. entity, owned the

3    intellectual property and other rights underlying the Tezos project and is "the developer of Tezos."

4    ¶¶ 15, 46; *see also* Gehring Decl., Ex. A (Dkt. No. 122-1), Tezos Overview, Sections 3.1 and 3.2.[7]

5    Defendant argues that the Contribution Terms provided for Swiss law and the jurisdiction of Swiss

6    courts, and stated that "the relevant software was located in Europe in Alderney."  Tezos Br. at 9.

7    However, as discussed *infra*, Section II (addressing forum non conveniens), the Contribution Terms

8    were posted on a separate website, tezos.ch, and were not referenced or otherwise incorporated by

9    either tezos.com or crowdfund.tezos.com during the investment process.  ¶ 126.  Furthermore, as

10   discussed *infra*, Section III, Defendant's claim as to the "location" of the "software" would require

11   the Court to accept, at the pleading stage, the *truth* of the assertions in the Contribution Terms.

12       Second, Defendant argues that all it did was receive payments, and that Lead Plaintiff's

13   allegations "amount to little more than that he voluntarily sought out tezos.com and used it to donate

14   money to the Foundation."  Tezos Br. at 9-10.  However, this same argument was rejected in the

15   seminal decision of *Zippo*.  In *Zippo*, the defendant also argued that "it ha[d] not 'actively' solicited

16   business in Pennsylvania and that any business it conducts with Pennsylvania residents has resulted

17   from contacts that were initiated by Pennsylvanians who visited the Defendant's Web site."  952 F.

18   Supp. at 1126.  The *Zippo* court rejected this argument, holding that the defendant "repeatedly and

19   consciously chose to process Pennsylvania residents' applications … presumably in order to profit

20   from those transactions. … ***If [Defendant] had not wanted to be amenable to jurisdiction in***

21   ***Pennsylvania, the solution would have been simple - it could have chosen not to sell its services to***

22   ***Pennsylvania residents***."  *Id*. at 1126-27 (emphasis added).  As previously noted, *Zippo* was endorsed

23

24

---

25   [6] *See, e.g., Cornell & Co. v. Home Ins. Cos.*, No. 94-5118, 1995 U.S. Dist. LEXIS 1265, at *14 (E.D.
     Pa. Feb. 6, 1995) ("for purposes of determining jurisdiction it is irrelevant that plaintiff is incorporated

26   or has its principal place of business in another state since the alleged harm occurred in this forum").

27   [7] The Tezos Foundation argues that it used Bitcoin Suisse as its financial service provider.  Tezos Br.
     at 9.  However, the Complaint alleges that Bitcoin Suisse itself is subject to specific personal

28   jurisdiction because of its contacts with the U.S. ¶ 25.

1 by the Ninth Circuit in *Cybersell*.[8]

2       Here, as in *Zippo*, the Tezos Foundation used an interactive website that received investors'

3 registration details; created a wallet with a unique "secret key" and public key for each investor;

4 provided investors with digital addresses to send their Bitcoin and Ethereum contributions to the

5 Tezos Foundation; and directed investors to a webpage where investors input the amount that they

6 wished to invest. ¶¶ 71-73. At the same time, the Tezos Foundation *instructed* investors in an August

7 10, 2017 notice that the website was being updated and to "stay tuned," and *instructed* investors to

8 access https://check.tezos.com to "make sure your contribution has been properly recorded." ¶ 19.

9 This completely belies Defendant's claims of "unilateral" activity by investors.[9]

10       Third, Defendant argues that the tezos.com website was created in 2014, and therefore likely

11 owned by a Panamanian company, WhoisGuard, Inc. Tezos Br. at 11, Gehring Decl. Ex. C.

12 Defendant deliberately misleads the Court. According to its website (www.whoisguard.com),

13 WhoisGuard, Inc. is merely a third-party service which prevents spammers from harvesting a domain

14

---

15 [8] Unsurprisingly, Defendant's cited cases do not support its "unilateral" argument, because they all

16 involved no websites, entirely passive websites, or virtually no activity in the forum. *See Gray & Co.
v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758 (9th Cir. 1990) (defendant's only contact with the forum

17 was a single contract and sale, telephone conversations with the plaintiff, sending an invoice to the
plaintiff, and receiving payment); *Cloud v. Ness*, No. 2:14-cv-02308-TLN-AC, 2015 WL 7271760,

18 at *5 (E.D. Cal. Nov. 18, 2015) (no specific personal jurisdiction over non-resident church that cashed
check outside forum, because "the receipt and deposit of a check does not subject the recipient to

19 jurisdiction in the state where the payor's bank account is located"); *Azarello v. Navagility, LLC*, No.
C-08-2371 MMC, 2008 WL 4614667 (N.D. Cal. Oct. 16, 2008) (case concerned whether a single

20 contract and a prior email solicitation could establish personal jurisdiction); *Mencanin v. Fat Head's
Bales to Hoppy Ales, LLC*, No. SACV 14-1718 AG(RNBx), 2015 WL 12743686, at *2 (C.D. Cal.

21 Mar. 16, 2015) (there was "no evidence contradicting Defendant's affidavit stating that Defendant
does not own, operate, or do business on the allegedly infringing website" and "Plaintiff does not

22 allege any volume of sales in California, any activity targeting the website to California."); *DFSB
Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 882 (N.D. Cal. 2012) (Report and Recommendation,

23 United States Magistrate Jacqueline Scott Corley) (no sales or other transactions with forum residents

24 apart from receiving registration information from visitors to the website).

