**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | Master File No.  17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS TIMOTHY C. DRAPER AND DRAPER ASSOCIATES V CRYPTO LLC'S MOTION TO DISMISS**<br>Date:    July 19, 2018<br>Time:    1:30 p.m.<br>Crtrm:   3<br>Judge:   Hon. Richard Seeborg |

1

## TABLE OF CONTENTS

2
**Page No.**

3  TABLE OF AUTHORITIES ......................................................................................... ii

4  TABLE OF ABBREVIATIONS ................................................................................... iv

5  PRELIMINARY STATEMENT .....................................................................................1

6  STATEMENT OF FACTS .............................................................................................2

7  ARGUMENT ..................................................................................................................4

8  I.   THE DRAPER DEFENDANTS ARE SELLERS UNDER SECTION 12(a)(1) ...................4

9
   A.   The Draper Defendants Actively Solicited Investors In The Tezos ICO .....................5
10
   B.   The Draper Defendants Were Financially Motivated To Solicit Investors .................7
11
   C.   The Draper Defendants' Arguments Lack Merit........................................................8
12

13  II.  THE DRAPER DEFENDANTS ARE LIABLE AS "CONTROLLING" PERSONS
       OF DLS UNDER SECTION 15 OF THE SECURITIES ACT ................................................9
14
   CONCLUSION...............................................................................................................12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No(s).</u>

3

<span style="text-align:center">C<span style="font-variant:small-caps">ASES</span></span>

4

5

*Capri v. Murphy*,
   856 F.2d 473 (2d Cir. 1988) ......................................................................................... 8

6

*Flynn v. Sientra, Inc.*,
   No. 15-07548, 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016)....................... 10

7

8

*Howard v. Everex Sys.*,
   228 F.3d 1057 (9th Cir. 2000) ...................................................................................... 9

9

10

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................................... 11

11

*In re Am. Bank Note Holographics Sec. Litig.*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000) .......................................................................... 7, 8

12

13

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009) ............................................................................... 5, 9

14

15

*In re Daou Sys.*,
   411 F.3d 1006 (9th Cir. 2005) ...................................................................................... 5

16

*In re Keegan Mgmt. Co.*,
   No. 91-20084 SW, 1991 U.S. Dist. LEXIS 17491 (N.D. Cal. Sept. 10, 1991) .............. 8

17

18

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013) .......................................................................... 7

19

20

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 (VRW), 2006 U.S. Dist. LEXIS 61589 (N.D. Cal. Aug. 17, 2006) ...... 5

21

*In re Proxima Corp. Sec. Litig*,
   No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443 (S.D. Cal. May 4, 1994)........ 8

22

23

*In re U.S.A. Classic Sec. Litig.*,
   No. 93 Civ. 6667 (JSM), 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. June 19, 1995)........ 8

24

25

*In re Valence Tech. Sec. Litig.*,
   No. C 94-1542-SC, 1995 U.S. Dist. LEXIS 10379 (N.D. Cal. May 8, 1995)................ 7

26

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003) .......................................................................... 6

27

*In re Worlds of Wonder Sec. Litig.*,
   721 F. Supp. 1140 (N.D. Cal. 1989)............................................................................. 9

28

ii

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) ..................................................................................... 10

*Lane v. Page*,
  649 F. Supp. 2d 1256 (D.N.M. 2009) ......................................................................... 10

*McMahan & Co. v. Wherehouse Enter.*,
  859 F. Supp. 743 (S.D.N.Y. 1994), *rev'd on other grounds*, 65 F.3d 1044 (2d Cir. 1995) ........... 9

*Me. State Ret. Sys v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. 2011) .................. 9

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ...................................................................................... 10

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ............................................................................................... 5, 7

*Primo v. Pac. Biosciences of Cal., Inc.*,
  940 F. Supp. 2d 1105 (N.D. Cal. 2013) ......................................................................... 5

*Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*,
  No. 00 Civ. 8058 (NRB), 2001 U.S. Dist. LEXIS 14761 (S.D.N.Y. Sept. 20, 2001) .................. 8

*Wool v. Tandem Computers, Inc.*,
  818 F.2d 1433 (9th Cir. 1987) .................................................................................... 10

