**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS** |
| ALL ACTIONS. | Date: July 19, 2018 |
| | Time: 1:30 p.m. |
| | Crtrm: 3 |
| | Judge: Hon. Richard Seeborg |

1

## <u>TABLE OF CONTENTS</u>

2

<u>**Page No.**</u>

3

TABLE OF AUTHORITIES .................................................................................................. ii

4

TABLE OF ABBREVIATIONS ............................................................................................. v

5

PRELIMINARY STATEMENT ............................................................................................. 1

6

STATEMENT OF FACTS ...................................................................................................... 1

7

ARGUMENT ........................................................................................................................... 3

8

9

I.      THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BITCOIN
        SUISSE ......................................................................................................................... 3

10

        A.      Applicable Legal Standards ............................................................................ 3

11

        B.      Bitcoin Suisse Personally Availed Itself Of The Privileges Of Conducting
                Activities In The U.S. ...................................................................................... 4

12

13

        C.      The Claims In This Action Arise Out Of And Relate To Bitcoin Suisse's
                Forum-Related Activities ................................................................................. 8

14

        D.      Defendants Have Not Established A "Compelling" Case That The Exercise Of
                Jurisdiction Would Be Unreasonable .............................................................. 9

15

16

        E.      Lead Plaintiff Has Made A "Colorable Showing" Of Personal Jurisdiction ... 12

17

II.     THE COMPLAINT STATES A CLAIM UNDER THE SECURITIES ACT .................. 13

18

        A.      Bitcoin Suisse Is A Statutory Seller Under Section 12(a)(1) .......................... 13

19

        B.      Plaintiff Has Standing to Assert a Section 12(a)(1) Claim Against Bitcoin
                Suisse ............................................................................................................. 15

20

21

CONCLUSION ...................................................................................................................... 17

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page No(s).**

## CASES

*Advanced Targeting Sys. v. Advanced Pain Remedies, Inc.,*
  No. 3:12-CV-2915-JM (WMC), 2013 U.S. Dist. LEXIS 77779 (S.D. Cal. June 3, 2013) ........... 12

*Ballard v. Savage,*
  65 F.3d 1495 (9th Cir. 1995) ..................................................................................... 6, 10, 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
  223 F.3d 1082 (9th Cir. 2000) ................................................................................................ 8

*Brady v. Grendene USA, Inc.,*
  No. 12cv0604 WQH (KSC), 2012 U.S. Dist. LEXIS 99820 (S.D. Cal. July 17, 2012) .............. 12

*Capri v. Murphy,*
  856 F.2d 473 (2d Cir. 1988) ................................................................................................. 15

*Core-Vent Corp. v. Nobel Industries AB,*
  11 F.3d 1482 (9th Cir. 1993) ................................................................................................ 11

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.,*
  No. CV 10-8736 PSG (JCx), 2011 U.S. Dist. LEXIS 73376 (C.D. Cal. July 1, 2011)................. 12

*Cybersell, Inc. v. Cybersell, Inc.,*
  130 F.3d 414 (9th Cir. 1997) ............................................................................................. 6, 8

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,*
  557 F.2d 1280 (9th Cir. 1977) .............................................................................................. 12

*DFSB Kollective Co. v. Bourne,*
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ...................................................................................... 8

*Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.,*
  828 F.2d 1439 (9th Cir. 1987) .............................................................................................. 11

*Gates Learjet Corp. v. Jensen,*
  743 F.2d 1325 (9th Cir. 1985), *cert. denied*, 105 S. Ct. 2143 (1985)........................................... 11

*Hirsch v. Blue Cross, Blue Shield of Kansas City,*
  800 F.2d 1474 (9th Cir. 1986) ................................................................................................ 6

*In re Am. Bank Note Holographics Secs. Litig.,*
  93 F. Supp. 2d 424 (S.D.N.Y. 2000) ................................................................................. 14, 15

*In re Charles Schwab Corp. Sec. Litig,*
  257 F.R.D. 534 (N.D. Cal. 2009) .......................................................................................... 15

ii

*In re Daou Sys.*,
   411 F.3d 1006 (9th Cir. 2005) ....................................................................................... 13

*In re Keegan Mgmt. Co.*,
   No. 91-20084 SW, 1991 U.S. Dist. LEXIS 17491 (N.D. Cal. Sept. 10, 1991) ............................ 14

*In re LDK Solar Sec. Litig.*,
   No. 07-5182 (WHA), 2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sept. 24, 2008) ................... 5, 12

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013) ............................................................................ 14

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 (VRW), 2006 U.S. Dist. LEXIS 61589 (N.D. Cal. Aug. 17, 2006) ................... 15

*In re Proxima Corp. Sec. Litig*,
   No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443 (S.D. Cal. May 4, 1994) ..................... 15

*In re U.S.A. Classic Sec. Litig.*,
   No. 93 Civ. 6667 (JSM), 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. June 19, 1995) ..................... 16

*j2 Global Commc'ns, Inc. v. Vitelity Commc'ns*, LLC,
   No. CV 11-07904 DDP (Ex), 2012 U.S. Dist. LEXIS 51793 (C.D. Cal. April 12, 2012) ........... 12

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ......................................................................................... 6

*Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   64 F.R.D. 432 (S.D.N.Y. 1974) ..................................................................................... 16

*Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*,
   No. 15-CV-02504-AJB-BGS, 2016 U.S. Dist. LEXIS 76157 (S.D. Cal. Mar. 11, 2016) ........... 12

*McMahan & Co. v. Wherehouse Enter.*,
   859 F. Supp. 743 (S.D.N.Y. 1994), *rev'd on other grounds*, 65 F.3d 1044 (2d Cir. 1995) .......... 16

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ....................................................................................... 11

*Pebble Beach Co. v. Michael Caddy*,
   453 F.3d 1151 (9th Cir. 2006) .................................................................................... 7, 8

