Leo Presiado (SBN 166721)
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Tel: (949) 752-7100
Fax: (949) 252-1514
E-mail: lpresiado@brownrudnick.com

-and-

Sigmund S. Wissner-Gross (*admitted pro hac vice*)
Jessica N. Meyers (*admitted pro hac vice*)
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801
E-mail: swissner-gross@brownrudnick.com
          jmeyers@brownrudnick.com

*Attorneys for Defendant Bitcoin Suisse AG*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | ) Master File No. 17-cv-06779-RS<br>)<br>) **REPLY MEMORANDUM AND POINTS**<br>) **AND AUTHORITIES IN FURTHER**<br>) **SUPPORT OF BITCOIN SUISSE AG'S**<br>) **MOTION TO DISMISS COMPLAINT**<br>) **FOR LACK OF JURISDICTION AND**<br>) **FAILURE TO STATE A CLAIM**<br>)<br>) Hearing Date: July 19, 2018<br>) Time: 1:30 p.m.<br>) Dept: Courtroom 3, 17th Floor<br>) Judge: Honorable Richard Seeborg<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

**Page**

REPLY MEMORANDUM AND POINTS AND AUTHORITIES .................................................. 1

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.   PLAINTIFF HAS FAILED MAKE A *PRIMA FACIE* SHOWING OF SPECIFIC PERSONAL JURISDICTION OVER BITCOIN SUISSE .................................................. 1

    A.   Plaintiff Has Not Established Purposeful Availment Or Direction By Bitcoin Suisse ......................................................................................... 2

    B.   Plaintiff Has Failed To Establish That His Claim Against Bitcoin Suisse Arises From Bitcoin Suisse's Forum-Related Activities .......................... 6

III.   PLAINTIFF IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY FROM BITCOIN SUISSE BECAUSE HE FAILED TO MAKE A "COLORABLE SHOWING" OF PERSONAL JURISDICTION OVER BITCOIN SUISSE ........................................... 7

IV.   PLAINTIFF HAS FAILED TO STATE A SECTION 12(a)(1) CLAIM AGAINST BITCOIN SUISSE ........................................................................................... 9

    A.   Plaintiff Has Not Sufficiently Alleged That Bitcoin Suisse Offered Or Sold Securities Within The Meaning Of Section 12 ......................................... 9

    B.   Plaintiff Lacks Standing To Assert Section 12(a)(1) Claim Against Bitcoin Suisse ...................................................................................... 12

V.   CONCLUSION ........................................................................................... 14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Targeting Sys., Inc. v. Advanced Pain Remedies, Inc.*,
No. 3:12-CV-2915-JM (WMC), 2013 WL 2417876 (S.D. Cal. June 3, 2013) ............................8

*In re Am. Bank Note Holographic, Inc. Sec. Litig.*,
93 F. Supp. 2d 424 (S.D.N.Y. 2000).................................................................................11, 13

*Bennett v. Durham*,
No. 1:10-CV-147, 2011 WL 1225671 (W.D. Ky. Mar. 30, 2011) ............................................13

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....................................................................................................7

*Brady v. Grendene USA, Inc.*,
No. 12-cv-0604 WQH (KSC) (S.D. Cal. July 17, 2012) ...........................................................8

*Callahan v. Washoe Cty. Sch. Dist.*,
No. 3:15-CV-0200-LRH-WGC, 2016 WL 4521684 (D. Nev. Aug. 29, 2016) .....................2, 11

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*,
CV 10-8736 PSG (JCx) (C.D. Cal. July 1, 2011) .......................................................................8

*Capri v. Murphy*,
856 F.2d 473 (2d Cir. 1988).....................................................................................................13

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ..................................................................................................3, 4

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ..................................................................................................10

*DFSB Kollective Co. Ltd. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) ........................................................................................4

*Doe v. Am. Nat'l Red Cross*,
112 F.3d 1048 (9th Cir. 1997) ....................................................................................................6

*Frost v. Sears*,
997 F.2d 588 (9th Cir. 1992) ....................................................................................................14

*j2 Global Commc'ns, Inc. v. Vitelity Commc'ns*,
LLC, No. 11-07904 DDP (Ex) (C.D. Cal. Apr. 12, 2012)...........................................................8

*In re Keegan Mgmt. Co. Sec. Litig.*,
   No. 91-20084 SW, 1991 WL 253003 (N.D. Cal. Sept. 10, 1991) ................................................11

*Lacano Investments, LLC v. Balash*,
   765 F.3d 1068 (9th Cir. 2014) .................................................................................................3

*In re LDK Solar Sec. Litig.*,
   No. C 07-05182-WHA (N.D. Cal. Sept. 24, 2008)....................................................................3

*Le Kun Wu v. Swabplus, Inc.*,
   No. 08-07821-RGK, 2009 WL 10673199 (C.D. Cal. Apr. 3, 2009) .........................................12

*Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   64 F.R.D. 432 (S.D.N.Y. 1974) ..............................................................................................13

*Maydak v. GTE Corp.*,
   No. C. 98-0736 MJJ, 1999 WL 252650 (N.D. Cal. Apr. 22, 1999)..........................................14

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
   No. 2:10-CV-0302 MRP, 2011 WL 4389689 (C.D. Cal. May 5, 2011)...............................10, 12

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ............................................................................................10, 12

