Christopher L. Wanger (CA Bar No. 164751)
Cwanger@manatt.com
Ana Guardado (CA Bar No. CA 286732)
Aguardado@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
One Embarcadero Center
30th Floor
San Francisco, CA  94111
Telephone:  (415) 291-7400
Facsimile:   (415) 291-7474

Attorneys for Defendants
TIMOTHY C. DRAPER and DRAPER ASSOCIATES V CRYPTO LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to the All Actions. | Master File No. 17-cv-06779-RS<br><br><u>CLASS ACTION</u><br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANTS TIMOTHY C. DRAPER AND DRAPER ASSOCIATES V CRYPTO LLC TO DISMISS CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**<br><br>**Date:       July 19, 2018**<br>**Time:       1:30 pm**<br>**Courtroom: 3, 17th Floor**<br>**Judge:       Hon. Richard Seeborg** |

## I.    INTRODUCTION

Plaintiff's Opposition confirms that he had no legitimate basis for naming the Draper Defendants as parties to either of the two securities counts in his Complaint. Although Plaintiff contends that the Draper Defendants were of "crucial importance" to and played a "key role" in the Tezos ICO, these contentions do not excuse his failure to plead the requisite elements of either a statutory seller claim under Section 12(a)(1) or a "control person" claim under Section 15.

Plaintiff's Opposition makes clear that he solely seeks to hold the Draper Defendants liable under Section 12(a)(1) for *soliciting* Plaintiff's alleged purchase of an unregistered security. But Plaintiff does not dispute that he had no knowledge of the Draper Defendants or any statement made by them when he participated in the Tezos ICO and that no statement attributable to them had any effect whatsoever on his purported investment decision. As a result, Plaintiff's solicitation claim fails as a matter of law under the Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622 (1988). That case holds that Section 12(a)(1) liability does not extend to collateral persons in unregistered securities sales who are merely alleged to be participants in pre-sale activities and instead is limited to those who "successfully solicit" the defendant's investment.

Despite his failure to sufficiently allege that the Draper Defendants solicited his purported investment, Plaintiff argues the Draper Defendants should still be held liable under Section 12(a)(1) because they made public statements about the Tezos ICO and their intent to participate in it. But Plaintiff's legal support for this argument consists exclusively of inapplicable cases under Section 12(a)(2) in which a corporate issuer, officer or director was alleged to have prepared, signed or approved a materially misleading prospectus or registration statement distributed to investors. Those cases cannot save Plaintiff's claims against the Draper Defendants, who are not alleged to be corporate issuers, officers or directors or to have had any role in preparing misleading offering materials that induced Plaintiff's alleged investment. Again, at most, Plaintiff alleges that the Draper Defendants were merely participants in the activities leading up to the Tezos ICO – precisely the type of "collateral participants" to whom Section 12(a)(1) liability does not extend under *Pinter*.

The deficiencies in Plaintiff's Section 15 claim against the Draper Defendants as control persons of DLS are even more stark. Plaintiff concedes that to state a Section 15 claim against the Draper Defendants he is required to allege both that the Draper Defendants have some qualifying status or position with DLS that provided them with actual power to control its actions and that they were participants in DLS's day-to-day affairs. But Plaintiff cannot identify any such position of, or participation by, the Draper Defendants at DLS. Instead, Plaintiff's Opposition confirms that he is relying solely on the Draper Defendants' alleged status as minority shareholders in DLS for his claim. But mere minority shareholder status cannot provide the Draper Defendants with actual power to control DLS and is insufficient as a matter of law to qualify the Draper Defendants as control persons. As a result, Plaintiff's Section 15 claim fails.

The Court should grant the Motion and dismiss the claims against the Draper Defendants.

## II. DISCUSSION

### A. The First Count for Violation of Section 12(a)(1) of the Securities Act Fails to State a Claim Against the Draper Defendants Because Plaintiff Has Not Alleged that Either Draper Defendant Successfully Solicited His Alleged Purchase of Tezos Tokens.

