1    BAKER MARQUART LLP
     BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
2    SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
     DONALD R. PEPPERMAN (109809) (dpepperman@bakermarquart.com)
3    2029 Century Park East, Suite 1600
     Los Angeles, CA 90067
4    Telephone:    (424) 652-7814
     Facsimile:    (424) 652-7850
5
     Counsel for Defendants
6    DYNAMIC LEDGER SOLUTIONS, INC.,
     KATHLEEN BREITMAN and ARTHUR BREITMAN
7

8    COOLEY LLP
     PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
9    JEFFREY M. KABAN (235743) (jkaban@cooley.com)
     DAVID S. HOUSKA (295918) (dhouska@cooley.com)
10   SAMANTHA A. KIRBY (307917) (skirby@cooley.com)
     3175 Hanover Street
11   Palo Alto, CA  94304-1130
     Telephone:    (650) 843-5355
12   Facsimile:    (650) 618-0387

13   Counsel for Defendant
     DYNAMIC LEDGER SOLUTIONS, INC.
14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17

18   IN RE TEZOS SECURITIES LITIGATION        Master File No. 17-cv-06779-RS

19                                            CLASS ACTION

20   This document relates to:
                                              DLS DEFENDANTS' REPLY IN SUPPORT OF
21                                            THEIR MOTION TO DISMISS LEAD
            ALL ACTIONS                       PLAINTIFF'S CONSOLIDATED COMPLAINT
22
                                              Date:        July 19, 2018
23                                            Time:        1:30 p.m.
                                              Judge:       Hon. Richard Seeborg
24                                            Courtroom:   3, 17th Fl.
                                              Trial Date:  Not yet set
25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 1

    A.   Dismissal is Appropriate on Forum Non Conveniens Grounds.................................. 1

        1.   The Foreign Forum Selection Provision is Valid and Enforceable. ............... 1

        2.   The DLS Defendants May Enforce the Foreign Forum Selection Provision. ...................................................................................................... 3

        3.   Dismissal is Warranted Even in the Absence of the Forum Selection Clause......................................................................................................... 5

    B.   Plaintiff Fails to Adequately Allege a Section 12 Claim ............................................. 6

        1.   Plaintiff Concedes the DLS Defendants Did Not "Successfully Solicit" Any Purchase of Tezos Tokens....................................................................... 6

        2.   Plaintiff Does Not Show Any Solicitation By the DLS Defendants. .............. 7

        3.   Plaintiff's Other Examples of "Participation" Do Not Create Liability Under Section 12........................................................................................ 10

    C.   Plaintiff Has Not Sufficiently Alleged That Kathleen and Arthur Breitman Control the Tezos Foundation................................................................................. 12

III. CONCLUSION............................................................................................................. 15

Cooley LLP
Attorneys At Law
San Francisco

DLS Defendants' Reply ISO
Motion to Dismiss
Case No.  17-cv-06779-RS

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Aghaian v. Minassian*,
   234 Cal. App. 4th 427 (2015) ...........................................................................................5

*Alpine Atl. Asset Mgmt. AG v. Comstock*,
   552 F. Supp. 2d 1268 (D. Kan. 2008) ...............................................................................4

*In re Am. Apparel, Inc. S'holder Litig*,
   2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ............................................................10, 13

*In re Am. Bank Note Holographics, Inc. Secs. Litig.*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000). (Opp. .) ................................................................11

*Ardente, Inc. v. Shanley*,
   2010 WL 546485 (N.D. Cal. Feb. 10, 2010) .....................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................................10

*Ayco Farms, Inc. v. Ochoa*,
   862 F.3d 945 (9th Cir. 2017) .............................................................................................2

*Bank Leumi USA v. Ehrlich*,
   98 F. Supp. 3d 637 (S.D.N.Y. 2015) .................................................................................2

*Bennett v. Durham*,
   683 F.3d 734 (6th Cir. 2012) .........................................................................................9, 10

*Brodskey v. Yahoo! Inc.*,
   592 F. Supp. 2d 1192 (N.D. Cal. 2008) ...........................................................................15

*Brody v. Homestore, Inc.*,
   2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) ...................................................................8

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) ...........................................................................................................2

*Gemini Capital Grp., Inc. v. Yap Fishing Corp.*,
   150 F.3d 1088 (9th Cir. 1998) ...........................................................................................2

*Giordano v. UBS, AG*,
   134 F. Supp. 3d 697 (S.D.N.Y. 2015) ...............................................................................4

*Griffin v. PaineWebber, Inc.*,
   2001 WL 740764 (S.D.N.Y. June 29, 2001) ..................................................................6, 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Gulf Oil Corp. v. Gilbert,*

4
   330 U.S. 501 (1947)......................................................................................................6

5

*Holland America Line Inc. v. Wartsila North America, Inc.,*

6
   485 F.3d 450 (9th Cir. 2007) ......................................................................................3

7

*Horvath v. Banco Comercial Portugues, S.A.,*
   461 F. App'x 61 (2d Cir. 2012) ................................................................................2

8

*In re Infonet Servs. Corp. Secs. Litig.,*

9
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...................................................................8

10

*In re Keegan Mgmt. Co., Sec. Litig.,*
   1991 U.S. Dist. LEXIS 174941 (N.D. Cal. Sept. 10, 1991) ....................................9

11

*La Sala v. UBS, AG,*

12
   510 F. Supp. 2d 213 (S.D.N.Y. 2007).....................................................................4

13

*Lipcon v. Underwriters at Lloyd's, London,*

14
   148 F.3d 1285 (11th Cir. 1998) ................................................................................5

15

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
   583 F.3d 656 (9th Cir. 2009) ....................................................................................5

16

*Lueck v. Sundstrand Corp.,*

17
   236 F.3d 1137 (9th Cir. 2001) ..................................................................................4

18

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*

19
   858 F.2d 509 (9th Cir. 1988) ...............................................................................1, 3

