Neal A. Potischman (SBN 254862)
Serge A. Voronov (SBN 298655)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
        serge.voronov@davispolk.com

Edmund Polubinski III (*pro hac vice*)
Andrew S. Gehring (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:   (212) 701-5800
Email: edmund.polubinski@davispolk.com
        andrew.gehring@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to: All Actions | Master File No. 17-cv-06779-RS<br><br>CLASS ACTION<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**<br><br>Date:   July 19, 2018<br>Time:   1:30 p.m.<br>Dept.:  Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT .................................................................................................................................2

I.     Plaintiff Has Not Established Specific Jurisdiction Over the Foundation ..............................2

     A.     The Foundation's Nominal Contacts Do Not Create Specific Jurisdiction ................2

     B.     A Majority of the Reasonableness Factors Favor Dismissal ........................................6

     C.     Plaintiff Has Not Justified His Request for Jurisdictional Discovery.........................7

II.     Forum Non Conveniens Requires Dismissal of This Case ......................................................8

     A.     Awareness of the Contribution Terms Requires Dismissal ..........................................8

     B.     Forum Non Conveniens Principles Support Dismissal of the Case............................11

III.     Plaintiff's Contribution Was Executed Abroad and So Is Not Subject to U.S. Law ...........12

CONCLUSION ............................................................................................................................15

i

REPLY IN FURTHER SUPPORT OF DEFENDANT TEZOS STIFTUNG'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT
MASTER FILE NO. 17-CV-06779-RS

1

## TABLE OF AUTHORITIES

2

PAGE

3

### Cases

4

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012) ............................................................................ 15, 18

*Advanced Skin & Hair, Inc. v. Bancroft*,
    858 F. Supp. 2d 1084 (C.D. Cal. 2012) ................................................................ 5

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
    666 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................................... 5

*AM Tr. v. UBS AG*,
    78 F. Supp. 3d 977 (N.D. Cal. 2015) .................................................................. 3

*Anyanwu v. Jaguar Land Rover N. Am., LLC*,
    No. CV 15-2272-R, 2015 WL 12860481 (C.D. Cal. June 8, 2015) ..................... 9, 14

*Aqua Connect, Inc. v. Code Rebel, LLC*,
    No. CV 11-5764-RSWL MANx, 2011 WL 4480639 (C.D. Cal. Sept. 26, 2011) .......... 5

*Azzarello v. Navagility, LLC*,
    No. C-08-2371 MMC, 2008 WL 4614667 (N.D. Cal. Oct. 16, 2008) ...................... 3

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................................ 10

*Be In, Inc. v. Google Inc.*,
    No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ................... 11

*BGDG Enters., LLC v. Barley & Swine*,
    No. A-13-CA-719-SS, 2014 WL 12479650 (W.D. Tex. Jan. 23, 2014) .................. 4

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................ 6

*Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.*,
    No. 08-cv-01381-MSK-CBS, 2011 WL 1211511 (D. Colo. Mar. 31, 2011) ............ 19

*Combs v. Greenfield*,
    No. C 09-06042 SI, 2010 WL 1912113 (N.D. Cal. May 11, 2010) ....................... 9

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ............................................................................. 9

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

*Davis v. HSBC Bank Nevada*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................. 17

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ...................................................................... 4

*Doe v. Xytex Corp.*,
  No. C 16-02935 WHA, 2016 WL 3902577 (N.D. Cal. July 19, 2016) ..................... 11

*FDIC v. Providence College*,
  115 F.3d 136 (2d Cir. 1997) ..................................................................................... 13

*Friedman v. Guthy-Renker LLC*,
  No. 14-cv-6009, 2015 WL 857800 (C.D. Cal. Feb. 27, 2015) .................................. 13

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................ 11

*Gemini Capital Grp., Inc. v. Yap Fishing Corp.*,
  150 F.3d 1088 (9th Cir. 1998) .................................................................................. 14

*Imageline, Inc. v. Mintskovsky*,
  No. CV0901869 SJO JCx, 2009 WL 10672787 (C.D. Cal. June 16, 2009)................ 5

*In re Alcon S'holder Litig.*,
  719 F. Supp. 2d 263 (S.D.N.Y. 2010) .................................................................. 9, 14

*In re LDK Solar Sec. Litig.*,
  No. C0705182WHA, 2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ........................ 3

*Mehr v. Féderation Internationale de Football Ass'n*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ..................................................................... 7

*Mencanin v. Fat Head's Bales to Hoppy Ales, LLC*,
  No. SACV 14-1718 AG(RNBx), 2015 WL 12743686 (C.D. Cal. Mar. 16, 2015) ...... 4

*Metter v. Uber Techns., Inc.*,
  No. 16-cv-6652, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017)................................ 12

*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*,
  556 F.2d 975 (9th Cir. 1977) .................................................................................... 15

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)................................................................................................... 16

*Myun-Uk Choi v. Tower Research Capital LLC*,
  890 F.3d 60 (2d Cir. 2018)................................................................................... 18, 19

*Nghiem v. Dick's Sporting Goods, Inc.*,
    No. 16-cv-97, 2016 WL 9131962 (C.D. Cal. July 5, 2016) ....................................................... 13

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ..................................................................................... 10, 11, 12, 13

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) ........................................................................................................ 16

*Philpot v. Kos Media LLC*,
    No. 16-CV-01523 (AT)(BCM), 2017 WL 2270248 (S.D.N.Y. Apr. 21, 2017) ........................... 4

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ..................................................................................................................... 15

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010) ................................................................................... 17, 18

*Primarch Mfg., Inc. v. At Large Nutrition, LLC*,
    No. 13CV3106 JM KSC, 2014 WL 585632 (S.D. Cal. Feb. 14, 2014) ........................................ 8

