**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

IN RE TEZOS SECURITIES LITIGATION

This document relates to:

    ALL ACTIONS.

Master File No.  17-cv-06779-RS

**<u>CLASS ACTION</u>**

**JOINT CASE MANAGEMENT STATEMENT**

Date:    September 6, 2018
Time:    10:00 A.M.
Crtrm:  3, 17th Floor
Judge:  Hon. Richard Seeborg

Pursuant to the Court's scheduling order (Dkt. No. 143), Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, Lead Plaintiff Arman Anvari ("Lead Plaintiff"), and Defendants Tezos Stiftung (the "Tezos Foundation" or the "Foundation"), Dynamic Ledger Solutions, Inc. ("DLS"), Arthur Breitman and Kathleen Breitman (collectively, "Defendants"), hereby submit this joint Case Management Conference Statement.

1. **Jurisdiction & Service**

Lead Plaintiff, individually and on behalf of all others similarly situated, asserts claims under Sections 5, 12(a)(1) and 15 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. §§ 77e, 77l(a)(1) and 77o). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v). The Court has determined that it has jurisdiction over the Tezos Foundation, the only party to challenge jurisdiction. No parties remain to be served.

2. **Facts**

   **a. Lead Plaintiff's Position**

This is a securities class action on behalf of all investors who contributed digital currencies, including Bitcoin and/or Ethereum, to the Tezos blockchain "Initial Coin Offering" conducted in July 2017 ("Tezos ICO"), seeking remedies pursuant to Sections 5, 12(a)(1) and 15 of the Securities Act. The remaining named Defendants are DLS, Arthur Breitman, Kathleen Breitman and the Tezos Foundation.

From July 1, 2017 through July 14, 2017, Defendants jointly conducted the Tezos ICO for Tezos tokens. In preparation for the Tezos ICO, DLS and the Tezos Foundation established a website, crowdfund.tezos.com, to receive the contributions of investors.

A total of 30,317 investors participated in the Tezos ICO, contributing 65,681 Bitcoin (62.5% of total contributions) and 361,122 Ethereum (37.5% of total contributions). The amount raised is the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices). Based on the contributions, 763.31 million Tezos tokens will be issued, of which 607.49 million tokens will be

issued to ICO investors.  A further 3.16 million tokens will be created for early backers and contractors.

Lead Plaintiff alleges that the Tezos ICO was an unregistered sale of securities in violation of the Securities Act.

**b.  Defendants' Position**

To fund development of the Tezos blockchain and for other related projects and reasons, the Foundation conducted a fundraiser in July 2017 (the "Tezos Fundraiser"), which resulted in contributions of bitcoin and ether with a value of approximately $232 million (at July 2017 prices). Contributions were made through use of a website that was not hosted in the United States.  These contributions were subject to the Tezos Contribution and XTZ Allocation Terms and Explanatory Notes (the "Contribution Terms").  Pursuant to those terms, the Foundation accepted contributions using software and a website that was located in Europe.  In accordance with the Contribution Terms, on June 30, 2018 the Foundation announced a launch of the Tezos betanet and proposed an initial "genesis block" of Tezos tokens to Fundraiser contributors who complied with Know Your Client/Anti-Money Laundering verification processes.  The Tezos community had discretion to adopt or not to adopt that genesis block.

Lead Plaintiff has brought this securities class action purporting to represent all persons and entities who contributed bitcoin and/or ether to the Tezos Fundraiser, seeking remedies pursuant to the Securities Act.  Lead Plaintiff alleges that the Fundraiser was an unregistered securities offering jointly conducted by Defendants.  Defendants dispute, among other things, that the Tezos Fundraiser was jointly conducted or that it constituted an initial coin offering, that the Tezos Fundraiser constituted a sale of securities, and that the transactions contemplated by the Tezos Fundraiser occurred within the United States.

**3.    Legal Issues**

Lead Plaintiff's position is that the principal legal issues include, but are not limited to: (a) whether the Tezos ICO was a sale of unregistered securities in violation of Sections 5, 12(a)(1) and 15 of the Securities Act; (b) whether class certification is appropriate pursuant to Fed. R. Civ. P.

23. Defendants' position is that additional legal issues include: (c) whether contributions to the Tezos Fundraiser are subject to the Contribution Terms under *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014); (d) whether contributors incurred irrevocable liability within the United States under *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018); (e) whether the Lead Plaintiff has standing or can state a claim in the absence of damages; (f) whether DLS, Arthur Breitman and/or Kathleen Breitman qualify as solicitors or sellers of securities under Section 12 of the Securities Act; and (g) whether DLS, Arthur Breitman and/or Kathleen Breitman constitute a "control person" under Section 15 of the Securities Act.

**4.**   **Motions**

    **a.** **Previously Adjudicated Motions**

On December 14, 2017, plaintiff Bruce MacDonald (in an action that was subsequently consolidated into this action) applied for a temporary restraining order freezing Defendants' assets. *See MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 3:17-cv-07095-RS, ECF No. 8 at 3-4. On December 20, this Court denied the application. *Id.*, ECF No. 35 at 7.

On January 10, 2018, MacDonald moved to take expedited discovery from Defendants. *Id.*, ECF No. 57 at 2. On January 24, this Court denied the motion. *Id.*, ECF No. 69 at 2.

