**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
Natalia D. Williams
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
Fax: 646-453-7289
hta@hgtlaw.com
jooyun@hgtlaw.com
natalia@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | Master File No.  17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page No.</u>

3   I.    INTRODUCTION ..................................................................................................1

4   II.   JURISDICTION AND VENUE ...........................................................................4

5   III.  PARTIES ............................................................................................................5

6   IV.  SUBSTANTIVE ALLEGATIONS .....................................................................9

7         A.     BLOCKCHAIN TECHNOLOGIES GENERALLY....................................9

8         B.     THE TEZOS PROJECT ..........................................................................10

9         C.     THE TEZOS ICO .....................................................................................12

10        D.     DEFENDANTS' ROLES IN THE TEZOS ICO........................................13

11              1.     DLS And The Tezos Foundation...................................................13

12              2.     The Breitmans.................................................................................14

13              3.     Bitcoin Suisse ................................................................................17

14              4.     Timothy Draper And Draper Associates Crypto ..........................17

15        E.     THE MECHANICS OF THE TEZOS ICO................................................18

16        F.     THE RESULTS OF THE TEZOS ICO .....................................................21

17        G.     THE TEZOS TOKENS ARE SECURITIES.............................................22

18              1.     Participants In The Tezos ICO Made An Investment Of Money In A Common Enterprise .....................................................................23

19

20

21              2.     Investors In The Tezos ICO Made Their Investment With A Reasonable Expectation Of Profits.................................................27

22              3.     The Success Of The Tezos Project Requires The Technical, Entrepreneurial And Managerial Efforts Of Defendants And Others ...........31

23

24              4.     The Contribution Terms Do Not Alter The Substance And Economic Reality Of The Tezos ICO...............................................34

25

26        H.     EVENTS SUBSEQUENT TO THE ICO ..................................................35

27  V.    CLASS ALLEGATIONS ...................................................................................35

28  VI.   CAUSES OF ACTION........................................................................................37

VII.     PRAYER FOR RELIEF ..................................................................................................39

VIII.    JURY TRIAL DEMAND ..............................................................................................40

Plaintiffs, individually and on behalf of all others similarly situated, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other allegations, based on investigation of counsel. This investigation included, *inter alia*, a review of public statements and disclosure materials prepared by Defendants Dynamic Ledger Solutions, Inc. ("DLS"), Tezos Stiftung ("Tezos Foundation"), Kathleen Breitman, Arthur Breitman (together with Kathleen Breitman, the "Breitmans"), Timothy Cook Draper ("Draper"), Draper Associates V Crypto LLC ("Draper Associates Crypto"), and Bitcoin Suisse AG ("Bitcoin Suisse"); media reports; interviews; social media; and other information concerning Defendants. The investigation of the facts pertaining to this case is continuing. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    INTRODUCTION

1.    This is a securities class action on behalf of all investors who contributed digital currencies, including Bitcoin and/or Ethereum, to the Tezos blockchain "Initial Coin Offering" conducted in July 2017 ("Tezos ICO").

2.    An ICO is similar to an initial public offering of stock, and is a fundraising mechanism by which the founders of a "blockchain" project sell "tokens" or "coins" in exchange for cryptocurrencies or for fiat currencies (such as U.S. Dollars). Over two weeks in July 2017, Defendants conducted an ICO for Tezos "tokens" (also referred to as "XTZ" or "tezzies") that raised the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices). In the first 15 hours alone, investors contributed $109 million worth of Bitcoin and Ethereum.[1] Upon its completion, the Tezos ICO was the largest in history. Since the ICO, the contributed Bitcoin and Ethereum have continued to significantly appreciate, reaching a value of more than $1.52 billion on January 7, 2018.[2]

---

[1] Wilma Woo, *Tim Draper UnCapped Tezos ICO Raises $109M in 15 Hours*, BITCOINIST (July 2, 2017), http://bitcoinist.com/drapers-uncapped-tezos-ico-raises-109m-15-hours/.

[2] *Cryptocurrency Market Capitalizations*, COINMARKETCAP, https://coinmarketcap.com/historical/20180107/. On January 7, 2018, the 65,681 Bitcoin raised in the Tezos ICO was valued at $17,131.27 per Bitcoin, and the 361,122 Ethereum raised was valued at $1,097.65 per Ethereum. The valuation is provided as of January 7, 2018 because that is the date

As of the date of filing of this Complaint, the currencies contributed to the Tezos ICO are worth approximately $630 million.

3.     Federal securities laws require any security that is offered or sold to be registered with the Securities and Exchange Commission ("SEC").  These laws are designed to protect the public by requiring various disclosures so that investors can better understand the security that is being offered or sold.  Under section 2(a)(1) of the Securities Act of 1933 ("Securities Act"), a "security" is defined to include an "investment contract."

4.     Depending on the circumstances, the sale of tokens in an ICO may constitute a security.  *See Investor Bulletin: Initial Coin Offerings*, U.S. SECURITIES AND EXCHANGE COMMISSION (July 25, 2017) ("in certain cases, the tokens or coins will be securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration").  According to the SEC, "issuers of distributed ledger or blockchain technology-based securities must register offers and sales of such securities unless a valid exemption applies."[3]

5.     In a number of speeches in the past few months, the SEC's leadership has reinforced this view.  In a speech entitled *Governance and Transparency at the Commission and in Our Markets* delivered on November 8, 2017 at the Institute on Securities Regulation in New York, the Chairman of the SEC, Jay Clayton, stated: "I have yet to see an ICO that doesn't have a sufficient number of hallmarks of a security."  On January 22, 2018, in his opening remarks delivered at the Securities Regulation Institute in Washington, D.C., Chairman Clayton issued a further, stern warning to the legal and other professionals involved in ICOs, reminding them of the dangers in skirting the securities laws and the protections afforded to investors: "My first message is simple and a bit stern. Market professionals, especially gatekeepers, need to act responsibly and hold themselves to high standards. To be blunt, from what I have seen recently, particularly in the initial coin offering ('ICO') space, they can do better."  Chairman Clayton proceeded to state: "First, and most disturbing to me,

---

on which the total cryptocurrency market capitalization peaked according to coinmarketcap.com. Bitcoin peaked at a value of over $20,000 per Bitcoin on December 17, 2017, and Ethereum peaked at over $1,400 per Ethereum on January 13, 2018.

[3] SEC, *Press Release: SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities* (July 25, 2017), https://www.sec.gov/news/press-release/2017-131.

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

1    there are ICOs where the lawyers involved appear to be, on the one hand, assisting promoters in

2    structuring offerings of products that have many of the key features of a securities offering, but call

3    it an 'ICO,' which sounds pretty close to an 'IPO.' On the other hand, those lawyers claim the products

4    are not securities, and the promoters proceed without compliance with the securities laws, which

5    deprives investors of the substantive and procedural investor protection requirements of our securities

6    law."

7         6.     In this case, Defendants attempted to avoid the reach of the U.S. securities laws by

8    characterizing the Tezos ICO as the solicitation of "contributions," or "donations," as opposed to the

9    solicitation of investments in securities.  However, when assessing whether something is a security

10   under the Securities Act, federal courts, including the Ninth Circuit Court of Appeals, have repeatedly

11   stated that they will ignore the form of the transaction, and instead focus on the substance and

12   economic reality of the transaction.  Here, the Tezos ICO, and the promise of tokens offered and sold

13   thereby, had all the hallmarks of a securities offering under the Securities Act and was therefore

14   required to be registered with the SEC.  No exemption to the registration requirement was available

15   for Defendants' offer and sale.

16        7.     The Tezos ICO constituted in substance an offering and sale of Tezos tokens to

17   investors in the Tezos ICO, who provided consideration (in the form of the Bitcoin and Ethereum

18   cryptocurrencies) in exchange for a promise of Tezos tokens to be delivered at a later date.  These

19   participants advanced their consideration as an investment in a common enterprise: the development

20   of the Tezos blockchain project.  Defendants in turn used the consideration received as a source of

21   capital to finance the development of the Tezos blockchain.  Participants in the Tezos ICO reasonably

22   expected to derive profits from their ownership of Tezos tokens, with Defendants themselves

23   highlighting this profit motive.  This profit motive is highlighted by the fact that, even though no

24   Tezos tokens have been issued yet, there is already a functioning futures market in Tezos token IOUs,

25   with participants effectively gambling on the future price of Tezos tokens if and when they are

26   distributed.[4]  Finally, the development of the Tezos blockchain, and the profits that investors expected

27

28   ────────────────────
     [4] *Tezos to BTC Exchange*, HitBTC https://hitbtc.com/XTZ-to-BTC (last visited Mar. 29, 2018).

to derive therefrom, were based entirely on the technical, managerial, and entrepreneurial efforts of Defendants and other third parties to be employed by Defendants.

8.    The Tezos ICO was a financial boon for Defendants.  DLS and its shareholders will be paid 8.5% of the contributions raised and 10% of the initial issuance of Tezos tokens (representing 76,330,692.97 tokens), once the Tezos platform is launched and stable.  The Tezos Foundation will also receive 76,330,692.97 tokens in the initial issuance of Tezos tokens.

9.    Despite the enormous sums raised in the ICO, Defendants have claimed that they have no obligation to provide Tezos tokens to Plaintiffs and the Class.  Defendants even claim the right to abandon the project at will and without recourse.  It is situations exactly like this that the federal securities laws were enacted to prevent.

10.    Here, in violation of Sections 5, 12(a)(1) and 15 of the Securities Act, Defendants offered and sold Tezos tokens without filing a registration statement with the SEC.  Under Section 12(a)(1), Plaintiffs and the Class are entitled to rescission of the transaction, receiving back their Bitcoin and Ethereum, with any corresponding appreciation in value of invested assets, or the equivalent in monetary damages as restitution.

## II.    JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 5, 12 and 15 of the Securities Act (15 U.S.C. §§ 77e, 77l, and 77o).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332(d), and Section 22 of the Securities Act (15 U.S.C. § 77v).

12.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and 15 U.S.C. § 77v because Defendants are found, and/or reside, and/or are inhabitants of, or transact business within this District.  Venue is also proper in this District because many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District.

---

HitBTC is a cryptocurrency exchange accessible from anywhere in the world there is an internet connection.  Though Defendants have not released tezzies yet, according to HitBTC, investors "are able to buy IOU[s] directly on [its] exchange and store them on [the investor's] HitBTC account. As soon as tokens are released, [investors will] be able to trade, deposit/withdraw them[.]" *ICO*, HitBTC, https://hitbtc.com/faq/ico (last visited Mar. 29, 2018).