25 [9] As a related argument, Defendant appears to argue in a footnote that its website did not *single out*
U.S. residents. Tezos Br. at 10, n. 5. However, this is just a variation of its argument that investors

26 unilaterally sought out tezos.com. While the express targeting of the forum would be a compelling
factor for finding jurisdiction, it is not necessary. *See*, *e.g.*, *Vanity.com*, 2012 U.S. Dist. LEXIS

27 144088 at *10 (finding specific personal jurisdiction even though defendant "does not direct its online

28 advertising at California any more than any other state.").

owner's information "by placing our information in whois … We place our information in public whois so that your information is not available to spammers."  Thus, WhoisGuard, Inc. clearly does not own the website.  Importantly, Defendant does not dispute that the website registration information identifies the Tezos Foundation as the administrator, and Johann Gevers (a board member of the Tezos Foundation at the time of the Tezos ICO) as the administrator contact.  ¶ 19.

Fourth, Defendant attempts to rebut the jurisdictional relevance of Ross Kenyon, arguing that Lead Plaintiff did not specifically rely on Mr. Kenyon's instructional video.  Tezos Br. at 11-12.  But the second prong of the minimum contacts test does not require such a mechanistic relationship between the contacts and the plaintiff's claims.  *See Yahoo!*, 433 F.3d at 1210 (in assessing "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts[,] [a] strong showing on one axis will permit a lesser showing on the other.").  In other words, the court looks to a defendant's contacts *as a whole*.  Here, it is indisputable that the claims based on the illegal Tezos securities offering directly arose from all of the Tezos Foundation's relevant conduct in the U.S. to sell its tokens – including its employment of Mr. Kenyon as a "community manager" and the "spokesperson" of the Tezos Foundation (¶ 18) in the U.S., his creation of an instructional video, and the posting of that video on the tezos.com website.  Defendant's final argument is that Mr. Kenyon was not an "agent" of the Tezos Foundation.  This is preposterous.  The Tezos Foundation *posted Mr. Kenyon's instructional video on the tezos.com website* (*id.*), and never qualified Mr. Kenyon's claim in that video that he was a "community manager."[10]

### E.    Defendant Cannot Establish A "Compelling" Case To Decline Jurisdiction

As their final argument, Defendant contends, under the third prong of the minimum contacts analysis, that the exercise of jurisdiction over the Foundation would be unreasonable.  Tezos Br. at 13-16.  However, because the first two requirements for specific personal jurisdiction are satisfied, there is a "strong presumption" that jurisdiction is reasonable and the defendant has a "heavy burden"

---

[10] Defendant intimates that Mr. Kenyon's interview with a French publication indicates that he might have been out of the country.  Tezos Br. at 12.  But that inference would require the Court to ignore Mr. Kenyon's own Linkedin profile, which indicates he was resident in the U.S. at all relevant times, and to assume (without any evidentiary support) that the interview was conducted in person.

1   to rebut this presumption. *Ballard v. Savage*, 65 F.3d 1495, 1500, 1502 (9th Cir. 1995). Defendant

2   must establish a "compelling" case. *Schwarzenegger*, 374 F.3d at 803. In the Ninth Circuit, courts

3   apply a seven-factor test for reasonableness. *Ballard*, 65 F.3d at 1500-1502.

4        Two factors indisputably weigh in favor of asserting personal jurisdiction, and Defendant has

5   not even addressed them. Lead Plaintiff has an interest in convenient and effective relief in federal

6   court in California, which provides for class-wide relief and discovery procedures unavailable in other

7   jurisdictions. Further, this forum is the most efficient forum for judicial resolution of the dispute

8   because five of the seven Defendants reside in the Northern District of California (specifically,

9   Defendants DLS, Arthur Breitman, Kathleen Breitman, Timothy Draper and Draper Associates

10  Crypto), the Court has the expertise to adjudicate the U.S. securities laws, and the Court is the most

11  familiar with the underlying facts. *See Ballard*, 65 F.3d at 1501-02 (stating that these two factors

12  were "easy" because "the most efficient resolution of this dispute would be in the Southern District

13  [of California], since the court there already is familiar with the facts and procedural history of the

14  litigation. … Also, Ballard could obtain the most effective and convenient relief in California.").

15  With respect to the five remaining factors, at least four favor the exercise of personal jurisdiction.

16       First, the Tezos Foundation contends that it did "not meaningfully interject[ ] itself into the

17  United States," and that its interjection was "de minimis." Tezos Br. at 14. For the reasons stated

18  above, this is baseless. The Tezos Foundation purposefully solicited, promoted and marketed the

19  Tezos ICO within the U.S. and accepted investments from numerous U.S. residents.

20       Second, Defendant claims that defending this lawsuit in this Court would create a substantial

21  burden on the Tezos Foundation. In the first place, the Court cannot consider this argument because

22  the Defendant "has not presented any evidence on the extent of the burden. [The Court] cannot answer

23  the question in the abstract." *Ballard*, 65 F.3d at 1501. In any event, "unless the inconvenience is so

24  great as to constitute a deprivation of due process, it will not overcome clear justifications for the

25  exercise of jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

26  Here, Defendant has not made this showing. Nor can it. The Tezos Foundation collected $232 million

27  from investors in the Tezos ICO, has the financial ability to travel to California and, as the Court

28

noted in *Imageline*, "has already retained local counsel."  2009 U.S. Dist. LEXIS 137950, at *22.
Moreover, "in this era of fax machines and modern transportation, including discount air travel,
requiring [a nonresident defendant] to litigate in California is not constitutionally unreasonable."  *Id.*
at *20-21 (internal quotations and citations omitted).[11]

Third, Defendant argues that "Swiss sovereignty concerns weigh heavily against exercising
personal jurisdiction."  Tezos Br. at 15.  However, the Ninth Circuit has stated that "[a]lthough this
factor is important, … it is by no means controlling."  *Ballard*, 65 F.3d at 1501.  Otherwise, "it would
always prevent suit against a foreign national in a United States court."  *Gates Learjet Corp. v. Jensen*,
743 F.2d 1325, 1333 (9th Cir. 1985), *cert. denied*, 105 S. Ct. 2143 (1985).  Here, Defendant's claims
that it is already subject to Swiss oversight ring especially hollow, because the Swiss Foundation
structure was used by Defendants to avoid regulation.  In a public statement, Defendant Kathleen
Breitman admitted that they decided to use a foundation in Zug, Switzerland to conduct the Tezos
ICO because they perceived Switzerland's regulatory oversight to be weaker than that of the United
States, stating that Switzerland has "a regulatory authority that had a sufficient amount of oversight
but not like anything too crazy."  Ta Decl. Ex. A.