## STATUTES

15 U.S.C. § 77o ...................................................................................................... 9

## REGULATIONS

17 C.F.R. § 230.405 ................................................................................................ 9

iii

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| "¶ [No.]" | Paragraph references to Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "Breitmans" | Defendants Arthur and Kathleen Breitman |
| "Class" | All persons and entities who, directly or indirectly through an intermediary, contributed Bitcoin and/or Ethereum to the Tezos ICO, excluding Defendants and anyone affiliated with any Defendant. |
| "Complaint" | Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "DLS" | Defendant Dynamic Ledger Solutions, Inc. |
| "DLS Defendants" | Defendants DLS and the Breitmans |
| "Draper" | Defendant Timothy C. Draper |
| "Draper Associates Crypto" | Defendant Draper Associates V Crypto LLC |
| "Draper Br." | Draper Defendants' Motion to Dismiss the Consolidated Complaint, Dkt. No. 117 |
| "Draper Defendants" | Defendants Draper and Draper Associates Crypto |
| "Gehring Decl." | Declaration of Andrew S. Gehring in Support of Tezos Stiftung's Motion to Dismiss the Consolidated Complaint, Dkt. No. 122 |
| "Securities Act" | Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* |
| "Ta Decl." | Declaration of Hung G. Ta in Opposition to Defendants' Motion to Dismiss |
| "Tezos Br." | Defendant Tezos Stiftung's Motion to Dismiss the Consolidated Complaint, Dkt. No. 119 |
| "Tezos Foundation" or "Foundation" | Defendant Tezos Stiftung |
| "Tezos ICO" | Tezos Initial Coin Offering conducted in July 2017 |
| "XTZ" or "tezzies" | Tezos tokens |

**PRELIMINARY STATEMENT**

The crucial importance of the Draper Defendants[1] to the Tezos ICO cannot be overstated.  For nearly three years after Defendant Arthur Breitman released the technical Tezos White Paper in August 2014, the Tezos project did not progress significantly.  It was only the acquisition by the Draper Defendants of a substantial interest in Defendant Dynamic Ledger Solutions, Inc. ("DLS") and the highly public announcement of this investment on May 5, 2017, that created the conditions for the success of the Tezos ICO.  Within two months of this announcement, Defendants proceeded to conduct the Tezos ICO, selling tokens to investors in what amounted to an illegal, unregistered offering of securities.  It is thus indisputable that the Draper Defendants played a key role in the decision to proceed with the illegal Tezos ICO.

Furthermore, in the Tezos ICO, the Draper Defendants (like Defendants Kathleen Breitman and Arthur Breitman) were selling their equity interest in DLS to investors.  And, like the Breitmans, the Draper Defendants engaged in what amounted to a publicity tour for the Tezos project.  In press interviews and other public statements, the Draper Defendants touted not only the Tezos project, but their own investment in DLS as a stamp of approval for the quality of the project.

Against this background, the Draper Defendants make several arguments in support of dismissal, all of which are baseless.

*First*, contrary to their arguments, the Draper Defendants were "sellers" for purposes of Section 12(a)(1) of the Securities Act based on their solicitation of investments in the Tezos ICO. The Complaint alleges that the Draper Defendants engaged in solicitation because they were owners of DLS, whose underlying business was being offered for sale to investors in the Tezos ICO; they actively promoted the Tezos project and the Tezos ICO; and they were motivated to do so because of their significant financial interest in DLS.  This is sufficient to state a claim for solicitation liability under Section 12(a)(1).

---

[1] "Draper Defendants" refers to Defendants Timothy C. Draper ("Draper") and Draper Associates V Crypto LLC ("Draper Associates Crytpo").

1

*Second*, contrary to their arguments, the Draper Defendants were "controlling persons" under Section 15 of the Securities Act vis-à-vis DLS.  As the owners of a substantial financial interest in DLS, the Draper Defendants had power or control to direct the management and policies of DLS, specifically, the decision whether or not to conduct the Tezos ICO.  As the Breitmans have publicly stated, they viewed the Draper Defendants as a "partner."  Here, the Draper Defendants exercised their power and control by causing DLS to proceed with the Tezos ICO.  After showing little progress for nearly three years, the Tezos ICO was conducted just two months after the Draper Defendants acquired their investment in DLS in May 2017.  Instead of taking steps to halt the illegal offering of unregistered securities, or to otherwise distance themselves from the Tezos ICO, the Draper Defendants joined in the other Defendants' efforts and actively promoted the Tezos ICO.  These facts indisputably demonstrate that the Draper Defendants were a driving factor in the Tezos ICO.  Based on these facts, the Draper Defendants, like the Breitmans, were controlling persons under Section 15 with respect to the primary violations of DLS.