*Pinter v. Dahl*,
   486 U.S. 622 (1988) .................................................................................................... 13

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) ......................................................................... 15

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ........................................................................................... 6

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................. 4, 9

*SEC v. Cherif*,
    933 F.2d 403 (7th Cir. 1991) .................................................................. 16

*SEC v. Colello*,
    139 F.3d 674 (9th Cir. 1998) .................................................................. 16

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) .................................................................. 3

*Sec. Inv. Protection Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985) .................................................................. 3

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ................................................................ 10

*Stomp, Inc. v. Neato*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) ....................................................... 9

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) (*en banc*) ............................................... 4, 9

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ........................................................... 5

**STATUTES**

15 U.S.C. § 77l(a)(1) ............................................................................... 13

15 U.S.C. § 77v(a) ..................................................................................... 3

**RULES**

Fed. R. Civ. P. 4(k)(1)(C) .......................................................................... 3

iv

1

## **TABLE OF ABBREVIATIONS**

2

| Abbreviation | Definition |
|---|---|
| "¶ [No.]" | Paragraph references to Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "Bitcoin Suisse" | Defendant Bitcoin Suisse AG |
| "Bitcoin Suisse Br." | Defendant Bitcoin Suisse AG's Motion to Dismiss the Consolidated Complaint, Dkt. No. 126 |
| "Breitmans" | Defendants Arthur and Kathleen Breitman |
| "Class" | All persons and entities who, directly or indirectly through an intermediary, contributed Bitcoin and/or Ethereum to the Tezos ICO, excluding Defendants and anyone affiliated with any Defendant. |
| "Complaint" | Lead Plaintiff's Consolidated Complaint, filed April 3, 2018, Dkt. No. 108 |
| "DLS" | Defendant Dynamic Ledger Solutions, Inc. |
| "Draper" | Defendant Timothy C. Draper |
| "Draper Associates Crypto" | Defendant Draper Associates V Crypto LLC |
| "Draper Defendants" | Defendants Draper and Draper Associates Crypto |
| "Securities Act" | Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* |
| "Ta Decl." | Declaration of Hung G. Ta in Opposition to Defendants' Motion to Dismiss |
| "Tezos Br." | Defendant Tezos Stiftung's Motion to Dismiss the Consolidated Complaint, Dkt. No. 119 |
| "Tezos Foundation" or "Foundation" | Defendant Tezos Stiftung |
| "Tezos ICO" | Tezos Initial Coin Offering conducted in July 2017 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1

## PRELIMINARY STATEMENT

2      Bitcoin Suisse does not dispute that it acts as a *mandatory co-signatory* for all the funds raised

3 in the Tezos ICO.  Indeed, Bitcoin Suisse itself revealed this fact in a public statement issued on

4 November 13, 2017.  In other words, Bitcoin Suisse currently holds *legal title* to all the monies raised

5 from Lead Plaintiff and the Class.  If the Class prevails in its claims that the Tezos ICO was an illegal,

6 unregistered offering of securities, the Class will be entitled to rescission from the very funds which

7 *Bitcoin Suisse* currently holds jointly with the Tezos Foundation.

8      Despite this indisputably key role in the Tezos ICO, and despite its other role in providing an

9 alternative website through which investors (specifically, U.S. investors) could invest in the Tezos

10 ICO, Bitcoin Suisse argues that the Court should not exercise personal jurisdiction over Bitcoin Suisse

11 and that it is not a seller for purposes of Section 12(a)(1) of the Securities Act.  For the reasons set

12 forth below, these arguments are invalid given Bitcoin Suisse's key roles in the Tezos ICO and its

13 contact with the U.S. when discharging these roles.  Accordingly, Defendant's motion to dismiss

14 should be denied in its entirety.

15

## STATEMENT OF FACTS

16      In July 2017, Defendants conducted the Tezos ICO, raising the equivalent of $232 million in

17 Bitcoin and Ethereum (at July 2017 prices).  ¶ 2.

18      The Tezos project was conceived by Defendants Arthur and Kathleen Breitman as a new

19 blockchain protocol that would compete with and supplant the digital currency Ethereum.  ¶ 32.  In

20 August 2015, Defendants Kathleen and Arthur Breitman formed Defendant DLS to hold the

21 intellectual property for the Tezos project.  ¶ 35.  In or around May 2017, Defendant Tezos Stiftung

22 ("Tezos Foundation") was established as a Swiss non-profit (Stiftungen) in Zug, Switzerland to

23 oversee the ICO and to receive and manage all contributions.  ¶ 47.

24      Defendant Bitcoin Suisse is a financial services provider that was established in 2013 and is

25 also headquartered in Zug, Switzerland. ¶ 24.  According to its press releases, the main activities of

26 the company include brokerage, asset management, trading, ICO services and payment gateway

27

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1   services. *Id.*  Bitcoin Suisse acts as an asset manager on behalf of institutions, companies and private

2   individuals, with a specific focus on digital/crypto assets and currencies.  *Id.*

3        In connection with the Tezos ICO, Bitcoin Suisse played two key roles.

4        First, Bitcoin Suisse offered a way for putative investors, including U.S. investors, to invest

5   in the Tezos ICO other than from the tezos.com website,  Specifically, Bitcoin Suisse acted as an

6   intermediary by providing investors with virtual currency conversion services, and then contributing

7   these virtual currencies to the Tezos ICO on behalf of the investors. ¶ 25.  According to a "Framework

8   Agreement"   that   was   published   in   English   and   made   available   on   its   website   (*see*

9   https://www.bitcoinsuisse.ch/tezos-4/), Bitcoin Suisse touted its ability to "handle[ ] the onboarding

10  of individual contributors, and the reception and exchange of a wide variety of currencies, convert[ ]

11  to the corresponding amount of Bitcoin (BTC), and hereafter handle[ ] the contribution to TZ on