*Neas Ltd. v. OJSC RUSNANO*,
   No. 5:15-cv-01612-RMW, 2015 WL 9489896 (N.D. Cal. Dec. 30, 2015) ..............................5, 8

*Nobelbiz, Inc. v. Veracity Networks, LLC*,
   No. 13-CV-2518 YGR, 2013 WL 5425101 (N.D. Cal. Sept. 27, 2013)....................................7, 8

*In re OSG Sec. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013)......................................................................................11

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) .......................................................................................1, 2, 5, 7

*Pinter v. Dahl*,
   486 U.S. 622 (1988)....................................................................................................10, 11, 13

*In re Proxima Corp. Sec. Litig.*,
   No. 93-1139-IEG(LSP), 1994 WL 374306 (S.D. Cal. May 3, 1994)........................................13

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ...............................................................................................2, 11

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ....................................................................................................5

*Wickenkamp v. Strotman*,
   586 Fed. App'x 347 (9th Cir. 2014) ..........................................................................................7

iii

*In re Worlds of Wonder Sec. Litig.*,
    721 F. Supp. 1140, 1148 (N.D. Cal. 1989) ................................................................................10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ...........................................................................................4

**Federal Statutes**

15 U.S.C.
    § 77l ................................................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b) ................................................................................. *passim*

**REPLY MEMORANDUM AND POINTS AND AUTHORITIES**

Bitcoin Suisse AG ("Bitcoin Suisse") respectfully submits this reply memorandum of points and authorities in further support of its motion to dismiss ("Motion") the consolidated complaint (the "Complaint") for lack of personal jurisdiction and failure to state a claim.

## I.   PRELIMINARY STATEMENT

Plaintiff fails, in his opposition (the "Opposition" or "Opp."), to demonstrate any basis for this Court's exercise of personal jurisdiction over Bitcoin Suisse or to otherwise avoid dismissal of Plaintiff's claim under Section 12(a)(1) of the Securities Act of the 1933 (the "Securities Act") against Bitcoin Suisse.  Nor has Plaintiff set forth a "colorable showing" to warrant pursuit of any jurisdictional discovery with respect to whether Bitcoin Suisse nonetheless is subject to specific personal jurisdiction before this Court.

To obfuscate these glaring pleading defects, Plaintiff concocts new "allegations" in his opposition (the "Opposition" or "Opp.") that do not appear in the Complaint, and are thus irrelevant for purposes of deciding Bitcoin Suisse's Motion.  Plaintiff also baselessly attacks the declaration of Niklas Nikolajsen ("Nikolajsen Declaration" or "Decl."), submitted in support of the Motion, without actually disputing any of the factual allegations contained therein or submitting an affidavit or declaration to contradict or take issue with anything in the Nikolajsen Declaration.

Plaintiff has failed to make a *prima facie* showing that specific personal jurisdiction may be exercised over Bitcoin Suisse and, alternatively, failed to state a Section 12(a)(1) claim against Bitcoin Suisse.  Bitcoin Suisse should, accordingly, be dismissed from this action.

## II.   PLAINTIFF HAS FAILED MAKE A *PRIMA FACIE* SHOWING OF SPECIFIC PERSONAL JURISDICTION OVER BITCOIN SUISSE

In order to defeat Bitcoin Suisse's Motion to dismiss for lack of personal jurisdiction, Plaintiff must make a *prima facie* showing that this Court has specific personal jurisdiction over Bitcoin Suisse.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Specific personal jurisdiction requires Plaintiff to make a showing that Bitcoin Suisse purposefully availed itself or purposefully directed its activities at the United States, Plaintiff's claim arises from Bitcoin Suisse's forum-related activities, and the exercise of jurisdiction over Bitcoin Suisse would be

1    reasonable. *See id.* at 1155.  If Plaintiff fails to satisfy any of these requirements for specific

2    personal jurisdiction, the Court cannot exercise personal jurisdiction over Bitcoin Suisse. *See id.*

3    Plaintiff has satisfied none of the above requirements and, thus, Bitcoin Suisse must be dismissed

4    from this action for lack of personal jurisdiction.

5          **A.**    **Plaintiff Has Not Established Purposeful Availment Or Direction By Bitcoin**

6                    **Suisse**

7             Plaintiff argues that this Court may exercise specific personal jurisdiction over Bitcoin

8    Suisse because Bitcoin Suisse has "purposefully availed itself of the privileges of conducting

9    business activities in the U.S., and purposefully directed its activities at the U.S." Opp. at 4.  In

10    support, Plaintiff contends that Bitcoin Suisse (1) "provid[ed] currency conversion services to U.S.

11    investors who wished to invest U.S. dollars" in the alleged ICO (Opp. at 4), (2) "operated an

12    interactive website through which it entered into transactions with U.S. residents" (Opp. at 5), (3)

13    "receiv[ed] the investments made in the Tezos ICO, including investments received from U.S.