Plaintiff does not dispute that his Complaint contains no allegation that the Draper Defendants passed title to any security. Instead, Plaintiff's Opposition makes clear that he seeks to hold the Draper Defendants liable under Section 12(a)(1) for *soliciting* Plaintiff's alleged purchase of a security. But Plaintiff's solicitation claim fails under the Supreme Court's decision in *Pinter*.

*Pinter* holds that Congress did not intend liability under Section 12(a)(1) to extend to "collateral participants" in unregistered securities sale who are merely alleged to be involved "in the activities leading up to the sale." 486 U.S. at 650. In reaching this conclusion, the *Pinter* Court noted that, unlike Section 11, which prohibits the filing of misleading registration statements and extends liability to those who participate in the activities leading up to the sale (such as by signing or assisting in the preparation of a registration statement), Section 12(a)(1) contains no provision extending liability to collateral participants. 486 U.S. at 650 fn. 26. The *Pinter* Court concluded that Section 12(a)(1)'s express terms confirm that the statute does not

extend liability to "those who merely assist in another's solicitation efforts." 486 U.S. at 651 fn. 27. According to *Pinter,* the "purchase from" requirement of Section 12(a)(1) focuses on the defendant's *relationship* with the plaintiff purchaser. 486 U.S. at 651.

Under the standard set forth in *Pinter*, to state a claim under Section 12(a)(1), a plaintiff must demonstrate "not only that [the defendant] actively solicited investors, but that [the] plaintiff purchased the securities as a result of [the defendant's] solicitation." 2 A.A. Sommer, Jr., *Federal Securities Act of 1933*, § 9.03[5][a] (Matthew Bender, Rev. Ed., 2018) *citing Steed Fin. LDC v. Nomura Secs. Int'l Inc.*, 2001 U.S. Dist. LEXIS 14761 (S.D.N.Y. 2001); *In re OSG Secs. Litig.*, 971 F. Supp 2d 387, 402 (S.D.N.Y. 2013); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1148 (N.D. Cal. 1989). *See also In re Daou Sys.*, 411 F.3d at 1106, 1029 (9th Cir. 2004) (defendant must be "directly involved" in the actual solicitation); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003) (dismissing Section 12 claims where defendants did not "directly communicate with the buyer" or otherwise "assume[] the 'unusual' role of becoming a 'vendor's agent'"); and *Brody v. Homestore, Inc.*, 2003 U.S. Dist. LEXIS 17267 at *17 (N.D. Cal 2003) (holding that allegations that defendants met with potential investors and money managers and presented highly favorable information about the Company were insufficient to establish the defendants as sellers within the meaning of Section 12). Plaintiff's claim fails to meet this standard.

As noted in the Draper Defendants' opening brief, Plaintiff's Complaint fails to suggest that there is *any* relationship whatsoever between him and the Draper Defendants, let alone that Plaintiff participated in the Tezos ICO as a result of a purported solicitation by the Draper Defendants. Plaintiff's Complaint fails to allege that Plaintiff knew of or was aware of any statement made by the Draper Defendants prior to his participation in the Tezos ICO. In short, no allegation in Plaintiff's complaint can be read to suggest that the Draper Defendants successfully urged or induced Plaintiff to participate in the Tezos ICO or that any conduct of theirs had any effect whatsoever on Plaintiff's alleged investment decision.

Plaintiff implicitly acknowledges that, to state a solicitation claim against them, he must allege that the Draper Defendants successfully solicited his alleged investment. (*See e.g.,*

Opposition at p. 5 *citing Pinter, supra,* 486 at 647 ("liability extends to the person who successfully solicits the purchase")). But Plaintiff makes no attempt to suggest that the Draper Defendants had any role in his alleged investment and simply ignores this fatal flaw in his claim.