20

*Martinez v. Bloomberg LP,*
   740 F.3d 211 (2d Cir. 2014)......................................................................................1

21

*In re McKesson HBOC, Inc. Sec. Litig.,*

22
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................15

23

*Medoil Corp. v. Citicorp.,*

24
   729 F. Supp. 1456 (S.D.N.Y. 1990)........................................................................4

25

*Middlesex Ret. Sys. v. Quest Software Inc.,*
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................13

26

*Nedlloyd Linen B.V. v. Superior Ct.,*

27
   3 Cal. 4th 459 (1992) ................................................................................................5

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iii-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

**TABLE OF AUTHORITIES**
(continued)

Page

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ...........................................................................9, 14

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .....................................................................................15

*Pinter v. Dahl*,
  486 U.S. 622 (1988).........................................................................................6, 9, 11

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ...................................................................................................5

*In re Puda Coal Sec. Litig.*.
  2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ..............................................................6

*Pullins v. Klimley*,
  2008 WL 85871 (S.D. Oh. Jan. 7, 2008) ...........................................................7, 8, 9

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ....................................................................................2

*Richards v. Lloyd's of London*,
  135 F.3d 1289 (9th Cir. 1998) ................................................................................2, 5

*Schertenleib v. Traum*,
  589 F.2d 1156 (2d Cir. 1978)......................................................................................4

*Smith v. Am. Nat'l Bank & Trust Co.*,
  982 F.2d 936 (6th Cir. 1992) ..................................................................................7, 8

*Starkey v. G Adventures, Inc.*,
  796 F.3d 193 (2d Cir. 2015)........................................................................................2

*Steed Finance LDC v. Nomura Sec. Int'l, Inc.*,
  2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001)............................................................6

*In re Valence Tech Sec. Litig.*,
  1995 U.S. Dist. LEXIS 10379 (N.D. Cal. May 8, 1995) ..........................................12

*Vanguard Specialized Funds v. VEREIT, Inc.*,
  2016 WL 5858735 (D. Ariz. Oct. 3, 2016)......................................................7, 8, 11

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ......................................................................................3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-iv-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003)...........................................................................12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*,
    258 F. Supp. 3d 1037 (N.D. Cal. 2017) .......................................................................13

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) .........................................................................15

*In re Worlds of Wonder Sec. Litig.*,
    721 F. Supp. 1140 (N.D. Cal. 1989) ......................................................................10, 11

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) .....................................................................................4

**Statutes**

Securities Act
    Section 12.............................................................................................................. *passim*
    Section 14.......................................................................................................................5
    Section 15.........................................................................................................1, 12, 15

**Other Authorities**

17 C.F.R. § 230.405 ...........................................................................................................12

Cooley LLP
Attorneys At Law
San Francisco

–v–

DLS Defendants' Reply ISO
Motion to Dismiss
Case No. 17-cv-06779-RS

1

## I.   INTRODUCTION

2
3
4
5
6

Plaintiff has filed this suit in the wrong forum against the wrong defendants.  The terms of service that governed the Tezos Fundraiser specified that any disputes would be resolved in Switzerland under Swiss law.  Even absent the clearly enforceable forum selection provision, dismissal would be warranted based on *forum non conveniens* because the vast majority of the witnesses and evidence in this case are there.

7
8
9
10
11
12
13

Nor should the DLS Defendants be parties to this case.  Plaintiff's vague allegations about "participation" in the Tezos Fundraiser cannot change a simple fact: Plaintiff has not alleged a single action by the DLS Defendants that constitutes a "solicitation" under Section 12 of the Securities Act.  And Plaintiff's scattered allegations about a relationship between the DLS Defendants and the Tezos Foundation do not come close to showing that Kathleen and Arthur Breitman had the "power to direct" the Foundation's decision to conduct the Fundraiser without filing a registration statement.  Thus, Plaintiff's Section 15 claim for control person liability fails.  This case should be dismissed.

14

## II.   ARGUMENT

15

### A.   Dismissal is Appropriate on Forum Non Conveniens Grounds

16
17
18
19
20
21
22

The Contribution Terms that govern the Tezos Fundraiser contain a mandatory forum selection clause that designates Switzerland (applying Swiss law) as the exclusive forum within which to adjudicate all disputes, including Plaintiff's claims in this case.  (Dkt. 124-2, Kirby Decl. Ex. 2.) Plaintiff (who is *not* a resident of California) filed this action in this forum in defiance of that provision and does not affirmatively deny being aware of that mandatory clause.[1]  Dismissal is also warranted under the basic tenets of the *forum non conveniens* doctrine because, on balance, the applicable private and public interest factors weigh heavily in favor of dismissal of this action.

23

### 1.   The Foreign Forum Selection Provision is Valid and Enforceable.

24

"Forum selection clauses are *prima facie* valid."  *Manetti-Farrow, Inc. v. Gucci America, Inc.*,

25
26
27
28

[1] One of the putative class members, Woodrow Levin, did submit a sworn declaration stating, among other things, that he *specifically* reviewed the terms in advance of the Fundraiser, and agreed to be bound by that mandatory forum selection provision.  (Dkt. 124-4, Kirby Decl. Ex. 4.)  Such evidence is routinely considered in connection with a motion to dismiss based on *forum non conveniens* grounds because the allegations of the Complaint alone are generally not sufficient for the court to make the necessary determinations required on such a motion.  *See, e.g.*, *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("district court typically relies on pleadings and affidavits").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO.  17-CV-06779-RS

858 F.2d 509, 514 (9th Cir. 1988).  A forum selection clause is only unenforceable if: (1) its inclusion was the product of fraud or overreaching; (2) enforcement would effectively deprive the repudiating party of its day in court; and/or (3) enforcement would contravene a strong public policy of the forum in which the litigation was filed.  *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998).  Plaintiff has failed to establish *any* of these unenforceability factors.  Instead Plaintiff asserts that the clause cannot be enforced because it was not properly incorporated into the Fundraiser's website and because there was no actual or inquiry notice.  (Dkt. 133, Opposition ("Opp.") at 7-8.) The DLS Defendants refer the Court to the Foundation's reply brief explaining why the clause was properly incorporated, but as explained further there, Plaintiff's arguments regarding incorporation are irrelevant because the Contribution Terms are the only documents that governed the Fundraiser.[2] Regarding inquiry notice, rather than affirmatively denying that he did not have actual, constructive and/or inquiry notice, Plaintiff instead chose dead silence.  Plaintiff simply ignores controlling case law finding that non-negotiated forum selection clauses, even those not signed by the plaintiff, can be enforced.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).  Moreover, terms and conditions containing a forum selection clause are routinely enforced notwithstanding a claim by the plaintiff that he or she did not receive or review them.  *See, e.g.*, *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 650 (S.D.N.Y. 2015); *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197-98 (2d Cir. 2015).