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...................................................................................................... 6

*Rippey v. Smith*,
    No. C-99-1488-CRB, 1999 WL 1012316 (N.D. Cal. Oct. 28, 1999) ........................................ 8, 9

*Rodman v. Safeway Inc.*,
    No. 11-cv-3003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) ................................................... 12

*Rosen v. Masterpiece Mktg. Grp., LLC*,
    No. CV 15-06629 SJO ASx, 2015 WL 12860487 (C.D. Cal. Dec. 23, 2015) ............................ 5

*Salas v. Facultative Techs. the Am.'s Inc.*,
    No. 1:17-CV-00335-LJO-BAM, 2018 WL 2010522 (E.D. Cal. Apr. 30, 2018) ....................... 10

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ..................................................................................................................... 14

*Senne v. Kan. City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) .......................................................................................... 7

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
    No. SACV 11-0093, 2011 WL 2940992 (C.D. Cal. July 18, 2011) ............................................ 15

*Stomp, Inc. v. NeatO, LLC*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) .......................................................................................... 5

iv

*United States v. Ulbricht*,
   31 F. Supp. 3d 540 (S.D.N.Y. 2014)..................................................................... 5

*Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*,
   No. C 12-02912 SI, 2012 WL 4755041 (N.D. Cal. Oct. 4, 2012) ............................... 3

*Wash., Dep't of Revenue v. www.Dirtcheapcig.com, Inc.*,
   260 F. Supp. 2d 1048 (W.D. Wash. 2003).............................................................. 5

*Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ............................................................................... 7

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997)......................................................................... 4

1

**PRELIMINARY STATEMENT**

2      Although plaintiff has attempted to focus on the alleged actions of other parties and on

3 inapplicable law, the dispositive facts remain clear from the face of the Complaint and the

4 documents it incorporates:  Plaintiff's contribution to the Fundraiser was but one out of tens of

5 thousands worldwide, made to a Swiss foundation with no U.S. presence, through software

6 designed and housed in Europe, pursuant to terms that clearly state that any disputes must be

7 resolved by Swiss courts.[1]  All of the essential facts in the Complaint underlying plaintiff's claim

8 arise abroad, and plaintiff cannot obscure them by emphasizing in an opposition brief his own

9 fortuitous connection to the United States.

10      Conceding that the Foundation is based in Switzerland and used a Swiss financial institution

11 in connection with a fundraiser the terms of which expressly contemplated the application of Swiss

12 law, plaintiff asks this Court to assert jurisdiction over the Foundation because certain contributors

13 were U.S.-based.  But only *the Foundation's* actions can create specific jurisdiction over the

14 Foundation.  And the Complaint alleges no action by the Foundation that comes close to the

15 requisite purposeful targeting of the United States.  In his Opposition, plaintiff focuses on a website

16 that is not controlled by the Foundation and that nowhere mentions the United States, and on the

17 conduct of other defendants where there is no basis on which to impute their actions to the

18 Foundation.  Plaintiff's fallback is a single instructional video about the Fundraiser—but as a

19 matter of law, that video is irrelevant because plaintiff has not and cannot allege that it forms any

20 part of the causal chain giving rise to his claim.  This Court does not have jurisdiction over the

21 Foundation, and it should be dismissed from this case.

22      Beyond that threshold issue, however, plaintiff's claim against the Foundation has deeper

23 problems.  Faced with Contribution Terms that mandate dismissal of this action under their forum-

24 selection clause, plaintiff claims that they do not apply to him.  He argues, using inapposite law,

25 that the terms were not incorporated into the contract governing his contribution—without ever

---

26 [1] Terms not defined herein have the meaning given to them in the Foundation's Motion to Dismiss
27 the Consolidated Complaint, dated May 15, 2018 [ECF No. 119] (the "Motion").  Plaintiff's
opposition to the Motion, dated June 8, 2018 [ECF No. 131] is referred to as the "Opposition."

28

identifying what that contract possibly could be if *not* the Contribution Terms.  The correct standard, as courts have applied time and again to internet-based transactions, is whether a plaintiff had actual notice or inquiry notice of the relevant terms.  Unable to deny that he had actual notice of the Contribution Terms, plaintiff instead argues that the contribution website was not specific enough about the terms' existence to put him on inquiry notice, while disregarding the multiple other forums announcing the Contribution Terms and the awareness of the terms among the Tezos community at large.  The terms govern his contribution, and the forum-selection clause requires that his claims be brought in Switzerland.

And Switzerland is the most appropriate venue for this matter—not only because the Foundation is not subject to U.S. jurisdiction, but also because U.S. law does not apply.  Plaintiff asks this Court to declare that the U.S. securities laws reach every transaction on a blockchain, no matter where the parties to the transaction were located or what their agreements require.  But the Supreme Court has expressly warned against that type of expansive extraterritorial application of U.S. law.  Instead, U.S. securities law applies only to transactions executed domestically.  And, here, plaintiff's contribution was expressly executed by software overseas.  The Foundation did not recognize that his contribution had been made until that same software—still located in Europe— had processed it, meaning that, to the extent there was any meeting of the minds, it occurred abroad.  The U.S. securities laws simply do not reach what is fundamentally a foreign transaction.

ARGUMENT

**I.      Plaintiff Has Not Established Specific Jurisdiction Over the Foundation**

    **A.      The Foundation's Nominal Contacts Do Not Create Specific Jurisdiction**

In attempting to meet his burden of establishing specific jurisdiction over the Foundation (Opp'n 3-7), plaintiff largely ignores the Ninth Circuit's requirement that the Foundation *itself* must have purposefully targeted the United States—which it simply did not do.  Instead, he asks the Court to improperly consider alleged claims of putative class members and to impute other defendants' contacts to the Foundation without legal basis.  The Court should reject these arguments.