On January 25, 2018, five motions to appoint lead plaintiff and lead counsel were filed. Dkt. Nos. 38, 49, 53, 55, 61. On March 16, 2018, the Court entered an order appointing Arman Anvari as Lead Plaintiff and LTL Attorneys and Hung G. Ta, Esq. PLLC as lead counsel for the proposed class. Dkt. No. 101.

On April 18, 2018, Lead Plaintiff filed a motion to stay the related action *Baker v. Dynamic Ledger Solutions, Inc. et al.*, No. 17-cv-06850-RS ("*Baker* Federal Action") in the event that the action was remanded to California Superior Court, where it was originally filed. Dkt. No. 109. On April 19, 2018, the Court issued an order remanding the *Baker* Federal Action to the San Francisco Superior Court. *Baker* Federal Action, Dkt. No. 34. The case before the San Francisco Superior Court is *Baker v. Dynamic Ledger Solutions, Inc., et al.*, No. CGC-17-562144. ("*Baker* State

1  Action").  On May 25, 2018, the Court issued an order denying the motion to enjoin the *Baker* State

2  Action.

3       On May 15, 2018, Defendants filed motions to dismiss Lead Plaintiff's Consolidated

4  Complaint for Violations of the Federal Securities Laws.  Dkt. Nos. 119, 123.  On August 8, 2018,

5  the Court issued an order denying Defendants Tezos Foundation, DLS, Arthur Breitman and Kathleen

6  Breitman's motions to dismiss.  Dkt. No. 148.  Bitcoin Suisse AG, Timothy C. Draper and Draper

7  Associates V Crypto LLC also filed motions to dismiss, which were granted (Dkt. Nos. 117, 126,

8  148).

9       **b.  Anticipated Motions**

10            *(i)  Lead Plaintiff's Position*

11       Lead Plaintiff intends to move for class certification under Federal Rule of Civil Procedure

12  23 by no later than February 4, 2019, and for summary judgment under Federal Rule of Civil

13  Procedure 56 by no later than July 26, 2019.

14       As to Defendants' proposed motion (set forth below) based on the absence of "injury," Section

15  12(a)(1) of the Securities Act provides that a purchaser of an illegal offering of securities may sue for

16  rescission to recover the consideration paid for such security with interest thereon.  There is no

17  requirement to plead an "injury" other than that the offering was an illegal securities offering in

18  violation of Section 5 of the Securities Act.  In this case, Lead Plaintiff and members of the Class

19  invested Bitcoin, or Ethereum which was in turn converted by the Tezos Foundation into the Bitcoin

20  equivalent for purposes of determining an investor's promised allocation of Tezos tokens.  As such,

21  Lead Plaintiff and the Class will seek rescission of Bitcoin or the Bitcoin-equivalent amount.

22       Bitcoin has appreciated significantly since the date of the Tezos ICO.  In addition, during the

23  period since the Tezos ICO, Bitcoin and Ethereum have distributed benefits to holders in the form of

24  "forks" and "airdrops" that Defendants' analysis below fails to incorporate.  Therefore, Defendants'

25  analysis below is fundamentally flawed because it fails to account for either the appreciation in value

26  of Bitcoin, or these additional benefits received since the Tezos ICO.  Finally, Defendants' analysis

27  fails to account for the fact that holding XTZ involves a sale of the underlying Bitcoin and Ethereum

28

consideration in order to acquire XTZ, and thus has capital gains tax consequences, whereas rescission (*i.e.*, a refund) of investments does not involve any liquidation of Bitcoin or Ethereum.

### (ii) Defendants' Position

After taking discovery of Lead Plaintiff, Defendants intend to evaluate whether to renew their motion to dismiss on the basis of forum non conveniens. In addition, Defendants intend to move for summary judgment under Federal Rule of Civil Procedure 56 at the appropriate time.

Moreover, Defendants are considering additional motion practice. Lead Plaintiff alleges that he contributed 250 ether to the Tezos Fundraiser and was entitled to receive 133,608.75 Tezos tokens (or 534.435 Tezos tokens per ether). *See* Compl. ¶ 14. Even assuming for the purposes of argument that Lead Plaintiff was correct as a legal matter that the appropriate remedy if he is successful in this case would be rescission "including appreciation of contributed Bitcoin and Ethereum" (Compl. Prayer for Relief ¶ C), Lead Plaintiff has suffered no injury under Article III. *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 246 (S.D.N.Y. 2004) (dismissing Section 12 claim against underwriter because the bonds purchased by lead plaintiff "have actually increased in value" and therefore failed to show an Article III injury); *Siemers v. Wells Fargo & Co.*, No. C 05 04518 WHA, 2007 WL 1456047, at *5 (N.D. Cal. May 17, 2007) (plaintiff suffered no cognizable loss and therefore failed to state a Section 12 claim where "rescission would result in him receiving less than the actual value of the shares").