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce to offer and/or sell Tezos tokens through the Tezos ICO, including but not limited to mail, electronic mail, interstate phone communications, interstate travel, and/or internet service providers.

## III.     PARTIES

14.     Lead Plaintiff Arman Anvari is a resident of Illinois, and invested 250 Ethereum in the Tezos ICO on July 8, 2017.   He was promised delivery of 133,608.75 Tezos tokens upon the conclusion of the Tezos ICO and the launch of the Tezos network.

15.     Plaintiff Pumaro LLC ("Pumaro") is a Texas limited liability company, which invested 1.9 Bitcoin in the Tezos ICO on July 1, 2017.  Pumaro was promised delivery of 11,400 Tezos tokens upon the conclusion of the Tezos ICO and the launch of the Tezos network.

16.     Defendant DLS is a Delaware corporation with its principal place of business in Mountain View, California, which was the home of Defendants Arthur Breitman and Kathleen Breitman at all relevant times.   DLS is owned and controlled by Defendants Arthur Breitman, Kathleen Breitman, Timothy Cook Draper and Draper Associates Crypto.  DLS claims to own all intellectual property in the Tezos project, including the source code of the Tezos cryptographic ledger, logos, and trademark applications associated with the name Tezos.

17.     Defendant Tezos Foundation is a Swiss foundation with its principal place of business in Zug, Switzerland.   The Tezos Foundation was created to hold the consideration raised from investors in the Tezos ICO.  The Tezos Foundation claims to have contracts with DLS to acquire all rights to the Tezos project, and claims to have custody of all proceeds from the Tezos ICO.

18.     The Court has specific personal jurisdiction over the Tezos Foundation based on its numerous contacts with the United States.  Over the course of approximately two weeks in July 2017, the Tezos Foundation conducted the Tezos ICO that is the subject of this action.   The "Tezos Overview" document[5] stated that "[t]he Switzerland-based Tezos Foundation will oversee a fundraiser on July 1, 2017."   The Tezos Overview stated that the Tezos Foundation would "receive

---

[5] *Tezos Overview*, TEZOS (May 5, 2017), https://www.tezos.com/static/papers/Tezos_Overview.pdf.

and manage all contributions on a special website: https://crowdfund.tezos.com and through Bitcoin Suisse AG, a Swiss exchange that has successfully managed several fundraisers."  Based on the contributions received, the Tezos Foundation would then "recommend a token allocation" to investors.  The tezos.com domain is hosted on a U.S. server located in Phoenix, Arizona, and the "crowdfund.tezos.com" website used by the Tezos Foundation is a sub-domain of tezos.com.  By this means, the Tezos Foundation conducted an ICO and solicited virtual currency (Bitcoin and Ethereum) and fiat currency contributions from more than 30,000 investors, including numerous investors in the United States, such as Plaintiffs.

19.     The Tezos Foundation also has/had at least one employee or agent located in the United States.  In an official instructional video on how to participate in the Tezos ICO posted on the tezos.com website and on YouTube,[6] an individual named Ross Kenyon introduced himself as a "community manager" for the Tezos Foundation.  In an article published on July 13, 2017 in the French publication *Le Journal du Net* (JDN), entitled "Tezos, la blockchain décomplexée qui veut remplacer Ethereum," Mr. Kenyon was quoted as the "spokesperson" for the Tezos Foundation.  Based on Mr. Kenyon's LinkedIn profile, Mr. Kenyon has at all relevant times been located in the United States.

20.     The Tezos Foundation also owns and otherwise controls the website tezos.com, which is hosted in the U.S.  According to domain registration information for tezos.com, the administrator of the tezos.com domain is the Tezos Foundation, and the administrator contact is identified as Johann Gevers, a director of the board of Tezos Foundation at the time of the ICO.  The administrator address is listed as the address of the Tezos Foundation in Zug, Switzerland.  Consistent with its ownership and/or control of the tezos.com domain, the Tezos Foundation used the website to conduct the Tezos ICO, and repeatedly directed investors to that website.  For example, in an update posted on August 10, 2017,[7] the Tezos Foundation stated: "The Tezos project website (https://tezos.com) will be

---

[6] Tezos, *Tezos Fundraiser Video Walkthrough*, YOUTUBE (June 20, 2017), https://www.youtube.com/watch?v=Uti8-1Y-Wkk.

[7] *August Update*, TEZOS FOUNDATION (Aug. 10, 2017), https://www.tezos.ch/august-update.html#august-update.

updated soon – stay tuned."  In the same update, the Tezos Foundation expressly instructed investors to access a sub-domain of tezos.com, as follows: "If you haven't done so already, please go to https://check.tezos.com/ and make sure your contribution has been properly recorded."  As stated above, the Tezos Foundation "receive[d] and manage[d] all contributions" on the crowdfund.tezos.com website, which is another sub-domain of the tezos.com website.

21.    Defendant Arthur Breitman is the primary developer behind the Tezos cryptographic ledger.  At all times relevant to this Complaint, Arthur Breitman lived with his wife, Defendant Kathleen Breitman, at their home in Mountain View, California.

22.    Defendant Kathleen Breitman is the Chief Executive Officer of DLS.  In a July 2017 interview, Mrs. Breitman stated that she "take[s] care of all the operational aspects of the Tezos blockchain.  I deal with business partners, I deal with attorneys, I deal with our marketing group, all the non-technical things."[8]

23.    Defendant Draper is a venture capitalist who is the founder and managing partner of Draper Associates, a venture capital firm operating out of Menlo Park, California in San Mateo County.  Defendant Draper both personally and through his company, Defendant Draper Associates Crypto, or both, has a substantial ownership interest in Defendant DLS.

24.    Defendant Draper Associates Crypto is a Delaware limited liability company formed on May 10, 2017 with its principal place of business at 55 East 3rd Avenue, San Mateo California.  Draper Associates Crypto is a primary shareholder in Defendant DLS.

25.    Defendant Bitcoin Suisse is a financial services provider that was established in 2013 and is headquartered in Zug, Switzerland.  According to its press releases, the main activities of the company include brokerage, asset management, trading, ICO services and payment gateway services.  Bitcoin Suisse acts as an asset manager on behalf of institutions, companies and private individuals, with a specific focus on digital/crypto assets and currencies.

---

[8] Around The Coin, *Fintech Podcast, Episode 138: Interview with Kathleen Breitman, CEO of Tezos*, YOUTUBE (June 16, 2017), https://www.youtube.com/watch?v=cDIgGYl5krA&feature=youtu.be.

26.     The Court has specific personal jurisdiction over Bitcoin Suisse based on its contacts with the United States.  Bitcoin Suisse was involved in the promotion and/or offer and sale of tokens in the Tezos ICO.  According to a statement published by Bitcoin Suisse on November 13, 2017,[9] "Bitcoin Suisse AG (BTCSAG) acted as a crypto-financial service provider and intermediary in connection with the Tezos Crowd Contribution earlier this year, providing services to both individual contributors as well as the Tezos Foundation itself."  Specifically, Bitcoin Suisse offered a way for putative investors to invest in the Tezos ICO other than from the tezos.com website, by acting as an intermediary and providing investors with virtual currency conversion services, and then contributing these virtual currencies to the Tezos ICO on behalf of the investors.  According to a "Framework Agreement" that was published in English and made available on its website (*see* https://www.bitcoinsuisse.ch/tezos-4/), Bitcoin Suisse touted its ability to "handle[ ] the onboarding of individual contributors, and the reception and exchange of a wide variety of currencies, convert[ ] to the corresponding amount of Bitcoin (BTC), and hereafter handle[ ] the contribution to TZ on behalf the contributor."  Bitcoin Suisse also claimed that, "[i]f requested to do so, BTCSAG [Bitcoin Suisse] can also store the XTZ-tokens on behalf of individual contributors in our sandboxed environment …"  Bitcoin Suisse also indicated that it accepted US dollars, and that it offered its services to U.S. clients, expressly stating that: "***N.B: For US-clients BTC-rate will be locked immediately upon reception of deposit.***"  Thus, in connection with the Tezos ICO, Bitcoin Suisse provided a currency conversion facility through which U.S. investors could invest in the Tezos ICO.

27.     In addition, Bitcoin Suisse fulfilled the vital role of a controlling co-signatory for the funds collected in the Tezos ICO.  According to Bitcoin Suisse's November 13, 2017 statement, "Since the conclusion of the Crowd Contribution, BTCSAG has continued to provide crypto-financial services to the Tezos Foundation, including acting as a mandatory co-signatory on all crypto-asset transactions."

---

[9] *Statement concerning the Tezos Crowd Contribution and the Tezos Foundation* (Nov. 13, 2017), BITCOIN SUISSE AG, https://www.bitcoinsuisse.ch/tezos-statement/.

8

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    BLOCKCHAIN TECHNOLOGIES GENERALLY

28.    As the SEC has explained, a "blockchain is an electronic distributed ledger or list of entries – much like a stock ledger – that is maintained by various participants in a network of computers.  Blockchains use cryptography to process and verify transactions on the ledger, providing comfort to users and potential users of the blockchain that entries are secure."[10]   Well-known examples of blockchain technology are the blockchains underlying the Bitcoin and Ethereum virtual currencies.  The Tezos project is also intended to be developed using blockchain technology.

29.    A blockchain can be shared and accessed by anyone with appropriate permissions using the same software protocol.  For example, to operate the Bitcoin shared ledger, computers must run the same version of the Bitcoin protocol.  In this manner, blockchains are distributed or decentralized because they are hosted and perpetuated by numerous "nodes" spread across computers around the globe, including in the United States.  Because the shared ledger is decentralized in this manner, there is no central point of failure where the shared ledger can be corrupted.  Also, the blockchain ledger is not controlled or maintained by any single entity, but exists simultaneously on computers all over the world.

30.    By way of illustration, when any transaction is effected using the Bitcoin or Ethereum blockchains, the transactions are recorded in tens of thousands of nodes throughout the world.  The distribution of Bitcoin and Ethereum nodes may be viewed at the following websites: https://bitnodes.earn.com/ and https://www.ethernodes.org/network/1.  The United States hosts a large number of the active nodes worldwide.