Fourth, this forum undoubtedly has an interest in adjudicating this dispute.  As Judge Alsup
stated in *LDK Solar*, the forum's interest arises because "the integrity of this nation's securities
markets would be undermined if foreign corporations and executives could fleece those capital
markets while standing just beyond the water's edge."  2008 U.S. Dist. LEXIS 80717, at *21.
Although Defendant contends that the United States' interest must "give way" because it was Plaintiff
who "inject[ed] himself into European affairs" (Tezos Br. at 15-16), this simply repackages their
argument that investors "voluntarily sought out" the Tezos Foundation, and therefore lacks merit for
the reasons already addressed above.

In sum, nearly all the factors weigh in favor of exercising personal jurisdiction, and Defendant
has failed to make a "compelling" case for declining personal jurisdiction.

---

[11] *See also Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd*., 828 F.2d 1439, 1444 (9th
Cir. 1987) ("the burden of litigating in a foreign forum has become less significant as a result of
advances in communication and transportation.").

**F.     Lead Plaintiff Has Made A "Colorable Showing" Of Personal Jurisdiction**

Even if the Court were to find that Lead Plaintiff has not established a prima facie showing of personal jurisdiction, Lead Plaintiff has at the very least made a "colorable showing," such as to warrant jurisdictional discovery.  Courts "may permit discovery to aid in determining whether it has in personam jurisdiction."  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc*., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).  "This 'colorable' showing should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant."  *Maple Leaf Adventures Corp. v. Jet Tern Marine Co*., No. 15-CV-02504-AJB-BGS, 2016 U.S. Dist. LEXIS 76157, at *27-28 (S.D. Cal. Mar. 11, 2016) (quotation marks omitted).  Applying this liberal standard, many courts in the Ninth Circuit have permitted jurisdictional discovery.[12]

Here, based on the colorable showing, Lead Plaintiff should be permitted limited jurisdictional discovery of the following factual issues: the number of Tezos token sales to investors in the U.S.; the level of interactivity and functionality of the tezos.com website; the location of the "contribution software"; the Tezos Foundation's employment of U.S. individuals, including Ross Kenyon; and the U.S. marketing efforts by DLS and the Breitmans.

## II.     FORUM NON CONVENIENS

### A.     Applicable Legal Standards

The doctrine of forum non conveniens is an "exceptional tool to be employed sparingly."  *City of Almaty v. Khrapunov*, 685 F. App'x 634, 636-37 (9th Cir. 2017).  Great deference is afforded to

---

[12] *See j2 Global Commc'ns., Inc. v. Vitelity Commc'ns.*, No. CV 11-07904 DDP (Ex), LLC, 2012 U.S. Dist. LEXIS 51793, at *9-10 (C.D. Cal. Apr. 12, 2012) (denying defendant's motion to dismiss and granting plaintiff's request for limited jurisdictional discovery, holding that plaintiffs "have made a colorable claim as to jurisdiction and are therefore entitled to this additional discovery"); *Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.,* No. CV 10-8736 PSG (JCx), 2011 U.S. Dist. LEXIS 73376, at *13-14 (C.D. Cal. July 1, 2011) (permitting plaintiffs to conduct discovery consisting of "10 interrogatories or requests for production, and two depositions."); *Advanced Targeting Sys. v. Advanced Pain Remedies, Inc.,* No. 3:12-CV-2915-JM (WMC), 2013 U.S. Dist. LEXIS 77779, at *15-16 (S.D. Cal. June 3, 2013) (denying defendant's motion to dismiss and granting plaintiff jurisdictional discovery where plaintiff made a colorable showing).

1   the plaintiff's choice of forum, such that "a defendant seeking forum non conveniens dismissal must

2   carry an *almost impossible burden* in order to deny a citizen access to the courts of this country."

3   *Nebenzahl v. Credit Suisse*, 705 F.2d 1139, 1140 (9th Cir. 1983) (quotation marks omitted, emphasis

4   added).  To evaluate a motion to dismiss based on forum non conveniens grounds, a court examines

5   whether an adequate alternative forum exists and whether the balance of private and public interest

6   factors favors dismissal.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  A

7   defendant must establish that the public and private interest factors "*strongly outweigh*" the plaintiff's

8   convenience.  *City of Almaty*, 685 F. App'x at 636 (emphasis added).

9       **B.      The Purported Forum Selection Clause Is Inapplicable**

10          Defendant's principal argument is that the forum selection clause that appears in the purported

11  "Contribution Terms" governs, mandating dismissal of this action. This argument is baseless.  Under

12  basic contract law, including California law, "[f]or the terms of another document to be incorporated

13  into the document executed by the parties ***the reference must be clear and unequivocal, the reference***

14  ***must be called to the attention of the other party and he must consent thereto***, and the terms of the

15  incorporated document must be known or easily available to the contracting parties." *Chan v. Drexel*

16  *Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 641 (1986) (quotation marks and citations omitted)

17  (bold emphasis added); *see also Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54

18  (1997).[13]  "The contract need not recite that it 'incorporates' another document, so long as it 'guides

19  the reader to the incorporated document.'"  *Shaw*, 58 Cal. App. 4th at 54.  However, mere "passing

20  references" to the other document are "insufficient as a matter of California law" to incorporate the