## STATEMENT OF FACTS

The Tezos project was conceived by Defendants Arthur and Kathleen Breitman as a new blockchain protocol that would compete with and supplant the digital currency Ethereum.  ¶ 32.  In August 2014, Arthur Breitman released the Tezos White Paper, a technical document describing the concept for the Tezos blockchain, including the purpose and technology underlying the project.  In August 2015, Defendants Kathleen and Arthur Breitman formed DLS to hold the intellectual property for the Tezos project.  ¶ 35.

Defendant Draper is a venture capitalist who is the founder and managing partner of Draper Associates, a venture capital firm operating out of Menlo Park, California.  ¶ 22.  Defendant Draper Associates Crypto is a Delaware limited liability company with its principal place of business in San Mateo, California.  ¶ 23.

For nearly three years after the release of the Tezos White Paper, there was no visible progress in moving the Tezos project towards an ICO.  Then, in or around early May 2017, Defendants Draper

and Draper Associates Crypto acquired a substantial ownership interest in Defendant DLS. ¶ 22.[2] As a result of this investment, Draper was treated as a "partner" by the Breitmans. ¶ 63. In responding to a question on Reddit about Defendant Draper's involvement in the Tezos ICO, Kathleen Breitman (posting under the username "breitwoman") responded: "We offered Tim a small fraction of DLS so that his interest would be aligned with ours for at least the next four years. Bitcoin has DCG, Ethereum has Consensys … we were in the market for a partner and champion and Tim was very responsive to our vision." *Id*.

On May 5, 2017, the Draper Defendants' investment was publicly announced, with the Draper Defendants proceeding to promote, in the press and in other communications, the Tezos project and their investment in Tezos. On May 5, *Reuters*[3] announced that Draper was an early investor in the Tezos project. ¶ 61. Draper "told Reuters in an interview he will for the first time participate in a so-called 'initial coin offering' (ICO) of Tezos slated later this month." *Id*. Draper stated: "The best thing I can do is ***lead by example*** …. Over time I actually feel that some of these tokens are going to improve the world, and I want to make sure those tokens get ***promoted*** as well. I think Tezos is one of those tokens." *Id.* (emphasis added). According to the *Reuters* article, "Draper…becomes the first prominent venture capitalist to openly embrace initial coin offerings. This would be a significant stamp of approval for this new financing mode of blockchain start-ups."

On May 6, 2017, dozens of articles appeared promoting the Tezos project and highlighting Draper's financial backing. For example, bitcoinist.com[4] observed that "[w]ith Draper as a backer,

---

[2] According to the Draper Defendants' motion, Defendant Draper Associates Crypto has a 10% interest in DLS. Draper Br. at 5, n.5. Defendant Draper Associates Crypto and another related entity then invested an additional $1 million in the Tezos ICO.

[3] Gertrude Chavez-Dreyfuss, *Exclusive: Billionaire investor Draper to participate in blockchain token sale for first time*, REUTERS (May 5, 2017), https://www.reuters.com/article/us-tezos-blockchain-draper/exclusive-billionaire-investor-draper-to-participate-in-blockchain-token-sale-for-first-time-idUSKBN181250.

[4] Wilma Woo, *Cheers Again, Tim: 'World Improving' Tezos ICO Gets Draper Backing*, BITCOINIST (May 6, 2017), https://bitcoinist.com/cheers-tim-world-improving-tezos-ico-gets-draper-backing/.

the community will no doubt be eager to get on board this latest offering." ¶ 105.  *Bitcoin News*[5] reported that "***Draper rightly believes that by participating in the ICO, he will be setting an example for rest of the investor community*** to follow the new age of fundraising. … Draper's participation in the ICO will not only encourage others to take part in it, but it will also increase the chances of successful completion of many crowdsales." ¶ 106 (emphasis added).  Defendant Arthur Breitman openly acknowledged in a Reddit post[6] that "[t]he Tim Draper deal certainly is behind a lot of this hype." ¶ 107.  Similarly, on July 7, 2017, *The Wall Street Journal*[7] reported that Tezos was "helped by having one prominent backer: Tim Draper, a founder of the Silicon Valley venture-capital firm Draper Fisher Jurvetson. Mr. Draper's small undisclosed personal investment in the firm, and his public pledge to buy into the initial coin offering significantly raised Tezos's profile." ¶ 62.