12  behalf the contributor."  *Id.*  Bitcoin Suisse claimed that, "[i]f requested to do so, BTCSAG [Bitcoin

13  Suisse] can also store the XTZ-tokens on behalf of individual contributors in our sandboxed

14  environment …"  ¶ 25.  Bitcoin Suisse expressly represented that it accepted US dollars, and that it

15  offered its services to U.S. clients, stating that: "***N.B: For US-clients BTC-rate will be locked***

16  ***immediately upon reception of deposit.***" ¶ 25.  Thus, in connection with the Tezos ICO, Bitcoin Suisse

17  provided a currency conversion facility through which U.S. investors could invest U.S. dollars in the

18  Tezos ICO.  *Id.*

19        Second, Bitcoin Suisse fulfilled (and continues to fulfil) the vital role of a mandatory co-

20  signatory for the funds collected in the Tezos ICO.  *Id.*  Thus, together with the Tezos Foundation,

21  Bitcoin Suisse currently holds legal title to all investor monies raised in the Tezos ICO.  *Id.*

22        Bitcoin Suisse has publicly acknowledged these roles in the Tezos ICO.  In a public statement

23  published on November 13, 2017,[1] Bitcoin Suisse stated that "Bitcoin Suisse AG (BTCSAG) acted

24  as a crypto-financial service provider and intermediary in connection with the Tezos Crowd

25  Contribution earlier this year, providing services to both individual contributors as well as the Tezos

26

27  ───────────────
    [1] *Statement concerning the Tezos Crowd Contribution and the Tezos Foundation* (Nov. 13, 2017),

28  Bitcoin Suisse AG, https://www.bitcoinsuisse.ch/tezos-statement/.

Foundation itself." *Id.*  In the statement, Bitcoin Suisse also stated that, "[s]ince the conclusion of the Crowd Contribution, BTCSAG has continued to provide crypto-financial services to the Tezos Foundation, including acting as a mandatory co-signatory on all crypto-asset transactions." *Id.*

### ARGUMENT

## I.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BITCOIN SUISSE

### A.   Applicable Legal Standards

Fed. R. Civ. P. 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … when authorized by a federal statute."  Because Section 22 of the Securities Act provides for nationwide service of process,[2] it confers personal jurisdiction in any district over U.S. resident defendants, and personal jurisdiction over a non-resident, foreign defendant so long as the defendant has minimum contacts with the United States as a whole (and not just any particular state).  *See Sec. Inv. Protection Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985); *SEC v. Ross*, 504 F.3d 1130, 1139-40 (9th Cir. 2007).  In *Ross*, the Ninth Circuit discussed *Vigman*, which dealt with Section 27 of the Securities Exchange Act of 1934, and noted that Section 22 of the Securities Act similarly provides for nationwide service of process.  The Ninth Circuit proceeded to state: "In *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985), we held that § 27 gave the district court the power to exercise personal jurisdiction over any party with minimum contacts with the United States and that the exercise of such jurisdiction comported with the principles of due process. [ ]  Given the near identity in the language between these two provisions, we agree [ ] that, by empowering the district court to serve process nationwide, § 22 of the Securities Act permits district courts to obtain personal jurisdiction over parties who are properly served."  *Id.* at 1140.  Thus, contrary to Bitcoin Suisse's suggestion (Bitcoin Suisse Br. at 6), the minimum contacts analysis is assessed relative to the United States, and not California.

---

[2] Section 22 provides that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."  15 U.S.C. § 77v(a).

Personal jurisdiction may be "general" or "specific."   In the Ninth Circuit, for specific personal jurisdiction, there is a three-part test to establish "minimum contacts":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (*en banc*).   The plaintiff bears the burden of establishing the first two prongs, upon which the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

Finally, where a motion to dismiss for lack of personal jurisdiction is made without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts using its pleadings and affidavits.  *Id.* at 800 (citations omitted).  "[U]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.*

Here, Lead Plaintiff has alleged sufficient minimum contacts to create specific personal jurisdiction over Bitcoin Suisse.

## B.   Bitcoin Suisse Personally Availed Itself Of The Privileges Of Conducting Activities In The U.S.

Bitcoin Suisse purposefully availed itself of the privileges of conducting business activities in the U.S., and purposefully directed its activities at the U.S.

*First*, Bitcoin Suisse assisted the Tezos Foundation's efforts to solicit investments from U.S. investors in the Tezos ICO by providing currency conversion services to U.S. investors who wished to invest using U.S. dollars.  ¶ 25.  Bitcoin Suisse did this by acting as an intermediary, converting U.S. dollars submitted by investors into Bitcoin and then contributing this on behalf of investors in

4

the Tezos ICO.  *Id.*  Bitcoin Suisse also offered to store Tezos tokens on behalf of investors.  *Id.*  These services were expressly stated in a "Framework Agreement" published on Bitcoin Suisse's website.  *Id.* ("For US-clients BTC-rate will be locked immediately upon reception of deposit.").  To offer these currency conversion and Tezos token storage services, and like the Tezos Foundation, Bitcoin Suisse operated an interactive website through which it entered into transactions with U.S. residents.  A non-resident who uses an interactive website to raise capital from U.S. investors in this manner purposefully avails itself of the privileges of conducting business activities in the U.S.  *See In re LDK Solar Sec. Litig.*, No. 07-5182 (WHA), 2008 U.S. Dist. LEXIS 80717, at *15-16 (N.D. Cal. Sept. 24, 2008) (specific personal jurisdiction found where defendants sold shares on the New York Stock Exchange, because "Defendants purposefully availed themselves of the forum by taking advantage of this nation's laws and its capital markets"); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997) (finding specific personal jurisdiction because defendant conducted business with Pennsylvania residents through its website, even though "only two percent of its subscribers are Pennsylvania residents"); *see generally* Lead Plaintiff's Memorandum of Points and Authorities in Opposition to the Tezos Foundation's Motion to Dismiss, Argument, Section I.B (incorporated by reference herein), and the cases cited therein.