14    investors," thereby "holding title to investor monies" (Opp. at 5) and (4) "targeted U.S. investors

15    and U.S. dollar investments" (Opp. at 7).  The fatal flaw with this argument is that not a single one

16    of these "allegations" appear in the Complaint, and Plaintiff's Opposition provides no evidentiary

17    support for these factual arguments.  The new, contrived allegations are thus entirely irrelevant for

18    deciding Bitcoin Suisse's Motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151

19    F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding that new allegations, contained only in plaintiffs'

20    opposition papers, are "irrelevant" for purposes of deciding a motion to dismiss because "a court

21    may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

22    opposition to a defendant's motion to dismiss" to determine the propriety of dismissal under Rule

23    12(b)); *Callahan v. Washoe Cty. Sch. Dist.*, No. 3:15-CV-0200-LRH-WGC, 2016 WL 4521684, at

24    *3 (D. Nev. Aug. 29, 2016) (declining to consider new allegations, raised for the first time in

25    plaintiff's opposition papers, in addressing defendants' motion to dismiss, because such allegations

26    were not part of the operative complaint).[1]  Nowhere in the Complaint does Plaintiff allege that

27     

28          [1] Furthermore, even if Plaintiff's new "allegation" that Bitcoin Suisse holds "legal title" to investor monies, Opp. at 2, 5, had appeared in the Complaint (it does not), it would not be entitled

Bitcoin Suisse actually entered into any transactions with or accepted any funds from U.S. investors.   All Plaintiff alleges in his Complaint is that Bitcoin Suisse "provided a currency conversion facility through which U.S. investors *could* invest in the Tezos ICO" and, after the alleged ICO, acted as a "controlling co-signatory for the funds collected under the Tezos ICO."  *See* Compl. ¶ 25, 26, 59 (emphasis added).   *These* allegations, which actually appear in the Complaint, are not only insufficient to establish that Bitcoin Suisse purposefully availed or purposefully directed its activities at the United States, *see* Motion at 8-11, they are also contradicted by Bitcoin Suisse's website, cited by the Plaintiff in his Complaint, and the Nikolajsen Declaration submitted in support of Bitcoin Suisse's Motion.

Plaintiff's primary argument for purposeful availment by Bitcoin Suisse appears to be that Bitcoin Suisse has purposefully availed itself of the privileges of conducting business activities within the United States by virtue of its interactive website through which certain investors contributed to the purported ICO.  *See* Opp. at 5-6.  However, the very case that Plaintiff cites for the proposition that "numerous courts have found purposeful availment based on an interactive website that results in transactions with residents in a forum" (Opp. at 6), actually held that an interactive website, standing alone, is *insufficient* to demonstrate that a defendant deliberately directed its business at the forum absent a showing that the defendant actively encouraged people from the forum to access the site.  *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (holding that a Florida corporation's use of plaintiff's mark on its website did not support the exercise of personal jurisdiction by an Arizona court).[2]  Thus, even if, as alleged by the Plaintiff,

---

to the assumption of truth on this Motion because it is a legal conclusion, not a factual allegation. *See Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071-72 (9th Cir. 2014) (finding plaintiffs' allegations, in their complaint, that plaintiffs were the fee simple owners of record of certain land to be legal conclusions not entitled to an assumption of truth on a motion to dismiss, and dismissing plaintiff's complaint for lack of jurisdiction because there were no factual allegations to support this legal conclusion).

[2] The two other cases cited by Plaintiff in support of his contention that specific personal jurisdiction may be exercised over Bitcoin Suisse based on its website are equally unavailing. In *LDK Solar*, the court found that specific personal jurisdiction was proper over foreign defendants because the defendants had signed a prospectus filed with the SEC and availed themselves of the US capital markets by selling shares on the New York Stock Exchange. *In re LDK Solar Sec. Litig.*, No. C 07-05182-WHA (N.D. Cal. Sept. 24, 2008) [Dkt. No. 132].  Bitcoin Suisse did not

3

1   Bitcoin Suisse's website "provided currency conversion services through which U.S. investors

2   could invest in the Tezos ICO," this fact is insufficient to support the exercise of specific personal

3   jurisdiction over Bitcoin Suisse where, as here, Plaintiff has failed alleged *in his Complaint* that

4   Bitcoin Suisse actively targeted its services at the United States.  *See id.* (finding the fact that

5   "anyone, anywhere could access" defendant's website was, standing alone, insufficient to

6   demonstrate defendant directed its business towards Arizona absent allegations that defendant

7   directly targeted Arizona); *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 880-81 (N.D.

8   Cal. 2012) (holding that an "interactive, commercial website" was insufficient to confer specific

9   personal jurisdiction over defendant in the absence of allegations that the defendant specifically

10  targeted the relevant forum).

11       Further, Plaintiff's specific personal jurisdiction argument with respect to Bitcoin Suisse is

12  directly contradicted by the sworn affidavit of Bitcoin Suisse's CEO. As set forth in the Nikolajsen

13  Declaration, well in advance of Bitcoin Suisse settling any funds collected in connection with the

14  alleged Tezos ICO, Bitcoin Suisse explicitly stated on its website that it would not accept any US

15  clients and Bitcoin Suisse did not, in fact, contribute any funds to the alleged ICO on behalf of any

16  US citizen, including the Plaintiff.  Decl. ¶¶ 5-6.  Plaintiff does not provide any rebuttal to these

17  sworn statements, but rather attempts, unsuccessfully, to minimize or disregard their clear import.