Plaintiff cites several cases that stand for the general proposition that "whether or not defendants actually solicited plaintiff's sales is a factual question which generally should be left to the jury." But Plaintiff's argument assumes that he has alleged facts that could support a finding that the Draper Defendants successfully solicited his alleged purchase of a security. For example, Plaintiff cites *In re Charles Schwab Corp. Sec Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) and *Primo v. Pac Biosciences of Cal. Inc.*, 940 F. Supp. 2d 1105 (N.D. Cal. 2013) both of which are cases under Section 12(a)(2) arising out of public offerings made through materially misleading registration statements. In those cases, the defendants were either issuers or officers and directors of the issuer who were alleged to have signed the materially misleading registration statements distributed to investors. The plaintiffs in both cases expressly alleged that the defendants "solicited" their investment by means of the false and misleading offering materials provided to the plaintiffs. *Schwab, supra,* 257 F.R.D. at 549-550 and *Primo, supra,* 940 F. Supp. 2d at 1125.

*Schwab* and *Primo* are readily distinguishable and only serve to highlight the deficiencies in Plaintiff's Complaint. This is not a Section 12(a)(2) case in which the plaintiff alleges he was induced to invest based on material misrepresentations contained in written offering materials. Plaintiff has studiously avoided any suggestion that his claim is based on misrepresentations by the Draper Defendants or any other defendant. Moreover, Plaintiff makes no allegations that, prior to his participation in the Tezos ICO, (1) he had read or received any document signed or containing any statement made by the Draper Defendants[1]; (2) he had heard or was aware of any

---

[1] One indication of sufficient involvement in solicitation for Section 12(a)(1) liability to be imposed is the defendant's control over the content of information provided to potential investors and control over which potential investors will be solicited. See 2 Sommer, *Federal Securities Act of 1933, supra,* at § 9.03[5][a] *citing Perry v. Duoyan Printing, Inc.*, 2013 U.S. Dist. LEXIS 121034, at *36 (S.D.N.Y. 2013) and *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926 (S.D.N.Y. 1989). Here, Plaintiff makes no allegation that the Draper Defendants had any control over either the information to be provided to potential participants in the Tezos ICO or the persons to be targeted in the ICO. Plaintiff's Opposition does not dispute that the Draper Defendants did not prepare or review and are nowhere referenced in the "Tezos Overview"

statement attributable to the Draper Defendants; or (3) that the Draper Defendants successfully solicited by any means whatsoever Plaintiff's participation in the Tezos ICO.

Plaintiff identifies two allegations that he contends confirm that the Draper Defendants were not mere participants in the Tezos ICO but instead were "integral" to its success. Specifically, Plaintiff alleges that the Draper Defendants (1) "actively promoted the Tezos ICO"; and (2) were viewed by the Breitmans as "partners" in the Tezos ICO.[2]  (Opposition, p. 6 and Complaint ¶¶ 60-63.)  But neither allegation is sufficient under *Pinter* to support a claim for solicitation.

As a threshold matter, the issue of whether the Draper Defendants were "integral" to the Tezos ICO is immaterial and confirms that Plaintiff misapprehends the standard applicable to his solicitation claim.  The *Pinter* Court expressly rejected a definition of seller under Section 12(a)(1) previously employed by lower courts that extended the term to persons who were "substantial factors" in or the "proximate cause" of the transaction at issue.  See 2, *Federal Securities Act of 1933*, *supra*, at § 9.03[5][a] fn. 14.  Again, *Pinter* establishes that the "purchase from" requirement of Section 12(a)(1) focuses on the defendant's relationship with the plaintiff-purchaser and a complaint that fails to allege any such relationship cannot be saved by allegations that the defendant was the "cause" of the transaction at issue.  486 U.S. 651-652.  But Plaintiff's argument that the Draper Defendants were "integral" to the Tezos ICO is nothing more than that.

Instead, Plaintiff has alleged, at most, that the Draper Defendants were minority investors in DLS who made public statements about the merits of cryptocurrencies, including the Tezos cryptocurrency, and their underlying blockchain technology.  (Complaint, ¶¶ 23, 38, and 60-64.) But those allegations do not place the Draper Defendants into any category of the typical defendant the courts have found liable for solicitation under Section 12(a)(1), including issuers, banks, lenders, underwriters, officers, directors, brokers, accountants or attorneys.  *See e.g.*, 2,

---

document or other written materials made available in connection with the Tezos ICO.