Plaintiff's second argument—that the Court should defer to his choice of forum—ignores the fact that he is a resident of Illinois, *not* California.  This is significant because a non-resident plaintiff's choice of forum is afforded "less deference" and is "far from absolute."  *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949-50 (9th Cir. 2017) ("A U.S. citizen plaintiff is entitled to less deference in his choice of forum if he does not reside in that forum."); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015); *see also Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091-92 (9th Cir. 1998) (giving less deference to U.S. citizens' choice of Hawaii forum because they were not residents

---

[2] To avoid duplicative briefing, the DLS Defendants join in full in the relevant sections of the Foundation's reply brief on this issue and will only address the arguments specifically raised by Plaintiff in his Opposition to the DLS Defendants' motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1    of Hawaii).[3]  And as explained further below, the public and private factors weigh heavily in favor of

2    this action being heard in Switzerland.  Accordingly, the forum selection provision is valid on its face

3    and should be enforced.

4              **2.      The DLS Defendants May Enforce the Foreign Forum Selection Provision.**

5              Plaintiff makes four arguments as to why the DLS Defendants should not be allowed to invoke

6    the forum selection clause.  Each fails in turn.

7              **First**, Plaintiff's threshold contention that the DLS Defendants "have no standing" to enforce

8    the Swiss forum selection clause misstates the law.  (Opp. at 8.)  The Ninth Circuit has repeatedly

9    explained that defendants who are not signatories to a forum selection agreement may nevertheless

10   enforce it where "the alleged conduct of the non-parties is so closely related to the contractual

11   relationship that the forum selection clause applies to all defendants."  *Manetti-Farrow*, 858 F.2d at

12   514 n.5; *see also Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th

13   Cir. 2007) (same).  This dispute stems from the Fundraiser, which was governed by terms containing

14   a valid forum selection clause.  Plaintiff has attempted to drag the DLS Defendants into this action

15   based solely on allegations of secondary and tertiary involvement with the Fundraiser.  (*E.g.*, Dkt. 108,

16   Compl. ¶ 33 (Arthur Breitman authored the Tezos White Paper); ¶ 57 (Arthur Breitman allegedly

17   handled technical mechanics of the fundraiser).)  As explained below, these allegations are insufficient

18   to actually create liability under the strict standards of Section 12.  But as "the alleged conduct . . . is

19   tied to" the underlying Fundraiser terms, the DLS Defendants may invoke the forum selection clause

20   in their favor.  *Holland America Line Inc.*, 485 F.3d at 456.

21             **Second**, Plaintiff asserts that enforcement of the forum selection clause would deprive "the

22   Lead Plaintiff and the putative Class of their day in court."  (Opp. at 9.)  This argument fails on every

23   level.  Plaintiff does not explain why the Swiss courts would not give Plaintiff and putative class

24

25   ─────────────────────
     [3] It is obvious that Plaintiff sued individual defendants in California, such as Kathleen and Arthur
26   Breitman, in a transparent forum shopping maneuver to have what he believed to be more favorable
     securities laws applied in direct contravention of the agreed-upon forum in Switzerland.  *See Vivendi*
27   *SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009) (explaining that where a plaintiff's choice
     of a "U.S. forum was motivated by forum-shopping reasons," less deference is accorded).  In any
28   event, Kathleen and Arthur Breitman *currently* reside in Paris, France, which puts them much closer
     to Switzerland than to California.

1    members their "day in court."  In fact, courts in the United States routinely enforce forum selection

2    provisions designating Swiss courts to resolve disputes.  *See e.g.*, *Medoil Corp. v. Citicorp.*, 729 F.

3    Supp. 1456 (S.D.N.Y. 1990) (enforcing Switzerland forum selection provision in fraudulent securities

4    case); *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1182-83 (10th Cir. 2009); *Schertenleib v. Traum*, 589

5    F.2d 1156, 1164-66 (2d Cir. 1978).[4]  Indeed, thousands of domestic and foreign contributors (in other

6    words, putative class members) made their contributions according to the applicable terms and

7    conditions, with full knowledge that any dispute arising out of the Fundraiser would be litigated in

8    Switzerland, under Swiss law.  There is no indication that those contributors believe that litigating in

9    Switzerland would deprive them of their "day in court," nor is there any reason to believe that those

10   other contributors would prefer to litigate in a forum that Plaintiff chose (without their input), rather

11   than in the forum that they agreed to when they made their contributions.

12           Plaintiff suggests that the DLS Defendants "are conspicuously silent" as to whether they would

13   be amenable to service of process in Switzerland.  In fact, if this Court dismisses this action on *forum*

14   *non conveniens* grounds, the DLS Defendants consent to the exercise of personal jurisdiction over

15   them in a Swiss court in connection with the subject matter of this litigation.