2

1      First, plaintiff argues that the Foundation's receipt of contributions from an unspecified

2   number of U.S. persons is "alone sufficient" to demonstrate jurisdiction.  (Opp'n 4.)  But these

3   supposed U.S. contributions are "irrelevant to the question of specific jurisdiction" because only

4   plaintiff's claim—not "claims of unnamed class members"—can give rise to jurisdiction.  *AM Tr. v.*

5   *UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017).  More

6   fundamentally, plaintiff's burden is to show that *the Foundation* "purposefully established

7   minimum contacts with the forum," which he cannot do through assertions of activity by persons

8   *other than the Foundation*.  (Mot. 8-11 (quoting *Azzarello v. Navagility, LLC*, No. C-08-2371

9   MMC, 2008 WL 4614667, at *4 (N.D. Cal. Oct. 16, 2008)).)[2]

10     Second, plaintiff asserts that his allegation that the Foundation operated tezos.com, which

11  was "interactive" (inasmuch as it provided access to the Fundraiser's contribution software in

12  Europe), *ipso facto* establishes jurisdiction.  (Opp'n 4-5, 8-9.)  But that is not the standard:  "If the

13  defendant merely operates a website, even a 'highly interactive' website, that is accessible from,

14  but does not target, the forum state, then the defendant may not be hauled into court in that state

15  without offending the Constitution."  *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881

16  (N.D. Cal. 2012); *see also Mencanin v. Fat Head's Bales to Hoppy Ales, LLC*, No. SACV 14-1718

17  AG(RNBx), 2015 WL 12743686, at *2 (C.D. Cal. Mar. 16, 2015) (sales over a website do not

18  establish specific jurisdiction in the absence of "facts supporting that Defendant 'purposefully . . .

19  directed [its] activity in a substantial way to the forum'").  Plaintiff does not even attempt to show

20  such targeting because, as explained in the Motion, none existed—the Foundation actively centered

21  the Fundraiser in Europe and nowhere even mentioned the United States in any Fundraiser

22  _____

23  [2] Plaintiff asserts that the Foundation "access[ed] the U.S. capital markets" (Opp'n 4), which is a
    wholly inaccurate characterization of receiving funds through direct contributions.  His legal

24  citations are therefore factually inapposite, but they nevertheless support the proposition that only
    the *defendant's* actions are relevant to the specific jurisdiction analysis.  *See In re LDK Solar Sec.*

25  *Litig.*, No. C0705182WHA, 2008 WL 4369987, at *2-4, 6 (N.D. Cal. Sept. 24, 2008) (finding
    jurisdiction because *defendant* signed an allegedly fraudulent prospectus, caused it to be filed with

26  the SEC, and registered its securities on the NYSE); *Vanity.com, Inc. v. Vanity Shop of Grand*
    *Forks, Inc.*, No. C 12-02912 SI, 2012 WL 4755041, at *3 (N.D. Cal. Oct. 4, 2012) (finding

27  jurisdiction where *defendant* admitted to directing advertising to California).

28

1  materials.[3]  (Mot. 8-9.)  For the same reason, plaintiff's reliance on a decision from the Western

2  District of Pennsylvania, *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119,

3  1126 (W.D. Pa. 1997), is misplaced.  (Opp'n 8.)  In *Zippo*, the defendant contracted with seven

4  ISPs "to furnish its services to their customers in Pennsylvania," "consciously chose to process

5  Pennsylvania residents' applications," and thus "knew that the result of these contracts would be

6  the transmission of electronic messages into Pennsylvania."  *Id.*  Here, however, plaintiff does not

7  allege that the Foundation had any such contacts with the forum, or even knew the location of

8  contributors when it accepted contributions.  Nor could he, as the cryptocurrency transactions used

9  to make contributions to the Fundraiser were anonymous, conducted through randomly generated

10 digital addresses.  (Compl. ¶ 72.)  *Cf. United States v. Ulbricht*, 31 F. Supp. 3d 540, 547 (S.D.N.Y.

11 2014) (bitcoin is "an anonymous and untraceable form of payment").[4]

12       Independent of the insufficiency of tezos.com's targeting, plaintiff has failed to show that

13 the Foundation controlled the website.  (Mot. 11.)  Without addressing the fact that the website was

---

14  [3] Plaintiff suggests that tezos.com being hosted on a third-party server in Arizona has some bearing
15  on this analysis.  (Opp'n 4.)  But the location of a website server is "random [and] fortuitous," "a
    product of the activity of third parties, not the Defendants themselves."  *BGDG Enters., LLC v.*
16  *Barley & Swine*, No. A-13-CA-719-SS, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014)
    (rejecting specific jurisdiction based on the location of a website server); *accord Philpot v. Kos*
17  *Media LLC*, No. 16-CV-01523 (AT)(BCM), 2017 WL 2270248, at *11 (S.D.N.Y. Apr. 21, 2017).

18  [4] Plaintiff's other cases likewise involve express targeting and knowing transmissions to forum
19  residents, and are therefore inapplicable.  *See Rosen v. Masterpiece Mktg. Grp., LLC*, No. CV 15-
    06629 SJO ASx, 2015 WL 12860487, at *9 (C.D. Cal. Dec. 23, 2015) (defendant "solicited
20  advertisements from California companies[] and sought out product and customer bases of
    California residents"); *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1090 (C.D.
21  Cal. 2012) (defendant "actively promoted and offered to sell infringing products in California");
    *Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764-RSWL MANx, 2011 WL 4480639, at *5
22  (C.D. Cal. Sept. 26, 2011) (defendant "solicited business from California customers and regularly
    sold infringing products to California"); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.
23  Supp. 2d 1109, 1116, 1122 (C.D. Cal. 2009) (defendant "regularly advertises its products to and
    solicits business from California residents" and shipped products from a "service center located in
24  the state"); *Imageline, Inc. v. Mintskovsky*, No. CV0901869 SJO JCx, 2009 WL 10672787, at *3
    (C.D. Cal. June 16, 2009) (defendant shipped products to California residents and created "ongoing
25  obligations" to do so on a recurring basis); *Wash., Dep't of Revenue v. www.Dirtcheapcig.com,*
    *Inc.*, 260 F. Supp. 2d 1048, 1051 (W.D. Wash. 2003) (defendant shipped products to and
26  "advertise[d] in" Washington); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 & n.7 (C.D.
27  Cal. 1999) (defendant knowingly sold and shipped products to California residents).