Because no class has been certified, the only relevant consideration on this motion is whether Lead Plaintiff himself suffered an injury—and there is no doubt that he has not. According to widely used CoinMarketCap, as of August 27, 2018, ether was trading at $279.11 and Tezos tokens were trading at $1.34. Thus, the current value of Lead Plaintiff's purported Tezos tokens ($133,608.75 * $1.34 = $179,036) far exceeds the current value of his purported contributed ether (250 * $279.11 = $69,778). Moreover, the current value of Lead Plaintiff's purported Tezos tokens, $179,036, also far exceeds the value of the purported ether he contributed, measured at the time of the fundraiser: $49,467.50. (The Court previously noted that, as of the end of the fundraiser, the approximate value of Lead Plaintiff's 250 purported ether was $49,467.50. *See* ECF No. 101 at 8.) And even assuming

that Lead Plaintiff would have benefited from "forks" or "airdrops"—which is unclear—he does not allege that such benefits would have been greater than the significant appreciation in the value of his Tezos tokens.  Lead Plaintiff has therefore suffered no injury arising from his contribution to the Tezos Fundraiser, including by the standard he has asserted in the complaint.  Indeed, he is sitting on a substantial gain.  Likewise, other putative class members would not be able to establish any actual injury.

**5.    Amendment of Pleadings**

    **a.  Lead Plaintiff's Position**

    Lead Plaintiff filed his Complaint on April 3, 2018.  Lead Plaintiff reserves his right to seek leave to amend with respect to those claims that the Court did not uphold in its August 7, 2018 Order on Defendants' Motions to Dismiss.

    **b.  Defendants' Position**

    Defendants' deadline to answer is September 14, 2018.  Defendants reserve the right to oppose any further amendments to the Complaint.

**6.    Evidence Preservation**

    The parties have reviewed the Guideline Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.    Disclosures**

    The parties' conference pursuant to Fed. R. Civ. P. 26(f) took place on August 15, 2018.  The parties will exchange disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on September 14, 2018.

**8.    Discovery**

    **a.  Discovery Taken to Date**

    On August 16, 2018, Lead Plaintiff served his First Request for Documents Addressed to the DLS Defendants, and his First Request for Documents Addressed to the Tezos Foundation.

On August 28, 2018, DLS served a first set of discovery requests targeted specifically to the forum non conveniens issue of whether the Lead Plaintiff was aware of the terms and conditions (including the forum selection clause) that governed the Fundraiser before he made his contribution. This discovery consists of 8 document requests, 13 interrogatories, and 5 requests for admission on that discrete topic.  Additionally, Defendants plan to seek an early deposition of Lead Plaintiff, which would be limited in length to two hours and focused only on this threshold forum non conveniens issue.

To date, no other discovery has been taken.  The parties are in discussions about the possibility of entering into a stipulated e-discovery order and a protective order.

**b.  Lead Plaintiff's Statement on the Scope of Anticipated Discovery**

The scope of discovery sought by Lead Plaintiff will consist of documents relevant to the claims and defenses in this action, including:

- Whether Tezos tokens are a security – specifically, whether the tokens are an "investment contract," which constitutes an investment in a common enterprise, with a reasonable expectation of profits, to be derived from the entrepreneurial or managerial efforts of others.

- How the purchases of Tezos tokens were effected and recorded, and the location of the execution of the purchases of Tezos tokens.

- The contractual and other relationships between Defendants DLS and the Tezos Foundation, including the organization/incorporation of these entities.

- The marketing of the Tezos ICO and the allocation of responsibilities among Defendants for marketing the Tezos ICO.

- The execution of the Tezos ICO and the allocation of responsibilities among Defendants for executing the Tezos ICO.

- The control, ownership and administration of various websites and social media accounts maintained by Defendants.

- The disposition of the funds raised in the Tezos ICO.

- The creation of the document entitled *Tezos Contribution and XTZ Allocation Terms and Explanatory Notes* ("Contribution Terms"), the purpose of the Contribution Terms, and the placement of the Contribution Terms on the website www.tezos.ch.

**c. Defendants' Statement on the Scope of Anticipated Discovery**

The scope of discovery sought by Defendants will include documents relevant to the claims and defenses in this action, including but not limited to, the following issues:

- Lead Plaintiff's knowledge of the Contribution Terms;
- Knowledge of the Contribution Terms by other members of the putative class;
- Lead Plaintiff's pre-contribution awareness of information and statements made by the Defendants regarding the Tezos project;
- Lead Plaintiff's adequacy as a class representative;
- Lead Plaintiff's reasons for contributing to the Tezos Fundraiser;
- The reasons why other members of the putative class contributed to the Tezos Fundraiser;
- Whether Lead Plaintiff in fact wants rescission;
- Whether other members of the putative class in fact want rescission;
- Whether Lead Plaintiff has suffered any injury;
- Whether other members of the putative class have suffered any injury;
- Where irrevocable liability attached in connection with Lead Plaintiff's claimed contribution;
- Where irrevocable liability attached in connection with contributions by other members of the putative class;
- Plaintiff's receipt of XTZ and his use of any XTZ received, including but not limited to any income he has derived from XTZ; and
- Receipt and use of XTZ by any other members of the putative class, including but not limited to income derived from XTZ.

**d. Staged Discovery**

As set forth in greater detail below, the parties disagree as to whether merits discovery and class discovery should be bifurcated. They further disagree on whether discovery into the threshold issue of Lead Plaintiff's knowledge of the Contribution Terms should precede other discovery.

(i) *Lead Plaintiff's Position on Staged Discovery*

Lead Plaintiff opposes Defendants' proposals for phased or bifurcated discovery.