31.    A blockchain records all transactions in the network in theoretically unchangeable, digitally recorded data packages called "blocks."  Each block contains a batch of records of transactions, including a timestamp and a reference to the previous block, linking the blocks together in a chain – hence the term "blockchain."  For a transaction to be valid on the blockchain, all network

---

[10] *Investor Bulletin: Initial Coin Offerings*, U.S. SECURITIES AND EXCHANGE COMMISSION (July 25, 2017), https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings.

participants must first reach a "distributed consensus" on the validity of transactions under review. Blockchains reach consensus by using the same cryptographic algorithm to verify each transaction submitted to the blockchain. For cryptocurrencies secured by a widely distributed blockchain network, any attempt to submit a false or malicious transaction would be extremely difficult, if not impossible, since a malicious actor must gain control of a majority of the nodes on the blockchain to achieve a malicious purpose. Once a transaction is validated on the blockchain, the transaction cannot be canceled, reversed, or altered in any way. Because the blockchain records and secures information for all transactions, a participant can see every transaction involving the currency all the way back to genesis.

32. Blockchain technologies and distributed ledgers may create and disseminate virtual "tokens" or "coins." A token or coin may entitle its holders to certain rights related to an underlying venture, such as rights to profits, shares of assets, rights to use certain services provided by the issuer, and/or voting rights. The tokens or coins may also be traded on online exchanges, in exchange for virtual or fiat currencies. As the SEC has stated, based on these rights, "in certain cases, the tokens or coins will be securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration."[11]

**B.   THE TEZOS PROJECT**

33. The Tezos project was conceived by Defendants Arthur and Kathleen Breitman as a new blockchain protocol that would compete with and supplant Ethereum. According to the tezos.com website (frequently asked questions):

> Bitcoin, Ethereum and Tezos are all decentralized ledgers powered by a blockchain. Bitcoin was the first public blockchain and introduced the first truly decentralized form of electronic cash. Ethereum followed suit by including smart-contracts in its platform, allowing a greater range of application [*sic*] to be developed. Tezos takes this concept one step further by letting participants directly control the rules of the network. It is designed to evolve, so that the next generation of ideas doesn't have to start over as a new blockchain.[12]

---

[11] *Id.*

[12] *FAQ,* TEZOS (May 8, 2017) https://www.tezos.com/faq.

34.     In 2014, Arthur Breitman released a white paper ("Tezos White Paper") describing the concept for the Tezos blockchain.[13]  The Tezos White Paper explains the purpose and technology behind the Tezos project, and sets forth the developers' vision to launch a competitor to the Bitcoin and Ethereum blockchains that was intended to solve many of the problems faced by those early iterations of blockchain technology.  The Tezos White Paper describes how the Tezos tokens allow their owners, such as Plaintiffs and the Class, to "vote" on amendments to the Tezos blockchain.

35.     Apart from the vision for Tezos, the Tezos White Paper describes the mechanics of the Tezos ICO, the parties involved, and the intended uses for the Bitcoin and Ethereum to be contributed by investors.

36.     In August 2015, Defendants Kathleen and Arthur Breitman formed Defendant DLS to hold the intellectual property for the Tezos project.  At all relevant times, Kathleen Breitman has been the Chief Executive Officer, and Arthur Breitman has been the Chief Technology Officer of DLS.  As DLS had no traditional office, the Breitmans listed their home in Mountain View, California as DLS's formal headquarters.

37.     Between September 2016 and March 2017, DLS and the Breitmans conducted a private pre-sale of the yet-to-be-issued Tezos tokens to three crypto-token focused hedge funds, and seven high net worth individuals.  The Breitmans received $612,000 in funding from these early investors.

38.     On February 17, 2017, Arthur Breitman "announce[d] that Polychain Capital ha[d] added Tezos to its hedge fund by preordering Tezos tokens."  In hyping the potential value of Tezos tokens, he noted that:

> Cryptocurrencies comprise a $17B market. Bitcoin commands most of that market cap. But as new blockchain technologies emerge, many feel that the overall value of the market will grow astronomically. In fact, as Carlson-Wee [the founder of Polychain Capital] said in an interview with Forbes, it could one day be "in the trillions of dollars." Since the field is still in its infancy, new advances are happening every day, and many are happening outside of the

---

[13] *Tezos White Paper,* TEZOS (AUG. 3, 2014), https://www.tezos.com/static/papers/position_paper.pdf.

Bitcoin blockchain.[14]

39.     During this time period, renowned technology venture capital firm Draper Associates, through Draper Associates Crypto, also made an equity investment of approximately $1.5 million in return for a minority stake in DLS.[15]

## C.   THE TEZOS ICO

40.     An ICO is a fundraising event in which an entity offers participants coins or tokens in exchange for consideration (often in the form of virtual currency such as Bitcoin and Ethereum, or fiat currency, such as U.S. Dollars).

41.     ICOs are typically announced and promoted through public online channels, such as the popular forum bitcointalk.org.  On May 3, 2017, shortly before the Tezos ICO, a user with the username "arthurb" posted on bitcointalk.org: "We're keeping our nose to the grindstone. We'll have an ANN[OUNCEMENT] on B[itcoin]T[alk] as soon as we're ready to announce our ICO."[16]  Upon information and belief, "arthurb" is the online moniker of Defendant Arthur Breitman.

42.     The Tezos ICO was open to public investors from July 1, 2017 through July 14, 2017.

43.     The Tezos ICO was "uncapped."  This means there was no limit on the number of investors who could participate, or the amount they could invest in the ICO.

44.     The Tezos ICO utilized a tiered contribution structure that incentivized investors to contribute as early as possible by rewarding them with bonuses of additional tokens.  Under the terms of the Tezos ICO, a contribution of one Bitcoin purchased five-thousand Tezos (5,000 XTZ), plus a time-dependent bonus.  The time-dependent bonus started at 20%, meaning that an early contribution of one Bitcoin purchased 6,000 XTZ (a 1000 XTZ bonus).  From 20% at the outset, the bonuses decreased progressively to 0% (15%, 10%, 5%, and then 0%) over four additional periods that lasted

---

[14] ArthurB, *Polychain hedge fund embraces Tezos*, MEDIUM (Feb. 17, 2017), https://medium.com/tezos/polychain-hedge-fund-embraces-tezos-9075603456fa.

[15] Anna Irrera, et al., *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, REUTERS (Oct. 18,2017), https://www.reuters.com/article/us-bitcoin-funding-tezos-specialreport/special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-idUSKBN1CN35K.

[16] Arthurb, *Tezos discussion,* BITCOIN FORUM (May 3, 2017), https://bitcointalk.org/index.php?topic=1775132.msg18860452#msg18860452.

400 Bitcoin blocks each. (The average time between Bitcoin blocks is approximately 10 minutes, so each of these 400 Bitcoin periods lasted approximately 66 hours). Investors of Ethereum received Tezos tokens based on a corresponding tiered structure, except that the exchange rate fluctuated with the trading price of Ethereum.

45.     Defendants' various roles in the Tezos ICO, and the mechanics of the Tezos ICO, are alleged in further detail below.

**D.   DEFENDANTS' ROLES IN THE TEZOS ICO**

46.     Defendants jointly conducted the Tezos ICO.

**1.   DLS And The Tezos Foundation**

47.     DLS is the developer of Tezos, and "owns all of the Tezos-related intellectual property, including the source code of the Tezos cryptographic ledger, logos, and trademark applications associated with the name Tezos, domain names, and goodwill arising from a set of a [*sic*] relationships with several contractors and potential customers in the financial technology market."[17]

48.     In connection with the Tezos ICO, the Tezos Foundation was established in or around May 2017 as a Swiss non-profit (Stiftungen) in Zug, Switzerland to oversee the ICO and to "receive and manage all contributions." Based on the contributions received, the Tezos Foundation would then "recommend a token allocation in the Tezos genesis block" to be released by DLS to investors.[18] In connection with the Tezos ICO, the Tezos Foundation and DLS "negotiated a contractual agreement in which the Foundation will acquire DLS and release its IP under a free software license (MIT license). In the process, the Foundation will also acquire DLS' existing business relationships with contractors and potential customers, as well as its trademark applications and domain names."[19] In addition to collecting and managing contributions from the ICO, the Tezos Foundation is responsible for promoting the development and use of the Tezos blockchain.

49.     Despite the purportedly separate legal status of the Tezos Foundation and DLS, the

---

[17] *Transparency Memo,* TEZOS (Mar. 15, 2016) https://www.tezos.com/dls.

[18] *Tezos Overview, supra* at 10.

[19] *Transparency Memo*, *supra*.

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

two entities are in fact closely affiliated, and jointly conducted the Tezos ICO.  For example, according to the Tezos Overview, it was DLS and the Breitmans who established the Tezos Foundation: "Tezos' founders thought it that it would be beneficial for the Tezos Network if a nonprofit foundation could guide its early steps and complement the decentralized nature of its governance model."  Also, "DLS advises the Foundation closely on technology."[20]  Further, as reported by *Reuters*, DLS controls the Tezos Foundation website (www.tezos.ch).[21]  Johann Gevers, one of the original directors on the Board of the Tezos Foundation, publicly stated that "[t]hey [the Breitmans] control the foundation's domains, websites and email servers, so the foundation has no control or confidentiality in its own communications."[22]

### 2.    The Breitmans

50.    In addition to their roles running DLS, the Breitmans individually were responsible for promoting the Tezos ICO.  For example, since at least mid-2016, the Breitmans have been touting the Tezos project on Reddit, a popular discussion forum for a variety of topics, including cryptocurrencies.  Upon information and belief, Defendant Arthur Breitman posted to Reddit under the usernames "murbard" and "abtezos," and Defendant Kathleen Breitman posted under the username "breitwoman."  Reddit allows the creation of subject-specific sub-forums known as "sub-Reddits."  Users submit discussion "threads" on sub-Reddits, in which other users post comments and responses.  The sub-Reddit for Tezos, "r/Tezos," was created by Defendant Arthur Breitman.[23]

51.    Throughout the months leading up to the Tezos ICO, murbard, abtezos, and breitwoman posted numerous times on r/Tezos.  Their posts spanned a wide-range of subject matters and achieved a number of purposes, including: (i) the technology underlying Tezos; (ii) the Tezos ICO's structure and process; (iii) answering numerous questions concerning the Tezos ICO and the

---

[20] *Id.*

[21] Irrera, *supra.*

[22] *Id.*

[23] Murbard, REDDIT (June 21, 2016), https://www.reddit.com/r/tezos/ (listing user "murbard" as "founder").  The Tezos Foundation explicitly refers to this sub-Reddit in its August 10, 2017 update posted on its website, stating: "There are also two unofficial community forums: https://reddit.com/r/tezos and https://www.tezos.community."

technical underpinnings of the ICO system; (iv) touting the Tezos ICO and the Tezos project; and (v) systematically responding to critics who called into doubt Tezos's viability or the structure and process of the Tezos ICO.  These posts showed that the Breitmans were intimately involved in the planning, marketing, and execution of the Tezos ICO.