21  other document into the main contract. *Magnum Def., Inc. v. Frontier Ins. Co.*, 37 Fed. App'x 903,

22

23  [13] The laws of other jurisdictions are the same.  *See*, *e.g.*, *Van Tassell v. United Mktg Grp., LLC*, 795
24  F. Supp. 2d 770, 793 (N.D. Ill. 2011) (declining to enforce the terms of a purported contract for lack
    of assent because the website "lacks any reference to the existence of the Conditions of Use or that
25  they are binding on all users of the website outside of the Conditions of Use themselves…. [I]n this
    case … users of the [ ] website could complete their purchases without ever having notice that their
26  purchases are subject to the website's Conditions of Use."); *188 LLC v. Trinity Indus. Inc.*, 300 F.3d
    730, 736 (7th Cir. 2002) (under Illinois law, a document is incorporated by reference into a contract
27  only if the parties intended its incorporation, and the incorporation must be clear and specific; the
    intention must be clearly shown on the face of the contract) (citing Illinois cases).

28

904 (9th Cir. 2002). "If the reference is amorphous or fails to guide the reader to the incorporated document, there is no incorporation by reference." *Id.* (citing *Chan*, 178 Cal. App. 3d at 643).

Here, there was simply *no reference* to the Contribution Terms on crowdfund.tezos.com, the interactive website used by investors to make their investments. ¶¶ 71-72. As Defendant concedes, the purported "Contribution Terms" appeared on a wholly separate website – tezos.ch – that an investor did not need to review or even visit before investing in Tezos, and that was not otherwise referenced on crowdfund.tezos.com or tezos.com. ¶¶ 125-26. Thus, there was no clear and unequivocal reference to the Contribution Terms, and no consent to such terms by the investors in the Tezos ICO. As a matter of law, the Contribution Terms are unenforceable.

Defendant argues that the "Contribution Terms" should nevertheless be enforced as part of a binding "browsewrap agreement." Tezos Br. at 17-18. This argument fares no better, because browsewrap agreements are governed by the same general principles stated above. As described by the Ninth Circuit in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014), in a browsewrap agreement, the "website's terms and conditions of use are generally *posted on the website* via a hyperlink at the bottom of the screen" and at a minimum, "*the website will contain a notice* that … the user is agreeing to and is bound by the site's terms of service." (quotation marks and citation omitted) (emphasis added); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (C.D. Cal. 2016) (noting that a browsewrap agreement requires at least a hyperlink notice on the website).[14] "[B]y visiting the website[,] the user agrees to the Terms of Use not listed on the site itself but *available only by clicking a hyperlink*." *Nguyen*, 763 F.3d at 1176 (internal quotation marks omitted) (emphasis added). Here, the Contribution Terms were *not posted on, or otherwise referenced in, the crowdfund.tezos.com or tezos.com websites*, via hyperlink or otherwise. Therefore, the Contribution terms cannot possibly constitute a browsewrap agreement. Indeed, it would be nonsensical for an individual's use of one website to somehow manifest assent to terms in

---

[14] Browsewrap agreements are to be distinguished from "clickwrap" agreements, which "require a user to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen*, 763 F.3d at 1175-76. Because browsewrap agreements require no outward manifestation of assent, courts are traditionally reluctant to enforce them. *Id.* at 1178-79.

a document posted on an entirely different website with a different domain name.

*Rodman v. Safeway Inc.*, No. 11-cv-3003, 2015 U.S. Dist. LEXIS 17523 (N.D. Cal. Feb. 12, 2015), is particularly instructive.  In *Rodman*, the plaintiff brought a claim alleging that Safeway breached an agreement by charging higher prices for its online delivery service than it charged in the stores where the groceries were selected.  *Id.* at *1-2.  Safeway subsequently amended its terms to provide that the prices for its online delivery service could be different than the prices charged in its stores, and then argued that there could be no damages for purchases made after the change in the contractual language.  *Id.* at *9, 26.  The court rejected this argument because "Class Members could have completed all their subsequent purchases … without ever visiting the webpage hosting the revised Special Terms which [the defendant] claims governed the sale and without ever clicking anything on the website that would indicate that they have agreed to those terms."  *Id.* at *34.  The situation here is no different.  Tezos investors completed their investment without ever visiting the tezos.ch website or clicking anything that indicated assent to the purported "Contribution Terms."  Under these circumstances, there was no mutual assent and no contract.  *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999) (mutual assent is the key to contract formation).

Defendant argues next that the Contribution Terms should be enforced because Lead Plaintiff and the Class may have had notice of those purported terms.  However, because the Contribution Terms were not incorporated and therefore unenforceable as a matter of law, it is irrelevant whether Lead Plaintiff or the Class was aware of the Contribution Terms.  "Even if the other party is aware of the extrinsic document, an express incorporation is required."  *St. Paul Mercury Ins. Co. v Am. Safety Indem. Co.*, No. 12-CV-05952-LHK, 2014 U.S. Dist. LEXIS 70785, at *30-31 (N.D. Cal. May 21, 2014).  "To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated."  *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008).  Thus, regardless of whether the Lead Plaintiff or the Class was aware of the Contribution Terms, such terms are not binding because, as a matter of law, they were not clearly and unequivocally incorporated into the Tezos investment process and there was no assent to the terms.