After the investment by the Draper Defendants in DLS, and the accompanying public announcement, quick progress was made towards holding the Tezos ICO.  In May 2017, the Breitmans established the Tezos Foundation as a Swiss non-profit (Stiftungen) in Zug, Switzerland to oversee the ICO and to receive and manage all contributions.  ¶ 47.

In July 2017, two months after the Draper Defendants' investment in DLS, the Tezos ICO was held, raising the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices).  ¶ 2.

## ARGUMENT

### I.  THE DRAPER DEFENDANTS ARE SELLERS UNDER SECTION 12(a)(1)

Section 12(a)(1) of the Securities Act provides that "[a]ny person who offers or sells a security in violation of section 5" "shall be liable … to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received

---

[5] *Tim Draper to Back Tezos Cryptocurrency ICO,* NᴇᴡsBTC (May 6, 2017), http://www.newsbtc.com/2017/05/06/tim-draper-tezos-ico/.

[6] Murbard, Comment to *Why is Tezos so hyped up?,* Rᴇᴅᴅɪᴛ (May 30, 2017), https://www.reddit.com/r/tezos/comments/6df26x/why_is_tezos_so_hyped_up/.

[7] Paul Vigna, *Forget an IPO, Coin Offerings Are New Road to Startup Riches*, Tʜᴇ Wᴀʟʟ Sᴛʀᴇᴇᴛ Jᴏᴜʀɴᴀʟ (July 7, 2017), https://www.wsj.com/articles/forget-an-ipo-coin-offerings-are-new-road-to-startup-riches-1499425200.

1    thereon, upon the tender of such security, or for damages if he no longer owns the security."

2         Under *Pinter v. Dahl*, 486 U.S. 622, 642 (1988) a defendant is liable under Section 12 of the

3    Securities Act if the defendant "passed title, or other interest in the security, to the buyer for value."

4    However, given the definition of "sale" or "sell" under the Securities Act, "the range of persons

5    potentially liable under § 12(1) is not limited to persons who pass title.  The inclusion of the phrase

6    'solicitation of an offer to buy' within the definition of 'offer' brings an individual who engages in

7    solicitation, an activity not inherently confined to the actual owner, within the scope of § 12."  *Pinter*,

8    486 U.S. at 643.  Indeed, the "applicability of § 12 liability to [those] who solicit securities purchases

9    has been recognized frequently since the passage of the Securities Act."  *Id.* at 646.

10        With respect to solicitation, "liability extends [ ] to the person who successfully solicits the

11   purchase, motivated at least in part by a desire to serve his own financial interests or those of the

12   securities owner.  If he had such a motivation, it is fair to say that the buyer 'purchased' the security

13   from him and to align him with the owner in a rescission action."  *Id.* at 647; *see also In re Daou Sys.*,

14   411 F.3d 1006, 1029 (9th Cir. 2005) (requiring a plaintiff to "allege that the defendants did more than

15   simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited

16   purchase of the securities for their own financial gain….") (citing *Pinter*, 486 U.S. at 647).

17        "Whether or not defendants actually solicited plaintiffs' sales is a factual question which

18   should generally be left to the jury; at this stage plaintiffs' need only satisfy Rule 8(a)'s lenient

19   pleading standards."  *In re Charles Schwab Corp. Sec. Litig*, 257 F.R.D. 534, 550 (N.D. Cal. 2009);

20   *see also Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1126 (N.D. Cal. 2013) ("The

21   Court also agrees with other courts that have held that whether an individual is a seller under Section

22   12 is a question of fact, not properly decided on a motion to dismiss.") (citing *In re Portal Software,

23   Inc. Sec. Litig.*, No. C-03-5138 (VRW), 2006 U.S. Dist. LEXIS 61589, at *11-12 (N.D. Cal. Aug. 17,

24   2006)) (internal quotations omitted).