<u>*Second*</u>, Bitcoin Suisse did not just act as a third-party financial intermediary providing currency conversion services.  It directly participated in the Tezos ICO by receiving the investments made in the Tezos ICO, including investments received from U.S. investors.  Specifically, Bitcoin Suisse is a mandatory *co-signatory* for the funds collected.  ¶ 26.  Therefore, Bitcoin Suisse occupies the same position as the Tezos Foundation.  In holding title to investor monies, Bitcoin Suisse stands on the other side of the Tezos ICO as much as the Tezos Foundation does.

With respect to purposeful availment/direction, Bitcoin Suisse makes a number of arguments, all of which are baseless.

Bitcoin Suisse argues first of all that there is no purposeful availment because "Plaintiff has failed to identify any conduct by Bitcoin Suisse that took place in California or the United States." Bitcoin Suisse Br. at 8.  This argument apparently rests on the incorrect notion that purposeful

1    availment requires Bitcoin Suisse to be physically located in the U.S.  *Id.* ("Bitcoin Suisse is

2    headquartered in Switzerland and all services conducted in connection with the alleged Tezos ICO

3    were, in fact, conducted in Switzerland.").  However, courts repeatedly emphasize that a defendant is

4    not required to be physically located in a forum in order to purposefully avail itself of the privileges

5    of conducting activities in that forum.  *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ("We have

6    held that the purposeful availment requirement is satisfied if the defendant has taken deliberate action

7    within the forum state or if he has created continuing obligations to forum residents. … It is not

8    required that a defendant be physically present within, or have physical contacts with, the forum,

9    provided that his efforts are purposefully directed toward forum residents.") (citing *Hirsch v. Blue*

10   *Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)) (internal quotations omitted).

11   Consistent with this principle, numerous courts have found purposeful availment based on an

12   interactive website that results in transactions with residents in a forum.  *See Cybersell, Inc. v.*

13   *Cybersell, Inc.*, 130 F.3d 414, 417-19 (9th Cir. 1997) (holding that mere internet presence can

14   establish purposeful availment, based on "the common thread, well stated by the district court in

15   *Zippo*, [ ] that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly

16   proportionate to the nature and quality of commercial activity that an entity conducts over the

17   Internet.'").

18        Bitcoin Suisse next argues that there was no purposeful "direction" by Bitcoin Suisse of its

19   activities at the U.S., citing the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984).  Defendant

20   argues there was no purposeful direction because Bitcoin Suisse's website said that it did not accept

21   investments from U.S. investors.  Bitcoin Suisse Br. at 9.  However, on a motion to dismiss, the Court

22   may only consider the website for what it purports to say, *not* for the *truth* of the assertions contained

23   in the document.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001); *Roth v.*

24   *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (the "court is to consider [SEC filings] on a Rule 12(b)(6)

25   motion 'only to determine *what* the documents stated,' and '*not to prove the truth of their contents.*'")

26   (citation omitted, emphasis in original).  That is especially because Lead Plaintiff has alleged that a

27   "Framework Agreement" published on Bitcoin Suisse's website expressly stated: "For US-clients

28

1     BTC-rate will be locked immediately upon reception of deposit."  In addition, the statement quoted

2     by Defendant from the Bitcoin Suisse website is that: "We regret to inform you all that . . . Bitcoin

3     Suisse AG (BTCSAG) can *no longer* accept US clients, be it natural persons or legal entities, as

4     clients for ICOs or wealth management." (emphasis added).  This suggests that Bitcoin Suisse did in

5     fact receive investments from U.S. clients at some point.  Thus, Defendant has, at most, raised factual

6     issues that cannot be resolved on a motion to dismiss.

7         This position is not altered by the declaration submitted by Bitcoin Suisse's founding partner

8     and co-CEO, Niklas Nikolajsen, purportedly attesting to the fact that Bitcoin Suisse "did not, in fact,

9     contribute any funds to the Tezos Foundation on behalf of any U.S. citizens."  Bitcoin Suisse Br. at

10     4.  The declaration does not attach any documents or other evidence that the Court can consider.  It is

11     just the naked assertion of the declarant.  In any event, at most, Mr. Nikolajsen's declaration raises

12     factual issues that can only be resolved through personal jurisdiction discovery.  *See infra*, Section

13     I.E.

14         Bitcoin Suisse also argues that there was no purposeful direction because its services

15     purportedly were not "expressly aimed" at California residents.  Bitcoin Suisse Br. at 9-10.  However,

16     for the same reasons that there is purposeful availment, there is also purposeful direction.  Defendant

17     created an *interactive* website to provide currency conversion services that targeted U.S. investors

18     and U.S. dollar investments.  The website created by Bitcoin Suisse was designed to receive

19     registration details from investors, and then assisted these investors by directly investing the

20     converted currency on their behalf in the Tezos ICO, and by storing Tezos tokens.  Furthermore, as

21     discussed above, Bitcoin Suisse stood on the other side of the Tezos ICO and acted as a mandatory

22     co-signatory for the monies received in the Tezos ICO.

23         Because of these factors, this case is distinguishable from the cases cited by Defendant

24     (Bitcoin Suisse Br. at 10), which involved merely passive websites.  *See Pebble Beach Co. v. Michael*

25     *Caddy*, 453 F.3d 1151, 1557-58 (9th Cir. 2006) (finding no purposeful direction because the

26     defendant's "only substantial action is a domain name and *non-interactive* informative web site along

27     with the extraneous fact that Caddy had worked, at some point in his past, in California.… [A]n

28

internet domain name and *passive* website alone are not 'something more,' and, therefore, alone are not enough to subject a party to jurisdiction.") (emphasis added); *Cybersell*, 130 F.3d at 419 (no personal jurisdiction because "Cybersell FL has conducted no commercial activity over the Internet in Arizona. All that it did was post an essentially passive home page on the web"); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 882 (N.D. Cal. 2012) (Report and Recommendation, United States Magistrate Jacqueline Scott Corley) (no personal jurisdiction because the "Plaintiffs argue[d] that Defendant's 'website, on its own, is enough to confer personal jurisdiction,'" and there were no sales or other transactions with forum residents apart from the mere act of receiving registration information from visitors to the website).