18       First, Plaintiff argues that the statement on Bitcoin Suisse's website, stating that it cannot

19  take on US clients, may not be considered for its truth.  *See* Opp. at 6.  The import of statement on

20  Bitcoin Suisse's website, however, is not to demonstrate that Bitcoin Suisse did not, in fact, take on

21  US clients - for this proposition, Bitcoin Suisse relies upon the sworn declaration of Niklas

22  Nikolajsen.  Rather, Bitcoin Suisse stating on its website that it cannot take on US clients belies any

23  ─────────────────────────────────────

24  engage in any similar conduct here. In *Zippo Manufacturing*, the court found specific jurisdiction
    over defendant proper because the defendant, through its website, had actually entered into
25  contracts with approximately 3,000 individuals and seven Internet access providers in the forum
    state and "repeatedly and consciously chose to process Pennsylvania residents' applications and to
26  assign them passwords." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D.
    Pa. 1997).  Here, by contrast, Bitcoin Suisse has sworn that it did not contract with any US citizens
27  in connection with the alleged Tezos ICO, Decl. ¶ 5, and Plaintiff come forward with any evidence
    to the contrary, let alone even alleged that any such contacts occurred.
28

1   contention that Bitcoin Suisse was targeting US clients through its website in connection with the

2   alleged Tezos ICO.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir.

3   2004) (finding that an advertisement designed to entice Ohio residents to visit defendant's business

4   was not expressly aimed at the forum state of California).

5        Second, Plaintiff argues, without any authoritative support or contrary evidence, that the

6   sworn Nikolajsen Declaration is somehow of no consequence because "[i]t is just the naked

7   assertion of the declarant" and, at most, "raises factual issues that can only be resolved through

8   personal jurisdictional discovery."  Opp. at 7.  As an initial matter, the Nikolajsen Declaration does

9   not raise a factual dispute because Plaintiff has neither alleged any fact in his Complaint nor come

10  forward with any evidence that is contradictory to the statements therein.  Furthermore, contrary to

11  Plaintiff's baseless argument, the statements in the Nikolajsen Declaration are entirely proper

12  evidence entitled to full consideration in support of Bitcoin Suisse's Motion, particularly because

13  Plaintiff has failed to rebut any of these statements.  *Neas Ltd. v. OJSC RUSNANO*, No. 5:15-cv-

14  01612-RMW, 2015 WL 9489896, at \*3-4 (N.D. Cal. Dec. 30, 2015) (denying plaintiff's request for

15  jurisdictional discovery based upon defendants' sworn declarations denying plaintiff's alleged

16  jurisdictional facts, where plaintiff failed to counter any of defendants' denials beyond "broad

17  assertions" of contacts with the United States).

18       Simply put, Plaintiff's Complaint lacks any allegations of purposeful availment or direction

19  on the part of Bitcoin Suisse and Plaintiff's new "allegations," raised for the first time in his

20  Opposition and directly controverted by the Nikolajsen Declaration, do not remedy this patent

21  deficiency.  Plaintiff has failed to satisfy the first requirement of the Ninth Circuit's three-part test

22  for specific jurisdiction with respect to Bitcoin Suisse and this failure, alone, is sufficient to warrant

23  dismissal of Bitcoin Suisse from this action for lack of personal jurisdiction.  *See, e.g., Pebble*

24  *Beach*, 453 F.3d at 1158-60 (dismissing defendant from action for lack of personal jurisdiction

25  because defendant did not purposefully avail or direct his conduct at the United States or

26  California).

27

28

**B.     Plaintiff Has Failed To Establish That His Claim Against Bitcoin Suisse Arises From Bitcoin Suisse's Forum-Related Activities**

Notwithstanding the fact that Plaintiff's failure to satisfy the first element of the Ninth Circuit's three-part test for specific personal jurisdiction is, alone, sufficient for this Court to decline exercising personal jurisdiction over Bitcoin Suisse, Plaintiff has also failed to satisfy the second element of the Ninth Circuit's three-part test.  Plaintiff contends that, "[b]ut for Bitcoin Suisse's currency conversion services, U.S. investors investing U.S. dollars would not have been able to invest in the Tezos ICO."  Opp. at 8.  This contention, however, is fundamentally flawed because, as set forth in the Nikolajsen Declaration, Bitcoin Suisse did not make a single contribution to the alleged Tezos ICO on behalf of any U.S. citizens.  Decl. ¶ 5.  Thus, any U.S. citizens investing U.S. dollars in the alleged ICO clearly could have, and must have, done so without Bitcoin Suisse's services.  And, indeed, as set forth above, Plaintiff does not even allege in his Complaint that he or any other U.S. investors invested in the alleged Tezos ICO by utilizing Bitcoin Suisse's services.  Because Plaintiff has not identified any forum-related activities by Bitcoin Suisse which could be the "but for" causation of Plaintiff's purported injuries, Plaintiff has also failed to satisfy the second element of the Ninth Circuit's three-part test for specific personal jurisdiction and so, Bitcoin Suisse is entitled to dismissal from this action.  *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051-52 (9th Cir. 1997) (granting defendant's motion to dismiss for lack of personal jurisdiction where plaintiff's injuries did not arise out of defendants' alleged activities).[3]

---

[3] The Court need not reach the third factor, *i.e.*, whether the exercise of personal jurisdiction over Bitcoin Suisse would be reasonable, as a defendant need only demonstrate the unreasonableness of a court's exercise of personal jurisdiction if Plaintiff has shown that the defendant's activities were purposefully directed at the relevant forum and that these forum-related activities were the but-for causation of Plaintiff's injuries. *See Am. Nat'l Red Cross*, 112 F.3d at 1052.  Here, as set forth *supra*, Plaintiff has shown neither.  In any event, as set forth in Bitcoin Suisse's Motion, the exercise of specific personal jurisdiction over Bitcoin Suisse would not be reasonable here.