[2] Any suggestion that the Draper Defendants were actual partners in DLS is contradicted by Plaintiff's own allegations.  Plaintiff admits that DLS is a corporation and not a partnership. (Complaint, ¶ 15.)  Moreover, the paragraph that Plaintiff cites in his Opposition in support of the claim that the Breitmans viewed Draper as a partner explains the basis for that view: the Breitmans offered Draper "a small fraction of DLS."  (Complaint, ¶ 63.)

*Federal Securities Act of 1933*, *supra*, at § 9.03[5][b][i]-[vii] discussing typical categories of Section 12(a)(1) defendants.  Not surprisingly, Plaintiff fails to cite a single case in which a court extended liability under Section 12(a)(1) to a defendant who was alleged only to be a minority shareholder in the issuer and who was not alleged to have signed or approved any materially misleading offering materials distributed to investors.

None of the cases cited by Plaintiff support his argument that the Draper Defendants' alleged promotion of the Tezos ICO or the Breitman's view of them as "partners" makes them liable for solicitation.[3]  Again, Plaintiff relies exclusively on District Court opinions under Section 12(a)(2) that are both inapplicable and not binding on this Court.  For example, Plaintiff first cites *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 187 (S.D.N.Y 2003).  There, the Court found that the plaintiff stated a Section 12(a)(2) claim against the issuer's CEO and CFO who were both alleged to have signed a materially misleading registration statement and to have "appeared before investors and financial news agencies to tout the financial vitality of [the issuer] and thereby encourage investors to purchase the issuer's securities." 381 F. Supp. 2d at 187.  Similarly, in another case cited by Plaintiff - *In re Valence Technology Sec. Litig.*, 1995 U.S. Dist. LEXIS 10379 (ND. Cal. 1995) - the Court found that (although not a model of pleading) the plaintiff stated a Section 12(a)(2) claim against an underwriter by alleging that the underwriter orchestrated a multi-city road show for investors to present highly favorable but misleading information about the company and that the underwriter solicited sales through such misleading reports and roadshows. 1995 U.S. Dist. LEXIS 10379 at *50.

Neither *Vivendi* nor *Valence* supports Plaintiff's claim against the Draper Defendants.  Again, the Draper Defendants are not officers or directors of DLS and are not alleged to have induced or solicited the Plaintiff's participation in the Tezos ICO by means of materially misleading offering materials.

---

[3] Plaintiff's argument that the Breitman's view of Draper as a "partner" supports the solicitation claim is baffling.  (Opposition, p. 6:16-28.)  Under *Pinter*, a solicitation claim must be based on some relationship between the plaintiff purchaser and the defendant.  But nothing in the *Breitman's* view of Draper tends to suggest either that Draper had a relationship with *Plaintiff* or that any statement of Draper had any effect on Plaintiff's alleged investment decision.

Plaintiff next argues that the Draper Defendants were financially motivated to solicit investors. (Opposition, p. 7.) But irrespective of whether Plaintiff has properly alleged a financial incentive to solicit, such an allegation cannot excuse Plaintiff's failure to allege a threshold successful solicitation by the Draper Defendants. And nothing in the cases Plaintiff cites in this section, which yet again consist entirely of non-binding District Court cases involving claims under Section 12(a)(2), saves his claims. See *In re OSG Secs. Litig.*, 971 F. Supp 2d 387, 403 (S.D.N.Y. 2013) (holding that plaintiff is required to show that a defendant "successfully solicited" the purchase of securities and finding that plaintiff stated a Section 12(a)(2) claim by alleging that the defendant officers and directors of the issuer prepared and signed a materially misleading prospectus and participated in efforts to market the offering to investors); *In re Am. Bank Note Holographics Sec. Litig.*, 93 F. Supp. 2d 424, 438-439 (S.D.N.Y. 2000) (holding that plaintiff is required to plead that defendant "directly solicited the plaintiff's purchase of stock" and finding that plaintiff stated a claim under Section 12(a)(2) against the defendant issuer by alleging that the issuer participated in the preparation of a materially misleading registration statement and prospectus and participated in road shows to market its securities to investors); and *In re Keegan Mgmt. Co.*, 1991 U.S. Dist. LEXIS 17491 * 19-21 and *29-30 (N.D. Cal. 1991) (plaintiff stated a claim under Section 12(a)(2) against the issuer and its parent company who were alleged to have solicited the sale of securities through a materially misleading prospectus but did not state a claim against the issuer's officers and directors). Again, the Draper Defendants are not alleged to be officers, directors or issuers and are not alleged to have any role in any materially misleading written offering materials.