16           **Third,** the relevant interests of California and Switzerland weigh heavily in favor of enforcing

17   the forum selection clause.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (court

18   must weigh public interests of the possible jurisdictions).  As a threshold matter, Plaintiff has not

19   shown that requiring him to litigate in the agreed-upon forum, Switzerland, would contravene any

20   important California public policy or that San Francisco has any "local interest" in this lawsuit.[5]  Nor

21   can Plaintiff argue he is entitled to the protections of California's laws—he has *no* contacts with this

22   State and is not a resident of California.  Nor has he shown that Swiss laws are not adequate to vindicate

23

24   ---
     [4] *See also Alpine Atl. Asset Mgmt. AG v. Comstock,* 552 F. Supp. 2d 1268, 1283 (D. Kan. 2008); *La*
25   *Sala v. UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007); *Giordano v. UBS, AG*, 134 F. Supp. 3d
     697, 706 (S.D.N.Y. 2015).
26   [5] Plaintiff purports to raise various "salient facts" related to the alleged conduct of the DLS Defendants.
     (Opp. at 9.)  His reiteration of these allegations, however, does not go to the issue of any important
27   California policy or interest.  Plaintiff can assert these same allegations and arguments in Switzerland.
     Furthermore, Plaintiff fails to explain why the DLS Defendants' alleged ties to California should trump
28   the Tezos Foundation's ties to Switzerland.  As the primary and most indispensable defendant, the
     jurisdiction with the most direct interest in the Tezos Foundation should be the one to hear this matter.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1    whatever rights he believes may have been violated.  Finally, it would be reasonable to assume that

2    courts or tribunals in Switzerland have more expertise and command over Swiss laws and procedure

3    than this Court does.

4        **Finally,** Plaintiff utterly fails to explain why this Court should not apply the Swiss choice of

5    law clause.  Because Switzerland has a substantial relationship with the Tezos Foundation and the

6    DLS Defendants, as well as the Fundraiser transactions, the Swiss choice of law provision is

7    reasonable, logical and should therefore be enforced.  *See Nedlloyd Linen B.V. v. Superior Ct.*, 3 Cal.

8    4th 459, 466 (1992).  And Plaintiff's argument that enforcement of the Swiss choice of law provision

9    "would result in a violation of the anti-waiver prohibition contained in Section 14 of the Securities

10   Act" (Opp. at 10), has been soundly rejected by the Ninth Circuit.  *See Richards,* 135 F.3d at 1292-

11   94[6]; *see also Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir. 1998) (same).

12   In determining reasonableness, trial courts must be mindful that the laws of another jurisdiction do not

13   become "unsuitable simply because the law is less favorable or recovery is more difficult." *Aghaian*

14   *v. Minassian*, 234 Cal. App. 4th 427, 431 (2015).

15           **3.    Dismissal is Warranted Even in the Absence of the Forum Selection
                     Clause.**

16

17       This Court should also dismiss this case under the common law doctrine of *forum non*

18   *conveniens* because this action would be more appropriately litigated in another forum.  That

19   "determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*,

20   454 U.S. 235, 257 (1981).  To prevail on a motion to dismiss on the grounds of *forum non conveniens*,

21   the defendant "must show two things: (1) the existence of an adequate alternative forum, and (2) that

22   the balance of public and private factors favors dismissal." *Loya v. Starwood Hotels & Resorts*

23   *Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009).

24       As to the first prong, the DLS Defendants have shown, supported by well-established

25   controlling precedent, that Switzerland is an available and adequate alternative forum to litigate this

26   dispute.  Furthermore, as explained in Part II.A.2 above, the relevant public factors all favor dismissal.

27       An analysis of the relevant "private interest" factors also weighs heavily toward dismissal.  The

28   _____

     [6] Plaintiff does not reference or attempt to distinguish this controlling law in his Opposition.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                    -5-                              DLS DEFENDANTS' REPLY ISO
                                                                     MOTION TO DISMISS
                                                                     CASE NO. 17-CV-06779-RS

Tezos Foundation is located in Switzerland, regulated by Swiss authorities, and subject to Swiss law. The Foundation has no offices or places of business in California or the United States.  None of the Foundation's employees or officers reside in California and the majority of the relevant documents, witnesses and sources of proof are located in or around Switzerland.  The DLS Defendants, if their presence is required at a trial in Switzerland, will attend at their own expense.  Plaintiff will need to get on a plane and travel whether this case is tried in California or Switzerland.  Both the convenience of the witnesses and the parties would accordingly be best served by having this case heard in Switzerland.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

This dispute should be heard in Switzerland and decided under Swiss law.  Plaintiff has failed to carry his burden to show otherwise.

### B.    Plaintiff Fails to Adequately Allege a Section 12 Claim

As an initial matter, Plaintiff concedes that the DLS Defendants are not the issuers of the Tezos tokens and that the DLS Defendants did not pass title to the Tezos tokens as part of the Fundraiser. (Opp. at 11:21-23.)  As a result, under Section 12, Plaintiff must allege that (1) statements by the DLS Defendants constitute a solicitation to purchase securities; and (2) that the DLS Defendants "successfully solicited" a purchase.  *Steed Finance LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001).  Plaintiff fails this standard.

### 1.    Plaintiff Concedes the DLS Defendants Did Not "Successfully Solicit" Any Purchase of Tezos Tokens.

Plaintiff's Opposition fails to point to a single well-pled fact in the Complaint sufficient to show that the DLS Defendants successfully solicited a contribution to the Foundation, let alone a "purchase" of Tezos tokens.  Section 12 does not apply to anyone who attempts to sell a security but only those who "successfully solicit [a] purchase."  *Pinter v. Dahl*, 486 U.S. 622, 647 (1988).  As numerous courts have explained, this requires that Plaintiff show that he contributed "*as a result of*" the DLS Defendants' solicitation.  *Steed Finance*, 2001 WL 1111508, at *7 (emphasis added); *see also Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[Plaintiff] must allege not only that [Defendant] actively solicited investors with respect to this transaction but that he purchased securities as a result of [Defendant's] solicitation."); *In re Puda Coal Sec. Litig.*. 2013 WL

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

5493007, at *9 (S.D.N.Y. Oct. 1, 2013) (granting summary judgment on Section 12 claim where the plaintiff "did not read a prospectus, speak to anyone at Puda Coal, or attend a road show"). The Complaint does not allege that Plaintiff (or anyone else who participated in the Fundraiser) contributed to the Fundraiser *as a result of the DLS Defendants' statements*. Indeed, the Complaint does not even allege that Plaintiff was aware of the DLS Defendants' statements before he contributed to the Fundraiser.