28
                                          4

registered years before the Foundation even existed, plaintiff claims that his burden is met because the website's Whois page identifies Johann Gevers as its administrator. (Opp'n 9-10.) But plaintiff has argued—in a filing with the Court—on the basis of Mr. Gevers's statements that DLS "orchestrated" and "executed" the Fundraiser (conducted on tezos.com) through its "control [of] the foundation's domains [and] websites." (Lead Pl.'s Opp'n to DLS Defs.' Mot. to Dismiss (June 8, 2018) [ECF No. 133] ("DLS Opp'n"), at 12, 20-21; *see also id.* at 5 ("DLS controls the Tezos Foundation website . . . .").) Plaintiff cannot have it both ways. The only plausible conclusion is that the Foundation did not control tezos.com.

Third, plaintiff argues that the Foundation conducted marketing in the United States "through DLS and the Breitmans." (Opp'n 6.) But he identifies no basis in law or fact to impute DLS's and the Breitmans' alleged forum activities to the Foundation. As the Foundation has explained, DLS and the Foundation are legally distinct entities, making such imputation unwarranted. (Mot. 13 (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074-75 (9th Cir. 2015) (refusing to impute contacts of Nike to its Dutch subsidiary because plaintiff failed to show they were alter egos)).) Plaintiff has not even attempted to argue that DLS and the Foundation are alter egos, and there are no allegations in the Complaint that would even remotely support such an argument. At most, the Opposition can be read as suggesting that DLS might be an agent of the Foundation. But here, too, the Complaint contains no allegations that would support such an assertion. And in fact, plaintiff has argued the opposite: that *DLS* controlled the Foundation. (DLS Opp'n 12, 20-21.) That theory cannot possibly create jurisdiction over the Foundation, because a principal's forum contacts cannot be imputed to its agent. *See, e.g., Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there.").

Finally, plaintiff returns to his allegation that the Foundation employed Ross Kenyon, even though plaintiff never alleges that he viewed Mr. Kenyon's video.[5] (Opp'n 6, 10.) The failure to

---

[5] Plaintiff insists that Mr. Kenyon must have made the video in the United States because his LinkedIn page does not identify any foreign travel. (Opp'n 10 n.10.) That very same LinkedIn page likewise does not indicate that Mr. Kenyon ever worked for the Foundation. (Mot. 12.) Plaintiff thus asserts that Mr. Kenyon was the Foundation's agent because his video was posted on

1    allege that he viewed the video renders his allegations about Mr. Kenyon irrelevant as a matter of

2    law.  To assert specific jurisdiction, the Ninth Circuit requires "a showing that the claims would not

3    have arisen but for [defendant's] contacts with the forum." *Mehr v. Féderation Internationale de*

4    *Football Ass'n*, 115 F. Supp. 3d 1035, 1051 (N.D. Cal. 2015).  While the "extent of the defendant's

5    contacts with the forum and the degree to which the plaintiff's suit is related to those contacts" are

6    relevant (Opp'n 10 (quoting *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433

7    F.3d 1199, 1210 (9th Cir. 2006)), the threshold requirement remains that a contact must form a

8    causal link in the chain of events giving rise to plaintiff's claim.  *See Senne v. Kan. City Royals*

9    *Baseball Corp.*, 105 F. Supp. 3d 981, 1040 (N.D. Cal. 2015) (requiring each plaintiff to show that

10    he was personally scouted by defendant in the forum because, to establish specific jurisdiction, a

11    claim must stem from "an uninterrupted whole which began with, and was uniquely made possible

12    by, [defendant's] contacts in [the forum]").  Plaintiff does not allege that he watched Mr. Kenyon's

13    video, so it cannot form any part of the causal chain giving rise to his claim.  Plaintiff cannot create

14    specific jurisdiction through general jurisdiction allegations.  *See Primarch Mfg., Inc. v. At Large*

15    *Nutrition, LLC*, No. 13CV3106 JM KSC, 2014 WL 585632, at *4 (S.D. Cal. Feb. 14, 2014)

16    (rejecting allegation that defendant had done other business in the forum unrelated to the claim

17    because it "bears on general, and not specific jurisdiction").

18    **B.**     **A Majority of the Reasonableness Factors Favor Dismissal**

19       Because plaintiff has failed to meet his burden of demonstrating that his claim arises out of

20    the Foundation's purposeful contact with the United States, the Court need not even consider

21    plaintiff's arguments regarding the reasonableness factors (Opp'n 11-12).  Nonetheless, a majority

22    of these factors weigh in the Foundation's favor.

23       *First*, plaintiff has not rebutted the Foundation's showing that it is grounded in Europe (Mot.

24    14), other than to rely on his same flawed specific jurisdiction arguments.  There is no dispute that the

25    Foundation has no regular presence in the United States.  *See Rippey v. Smith*, No. C-99-1488-CRB,

26

27    tezos.com.  But merely displaying another's work does not create an agency relationship,
particularly when the Foundation did not control tezos.com, as discussed above.