Defendants propose first of all to conduct phased discovery over 60 days solely as to the issue of Lead Plaintiff's knowledge of the Contribution Terms and the legal question of *forum non conveniens*. Defendants contend that resolution of this issue would be dispositive and therefore avoid discovery expense. However, Defendants do not cite any procedural or other legal basis for imposing such one-way discovery on a Lead Plaintiff in a securities litigation under the PSLRA, after motions to dismiss have been denied and the PSLRA discovery stay has been lifted. *See* Section 27(b)(1) of the Securities Act, 15 U.S.C. § 77z-1(b)(1).

Furthermore, the Court has *not* expressly held that actual knowledge of the Contribution Terms would be dispositive, a holding that would be contrary to Ninth Circuit authority. In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014), the Ninth Circuit did not alter the fundamental principle of contract law that external terms may only be incorporated into a contract by reference where the incorporation is express and unequivocal. *Id.* at 1175-76 ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. … One such principle is the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.") (internal citations and quotations omitted); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 641 (1986) ("[f]or the terms of another document to be incorporated into the document executed by the parties ***the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto***, and the terms of the incorporated document must be known or easily available to the contracting parties.") (quotation marks and citations omitted) (bold emphasis added). "Browsewrap" agreements are consistent with this basic principle, because they are predicated on an incorporation by reference. *Nguyen*, 763 F.3d at 1176 (holding that, in "browsewrap

1   agreements," the "*website's terms and conditions of use are generally posted on the website via a*

2   *hyperlink at the bottom of the screen*") (emphasis added).  Thus, before conducting the inquiry-or-

3   actual notice analysis in *Nguyen*, there must be a threshold showing that the Contribution Terms were

4   incorporated by reference, *i.e.*, that they formed part of a "browsewrap" agreement.  Here, the Court

5   has already observed that the Complaint alleges no incorporation.  Dkt. No. 148, at 12 (noting that

6   the ICO contribution process as alleged was "bereft of hyperlinks … or other indicia tending to

7   validate a 'browsewrap' agreement").  Thus, this case falls under the exact situation described in

8   *Rodman v. Safeway Inc.*, No. 11-cv-3003, 2015 U.S. Dist. LEXIS 17523, *34 (N.D. Cal. Feb. 12,

9   2015) (rejecting enforceability of certain, separately-placed "Special Terms" as a matter of law

10  because "Class Members could have completed all their subsequent purchases … without ever

11  visiting the webpage hosting the revised Special Terms which [the defendant] claims governed the

12  sale and without ever clicking anything on the website that would indicate that they have agreed to

13  those terms.").

14       In addition, the Court has not considered, and did not need to consider, whether the

15  Contribution Terms on their face even apply to Lead Plaintiff's claims, and even if they did, whether

16  they would violate the anti-waiver provision contained in Section 14 of the Securities Act.

17       Co-Lead Counsel also reserves the right to join additional class representatives.

18       For all these reasons, resolution of the purported threshold issue of Lead Plaintiff's "actual

19  knowledge" would not dispose of this litigation.

20       With respect to Defendants' further proposal to bifurcate class and merits discovery, courts in

21  the Ninth Circuit strongly disfavor bifurcation.  "In light of [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

22  338 (2011)] and the 'rigorous analysis' requirement for class certification, many courts are reluctant

23  to bifurcate class-related discovery from discovery on the merits."  *Ahmed v. HSBC Bank USA, N.A.*,

24  No. 15-cv-2057 FMO (SPx), 2018 U.S. Dist. LEXIS 2286, at *8 (C.D. Cal. Jan. 5, 2018); *see also*

25  *Ambrosio v Cogent Communs., Inc.*, No. 14-cv-02182-RS, 2016 U.S. Dist. LEXIS 113608, at *7, n.4

26  (N.D. Cal. Aug. 5, 2016) ("it is this Court's general practice not to impose a formal bifurcation of

27  class and merits discovery in part so as to obviate needless discovery motion practice"); *Newett v.*

28

*Leapfrog Enterprises, Inc.*, No. 15-cv-00347-EMC, Order, Dkt. No. 146 (N.D. Cal. Sep. 13, 2017) ("the Court generally disfavors bifurcation").  Further, Defendants "bear the burden of showing that bifurcation is warranted."  *Newett*, No. 15-cv-00347-EMC, Order, Dkt. No. 146; *see also Chao v. Aurora Loan Servs., LLC*, No. C10-03383 SBA, 2011 U.S. Dist. LEXIS 143356, at *2 (N.D. Cal. Dec. 13, 2011) (denying defendant's request for phased discovery because defendant "failed to demonstrate that bifurcating discovery into two phases [for class and merits] is appropriate").  Here, in particular, Defendants would not be able to show that bifurcation of discovery would achieve efficiency or judicial economy.

During the parties' Rule 26(f) conference, Defendants cited two purported class issues that would preclude certification of a class and, according to Defendants, dispose of the litigation: (1) whether Lead Plaintiff had knowledge of the Contribution Terms, and (2) whether Lead Plaintiff suffered any damages.  However, Defendants' claims that resolution of both issues would dispose of the litigation are entirely speculative.  The record evidence will establish the Contribution Terms do not apply to Lead Plaintiff's claims and that he has a claim under the Securities Act.