52.    For example, on June 27, 2016, a Reddit user began a discussion thread entitled "when is the crowdfunding?"  Arthur Breitman, under the user name "abtezos," responded: "Looking at a crowdsale circa Q1 2017, but we have to iron out the details."  In April, 2017, a user commenced a thread on the subreddit "r/EthTrader," entitled "Tezos will do an uncapped ICO. This turned me off, to me it seems they are greedy and abusing the hot ICO market. Their credibility is lost."  "Murbard" responded: "Indeed we're not planning on having a cap. The structure will be highly similar to the Ethereum crowdsale. …  I think it's critical that two years from now we can look back and say: yes, everyone had a chance to participate, not just a few insiders who rushed in during a half hour period. Having a small insider base seems to have been very damaging to projects like NXT and we'd like to avoid that. Many people have told us the lack of a cap meant they wouldn't participate. Almost none of those people seemed interested in the details of our project and what we were building. I suppose they participate in many crowdsales and do not focus on the long term potential."

53.    On the same thread, another user asked "what percentage will the Tezos team ultimately hold? How many additional rounds of fundraising do they have planned? What will the inflation rate estimated to be after Tezos goes live? Is there a vesting period for the initial investment?"  "Breitwoman" responded, stating:

> The founding team will hold 10% of the tokens, the Tezos Foundation (separate entity) will hold 10% as well, both vesting over 4 years. We will have nominal inflation of 5% annually.
>
> We have no intention of running another crowdsale unless it's too low to fund development over the four years we want to budget the foundation. Even then, this choice would be left up to our network to decide. We built a product so we don't need 'fundraising' though we did sell a small amount of tokens at a discount over the crowdsale price (read: not a fixed % of a cap), to a small group of high net worth people and hedge funds with a focus on tokens.

54.    On May 6, 2017, a Reddit user began a thread entitled "Red Flag," and stated "I

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

subscribed on Tezos website and got this message :-  Thank you for subscribing Tezos 100 question mark way Brooklyn, New York 11221 When I googled the address it doesn't exist. What does it mean?"  Defendant Kathleen Breitman, posting under the name "breitwoman," responded, "We didn't want to provide our personal address and we don't have an office to cite. And, to be very honest, I think your use of the phrase 'Red Flag' here is a bit unwarranted."  Another user then asked, "[a]re you incorporated anywhere? Can't you cite your incorporation address?"  "Murbard" responded, "[i]t's still our home address, we are a scrappy operation. But you gave me an idea and I put the address of the registrant in Delaware who can forward mail, should people decide they want to send us letters. Don't send flowers though."

55.     On May 11, 2017, Defendant Kathleen Breitman held an "Ask Me Anything" (or "AMA") session on a chat service that was copied and pasted on the Reddit sub-forum of Ark, another cryptocurrency project.[24]  During the AMA, Kathleen Breitman, posting as "breitwoman," stated that up to the point of the Tezos ICO, she had been the "one woman band" responsible for "promoting the protocol," but that she hoped the Tezos Foundation would take over these responsibilities "after the sale."  "Breitwoman" also stated that she was US-based and "I don't have any plans to leave the US."

56.     Upon information and belief, Defendants Arthur Breitman and DLS were also heavily involved in planning and executing the Tezos ICO from a technical and operational perspective, including by designing, constructing, and deploying the software underlying the ICO.

57.     On July 5, 2017, four days into the Tezos ICO, a Reddit user posted in r/Tezos: "Tezos source[code] repository hasn't been touched in over 2 months... why? No development, no commits?"  "Murbard" responded: "The fundraiser application took us two months of work, including an external security audit. During that time, there was [ ] only a bit of development on the alphanet branch …."

58.     During the Tezos ICO itself, Defendant Arthur Breitman was monitoring the ICO's progress, maintaining the Tezos computers tracking the progress of the ICO and the contribution amounts and addresses of ICO investors, and was on hand to deal with any problems that arose.  For example, on the first night of the Tezos ICO, which began on Saturday, July 1, 2017 at 6AM UTC

---

[24] ArcEcosystem, *AMA with Tezos on ARK slack,* REDDIT (May 11, 2017),
https://www.reddit.com/r/ArkEcosystem/comments/6am0d6/ama_with_tezos_on_ark_slack/.

(or Friday, June 30, 2017 at 11PM PST), a Reddit user commenced a thread in r/Tezos, entitled "Why did some accounts get double XTZ?"  "Murbard" responded, stating that "[t]he database crashed very early on and in the recovery we borked a few summaries. We're rebuilding a clean database that will adjust this, apologies for the confusion this created."

59.     Several days later, Arthur Breitman posted as "murbard" in another thread started on July 4, 2017.  Addressing the same "database crash[]," "murbard" stated:

> For the curious, one of our machine's role is to go through the Ethereum and Bitcoin blockchain and look for Tezos contributions. That machine threw a tantrum and chose to do it at the time where I finally got some sleep. I woke up in the middle of the night after sleeping through one or two phone calls and ad[d]ressed the issue with the team. It required a small patch and a restart of the machine.

> It is the same machine that threw a bigger tantrum early morning on Saturday night, leading it to skip portions of the blockchain, which is why a few hundred people didn't see confirmations for a long time. We're still cleaning up the mess from Saturday morning, but we are being very slow about it, because we don't want to risk disrupting the system while it's running.

### 3.     Bitcoin Suisse

60.     According to a statement published by Bitcoin Suisse on November 13, 2017, "Bitcoin Suisse AG (BTCSAG) acted as a crypto-financial service provider and intermediary in connection with the Tezos Crowd Contribution earlier this year, providing services to both individual contributors as well as the Tezos Foundation itself."  In connection with the Tezos ICO, Bitcoin Suisse acted as an intermediary by providing virtual currency conversion services to investors and then handling the contribution to the Tezos ICO on behalf of the investors, including U.S. investors.  In addition, Bitcoin Suisse acts as a controlling co-signatory for the funds collected under the Tezos ICO.  According to Bitcoin Suisse's November 13, 2017 statement, "[s]ince the conclusion of the Crowd Contribution, BTCSAG [Bitcoin Suisse] has continued to provide crypto-financial services to the Tezos Foundation, including acting as a mandatory co-signatory on all crypto-asset transactions."

### 4.     Timothy Draper And Draper Associates Crypto

61.     Defendant Draper, principal of Draper Associates and Defendant Draper Associates Crypto, promoted the Tezos ICO.

62. On May 5, 2017, two months before launch of the Tezos ICO, *Reuters* announced that Draper was an early investor in the Tezos project. Draper "told Reuters in an interview he will for the first time participate in a so-called 'initial coin offering' (ICO) of Tezos slated later this month." Draper stated: "The best thing I can do is lead by example …. Over time I actually feel that some of these tokens are going to improve the world, and I want to make sure those tokens get promoted as well. I think Tezos is one of those tokens." As the *Reuters* article stated, "Draper…becomes the first prominent venture capitalist to openly embrace initial coin offerings. This would be a significant stamp of approval for this new financing mode of blockchain start-ups."[25]

63. Similarly, on July 7, 2017, *The Wall Street Journal* reported that Tezos was "helped by having one prominent backer: Tim Draper, a founder of the Silicon Valley venture-capital firm Draper Fisher Jurvetson. Mr. Draper's small undisclosed personal investment in the firm, and his public pledge to buy into the initial coin offering significantly raised Tezos's profile."[26]

64. Indeed, the Breitmans viewed Draper as a "partner." In responding to a question on Reddit about Draper's involvement in the Tezos ICO, Kathleen Breitman (posting under the username "breitwoman") responded: "We offered Tim a small fraction of DLS so that his interest would be aligned with ours for at least the next four years. Bitcoin has DCG, Ethereum has Consensys … we were in the market for a partner and champion and Tim was very responsive to our vision."

65. In this manner, each of Defendants directly or indirectly sold or offered Tezos tokens to investors. In addition, each of Defendants was a necessary participant and a substantial factor in the Tezos ICO.

## E. THE MECHANICS OF THE TEZOS ICO

66. To participate in an ICO, investors are generally required to transfer funds (often

---

[25] Gertrude Chavez-Dreyfuss, *Exclusive: Billionaire investor Draper to participate in blockchain token sale for first time*, REUTERS (May 5, 2017), https://www.reuters.com/article/us-tezos-blockchain-draper/exclusive-billionaire-investor-draper-to-participate-in-blockchain-token-sale-for-first-time-idUSKBN181250.

[26] Paul Vigna, *Forget an IPO, Coin Offerings Are New Road to Startup Riches*, THE WALL STREET JOURNAL (July 7, 2017), https://www.wsj.com/articles/forget-an-ipo-coin-offerings-are-new-road-to-startup-riches-1499425200.

cryptocurrencies) to the issuer's electronic address, online "wallet," or other account.  After the completion of the ICO, the issuer distributes its unique tokens to the participants' unique address on the blockchain.

67.    To better understand these steps and the mechanics by which investors transferred cryptocurrencies to Defendants under the Tezos ICO, it is useful to understand how cryptocurrencies work generally.

68.    Cryptocurrencies (also known as digital currencies or virtual currencies) are a digital representation of value that can be digitally traded and function as: (1) a medium of exchange; and/or (2) a unit of account; and/or (3) a store of value.  To date, digital currencies have not attained status as legal tender in any jurisdiction and have not been issued or guaranteed by any jurisdiction.  A digital currency fulfils the above functions only by agreement within the community of users of the virtual currency, and is valuable only to the extent the market ascribes value to it.  Thus, digital currencies attain valuations through market trades on various exchanges hosted throughout the globe.  Virtual currency is distinguished from fiat currency, which is the coin and paper money of a country that has designated it as legal tender, and which circulates and is customarily used and accepted as a medium of exchange in the issuing country.[27]

69.    When transacting digital currencies, a digital currency holder receives digital currency using a "wallet."  The wallet comes with a "public key," which is a unique identifier for the wallet and is known to the public.  When a person sends cryptocurrency to that wallet, the person sends the digital currency to a digital address that is derived from that public key.  This address is a single-use identifier that is automatically generated for each transaction.