1    Even assuming *arguendo* that the question of investors' "notice" were relevant, Defendant's

2    argument would still fail.  To begin, Defendant offers no evidence to support its bald assertion that

3    Lead Plaintiff had *actual* notice of the purported "Contribution Terms."  Tezos Br. at 18.  As to

4    whether crowdfund.tezos.com put a reasonably prudent user on *inquiry* notice of these terms, it is

5    undisputed that the website neither contained a link nor directed any user to the tezos.ch website or

6    the purported "Contribution Terms," and that investors did not need to access or view the purported

7    "Contribution Terms" when investing in Tezos.  The fact that a link to the purported "Contribution

8    Terms" was displayed on *tezos.ch* is irrelevant to whether *crowdfund.tezos.com* provided the required

9    notice.  Likewise, the content of the *Tezos Foundation's* Twitter account is irrelevant to the notice (or

10   lack thereof) provided by *crowdfund.tezos.com*.  Finally, the Tezos Overview document does not

11   provide any inquiry notice of the Contribution Terms.  In a single sentence buried within paragraphs

12   of text on the tenth page of the 20-page document, the Overview merely states in small font: "(Please

13   refer to the legal document that will be issued by the Foundation for more details.)."  Gehring Decl.,

14   Ex. A, Tezos Overview, Section 4.  This vague statement does not name the "legal document," does

15   not provide any hyperlink to the document, and does not even mention the tezos.ch website.  In fact,

16   the very next sentence directs investors to visit the Foundation's "special website" at

17   crowdfund.tezos.com – which, as discussed above, does not mention the Contribution Terms.

18   Courts have routinely held that notice greater than this was insufficient.  *See Nguyen*, 763 F.3d

19   at 1177 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked

20   away in obscure corners of the website where users are unlikely to see it, courts have refused to

21   enforce the browsewrap agreement."); *Metter v. Uber Techns., Inc.*, No. 16-cv-6652, 2017 U.S. Dist.

22   LEXIS 58481, at *8-9 (N.D. Cal. Apr. 17, 2017) (browsewrap agreement unenforceable where the

23   terms of service on the website was obscured by a popup); *Nghiem v. Dick's Sporting Goods, Inc.*,

24   No. 16-cv-97, 2016 U.S. Dist. LEXIS 89429, at *9 (C.D. Cal. July 5, 2016) (browsewrap agreement

25   unenforceable where the terms of use appeared "in the website footer," and the placement was not

26   conspicuous enough to put consumers on inquiry notice); *Friedman v. Guthy-Renker LLC*, No. 14-

27   cv-6009, 2015 U.S. Dist. LEXIS 24307, at *12-14 (C.D. Cal. Feb. 27, 2015) (browsewrap agreement

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1  unenforceable because the reference to the terms and conditions at the bottom of the screen was

2  confusing, and the hyperlink was "more-or-less buried at the bottom of the screen").

3  **C.   The Private Factors Do Not Favor Dismissal**

4  Despite the inapplicability of the forum selection clause, Defendant argues that this lawsuit

5  should be dismissed under forum non conveniens, based on an assessment of the seven "private

6  interest" factors. *Lueck*, 236 F.3d at 1145. Here, the seven factors weigh against dismissal.

7  ***Residence of the parties and the witnesses and forum's convenience to the litigants.*** The

8  Northern District of California is Lead Plaintiff's choice of forum and the forum most convenient to

9  the witnesses and litigants. Five of the seven defendants reside in the Northern District of California,

10  and all of these five defendants are critical witnesses:

11  - Arthur Breitman, the primary developer behind the Tezos ledger;
12  - Kathleen Breitman, who handles the operational aspects of the Tezos project and was actively involved in promoting the Tezos ICO.
13  - DLS, which owns all the intellectual property in the Tezos project; and
14  - Timothy Draper and Draper Associates Crypto, who hold a substantial interest in DLS and also promoted the Tezos ICO.

15  ¶¶ 15, 20-23. The Foundation does not (and cannot) dispute that the Northern District of California

16  is a more convenient forum for each of these material witnesses.

17  Moreover, Plaintiff is a U.S. citizen, which carries a strong presumption in favor of permitting

18  him access to the courts of this country. *See Nebenzahl*, 705 F.2d at 1140. Furthermore, contrary to

19  Defendant's argument, this district is the correct venue. Section 22 of the Securities Act provides for

20  nationwide personal jurisdiction in all district courts, as well as venue in the Northern District because

21  five of the Defendants are located here.[15]

22  Defendant claims that certain network developers are located in France. However, Defendant

23  does not support this bare assertion by identifying these network developers, or explain why they are

24

25  [15] Indeed, had this action originally been brought in a district in Plaintiff's home state of Illinois, the Defendants located in the Northern District of California almost certainly would have moved to
26  dismiss or transfer the case to this district under 28 U.S.C. § 1404 or 28 U.S.C. § 1406. *See also Neelon v. Bharti*, 596 F. App'x 532, 533–34 (9th Cir. 2014) (a plaintiff "need not select the optimal
27  forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant as to the out of proportion to the plaintiff's convenience.") (quotation marks and citation omitted).
28

"essential to a complete analysis of whether the tokens constitute a security," or even why *Switzerland* is a more convenient forum for witnesses purportedly located in *France*.

**Access to physical evidence and other sources of proof.** Along with the majority of the witnesses and litigants, the bulk of the key physical evidence and sources of proof is located in the Northern District. DLS, who is the primary developer of the Tezos blockchain and employs the core development team, is located in California. Thus, most, if not all, of the documentation relating to the Tezos technology is almost certainly located in California. Other key documentary evidence, such as the marketing and promotional materials for Tezos, is in the possession of Arthur Breitman, Kathleen Breitman, Timothy Draper, and Draper Associates Crypto, who are located in California as well. Finally, the tezos.com website, which served as the mechanism for conducting the Tezos ICO, is hosted on a dedicated server in the United States. ¶¶ 17, 19. In contrast, the Tezos Foundation does not identify any specific categories of key documents it possesses in Switzerland.