25        **A.    The Draper Defendants Actively Solicited Investors In The Tezos ICO**

26        As required under *Pinter* and *Daou*, the Complaint alleges that the Draper Defendants actively

27   solicited investments in the Tezos ICO, subjecting them to liability as sellers under Section 12.

28

1    *First*, the Draper Defendants actively promoted the Tezos ICO by generating interest in the

2    media.  On May 5, 2017, just two months before the launch of the Tezos ICO, Draper announced that

3    the Draper Defendants had acquired an investment interest in DLS, and that he would, for the first

4    time, participate in the Tezos ICO.  ¶ 61.  Draper specifically explained that he was "lead[ing] by

5    example" and that he wanted "to make sure those tokens [including the Tezos tokens] get

6    promoted…."  *Id.*  Such statements were more than mere positive opinions about an upcoming

7    investment opportunity.  Rather, these statements were used to promote the Tezos ICO.  As "the first

8    prominent venture capitalist to openly embrace initial coin offerings," Draper's participation and

9    investment in Tezos was "a significant stamp of approval" for this new form of financing.  ¶ 61.

10   Indeed, the Draper Defendants' participation "significantly raised Tezo's profile."  ¶ 62.  With

11   Draper's involvement, expectations were that investors would be "eager to get on board this latest

12   offering [*i.e.*, the Tezos ICO]" (¶ 105), investors would be encouraged to participate in the Tezos ICO

13   (¶ 106), and the chances of successful completion of many crowdsales would increase (¶ 106).  As

14   Arthur Breitman acknowledged, Draper was "behind a lot of this hype" surrounding the Tezos ICO.

15   ¶ 107.

16   *Second*, the Breitmans viewed Draper as a "partner" in the Tezos project.  As Kathleen

17   Breitman explained, Draper was the Breitmans' "partner and champion" and they sought to ensure

18   that his interests were "aligned with [theirs] for at least the next four years."  ¶ 63.

19   Based on these allegations, it is clear that the Draper Defendants were more than "mere

20   participants" in the Tezos ICO.  The Draper Defendants were integral to ensuring that a significant

21   number of investors would participate in the Tezos ICO, which was at the time (and still is) a new

22   form of financing for an emerging technology.  In this respect, the Draper Defendants engaged in as

23   much solicitation as the Breitman Defendants.  *See*, *e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 381

24   F. Supp. 2d 158, 187 (S.D.N.Y. 2003) (defendant properly pleaded as a seller where complaint alleged

25   that defendant actively participated in the preparation of the registration statement, and regularly

26   appeared before investors and financial news agencies to tout the financial vitality of the company

27   issuing the securities); *In re Valence Tech. Sec. Litig.*, No. C 94-1542-SC, 1995 U.S. Dist. LEXIS

28

6

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DRAPER DEFENDANTS' MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1   10379, at *50 (N.D. Cal. May 8, 1995) (holding that underwriters were properly pleaded as sellers

2   under Section 12 where the complaint alleged that the underwriters agreed to a multi-city roadshow

3   before the offerings, had a financial interest in the sales, and solicited sales through reports and

4   roadshows).

5         **B.**      **The Draper Defendants Were Financially Motivated To Solicit Investors**

6         As required under *Pinter*, the Complaint also alleges that the Draper Defendants were

7   "motivated at least in part by a desire to serve [their] own financial interests or those of the securities

8   owners." *Pinter*, 486 U.S. at 647.  Prior to the Tezos ICO, Draper Associates Crypto made an equity

9   investment in DLS, in return for a 10% minority stake in the company.  ¶ 38; Draper Br. at 5, n.5.

10  DLS and its shareholders (including Draper Associates Crypto) will be paid 8.5% of the contributions

11  raised in the Tezos ICO and 10% of the initial issuance of Tezos tokens (representing 76,330,692.97

12  tokens).  ¶ 8.  Additionally, the Draper Defendants made a significant investment in the Tezos ICO

13  itself.  ¶ 91 (when asked "how much he donated during the Tezos fundraiser" Draper replied, "You

14  mean how much I bought?  A lot."); Draper Br. at 5, n.5 (Draper Associates Crypto and an affiliated

15  entity invested $1 million in the Tezos ICO).