Bitcoin Suisse argues additionally that there was no purposeful direction under the *Calder* "effects test" because Defendant did not foreseeably cause harm in the U.S. Bitcoin Suisse Br. at 10. However, this argument rests on the same erroneous factual assertion, already addressed, that "Bitcoin Suisse expressly did not provide services to U.S. clients in connection with the alleged Tezos ICO." *Id.* To the extent that Bitcoin Suisse provided currency conversion services to U.S. investors, and then held the ICO contributions from investors and acted as a mandatory co-signatory for investor monies (including those of U.S. investors), Bitcoin Suisse undoubtedly caused foreseeable harm in the U.S.[3]

C.     **The Claims In This Action Arise Out Of And Relate To Bitcoin Suisse's Forum-Related Activities**

The second prong of the minimum contacts analysis is also easily satisfied. But for Bitcoin Suisse's currency conversion services, U.S. investors investing U.S. dollars would not have been able to invest in the Tezos ICO. Furthermore, Bitcoin Suisse directly participated in the Tezos ICO by

---

[3] Bitcoin Suisse also appears to suggest that "something more" than mere foreseeability is required under the *Calder* effects test. Bitcoin Suisse Br. at 10-11. This is incorrect. As explained by the Ninth Circuit in *Pebble Beach*, "[w]e have said that there must be 'something more' . . . . We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state." 453 F.3d at 1084 (internal quotations omitted) (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). In other words, the "something more" referred to by Defendant is the second, express aiming element of the *Calder* test, not an additional component of the foreseeability element. As discussed above, Bitcoin Suisse did in fact expressly aim its conduct at U.S. residents.

1  acting as a mandatory co-signatory for the funds raised in the Tezos ICO, providing an essential

2  assurance for investors that the funds raised in the Tezos ICO would be kept safe.  Therefore, the

3  contacts between Bitcoin Suisse and the U.S. (including an interactive website used to receive

4  investments from U.S. investors and invest in the Tezos ICO on their behalf) all directly led to the

5  Class's Securities Act claims for the sale of unregistered securities.  *Stomp, Inc. v. Neato*, 61 F. Supp.

6  2d 1074, 1077 (C.D. Cal. 1999) ("[t]here is little question in the present case that the alleged contacts,

7  [Defendants'] Internet sales of  [infringing products], is closely related to the present action.").

8       Bitcoin Suisse argues that there is no "'but for' causation" because Lead Plaintiff cannot show

9  that he entered into the Framework Agreement or that he personally used Bitcoin Suisse's services.

10  Bitcoin Suisse Br. at 11-12.  However, this mischaracterizes the second prong of the minimum

11  contacts test.  In *Yahoo!*, the Ninth Circuit explained that the second prong does not require such a

12  mechanistic relationship between the conduct and the injury.  The Ninth Circuit stated that, in

13  assessing "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's

14  suit is related to those contacts[,] [a] strong showing on one axis will permit a lesser showing on the

15  other." 433 F.3d at 1210.  Thus, a court assesses the defendant's contacts as a whole, and determines

16  whether the plaintiff's claims are related to those contacts.  *Id.* at 1205-1206 ("the claim must be one

17  which arises out of *or relates* to the defendant's forum-related activities") (emphasis added);

18  *Schwarzenegger*, 374 F.3d at 802 (same).  Here, not only did Bitcoin Suisse provide currency

19  conversion services to U.S. investors, it is currently holding all investment monies – including the

20  investment monies of Lead Plaintiff – as a *mandatory co-signatory*.  Lead Plaintiff and the Class's

21  claims clearly arise from these contacts with the U.S., because the Class's claims are for rescission

22  and for the return of invested monies jointly held by the Tezos Foundation and Bitcoin Suisse.

23       **D.    Defendants Have Not Established A "Compelling" Case That The Exercise Of Jurisdiction Would Be Unreasonable**

24

25       As its final argument, Defendant argues that the exercise of personal jurisdiction over Bitcoin

26  Suisse would be unreasonable under the third prong of the minimum contacts analysis.  Defendant

27  has the burden of establishing a "compelling" case.  *Schwarzenegger*, 374 F.3d at 803.  When the

28  first two requirements for specific personal jurisdiction are satisfied, there is a "strong presumption"

9

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1   that jurisdiction is reasonable and the defendant has a "heavy burden" to rebut this presumption.

2   *Ballard*, 65 F.3d at 1500, 1502.   In the Ninth Circuit, courts apply a seven-factor test for

3   reasonableness.  *Id.* at 1500-1502 (citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990)).

4         Two factors indisputably weigh in favor of asserting personal jurisdiction, and Defendant has

5   not even addressed them.  Lead Plaintiff has an interest in convenient and effective relief in federal

6   court in California, which provides for class-wide relief and discovery procedures unavailable in other

7   jurisdictions.  Further, this forum is the most efficient forum for judicial resolution of the dispute

8   because five of the seven Defendants reside in the Northern District of California (specifically,

9   Defendants DLS, Arthur Breitman, Kathleen Breitman, Timothy Draper and Draper Associates

10  Crypto); the Court has the expertise to adjudicate the U.S. securities laws; and the Court is the most

11  familiar with the underlying facts.  *See Ballard*, F.3d at 1501-1502 (stating that these two factors were

12  "easy" because "the most efficient resolution of this dispute would be in the Southern District [of

13  California], since the court there already is familiar with the facts and procedural history of the

14  litigation. … Also, Ballard could obtain the most effective and convenient relief in California.").