### III.  PLAINTIFF IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY FROM BITCOIN SUISSE BECAUSE HE FAILED TO MAKE A "COLORABLE SHOWING" OF PERSONAL JURISDICTION OVER BITCOIN SUISSE

Plaintiff is not entitled to jurisdictional discovery because, as set forth above, he has failed to make a colorable showing of specific personal jurisdiction over Bitcoin Suisse.  In the Ninth Circuit, a "colorable showing" is "equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Nobelbiz, Inc. v. Veracity Networks, LLC*, No. 13-CV-2518 YGR, 2013 WL 5425101, at *4 n.3 (N.D. Cal. Sept. 27, 2013). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160.

This is precisely what has occurred here.  Plaintiff's sole jurisdictional allegations, that Bitcoin Suisse "provided a currency conversion facility through which U.S. investors *could* invest in the Tezos ICO" and thereafter acted as a "controlling co-signatory for the funds collected under the Tezos ICO," Compl. ¶ 25-26, set forth, at best, attenuated, speculative contacts between Bitcoin Suisse and the United States; and, Plaintiff has come forward with absolutely no evidence to controvert Bitcoin Suisse's specific denials of any targeting of U.S. investors or any contributions to the alleged Tezos ICO on behalf of U.S. citizens, *see* Decl.¶¶ 5-6.  Plaintiff, accordingly, is not entitled to jurisdictional discovery.  *See Wickenkamp v. Strotman*, 586 Fed. App'x 347, 348 (9th Cir. 2014) (finding no abuse of discretion in denying plaintiff's request for jurisdictional discovery where the facts relevant to personal jurisdiction were uncontroverted); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (finding no abuse of discretion in denying plaintiff's request for jurisdictional discovery because the requested discovery "was based on little more than a hunch that it might yield jurisdictionally relevant facts"); *Pebble Beach*, 453 F.3d at 1161 (denying plaintiff's request for jurisdictional discovery for its failure to make a "colorable showing" of personal jurisdiction over the defendant); *Neas Ltd.*, 2015 WL 9489896, at *4 (denying plaintiff's request for jurisdictional discovery based upon defendants' sworn, uncontroverted declarations denying plaintiff's alleged jurisdictional facts, where plaintiff failed to counter any of defendants'

1   denials beyond "broad assertions" regarding their contacts with the United States); *Nobelbiz*, 2013

2   WL 5425101, at *4 n.3 (denying plaintiff's motion for jurisdictional discovery where plaintiff

3   offered "only bare allegations" to support personal jurisdiction which were "amply controverted by

4   its own supporting documents").[4]

5          Plaintiff has not made a colorable showing that this Court may exercise specific personal

6

---

7       [4] The four cases cited by Plaintiff in which courts within the Ninth Circuit permitted
jurisdictional discovery are entirely distinguishable from present circumstances. *See* Opp. at 12

8   n.4. In three of the cases, the courts granted jurisdictional discovery to determine whether the
contacts of a domestic entity could be imputed to a foreign defendant under an alter ego theory for

9   purposes of the jurisdictional analysis. *See Advanced Targeting Sys., Inc. v. Advanced Pain*

10  *Remedies, Inc.*, No. 3:12-CV-2915-JM (WMC), 2013 WL 2417876, at *5-6 (S.D. Cal. June 3,
2013) (granting plaintiff's request for jurisdictional discovery into whether co-defendants were alter

11  egos, where plaintiff had made a colorable showing that the two defendants' ties to one another
went beyond "a normal parent-subsidiary relationship"); *Brady v. Grendene USA, Inc.*, No. 12-cv-

12  0604 WQH (KSC) (S.D. Cal. July 17, 2012) [Dkt. No. 31] (granting plaintiff's request for
jurisdictional discovery regarding the extent of a foreign defendant's control over a domestic

13  defendant for purposes of determining whether the domestic defendant's contacts with the forum

14  could be imputed to the foreign defendant through an agency relationship for purposes of the
jurisdictional analysis); *Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, CV 10-8736 PSG (JCx)

15  (C.D. Cal. July 1, 2011) [Dkt. No. 44] (granting plaintiff's request for jurisdictional discovery as to
whether a subsidiary's contacts with the forum state could be imputed to the defendant parent

16  company under an alter ego theory, where plaintiff came forward with some evidence that the two
entities presented themselves and operated as a single corporate entity). In these cases, plaintiffs

17  had identified meaningful, relevant contacts between an entity and the relevant forum, and the

18  courts permitted jurisdictional discovery, not so that the plaintiffs could fish for any additional
jurisdictionally-relevant contacts, but merely to determine whether such contacts already identified

19  could be imputed to the defendant for purposes of the jurisdictional analysis. Here, by contrast,
Plaintiff has not identified any jurisdictionally relevant contacts between Bitcoin Suisse, or any

20  related entity, and the United States, and he should not be permitted to go on a fishing expedition

21  for jurisdictionally relevant contacts.