Finally, Plaintiff argues that his Section 12(a)(1) claim should not be dismissed because "*personal* solicitation" is not a required element of his claim. (Opposition at p. 8:7-9.) Plaintiff fails to explain precisely what he means by "personal solicitation." However, to the extent Plaintiff is suggesting that he is excused from alleging that the Draper Defendants successfully solicited his investment, such an assertion is contrary to the holding of *Pinter*.

In support of his personal solicitation argument, Plaintiff first inexplicably cites *Steed Fin. LDC v. Nomura Secs. Int'l Inc.*, 2001 U.S. Dist. LEXIS 14761 (S.D.N.Y. 2001). But *Steed*

supports dismissal of his claims and expressly holds that in order to state a claim for solicitation, a plaintiff must allege not only that the defendant actively solicited investors, but also that the plaintiff purchased the securities "as a result of [such] solicitation." 2001 U.S. Dist. LEXIS 14761 at *22-23. Plaintiff next repeats his cite to *In re American Bank Note and Holographics Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 439 n. 5 (S.D.N.Y. 2000). But as discussed above, that case is clearly distinguishable and does not help Plaintiff. *American Bank Note* is simply another Section 12(a)(2) case in which the defendant issuer was expressly alleged to have actively solicited the sale of shares through the preparation of a registration containing materially misleading statements and its participation in road shows. 93 F. Supp. 2d at 439. Plaintiff here does not and cannot make any such allegations.

Plaintiff next cites *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) another case involving a claim under Section 12(a)(2). There, the court found that two general partners in the issuer who prepared and circulated to the plaintiffs a prospectus that omitted material facts were sellers within the meaning of Section 12(a)(2). The court reversed the judgment against a separate defendant because there was an insufficient showing that the defendant "actually solicited" the plaintiffs' investment. 856 F.2d at 478-479. Again *Capri* supports dismissal of Plaintiff's claim. Plaintiff does not allege that the Draper Defendants actually solicited his investment either through a materially misleading offering document or otherwise.

Plaintiff next cites *In re Proxima Corp. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21443 *14-15 (S.D. Cal. 1994) for the proposition that a defendant need not have "face-to-face" contact with the plaintiff in order to have liability under Section 12. But the Draper Defendants have never argued that face-to-face contact is required and nothing in *Proxima* helps Plaintiff. *Proxima* is yet another Section 12(a)(2) case in which the defendant issuer and its officers and directors were alleged to have solicited securities sales by actively encouraging purchasers to buy stock through road shows and telemarketing sales pitches in which they disseminated materially misleading prospectuses. 1994 U.S. Dist. LEXIS 21443 *14-15. Nothing in *Proxima* suggests that a Section 12(a)(1) plaintiff is excused from alleging conduct of the defendant that induced his investment.

Plaintiff next cites two more cases for the proposition that no direct contact between the

1    purchaser and the purported solicitor is necessary for Section 12(a)(2) liability.  *In re U.S.A.*
2    *Classic Sec. Litig.*, 1995 U.S. Dist. LEXIS 8327 (S.D.N.Y. 1995) is a case in which the issuer, its
3    sole shareholder and its underwriter were alleged to have conducted the solicitation because they
4    had control over and were responsible for the false statements contained in the prospectus used to
5    sell the issuer's stock.  1995 U.S. Dist. LEXIS 8327 *9-11.  Similarly, in *McMahan & Co. v.*
6    *Wherehouse Entertainment*, 859 F. Supp. 743 (S.D.N.Y. 1994), the court held that where an
7    issuer is alleged to have supplied its underwriter with false information and the underwriter is
8    further alleged to have acted at the issuer's behest in using the false information to promote the
9    sale of the issuer's securities, the issuer acts with scienter and may be liable as a participant in the
10   sale.  Nothing in either case helps Plaintiff.  Again, Plaintiff does not allege that the Draper
11   Defendants made any false statement or that his alleged investment was induced or encouraged,
12   directly or indirectly, by any statement attributable to or originating from the Draper Defendants.