Plaintiff's Opposition neither contests the legal standard nor points to a single allegation in the Complaint that could satisfy it. Instead, Plaintiff asserts that "*personal* solicitation is not required for liability under Section 12." (Opp. at 17:3-6.) This is a non-sequitur; whether the solicitation occurs in-person or otherwise, a plaintiff suing under Section 12 must still show the defendant's solicitation "resulted" in the plaintiff's purchase. *Griffin*, 2001 WL 740764, at *2. As explained further below, Plaintiff has not shown that the DLS Defendants even participated in anything that could constitute a solicitation. But even if Plaintiff had carried this burden (he has not), then the Complaint would still fail because Plaintiff has not alleged a single fact which shows that the DLS Defendants played any role whatsoever in Plaintiff's decision to participate in the Fundraiser. Plaintiff does not address this argument in his Opposition, and accordingly concedes the point. *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

### 2.    Plaintiff Does Not Show Any Solicitation By the DLS Defendants.

Plaintiff argues that the DLS Defendants solicited his contribution by (a) publishing a White Paper in 2014 about the Tezos project; and (b) posting on the internet about the Tezos project. But simply participating in the operations of a business is not enough to hold a defendant liable as a solicitor under Section 12—the plaintiff must show "direct and active participation in the solicitation of an immediate sale." *Vanguard Specialized Funds v. VEREIT, Inc.*, 2016 WL 5858735, at *17 (D. Ariz. Oct. 3, 2016). In that regard, not every statement about a business or project qualifies as a "solicitation." Plaintiff must allege that the DLS Defendants "*urged a prospective purchaser to buy*." *Smith v. Am. Nat'l Bank & Trust Co.*, 982 F.2d 936, 941 (6th Cir. 1992) (emphasis added); *see also Pullins v. Klimley*, 2008 WL 85871, at *15 (S.D. Oh. Jan. 7, 2008) ("[A] statutory seller must engage

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1    in *activity which could be considered an offer*.") (emphasis added).  Neither of Plaintiff's theories

2    comes even close to adequately alleging that the DLS Defendants urged anyone to contribute to the

3    Fundraiser (much less buy a security).  *Smith*, 982 F.2d at 941.

4        First, Plaintiff argues that the release of the White Paper was a solicitation.  (Opp. at 14:5-7;

5    *see* Compl. ¶¶ 33-34.)  Not so.  The White Paper was released in 2014, three years before the Tezos

6    Fundraiser, and well before DLS was even incorporated.  (Compl. ¶ 33.)  Moreover, the White Paper

7    merely explains the underlying vision of the Tezos Network, makes no mention of the Fundraiser, and

8    does not ask for any contributions.  Plaintiff cites no authority suggesting that a mission statement

9    describing a technological innovation could constitute a solicitation.  It cannot.

10       Second, Plaintiff argues that a series of internet posts allegedly made by the DLS Defendants

11   are solicitations.  (Opp. at 14:18-15:7.)  However, the posts Plaintiff identifies merely show Kathleen

12   and Arthur Breitman giving information about the Tezos protocol and the general plans of DLS.  (*E.g.*,

13   statements that before conducting a fundraiser they would need to "iron out the details" (Compl. ¶ 51).)

14   None of these posts include language encouraging anyone to participate in the Fundraiser, advertising

15   Tezos Tokens as a good investment, or otherwise show any kind of "activity which could be

16   considered an offer."  *Pullins*, 2008 WL 85871, at *15.

17       At most, the internet posts show that some of the DLS Defendants provided information about

18   the Tezos protocol and expressed optimism in its future.  But there is a difference between providing

19   information about a company—even "present[ing] high favorable information about the Company"—

20   and actual solicitation that creates Section 12 liability.  *Brody v. Homestore, Inc.*, 2003 WL 22127108,

21   at *5 (C.D. Cal. Aug. 8, 2003) (promoting the company, rather than specifically trying to sell

22   securities, did not make the defendant a "seller").  For this reason, courts consistently hold that

23   participating in "roadshows" (presentations to investors in which a company promotes itself and

24   advertises a forthcoming securities offering) does not turn a presenter into a "seller" under Section 12.

25   *E.g.*, *id.* at *5 (multi-city roadshow in advance of offering showing "strong revenue and profit growth"

26   did not constitute solicitation); *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1080, 1102

27   (C.D. Cal. 2003) (participating in roadshows did not constitute solicitation); *Vanguard*, 2016 WL

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1   5858735, at *17 (participating in "conference calls with investors" did not show "direct and active

2   participation in the solicitation of an immediate sale").[7]

3       Finally, Plaintiff concludes by asserting that since the DLS Defendants "held themselves out

4   as sellers, the DLS Defendants cannot now disclaim liability under Section 12." (Opp. at 15:8-9.)  But

5   this is smoke and mirrors.  The fact that the DLS Defendants sometimes used the term "we" when

6   discussing a potential, future fundraiser does not suggest that they "held themselves out" as sellers.

7   But more importantly, Section 12 liability does not turn on whether defendants "held themselves out"

8   as sellers.  Rather, Section 12 liability only attaches to one who either passes title to a security or

9   solicits the sale of a security.  *Pinter*, 486 U.S. at 644-47 & n.21.  Plaintiff cites no authority supporting

10  his proposed alternative standard.  Plaintiff's citation to dicta from *In re Keegan Mgmt. Co., Sec. Litig.*,

11  1991 U.S. Dist. LEXIS 174941, at *22 (N.D. Cal. Sept. 10, 1991) is highly misleading.  The court

12  there expressly held that the plaintiffs had adequately alleged that the defendants either sold or

13  solicited securities and its analysis turned on whether the complaint adequately alleged financial

14  motivation.  *Id.* at *20-21.[8]  This Court should not, and cannot depart from the clear standard of *Pinter*

15  and its progeny holding that a non-seller may only be held liable under Section 12 if they are involved

16  in "activity which could be considered an offer" to sell securities.  *Pullins*, 2008 WL 85871, at *15.