28

1   1999 WL 1012316, at *5 (N.D. Cal. Oct. 28, 1999), *aff'd*, 16 F. App'x 596 (9th Cir. 2001) (it is

2   "patently unreasonable" to assert jurisdiction in the absence of "an individualized, specifically

3   targeted relationship with [the forum]").  *Second*, plaintiff asserts that the burden to litigate in

4   California is insubstantial, ignoring that the nonprofit Foundation has virtually no relationship with

5   the United States.  That "militate[s] against the assertion of jurisdiction," notwithstanding "modern

6   advances in communication."  *Id.* at *7.  *Third*, plaintiff argues that Swiss sovereignty concerns "ring

7   . . . hollow" because of a statement made by Kathleen Breitman, not the Foundation.  But no

8   individual's statement can undercut Switzerland's robust regulatory regime.  (Stupp Decl. ¶¶ 14-23;

9   Ta Decl. [ECF No. 132], Ex. B at 3 (discussing Swiss regulatory oversight).)  *Fourth*, plaintiff does

10  not deny that he initiated his contribution to the Foundation, "diminish[ing]" any U.S. interest in the

11  litigation.  *Rippey*, 1999 WL 1012316, at *8.  *Fifth*, plaintiff has not contested the availability of

12  Switzerland as an alternative forum that—notwithstanding his unsupported assertion about the

13  adequacy of other forums (Opp'n 11)—provides adequate remedies and procedures.  (Stupp Decl.

14  ¶¶ 24-31.)  *Sixth*, as discussed below, resolving the claim against the Foundation before this Court

15  would entail significant inefficiencies, as discovery would need to proceed pursuant to the Hague

16  Convention.  *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010).

17          The factors that plaintiff asserts favor him—his preference to litigate in California, even

18  though he does not live here (Mot. 21), and certain defendants' residence here, even though they

19  are inessential to the action (Mot. 16 n.12)—carry minimal weight.  *See Core-Vent Corp. v. Nobel*

20  *Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("[N]either the Supreme Court nor [the Ninth

21  Circuit] has given much weight to inconvenience to the plaintiff.");  *Anyanwu v. Jaguar Land Rover*

22  *N. Am., LLC*, No. CV 15-2272-R, 2015 WL 12860481, at *2 (C.D. Cal. June 8, 2015) (criticizing

23  plaintiff for adding "a non-indispensable party" as jurisdictional "gamesmanship").

24      **C.      Plaintiff Has Not Justified His Request for Jurisdictional Discovery**

25          Far from establishing that jurisdiction over the Foundation is appropriate, plaintiff seeks

26  discovery into the Foundation's forum activities in the alternative.  (Opp'n 13.)  But given the

27  paucity of his jurisdiction arguments, the request should be denied.  *See Combs v. Greenfield*,

28

7

No. C 09-06042 SI, 2010 WL 1912113, at *3 (N.D. Cal. May 11, 2010) (denying jurisdictional discovery because plaintiff's allegations were too "attenuated" as a matter of law to create specific jurisdiction).  In addition, plaintiff does not even attempt to explain how discovery would remedy his failure to establish jurisdiction; the request should be denied for that reason as well.  *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997-98 (C.D. Cal. 2013) (rejecting jurisdictional discovery where "it is unclear how further discovery concerning [the alleged basis for specific jurisdiction] could develop pertinent facts").[6]

## II.   Forum Non Conveniens Requires Dismissal of This Case

Consistent with this Court's lack of jurisdiction over the Foundation, this action belongs in Switzerland, not the United States.  Plaintiff does not contest the adequacy of Switzerland as an alternative forum and concedes that a valid forum-selection clause controls the appropriate forum.  (Mot. 16-17.)  Thus, the only issue this Court needs to decide is whether plaintiff was aware of the Contribution Terms—which he does not deny—or should have been aware of them.

### A.   Awareness of the Contribution Terms Requires Dismissal

Plaintiff does not dispute that a valid forum-selection clause requires dismissal of this action, but instead argues—on the basis of inapposite law—that the Contribution Terms do not apply to him.  (Opp'n 14-18.)  But the standard for determining whether a browsewrap agreement[7] governs a user's interactions with a website is clear:  Absent a compelling reason otherwise, it is

---

[6] Were the Court to entertain discovery, it must be "narrowly tailored," not the fishing expedition plaintiff requests.  *See Salas v. Facultative Techs. the Am.'s Inc.*, No. 1:17-CV-00335-LJO-BAM, 2018 WL 2010522, at *5 (E.D. Cal. Apr. 30, 2018).  For instance, his requests for information about the number of U.S. contributors and employment of U.S. individuals go to general—not specific—jurisdiction, and DLS's marketing is wholly irrelevant to the Foundation.

[7] Plaintiff suggests that the Contribution Terms are not a browsewrap agreement because they were not hosted on the contribution website.  (Opp'n 15.)  That formalistic distinction has no factual basis—there are no barriers to browsing between websites—or legal support.  *See Nguyen*, 763 F.3d at 1176 ("The defining feature of browsewrap agreements is that the user can continue to use the website . . . without visiting the page hosting the browsewrap agreement . . . ." (quoting *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013)));  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) ("[A] browsewrap agreement usually involves . . . Terms of Use not listed on the site itself . . . .").

given full force if "the user has actual or constructive knowledge of a website's terms and conditions." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (internal quotation marks omitted).  Plaintiff attempts to muddle the clarity of this rule by invoking the incorporation by reference doctrine.  (Opp'n 14-15.)  But, as plaintiff's citations recognize, that doctrine is applicable only where external terms are to be integrated into a primary contract—and the only contract at issue here is the Contribution Terms.  The question is thus solely whether plaintiff knew, or should have known, of the Contribution Terms.