Furthermore, as courts in the Ninth Circuit have frequently noted, there is considerable overlap between merits and class discovery that precludes neat bifurcation.  *See Ahmed*, 2018 U.S. Dist. LEXIS 2286 at*8-9 ("the distinction between class certification and merits discovery is murky at best and impossible to determine at worst."); *True Health*, 2015 U.S. Dist. LEXIS 7015, at *4 ("Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case.") (quoting *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014)); *Munoz v. PHH Corp.*, 2016 U.S. Dist. LEXIS 17254 (E.D. Cal. 2016) ("Courts have repeatedly acknowledged that there is no clear cut division between discovery that relates to class certification and discovery that relates to the merits."); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action") (internal quotation marks and citation omitted).  Such overlap is especially evident here.

1      For example, in considering whether the Contribution Terms are binding, Lead Plaintiff would

2  be entitled to discovery from Defendants as to why they deliberately placed the Contribution Terms

3  on a separate website (tezos.ch) instead of on the same website where investments were made

4  (crowdfund.tezos.com), why they did not even reference the Contribution Terms *anywhere* on the

5  crowdfund.tezos.com website, and what efforts Defendants made to educate investors of the existence

6  of the separately-placed Contribution Terms.  These factual inquiries would overlap significantly with

7  merits discovery because they in turn require consideration of the marketing of the Tezos ICO and

8  the Tezos project, Defendants' communications to investors about the Tezos ICO, the relationship

9  between the Tezos Foundation and the DLS Defendants, and the structure, organization and

10  relationship of the Defendants' various websites.  On the issue of whether Lead Plaintiff and other

11  investors have suffered any damages, Lead Plaintiff's and the Class's primary remedy is for

12  rescission, the availability of which can only be determined after merits discovery as to whether the

13  Tezos ICO was an unregistered sale of securities, and whether certain Defendants are liable as

14  "sellers" of securities under Section 12(a)(1) of the Securities Act.

15          (ii) *Defendants' Position on Staged Discovery*

16      Defendants believe that discovery should commence with the threshold issue of Lead

17  Plaintiff's knowledge of the Contribution Terms prior to his contribution.  Courts may sequence

18  discovery "for the parties' and witnesses' convenience and in the interests of justice."  Fed. R. Civ.

19  P. 26(d)(3); *see also* Fed. R. Civ. P. 26(c)(1). As this Court noted, "the Ninth Circuit has made

20  emphatically clear" that actual knowledge of the Contribution Terms would give them full force.  ECF

21  No. 148 at 12 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)); *see also*

22  *Doe v. Xytex Corp.*, No. C 16-02935 WHA, 2016 WL 3902577, at *5 (N.D. Cal. July 19, 2016)

23  (stating that "the agreement (and the forum-selection clause therein) may yet possibly be enforceable

24  if . . . plaintiffs had actual knowledge of the agreement").  This Court has also recognized that

25  Defendants' forum non conveniens argument is "strong" due to the forum-selection clause in the

26  Contribution Terms, ECF No. 148 at 11, and that the issue "needs to be resolved early," (8/1/18

27  Transcript at 71.)  Yet Lead Plaintiff has declined every opportunity, from the filing of the complaint

28

to the filing of this statement, to explain whether he reviewed the Contribution Terms prior to making his contribution. At this point, the most plausible inference to be drawn is that Lead Plaintiff reviewed the terms. In that event, Lead Plaintiff's case would be subject to dismissal in deference to proceedings in Switzerland, based on the forum-selection clause in the Contribution Terms. Before plunging into expensive, cross-border discovery, the parties should be permitted to address this issue with the benefit of an evidentiary record. Defendants propose a short, 60-day interval to address discovery on the threshold issue of Lead Plaintiff's knowledge of the Contribution Terms, followed by a status conference or evidentiary hearing. *See, e.g.*, *Rebel Oil Co. v. Atl. Richfield Co.*, 133 F.R.D. 41, 45 (D. Nev. 1990) (limiting discovery to threshold issue to avoid "great hardship and expense" in complying with plaintiff's sweeping discovery requests).

Defendants further believe that, should discovery proceed beyond the threshold issue of Lead Plaintiff's knowledge of the Contribution Terms, class discovery should precede merits discovery. *See* Manual Complex Lit. § 21.14 at 256 (4th ed. 2004) ("Courts often bifurcate discovery between certification issues and those related to the merits of the allegations."). As discussed below, class issues in this case—including, among others, notice of the Contribution Terms, location of the contributions, and Lead Plaintiff's adequacy in representing a class—are significant and likely to preclude class certification. These issues are discrete and segregable from the merits issues that Lead Plaintiff wishes to explore. Efficiency therefore dictates that discovery should focus on issues relevant to class certification, including Mr. Anvari's suitability as a class representative, prior to engaging in merits discovery. *See, e.g.*, *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) ("Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class."). Even assuming that there is some factual overlap between the merits and class certification with respect to the Contribution Terms, Lead Plaintiff fails to explain why this would justify discovery into aspects of the merits unrelated to certification. *See* Manual Complex Lit. § 21.14 at 256 ("[I]n cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification

delays the certification decision and can create *extraordinary and unnecessary* expense and burden." (emphasis added)).