70.    In addition to the public key, each holder of cryptocurrency has a "private key," which is not to be shared with anyone else.  The private key is needed to access any cryptocurrency that has been sent to the person's public address.  When a person sends Bitcoin or any other type of digital currency, they are essentially signing off ownership of the coins to the recipient's wallet address.  To

---

[27] Financial Action Task Force, *FATF Report, Virtual Currencies, Key Definitions and Potential AML/CFT Risks* (June 2014), http://www.fatf-gafi.org/media/fatf/documents/reports/Virtual-currency-key-definitions-and-potential-aml-cft-risks.pdf.

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

be able to spend those coins and unlock the funds, the private key stored in the recipient's wallet must match the public address to which the currency is assigned.  In this fashion, a public address is similar to a mail box, and the private key functions as the key to the mailbox.  While a mailman or anyone else can insert letters through the opening in the mailbox, only the person who has the unique private key can retrieve the contents of the mailbox.

71.     In preparation for the Tezos ICO, DLS and the Tezos Foundation established a U.S. based website, www.tezos.com, as the mechanism for conducting the ICO.  The IP addresses for all "tezos.com" webpages indicate that the website is hosted on a dedicated server in Phoenix, Arizona.

72.     From the tezos.com website, Plaintiffs and the Class were instructed to manually enter "crowdfund.tezos.com" into their web browser.  After accessing that web page, investors were instructed to register by first entering their email and then creating a password.  Based on that information, the tezos.com website created a Tezos wallet for Plaintiffs and each Class member, a 15 word "secret key" (private key) to uniquely identify each investor, as well as a public key to be used in interactions with the Tezos Foundation and other parties.

73.     Plaintiffs and the Class then saved their wallets by downloading a PDF document to their computers that contained their private key and public key.  The PDF document also identified the "Bitcoin deposit address" and a "Ethereum contract address" for the Tezos Foundation, which were the digital addresses to which investors were to send their Bitcoin and Ethereum contributions to the Tezos Foundation.  For example, in the instructional video featuring Ross Kenyon, the address for Bitcoin contributions was 34XiEQ4qExTQtH38EPSNg43uhiBXrLbEDf, and the address for Ethereum contributions was: 0xb56d622DDF6Oec532B5f43B4Ff9B0e7b1FF92dB3.  The actual contribution addresses were unique to each investor and based on that investor's public key.

74.     Plaintiffs and the Class were then directed to a contributions web page, which was also part of the tezos.com website.  There, they input the amount of Bitcoin or Ethereum they sought to invest, and the previously-notified Bitcoin or Ethereum deposit address to send their contribution.

75.     As described above, the addresses where investors sent their Bitcoin or Ethereum contributions simply represent the digital identifying information for the Tezos Foundation's Bitcoin and Ethereum wallets.  The wallets are not a physical location and the digital currency they contain

1   is not physically "stored" anywhere.  By using these contribution addresses, investors were simply

2   effecting a digital transaction which was digitally recorded as part of a block of information and then

3   added to the Bitcoin and Ethereum blockchain ledger, respectively.

4       76.     Because the Bitcoin and Ethereum blockchains are hosted and maintained by

5   numerous computers throughout the globe, the ledgers recording the changes to the Tezos

6   Foundation's Bitcoin and Ethereum holdings simultaneously exist on all of these participating

7   computers throughout the globe, including in the United States.

8       77.     After Plaintiffs and the Class sent their Bitcoin or Ethereum to Defendants, they were

9   able to check whether their currencies were received by going to another sub-domain of the tezos.com

10  website: check.tezos.com.  By entering their public key into the check.tezos.com web page, Plaintiffs

11  and the Class could confirm that their Bitcoin and Ethereum were received by Defendants.

12      78.     In the above manner, Plaintiffs and the Class used Defendants' tezos.com website,

13  which was hosted on a U.S. server, to send their Bitcoin and Ethereum contributions.   These

14  contributions were then digitally recorded in the Bitcoin and Ethereum blockchain ledgers maintained

15  on computer systems and servers throughout the U.S. (as well as worldwide).  Thus, Defendants

16  incurred irrevocable liability within the U.S. to deliver the Tezos tokens to Plaintiffs and each member

17  of the Class.

18      **F.    THE RESULTS OF THE TEZOS ICO**

19      79.     There were 30,317 investors in the Tezos ICO, who collectively contributed 65,681

20  Bitcoin (62.5% of total contributions) and 361,122 Ethereum (37.5%).  Based on these numbers, a

21  total of 763.31 million Tezos tokens will be issued as part of the genesis block.  Of this total, 607.49

22  million Tezos tokens will be issued to ICO investors.  A further 3.16 million Tezos will be created

23  for early backers and contractors.

24      80.     According to the Transparency Memo posted on tezos.com, if the Tezos blockchain

25  launches and remains operational for three months, DLS will receive 10% of all Tezos tokens (76.3

26  million tokens), issued over four years.  The Tezos Foundation receives another 10%, also over four

27  years.  DLS shareholders are also entitled to receive 8.5% of the ICO proceeds in cash.

28      81.     The remainder of funds raised in the Tezos ICO is purportedly the Tezos Foundation's

21

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

property.  While the Tezos Foundation appears to have a mandate to use these monies to support development of the Tezos blockchain, it appears to have no legal oversight or compulsion to do so.[28]

### G.   THE TEZOS TOKENS ARE SECURITIES

82.     Under Section 2(a)(1) of the Securities Act, a "security" is defined to include an "investment contract."  15 U.S.C. § 77b(a)(1).  An investment contract is "an investment of money in a common enterprise with profits to come solely from the efforts of others."  *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).  Specifically, a transaction qualifies as an investment contract and, thus, a security if it is (1) an investment; (2) in a common enterprise; (3) with a reasonable expectation of profits; (4) to be derived from the entrepreneurial or managerial efforts of others.  *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975).  This definition embodies a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits," and thereby "permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.'"  *Howey*, 328 U.S. at 299.  Accordingly, in analyzing whether something is a security, "form should be disregarded for substance," and "the emphasis should be on economic realities underlying a transaction, and not on the name appended thereto."  *Forman*, 421 U.S. at 849.

83.     Notably, the SEC has already concluded that virtual coins substantially similar to those offered in the Tezos ICO – sold by an organization known as "The DAO" – are "securities and therefore subject to the federal securities laws."  As stated by the SEC, "issuers of distributed ledger

---

[28] Under Schweizerisches Zivilgesetzbuch (Swiss Civil Code), Art. 84 C. Augsicht (Supervision), a supervisory authority shall ensure that a foundation's assets are used for its designated purposes. However, as of August 2017, no supervision authority was designated for the Tezos Foundation.

According to the October 18, 2017 *Reuters* article (Irrera, *supra*), "Georg von Schnurbein, coauthor of a book on Swiss foundation governance, expressed surprise over cryptocurrency ventures like Tezos setting up not-for-profit foundations in Switzerland. 'For me, the public interest is not clear,' he said. While not illegal, he said, creating a foundation with the aim of allowing inventors to profit from a sale conflicted with its status as a not-for-profit, which is supposed to benefit the public. He said federal regulators eventually might prohibit it.'"

or blockchain technology-based securities must register offers and sales of such securities unless a valid exemption applies."[29]

84.     In finding that DAO tokens are securities, the SEC applied the *Howey* test for an "investment contract."  *First*, the SEC determined that investors in DAO tokens invested "money" by making their investments using Ethereum.  *Second*, the SEC determined that investors who purchased DAO tokens were investing in a common enterprise with a reasonable expectation of profits.  The promotional materials for DAO tokens informed investors that the objective of the project was to fund projects in exchange for a return on investments.  Accordingly, the SEC concluded that "a reasonable investor would have been motivated, at least in part, by the prospect of profits on their investment of [Ethereum] in The DAO."  *Third*, the SEC determined that the investors' profits were to be derived from the managerial efforts of others.  Investors reasonably expected that the creators and promoters of DAO tokens would provide significant managerial efforts after the launch.  The SEC also found that although DAO token holders were afforded voting rights, these rights were limited and did not provide them with meaningful control over the enterprise.  Rather, "[b]y contract and in reality, DAO token holders relied on the significant managerial efforts provided by" the creators and promoters of DAO tokens.

85.     In this case, the Tezos tokens have all the hallmarks of a security.  In substance, participants in the Tezos ICO submitted valuable consideration in the form of Bitcoin and Ethereum virtual currencies in return for the Tezos tokens offered and sold by Defendants in the Tezos ICO.  Defendants then used the consideration to finance the development of the Tezos blockchain protocol.  Participants in turn relied entirely on Defendants' expertise to complete the Tezos project and deliver profits to the participants.

### 1.     Participants In The Tezos ICO Made An Investment Of Money In A Common Enterprise

86.     Participants in the Tezos ICO used Bitcoin and Ethereum to invest in the Tezos ICO

---

[29] *Press Release: SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities,* U.S. SECURITIES AND EXCHANGE COMMISSION (July 25, 2017), https://www.sec.gov/news/press-release/2017-131.

1 and to obtain Tezos tokens in exchange for this consideration.  Investment of a virtual currency meets

2 the first prong of *Howey*.

3      87.     *First*, although Defendants have attempted to characterize the Bitcoin and Ethereum

4 consideration submitted in the ICO as mere "contributions" or "donations," Defendants made

5 numerous statements in which they conceded that they were actually selling the Tezos tokens to

6 investors as an investment.

7      88.     For example, the Tezos Overview document on numerous occasions describes the

8 Tezos ICO as a "fundraiser," and as a "***crowdsale***."[30]  Also, as recognized in the Tezos White Paper,

9 "the token supply will be the number of tokens issued during the ***crowdsale*** ...."[31]

10      89.     On February 17, 2017, Kathleen Breitman gave an interview with *Bitcoin Magazine*.

11 Describing the investment in Tezos by Polychain Capital (a firm backed by prominent Silicon Valley

12 investors such as Andreessen Horowitz) and the ICO process, she said "[w]e think this is significant

13 because it represents a new business model.  We created a product that was ***purchased by VC***

14 ***investors*** without the traditional equity investment model because of the ***anticipated appreciation of***

15 ***our token***."[32] (emphasis added).