**Whether unwilling witnesses can be compelled to testify & cost of bringing witnesses to trial.** Given that the bulk of the litigants and witnesses reside in the U.S., the cost of bringing witnesses to trial in Switzerland would far exceed the cost of bringing witnesses to trial in the Northern District of California. Defendant does not dispute this fact, arguing only vaguely that certain "non-party international witnesses with involvement in the Fundraiser ... may not be compelled to testify before this Court." Tezos Br. at 20. However, Defendant identifies only one such witness, Mr. Johann Gevers, and then offers no evidence that (1) Mr. Gevers is an unwilling witness; (2) Mr. Gevers is in fact domiciled in Switzerland; (3) Mr. Gevers does not and cannot travel to the United States; or (4) Mr. Gevers's testimony would be necessary or even relevant.

**Enforceability of the judgment.** Defendant vaguely asserts that there "may" be issues with enforcing a U.S. judgment in Switzerland, but offers no specific reason or explanation why. In addition, there would be no issues with enforcing in the U.S. any judgment against DLS and the Breitmans, who own all the underlying intellectual property and other assets of the Tezos project.[16]

---

[16] Defendant's only cited case, *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 270 (S.D.N.Y. 2010) is inapposite, as that dispute arose out of a *Swiss transaction* explicitly governed by *Swiss law*.

### D.   The Public Factors Do Not Favor Dismissal

Finally, Defendant argues that dismissal is warranted by the "public interest" factors.  *Lueck*, 236 F.3d at 1147.  Again, Defendant is incorrect.

The U.S. has a significant domestic interest in the lawsuit.  Domestic actors – the Breitmans and DLS – conceived of and created the Tezos token in the U.S.  The Breitmans and DLS, along with other domestic actors Timothy Draper and Draper Associates Crypto, then capitalized on the cryptocurrency boom by marketing, promoting, and selling these tokens to investors in the U.S. Indeed, Kathleen Breitman admitted that she and Arthur Breitman targeted domestic investors by discussing the technology in "mainstream U.S. press outlets" and that they "didn't do much marketing outside of the U.S."  ¶ 110.  U.S. securities laws govern this dispute.  *See* Section III, *infra*.  It is thus clear that the Tezos ICO was centered in the U.S., with Switzerland's involvement being only incidental.  Although Defendant claims (without elaboration) that Switzerland has a "significant interest" in enforcing its own securities laws, this would be insufficient (even if true) to overcome the demonstrable interest of U.S. courts in regulating the unlawful behavior of its citizens.  *See City of Almaty*, 685 F. App'x at 636 (when considering local interest, the court need only ask if there is an identifiable local interest in the controversy, not whether another forum also has an interest).

## III.   THE SECURITIES ACT APPLIES TO THE TEZOS ICO UNDER *MORRISON*

Under *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), the Securities Act applies only to "transactions in securities listed on domestic exchanges [ ] and domestic transactions in other securities."  *Id.* at 274.  In *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012), the Second Circuit interpreted *Morrison*'s second, "domestic transactions" prong and held that, "in order to adequately allege the existence of a domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States: that is, that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security."  A plaintiff sufficiently pleads the existence of a domestic transaction by alleging, among other things, "facts concerning the formation of the contracts, the placement of purchase

orders, or the exchange of money…." *Id.* at 70; *In re Petrobas Sec. Litig.*, 862 F.3d 250, 262 (2d Cir. 2017).  *See also SEC v. Geranio*, No. CV 12-04257 (DMG), 2013 U.S. Dist. LEXIS 201820, at *11 (C.D. Cal. Jan. 29, 2013) (noting that the Ninth Circuit has not yet addressed what constitutes a domestic sale or purchase under *Morrison*, and applying the test in *Absolute Activist*).

Here, the Complaint alleges that, to participate in the Tezos ICO, investors provided consideration in the form of Bitcoin and Ethereum cryptocurrencies (or U.S. dollars, which were then converted to Bitcoin by Bitcoin Suisse).  ¶¶ 7, 39, 59.  On crowdfund.tezos.com, which was part of the tezos.com website, investors input the amount of Bitcoin and Ethereum that they sought to invest. That amount was sent to the digital address for the Tezos Foundation's Bitcoin or Ethereum wallets. ¶¶ 72-73.  Thus, when investors made their Bitcoin or Ethereum payments to the Tezos Foundation, the transfer of funds was effectuated on the *blockchains* underlying Bitcoin and Ethereum.

The Bitcoin and Ethereum blockchains are maintained by various participants on a network of computers ("nodes") spread around the globe. ¶¶ 27-28.  According to publicly available data, the U.S. has the most nodes of any country. ¶ 29.  Any transaction involving Bitcoin or Ethereum, including those in the Tezos ICO, are recorded on these nodes, including the nodes in the U.S.  ¶ 29. For a transaction to be valid on the blockchain, all network participants must first reach a "distributed consensus" on the validity of the transactions under review.  Once a transaction is validated on the blockchain, the transaction cannot be canceled, reversed, or altered in any way.  ¶ 30.

In this manner, investors "incurred irrevocable liability within the United States to take and pay for" the Tezos tokens when the Bitcoin and Ethereum payments left the investors' digital wallets and were transferred to the Tezos Foundation.  *Absolute Activist*, 677 F.3d at 68.  Liability to purchase was irrevocable once an investor made her/his transfer, because the investor could not unilaterally revoke the transaction and demand that the Tezos Foundation refund her/his investment.  *See* Ta Decl. Ex. B, Tezos Foundation September 30, 2017 Update ("A few weeks ago, we announced our intention of offering refund options to those who made late or sub-threshold contributions, and remain committed to doing so in a way that is both technically secure and legally compliant. We are doing this as a discretionary measure of goodwill towards our supporters, ***even though we are not legally***

1    ***obliged to do so.***") (emphasis added).  In addition, liability was irrevocable because the transfer could

2    not be reversed or canceled once it was validated on the Bitcoin and Ethereum blockchains.