16        These allegations concerning the Draper Defendants' financial motivation, together with the

17  above allegations of the their active solicitation, are more than sufficient, at the motion to dismiss

18  stage, to establish that the Draper Defendants were "sellers" under Section 12.  *See In re OSG Sec.*

19  *Litig.*, 971 F. Supp. 2d 387, 403 (S.D.N.Y. 2013) (finding defendants were sellers because in addition

20  to pleading active solicitation, complaint alleged that defendants solicited securities purchases for

21  their personal financial gain, as the company defendant received over $289 million in proceeds and

22  individual defendants stood to gain personally from the offering); *In re Am. Bank Note Holographics*

23  *Sec. Litig.*, 93 F. Supp. 2d 424, 439 (S.D.N.Y. 2000) (holding that defendant Holographics was a

24  seller under Section 12, even though it never owned the shares sold, because defendant "actively

25  solicited the sale of shares through participation of the registration statement and prospectus and in

26  road shows with a motivation to serve its own financial interests or those of the securities' owner");

27  *In re Keegan Mgmt. Co.*, No. 91-20084 SW, 1991 U.S. Dist. LEXIS 17491, at *21 (N.D. Cal. Sept.

28

10, 1991) (seller liability sufficiently alleged under Section 12 where complaint listed several ways that defendants' actions served their financial interests, including to protect their executive positions and substantial compensation, enhance the value of the individual defendants' holdings to obtain significant profits from advantageous sales, and enable the public offering to go forward).

### C.     The Draper Defendants' Arguments Lack Merit

The Draper Defendants argue that they cannot be liable as sellers under Section 12 because there was no direct contact between the Lead Plaintiff and the Draper Defendants.  However, as recognized in the case relied on by the Draper Defendants for this argument, *personal* solicitation is not required for liability under Section 12.  *See Steed Fin. LDC v. Nomura Secs. Int'l, Inc.*, No. 00 Civ. 8058 (NRB), 2001 U.S. Dist. LEXIS 14761, at *24 (S.D.N.Y. Sept. 20, 2001) (citing cases). Where, as here, "significant involvement in the solicitation is found, a defendant may be liable under Section 12[ ]" even if the defendant is not alleged to have personally solicited the sale from the plaintiff.  *Am. Bank Note*, 93 F. Supp. 2d at 439 n.5 (rejecting the argument that in order to be a solicitor of sales under Section 12, defendant must be alleged to have personally solicited the sale from plaintiff and noting that "[t]his requirement… is not absolute"); *see also Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (holding that under *Pinter*, defendants were "sellers" even though they did not have any direct contact with plaintiffs); *In re Proxima Corp. Sec. Litig*, No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443, at *15 (S.D. Cal. May 4, 1994) (explaining that *Pinter* "nowhere stated that contacts between the buyer and the statutory seller must be face-to-face"); *In re U.S.A. Classic Sec. Litig.*, No. 93 Civ. 6667 (JSM), 1995 U.S. Dist. LEXIS 8327, at *9 (S.D.N.Y. June 19, 1995) ("No direct contact between the purchaser and the purported 'solicitor' is necessary for Section 12[ ] liability."); *McMahan & Co. v. Wherehouse Enter.*, 859 F. Supp. 743, 755 (S.D.N.Y. 1994) ("There need be no direct contact between a plaintiff and defendant, provided that the defendant, with scienter, participated in the sale of securities."), *rev'd on other grounds*, 65 F.3d 1044

8

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DRAPER DEFENDANTS' MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1  (2d Cir. 1995).[8]   As explained above, the Draper Defendants were significantly involved in the

2  solicitation of investors for the Tezos ICO.