15        With respect to the remaining factors, Bitcoin Suisse makes four arguments.

16        First, Defendant contends that it did not "purposefully interject[ ] itself into California or the

17  United States."  Bitcoin Suisse Br. at 12.  For the reasons already stated above, this is baseless.  Bitcoin

18  Suisse reached into the U.S. to accept U.S. dollar investments from U.S. investors.  It also jointly

19  holds, as a mandatory co-signatory, all funds invested in the Tezos ICO, including funds invested by

20  U.S. investors.

21        Second, Defendant claims that defending this lawsuit in the U.S. would create an "obvious

22  burden" and there is no "overriding policy considerations compelling a U.S. court to assert

23  jurisdiction over Bitcoin Suisse that outweigh the unique and significant burden."  Bitcoin Suisse Br.

24  at 13.  However, the Court cannot consider an argument as to burden where the Defendant "has not

25  presented any evidence on the extent of the burden. [The Court] cannot answer the question in the

26  abstract."  *Ballard*, 65 F.3d at 1501.  Also, "unless the inconvenience is so great as to constitute a

27  deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."

28

10

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  Here, Defendant has submitted no evidence as to burden, specifically evidence that the burden of litigating in California federal court is so great as to deprive it of due process.  This is fatal.  In any event, "in this era of fax machines and modern transportation, including discount air travel, requiring [a nonresident defendant] to litigate in California is not constitutionally unreasonable."  *Id.* at 1322 (internal quotations and citations omitted).  *See also Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1444 (9th Cir. 1987) ("the burden of litigating in a foreign forum has become less significant as a result of advances in communication and transportation.").

Third, Defendant argues that sovereignty concerns weigh against exercising personal jurisdiction, because Defendant is a "Swiss entity, [ ] compliant with Swiss law and a decision on the merits by this Court may be inconsistent with Bitcoin Suisse's obligations under Swiss law."  Bitcoin Suisse Br. at 15.  However, the Ninth Circuit has stated that "[a]lthough this factor is important, … it is by no means controlling."  *Ballard*, 65 F.3d at 1501.  Otherwise, "[i]f [this factor were] given controlling weight, it would always prevent suit against a foreign national in a United States court."  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1985), *cert. denied*, 105 S. Ct. 2143 (1985).  Further, Bitcoin Suisse has offered no evidence to establish that its actions are compliant with Swiss law, or that there is the possibility of conflicting laws.  Further, as Defendant's own cited case demonstrates, "[i]n determining how much weight to give this factor, we have focused on the presence or absence of connections to the United States in general, not just to the forum state.  Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships."  *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).  Here, Bitcoin Suisse undoubtedly had connections with the United States, by offering currency conversion services to U.S. investors and safeguarding all monies raised as a mandatory co-signatory.

Fourth, Bitcoin Suisse argues "neither California nor the United States have any material interest in adjudicating Plaintiff's claim against Bitcoin Suisse."  Bitcoin Suisse Br. at 13.  Defendant is wrong.  As Judge Alsup stated in *LDK Solar*, the United States undeniably has an interest because "the integrity of this nation's securities markets would be undermined if foreign corporations and

11

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1    executives could fleece those capital markets while standing just beyond the water's edge."  2008

2    U.S. Dist. LEXIS, at *21.  To the extent it facilitated the investments by U.S. investors in the unlawful

3    Tezos ICO, Bitcoin Suisse participated in an unlawful offering of unregistered securities, in violation

4    of U.S. securities laws.

5           For the above reasons, all or nearly all the factors weigh in favor of exercising personal

6    jurisdiction, and Defendant has failed to make a "compelling" case for declining personal jurisdiction.

7           **E.      Lead Plaintiff Has Made A "Colorable Showing" Of Personal Jurisdiction**

8           Even if Lead Plaintiff has not established a prima facie showing of personal jurisdiction, Lead

9    Plaintiff has at the very least made a "colorable showing," such as to warrant jurisdictional discovery.

10   Courts "may permit discovery to aid in determining whether it has in personam jurisdiction."  *Data*

11   *Disc, Inc. v. Sys. Tech. Assoc., Inc*., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).  "This 'colorable'

12   showing should be understood as something less than a prima facie showing, and could be equated as

13   requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction

14   over the defendant."  *Maple Leaf Adventures Corp. v. Jet Tern Marine Co*., No. 15-CV-02504-AJB-

15   BGS, 2016 U.S. Dist. LEXIS 76157, at *27-28 (S.D. Cal. Mar. 11, 2016) (quotation marks omitted).

16   Applying this liberal standard, many courts in the Ninth Circuit have permitted jurisdictional

17   discovery.[4]

18          Here, based on the colorable showing, Lead Plaintiff should be permitted limited jurisdictional

19   discovery of the following factual issues: the amount of U.S. dollar investments that Bitcoin Suisse

20

---

21   [4] *See Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.,* No. CV 10-8736 PSG (JCx), 2011 U.S. Dist.
     LEXIS 73376, at *13-14 (C.D. Cal. July 1, 2011) (permitting plaintiffs to conduct discovery of "10
22   interrogatories or requests for production, and two depositions."); *j2 Global Commc'ns, Inc. v. Vitelity
     Commc'ns*, LLC, No. CV 11-07904 DDP (Ex), 2012 U.S. Dist. LEXIS 51793, at *9-10 (C.D. Cal.
23   April 12, 2012) (denying defendant's motion to dismiss and granting plaintiff's request for limited
     jurisdictional discovery, holding plaintiff's "have made a colorable claim as to jurisdiction and are
24   therefore entitled to this additional discovery"); *Advanced Targeting Sys. v. Advanced Pain Remedies,
     Inc.,* No. 3:12-CV-2915-JM (WMC), 2013 U.S. Dist. LEXIS 77779, at *15-16 (S.D. Cal. June 3,
25   2013) (denying defendant's motion to dismiss and granting plaintiff jurisdictional discovery where
     plaintiff made a colorable showing); *Brady v. Grendene USA, Inc.,* No. 12cv0604 WQH (KSC), 2012
26   U.S. Dist. LEXIS 99820, at *12 (S.D. Cal. July 17, 2012) (where plaintiffs made a "colorable
     showing" of jurisdiction, the court ordered that the motion to dismiss remain pending and permitted
27   plaintiffs to conduct jurisdictional discovery).