22      In the remaining case cited by Plaintiff in support of jurisdictional discovery, the court
granted plaintiff's request for jurisdictional discovery because the plaintiff made a "colorable

23  showing" of personal jurisdiction by alleging that the defendant "specifically target[ed] California
residents by offering local phone numbers to dozens, if not hundreds of California cities," "own[ed]

24  servers and equipment in California which it use[d] to support [its] customers," and specifically
targeted Los Angeles "as a major hub" through certain "strategic partnerships and infrastructure

25  projects. *j2 Global Commc'ns, Inc. v. Vitelity Commc'ns*, LLC, No. 11-07904 DDP (Ex) (C.D. Cal.

26  Apr. 12, 2012) [Dkt. No. 27]. By contrast, Plaintiff has not alleged in his Complaint that Bitcoin
Suisse specifically targeted U.S. investors or that Bitcoin Suisse owns or operates any property

27  within the United States and, as set forth in the uncontroverted Nikolajsen Declaration, Bitcoin
Suisse has not, in fact, had either of these contacts with the United States.

28

REPLY IN SUPPORT OF BITCOIN SUISSE'S MOTION TO DISMISS
CASE NO. 3:17-CV-06779-RS

jurisdiction over Bitcoin Suisse.  Plaintiff is not entitled to jurisdictional discovery to remedy his blatant pleading deficiencies.

## IV.   PLAINTIFF HAS FAILED TO STATE A SECTION 12(a)(1) CLAIM AGAINST BITCOIN SUISSE

Even if, *arguendo*, this Court were to find that Plaintiff made a *prima facie*, or even colorable showing, of specific personal jurisdiction over Bitcoin Suisse, Bitcoin Suisse is still entitled to dismissal from this action for Plaintiff's failure to sufficiently state a Section 12(a)(1) claim against it.

### A.   Plaintiff Has Not Sufficiently Alleged That Bitcoin Suisse Offered Or Sold Securities Within The Meaning Of Section 12

Plaintiff's allegations alleging that Bitcoin Suisse is a "seller" within the meaning of Section 12 suffer from the same infirmities as Plaintiff's jurisdictional allegations against Bitcoin Suisse: what allegations do appear in the Complaint are insufficient to state a Section 12 claim against Bitcoin Suisse and the remainder of Plaintiff's "allegations" that Bitcoin Suisse is a statutory "seller" do not appear in the Complaint and are, thus, not entitled to consideration on this Motion.

Plaintiff contends that Bitcoin Suisse constitutes a "seller" under Section 12 because Bitcoin Suisse (i) "offered an alternative facility to the tezos.com website for investment in the Tezos ICO" and "acted as an intermediary and provided investors with currency conversion services;" (ii) "claimed that it could store XTZ tokens on behalf of investors in a "sandbox environment;" and (iii) was a "controlling, co-signatory for the funds collected in the Tezos ICO, and continues to act as a mandatory co-signatory for the Tezos Foundation on all crypto-asset transactions."  Opp at 14 (citing Compl. ¶¶ 25, 59).  These allegations, however, do not establish Bitcoin Suisse's seller status.

First, the fact that Bitcoin Suisse offered to store XTZ, *on behalf of non-U.S. clients only*, *after* the alleged ICO and, *post*-ICO, acted as a "controlling, co-signatory on the funds collected in the Tezos ICO" and "mandatory co-signatory for the Tezos Foundation on all crypto-asset transactions" is entirely irrelevant to whether Bitcoin Suisse's can be held liable under Section

9

12(a)(1) as a statutory "seller." Section 12(a)(1) sets forth a cause of action against defendants who violated Section 5 of the Securities Act by issuing unregistered securities. *See* 15 U.S.C. § 77l. Therefore, a defendant's conduct after the offering and/or sale of the alleged securities cannot possibly constitute a violation of Section 5 or give rise to a claim under Section 12(a)(1). *See* 15 U.S.C. § 77l.

Further, Plaintiff's sole allegation regarding Bitcoin Suisse's pre-ICO conduct, that Bitcoin Suisse offered an alternative facility to invest in the alleged ICO and provided currency conversion services to certain unspecified investors, is insufficient to establish that Bitcoin Suisse is a "seller" that can be held liable under Section 12(a)(1) because it does not allege that Bitcoin Suisse was "directly involved" in the solicitation of securities purchases or include any specific allegations of how Bitcoin Suisse solicited securities purchases. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005) (holding that a court must determine whether defendants were "directly involved" in the actual solicitation of securities purchases in order to assess whether plaintiff's Section 12 claims survive a motion to dismiss); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (dismissing Section 12 claim with respect to defendants for whom plaintiff failed to make "very specific allegations of solicitation" beyond merely alleging that defendants "promoted" the sale of securities). At most, Plaintiff has alleged that Bitcoin Suisse's website and currency conversion services may have "assisted" in the *other defendants'* solicitation efforts, which is insufficient to impose Section 12 liability on Bitcoin Suisse. *See Pinter v. Dahl*, 486 U.S. 622, 651 n.27 (1988) (a "collateral participant" to the offer or sale of securities or one who "merely assist[s] in another's solicitation efforts" is not subject to Section 12 liability); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989) (dismissing Section 12 claim against defendants who merely "performed professional services" in connection with a securities issuance); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1148 (N.D. Cal. 1989) (dismissing Section 12 claim against defendant where plaintiff failed to allege that defendant was "more than a collateral participant in" the securities sales).

In a blatant attempt to cure his pleading deficiencies, Plaintiff now alleges, for the first time,

1   that Bitcoin Suisse was "financially motivated to solicit investors in the Tezos ICO."  Opp. at 14.