13          Finally, Plaintiff summarizes the conduct of the Draper Defendants alleged in his
14   Complaint that he contends support his solicitation claim.  Specifically, he argues that the Draper
15   Defendants solicited investors "by making an equity investment in DLS, publicly announcing
16   their investment in DLS, publicly announcing their commitment to participating in the Tezos
17   ICO, partnering with the Breitmans in the Tezos project, and promoting the Tezos project and
18   their investment in DLS."  (Opposition at p. 9:4-8.)  Plaintiff's argument fails for all of the
19   reasons described above.  Plaintiff does not dispute that none of the described activities of the
20   Draper Defendants had any effect on his decision to participate in the Tezos ICO.  But even if he
21   had, the activities of the Draper Defendants identified by Plaintiff are merely the type of collateral
22   activities that *Pinter* holds do not constitute solicitation.  In sum, because Plaintiff has failed to
23   allege that the Draper Defendants successfully solicited his participation in the Tezos ICO,
24   Plaintiff has not satisfied the "purchase from" of Section 12(a)(1) and has failed to state a
25   solicitation claim under *Pinter*.

## B. The Second Count for Violation of Section 15 of the Securities Act Fails to State a Claim Against the Draper Defendants Because Plaintiff Alleges No Facts to Suggest that Either Had Actual Power to Direct the Management and Policies of DLS.

In his Opposition, Plaintiff makes no attempt to argue that the Draper Defendants were controlling persons of the Foundation. Instead, Plaintiff argues only that the Draper Defendants "were controlling persons vis-à-vis DLS." (Opposition, pp. 10:18 and 11:24-12.)

The Draper Defendants set out in their opening brief the elements of a claim under Section 15 noting that to state a claim in the Ninth Circuit for control person liability, a plaintiff must allege (1) a primary violation of Section 11 or Section 12; (2) that the alleged controlling person possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of the individual allegedly liable for the primary violation; and (3) that the defendant actively used this influence or control so as to be a "culpable participant" in the primary violation. *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 685 (9th Cir. 2005); and *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987). In his Opposition, Plaintiff argues that culpable participation is not a necessary element of a Section 15 claim and that he need only plead (1) that there was a primary violation of federal securities laws; and (2) that the defendant possessed actual power or control over the primary violator.

In support of his position, Plaintiff cites *Howard v. Everex Sys.*, 228 F. 3d 1057, 1065 (9th Cir. 2000) a case that involved a claim under Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) rather than a claim under Section 15. The Draper Defendants' opening brief specifically addressed how some Ninth Circuit courts have treated Section 15 claims differently from Section 20 claims with respect to the culpable participation requirement – a topic addressed at length in *In re WorldCom, Inc.* 377 B.R. 77, 103 (U.S.B.C. S.D.N.Y. 2007). Plaintiff simply ignores the discussion in *WorldCom* and the Section 15 cases cited by the Draper Defendants that hold that culpable participation is a requirement. See *Knollenberg v. Harmonic, Inc.*, supra, 152 F. App'x at 685; *Durham v. Kelly*, *supra*, 810 F.2d at 1503-04; and *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003).

In support of his argument that culpable participation is not an element of a Section 15

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 17-CV-06779-RS                    10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

claim, Plaintiff cites *Flynn v. Sientra, Inc.*, 2016 U.S. Dist. LEXIS 83409, *53 (C.D. Cal. 2016). *Flynn* was a securities class action that arose out the Secondary Public Offering (SPO) of a medical device company. The plaintiffs alleged that, in connection with the SPO, the defendant corporation and its officers and directors concealed adverse regulatory findings that threatened the corporation's core operations. In ruling on the defendants' motions to dismiss the Section 15 claim against the officers and directors, the Court held that the plaintiff's complaint contained sufficient allegations that the corporation's CEO and CFO had the ability to control the content and dissemination of the company's false statements and denied their motions. However, the Court granted the director defendants' motions to dismiss because the plaintiff's complaint "contains no allegations that these individuals had any 'participation of [sic] the day-to-day affairs of the corporation'." 2016 U.S. Dist. LEXIS at *53-54.