17      In the end, Plaintiff resorts to name calling, saying that it is "silly" to point out that Kathleen

18  and Arthur Breitmans' alleged statements were not solicitations.  (Opp. at 19:2.)  Plaintiff asserts that

19  because (1) the DLS Defendants had a financial interest in the outcome of the Fundraiser (Opp. at

20  18:2-6); and (2) were responsible for developing the underlying technology (Opp. at 19:1-8) Kathleen

21  and Arthur Breitmans' posts online must have been solicitations.  *But financial interest alone does not

22  does not make a statement a solicitation.  Bennett v. Durham*, 683 F.3d 734, 737 (6th Cir. 2012) ("[A]

23  non-owner cannot be a seller unless he urges a prospective purchases to buy.  *It is not enough that the*

---

24

25  [7] Plaintiff's assertion that "the Breitmans actively promoted the Tezos ICO and solicited investors
    online" (Opp. at 14:7-8) is unsupported by any citation to the Complaint, which in turn only makes
26  conclusory allegations that the DLS Defendants "tout[ed] the Tezos ICO."  (Compl. ¶ 50.)  The Court
    should not accept these allegations as true.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th
    Cir. 2014) ("[W]e do not however accept as true allegations that are conclusory.").
27  [8] Moreover, the defendants in that case were all directly involved in the sale of securities, either as the
    issuing company, officers and directors of the issuer, or underwriters, all of whom were directly
28  involved in the actual offering or solicitations.  *In re Keegan*, 1991 U.S. Dist. Lexis 174941, at *3.

1   *putative seller stands to benefit if the sale goes through*, to be liable under a solicitation theory, *he*

2   *must have engaged in actual solicitation.*") (emphases added).  Statements by the DLS Defendants

3   that only offered information—and were not offers to sell Tezos Tokens—cannot be transmuted into

4   solicitations merely because of financial incentives.[9]  Lacking any allegations of actual, direct

5   solicitation by the DLS Defendants, the causes of action against them must be dismissed.

### 3.   Plaintiff's Other Examples of "Participation" Do Not Create Liability Under Section 12.

8          Plaintiff points to three additional ways in which the DLS Defendants allegedly participated in

9   the Tezos project.  None of these activities constitute sales or solicitations, and Plaintiff cites no

10  authority suggesting that they could.

11         Plaintiff's **first theory** is that the DLS Defendants "are the architects of the Tezos ICO and the

12  Tezos project."  (Opp. at 12:6.)  To support this argument, Plaintiff points to the fact that Arthur

13  Breitman conceived of the Tezos protocol and is the primary developer behind the project.  (Opp. at

14  12:7-8.)  This is utterly irrelevant to whether or not he solicited contributors to the Fundraiser.  Nor

15  does it matter if DLS "advised the Foundation on technology."  (Opp. at 12:17.)  None of this shows

16  that the DLS Defendants actively urged anyone to contribute to the Fundraiser.

17         Moreover, as explained further in Section C below, the Complaint does not come close to

18  alleging facts showing that show Kathleen and Arthur Breitman controlled the Foundation.  In any

19  event, even if they had been able to exert some level of control over the Foundation, Plaintiff would

20  still need to allege facts showing that the DLS Defendants actually controlled or directed solicitations

21  or sales.  *In re Am. Apparel, Inc. S'holder Litig*, 2013 WL 10914316, at *3 (C.D. Cal. Aug. 8, 2013)

22  (dismissing claim where plaintiff failed to link generalized allegations of control to specific control or

23  direction over the acts allegedly violating securities law).[10]  The well-pled facts of the Complaint

---

[9] For the same reason, Plaintiff's attempts to distinguish the DLS Defendants' authority fails.  Plaintiff argues that the DLS Defendants' cases "did not allege that the defendants were motivated by the own financial interests."  (Opp. at 18:8-10.)  But solicitation is a two-part test—financial motivation *and* a direct offer to sell securities, and a claim may fail on either count.  *Bennett*, 683 F.3d at 737.

[10] Plaintiff's bare, conclusory assertions that the DLS Defendants were the "architects of the Tezos ICO" should not be accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  For the same reason, Plaintiff's reliance on *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140 (N.D. Cal. 1989) is misplaced.  There, the court found that a conclusory allegation that certain defendants "orchestrated

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

allege only that the DLS Defendants developed the Tezos protocol and advised the Foundation on technical issues. (*E.g.*, Compl. ¶¶ 20, 48.) Without any *facts* showing the DLS Defendants controlled or directed the sale of Tezos Tokens, Plaintiff cannot establish liability.

Plaintiff's **second theory** is that DLS owned the intellectual property underlying the Tezos protocol. (Opp. at 13:8.) Plaintiff never explains however how owning intellectual property necessarily translates into "direct and active participation in the solicitation of an immediate sale" (*Vanguard*, 2016 WL 5858735, at *17) and instead asserts that this case therefore parallels the facts of *In re Am. Bank Note Holographics, Inc. Secs. Litig.*, 93 F. Supp. 2d 424 (S.D.N.Y. 2000). (Opp. at 13:14.) *American Bank Note* concerned a parent and its wholly owned subsidiary corporation rather than the two distinct and separate legal entities present here. 93 F. Supp. 2d at 439. More fundamentally though, the defendant in *American Bank Note* "actively solicited the sale through participation in preparation of the registration statement and prospectus." *Id.* The defendants' direct involvement in drafting registration statements and a prospectus—indisputably solicitation documents—is what allowed the claim to pass muster under Section 12. *Id.* Here, by contrast, Plaintiff does not allege any similar participation by the DLS Defendants in anything similar to a prospectus or comparable solicitation activity. No authority holds that simply owning intellectual property is enough to create liability under Section 12, and this theory accordingly fails.