Here, plaintiff's actual notice of the Contribution Terms is evident.[8]  He relied on them in formulating his Complaint (Compl. ¶¶ 41-43), which nowhere suggests that he was not aware of them at the time of his contribution.  And even now that the question of his notice has been squarely presented (Mot. 18-19), he has not denied being aware of the Contribution Terms, let alone submitted a declaration or affidavit to that effect.  If there were any doubt—which there is not—the Foundation would, at a minimum, be entitled to targeted discovery into the issue.  *See Doe v. Xytex Corp.*, No. C 16-02935 WHA, 2016 WL 3902577, at *5 (N.D. Cal. July 19, 2016) (permitting the defendant to propound document requests and take depositions "on the issue of actual knowledge of the site-usage agreement and the forum-selection clause therein").

In fact, the evidence is overwhelming that reasonable contributors were aware of the Contribution Terms.  Plaintiff does not dispute that the terms were widely discussed in the run-up to the Fundraiser, including on forums that plaintiff has acknowledged are "popular." (Mot. 19.)  Nor does he dispute the evidence of the efforts taken to publicize the Contribution Terms, including announcements in the Overview on tezos.com and on social media.  (*Id.*)  Clearly, reasonable prudence would have revealed the existence of the terms.[9]  Indeed, such terms are consistent with

---

[8] Plaintiff's assertion that actual notice of the Contribution Terms is irrelevant (Opp'n 16) is wrong, as "courts have consistently enforced browsewrap agreements where the user had actual notice of the agreement." *Nguyen*, 763 F.3d at 1176.

[9] In fact, at one point the contribution website went so far as to actively redirect visitors to tezos.ch, where the Contribution Terms were prominently displayed.  (Gehring Decl., Ex. H at 2 (July 1, 2017 bitcointalk.org post: "I went to https://crowdfund.tezos.com and it also redirect me to tezos.ch").)

9

industry practice—for instance, the Ethereum genesis sale (which launched the cryptocurrency that plaintiff used to make his contribution to the Foundation) was governed by its own set of terms.[10]

Plaintiff's reliance on *Rodman v. Safeway Inc.*, No. 11-cv-3003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015), is thus misguided.  *Rodman* involved a clickwrap agreement that was modified after users had agreed to it, where the court found that the users were never presented with the modifications and had no reason to be aware of them.  *See id.* at *11.  Here, it is undisputed that the Contribution Terms were available and known to the Tezos community before the Fundraiser.[11]

Plaintiff's only response is to argue that—viewed in isolation from the context surrounding the Fundraiser—the reference to the Contribution Terms on tezos.com is insufficient to create inquiry notice.  (Opp'n 17-18.)  But there is little doubt that plaintiff himself had *actual* notice here.  And, in any event, neither *Nguyen* nor any other case cited by plaintiff limits the Court's analysis to a single website.  Indeed, the *Nguyen* court expressly contemplated that "other notices given to users of the terms of use" would be relevant to "whether a reasonably prudent user would have inquiry notice."  763 F.3d at 1177.  Here, in the context of a novel technology, reasonable contributors would have wanted to understand the purpose and mechanics of the Fundraiser before contributing.  *Cf. FDIC v. Providence College*, 115 F.3d 136, 141-42 (2d Cir. 1997) (where a transaction is "novel and extraordinary," it creates inquiry notice regarding the background of the

---

[10] Terms and Conditions of the Ethereum Genesis Sale, Ethereum (Aug. 31, 2014), https://github.com/ethereum/www/blob/master-postsale/src/extras/pdfs/ TermsAndConditionsOfTheEthereumGenesisSale.pdf.

[11] The cases that plaintiff asserts involved greater notice than was given here (Opp'n 17-18) do no such thing.  These cases—arising in rote contexts such as signing up for a mobile app or making a retail purchase, a far cry from a Swiss cryptocurrency fundraiser—uniformly involve a single, buried link apprising users of terms, not the parade of discussions and announcements here.  *See Nguyen*, 763 F.3d at 1173-74 (purchase of tablet; only notice was a link in the bottom corner of the website, among multiple other links); *Metter v. Uber Techns., Inc.*, No. 16-cv-6652, 2017 WL 1374579, at *1-2 (N.D. Cal. Apr. 17, 2017) (registration for Uber app; only notice was a link in the app obscured by the keypad); *Nghiem v. Dick's Sporting Goods, Inc.*, No. 16-cv-97, 2016 WL 9131962, at *1, 3 (C.D. Cal. July 5, 2016) (registration for mobile alerts; only notice was a link in the website footer, among 27 other links); *Friedman v. Guthy-Renker LLC*, No. 14-cv-6009, 2015 WL 857800, at *1, 5 (C.D. Cal. Feb. 27, 2015) (purchase of haircare product; only notice was a link "more-or-less buried at the bottom of the screen").

10

1  transaction).  Indeed, it is undisputed that they *were* aware of the various platforms on which the

2  Contribution Terms were announced.  (Gehring Decl., Exs. G, H.)  Plaintiff's argument is

3  tantamount to asking the Court to endorse willful blindness to everything outside of a single

4  website.  There is no basis on which to do so.

**B.      Forum Non Conveniens Principles Support Dismissal of the Case**

6         The forum-selection clause is not arbitrary; it selects Switzerland because that is the

7  location at the heart of the Fundraiser, where litigation would proceed most efficiently.  (Mot. 20-

8  21.)  Plaintiff's protestations to the contrary are unavailing.