**9.    Class Action**

**a.  Lead Plaintiff's Statement on Class Certification**

Lead Plaintiff believes this action satisfies all the requirements for certifying a class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

This action is brought on behalf of a class consisting of all persons and entities who, directly or indirectly through an intermediary, contributed Bitcoin, Ethereum or U.S. dollars to the Tezos ICO conducted in July 2017 ("Class"). Excluded from the Class are Defendants, and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

The members of the Class are so numerous that joinder of all members is impracticable. The Tezos ICO resulted in 30,317 investors and based on their contributions, 763.31 million Tezos tokens will be issued.

There are questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members, including:

- Whether the offer of the Tezos tokens through the Tezos ICO constituted the sale or offer of "securities";

- Whether Defendants were required to file a registration statement for the Tezos ICO;

- Whether Defendants are sellers of the Tezos tokens for purposes of Section 12(a)(1) of the Securities Act;

- Whether Defendants Arthur Breitman and Kathleen Breitman are "control persons" under the Securities Act; and

- Whether Lead Plaintiff and the Class are entitled to rescission, or damages in those cases where the Tezos tokens have been sold.

Lead Plaintiff's claims are typical of those of the Class because like each member of the Class, Lead Plaintiff purchased unregistered securities in the Tezos ICO.

Lead Plaintiff will adequately protect the interests of the Class and has retained experienced counsel.  Lead Plaintiff has demonstrated his willingness and ability to serve as Class Representative. Lead Plaintiff also has no interests that conflict with those of the Class.

A class action will achieve economies of time, effort, and expense, and provide uniformity of decision to the similarly-situated members of the Class without sacrificing procedural fairness or bringing about other undesirable results.   Lead Plaintiff believes there are unlikely to be any difficulties with managing this action as a class action.

In addition, a class action is superior to other methods of fairly and efficiently adjudicating this controversy because the questions of law and fact common to the Class predominate over any questions affecting only individual Class members

**b.  Defendants' Statement on Class Certification**

Class certification would be improper because, among other reasons, Mr. Anvari does not appear to be an adequate representative of various members of the putative class, and because questions affecting individual Class members' entitlement to relief predominate over common questions of law and fact.  Individual questions include:

- Whether members of the Class had actual knowledge of the Contribution Terms;

- Whether members of the Class made a contribution from within the United States;

- Whether members of the Class want this litigation to continue; and

- Whether members of the Class in fact want the rescission that the Complaint purports to seek, and have suffered any injury.

On the topic of adequacy, Defendants believe that Lead Plaintiff will not fairly and adequately protect the interests of the putative class.  Defendants believe that Lead Plaintiff (1) has publicly stated his intention to hold his Tezos tokens because of their value relative to the value of his contribution, (2) has suffered no injury, and (3) is unlikely to even seek the rescission that the complaint purports to request.  Additionally, one of the attorneys for the putative class identified on the Complaint and on this statement has acknowledged in open court that many putative class members strongly object to this litigation and do not desire the relief asserted in the Complaint:

1  "When we were talking with potential lead plaintiff applicants, there was significant pushback from

2  investors in the Tezos project that said, frankly -- I will take out the expletives -- that we think that

3  these class actions are a problem. . . . And so we view this case as being one where there is a discrete

4  group within the investors and in the Tezos project that would like to have rescission, and we would

5  like to have the option for rescission."  (3/15/18 Transcript at 62-63.)

6      Defendants note that the putative class definition mentioned above does not track the class

7  definition in the complaint.  The complaint refers to a class defined as follows: "All persons and

8  entities who, directly or indirectly through an intermediary, *contributed Bitcoin and/or Ethereum* to

9  the Tezos Initial Coin Offering conducted in July 2017."  Compl. ¶ 129 (emphasis added).  The

10 Complaint's class definition does not include individuals who contributed U.S. dollars.

11 **10.**   **Related Cases**

12      Four related securities class actions were filed against Defendants in this Court as follows:

13      • *GGCC, LLC, et al. v. Dynamic Ledger Solutions, Inc., et al*., No. 17-cv-06779-RS

14        ("*GGCC*");

15      • *Okusko v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-06829-RS ("*Okusko*");

16      • the *Baker* Federal Action; and

17      • *MacDonald v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-07095-RS

18        ("*MacDonald*").

19      On March 16, 2018, the Court ordered the *GGCC*, *Okusko* and *MacDonald* cases consolidated

20 pursuant to its Order Granting the Motion of Arman Anvari for Consolidation, Appointment of Lead

21 Plaintiff and Selection of Lead Counsel.  Dkt. No. 101.  The Court also ordered the *Baker* Federal

22 Action to be coordinated with this consolidated action.  Dkt. No. 101 at 4.

23      On April 19, 2018, the Court issued an order remanding the *Baker* Federal Action to the San

24 Francisco Superior Court.  *Baker* Dkt. No. 34; *see Baker* State Action.

25      On April 24, 2018, the Trigon Trading Pty, Ltd. and Bruce MacDonald (the same plaintiff in

26 the federal *MacDonald* action) commenced an action in California state court, alleging similar claims

27 and facts as those alleged here.  *See Trigon Trading Pty, Ltd., et al. v. Dynamic Ledger Solutions,*

28

*Inc., et al.*, No. 14CIV02045 (Superior Court for the State of California, County of San Mateo).  On July 31, MacDonald voluntarily withdrew his claims, leaving Trigon as the sole remaining named plaintiff.  On August 13, the Superior Court of California, County of San Mateo, granted a motion filed by the Tezos Foundation to quash service of the summons.