16      90.     On May 5, 2017, Kathleen Breitman similarly described that the intent behind the

17 Tezos ICO was to "allow as many people who want to ***buy into the crowdsale*** over a two-week

18 period."[33] (emphasis added).

19      91.     In a June 16, 2017 Fintech Podcast interview, Kathleen Breitman again represented

20 that Defendants were "selling" the Tezos tokens: "***we're selling***, rather the Foundation is

21 recommending an allocation of tokens to the genesis block based on contributions to a Swiss non-

22

23 _____

[30] *Tezos Overview*, *supra* at 2 and 10.

24 [31] *Tezos White Paper*, *supra* at 8.

25 [32] Rebecca Campbell, *Tezos Receives Funding for Smart Contact System from Polychain Capital's Digital Currency Fund*, BITCOIN MAGAZINE (Feb. 17, 2017),
26 https://bitcoinmagazine.com/articles/tezos-receives-investment-smart-contact-system-polychain-
27 capitals-digital-currency-fund/.

[33] Chavez-Dreyfuss, *supra*.

28

profit.  And there's a suggested allocation amount.  So one bitcoin for 5000 Tezos tokens.  And we're going ***to sell them*** over the course of, rather have them up for donation, for the course of two weeks."[34] (emphasis added).

92.     Further, Defendant Draper characterized acquiring Tezos tokens as purchases rather than donations.  When he was asked "how much he donated during the Tezos fundraiser, he replied via email, 'You mean how much I bought? A lot.'"[35]

93.     On July 7, 2017, in the midst of the Tezos ICO, a user posted on r/Tezos, opining that Defendants mispriced the price of Tezos tokens.  The user stated that in order to generate "the maximum amount of interest, hype, and attention" for Tezos, Defendants should lower the amount of available Tezos tokens by a factor of ten to increase the per unit price.  According to the user, "[i]n two years, do you want to be telling people 'One tezzie is worth 200 bucks' or trying to explain that 'One tezzie is worth 20 bucks, but keep in mind there are vastly more tezzies than ether.'? The first is obviously much better advertising."  In response, "murbard" stated, "I agree that there is such a psychological effect, but I think the current rate is close to a sweet spot. Too low and you're not taken seriously, too high and it looks expensive."  Such discussions concerning pricing reflect that the Tezos ICO was a sale of an investment, rather than a donation.

94.     On September 1, 2017, Kathleen Breitman further confirmed that Tezos tokens were being purchased for valuable consideration under the Tezos ICO.  During an interview with famed angel investor Jason Calacanis (the "Calacanis Interview"), Mr. Calacanis asked: "I'm an investor, when we give $2 million or $200,000 or $232 million for a company, it goes into the company, the company then deploys it to increase the product's value in the world, then hopefully raise the stock price. [As to Tezos] … [i]s it worth a dollar each one or are they worth a hundred dollars each or a penny each?"  Kathleen Breitman responded: "So basically the way we set the rate, it was denominated in Bitcoin, so it was 5000 tokens per Bitcoin, and of course Bitcoin as we mentioned

---

[34] Fintech Podcast, Episode 138, *supra*.

[35] Irrera, *supra*.

earlier is quite volatile. So it depended when you contributed how much each thing is worth."[36]

95.     *Second*, Defendants made clear that, like other types of investment, the Tezos tokens were really a form of capital to be raised from investors to finance the development of the Tezos project.  On February 17-18, 2018, at the UCLA Blockchain Lab's Cyber Days conference, Kathleen Breitman referred to the issuance of Tezos tokens and stated: "we can use this as an ***alternative financing structure*** … [W]hen we were first looking at this … we thought in our worst case scenario if the foundation raises $5 million tokens and it can't even pay our developer salaries for 5 years, it might want to consider issuing more tokens at some point in the future in order to ***finance*** its activities. It looks less so like that's going to be an issue." (emphasis added).

96.     On March 13-15, 2018, at a Money20/20 Asia event held in Singapore, Kathleen Breitman was asked: "traditional VCs [venture capital] provides vetting mechanism, within the context of an ICO, who provides that vetting? and is that vetting adequate?"  Kathleen Breitman responded: "I think VCs are overrated, and what's kind of interesting about software projects that can now ***raise capital*** across the world is that you can actually prove the software yourself … you don't always get that opportunity with traditional VCs." (emphasis added).

97.     *Third*, as with other investments, participants in the Tezos ICO incurred a risk of loss on their investment.  Investors faced (and still face) a host of potential risks, such as the risk that the software and related technologies underlying Tezos have technical shortcomings; the risk that the technology is superseded by or otherwise rendered obsolete by some other blockchain technology; the risk that the blockchain industry demonstrates a lack of interest with Tezos, or that the Tezos project is otherwise commercially unsuccessful; the risk that the underlying software and technology is attacked by hackers; the risk that infighting or other corporate governance disputes cause(s) abandonment of the Tezos project or no Tezos tokens to be created, resulting in the loss of all investments; and the risk that legal and regulatory developments impede the development of Tezos or the trading of its tokens.  As evident in their communications and inquiries with Defendants,

---

[36] This Week In Startups, *Tezos Kathleen Breitman raises $232m top ICO for new self-governing smart contract blockchain*, YouTube (Sept. 1, 2017) https://www.youtube.com/watch?v=rdRSUJkvmxM at 19:30.

1  investors were concerned about these risks.  If the contributions of Tezos investors were truly

2  charitable "donations," investors would not have been be concerned with these risks, or indeed, any

3  risks at all.

4          98.     *Finally*, like the owners of shares in a company, the holders of Tezos tokens have the

5  right to vote.  As the Tezos Overview explained, other blockchains suffered from not having an "on-

6  chain mechanism to seamlessly amend the rules governing its protocol and explicitly fund protocol

7  development."[37]   Defendants sought to address this problem by "creating governance rules for

8  stakeholders to approve of protocol upgrades that are then automatically deployed on the network."[38]

9  As a result, "stakeholders" – holders of Tezos tokens – have the power to "vote[ ] on protocol

10  amendments."[39]  Similarly, according to the Tezos White Paper, "Tezos begins with a seed protocol

11  defining a procedure for stakeholders to approve amendments to the protocol, including amendments

12  to the voting procedure itself."  The white paper goes on to explain how "amendments [to Tezos] are

13  adopted over election cycles … [which] require[] a certain quorum to be met."  "This is known as

14  'approval voting,' a particularly robust voting procedure."

15          99.     These "voting" procedures are highly analogous to voting rights conferred on the

16  owners of equity shares (for example, for the election of boards of directors, and the approval of major

17  corporate transactions such as mergers and acquisitions), and confirm that Tezos tokens are in fact

18  "securities" in disguise.

19                  **2.      Investors In The Tezos ICO Made Their Investment With A**
                            **Reasonable Expectation Of Profits**
20

21          100.    Investors in the Tezos ICO, including Plaintiffs and the Class, made their investment

22  with a reasonable expectation of profits, as described below.

23          101.    *First*, Defendants themselves recognized, both implicitly and explicitly, that investors

24  in the Tezos ICO have a reasonable expectation of profit.  For example, the Tezos Overview document

25

26  [37] *Tezos Overview*, *supra*.

27  [38] *Id.*

28  [39] *Id.* at 4 (2.1 Governance).

acknowledges that each investor's interest is to have the value of the tokens increase – stating that the "central goal of the governance mechanism is to ***protect the interest of each token holder***," which means "favoring decisions that tend toward ***increasing the value of the tokens***."[40] (emphasis added).

102.    The Tezos Foundation's website also implicitly acknowledges that investors are interested in seeing a return on their investment, stating that the depression of prices "is obviously not in the best interest of contributors …."[41]

103.    *Second*, as alleged in Section IV.G.3 below, the contributions received from investors were being pooled and managed by Defendants (and specifically, the Tezos Foundation) to fund projects that would increase the adoption of the Tezos blockchain, thereby increasing the value of the Tezos protocol and Tezos tokens.

104.    *Third*, the early investors in Tezos (including some Defendants) openly stated that they were investing in Tezos in order to make a profit.  Defendants in turn actively promoted the Tezos ICO by touting these early backers of Tezos – including three hedge funds and seven high net-worth individuals "many of whom were also LPs of the hedge funds,"[42] thereby further stoking investors' expectations of profits.

105.    For example, in her February 17, 2017 interview with *Bitcoin Magazine*, discussing the Polychain Capital investment in Tezos, Kathleen Breitman noted "the ***anticipated appreciation of our token***."[43] (emphasis added).

106.    On May 5, 2017, Draper's announcement of his investment in the Tezos project caused an explosion of investor enthusiasm for the Tezos project.  On May 6, 2017, dozens of articles appeared promoting the Tezos project and extolling the value of Draper's financial backing.  For example, bitcoinist.com observed that "[w]ith Draper as a backer, the community will no doubt be

---

[40] *Id.* at 15 (6.1 Community Goals).

[41] *Diversifying the portfolio of the Tezos Foundation*, Tᴇᴢᴏs (July 17, 2017) https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html.

[42] *Tezos Overview, supra* at 9 (3.5 Early Backers)

[43] Campbell, *supra*.

1    eager to get on board this latest offering."[44]

2        107.    *Bitcoin News* reported that:

3            ***Draper rightly believes that by participating in the ICO, he will be setting an***
             ***example for rest of the investor community*** to follow the new age of
4            fundraising. These ICOs, also known as crowdsales are increasingly being
             used by the cryptocurrency platforms as a form of crowd fundraising ***where***
5            ***any interested party can buy the tokens in return for the investment made***
             ***into the platform and reap benefits from its success.*** Draper's participation in
6            the ICO will not only encourage others to take part in it, but it will also increase
             the chances of successful completion of many crowdsales. Investors can also
7            diversify their risk, keeping it to a minimum while having the tokens as
             collateral.[45]
8

9    (emphasis added).

10       108.    Arthur Breitman also commented in a Reddit post that "[t]he Tim Draper deal certainly

11   is behind a lot of this hype."[46]

12       109.    In October 2017, Draper acknowledged that he hopes to make himself and his

13   investors "rich" from investing in Tezos.[47]

14       110.    *Fourth*, Defendants capitalized on the widely-reported success and profits realized by

15   virtual currencies such as Bitcoin and Ethereum.  As *Reuters* and *CNBC* observed, "[i]nterest in these

16   deals has been stoked by the run-away performance of the original cyber currency, bitcoin."[48]

17       111.    In response to questions about speculators investing in the Tezos ICO, Defendant

18

19
_____

20   [44] Wilma Woo, *Cheers Again, Tim: 'World Improving' Tezos ICO Gets Draper Backing*,
     BITCOINIST (May 6, 2017), https://bitcoinist.com/cheers-tim-world-improving-tezos-ico-gets-
21   draper-backing/.