3          Because the Bitcoin and Ethereum blockchains ledgers recording the changes to the Tezos

4    Foundation's Bitcoin and Ethereum holdings are distributed across all participating computers, of

5    which the U.S. has the most, investors incurred irrevocable liability to purchase in the U.S.  ¶ 75.

6          The Second Circuit decision in *Myun-Uk Choi v. Tower Research Capital LLC*, No. 17-648-

7    cv, 2018 U.S. App. LEXIS 12122 (2d Cir. Mar. 29, 2018) is instructive.  In *Choi*, the Korea Exchange

8    (KRX) contracted with the Chicago Mercantile Group (CME) to establish an overnight market for

9    futures trading, whereby futures contracts on KRX's "night market" (KRX after-hours market) are

10   listed and traded on CME Globex, an electronic CME platform located in Illinois.  *Id.* at *4.  When a

11   limit order is placed on the KRX night market, the order is matched within seconds with an

12   anonymous counterparty on CME Globex, and the trade is settled the next day on the KRX.  *Id.* at

13   *5.

14         In evaluating claims brought under the Commodities and Exchange Act arising from trades

15   on the KRX night market, the Second Circuit held that the plaintiff plausibly alleged that irrevocable

16   liability occurred in the U.S., when the trades were "matched" on CME Globex, and not at settlement

17   on the KRX the next morning.  *Id.* at *14-16.  The Second Circuit explained that there was nothing

18   to suggest "that a trading party may unilaterally revoke acceptance following matching on CME

19   Globex," and so "Plaintiffs plausibly allege that there is a [ ] meeting of the minds when the minds of

20   the KRX night market parties meet on CME Globex."  *Id.* at *15, 17.  Because "Plaintiffs' allegations

21   make it plausible that the parties incurred irrevocable liability [in the U.S.], which is all that is required

22   at this stage of litigation[,] Plaintiffs' [ ] claims should not have been dismissed on extraterritoriality

23   grounds."  *Id.* at *18.  *See also Pope Invs. II, LLC v Deheng Law Firm*, No. 10 Civ. 6608 (LLS), 2013

24   U.S. Dist LEXIS 108114, at *16 (S.D.N.Y. July 31, 2013) ("once the parties signed the Securities

25   Purchase Agreement, the signing purchaser had no right to unilaterally withdraw from his purchase

26   obligation, and [defendants] incurred irrevocable liability when they signed that agreement").

27         As such, at the pleading stage, the Complaint more than plausibly alleges that the Tezos ICO

28

1    involved a domestic transaction.[17]  The Tezos Foundation's arguments to the contrary are unavailing.

2        First, Defendant argues that the transactions in the Tezos ICO occurred in Alderney because

3    the "contribution software" was purportedly located there, and that it "could not have incurred liability

4    until its software … had recorded the donations and determined the appropriate notional token

5    recommendation."  Tezos Br. at 23-24.  However, these are merely assertions, based solely on the

6    Contribution Terms.  At the pleading stage, the Court may consider this document only to ascertain

7    what it says, not for the *truth* of the assertions contained in the document. *Lee v. City of Los Angeles*,

8    250 F.3d 668, 688-90 (9th Cir. 2001); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (the "court

9    is to consider [SEC filings] on a Rule 12(b)(6) motion 'only to determine what the documents stated,'

10   and '*not to prove the truth of their contents*.'") (citation omitted, italics in original).

11       In any event, it is not even clear what the "location" of the "software" means, or would even

12   signify, in the context of entirely digital transactions.  For example, if the "software" is merely the

13   software that powered the crowdfund.tezos.com contribution website, the "location" of the software

14   would be as irrelevant as, say, the location of the source of the electricity that powered the website.

15       If the "software" is merely the internal accounting software by which the Tezos Foundation

16   tallied the contributions of investors, as Defendant appears to suggest,[18] then the location of the

17   software would be equally irrelevant, because it performed merely the ministerial, internal function

18   of tracking how much each investor invested, rather than controlling the transmission and settlement

19   of the invested funds.  As discussed above, the Complaint alleges that the Bitcoin and Ethereum

20   payments to the Tezos Foundation were made through the crowdfund.tezos.com website and recorded

21

22

23   [17] *See Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2 F. Supp. 3d 550, 560 (S.D.N.Y. 2014) (holding that at the motion to dismiss stage, plaintiffs sufficiently alleged facts "suggesting that irrevocable liability was incurred in the United States") (citing *Absolute Activist*, 677

24   F.3d at 68, 70); *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472, at *41 (S.D.N.Y. Nov. 18, 2014) ("Plaintiff has sufficiently alleged

25   a domestic transaction to survive a motion to dismiss" even if Plaintiff may later be unable to

26   ultimately prove that Defendants, in fact, incurred irrevocable liability inside the U.S.).

27   [18] *See* Tezos Br. at 24 (arguing that the software "extracted" the necessary contribution information from the Ethereum blockchain to determine the Tezos allocation, "which it calculated based on a

28   conversion to bitcoin.").

on the Bitcoin and Ethereum *blockchains*, and once the payments were validated, they could not be reversed.  This was the moment investors incurred irrevocable liability to purchase XTZ, and the internal functions of the "software" after this event would not alter this irrevocability.  In fact, in a July 5, 2017 update to investors, the Tezos Foundation confirms the irrelevance of the internal "software" to the transmission of payments and the confirmation of investments, expressly stating: "When designing the contribution software, we made sure that all contributions to the Tezos fundraiser ***are recorded on the Bitcoin and Ethereum blockchains*** … Note that ***all transactions have been processed correctly on the blockchains themselves***, so the actual contributions are not affected. Only ***our separate, independent database that creates a summary of the results*** was temporarily affected."  Ta Decl. Ex. C.  Furthermore, the Contribution Terms themselves expressly state that "Contributions made to TEZOS during the Contribution Period ***will be recorded on the BTC blockchain (BTC contributions) or on the ETH blockchain (ETH Contributions) as contribution information***…" Gehring Decl., Ex. B, ¶ 23 (emphasis added), ¶¶19-20.[19]

In contrast to the "software" and its essentially *internal* functions, the contribution portal, crowdfund.tezos.com, and tezos.com were the points of *interaction* between the Tezos Foundation and investors – akin to a digital marketplace.  Thus, contrary to Defendant's argument (Tezos Br. at 23), if the location of anything is important, it is the hosting location of the contribution website on a server in the U.S., because that is where U.S. investors, including Lead Plaintiff, would have *interacted* with the Tezos Foundation.  *See Pope Invs.*, 2013 U.S. Dist LEXIS 108114, at *16 (allegations that all purchasers were U.S. residents justify inference that the parties entered into the applicable security purchase agreement in the U.S.).