3          The Draper Defendants also argue that there are only conclusory allegations that they solicited

4  Lead Plaintiff to purchase Tezos tokens.   However, as the Complaint plainly alleges, the Draper

5  Defendants actively solicited investors in the Tezos ICO by making an equity investment in DLS,

6  publicly announcing their investment in DLS, publicly announcing their commitment to participate

7  in the Tezos ICO, partnering with the Breitmans in the Tezos project, and promoting the Tezos project

8  and their investment in DLS.   Further, the Draper Defendants were financially motivated to solicit

9  Tezos ICO investors.   *See supra* Section I.B.

10  **II.     THE DRAPER DEFENDANTS ARE LIABLE AS "CONTROLLING" PERSONS OF
            DLS UNDER SECTION 15 OF THE SECURITIES ACT**
11

12          To allege controlling person liability under Section 15 of the Securities Act, 15 U.S.C. § 77o,

13  a plaintiff needs only plead: (i) that there was a primary violation of federal securities laws; and (ii)

14  that the defendant possessed actual power or control over the primary violator.   *Howard v. Everex*

15  *Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000).   Control may be direct or indirect.   *See* 17 C.F.R. § 230.405

16  (SEC defining control as the "possession, direct or indirect, of the power to direct or cause the

17  direction of the management and policies of a person, whether through ownership of voting securities,

18  by contract, or otherwise.").   However, "it is not necessary to show actual participation or the exercise

19  of actual power."   *Howard*, 228 F.3d at 1065.   Accordingly, day-to-day involvement in the operations

20  of a primary violator is not necessary for control person liability.   *Lane v. Page*, 649 F. Supp. 2d 1256,

21  ―――――――――――――――
[8] The Draper Defendants rely on *Me. State Ret. Sys v. Countrywide Fin. Corp.*, No. 2:10-CV-0302

22  MRP (MANx), 2011 U.S. Dist. LEXIS 125203 (C.D. Cal. 2011) for the proposition that plaintiffs
    must plead a direct relationship between the purchaser and the defendant.   Draper Br. at 11.   However,

23  as the cases above show, there is no such absolute requirement under *Pinter* or in the Ninth Circuit.
    The other cases cited by the Draper Defendants do not set forth a requirement of face-to-face

24  solicitation between a defendant and a plaintiff.   *See Daou*, 411 F.3d at 1029 (only requiring that "the
    plaintiff must show that the defendants solicited purchase of the securities for their own financial

25  gain"); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1148 (N.D. Cal. 1989) (no requirement

26  that a defendant seller directly solicit from plaintiff); *Charles Schwab*, 257 F.R.D at 549 (noting that
    the Ninth Circuit has not precisely explained what a direct role in the solicitation of plaintiff may

27  entail and finding the plaintiffs adequately pled solicitation by defendants).

28

1308 (D.N.M. 2009) ("The regulation thus focuses on the power to direct, not on the exercise of that power. Requiring that a defendant have actually exercised power over the primary violator's general operations would involve divining an exercise of power requirement from a regulation that mentions only the possession of power.").  Moreover, a "Plaintiff need not show that the defendant was a culpable participant in the violation [to prove the defendant is a 'controlling person' under section 15(a) or section 20], but defendant may assert a good faith defense." *Flynn v. Sientra, Inc.*, No. 15-07548, 2016 U.S. Dist. LEXIS 83409, at \*53 (C.D. Cal. June 9, 2016) (citing *Howard*) (text in brackets in original, internal quotation marks omitted).

Whether such power to control exists is "a complex question of fact requiring a close examination of the particular situation and organization" and "how to characterize the relationship between the various alleged controlling persons and the alleged violator of the securities laws." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987); *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (same); *see also Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994) ("Whether [the defendant] is a controlling person 'is an intensely factual question….'").  "Because the concept of control… is an elusive notion for which no clear-cut rule or standard can be devised," it "should be construed liberally and flexibly." *Wool*, 818 F.2d at 1441.

Here, the Draper Defendants were controlling persons vis-à-vis DLS.  The Complaint alleges that for nearly three years prior to the Draper Defendants' acquisition of an interest in DLS, no steps had been taken to conduct an initial coin offering.  Then, on May 5, 2017, the Draper Defendants publicly announced their acquisition of an investment interest in DLS, to much excitement in the blockchain and cryptocurrency community.  ¶ 61.  In the same month, the Breitmans established the Tezos Foundation for purposes of conducting the Tezos ICO.  ¶ 47.  The Draper Defendants then proceeded to conduct what amounted to a publicity tour to promote their investment in Tezos, and the Tezos project more generally.  ¶ 61.  Then, in the first two weeks of July 2017 – just two months after the Draper Defendants announced their investment – the Tezos ICO was held.  ¶ 41.  Thus, it can be inferred from these facts that, by acquiring their equity interest in DLS, the Draper Defendants

1   acquired the power, and indeed exercised the power, to direct the management and policies of DLS

2   and the Tezos Foundation towards proceeding with the Tezos ICO.

3          The Draper Defendants cite a number of cases for the proposition that "minority stock

4   ownership does not establish control person liability under Section 15." Draper Br. at 15. However,

5   Defendants' cited cases make clear that a Section 15 claim is adequately alleged where the plaintiff

6   alleges something *more* – specifically, that the alleged controlling person *engaged in or assisted in*

7   *the primary violation in question*. For example, in *In re Alstom SA*, 406 F. Supp. 2d 433, 487-89

8   (S.D.N.Y. 2005), cited by the Draper Defendants, the court explained that the mere allegation of a

9   defendant's *status* – such as being an officer or director, membership of an audit committee, and

10  minority stock ownership – by itself is not enough to allege controlling person liability under Section

11  15. However, the court also explained that, "if that same officer or director has signed financial

12  statements containing materially false or misleading statements, courts have held that control as to

13  the financial statements is sufficiently pled." *Id.* at 487. Similarly, an "audit committee member who

14  signs an SEC filing can be presumed to have the power to control those who write the report." *Id.* at

15  488. In other words, when a person in the position to exercise control participates in the underlying

16  primary misconduct, instead of taking actions to stop that misconduct, a court will infer that the

17  defendant had control.

18         Here, as discussed above, the Draper Defendants were not just minority stockholders in DLS.

19  The Draper Defendants, like the Breitmans, *participated* in the underlying misconduct – *i.e.*, selling

20  unregistered securities in violation of the Securities Act. Like the Breitmans, the Draper Defendants

21  were cashing out their investment interest in DLS by selling to investors in the illegal, unregistered

22  Tezos ICO. In addition, like the Breitmans, the Draper Defendants actively promoted the Tezos ICO,

23  by promoting their investment in DLS in interviews with the media. At no time did the Draper

24  Defendants take any steps to distance themselves from the Tezos ICO. Thus, just as an audit

25  committee member who signs a false and misleading SEC filing is liable as a controlling person vis-

26  à-vis "those who write the report" (*id.*), the Draper Defendants' participation in the Tezos ICO and

27

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DRAPER DEFENDANTS' MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1  their promotion and marketing of the Tezos ICO renders them controlling persons vis-à-vis DLS, who

2  was a primary violator and Section 12(a)(1) "seller" under the Tezos ICO.

3  <u>**CONCLUSION**</u>

4  For all the reasons set forth above and in Lead Plaintiff's opposition to the other Defendants'

5  motions to dismiss, the Draper Defendants' motion to dismiss should be denied in its entirety

6

7  Respectfully Submitted,

8  Date: June 8, 2018                    LTL ATTORNEYS LLP

9                                        By:  _s/ Enoch H. Liang_
10                                              Enoch H. Liang
                                                LTL ATTORNEYS LLP
11                                              601 Gateway Boulevard, Suite 1010
                                                South San Francisco, California 94080
12                                              Tel:  650-422-2130
                                                Fax:  213-612-3773
13                                              enoch.liang@ltlattorneys.com

14
                                                James M. Lee
15                                              Caleb H. Liang
                                                LTL ATTORNEYS LLP
16                                              300 S. Grand Ave., 14th Floor
                                                Los Angeles, California 90071
17                                              Tel:  213-612-8900
                                                Fax:  213-612-3773
18                                              james.lee@ltlattorneys.com
                                                caleb.liang@ltlattorneys.com
19

20                                              Hung G. Ta
21                                              JooYun Kim
                                                Natalia D. Williams
22                                              HUNG G. TA, ESQ., PLLC
                                                250 Park Avenue, 7th Floor
23                                              New York, New York 10177
                                                Tel: 646-453-7288
24                                              Fax: 646-453-7289
25                                              hta@hgtlaw.com
                                                jooyun@hgtlaw.com
26                                              natalia@hgtlaw.com

27                                              *Lead Counsel for Court-Appointed Lead*
28                                              *Plaintiff and the Class*

12

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG,
LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DRAPER DEFENDANTS' MOTION TO DISMISS
NO. 3:17-CV-06779-RS