28

1    received from U.S. resident investors and invested on their behalf in the Tezos ICO; and the

2    contractual arrangements by which Bitcoin Suisse holds the monies of investors in the Tezos ICO as

3    a mandatory co-signatory.

4    **II.**      **THE COMPLAINT STATES A CLAIM UNDER THE SECURITIES ACT**

5         **A.**      **Bitcoin Suisse Is A Statutory Seller Under Section 12(a)(1)**

6         Section 12(a)(1) of the Securities Act provides that "[a]ny person who offers or sells

7    a security in violation of section 5" "shall be liable … to the person purchasing such security from

8    him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the

9    consideration paid for such security with interest thereon, less the amount of any income received

10    thereon, upon the tender of such security, or for damages if he no longer owns the security."  15

11    U.S.C. § 77l(a)(1).

12         Under *Pinter v. Dahl*, 486 U.S. 622 (1988) a defendant is liable under Section 12 of the

13    Securities Act if the defendant "passed title, or other interest in the security, to the buyer for value."

14    *Id.* at 642.  However, given the definition of "sale" or "sell" under the Securities Act, "the range of

15    persons potentially liable under § 12(1) is not limited to persons who pass title.  The inclusion of the

16    phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an individual who

17    engages in solicitation, an activity not inherently confined to the actual owner, within the scope of

18    § 12." *Id.* at 643.  Indeed, the "applicability of § 12 liability to [those] who solicit securities purchases

19    has been recognized frequently since the passage of the Securities Act."  *Id.* at 646.  "The language

20    and purpose of § 12(1) suggest that liability extends [ ] to the person who successfully solicits the

21    purchase, motivated at least in part by a desire to serve his own financial interests or those of the

22    securities owner.  If he had such a motivation, it is fair to say that the buyer 'purchased' the security

23    from him and to align him with the owner in a rescission action."  *Id.* at 647; *see also In re Daou Sys.*,

24    411 F.3d 1006, 1029 (9th Cir. 2005) (requiring a plaintiff to "allege that the defendants did more than

25    simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited

26    purchase of the securities for their own financial gain….") (citing *Pinter*, 486 U.S. at 647).

27

28

13

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1    Bitcoin Suisse is a "seller" under Section 12 because it actively solicited investors in the Tezos

2    ICO.  First, Bitcoin Suisse offered an alternative facility to the tezos.com website for investment in

3    the Tezos ICO.  Bitcoin Suisse acted as an intermediary and provided investors with virtual currency

4    conversion services.  ¶ 59.  Bitcoin Suisse then contributed these virtual currencies to the Tezos ICO

5    on behalf of the investors.  ¶ 25.  Second, Bitcoin Suisse claimed that it could store the XTZ tokens

6    on behalf of investors in a "sandboxed environment."  ¶ 25.  Third, Bitcoin Suisse was a controlling,

7    co-signatory for the funds collected in the Tezos ICO, and continues to act as a mandatory co-

8    signatory for the Tezos Foundation on all crypto-asset transactions.  ¶ 25.  These are all roles that

9    Bitcoin Suisse has publicly acknowledged.  ¶ 25.

10    Bitcoin Suisse was financially motivated to solicit investors in the Tezos ICO because doing

11    so would increase the need for its services to both the Tezos Foundation and the Tezos ICO investors,

12    and would increase the assets under its control as co-signatory of the funds invested in the Tezos ICO.

13    Accordingly, Bitcoin Suisse was not a mere "collateral participant" in the Tezos ICO, but rather,

14    jointly conducted the Tezos ICO with, among others, the Tezos Foundation.  *See In re OSG Sec.*

15    *Litig.*, 971 F. Supp. 2d 387, 403 (S.D.N.Y. 2013) (finding defendants were sellers because in addition

16    to pleading active solicitation, complaint alleged that defendants solicited securities purchases for

17    their personal financial gain, as the company defendant received over $289 million in proceeds and

18    individual defendants stood to gain personally from the offering); *In re Am. Bank Note Holographics*

19    *Secs. Litig.*, 93 F. Supp. 2d 424, 439 (S.D.N.Y. 2000) (holding that defendant Holographics was a

20    seller under Section 12 defendant "actively solicited the sale of shares through participation of the

21    registration statement and prospectus and in road shows with a motivation to serve its own financial

22    interests or those of the securities' owner"); *In re Keegan Mgmt. Co.*, No. 91-20084 SW, 1991 U.S.

23    Dist. LEXIS 17491, at *21 (N.D. Cal. Sept. 10, 1991) (seller liability sufficiently alleged under

24    Section 12 where complaint listed several ways that defendants' actions served their financial

25    interests, including to protect their executive positions and substantial compensation, enhance the

26    value of the individual defendants' holdings to obtain significant profits from advantageous sales, and

27    enable the public offering to go forward).

28

1   These allegations are more than sufficient to allege Section 12(a)(1) liability against Bitcoin

2   Suisse.  *See In re Charles Schwab Corp. Sec. Litig*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) ("Whether

3   or not defendants actually solicited plaintiffs' sales is a factual question which should generally be

4   left to the jury; at this stage plaintiffs' need only satisfy Rule 8(a)'s lenient pleading standards");

5   *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1126 (N.D. Cal. 2013) ("The Court

6   also agrees with other courts that have held that whether an individual is a seller under Section 12 is

7   a question of fact, not properly decided on a motion to dismiss.") (citing *In re Portal Software, Inc.*

8   *Sec. Litig.*, No. C-03-5138 (VRW), 2006 U.S. Dist. LEXIS 61589, at *11-12 (N.D. Cal. Aug. 17,

9   2006)) (internal quotations omitted).

10      **B.      Plaintiff Has Standing to Assert a Section 12(a)(1) Claim Against Bitcoin Suisse**

11      Bitcoin Suisse argues that Plaintiff does not have standing to assert a Section 12(a)(1) claim

12   because Plaintiff has not alleged that he purchased tokens in the Tezos ICO through Bitcoin Suisse.

13   Bitcoin Suisse Br. at 17.  Bitcoin Suisse is wrong.

14      First, the Complaint alleges that Defendants, including Bitcoin Suisse, sold Tezos tokens

15   through the Tezos ICO.  *See, e.g.*, ¶ 10 ("Defendants offered and sold Tezos tokens"), ¶ 64 (each of

16   Defendants directly or indirectly sold or offered Tezos tokens to investors).  Indeed, there were 30,317

17   investors in the Tezos ICO, who invested 65,681 Bitcoin and 361,122 Ethereum, and will receive

18   607.49 million of Tezos tokens.  ¶ 78.

19      Second, a plaintiff may maintain a Section 12(a)(1) claim against a defendant even if the

20   plaintiff did not purchase securities from that particular defendant.  There is no requirement that the

21   defendant personally solicit the sale from the plaintiff.  *See, e.g., Am. Bank Note*, 93 F. Supp. 2d at

22   439 n.5 (rejecting the argument that in order to be a solicitor of sales under Section 12, defendant

23   must be alleged to have personally solicited the sale from plaintiff and noting that "[t]his

24   requirement… is not absolute"); *see also Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (holding

25   that under *Pinter*, defendants were "sellers" even though they did not have any direct contact with

26   plaintiffs); *In re Proxima Corp. Sec. Litig*, No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443,

27   at *15 (S.D. Cal. May 4, 1994) (explaining that *Pinter* "nowhere stated that contacts between the

28

15

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1   buyer and the statutory seller must be face-to-face"); *In re U.S.A. Classic Sec. Litig.*, No. 93 Civ. 6667

2   (JSM), 1995 U.S. Dist. LEXIS 8327, at * 9 (S.D.N.Y. June 19, 1995) ("No direct contact between the

3   purchaser and the purported 'solicitor' is necessary for Section 12[ ] liability."); *McMahan & Co. v.*

4   *Wherehouse Enter.*, 859 F. Supp. 743, 755 (S.D.N.Y. 1994) ("There need be no direct contact between

5   a plaintiff and defendant, provided that the defendant, with scienter, participated in the sale of

6   securities."), *rev'd on other grounds*, 65 F.3d 1044 (2d Cir. 1995).

7        The case relied on by Bitcoin Suisse is distinguishable.  In *Leonard v. Merrill Lynch, Pierce,*

8   *Fenner & Smith, Inc.*, 64 F.R.D. 432 (S.D.N.Y. 1974), the named plaintiffs argued that Rule 23

9   provided them with legal standing that they would otherwise not have.  *Id.* at 434.  The court rejected

10  the plaintiffs' argument and held that a representative of a class must be a member of the class he

11  seeks to represent.  *Id.*  Here, Lead Plaintiff has clearly alleged that Defendants sold unregistered

12  securities during the Tezos ICO, which he purchased.  ¶¶ 10, 14.  Further, as explained above, Bitcoin

13  Suisse need not have directly sold the security to Plaintiff in order to be liable under Section 12.[5]

14

15

16

17

18

19

20

21

22

23

24  ───────────────
    [5] In the alternative, if the Court finds that Bitcoin Suisse is not a Section 12 seller, Bitcoin Suisse
    should remain in this action as a nominal defendant.  "A nominal defendant is a [party] who holds the
25  subject matter of the litigation in a subordinate or possessory capacity as to which there is no
    dispute.  The paradigmatic nominal defendant is a trustee, agent or depositary who is joined purely
26  as a means of facilitating collection."  *SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (internal
    quotations omitted) (citing *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)).  As the mandatory co-
27  signatory of the ICO funds held by the Tezos Foundation, Bitcoin Suisse controls the funds and should
28  remain as a nominal defendant to facilitate collection of any judgment that is awarded in this action.

1

## <u>CONCLUSION</u>

2

For the reasons set forth above and the reasons set forth in Lead Plaintiff's opposition to the

3

motions to dismiss of the other Defendants, the Court should deny Bitcoin Suisse's motion to dismiss

4

in its entirety.

5

Respectfully Submitted,

6

Date: June 8, 2018                                          LTL ATTORNEYS LLP

7

By:  s/ Enoch H. Liang

8

Enoch H. Liang
LTL ATTORNEYS LLP

9

601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080

10

Tel:  650-422-2130

11

Fax:  213-612-3773
enoch.liang@ltlattorneys.com

12

James M. Lee

13

Caleb H. Liang
LTL ATTORNEYS LLP

14

300 S. Grand Ave., 14th Floor
Los Angeles, California 90071

15

Tel:  213-612-8900

16

Fax:  213-612-3773
james.lee@ltlattorneys.com

17

caleb.liang@ltlattorneys.com

18

Hung G. Ta

19

JooYun Kim
HUNG G. TA, ESQ., PLLC

20

250 Park Avenue, 7th Floor
New York, New York 10177

21

Tel: 646-453-7288

22

Fax: 646-453-7289
hta@hgtlaw.com

23

jooyun@hgtlaw.com

24

*Lead Counsel for Court-Appointed Lead*
*Plaintiff and the Class*

25

26

27

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS

1

2

3

4

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

5

6

7

8

9

10

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG,
LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

11

12

*Additional Counsel for the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT BITCOIN SUISSE AG'S MOTION TO DISMISS
NO. 3:17-CV-06779-RS