2   Like many of Plaintiff's jurisdictional "allegations," this "allegation" does not appear in the

3   Complaint and is, therefore, not entitled to consideration on this Motion. *See Schneider*, 151 F.3d

4   at 1197 n.1; *Callahan*, 2016 WL 4521684, at *3.  Indeed, in order to be held liable as a statutory

5   "seller" under Section 12, a defendant must have been soliciting securities purchases, "motivated at

6   least in part by a desire to serve his own financial interests," and so, Plaintiff's failure to allege, *in*

7   *his Complaint*, that Bitcoin Suisse was financially motivated is a further deficiency in Plaintiff's

8   attempt to sufficiently allege that Bitcoin Suisse was a statutory "seller" in connection with the

9   alleged Tezos ICO. *See Pinter*, 486 U.S. at 647.

10       Tellingly, none of the authority cited by Plaintiff actually supports his argument that he has

11   sufficiently alleged Bitcoin Suisse's seller status. *See* Opp. at 14.  In *OGS*, the court denied

12   defendants' motion to dismiss because the plaintiff had alleged that defendants signed the

13   registration statement for the offering, prepared the defective prospectus for the offering, and

14   solicited the securities for their personal financial gain, collectively receiving over $289 million in

15   proceeds from the offering. *See In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 403-04 (S.D.N.Y.

16   2013).  Similarly, in *American Bank*, the court found that plaintiff had sufficiently alleged

17   defendant's seller status where defendant was alleged to have "actively solicited the sale of the

18   shares through participation in preparation of the registration statement and prospectus and in road

19   shows, 'with a motivation' to serve [its] own financial interests." *In re Am. Bank Note*

20   *Holographic, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 439 (S.D.N.Y. 2000).  Finally, in *Keegan*

21   *Management*, the court found plaintiff had adequately alleged defendant's seller status where the

22   complaint listed several ways that defendants' conduct in connection with the alleged securities

23   offering served their financial interests, including protecting their executive positions and

24   substantial compensation, enhancing the value of defendants' personal holdings to obtain profits

25   from advantageous sales, and enabling the public offering to go forward. *In re Keegan Mgmt. Co.*

26   *Sec. Litig.*, No. 91-20084 SW, 1991 WL 253003, at *8 (N.D. Cal. Sept. 10, 1991).  Here, by

27   contrast, Plaintiff has not alleged that Bitcoin Suisse had any involvement in preparing any of the

28

1  offering materials for the alleged Tezos ICO, that Bitcoin Suisse had any direct participation in the

2  marketing and solicitation efforts for the alleged ICO, or any specific ways in which Bitcoin

3  Suisse's conduct served its financial interests.[5]

4         Finally, in a last ditch effort to avoid the consequences of his pleading deficiencies, Plaintiff

5  argues that his threadbare allegations are sufficient to state a Section 12(a)(1) claim against Bitcoin

6  Suisse because, whether a defendant is a seller under Section 12, is a question of fact not

7  appropriately resolved on a motion to dismiss. *See* Opp. at 15. Not so. Where, as here, a plaintiff

8  has failed to make specific factual allegations regarding a defendant's purported offer or sale of

9  securities, courts within the Ninth Circuit have routinely dismissed such defendants due to

10  plaintiff's failure to sufficiently allege seller status. *See, e.g.*, *Moore*, 885 F.2d at 537 (affirming

11  dismissal of Section 12 claim against legal and account professionals because plaintiff failed to

12  sufficiently allege these professionals' role in the solicitation of securities purchases); *Me. State*

13  *Ret. Sys.*, 2011 WL 4389689, at *9 (dismissing Section 12 claim with respect to defendants for

14  whom plaintiff failed to make specific allegations of solicitation); *Le Kun Wu v. Swabplus, Inc.*,

15  No. 08-07821-RGK, 2009 WL 10673199, at *4 (C.D. Cal. Apr. 3, 2009) (dismissing Section

16  12(a)(1) claim against defendants due to plaintiff's failure to adequately allege that defendants were

17  statutory "sellers"). Because Plaintiff has failed to allege that Bitcoin Suisse was a "seller" within

18  the meaning of Section 12, Bitcoin Suisse's dismissal from this action is perfectly appropriate and

19  consistent with controlling legal authority.

20  **B.    Plaintiff Lacks Standing To Assert Section 12(a)(1) Claim Against Bitcoin
21  Suisse**

22        Contrary to Plaintiff's argument, see Opp. at 15-16, Plaintiff lacks standing to assert the

23  Section 12(a)(1) claim against Bitcoin Suisse because Plaintiff has not alleged that, and has not, in

24  fact, purchased tokens in the alleged Tezos ICO through Bitcoin Suisse. Plaintiff does dispute that

---

25       [5] That Plaintiff *has* made such allegations with respect to the other defendants in this action,

26  further underscores how limited Plaintiff's allegations against Bitcoin Suisse as a purported
statutory "seller" actually are. *See, e.g.*, Compl. ¶¶ 33 (Arthur Breitman released the Tezos White

27  Paper), 54, 110-11 (describing the Breitman's marketing of the alleged Tezos ICO through U.S.
press outlets).

28

1    he had absolutely no contact with Bitcoin Suisse in connection with the alleged Tezos ICO.

2    Instead, Plaintiff merely points out that he alleged that "Defendants, including Bitcoin Suisse, sold

3    Tezos tokens through the Tezos ICO." Opp. at 15 (citing Compl. ¶¶ 10, 64). As an initial matter,

4    Plaintiff's allegation that "[d]efendants offered and sold Tezos tokens" is too general and

5    conclusory to attribute to Bitcoin Suisse. *See Bennett v. Durham*, No. 1:10-CV-147, 2011 WL

6    1225671, at *4 (W.D. Ky. Mar. 30, 2011) (holding that plaintiff's allegation that "defendants were

7    primary participants in the offer and sale of securities" was a "mere conclusory statement[]" not

8    entitled to the assumption of truth on a motion to dismiss). Moreover, an allegation lumping in

9    Bitcoin Suisse with all other defendants in the alleged offer or sale of Tezos tokens is entirely

10   irrelevant for purposes of Plaintiff's Section 12(a)(1) claim if Plaintiff did not purchase his tokens

11   through Bitcoin Suisse and is, thus, not an aggrieved purchaser. *See Pinter*, 486 U.S. at 643

12   (confining Section 12 liability to those situations in which a sale has actually taken place between

13   the plaintiff and defendant); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 64 F.R.D.

14   432, 433-34 (S.D.N.Y. 1974) (a Section 12(a)(1) claim may only be maintained by an "aggrieved

15   purchaser" of the defendant).

16        Plaintiff alternatively argues that he may maintain his Section 12(a)(1) claim against Bitcoin

17   Suisse because there is no requirement that Bitcoin Suisse have personally solicited the sale from

18   the Plaintiff. *See* Opp. at 15-16. But, as borne out by the authority cited by Plaintiff, the

19   requirement of personal solicitation is not absolute only "where significant involvement in the

20   solicitation is found," such as participation in the preparation of the offering or promotional

21   materials. *Am. Bank*, 93 F. Supp. 2d at 439 (declining to impose the personal solicitation

22   requirement where defendant was alleged to have "actively solicited the sale of shares through

23   participation in preparation of the registration statement and prospectus and in road shows").[6]

24

25        [6] *See also Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (finding defendants were

26   "sellers" despite no direct contact with plaintiffs, where defendants prepared and circulated the
     prospectus to the plaintiffs and the individual who was in direct communication with the plaintiffs

27   did so "at the behest of" the defendants); *In re Proxima Corp. Sec. Litig.*, No. 93-1139-IEG(LSP),
     1994 WL 374306, at *5 (S.D. Cal. May 3, 1994) (declining to dismiss Section 12 claim against

28   defendants where plaintiffs alleged that defendants "actively took part in encouraging prospective

13

1  Here, however, Plaintiff has not alleged that Bitcoin Suisse "actively solicited" purchases by

2  participating in the preparation of Tezos offering or marketing materials to obviate the personal

3  solicitation requirement.

4      Quite simply, Plaintiff did not purchase tokens in the alleged Tezos ICO through Bitcoin

5  Suisse, and so Plaintiff cannot possibly have been aggrieved or injured by Bitcoin Suisse's conduct.

6  Plaintiff, accordingly, lacks standing to assert a Section 12(a)(1) claim against Bitcoin Suisse.[7]

7  **V.    CONCLUSION**

8      For the foregoing reasons, Bitcoin Suisse respectfully requests that its Motion be granted.

9

10  DATED: June 29, 2018

11                            **BROWN RUDNICK LLP**

12

13                      By: */s/ Leo J. Presiado*
                            Leo J. Presiado (SBN 166721)
14                          BROWN RUDNICK LLP
                            2211 Michelson Drive, 7th Floor
15                          Irvine, CA 92612
                            Telephone: (949) 752-7100
16                          Facsimile: (949) 252-1514
17                          Email: lpresiado@brownrudnick.com

18                          -and-

19                          Sigmund S. Wissner-Gross (*admitted pro hac vice*)

20

21  purchasers to buy [the securities] (including as part of the road shows and telemarketing sales
    pitches) and thereby solicited sales by disseminating false . . . Prospectuses").
22

23  [7] Plaintiff's request that Bitcoin Suisse, if found not to be a "seller" within the meaning of
    Section 12, remain in this action as a nominal defendant should also be rejected. *See* Opp. at 16
24  n.5. As is the case with respect to any defendant, a court, *inter alia*, must have personal jurisdiction
    over a nominal defendant; otherwise the nominal defendant is entitled to dismissal from the action.
25  *See Frost v. Sears*, 997 F.2d 588 (9th Cir. 1992) (affirming dismissal of nominal defendant for lack
    of personal jurisdiction); *Maydak v. GTE Corp.*, No. C. 98-0736 MJJ, 1999 WL 252650, at *4
26  (N.D. Cal. Apr. 22, 1999) (dismissing complaint as to nominal defendants named "only for 'res
    judicata purposes'" for lack of personal jurisdiction). As set forth above, this Court cannot exercise
27  personal jurisdiction over Bitcoin Suisse and so, Bitcoin Suisse cannot remain in this action even as
    a nominal defendant if the Section 12(a)(1) claim is dismissed against Bitcoin Suisse.
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jessica N. Meyers (*admitted pro hac vice*)
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Email: swissner-gross@brownrudnick.com
       jmeyers@brownrudnick.com


*Attorneys for Defendant Bitcoin Suisse*

15