*Flynn* supports dismissal of Plaintiff's Section 15 claim. *Flynn* confirms that a Section 15 defendant must have some position that provides him or her with actual power to control the corporation's action and must further participate in its day-to-day affairs. But Plaintiff's Complaint fails to properly allege that the Draper Defendants had the requisite power or participation. Plaintiff has not alleged and cannot allege that the Draper Defendants are officers or directors or hold any position at DLS giving them the power to control its actions. Plaintiff also fails to allege and cannot allege that the Draper Defendants participated in any way in the day-to-day affairs of DLS. Thus, although the parties here dispute whether culpable participation is a necessary element of Plaintiff's Section 15 claim, ultimately that issue is immaterial because Plaintiff cannot allege any non-conclusory facts from which the Court could conclude that the Draper Defendants possessed actual power or control over DLS. See 17 C.F.R. § 230.405 defining "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise".

Implicitly acknowledging that he has not alleged any facts to establish the Draper Defendants' power to control DLS, Plaintiff is forced to fabricate new but ultimately insufficient allegations of control. Specifically, Plaintiff argues that it can be "inferred" from the allegations

1  in his Complaint relating to the timing of the Draper Defendants' May 2017 investment in DLS
2  and the July 2017 ICO that the Draper Defendants "acquired the power" to direct DLS to proceed
3  with the Tezos ICO. (Opposition at p. 10:18-11:2.) Plaintiff's argument is factually and legally
4  baseless.

5  First, Plaintiff's argument is based on allegations that are not in his Complaint and that are
6  contradicted by his Complaint. Plaintiff erroneously argues that his "Complaint alleges that for
7  nearly three years prior to the Draper Defendants' acquisition of an interest in DLS, no steps had
8  been taken to conduct an initial coin offering." (Opposition, p. 10:18-20.) But Plaintiff's
9  Complaint contains no such allegation. Not surprisingly, Plaintiff fails to provide any citation for
10 this whopper. In fact, Plaintiff's Complaint alleges just the opposite and details the steps taken by
11 DLS and its agents to conduct the Tezos fundraiser prior to the Draper Defendants' 2017
12 investment in DLS.

13 For example, Plaintiff alleges that since at least mid-2016 the Breitmans promoted the
14 Tezos ICO. (Complaint, ¶ 49.) Plaintiff also alleges that the Breitmans were heavily involved in
15 planning and executing the Tezos ICO. (Complaint, ¶ 55.) Plaintiff further alleges that in June
16 2016 - almost a year prior to the Draper Defendants' investment in DLS - Arthur Breitman posted
17 on Reddit that he was planning to conduct the Tezos fundraiser "circa Q1 2017", *i.e.* the very
18 period when the ICO was subsequently held. (Complaint, ¶ 51.) Plaintiff also alleges that
19 between September 2016 and March 2017, DLS conducted pre-sales of the Tezos tokens.
20 (Complaint, ¶ 51.) Plaintiff's Complaint thus confirms that DLS was planning the ICO for 2017
21 and had taken significant steps to conduct the ICO long before the Draper Defendants' May 2017
22 investment in DLS. In short, nothing in Plaintiff's Complaint relating to the timing of the Draper
23 Defendants' investment in DLS gives rise to any inference that the Draper Defendants "acquired
24 the power" to direct DLS to proceed with the Tezos ICO.

25 But even if there were factual allegations in the Complaint to support Plaintiff's newly
26 minted timing argument, those allegations could not excuse Plaintiff's legal obligation to plead
27 facts establishing the Draper Defendants' possession of actual power to direct DLS' management
28 and policies. Plaintiff does not dispute that the Draper Defendants acquired only a 10% stake in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

12

DLS and fails to explain how such a small stake could possibly give the Draper Defendants control over DLS. Absent specific factual allegations that the Draper Defendants had a recognized source of power to control DLS' actions, the timing of DLS' actions is immaterial. Plaintiff fails to cite any case that suggests a contrary conclusion.

As noted in the Draper Defendants' opening brief, the cases under Section 15 confirm that a defendant's minority stock ownership is insufficient to infer control person status.[4] Nevertheless, Plaintiff suggests that the case of *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) supports his position and holds that a mere minority stock ownership can establish control provided there are also allegations that the minority stockholder engaged in the primary violation in question. There is no such holding in the *Alstom* case. The *Alstom* decision makes clear that minority stock ownership does not give a minority owner the power to direct the primary violator and thus does not establish control under Section 15. 406 F. Supp. at 489. Instead, the *Alstom* case holds that a person's status *as an officer or director* can constitute control for a Section 20 claim if the officer or director also is alleged to have signed financial statements containing materially false or misleading statements. Such individuals are presumed from both their position and their actions to have the power to direct the company's management with respect to its reporting obligations. 406 F. Supp. at 488. But nothing in that holding helps Plaintiff because he cannot allege that Draper holds any position or status at DLS that gives him the power to direct DLS's management.

In support of his argument that the Draper Defendants engaged or assisted in the primary alleged violation of selling unregistered securities, Plaintiff seems to raise a new theory – that the

---

[4] See *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004); *In re Alstom SA*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005) (stating that "[m]inority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator"); *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-459 (S.D.N.Y. 2005) (ownership of 30 percent of voting shares and ability to appoint three of nine board members did not constitute control); *In re Deutsche Telekom*, 2002 U.S. Dist. LEXIS 2627 at *19 (S.D.N.Y 2002); *Travelers Ins. Co. v. Lewis,* 756 F. Supp. 172, 177 (S.D.N.Y. 1991); and *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 459 (N.D. Cal. 1984) (no basis for finding "control" over the corporate defendant when defendant has never been a director and his stock holdings represent only a small portion of the total outstanding stock).

1  Draper Defendants were "cashing out their investment interest in DLS by selling to investors in
2  the illegal, unregistered Tezos ICO." (Opposition Brief, p. 11:19-22.)  Although by no means
3  clear, to the extent that Plaintiff is attempting to argue that the Draper Defendants sold
4  unregistered DLS stock in violation of the Securities Act, such an argument is not supported by
5  any allegations in the Complaint nor could it be.  Draper Associates Crypto maintains its DLS
6  stock and Plaintiff has not alleged that he or anyone else bought DLS stock from Draper
7  Associates Crypto.

Plaintiff also argues that the Draper Defendants "actively promoted the Tezos ICO" and did not "take any steps to distance themselves from the Tezos ICO" and attempts to compare that conduct with an audit committee member who signs a false and misleading SEC filing. (Opposition, p. 11:18-12:2.)  But Plaintiff's argument compares apples to oranges and only serves to highlight the bankruptcy of his Section 15 claim.  Again, Draper is not alleged to have any position or role at DLS and, thus, unlike an audit committee member, he has no ability through voting rights or otherwise to control DLS.  Moreover, Draper is not alleged to have reviewed, approved, endorsed or signed any statement of DLS, let alone a false or misleading offering document in connection with the Tezos ICO.  Instead, Plaintiff only alleges that Draper made statements as a representative of Draper Associates Crypto about the benefits of cryptocurrencies like bitcoin and Tezos and their underlying blockchain financial ledger technology. (Complaint, ¶¶ 60-64.)  In short, nothing about Draper's public statements establish that Draper had the ability to exercise control over the management and policies of DLS or that Draper directed its day-to-day affairs.  The Court should dismiss the Section 15 claim against the Draper Defendants.

///
///
///
///
///
///
///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO DISMISS          14
CASE NO. 17-CV-06779-RS

### III. CONCLUSION

For the foregoing reasons, the Draper Defendants respectfully request that this Court dismiss Plaintiff's Complaint against them with prejudice.

Dated: June 29, 2018        MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Christopher L. Wanger
Christopher L. Wanger
Attorneys for Defendants TIMOTHY C. DRAPER and DRAPER ASSOCIATES V CRYPTO LLC