Plaintiff's **final theory** is that "the Breitmans were responsible for executing the actual Tezos ICO." (Opp. at 15:14.) Again, the Complaint only alleges that the DLS Defendants maintained the technical aspects of the Fundraiser, such as by maintaining servers and troubleshooting IT problems as they arose during the Fundraiser. (Compl. ¶¶ 57-58.)[11] But the rule is clear: attorneys, accountants, and stock market officials who all help implement and run security offerings are *not* sellers under Section 12. *Pinter*, 496 U.S. at 651-52. Troubleshooting IT issues is a far cry from soliciting purchasers. The fact is that Kathleen and Arthur Breitman and DLS neither passed title to Tezos

and controlled the sales and distribution" of securities was sufficient to allege seller liability under Section 12. *Id.* at 1148. This kind of bare-bones, conclusory pleading would not survive a motion to dismiss post-*Iqbal*.

[11] Furthermore, Plaintiff's assertion that the servers hosting the Tezos website are physically located in the U.S. will be swiftly disproved in discovery.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-11-
DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

Tokens nor made an offer to sell the tokens—they merely participated in the process as service professionals and cannot be held liable any more than an accountant who worked on an IPO. *Id.*

Plaintiff's final two cases only confirm that he is attempting to blur the line between participating in a business and participating in a solicitation. The defendant in *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 187 (S.D.N.Y. 2003) not only signed the registration statement but "personally" "encourage[ed] investors to purchase Vivendi's securities." Nothing comparable is alleged here. Similarly, the underwriters in *In re Valence Tech Sec. Litig.*, 1995 U.S. Dist. LEXIS 10379, at *50 (N.D. Cal. May 8, 1995) were alleged to have actually "solicited sales."[12]

In sum, in every case relied on by the Plaintiff there were adequate allegations (some of which would not be sufficient under today's pleading standards) that the defendants had actually *sold* securities or *directly participated in the solicitation* of securities; none of the decisions found that generalized allegations of participation in the business was sufficient to establish Section 12 liability. And as discussed above, none of the actions or statements attributed to the DLS Defendants in the Complaint constituted solicitations. The Complaint against them must be dismissed accordingly.

## C.    Plaintiff Has Not Sufficiently Alleged That Kathleen and Arthur Breitman Control the Tezos Foundation

Plaintiff fails to adequately allege that Kathleen and Arthur Breitman possessed control over the Tezos Foundation, such that they could be held liable under Section 15 of the Securities Act if the Foundation is found to have violated the federal securities laws. "Control" requires "the possession, direct or indirect, of the power to direct or cause the direction of the *management and policies* of a person." 17 C.F.R. § 230.405 (emphasis added). Nothing in the Complaint suggests that Kathleen and Arthur Breitman possessed that power over the Foundation.

The question at hand is not whether there is some relationship between Kathleen and Arthur Breitman and/or the Foundation and/or the Fundraiser—it is whether Kathleen and Arthur Breitman, who are not directors or officers of or otherwise employed by the Foundation, *controlled* the

---

[12] Notably, the Court in *In re Valence* noted that the plaintiffs only barely passed the old threshold for adequate pleading. 1995 U.S. Dist. Lexis 10379, at *51 ("[T]he court notes plaintiffs do not present a model pleading."). Such allegations would not be adequate post-*Iqbal*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
-12-
DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

Foundation's decision to conduct the Fundraiser without filing a registration statement. The Foundation is a Swiss entity that "operates independently from DLS" and is led by a council that functions as a board of directors under Swiss law. (Dkt. 124-3, Kirby Decl. Ex. 3 at 1; *see also* Dkt. 123, Motion ("Mot.") at 5-6; Dkt. 124-1, Kirby Decl. Ex. 1 at 8.) Plaintiff does not and cannot allege that Kathleen and Arthur Breitman have ever been members of that council, nor does he cite any cases in which an individual *not* formally affiliated with an entity was found to control that entity.[13] Plaintiff's allegations miss the mark, particularly considering that even where an individual defendant holds formal authority within an organization (which Kathleen and Arthur Breitman do not), courts have required a plaintiff to allege how that defendant exercised control over other members of the leadership or the organization itself. *See, e.g.*, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017) (dismissing control person claim where allegations failed to establish that director who signed and approved certain financial reports was "active in the day-to-day affairs" of primary violators); *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing control person claim against a company's vice-president where allegations failed to establish how the vice-president exerted control over the other defendants, who were his peers and supervisors, or the company itself). Such allegations are clearly absent here.

Moreover, the very facts alleged in the Complaint contradict any notion that Kathleen and Arthur Breitman controlled the Foundation. Indeed, the Complaint alleges that, in the fall of 2017, a dispute arose "amongst the Defendants and the directors of the Tezos Foundation"—thus plainly recognizing that Kathleen and Arthur Breitman neither served as directors of the Foundation nor controlled those directors, who they were allegedly fighting with. (Compl. ¶ 127.) The Complaint also alleges that the clash included "material disputes between the Breitmans and the Tezos Foundation's President, Johann Gevers." (Compl. ¶ 128.) As such, Plaintiff himself alleges that

---

[13] In a parallel context, the "Ninth Circuit has observed [that] courts have generally been very reluctant to treat lenders as controlling persons of their borrowers," even where the lender holds stock and/or such powers as the right to approve leases, control financing, set rental rates, and more. *In re Am. Apparel*, 2013 WL 10914316, at *35 (quotations omitted). Plaintiff's allegations (for example, that Kathleen and Arthur Breitman "advised" the Foundation) are far more attenuated from any control theory than these assertions, which courts have repeatedly found insufficient to establish control.

Kathleen and Arthur Breitman did not control the Foundation's directors or its top leadership.  The nature of the dispute described in the Complaint and in publicly available articles cited therein dispels any notion that Kathleen and Arthur Breitman exerted control over the Foundation.[14]   (*See, e.g.*, Compl. ¶ 118 (citing https://medium.com/@arthurb/the-path-forward-eb2e6f63be67) ("We [Kathleen and Arthur Breitman] supported the creation of an independent foundation in order to provide transparency and accountability over the use of funds.  To that end, neither of us sits on the board of the foundation.") & Dkt. 132-1, Ta Decl. Ex. A at 13 ("The Breitmans officially have no role at the Tezos Foundation.").)  Plaintiff has not and cannot explain how, if Kathleen and Arthur Breitman controlled the Foundation (as he alleges), this dispute would have come to pass, been handled in such a public manner, or escalated to the point of "endangering the viability of the Tezos project." (Compl. ¶ 128.)

Plaintiff also contends he alleged that Kathleen and Arthur Breitman "established" and/or "created" the Tezos Foundation.  (Opp. at 20 (citing Compl. ¶¶ 16-17, 47-48).)  First, the Complaint's scattershot factual allegations fall far short of pleading anything close to that.[15]   Second, even if Kathleen and Arthur did "establish" the Foundation, it would be irrelevant to whether they controlled it—just because someone plays a role in creating an entity does not mean they control it.  This is especially true, where, as here, it is undisputed that the Foundation was governed by a separate and independent council, that Kathleen and Arthur Breitman were not part of that council, and that

---

[14] In one article cited by Plaintiff, Gevers stated that the Foundation "wants the couple to continue playing a leading advisory role" but that "[y]ou can rest assured as long as I have anything to do with this, the foundation will be independent." (Dkt. 132-1, Ta Decl. Ex. A at 13.)

[15] As Plaintiff has not pled any facts supporting his conclusory allegation that Kathleen and Arthur Breitman established the Foundation, that allegation cannot be credited.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1051.  For example, Plaintiff's assertion that the DLS Defendants "established the Tezos Foundation" is based on two statements in the Tezos Overview: (1) "Tezos' founders thought it that it would be beneficial for the Tezos Network if a nonprofit foundation could guide its early steps and complement the decentralized nature of its governance model," and (2) "DLS advises the Foundation closely on technology."  (Compl. ¶ 48; Dkt. 124-1, Kirby Decl. Ex. 1.)  But whether the founders *thought* the formation of a nonprofit foundation was a good idea does not mean that they themselves established the Foundation, much less controlled it once created.  Nor does giving advice to an organization indicate that the advisor *created* that organization or held authority over it.  (*See* Mot. at 22.)  Further, DLS is mentioned only once in paragraphs 16 and 17, where Plaintiff alleges that the Foundation "claims to have contracts with DLS to acquire all rights to the Tezos project." (Compl. ¶ 16; *see also* ¶ 47.)  This alleged contractual relationship has no bearing on whether Kathleen and Arthur Breitman controlled the Foundation.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-14-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

1   Kathleen and Arthur Breitman held no other position with the Foundation.

2   Similarly, Plaintiff's allegation that Johann Gevers once stated that Kathleen and Arthur

3   Breitman control the Foundation's "domains, website and email servers" is insufficient to allege

4   control over the Foundation's *decision-making*. (Compl. ¶ 48.) Plaintiff also references allegations

5   regarding Kathleen and Arthur Breitman's involvement in promoting the Tezos protocol and dealing

6   with some technical aspects during the Fundraiser. (Opp. at 21; Compl. ¶¶ 54, 57-58.) These

7   allegations shed no light on Kathleen and Arthur Breitman's alleged control over the *Foundation*. *See,*

8   *e.g.*, *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (control person

9   inquiry "must revolve around the 'management and policies' of the corporation, not around discrete

10   transactions"); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 970 (N.D.

11   Cal. 2010) ("[T]hat the [defendants] were able to influence certain portions of the transactions at issue

12   is insufficient to plead a control person theory.").

13   At most, Plaintiff has alleged that Kathleen and Arthur Breitman worked with and/or advised

14   the Foundation on some matters related to the underlying Tezos protocol and technical aspects of

15   executing the Fundraiser. Plaintiff has not, however, argued that some degree of collaboration on an

16   idea or project gives rise to an inference that an individual has the "power to dictate [an organization's]

17   conduct or operations." *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D.

18   Cal. 2000); *see also Brodskey v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1207 (N.D. Cal. 2008) (dismissing

19   control person claim where the plaintiff failed to allege that the defendants' "participation in the day-

20   to-day affairs of [the company] was such that they exercised actual power or control over the issuance

21   of any accounting decisions or financial statements").

22   As Plaintiff has failed to allege a primary violation on behalf of DLS or that Kathleen and

23   Arthur Breitman were controlling persons with respect to the Tezos Foundation, the Section 15 claims

24   against them must be dismissed.

25   **III.   CONCLUSION**

26   For the foregoing reasons, the DLS Defendants respectfully request that the Court grant their

27   Motion and dismiss the Complaint with prejudice.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS

Dated:  June 29, 2018                    **BAKER MARQUART LLP**


                                         _/s/ Brian E. Klein_
                                         Brian E. Klein (258486)


                                         Attorneys for Defendants
                                         DYNAMIC LEDGER SOLUTIONS, INC.,
                                         KATHLEEN BREITMAN, and ARTHUR
                                         BREITMAN


                                         **COOLEY LLP**


                                         _/s/ Patrick E. Gibbs_
                                         Patrick E. Gibbs (183174)

                                         Attorneys for Defendant
                                         DYNAMIC LEDGER SOLUTIONS, INC.,

1

## **FILER'S ATTESTATION**

2        Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, Patrick E. Gibbs hereby attests

3  that concurrence in the filing of this document has been obtained from all the signatories above.

4  Dated:  June 29, 2018                    **COOLEY LLP**

5

6                                                    */s/ Patrick E. Gibbs*

7                                                    Patrick E. Gibbs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-17-

DLS DEFENDANTS' REPLY ISO
MOTION TO DISMISS
CASE NO. 17-CV-06779-RS