9         First, plaintiff contends that California is the appropriate forum because certain defendants

10 reside here (Opp'n 18), but he ignores that the Foundation is the only necessary defendant in this

11 suit (Mot. 16 n.12).  Plaintiff is not entitled to forum-shop simply because he has named irrelevant

12 defendants.  *Cf. Anyanwu*, 2015 WL 12860481, at *2.  Likewise, as a non-citizen of California, his

13 own preference for litigating in California is afforded "less deference."  *See Gemini Capital Grp.,*

14 *Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1090-91 (9th Cir. 1998).

15        Second, plaintiff does not dispute that the Foundation's evidence is located in Switzerland,

16 so discovery must proceed via the Hague Convention.  (Mot. 20.)  The same is true of the French

17 developers, evidence from whom bears on the operation of the Tezos platform and therefore the

18 "efforts of others" prong of the *Howey* test.  *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).

19 Plaintiff's assertion that DLS's documents and witnesses—including the Breitmans—are located in

20 the United States (Opp'n 18-19) is belied by the Tezos Overview, which explains that Arthur

21 Breitman is a "core developer[]" whose "team is primarily located in Paris."  (Overview § 3.2.)

22        Third, plaintiff argues that Swiss resident Johann Gevers may not have relevant testimony

23 (Opp'n 19), despite discussing Mr. Gevers repeatedly in the Complaint.  (Compl. ¶¶ 19, 48, 128.)

24 Plaintiff does not dispute that this Court cannot compel Mr. Gevers—or other former directors of

25 the Foundation, the French developers, or other foreign witnesses—to testify if he is unwilling.

26        Fourth, plaintiff complains that the Foundation did not explain why enforcing a U.S.

27 judgment against it may be difficult (Opp'n 19)—overlooking courts' recognition that Swiss

28

11

1    judgments are easier to enforce in Switzerland than are U.S. judgments.  *See Alcon*, 719 F. Supp. 2d

2    at 277.  Plaintiff's argument that he could enforce a judgment against the Breitmans holds no water

3    when he has alleged that the Foundation received the Fundraiser contributions.  (Compl. ¶ 47.)

4         Finally, plaintiff argues that the public interest factors do not favor dismissal simply

5    because he has alleged a violation of U.S. securities laws.  (Opp'n 20.)  But, as the Foundation has

6    explained, that fact is neither dispositive of the question nor even central to U.S. interests.  (Mot.

7    21.)  Switzerland's interest is at least as compelling, given that the Foundation is already subject to

8    oversight by its regulatory institutions.  (Stupp Decl. ¶¶ 12-19.)  And plaintiff has failed to explain

9    why this Court should be burdened with a lawsuit that will require extended time for discovery and

10   related disputes as the parties navigate European data privacy laws.

11        Plaintiff seems to think that his residency guarantees his choice of forum will prevail, but "a

12   [U.S.] citizen has *no absolute right* to sue in a [U.S.] court."  *STM Grp., Inc. v. Gilat Satellite*

13   *Networks Ltd.*, No. SACV 11-0093, 2011 WL 2940992, at *5 (C.D. Cal. July 18, 2011) (quoting

14   *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977)).  Rather,

15   dismissal is appropriate where "the balance of conveniences suggests that trial in the chosen forum

16   would be unnecessarily burdensome for the defendant or the court."  *Piper Aircraft Co. v. Reyno*,

17   454 U.S. 235, 255 n.23 (1981).  The foreign locus of this case would result in protracted,

18   contentious, and expensive discovery (Mot. 20-21)—counseling in favor of dismissal to avoid

19   burdening both the Foundation and the Court.

20   **III.    Plaintiff's Contribution Was Executed Abroad and So Is Not Subject to U.S. Law**

21        The parties agree that the U.S. securities laws apply to plaintiff's contribution only if he

22   "incurred irrevocable liability within the United States to take and pay for" XTZ or the Foundation

23   "incurred irrevocable liability within the United States to deliver" XTZ to him.  (Opp'n 20 (quoting

24   *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012)).)  But plaintiff

25   essentially ignores that standard in favor of arguing that the entire process was completed as soon

26   as he made his contribution of ether because that transfer was "recorded on [the Ethereum] nodes,

27   including the nodes in the U.S."  (Opp'n 21-22.)  That reasoning does not hold up.

28

1   Under plaintiff's logic, *every* blockchain transaction worldwide would be a U.S.

2   transaction—even if between non-U.S. residents, physically outside the United States, and

3   concerning entirely foreign matters.  That is not how the U.S. securities laws work, and the

4   Supreme Court has expressly warned against such an unrestrained extraterritorial application of

5   those laws.  *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he

6   presumption against extraterritorial application would be a craven watchdog indeed if it retreated to

7   its kennel whenever *some* domestic activity is involved in the case."); *see also, e.g.*, *Parkcentral*

8   *Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215 (2d Cir. 2014) ("[A] rule making

9   the [securities laws] applicable . . . , regardless of the foreignness of the facts constituting the

10  defendant's alleged violation, would seriously undermine *Morrison*'s insistence that [those laws

11  have] no extraterritorial application.").

12   Accordingly, pursuant to *Absolute Activist*, the Court should look to all of the facts leading

13  to the completion of the alleged purchase and sale of securities, not simply those underlying

14  plaintiff's voluntary contribution.  As the Foundation has explained (Mot. 23), the requisite

15  irrevocable liability has not attached yet:  The Foundation need not deliver XTZ to plaintiff, if ever,

16  until after the network has been launched and its recommended allocation approved by the Tezos

17  community, through the Tezos Client located in Europe.  And mirroring the Foundation's lack of

18  obligation to provide XTZ, despite his contribution, plaintiff is not obligated to "*take*" any XTZ.  It

19  is entirely within his discretion whether to complete the process, after the launch of the network, by

20  "import[ing] his XTZ Wallet into the Tezos Client" (in Europe).  (Contribution Terms ¶ 31.)[12]  In

21  short, liability has not yet attached, and if it does, it will do so overseas.  Plaintiff's only response to

22  these facts is an argument that the Contribution Terms are not binding on him.  (Opp'n 25.)

23  While—as discussed above—that assertion is erroneous, plaintiff does not allege the existence of

24

25  [12] Plaintiff wrongly asserts that the Contribution Terms may not be considered on a motion to
    dismiss.  (Opp'n 23.)  As the Foundation has explained, because the terms were incorporated by
26  reference into the Complaint (Mot. 5 n.2), they may be considered for all purposes, including their
    truth.  *See Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("A court 'may treat
27  [an incorporated] document as part of the complaint, and thus may assume that its contents are true
    for purposes of a motion to dismiss under Rule 12(b)(6).'").

28

13

1   any other contract that would obligate the Foundation to deliver XTZ to him or for him to take

2   XTZ, making his argument entirely toothless.

3        Nevertheless, even if plaintiff's contribution had established irrevocable liability, the

4   relevant events occurred in Europe.  While plaintiff stresses that he "interacted" with a website

5   hosted in the United States to make his contribution (Opp'n 24), interaction does not equate to

6   liability.  *See, e.g.*, *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F.

7   Supp. 2d 166, 179 (S.D.N.Y. 2010) (holding that "the country in which an investor happened to be

8   located at the time that it placed its purchase order is immaterial" to the *Morrison* analysis).

9   Rather, as plaintiff appears to acknowledge, the question is where the transaction was actually

10   "effected" (Opp'n 25 n.20), and the only information about that before the Court comes from the

11   Contribution Terms—incorporated into the Complaint by reference.  (Contribution Terms ¶ 8 (the

12   terms are "a description of the functionality of a software-based fundraising campaign").)

13        Notwithstanding plaintiff's professed confusion as to how the contribution process and

14   software worked (Opp'n 23-24), the Contribution Terms are clear (Mot. 24):  Plaintiff contributed

15   ether "by using the contribution software" (Contribution Terms ¶ 17), and he sent it "to an

16   Ethereum contract that is a part of the [contribution software]" (*id.* ¶ 20).  That software then

17   "execute[d]" the contribution (*id.* ¶ 11(k)) by recording the equivalent value of the ether in bitcoin

18   (*id.* ¶ 25).  The information "extracted by the [contribution software]" would subsequently be "used

19   for the recommendation of allocation of XTZ."  (*Id.* ¶ 20.)  Only then, after the contribution

20   software has performed all of these functions, is it even possible for the parties to have incurred any

21   liability.  *See Absolute Activist*, 677 F.3d at 68 (holding that courts can look to when there was a

22   "meeting of the minds of the parties" to "mark[] the point at which the parties obligated themselves

23   to perform").  Indeed, a failure prior to the conclusion of the process "may have the result[] that

24   Contributor will not get a recommendation of XTZ allocation."  (Contribution Terms ¶ 20.)

25   Accordingly, even under plaintiff's conception of the Fundraiser, where liability already has

26   attached, it could only have done so outside the United States—because, as clearly stated by the

27

28

14

Contribution Terms, the contribution software is located in Europe.  (*Id.* ¶ 46.)  *See also Plumbers'*
*Union*, 753 F. Supp. 2d at 178-79 (transactions executed abroad are not subject to U.S. law).

This is precisely why the Contribution Terms deem "the contribution procedure . . . to be executed" in Europe.  (Contribution Terms ¶ 46.)  That statement merely reflects the reality of how the process was conducted—making plaintiff's argument that the Contribution Terms cannot operate by fiat (Opp'n 24-25) irrelevant.  Simply put, the Contribution Terms dictate the outcome of the *Morrison* analysis because they are tied to the actual systems in place, just as in *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60 (2d Cir. 2018) (cited in Opp'n 22).  There, the relevant trades underwent two separate transactions: a domestic matching process on CME Globex, and a foreign clearing process on the KRX.  *Id.* at 67.  The court held that the transaction was plausibly domestic not because the matching process occurred in the United States, but because the CME Globex rules made clear that liability to provide the security attached "at the moment of matching."  *Id.*  Just as the parties there were deemed to have a "meeting of the minds" when they were matched on CME Globex, plaintiff's contribution was only deemed executed when processed by the contribution software in Europe, after which the Foundation could determine the appropriate recommended allocation of XTZ.  *See also, e.g.*, *Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.*, No. 08-cv-01381-MSK-CBS, 2011 WL 1211511, at *7 (D. Colo. Mar. 31, 2011) (holding that irrevocable liability attached, per the terms, only once the transaction was accepted by defendants in the Cayman Islands, not when funds were wired to New York).

## CONCLUSION

For the foregoing reasons and those in the Motion, the Foundation respectfully requests that the Consolidated Complaint be dismissed.

Dated:   June 29, 2018

Respectfully submitted,

DAVIS POLK & WARDWELL LLP


By:   /s/ Neal A. Potischman
       Neal A. Potischman (SBN 254862)
       Serge A. Voronov (SBN 298655)
       DAVIS POLK & WARDWELL LLP
       1600 El Camino Real
       Menlo Park, California  94025
       Telephone: (650) 752-2000
       Facsimile:  (650) 752-2111
       Email:  neal.potischman@davispolk.com
               serge.voronov@davispolk.com

       Edmund Polubinski III (*pro hac vice*)
       Andrew S. Gehring (*pro hac vice*)
       DAVIS POLK & WARDWELL LLP
       450 Lexington Avenue
       New York, New York  10017
       Telephone: (212) 450-4000
       Facsimile:  (212) 701-5800
       Email:  edmund.polubinski@davispolk.com
               andrew.gehring@davispolk.com

       *Attorneys for Defendant Tezos Stiftung*

16