On August 16, 2018, the Superior Court of California, County of San Francisco, issued an order granting a petition for coordination of the *Baker* and *Trigon* State Actions.  A coordination trial judge has not yet been assigned.

**11.   Relief**

**a.  Lead Plaintiff's Position**

On behalf of the proposed class, Lead Plaintiff seeks the rescission of their investment in the Tezos ICO including appreciation of the contributed Bitcoin and Ethereum, and/or awarding compensatory damages in favor of Lead Plaintiff and the proposed class.

**b.  Defendants' Position**

Defendants disagree with characterizing the contributions as investments, and with characterizing the fundraiser as an ICO.  Defendants strongly doubt that Lead Plaintiff and others similarly situated in fact want to give back any allocated XTZ in exchange for return of contributed amounts, given that such "rescission of their investment[s]" would cause them to give up a substantial amount of money.

**12.   Settlement and ADR**

The parties have engaged in preliminary settlement discussions.  Pursuant to Local Rule 16-8 and ADR Local Rule 3-5, the parties have discussed, and agree, that any settlement discussions should be through private mediation.  *See* Dkt. No. 155 (Stipulation and Proposed Order Selecting ADR Process).  The parties have agreed that an ADR session will be held by May 31, 2019.  *See id.*

**13.   Consent to Magistrate Judge for All Purposes**

Not all parties consent to have a magistrate judge conduct all further proceedings.

**14.   Other References**

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.  The Tezos Foundation believes that, in light of the likely discovery issues posed by discovery from a Swiss foundation, it may be appropriate in the future to appoint a special master.

**15.   Narrowing of Issues**

At this time, the parties do not believe that there are any issues that can be narrowed by agreement or by motion.

**16.   Expedited Trial Procedure**

The parties do not believe that this case should be expedited.

**17.   Scheduling**

**a.  Lead Plaintiff's Position**

Lead Plaintiff proposes the following schedule:

| Event | Deadline per August 20, 2018 Order (Dkt. No. 159) |
|---|---|
| Defendants' Answer | September 14, 2018 |
| Exchange of FRCP 26 Initial Disclosures | September 14, 2018 |
| **Event** | **Lead Plaintiff's Proposed Deadline** |
| Deadline to join additional parties and amend pleadings | Monday, January 7, 2019 |
| Class Certification Motion | Monday, February 4, 2019 |
| Opposition to Class Certification Motion | Monday, March 4, 2019 |
| Reply in support of Class Certification Motion | Monday, March 18, 2019 |
| Deadline for Hearing on Class Certification | Monday, April 1, 2019 |
| Plaintiff provides subject matter of expert testimony | Friday, April 12, 2019 |
| Defendants provide subject matter of expert testimony | Friday, April 19, 2019 |
| Fact Discovery Cutoff | Friday, April 26, 2019 |
| Deadline for Opening Expert Reports | Friday, May 3, 2019 |
| Deadline for Opposing Expert Reports | Monday, June 3, 2019 |
| Deadline for Rebuttal Expert Reports | Friday, June 21, 2019 |
| Expert Discovery Cutoff | Friday, July 12, 2019 |

| Deadline to file dispositive motions | Friday, July 26, 2019 |
| Oppositions to dispositive motions | Friday, August 23, 2019 |
| Reply in support of dispositive motions | Friday, September 13, 2019 |
| Hearing on dispositive motions (motion cutoff) | Thursday, September 26, 2019 |
| Final Pretrial Conference | Thursday, November 7, 2019 |
| Trial Date | Monday, December 2, 2019 |

**b. Defendants' Position**

Defendants believe that the Court should allow a brief, 60-day period for defendants to take discovery of Lead Plaintiff to address the issues relating to defendants' motion to dismiss on the basis of forum non conveniens. If the case remains in this Court, the parties can explore a schedule for further discovery and a trial date. Defendants also believe that Lead Plaintiff's proposed schedule is impractical because it does not contemplate staging class and merits discovery. If the case were to remain in this Court, Defendants believe that Lead Plaintiff's proposed trial date is unrealistic, given the likelihood that meaningful cross-border discovery will need to be taken and that many of the issues raised in the complaint are matters of first impression.

Alternatively, if this Court is not inclined to limit discovery at the outset to forum non conveniens issues, then Defendants propose a two-phased approach that stages class discovery before merits discovery as follows:

| Event | Deadline per August 20, 2018 Order (Dkt. No. 159) |
| --- | --- |
| Defendants' Answer | September 14, 2018 |
| Exchange of FRCP 26 Initial Disclosures | September 14, 2018 |
| **Event** | **Defendants' Proposed Deadline** |
| Class Discovery Commences | Thursday, September 6, 2018 |
| Deadline to join additional parties and amend pleadings | Monday, January 7, 2019 |
| Deadline for Opening Expert Reports on Class Certification Issues | Thursday, January 10, 2019 |
| Deadline for Opposing Expert Reports on Class Certification Issues | Thursday, February 7, 2019 |
| Deadline to file Class Certification Motion | Thursday, February 14, 2019 |

| Oppositions to Class Certification Motion | Thursday, March 14, 2019 |
| Reply in support of Class Certification Motion | Thursday, March 28, 2019 |
| Deadline for Hearing on Class Certification | Thursday, April 25, 2019 |
| Merits Discovery Commences | If and only when class is certified |
| Merits Discovery Cutoff | Thursday, January 9, 2020 |
| Deadline for Opening Expert Reports | Thursday, February 6, 2020 |
| Deadline for Opposing Expert Reports | Thursday, March 5, 2020 |
| Deadline for Rebuttal Expert Reports | Thursday, March 26, 2020 |
| Expert Discovery Cutoff | Thursday, April 23, 2020 |
| Deadline to file dispositive motions | Thursday, May 7, 2020 |
| Oppositions to dispositive motions | Thursday, May 28, 2020 |
| Reply in support of dispositive motions | Thursday, June 11, 2020 |
| Hearing on dispositive motions (motion cutoff) | Thursday, June 25, 2020 |
| Final Pretrial Conference | Wednesday, September 2, 2020 |
| Trial Date | Monday, September 14, 2020 |

## 18.   **Trial**

Lead Plaintiff has requested a jury trial.  The parties do not presently have sufficient information to reasonably estimate the expected length of the trial in this action.

## 19.   **Disclosure of Non-Party Interested Entities or Persons**

The parties have previously filed Certifications of Interested Entities or Persons as required by Civil Local Rule 3-16 and confirm that the statements in their previously filed Certifications of Interested Entities or Persons remain accurate.

## 20.   **Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 21.   **Other**

The parties are not currently aware of any other matters that may facilitate the just, speedy and inexpensive disposition of this case.

Date:    August 29, 2018                    LTL ATTORNEYS LLP

                                            By:  *s/ Enoch H. Liang*
                                            _____
                                                 Enoch H. Liang
                                                 LTL ATTORNEYS LLP
                                                 601 Gateway Boulevard, Suite 1010
                                                 South San Francisco, California 94080
                                                 Tel:  650-422-2130
                                                 Fax:  213-612-3773
                                                 enoch.liang@ltlattorneys.com

                                                 James M. Lee
                                                 Caleb H. Liang
                                                 LTL ATTORNEYS LLP
                                                 300 S. Grand Ave., 14th Floor
                                                 Los Angeles, California 90071
                                                 Tel:  213-612-8900
                                                 Fax:  213-612-3773
                                                 james.lee@ltlattorneys.com
                                                 caleb.liang@ltlattorneys.com

                                                 Hung G. Ta
                                                 JooYun Kim
                                                 HUNG G. TA, ESQ., PLLC
                                                 250 Park Avenue, 7th Floor
                                                 New York, New York 10177
                                                 Tel: 646-453-7288
                                                 Fax: 646-453-7289
                                                 hta@hgtlaw.com
                                                 jooyun@hgtlaw.com

                                            *Lead Counsel for Court-Appointed Lead Plaintiff*
                                            *and the Class*

                                                 William R. Restis
                                                 THE RESTIS LAW FIRM, P.C.
                                                 550 West C Street, Suite 1760
                                                 San Diego, California 92101
                                                 Tel: 619.270.8383
                                                 william@restislaw.com

                                                 Joe J. DePalma
                                                 Bruce D. Greenberg
                                                 LITE DEPALMA GREENBERG, LLC
                                                 570 Broad Street, Suite 1201
                                                 Newark, NJ 07102
                                                 Tel: (973) 623-3000
                                                 Fax: (973) 623-0858

Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*

Date:   August 29, 2018                 DAVIS POLK & WARDWELL LLP

By: */s/ Neal A. Potischman*
            Neal A. Potischman (SBN 254862)
            Serge A. Voronov (SBN 298655)
            1600 El Camino Real
            Menlo Park, California 94025
            Telephone: (650) 752-2000
            Facsimile: (650) 752-2111
            Email: neal.potischman@davispolk.com
                        serge.voronov@davispolk.com

            Edmund Polubinski III (pro hac vice)
            Andrew S. Gehring (pro hac vice)
            450 Lexington Avenue
            New York, New York 10017
            Telephone: (212) 450-4000
            Facsimile: (212) 701-5800
            Email: edmund.polubinski@davispolk.com
                        andrew.gehring@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

Date:   August 29, 2018                 BAKER MARQUART LLP

By:  */s/ Brian E. Klein*
            Brian E. Klein (258486)
            Scott M. Malzahn (229204)
            Donald R. Pepperman109809)
            2029 Century Park East, Suite 1600
            Los Angeles, CA 90067
            Telephone: (424) 652-7814
            Facsimile: (424) 652-7850
            Email: bklein@bakermarquart.com
                        smalzahn@bakermarquart.com
                        dpepperman@bakermarquart.com

*Attorneys for Defendants Dynamic Ledger
Solutions, Inc., Kathleen Breitman, and Arthur
Breitman*

1

Date:    August 29, 2018

COOLEY LLP

2

By: */s/ Patrick E. Gibbs*

3

Patrick E. Gibbs (183174)
Jeffrey M. Kaban (235743)

4

David S. Houska (295918)
Jessie A.R. Simpson LaGoy (305257)

5

3175 Hanover Street
Palo Alto, CA 94304-1130

6

Telephone: (650) 843-5355

7

Facsimile: (650) 618-0387
Email: pgibbs@cooley.com

8

jkaban@cooley.com

9

dhouska@cooley.com
jsimpsonlagoy@cooley.com

10

*Attorneys for Defendant Dynamic Ledger*
*Solutions, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28