22   [45] *Tim Draper to Back Tezos Cryptocurrency ICO,* NEWSBTC (May 6, 2017),
     http://www.newsbtc.com/2017/05/06/tim-draper-tezos-ico/.

23   [46] Murbard, Comment to *Why is Tezos so hyped up?,* REDDIT (May 30, 2017),
24   https://www.reddit.com/r/tezos/comments/6df26x/why_is_tezos_so_hyped_up/.

25   [47] Cinerama, *Tim Draper: There Was Nothing Secretive About Our Purchase of Tezos* (Oct. 23,
     2017) BITCOIN ISLE, https://www.bitcoinisle.com/2017/10/23/tim-draper-there-was-nothing-
26   secretive-about-our-purchase-of-tezos/.

27   [48] Gertrude Chavez-Dreyfuss, *supra*, and *Billionaire bitcoin enthusiast Tim Draper is backing a
     new cryptocurrency for the first time,* CNBC (May 5, 2017),
28   https://www.cnbc.com/2017/05/05/billionaire-investor-tim-draper-backs-new-cryptocurrency.html.

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

Kathleen Breitman responded:

> It's tough. **We didn't do much marketing outside of the U.S.** Well rather Arthur and I are based in the U.S. and **we talk about the technology in mainstream U.S. press outlets** and sometimes it's picked up in Asian outlets. We mostly have just been evangelizing about the technology. **But certainly there are a lot of people who are interested in the more speculative aspects. I think there's a lot of fervor and froth in the marketplace right now**. That does make it a bit odd to launch something that's more community-based on some level when **there's a lot of people who are just profit-seeking. I suppose I do worry but ultimately we're appealing to people's rational self-interest**. So at the end of the day I hope that the proper incentives will align themselves.[49]

(emphasis added).

112.   On September 1, 2017, during the Calacanis Interview, when asked why investors contributed $232 million (at July 2017 valuations), Kathleen Breitman stated: "Bear in mind that a lot of things changed with the price of bitcoin going up so high … so the price of bitcoin skyrocketing over the last 6 to 8 months has basically changed a lot of the conversations."  She added that "the narrative and what we saw with ethereum [skyrocketing in price] helped out with the pitch" to investors.[50]  According to Kathleen Breitman, "[w]hen the white paper for Tezos was released in 2014, no one gave a damn ... and we're very fortunate that the market timing worked out."[51]

113.   *Finally,* in their inquiries and other statements, Tezos investors frankly acknowledged their profit motive and focused on the potential profits from investing in Tezos, and whether these tokens would be tradeable on an exchange.

114.   During the May 11, 2017 AMA in the Reddit sub-forum r/Ark, a user asked: "Is there already some plan or future business relationship with merchants, exchanges or anything that Tezos could be used as a payment method? Anything you want to share already?"  Kathleen Breitman, as "breitwoman" responded:

> **We've been talking to two exchanges for several months. I'm pretty confident Tezos won't have trouble on that front.** I have two partnerships in the works

---

[49] Alice Lloyd George, *Behind the scenes with Tezos, a new blockchain upstart*, TECHCRUNCH (July 12, 2017), https://techcrunch.com/2017/07/12/behind-the-scenes-with-tezos-a-new-blockchain-upstart/.

[50] Calacanis Interview, *supra*, at 25:40, 28:30.

[51] *Id.* at 40:30.

that I'm excited about but shouldn't discuss yet.  (emphasis added).

115.    During the Calacanis Interview on September 1, 2017, Jason Calacanis asked a question sent in by a listener: "How will people who have Tezos … be able to liquidate them and get cash if they want to?"  Kathleen Breitman responded: "exchanges typically list these tokens, and there are many pairings."  She noted "*these things [Tezos tokens] are digital bearer assets.*"[52]

116.    On October 18, 2017, *Reuters* published an article about Tezos, in which it discussed whether the Tezos tokens were securities.[53]  *Reuters* interviewed Kevin Zhou, the co-founder of the cryptocurrency trading fund, Galois Capital.  Mr. Zhou said that he invested about five Bitcoin in Tezos, which he considered overall one of the better ICOs.  *Reuters* quoted Mr. Zhou as stating: "*For me and for a lot of people this is an investment. We are looking for a return*."

### 3.    The Success Of The Tezos Project Requires The Technical, Entrepreneurial And Managerial Efforts Of Defendants And Others

117.    Plaintiffs and the Class have entirely passive roles vis-à-vis the success of the Tezos project.  The success of the Tezos project, and the profits reasonably expected by the Class to be derived from the project, are dependent solely on the entrepreneurial and managerial efforts of Defendants.

118.    From the outset, it was the Defendants who set up DLS to develop the software for the Tezos project, who established the Tezos Foundation, and who chose the Foundation's directors, and all persons critical to Tezos's success.  Plaintiffs and the Class reasonably expected Defendants to provide significant managerial efforts, to develop and complete the Tezos blockchain, to develop and sustain a supportive network after its launch, and to secure an exchange through which the tokens could be traded or liquidated.  Through their conduct and marketing materials, Defendants repeatedly represented that they would be relied upon to provide the significant managerial efforts required to achieve these objectives and make Tezos a success.

---

[52] *Id.* at 42:30, 43:40.

[53] *Irrera*, *supra* (emphasis added).

119.    Tezos investors rely on the Tezos Foundation because it has "the responsibility of financing the development of the Tezos ecosystem."[54]   The Tezos Overview states that "[t]he Foundation will have the discretion to pay for services it believes will benefit the promotion of the Tezos protocol."[55]   The Tezos Overview proceeds to describe the various positions and roles for which the Tezos Foundation will hire employees to develop, complete, maintain, and promote the Tezos network, including employees in the fields of engineering, research, marketing, legal, business development, and education.  The Tezos Overview identifies a set of "Development Goals," involving security, scaling, privacy, usability, and features.   The Tezos Overview states that it is the "development team [who] will pursue all five goals somewhat in parallel but not with the same priority."[56]

120.    The Tezos Overview also identified a number of development projects, depending on the level of success of the Tezos ICO and the amount raised.  For example, under the "moonshot" scenario (where $10 to $15 million was raised in the ICO), the Tezos Foundation would: "[h]ire talented teams of engineers and designers to build direct consumer applications through strategic acquisition of tech companies"; "[o]ffer competitive salaries to attract experts on formal verification to work exclusively on the protocol [and] [s]et up an institution a la IC3 in Europe"; "[s]ponsor an online magazine"; "[l]obby municipalities and local governments to use formally verified smart contracts as a form of binding legal contract"; and "[p]urchase a banking license and deploy the Tezos blockchain as a backbone for business operations."[57]   Under the "Mars-Shot" scenario (where the ICO raised more than $20 million), the Tezos Foundation would "[d]eploy and silo several teams of engineers to build different candidates for upgrades"; "[s]ponsor a leading computer science department with endowed professorships and extensive grants to graduate students in the field of formal verification"; "[a]cquire mainstream print and TV media outlets to promote and defend the

---

[54] ArthurB, *The Path Forward*, MEDIUM (Oct. 18, 2017), https://medium.com/@arthurb/the-path-forward-eb2e6f63be67 (emphasis added).

[55] *Tezos Overview*, *supra*, at 13.

[56] *Id.* at 16, Development Goals.

[57] *Id.* at 18-19.

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

use of cryptographic ledger in society"; "[f]und efforts to digitize and map transaction logic from traditional legal prose to a Tezos language"; "[r]un a development school with emphasis on functional programming and safe smart contract construction"; and "[n]egotiate with a small nation-state the recognition of Tezos as one of their official state currencies."

121.    Consistent with these objectives, on August 10, 2017, after the success of the Tezos ICO, the Tezos Foundation announced a "commitment of $50 million in funding to companies looking to build on the Tezos platform."

122.    Tezos investors also rely on the expertise of DLS and the Breitmans, who were and will be critical to developing and completing the Tezos network, monitoring operation of the network, providing network security, promoting the network, safeguarding investor funds, and developing Tezos software.  Indeed, the Breitmans have repeatedly represented to Plaintiffs and the Class that they are experts in blockchain technology and Tezos, that they are busy working on the development of the project, and that the personal efforts of Arthur Breitman are critical to the success of the Tezos project.  Therefore, investors reasonably expected that, without the coding acumen and vision of Arthur Breitman and his team, the Tezos product could not succeed.

123.    For example, in July 2017, Arthur Breitman posted on Reddit that no development had been done on the Tezos blockchain because "the fundraiser application took us two months of work."[58]

124.    In an October 18, 2017 article on medium.com, Arthur Breitman claimed that:

> ***The momentum we had prior to the fundraiser has slowed despite the resources now available for supporting the project***. Some development has continued and we have ***personally been working*** to create strong relationships with successful entrepreneurs looking to build with Tezos. Unfortunately, ***other aspects have fallen behind, such as***:
>
> • Creating online resources for contributors and developers to learn more about Tezos.

---

[58] Murbard, *Tezos source repository hasn't been touched in over 2 months…why? No development, no commits ?*, REDDIT (July 30, 2017), https://www.reddit.com/r/tezos/comments/6lf03x/tezos_source_repository_hasnt_been_touched_in/.

- ***Scaling up the development team.***

- Articulating our vision for the project more clearly through a series of explanatory blog posts, as we used to produce.

- Engaging with the community of Tezos contributors and makers, and helping them in their endeavors.[59]

(emphasis added).

125.    In this manner, Plaintiffs and the Class rely entirely on the technical, managerial and entrepreneurial expertise and efforts of Defendants and employees hired by them.

### 4.    The Contribution Terms Do Not Alter The Substance And Economic Reality Of The Tezos ICO

126.    On a separate website, tezos.ch, Defendants posted a document called "Contribution Terms."   Through the Contribution Terms document, Defendants attempted to disclaim any obligations whatsoever to Plaintiffs and the Class.  This document stated that invested Bitcoin and Ethereum constitute "a non-refundable donation" and not an "investment."  The Contribution Terms stated that Defendants have no obligation to ever actually allocate Tezos tokens to Plaintiffs and the Class, and that the project "could be fully or partially abandoned" without recourse whatsoever.  Thus, according to the document, Plaintiffs and the Class could receive absolutely nothing in exchange for the $232 million (at July 2017 prices) in Bitcoin and Ethereum invested in the Tezos ICO.

127.    The Contribution Terms and its characterizations do not change the substance or economic reality of the Tezos ICO, which was an offer and sale of a security.  Further, the Contribution Terms were not posted on the tezos.com website, which participants in the Tezos ICO had to access to make their investments.  Instead, the Contribution Terms were posted on a separate website, tezos.ch, which was not referenced on the tezos.com website; were not incorporated by reference therein; were not displayed to investors accessing the Tezos ICO website; and were not otherwise made a part of the Tezos ICO contribution process.  As such, the Contribution Terms provide no contractual or other legal basis to govern the relations between Defendants, on the one hand, and Plaintiffs and the Class, on the other.

---

[59] ArthurB, *The Path Forward*, *supra*.

1

### H.   EVENTS SUBSEQUENT TO THE ICO

2   128. Between August and October 2017, few updates were given on the Tezos project.

3  Then on October 18, 2017, it was revealed that infighting amongst the Defendants and the directors

4  of the Tezos Foundation threatened to derail the Tezos project.

5   129. On October 18, 2017, the Breitmans posted an open letter on www.medium.com.  The

6  letter explained that the Tezos ledger was still in its alpha stage, and would not be rolled out before

7  February 2018 or "when it's ready."  Moreover, the project was experiencing serious corporate

8  governance problems.  The Breitmans noted that "despite the resources," Tezos has been unable to

9  "scale the development team," (*i.e.*, recruit people to the project).  The letter described material

10  disputes between the Breitmans and the Tezos Foundation's President, Johann Gevers, that were

11  endangering the viability of the Tezos project.[60]

12  ## V. CLASS ALLEGATIONS

13   130. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the

14  Federal Rules of Civil Procedure on behalf of the following Class of persons:

15
16
> All persons and entities who, directly or indirectly through an intermediary, contributed Bitcoin and/or Ethereum to the Tezos Initial Coin Offering conducted in July 2017.

17
18  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19   131. Plaintiffs reserve the right to amend the Class definition if further investigation and/or

20  discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

21   132. Upon information and belief, there were 30,317 investors in the Tezos ICO who

22  contributed Bitcoin and/or Ethereum.  The number of individuals and entities who comprise the Class

23  are so numerous that joinder of all such persons is impracticable and the disposition of their claims

24  in a class action, rather than in individual actions, will benefit both the parties and the courts.  Class

25  members may be identified from records maintained by Defendants, and may be notified of the

26  pendency of this action by mail or electronic mail using the form of notice similar to that customarily

27

28  ---
[60] *Id.*

1    used in securities class actions.

2        133.   Plaintiffs' claims are typical of the claims of the other members of the Class.  All

3    members of the Class have been and/or continue to be similarly affected by Defendants' wrongful

4    conduct as complained of herein, in violation of federal law.  Plaintiffs are unaware of any interests

5    that conflict with or are antagonistic to the interests of the Class.

6        134.   Plaintiffs will fairly and adequately protect the Class members' interests and have

7    retained counsel competent and experienced in securities class actions and complex litigation.

8    Plaintiffs and their counsel will adequately and vigorously litigate this class action, and Lead Plaintiff

9    is aware of his duties and responsibilities to the Class.

10       135.   Defendants have acted with respect to the Class in a manner generally applicable to

11   each Class member.   Common questions of law and fact exist as to all Class members and

12   predominate over any questions affecting individual Class members.  The questions of law and fact

13   common to the Class include, *inter alia*:

14           a.   Whether the offer of the Tezos tokens through the Tezos ICO constituted the sale

15               or offer of "securities";

16           b.   Whether Defendants were required to file a registration statement for the Tezos

17               ICO;

18           c.   Whether Defendants are "issuers," "underwriters" and/or "necessary participants"

19               in the Tezos securities offering;

20           d.   Whether Defendants Arthur Breitman, Kathleen Breitman, Draper and Draper

21               Associates Crypto are "control persons" under the Securities Act;

22           e.   Whether the federal securities laws were violated by Defendants' acts and

23               omissions as alleged herein; and

24           f.   Whether Plaintiffs and the Class are entitled to rescission, damages, or restitution,

25               and the proper calculation and amount of those damages.

26       136.   A class action is superior to all other available methods for the fair and efficient

27   adjudication of this controversy since joinder of all Class members is impracticable.  Furthermore, as

28   the injury and/or damages suffered by individual Class members may be relatively small, the expense

36

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

and burden of individual litigation makes it impossible as a practical matter for Class members to individually redress the wrongs done to them.  There will be no difficulty in managing this action as a class action.

137.    Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## VI.    CAUSES OF ACTION

### FIRST COUNT

### VIOLATION OF SECTIONS 5 AND 12(a)(1) OF THE SECURITIES ACT
**(Against All Defendants)**

138.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

139.    This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1), on behalf of the Class, against Defendants DLS, the Tezos Foundation, the Breitmans, Timothy Draper, Draper Associates Crypto and Bitcoin Suisse.

140.    Tezos tokens are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

141.    Defendants, and each of them, promoted, offered and/or sold securities through the Tezos ICO.

142.    Defendants, and each of them, are issuers, underwriters, and/or necessary participants of/in the Tezos ICO.

143.    No Defendant or other person filed with the SEC a registration statement for the offer and sale of Tezos securities through the Tezos ICO, no registration statement was in effect at the time of the Tezos ICO, and no exemption to the registration requirement was available.

144.    Defendants, and each of them, used the instrumentalities of interstate commerce in connection with the offer and sale of Tezos securities.

## SECOND COUNT

### VIOLATION OF SECTION 15 OF THE SECURITIES ACT
(**Against Arthur Breitman, Kathleen Breitman,
Timothy Draper and Draper Associates Crypto**)

145.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, except any allegation of fraud, recklessness or intentional misconduct.

146.     This Count is asserted against Defendants Arthur Breitman, Kathleen Breitman, Timothy Draper and Draper Associates Crypto (collectively, the "Control Person Defendants") under Section 15 of the Securities Act, 15 U.S.C. § 77o.

147.     The Control Person Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts were, at the time of the wrongs alleged herein, and as set forth herein, controlling persons within the meaning of Section 15 of the Securities Act.  The Control Person Defendants, and each of them, had the power and influence and exercised the same to cause the unlawful offer and sale of Tezos securities as described herein.

148.     The Control Person Defendants, separately or together, possess, directly or indirectly, the power to direct or cause the direction of the management and policies of DLS and/or the Tezos Foundation, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

149.     The Control Person Defendants, separately or together, have sufficient influence to have caused DLS and/or the Tezos Foundation to submit a registration statement.

150.     The Control Person Defendants, separately or together, jointly participated in, and/or aided and abetted, DLS and/or the Tezos Foundation's failure to register the Tezos ICO.

151.     By virtue of the conduct alleged herein, the Control Person Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiffs and the Class for rescission and/or damages suffered.

//

//

//

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

A.   Declaring that this action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives and their counsel as Counsel for the Class;

B.   Declaring that Defendants offered and sold unregistered securities in violation of Sections 5, 12(a)(1) and 15 of the Securities Act;

C.   Awarding Plaintiffs and the members of the Class the remedy of rescission of their investment in the Tezos ICO including appreciation of the contributed Bitcoin and Ethereum (which includes forks of Bitcoin occurring after July 14, 2017), and/or awarding compensatory damages in favor of Plaintiffs and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

D.   Requiring an accounting of all remaining assets and funds raised by Defendants under the Tezos ICO;

E.   Imposing a constructive trust over the assets and funds raised by Defendants under the Tezos ICO;

F.   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including Plaintiffs' attorneys' fees and expert fees; and

G.   Granting such other and further relief as this Court may deem just and proper.

//
//
//
//
//
//
//
//

1  **VIII.  JURY TRIAL DEMAND**

2         Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury in this action of all

3  issues so triable.

4

5   Date: November 12, 2018

6                                                   LTL ATTORNEYS LLP

7
                                          By:  *s/Hung G. Ta*
8                                               _____
                                                Hung G. Ta
9                                               JooYun Kim
                                                Natalia D. Williams
10                                              HUNG G. TA, ESQ., PLLC
                                                250 Park Avenue, 7th Floor
11                                              New York, New York 10177
                                                Tel: 646-453-7288
12                                              Fax: 646-453-7289
                                                hta@hgtlaw.com
13                                              jooyun@hgtlaw.com
                                                natalia@hgtlaw.com
14

15                                              Enoch H. Liang
                                                LTL ATTORNEYS LLP
16                                              601 Gateway Boulevard, Suite 1010
                                                South San Francisco, California 94080
17                                              Tel:  650-422-2130
                                                Fax:  213-612-3773
18                                              enoch.liang@ltlattorneys.com

19
                                                James M. Lee
20                                              Caleb H. Liang
                                                LTL ATTORNEYS LLP
21                                              300 S. Grand Ave., 14th Floor
                                                Los Angeles, California 90071
22                                              Tel:  213-612-8900
                                                Fax:  213-612-3773
23                                              james.lee@ltlattorneys.com
                                                caleb.liang@ltlattorneys.com
24

25                                              *Lead Counsel for Court-Appointed Lead*
                                                *Plaintiff and the Class*
26

27

28

1
2
3
4

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

5
6
7
8
9
10

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg@litedepalma.com

11

*Additional Counsel for the Class*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
CLASS ACTION MASTER FILE NO. 17-CV-06779-RS

## CERTIFICATION OF ARMAN ANVARI

I, Arman Anvari, certify as follows:

1.      I have reviewed the accompanying Consolidated Class Action Complaint against Dynamic Ledger Solutions, Inc., Tezos Stiftung, Kathleen Breitman, Arthur Breitman, Timothy Cook Draper, Draper Associates and Bitcoin Suisse AG, and authorize its filing.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transactions in Tezos tokens, which are the subject of this action are as follows:

| Contribution | Contribution Date | Amount of Tezos Promised | Price Per Tezos Token |
|---|---|---|---|
| 250 ETH | July 8, 2017 | 133,608.75 | 0.00187 ETH |

5.      I have not sought to serve, and have not served, as a representative party for a class action filed under the federal securities laws within the last three years.

6.      I will not, either directly or indirectly, accept any payment for serving as a representative party on behalf of the class beyond my *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of April 2018 in Chicago, Illinois.

_____
ARMAN ANVARI