Second, Defendant argues that the Contribution Terms deem that the contribution procedure, the XTZ creation and XTZ allocation to be executed in Alderney.  Tezos Br. at 23-24.  However, as

---

[19] Defendant argues that, if payments are considered made in the U.S. simply because the blockchain ledgers for Bitcoin and Ethereum are distributed on computers in the U.S., then all cryptocurrency transactions are subject to U.S. regulation.  Tezos Br. at 24.  However, even though they may be domestic transactions under *Morrison*, a court may still dismiss cryptocurrency-related claims if there is a lack of personal jurisdiction over the defendants, or on forum non conveniens grounds.

1   explained above, the Contribution Terms are not contractually binding, and the Court may not

2   consider the document for the truth of its assertions.  As explained in *Absolute Activist*, a court is

3   required to consider factors such as "facts concerning the formation of the contracts, the placement

4   of purchase orders, or the exchange of money…."  677 F.3d at 70.  An issuer cannot simply "deem"

5   a transaction to occur at a particular location, even if it is flatly contradicted by the actual events.

6   Otherwise, the issuer would violate the anti-waiver provision contained in Section 14 of the Securities

7   Act, which states that "[a]ny condition, stipulation, or provision binding any person acquiring any

8   security to waive compliance with any provision of [the Securities Act] or of the rules and regulations

9   of the Commission shall be void."  15 U.S.C. § 77n.[20]

10     Third, Defendant argues that it never incurred irrevocable liability to deliver XTZ because,

11   under the Contribution Terms, allocations were discretionary and not guaranteed.  Tezos Br. at 23.

12   Again, this argument is meritless, because the Contribution Terms were not contractually binding.

13     For all of the above reasons, the Securities Act applies to the Tezos ICO.

14   **CONCLUSION**

15     For all the reasons set forth above and in Lead Plaintiff's opposition to the other Defendants'

16   motions to dismiss, the Tezos Foundation's motion to dismiss should be denied in its entirety.

17

18   ─────────────────

19   [20] Defendant's cited cases do not suggest otherwise, and involve situations where the actual procedure

20   and steps executed to effect the transactions indicated that the parties incurred irrevocable liability or title passed outside the United States.  *See Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010) (stock was listed on the SWX Swiss

21   Exchange, transactions were cleared and settled on a trading platform which was a subsidiary of the SWX Swiss Exchange based in London, and plaintiffs conceded that they purchased the shares on a

22   foreign exchange); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 475 (S.D.N.Y. 2013) (according to the option exercise documents, options were not deemed to be exercised until the

23   company received the exercise notice and payment in India); *SEC v. Benger*, No. 09 C 676, 2013 U.S.

24   Dist. LEXIS 21539, at *25-26 (N.D. Ill. Feb. 15, 2013) (under the applicable agreement, seller was irrevocably bound only when it accepted the offer after it had been received at its office in Brazil);

25   *Cascade Fund LLLP v. Absolute Capital Mgmt. Holdings Ltd.*, No. 08-cv-01381-MSK-CBS, 2011 U.S. Dist. LEXIS 34748, at *22 (D. Colo. Mar. 31, 2011) (subscription agreement made clear that

26   the transaction was not completed until seller finally accepted an application in the Cayman Islands);

27   *Mvp Asset Mgmt. (USA) LLC v. Vestbirk*, No. 2:10-cv-02483-GEB-CKD, 2013 U.S. Dist. LEXIS 40715, at *18 (E.D. Cal. Mar. 22, 2013) (plaintiff failed to allege the locations of parties when they

28   entered into agreement, which was when the court held that irrevocable liability occurred).

25

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

Respectfully Submitted,

Date: June 8, 2018

LTL ATTORNEYS LLP

By:  _s/ Enoch H. Liang_
        Enoch H. Liang
        LTL ATTORNEYS LLP
        601 Gateway Boulevard, Suite 1010
        South San Francisco, California 94080
        Tel:  650-422-2130
        Fax:  213-612-3773
        enoch.liang@ltlattorneys.com

        James M. Lee
        Caleb H. Liang
        LTL ATTORNEYS LLP
        300 S. Grand Ave., 14th Floor
        Los Angeles, California 90071
        Tel:  213-612-8900
        Fax:  213-612-3773
        james.lee@ltlattorneys.com
        caleb.liang@ltlattorneys.com

        Hung G. Ta
        JooYun Kim
        Natalia Williams
        HUNG G. TA, ESQ., PLLC
        250 Park Avenue, 7th Floor
        New York, New York 10177
        Tel: 646-453-7288
        Fax: 646-453-7289
        hta@hgtlaw.com
        jooyun@hgtlaw.com
        natalia@hgtlaw.com

        *Lead Counsel for Court-Appointed Lead*
        *Plaintiff and the Class*

        William R. Restis
        THE RESTIS LAW FIRM, P.C.
        550 West C Street, Suite 1760
        San Diego, California 92101
        Tel: 619.270.8383
        william@restislaw.com

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS