**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No.  17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| ALL ACTIONS. | |
| | Date:    April 24, 2019 |
| | Time:    1:30 p.m. |
| | Crtrm:    3 |
| | Judge:   Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ................................................................................................. iii

TABLE OF ABBREVIATIONS ......................................................................................... viii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS COMMON TO THE CLASS ......................................................1

ARGUMENT ..........................................................................................................................3

I.      THE PROPOSED CLASS REPRESENTATIVES .....................................................3

II.     THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS
        CERTIFICATION UNDER RULE 23 ........................................................................3

        A.      The Proposed Class Satisfies Rule 23(a) ........................................................4

                1.      The Proposed Class Is So Numerous That Joinder Is Impracticable ...............4

                2.      There Are Common Questions Of Law And Fact ...........................................5

                3.      The Proposed Class Representatives' Claims Are Typical Of Those Of
                        the Class ........................................................................................................5

                4.      The Proposed Class Representatives Will Fairly And Adequately
                        Protect The Interests Of The Class ................................................................6

        B.      The Proposed Class Satisfies The "Predominance" Requirement For Class
                Certification Under Rule 23(b)(3) ...................................................................7

                1.      Whether The Tezos Tokens Are Securities ....................................................8

                2.      Whether Defendants Are "Sellers" Under Section 12(a)(1) .........................11

                3.      Whether The Breitmans Are Controlling Persons Under Section 15 .............13

                4.      The Contribution Terms Do Not Raise Individual Issues ..............................14

                5.      Whether The Securities Act Applies Under *Morrison* Raises Common
                        Questions .....................................................................................................17

                6.      The Class's Remedies Of Rescission And Damages Do Not Present
                        Any Individualized Issues.............................................................................20

        C.      The Proposed Class Satisfies The "Superiority" Requirement For Class
                Certification Under Rule 23(b)(3) .................................................................22

i

III.     LTL AND HGT LAW SHOULD BE APPOINTED AS CLASS COUNSEL ......................25

CONCLUSION...........................................................................................................................25

ii

# TABLE OF AUTHORITIES

**Page No(s).**

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
   677 F.3d 60 (2d Cir. 2012) ................................................................................................. 18

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................................... 7

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ...................................................................................................... 4, 8

*Amtower v. Photon Dynamics, Inc.,*
   158 Cal. App. 4th 1582 (2008) ......................................................................................... 15

*Arellano v. Kellermeyer Bldg. Servs., LLC,*
   2014 U.S. Dist. LEXIS 168986 (S.D. Cal. Dec. 5, 2014) ................................................. 24

*Basile v. Valeant Pharm. Int'l., Inc.,*
   2017 U.S. Dist. LEXIS 37400 (C.D. Cal. Mar. 15, 2017) ................................................... 5

*Bowerman v. Field Asset Servs., Inc.,*
   242 F. Supp. 3d 910 (N.D. Cal. 2017) ............................................................................. 24

*Briseno v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017) ......................................................................................... 24

*Brodt v. Bache & Co., Inc.,*
   595 F.2d 459 (9th Cir. 1978) ............................................................................................. 9

*Chan v. Drexel Burnham Lambert, Inc.,*
   178 Cal. App. 3d 632 (1986) ........................................................................................... 14

*Conmar Corp. v. Mitsui & Co. (U.S.A.),*
   858 F.2d 499 (9th Cir. 1988) ........................................................................................... 17

*Datta v. Asset Recovery Sols., LLC,*
   2016 U.S. Dist. LEXIS 36446 (N.D. Cal. Mar. 18, 2016) ................................................ 24

*Erica P. John Fund, Inc., v. Halliburton Co.,*
   563 U.S. 804 (2011) ........................................................................................................... 7

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 6, 8

*Hatamian v. Advanced Micro Devices, Inc.,*
   2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016) ............................................ 4, 24

iii

*Hocking v. Dubois*,
   885 F.2d 1449 (9th Cir. 1989) (*en banc*), *cert. denied*, 494 U.S. 1078 (1990) ............................... 9

*Howard v. Everex Sys.*,
   228 F.3d 1057 (9th Cir. 2000) .................................................................................................. 13

*In re Celera Corp. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 25098 (N.D. Cal. Feb. 25, 2014) ........................................................ 6

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
   2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013).................................................... 22

*In re Cooper Cos. Sec. Litig*,
   254 F.R.D. 628 (C.D. Cal. 2009).......................................................................................... 22

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016)................................................................................ 14

*In re LendingClub Secs. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017)......................................................................... 6, 7, 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) .................................................................................. 23

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) ....................................................... 7

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) ................................................................................................ 17

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................................... 22

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ................................................................................................. 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   214 F.R.D. 614 (W.D. Wash. 2003) ..................................................................................... 23

*In re Portal Software Sec. Litig.*,
   2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ....................................................... 5

*In re Verisign Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ...................................................... 22

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ............................................................................................ 4, 6

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ................................................................................................. 17

iv

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................................. 17

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ........................................................................................................ 17

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................................ 14, 16, 17

*Nguyen v. Radient Pharm. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ...................................................................................... 4

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) .................................................................................... 17

*Parra v. Bashas', Inc.*,
    291 F.R.D. 360 (D. Ariz. 2013) ...................................................................................... 23

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ........................................................................................ 5, 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .................................................................................................... 4, 23

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ......................................................................................... 11, 12, 21

*Rodman v. Safeway Inc.*,
    2015 U.S. Dist. LEXIS 17523 (N.D. Cal. Feb. 12, 2015) .............................................. 15

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ................................................................................................. 2, 8, 9

*SEC v. Glenn W. Turner Enters., Inc.*,
    474 F.2d 476 (9th Cir. 1973) .......................................................................................... 10

*SEC v. R.G. Reynolds Enters.*,
    952 F.2d 1125 (9th Cir. 1991) ................................................................................. 8, 9, 10

*SEC v. Shavers*,
    2013 U.S. Dist. LEXIS 110018 (E.D. Tex. Aug. 6, 2013) ............................................... 9

*SEC v. Straub*,
    2016 U.S. Dist. LEXIS 136841 (S.D.N.Y. Sep. 30, 2016) ............................................. 13

*Solis v. Latium Network, Inc.*,
    2018 U.S. Dist. LEXIS 207781 (D. N.J. Dec. 10, 2018) ............................................. 2, 9

*Speaks v. U.S. Tobacco Coop., Inc.*,
    324 F.R.D. 112 (E.D.N.C. 2018) .................................................................................... 24

v

*Specht v. Netscape Communs. Corp.*,
   306 F.3d 17 (2d Cir. 2002) ................................................................................................. 16, 17

*St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*,
   2014 U.S. Dist. LEXIS 70785 (N.D. Cal. May 21, 2014) ................................................. 15

*Stafford v. Brink's, Inc.*,
   2015 U.S. Dist. LEXIS 191825 (C.D. Cal. Dec. 1, 2015) ................................................. 11

*Stoyas v. Toshiba Corp*,
   896 F.3d 933 (9th Cir. 2018) ......................................................................................... 17, 18

*Toney v. Quality Res., Inc.*,
   323 F.R.D. 567 (N.D. Ill. 2018) ....................................................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................................. 7, 8

*U.S. v. Zaslavskiy*,
   2018 U.S. Dist. LEXIS 156574 (E.D.N.Y. Sep. 11, 2018) ................................................. 9

*U.S. v. Zaslavskiy*,
   2018 U.S. Dist. LEXIS 156574 (E.D.N.Y. Sep. 11, 2018) ................................................. 2

*United Housing Foundation, Inc. v. Forman*,
   421 U.S. 837 (1975) ..................................................................................................... 9, 10

*Uselton v. Comm. Lovelace Motor Freight, Inc.*,
   940 F.2d 564 (10th Cir. 1991) .......................................................................................... 9

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ........................................................................................... 23

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ......................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................... 7, 22

*Warfield v. Alaniz*,
   569 F.3d 1015 (9th Cir. 2009) ......................................................................................... 10

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ......................................................................................... 23

## STATUTES

15 U.S.C. § 77b(a)(1) ......................................................................................................... 8

15 U.S.C. § 77l(a)(1) ............................................................................................. 11, 20, 21

15 U.S.C. §77o............................................................................................................... 13

## OTHER AUTHORITIES

*Committee Notes* 2018 Amendment Fed. R. Civ. P. 23 ................................................... 25

*In the Matter of CarrierEQ, Inc., d/b/a AirFox*,
    Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities
    Act of 1933, Making Findings, And Imposing Penalties and a Cease-and-Desist Order,
    SEC Release No. 10575, November 16, 2018 ................................................................. 2

*In the Matter of Paragon Coin, Inc.*,
    Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities
    Act of 1933, Making Findings, And Imposing Penalties and a Cease-and-Desist Order,
    SEC Release No. 10574, November 16, 2018 ................................................................. 2

Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The
    DAO, SEC (July 25, 2017) .............................................................................................. 2

## RULES

Fed. R. Civ. P. 23(a)(1) .................................................................................................... 4

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 5

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 5

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 6

Fed. R. Civ. P. 23(b)(3) ................................................................................. 1, 4, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................. 25

Fed. R. Civ. P. 23(g)(1) .................................................................................................. 25

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................ 25

## REGULATIONS

17 C.F.R. § 230.405 ........................................................................................................ 13

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
| --- | --- |
| "¶ [No.]" | Paragraph references to Lead Plaintiff's Consolidated Complaint, filed April 3, 2018 (Dkt. No. 108) as amended pursuant to stipulation and order, entered November 21, 2018 (Dkt. No. 183) and stipulation and order, entered January 7, 2019 (Dkt. No. 186) |
| "Bitcoin Suisse" | Bitcoin Suisse AG |
| "Breitmans" | Defendants Arthur Breitman and Kathleen Breitman |
| "Class" | All persons and entities who, directly or indirectly, contributed Bitcoin or Ethereum to the Tezos Initial Coin Offering conducted in July 2017.  Excluded from the Class are Defendants, and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant. |
| "Complaint" | Lead Plaintiff's Consolidated Complaint, filed April 3, 2018 (Dkt. No. 108) as amended pursuant to stipulation and order, entered November 21, 2018 (Dkt. No. 183) and stipulation and order, entered January 7, 2019 (Dkt. No. 186) |
| "Defendants" | Defendants Tezos Foundation, DLS and the Breitmans |
| "DLS" | Defendant Dynamic Ledger Solutions, Inc. |
| "Draper" | Timothy C. Draper |
| "Draper Associates Crypto" | Draper Associates V Crypto LLC |
| "Ex. ___" | All "Ex. __" citations refer to exhibits to the Declaration of Hung G. Ta, dated January 9, 2019, unless stated otherwise. |
| "Frunze" | Plaintiff Artiom Frunze |
| "MTD Decision" | Court's Order on Defendants' Motions to Dismiss, filed August 8, 2018 (Dkt. No. 148) |
| "Plaintiffs" | Plaintiffs Frunze and Pumaro |
| "Pumaro" | Plaintiff Pumaro LLC |
| "SEC" | U.S. Securities and Exchange Commission |
| "Securities Act" | Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* |
| "Ta Decl." | Declaration of Hung G. Ta, dated January 9, 2019. |
| "Tezos Foundation" or "Foundation" | Defendant Tezos Stiftung |
| "Tezos ICO" | Tezos Initial Coin Offering conducted in July 2017 |
| "Tezos MTD Br." | Defendant Tezos Foundation's Motion to Dismiss the Consolidated Complaint, filed May 15, 2018 (Dkt. No. 119) |

Named plaintiffs Artiom Frunze and Pumaro LLC (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Class Certification and request that, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), the Court certify this case as a class action, appoint Plaintiffs as Class Representatives, and appoint LTL Attorneys LLP ("LTL") and Hung G. Ta, Esq. PLLC ("HGT Law") as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## PRELIMINARY STATEMENT

Plaintiffs seek certification of this action as a class action on behalf of the following Class:

> All persons and entities who, directly or indirectly, contributed Bitcoin or Ethereum to the Tezos Initial Coin Offering conducted in July 2017. Excluded from the Class are Defendants, and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

As set forth below, certification is appropriate because the requirements of Rule 23(a) are satisfied, common issues of law or fact predominate over any questions affecting only individual members, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Accordingly, Plaintiffs respectfully request appointment of Plaintiffs as Class Representatives, and LTL and HGT Law as Class Counsel.

## STATEMENT OF FACTS COMMON TO THE CLASS

This is a securities class action brought on behalf of all investors who invested Bitcoin or Ethereum in the Tezos ICO conducted in July 2017. ¶ 1. The Complaint asserts claims against Defendants Tezos Foundation, Arthur Breitman, Kathleen Breitman and DLS for violations of Sections 5, 12(a)(1) and 15 of the Securities Act.

From July 1, 2017 through July 14, 2017, Defendants jointly conducted the Tezos ICO for Tezos tokens. While the Tezos Foundation issued the Tezos tokens to investors, the marketing and execution of the Tezos ICO was performed almost entirely by the Breitmans. ¶¶ 48-58.

To make their investments, investors accessed a portal that was part of the tezos.com website – crowdfund.tezos.com – and input the amount of Bitcoin and Ethereum that they sought to invest. That amount was deducted from investors' digital wallets and sent to the digital addresses for the

Tezos Foundation's Bitcoin and Ethereum wallets.  ¶¶ 71-73.  In this manner, the investments were effectuated and recorded on the blockchain networks underlying Bitcoin and Ethereum.

The Bitcoin and Ethereum blockchains are maintained by various participants on a network of computers ("nodes") spread around the globe.  ¶¶ 27-28.  According to publicly available data, the U.S. has the most Bitcoin and Ethereum nodes of any country.  ¶ 29.[1]  For a transaction to occur and be valid on the blockchain, all network participants must first reach a "distributed consensus" on the validity of the transaction.  Once a transaction is validated on the blockchain, the transaction (such as the payments made by investors to the Tezos Foundation in the Tezos ICO) cannot be canceled, reversed, or altered in any way.  ¶ 30.

The Tezos ICO attracted 30,317 investors, who contributed 65,681 Bitcoin (62.5% of total contributions) and 361,122 Ethereum (37.5% of total).  Ex. A, July 24, 2017 Tezos Foundation Update at 2.  The value of the funds raised was approximately $232 million as of July 2017.  ¶¶ 2, 39-45.

The Tezos ICO was an illegal, unregistered offering and sale of a security – specifically, an "investment contract" as defined under Section 2(a)(1) of the Securities Act.  15 U.S.C. § 77b(a)(1).  An investment contract is "an investment of money in a common enterprise with profits to come solely from the efforts of others."  *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).  Here, like other offerings that have been held by the SEC and federal courts to constitute the sale of securities,[2] the Tezos tokens had all the hallmarks of a security:

- Defendants made clear that the Tezos ICO was intended to raise capital to finance the development of the Tezos project.  *See* Ex. B, Tezos Overview, at 13-19.

- Defendants made numerous statements in which they conceded that they were actually

---

[1]    *See* https://bitnodes.earn.com/ and https://www.ethernodes.org/network/1.  These sites show that as of January 8, 2019, the U.S. is the country with the most Bitcoin nodes (24.37%) and Ethereum nodes (40.62%).

[2]    *See* Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, SEC (July 25, 2017) ("DAO Report"); *In the Matter of CarrierEQ, Inc., d/b/a AirFox*, Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, SEC Release No. 10575, November 16, 2018; *In the Matter of Paragon Coin, Inc.*, Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, SEC Release No. 10574, November 16, 2018 ; *U.S. v. Zaslavskiy*, 2018 U.S. Dist. LEXIS 156574 (E.D.N.Y. Sep. 11, 2018); *Solis v. Latium Network, Inc.*, 2018 U.S. Dist. LEXIS 207781 (D. N.J. Dec. 10, 2018).

selling the Tezos tokens to investors as an investment.  ¶¶ 87-93.  For example, Kathleen Breitman referred to the "anticipated appreciation of our token." ¶¶ 88, 104.

- Defendants marketed the Tezos tokens not to potential users of the Tezos ecosystem (which did not exist at the time of the Tezos ICO and was still under development), but to cryptocurrency speculators and investors.  For example, between September 2016 and March 2017, DLS conducted a private pre-sale of the Tezos tokens to three crypto-token focused hedge funds and seven high net worth individuals, raising approximately $612,000.  According to Kathleen Breitman, these early investors got a slight discount. *See* May 2017 Reddit Thread, Ex. C at DLS00000413.

- The Tezos ICO incentivized investors by rewarding them with more bonus tokens the earlier they committed their investment in the Tezos ICO. ¶ 43.  Such bonuses would have been unnecessary if investors were not meant to profit from the Tezos tokens.

- Through their conduct and marketing materials, Defendants repeatedly represented that they and their agents would provide the significant managerial efforts required to make Tezos a success.  For example, the Tezos Overview identifies a set of "Development Goals," involving security, scaling, privacy, usability, and features.  The Tezos Overview states that it is the "development team [who] will pursue all five goals."[3]  The Tezos Overview describes how the Tezos Foundation will hire employees to develop, complete, maintain, and promote the Tezos network, including employees in the fields of engineering, research, marketing, legal, business development, and education.

## ARGUMENT

### I.    THE PROPOSED CLASS REPRESENTATIVES

Plaintiff Artiom Frunze ("Frunze") is an individual who invested 238 Ethereum in the Tezos ICO and was promised delivery of 165,607.39 Tezos tokens.  ¶ 14b; Ex. D, Declaration of Artiom Frunze.

Plaintiff Pumaro LLC ("Pumaro") is a Texas limited liability company that invested 1.9 Bitcoin in the Tezos ICO.  Pumaro was promised delivery of 11,400 Tezos tokens.  ¶ 14a; Ex. E, Declaration of Pumaro LLC.

### II.    THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

Class actions promote judicial economy by aggregating small claims into one lawsuit.  They "permit the plaintiffs to pool claims which would be uneconomical to litigate individually. … [M]ost

---

[3]       Ex. B, *Tezos Overview*, at Section 6.2, Development Goals.

of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Rule 23(a) sets four threshold requirements for class certification: (1) the class must be so numerous that joinder of all members is impractical ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties must be typical of the claims of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).

In addition to the requirements of Rule 23(a), a court must determine whether the action can be maintained under one of the three subsections of Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

At the class certification stage, a plaintiff is only required to demonstrate that the requirements of Rule 23 are met, not that the plaintiff will ultimately prevail on the merits.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (Rule 23 is not a "license to engage in free-ranging merits inquiries at the certification stage"); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017) (merits questions are "not appropriately addressed at the class certification stage").

### A.    The Proposed Class Satisfies Rule 23(a)

#### 1.    The Proposed Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all members is impracticable."  "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 34150, at *11 (N.D. Cal. Mar. 16, 2016)  (quoting *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012)).

In this case, there were 30,317 investors (or wallets that were funded) in the Tezos ICO during the two week period in July 2017.  ¶¶ 78, 131; Ex. A, July 24, 2017 Tezos Update at 2.  Accordingly, the numerosity requirement is satisfied.

**2.     There Are Common Questions Of Law And Fact**

Rule 23(a)(2) requires a showing that "questions of law or fact" are common to the class. However, this does not require that "every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks and citation omitted). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (internal quotation marks and citation omitted).

Here, the questions of law and fact common to the Class include:

(a) Whether the offer of the Tezos tokens through the Tezos ICO constituted the offer and sale of "securities";

(b) Whether Defendants were required to file a registration statement for the Tezos ICO;

(c) Whether Defendants are sellers under Section 12(a)(1) of the Securities Act;

(d) Whether the Breitmans are "controlling persons" under the Securities Act; and

(e) Whether Plaintiffs and the Class are entitled to rescission, or damages, and the proper calculation and amount of those damages.

Each of these questions focuses on Defendants' conduct and their Class-wide impact, making the core factual and legal issues subject to common proof. *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *8 (N.D. Cal. June 30, 2007) (commonality found where "[a]ll class members' claims share[d] … common questions of law and fact"); *Basile v. Valeant Pharm. Int'l., Inc.*, 2017 U.S. Dist. LEXIS 37400, at *36 (C.D. Cal. Mar. 15, 2017).   The commonality requirement is therefore satisfied.

**3.     The Proposed Class Representatives' Claims Are Typical Of Those Of the Class**

Rule 23(a)(3) requires that the class representative's claims or defenses must be "typical" of the claims or defenses of the prospective class.  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685.  "'Under the rule's permissive standards, representative claims are "typical"

5

if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  And, where a "[p]laintiff's claims are based upon the same course of events as the claims of all class members, and all claims are based on the same theories and will be proven by the same evidence," they are typical of the class.  *In re Celera Corp. Sec. Litig.*, 2014 U.S. Dist. LEXIS 25098, at *9 (N.D. Cal. Feb. 25, 2014).  Even if a class representative's "damages differ from the damages of some class members, typicality is not defeated."  *Just Film*, 847 F.3d at 1118.

Here, Plaintiffs' claims, like the claims of the rest of the Class, are all based on Defendants' sale of unregistered securities, and Plaintiffs' purchases of Tezos tokens, in the July 2017 Tezos ICO. The legal and factual arguments that Plaintiffs advance regarding Defendants' liability are the same as the arguments that other Class members would advance in support of their claims.  Thus, the typicality requirement is satisfied.

### 4.  The Proposed Class Representatives Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In the Ninth Circuit, resolution of "two questions" determines legal adequacy: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *In re LendingClub Secs. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (quoting *Hanlon*, 150 F.3d at 1020).  The adequacy requirement is satisfied here.

As set forth herein, Frunze invested 238 Ethereum in the Tezos ICO and was promised delivery of 165,607.39 Tezos tokens.  Pumaro invested 1.9 Bitcoin and was promised delivery of 11,400 Tezos tokens.  The other members of the Class also contributed either Bitcoin or Ethereum, and were promised corresponding amounts of Tezos tokens.  Plaintiffs and the proposed Class members were all sold unregistered securities in violation of the Securities Act.  Thus, Plaintiffs' interest in establishing Defendants' liability and obtaining appropriate relief is aligned with the interests of absent Class members.

Plaintiffs have also demonstrated their willingness and ability to serve as Class Representatives. Among other responsibilities during the litigation so far, both Frunze and Pumaro have: (1) reviewed the Complaint, and approved their addition as named plaintiffs to this litigation; (2) participated in numerous discussions with Co-Lead Counsel; and (3) supervised and monitored the progress of court proceedings, including providing input as to strategy. *See* Exs. D and E. In short, as reflected in their declarations, Plaintiffs have demonstrated that they are "'familiar with the basis for the suit and their responsibilities,'" and Plaintiffs' willingness and ability to perform these duties satisfies the "modest burden" of Rule 23(a)(4). *In re LendingClub*, 282 F. Supp. at 1182.

Plaintiffs have also engaged LTL and HGT Law to represent them in this litigation. As described more fully in Section III, *infra*, both firms are experienced in the areas of class actions and securities litigation, and have successfully prosecuted numerous securities litigations and class actions, as detailed in the firms' respective resumes. Dkt. Nos. 70-5, 70-6. Plaintiffs' counsel have the skill and knowledge that will enable them to prosecute this action effectively and expeditiously.

**B.      The Proposed Class Satisfies The "Predominance" Requirement For Class Certification Under Rule 23(b)(3)**

The issue of whether common questions of law or fact predominate "begins, of course, with the elements of the underlying cause of action." *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 U.S. Dist. LEXIS 53734, at *16 (N.D. Cal. Apr. 21, 2016) (citing *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011)) (internal quotations omitted). "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations, alteration and citation omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a "common contention" is "capable of classwide resolution" if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud"). In contrast, "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods*, 136 S. Ct. at 1045 (internal quotations and citation omitted).

1  Importantly, Rule 23(b)(3) does not require a plaintiff to establish that "each element of her

2  claim is susceptible to classwide proof." *Amgen*, 568 U.S. at 469 (internal quotations omitted,

3  alteration brackets omitted).   Instead, "[w]hat the Rule does require is that common questions

4  '*predominate* over any questions affecting only individual [class] members.'" *Id.* (italics emphasis

5  in original).   "The predominance inquiry asks whether the common, aggregation-enabling, issues in

6  the case are more prevalent or important than the non-common, aggregation-defeating, individual

7  issues. … When one or more of the central issues in the action are common to the class and can be

8  said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

9  important matters will have to be tried separately, such as damages or some affirmative defenses

10  peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (internal quotations and

11  citation omitted); *see also Hanlon,* 150 F.3d at 1022 (predominance satisfied "[w]hen common

12  questions present a significant aspect of the case and they can be resolved for all members of the class

13  in a single adjudication") (internal quotations and citation omitted).

14  Furthermore, a plaintiff need not *prove* the elements of her or his claim on class certification.

15  "[P]roof is not a prerequisite to class certification. Rule 23(b)(3) requires a showing that *questions*

16  common to the class predominate, not that those questions will be answered, on the merits, in favor

17  of the class." *Amgen*, 568 U.S. at 459 (emphasis in original).

18  Here, there is a clear predominance of common questions over individual issues because *all*

19  elements of Plaintiffs' claims present questions that are susceptible to class-wide resolution.

20  **1.      Whether The Tezos Tokens Are Securities**

21  Under Section 2(a)(1) of the Securities Act, a "security" includes an "investment contract."

22  15 U.S.C. § 77b(a)(1).   An investment contract is "an investment of money in a common enterprise

23  with profits to come solely from the efforts of others." *Howey*, 328 U.S. at 301.   Specifically, a

24  transaction qualifies as an investment contract and, thus, a security if it is: (1) an investment of money;

25  (2) in a common enterprise; (3) with a reasonable expectation of profits to be derived from the

26  entrepreneurial or managerial efforts of others. *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130

27  (9th Cir. 1991) (citing *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (*en banc*), *cert. denied,*

28

1    494 U.S. 1078 (1990)).  This definition embodies a "flexible rather than a static principle, one that is

2    capable of adaptation to meet the countless and variable schemes devised by those who seek the use

3    of the money of others on the promise of profits." *Howey*, 328 U.S. at 299.  Accordingly, in analyzing

4    whether an instrument is a security, "form should be disregarded for substance," and "the emphasis

5    should be on economic realities underlying a transaction, and not on the name appended thereto."

6    *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849 (1975).

7       Under the *Howey* test, whether the sale of Tezos tokens in the Tezos ICO constituted

8    "investment contracts," and thus securities, will undoubtedly raise common, class-wide questions.

9       First, in the Tezos ICO, Class members invested either Bitcoin or Ethereum into the Tezos

10   ICO.  Ex. A, July 24, 2017 Tezos Foundation Update at 2.  Whether the investment of Bitcoin and

11   Ethereum constitutes an "investment of money" will raise a class-wide question.  Under established

12   law, an investment of cryptocurrency constitutes an "investment of money" sufficient to satisfy the

13   *Howey* test.  SEC DAO Report, at 11 (concluding that investment of Ethereum constitutes an

14   investment of money and stating that "cash is not the only form of contribution or investment that

15   will create an investment contract.") (citing *Uselton v. Comm. Lovelace Motor Freight, Inc.*, 940 F.2d

16   564, 574 (10th Cir. 1991)); *U.S. v. Zaslavskiy*, 2018 U.S. Dist. LEXIS 156574, at *15-16 (E.D.N.Y.

17   Sep. 11, 2018) (holding that investment of virtual currency constitutes an investment of money under

18   first prong of *Howey*); *SEC v. Shavers*, 2013 U.S. Dist. LEXIS 110018, at *4-5 (E.D. Tex. Aug. 6,

19   2013) (holding that an investment of Bitcoin meets the first prong of *Howey*); *Solis*, 2018 U.S. Dist.

20   LEXIS 207781, at *5 (holding that an investment of Ethereum meets the first prong of *Howey*).

21      Second, the *Howey* inquiry will focus on whether investors were investing in a "common

22   enterprise."  A common enterprise can be established by showing that there was either "vertical"

23   commonality or "horizontal" commonality.  *R.G. Reynolds*, 952 F.2d at 1130.  Vertical commonality

24   is the dependence of the investors' fortunes on the success or expertise of the promoter.  Horizontal

25   commonality is the pooling of investor funds and interests.  *Id.*; *Brodt v. Bache & Co., Inc.*, 595 F.2d

26   459, 460-61 (9th Cir. 1978).  Whether there was vertical or horizontal commonality is clearly an

27   objective, class-wide question.

28

Here, Plaintiffs have alleged both vertical and horizontal commonality. The Tezos ICO pooled investor funds to complete the development of the Tezos blockchain. Ex. B, Tezos Overview, at 13-19; Tezos MTD Br. at 8 (Tezos Foundation's admission that "the Fundraiser was intended to further the development of the Tezos Network by a team of developers."). Investors were allocated a pro-rata share of the Tezos project in the form of their Tezos token allocations. In addition, there was an "arrangement to share profits on a percentage basis between the investor and the seller or promoter" (*R.G. Reynolds*, 952 F.2d at 1130) because the Tezos Foundation and the Breitmans were also allocated a fixed percentage of the Tezos tokens, and thus shared in the prospects of success of the Tezos project. ¶ 79.

Third, the *Howey* test will focus on whether there was a reasonable expectation of profits to be derived from the efforts of others. This inquiry into investors' expectations is based on an objective, "reasonable investor" standard. *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Howey*, courts conduct an *objective inquiry* into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'") (emphasis added); SEC DAO Report at 12.[4] Further, whether profits from the investment in the Tezos ICO were to be derived from the efforts of others raises a class-wide question, because it will focus on the extent and significance of the efforts undertaken by Defendants and additional third parties in creating the financial success of Class members' investment in the Tezos project. *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973) (test is whether "the efforts made by those other than the investor are the undeniably significant ones, [and are] those essential managerial efforts which affect the failure or success of the enterprise."); *R.G. Reynolds*, 952 F.2d at 1131 (same).

Here, Defendants made numerous material representations that would lead a reasonable investor to expect capital appreciation and participation in future earnings.[5]    All of these

---

[4]    *See Forman*, 421 U.S. at 852 (reasonable expectation of profits can be satisfied by the expectation of "capital appreciation resulting from the development of the initial investment.").

[5]    For example, in the Tezos Overview, Defendants touted early backing from hedge funds and explained that key features of the Tezos Token were purposefully designed to "favor[ ] decisions that tend toward increasing the value of the tokens." Ex. B, § 6.1. In a February 2017 interview, Kathleen

representations to the marketplace collectively inform the reasonable expectations of investors, and

are susceptible of class-wide resolution.[6]  Furthermore, because of the unfinished nature of the Tezos

project at the time of Tezos ICO, the Class collectively and necessarily relied on Defendants to write

the software code, complete development and deliver the tokens.  For all these reasons, with "one

stroke" the Court can determine whether Class members had a reasonable expectation of profits to be

derived from the efforts of the Breitmans, DLS, the Foundation and others.

### 2.    Whether Defendants Are "Sellers" Under Section 12(a)(1)

Section 12(a)(1) attributes liability to "[a]ny person who offers or sells a security in violation

of section 5." 15 U.S.C. § 77l(a)(1).  A defendant is liable if she or he "passed title, or other interest

in the security, to the buyer for value" or if the defendant "successfully solicits the purchase [of the

security], motivated at least in part by a desire to serve his own financial interests or those of the

securities owner.  If he had such a motivation, it is fair to say that the buyer 'purchased' the security

from him and to align him with the owner in a rescission action."  *Pinter v. Dahl*, 486 U.S. 622, 642,

647 (1988).  Section 12(a)(1) imposes "strict liability." *Id.* at 638 ("The registration requirements are

the heart of the Act, and § 12(1) imposes strict liability for violating those requirements.").

Importantly, in *Pinter*, the Supreme Court expressly rejected causation and reliance as elements of

---

Breitman stated: "We think [Polychain Capital's investment in DLS] is significant because it represents a new business model… We created a product that was purchased by VC investors without the traditional equity investment model *because of the anticipated appreciation of our token*." Ex. F, Campbell, Rebecca, *Tezos Receives Funding for Smart Contract System from Polychain Capital's Digital Currency Fund*, Bitcoin Magazine (Feb. 17, 2017) (emphasis added).  In the midst of the ICO, Defendant Kathleen Breitman admitted that "there are a lot of people who are interested in the more speculative aspects" and "there's a lot of people who are just profit-seeking" from the ICO because "there's a lot of fervor and froth in the marketplace right now." Ex. G. *Behind the scenes with blockchain upstart*, TechCrunch. *See also* Ex. H, Chavez-Dreyfuss, Gertrude, *Exclusive: Billionaire Investor Draper to Participate in Blockchain Token Sale for First Time*, Reuters (May 5, 2017) (investor explaining "[w]e are looking for a return"); Ex. I, *Tim Draper: There Was Nothing Secretive About Our Purchase of Tezos,* Cointelegraph (Oct. 23, 2017) (Draper explaining his hopes to become "rich: from investing in Tezos); ¶¶ 99-115 (Defendants' representations that the Tezos tokens would generate a return, and statements from investors that they expected to earn a profit).

[6]    *See Stafford v. Brink's, Inc.*, 2015 U.S. Dist. LEXIS 191825, at *20-21 (C.D. Cal. Dec. 1, 2015) ("Given this clearly objective standard that governs the [ ] analysis, the Court is unconvinced by Defendant's argument that the question [ ] is somehow inherently individualized") (citing cases).

1    Section 12 liability, stating that "no congressional intent to incorporate tort law doctrines of reliance

2    and causation into § 12(1) emerges from the language or the legislative history of the statute. Indeed,

3    the strict liability nature of the statutory cause of action suggests the opposite." 486 U.S. at 652.

4    Thus, whether Defendants were sellers will raise purely common, class-wide questions.  The

5    Tezos Foundation has not disputed that it would be a "seller" under Section 12(a)(1), because it passed

6    title in the Tezos tokens to investors.  For DLS and the Breitmans, the inquiry will focus on whether

7    these Defendants' representations and other conduct constituted the solicitation of investments in the

8    Tezos ICO.  This is necessarily a common question because it focuses on Defendants' conduct.  *See*

9    *In re Banc of Cal. Secs. Litig.*, 326 F.R.D. 640, 648 (C.D. Cal. 2018) ("some questions are necessarily

10   common to the class because they depend on defendants' actions, not those of any class member").

11   Here, the Breitmans undoubtedly engaged in solicitation.  In a January 10, 2017 email, Arthur

12   Breitman sought an investment from a potential institutional investor, stating: "As I mentioned last

13   time, I think one interesting way for DCG to be involved in Tezos would be to setup a special purpose

14   fund to invest in the crowdsale. … Let me know what you think.  We'd love for DCG to be involved."

15   Ex. J, DLS00007715.  In a March 10, 2017 email, Kathleen Breitman sought an investment from an

16   individual, asking: "Have you decided if you'd like to invest in the crowdsale?" Ex. K, DLS00007719.

17   In a May 23, 2017 email, Kathleen Breitman stated to an investor: "We recorded a video to walk

18   people through this but are actually re-taping it in NY this weekend. … We strongly recommend

19   buying piecemeal and confirming each transaction. You'll have 3 days for each discount phase (20%,

20   15%, etc.) so that's ample time to get comfortable with the system and register a few transactions."

21   Ex. L, DLS00007231.  In the lead-up to the Tezos ICO, Kathleen Breitman admitted she was the "one

22   woman band" responsible for "promoting the protocol." Ex. C at DLS00000419.   In multiple

23   interviews prior to and during the Tezos ICO, Kathleen Breitman stated the uncapped nature of the

24   ICO was intended to "allow as many people who want to buy into the crowdsale" as possible. Ex. H.

25   In the midst of the ICO, Kathleen Breitman admitted "there are a lot of people who are interested in

26   the more speculative aspects of [the Tezos ICO]" because "[u]ltimately, we are appealing to people's

27   rational    self-interest."      Kathleen    Breitman  -  Tezos   Unleashed   (July   13,   2017),

28

1   https://www.youtube.com/watch?v=MjW_93sWACs at 18:00.[7]

2                   **3.      Whether The Breitmans Are Controlling Persons Under Section 15**

3           In addition to the direct violations of Section 12(a)(1) described above, Defendants Arthur

4   and Kathleen Breitman are liable as "controlling persons" pursuant to Section 15 of the Securities

5   Act.  15 U.S.C. §77o; ¶¶ 144-50.  To allege controlling person liability, the Class must establish that

6   the Breitmans possessed actual power or control over the primary violators the Tezos Foundation and

7   DLS.  *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Control may be direct or indirect.

8   *See* 17 C.F.R. § 230.405 (SEC defining control as the "possession, direct or indirect, of the power to

9   direct or cause the direction of the management and policies of a person, whether through ownership

10  of voting securities, by contract, or otherwise.").  However, "it is not necessary to show actual

11  participation or the exercise of actual power."  *Howard*, 228 F.3d at 1065.

12          Again, whether the Breitmans are controlling persons is a common question because it will

13  focus on Defendants' conduct.  *In re Banc of Cal.*, 326 F.R.D. at 648.  Here, as CEO of DLS, Kathleen

14  Breitman represented that she "take[s] care of all the operational aspects of the Tezos blockchain. I

15  deal with business partners, I deal with attorneys, I deal with our marketing group, all the non-

16  technical things."[8]  Also, it was the Breitmans who executed and monitored the Tezos ICO. ¶¶ 57-58.

17  On the first day of the Tezos ICO, July 1, 2017, Kathleen Breitman wrote: "Arthur and I are taking

18  turns napping and monitoring the servers, turning out great so far!"  Ex. M, DLS00007391.  During

19  the Tezos ICO, Arthur Breitman responded to numerous technical troubleshooting and other

20  questions from investors.  *See*, *e.g.*, Exs. S and T, *infra* at 19.

21

22

23  [7]      The final element of the Class's Section 12(a)(1) claim is the use of "interstate commerce" in

24  the unregistered sale of securities. It is undisputed that Defendants conducted the sale of Tezos tokens
    through the U.S.-based website www.tezos.com.  *SEC v. Straub*, 2016 U.S. Dist. LEXIS 136841, at

25  *35 (S.D.N.Y. Sep. 30, 2016) ("The Internet unquestionably constitutes an 'instrumentality of
    interstate commerce.").  Therefore, proving Defendants utilized the instrumentalities of "interstate

26  commerce" can be accomplished in "one stroke."

27  [8]      Around The Coin, Fintech Podcast, Episode 138: Interview with Kathleen Breitman, CEO of
    Tezos,              YOUTUBE              (June              16,              2017),

28  https://www.youtube.com/watch?v=cDIgGYl5krA&feature=youtu.be.

### 4.   The Contribution Terms Do Not Raise Individual Issues

Defendants have argued that the Tezos ICO was governed by the "Contribution Terms," which, Defendants contend, form part of a "browsewrap" agreement.   Defendants have also contended that whether investors had notice of the Contribution Terms will therefore create individualized questions of actual or constructive notice.   Tezos MTD Br. at 17-18.   Defendants are incorrect, because whether these terms are legally binding presents common, class-wide questions.

As described by the Ninth Circuit in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014), in a browsewrap agreement, the "website's terms and conditions of use are generally *posted on the website* via a hyperlink at the bottom of the screen" and at a minimum, "*the website will contain a notice* that … the user is agreeing to and is bound by *the site's terms of service*." (quotation marks and citations omitted) (emphasis added); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) (noting that a browsewrap agreement requires at least a hyperlink notice on the website).[9]   "[B]y visiting the website[,] the user agrees to the Terms of Use not listed on the site itself but *available only by clicking a hyperlink*."  *Nguyen*, 763 F.3d at 1176 (internal quotation marks omitted) (emphasis added).

This requirement of a reference or link to the terms and conditions is simply a statement of the fundamental principle of contract law that parties must objectively manifest their assent to those terms and conditions.  *See Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 641 (1986) ("[f]or the terms of another document to be incorporated into the document executed by the parties *the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto*, and the terms of the incorporated document must be known or easily available to the contracting parties") (quotation marks and citations omitted) (bold emphasis added); *see also Nguyen*, 763 F.3d at 1175-76 ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. [ ] One

---

[9]      Browsewrap agreements are to be distinguished from "clickwrap" agreements, which "require a user to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen*, 763 F.3d at 1175-76.  Because browsewrap agreements require no outward manifestation of assent, courts are traditionally reluctant to enforce them.  *Id.* at 1178-79.

1    such principle is the requirement that mutual manifestation of assent, whether by written or spoken

2    word or by conduct, is the touchstone of contract.") (internal citations and quotations omitted).

3       Thus, whether the Contribution Terms are legally binding will turn on whether there was a

4    reference or incorporation on crowdfund.tezos.com sufficient to constitute an objective manifestation

5    of assent.  This is an indisputably common question susceptible to class-wide determination.  *See*

6    *Rodman v. Safeway Inc.*, 2015 U.S. Dist. LEXIS 17523 (N.D. Cal. Feb. 12, 2015) (rejecting

7    enforceability of certain, separately-placed "Special Terms" as a matter of law because "Class

8    Members could have completed all their subsequent purchases … without ever visiting the webpage

9    hosting the revised Special Terms which [the defendant] claims governed the sale and without ever

10    clicking anything on the website that would indicate that they have agreed to those terms").  There is

11    no need for individualized inquiries into each investor's notice.  *St. Paul Mercury Ins. Co. v. Am.*

12    *Safety Indem. Co.*, 2014 U.S. Dist. LEXIS 70785, at *30-31 (N.D. Cal. May 21, 2014) ("Even if the

13    other party is aware of the extrinsic document, an express incorporation is required."); *Amtower v.*

14    *Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008) ("To impliedly incorporate an external

15    document by reference, the subject document must contain some clear and unequivocal reference to

16    the fact that the terms of the external document are incorporated.").

17       Here, when accessing the crowdfund.tezos.com portal (a subdomain of tezos.com), investors

18    were never presented with the Contribution Terms.  Instead, the Contribution Terms appeared on a

19    *completely separate* website, www.tezos.ch, that was not referenced on tezos.com or

20    crowdfund.tezos.com, and that investors never had to access in order to make their investments.

21    ¶¶ 71-72, 125-26.  Thus, the Contribution Terms were never incorporated by reference or otherwise.

22       Indeed, the Tezos Foundation has expressly disclaimed the enforceability of any external

23    terms, which highlights why determination of assent will focus on the point of contract

24    (crowdfund.tezos.com), and the terms that were referenced/incorporated at that point.  In a June 15,

25    2017 email, sent approximately two weeks before the Tezos ICO, the Tezos Foundation expressly

26    instructed investors that, "**For technical information on how to participate in the Tezos**

27    **fundraiser, please always refer exclusively to the Tezos website at** https://tezos.com" and that, "If

28

you would like to contribute, only do so through our own website https://tezos.com once the fundraiser opens, or through https://www.bitcoinsuisse.ch/tezos starting today. **No other websites are authorized to provide information on Tezos or accept contributions to the Tezos fundraiser**." Ex. N. (emphasis in original).  In an internal email dated June 27, 2017, sent just days before the Tezos ICO, Tezos Foundation board member, Johann Gevers, acknowledged the significance of this instruction, advising Arthur Breitman that "we need to fix the crowdfund.tezos.com page so it doesn't redirect to a different page on a different domain. That confuses and scares people that the page might be hacked, especially after ***they've been emphatically told to ONLY go to crowdfund.tezos.com***." *See* Ex. O, DLS00004804 (uppercase emphasis in original, bold and italics emphasis added).  All of this demonstrates precisely why a clear and express incorporation/reference on crowdfund.tezos.com to the Contribution Terms was necessary, if those terms were to be legally binding.

Even if the Court were to find a sufficient reference to or incorporation of the Contribution Terms, there still would not be individualized inquiries because the Court would then have to consider whether there was *constructive* notice of those terms.  This determination is an *objective* test based on reasonable-person standards that apply equally to all members of the Class.  In determining whether there is sufficient notice in the context of a "browsewrap" agreement, the Court is required to determine whether the www.tezos.com "website puts a ***reasonably prudent user*** on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177 (citing *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 30-31 (2d Cir. 2002)) (emphasis added).[10]  Underscoring the purely objective nature of this test, the Ninth Circuit held that the user's "familiarity with other websites governed by similar browsewrap terms" and "[w]hether [the plaintiff] has experience with the browsewrap agreements found on other websites" would have "no bearing on whether he had constructive notice." *Id.* at 1179.

Other courts agree that this reasonable person standard applies.  *See  Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 589 (N.D. Ill. 2018) ("The Court could resolve this issue in a class action

---

[10]     In *Nguyen*, the Ninth Circuit held that actual notice of the terms of a browsewrap agreement might be relevant to the determination of whether the terms are binding, but ultimately did not decide this question.  763 F.3d at 1176-77.

1    because constructive notice of a 'browsewrap' agreement looks at the conspicuousness of the

2    hyperlink or text constituting the agreement. … All of the proposed class members in this case used

3    the same website, and any inquiry as to constructive knowledge of the privacy policy would be the

4    same across the proposed class."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-80 (2d Cir. 2017)

5    (reasonably conspicuous notice an objective standard, and "[w]hether a reasonably prudent user

6    would be on inquiry notice turns on the 'clarity and conspicuousness of [contract] terms.'") (citing

7    *Specht*, 306 F.3d at 30 and *Nguyen*, 763 F.3d at 1177).[11]

8         **5.    Whether The Securities Act Applies Under *Morrison* Raises**
9              **Common Questions**

10         Whether the Securities Act applies to the conduct underlying this dispute is a merits question.

11   *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010).  However, because at least one Court

12   of Appeals (the Second Circuit) has held that it is appropriate to assess whether *Morrison* questions

13   satisfy the predominance requirement in a motion for class certification, Plaintiffs discuss it here.  *See*

14   *In re Petrobras Sec. Litig.*, 862 F.3d 250, 273 (2d Cir. 2017).

15         Under *Morrison*, the Securities Act applies only to "transactions in securities listed on

16   domestic exchanges, and domestic transactions in other securities."  *Morrison*, 561 U.S. at 267, 268

17   (the "same focus on domestic transactions is evident in the Securities Act").  In *Stoyas v. Toshiba*

18   *Corp*, 896 F.3d 933, 949 (9th Cir. 2018), the Ninth Circuit adopted the "irrevocable liability" test for

19   whether a transaction is "domestic."  Under this test, "in order to adequately allege the existence of a

20   domestic transaction, it is sufficient for a plaintiff to allege facts leading to the plausible inference

21   that the parties incurred irrevocable liability within the United States: that is, that the purchaser

22   incurred irrevocable liability within the United States to take and pay for a security, or that the seller

23   

---

24   [11]     *See also In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004) ("We therefore
     have no difficulty concluding that whether plaintiffs were provided constructive notice is an issue

25   that can be decided on a classwide basis."); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 n.10
     (2d Cir. 2008) ("constructive notice is an issue susceptible to common proof; what a 'reasonable

26   person' would have known, and when, can be proven on a class-wide basis."); *cf. Nitsch v.
     Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 311-13 (N.D. Cal. 2016) ("whether this evidence

27   was sufficient to trigger Plaintiffs' duty to diligently investigate their claims will raise largely
     common issues.") (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988)).

28

1   incurred irrevocable liability within the United States to deliver a security." *Absolute Activist Value*

2   *Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). In addition, the Ninth Circuit in *Stoyas*

3   noted an "an alternative means of alleging a domestic transaction: alleging that title to the shares was

4   transferred within the U.S." 896 F.3d at 948 (citing *Absolute Activist*, 677 F.3d at 68).

5       In this case, whether under the irrevocable liability test or the transfer-of-title test, the

6   questions will be common and susceptible of class-wide resolution.

7       First, Tezos ICO investors incurred irrevocable liability "to take and pay for" Tezos tokens

8   when they submitted their information on the portal crowdfund.tezos.com, sent their funds to the

9   Tezos Foundation's Bitcoin and Ethereum wallets, and the transfer of funds was digitally recorded

10  on the Bitcoin and Ethereum blockchains. ¶¶ 71-74. Once an investment was recorded on the

11  blockchains, the investor could not unilaterally cancel or revoke the transaction and demand a refund.

12  The Tezos Foundation has admitted that transactions were digitally recorded on the blockchains. *See*

13  Ex. P, July 5, 2017 Update (Tezos Foundation stating: "When designing the contribution software,

14  we made sure that all contributions to the Tezos fundraiser ***are recorded on the Bitcoin and Ethereum***

15  ***blockchains***....") (emphasis added). The Tezos Foundation has also admitted that, once recorded on

16  the Bitcoin and Ethereum blockchains, investments were legally non-refundable.[12]

17      Reinforcing this conclusion, the Tezos Foundation itself also "incurred irrevocable liability

18  … to deliver" the Tezos tokens when an investor's investment was recorded on the Bitcoin and

19  Ethereum blockchains. In a number of communications, Arthur Breitman directly assured investors

20  and other individuals that the recording of transactions on the blockchains was determinative of the

21  Tezos Foundation's obligations. *See, e.g.*, Ex. R, DLS00006989 (January 15, 2017 email from Arthur

22  Breitman explaining "***the amounts posted on the Bitcoin blockchain*** are what will determine the

23  amounts purchased") (emphasis added); Ex. S, DLS00005061 (July 1, 2017 email from Arthur

24  Breitman stating: "We had some issue with the DB [database] early in the morning and we are still

25

26  ---

    [12]     *See* Tezos Foundation September 30, 2017 Update, Ex. Q ("A few weeks ago, we announced

27  our intention of offering refund options to those who made late or sub-threshold contributions …. We
    are doing this as a discretionary measure of goodwill towards our supporters, ***even though we are not***

28  ***legally obliged to do so.***") (emphasis added).

trying to reconstruct the missing bit. The good news is that *your transactions are clearly on the Ethereum blockchain so we'll be able to get it in*. I'm really sorry for the inconvenience but rest assured that both contributions will be reflected once we manage to resync the db with the Ethereum blockchain.") (emphasis added); Ex. T, DLS00005395 (July 2, 2017 email from Arthur Breitman stating: "As long as your transactions appear on the blockchain, they are safe").  Also, the Tezos Foundation calculated bonuses for investors based precisely on the timing of when an investor's investment was recorded on the Bitcoin and Ethereum blockchains.  *See* Ex. U, Contribution Terms, ¶ 26.  Under this bonus system, the earlier an investor's contribution was recorded on the Ethereum and Bitcoin blockchains, the greater the number of bonus tokens received by the investor.  Therefore, the Tezos Foundation necessarily incurred liability at the point when investments were recorded on the Bitcoin and Ethereum blockchains.

Because transactions on the Bitcoin and Ethereum blockchains are effectuated and recorded over a network of computers (nodes) spread around the globe (¶¶ 27-28), and because the U.S. has the most nodes of any country, the U.S. is essential to the recording of these transactions, and both investors and the Tezos Foundation incurred irrevocable liability in the United States.  ¶¶ 29, 75.  In the MTD Decision, the Court held that Plaintiffs sufficiently alleged that irrevocable liability was incurred in the U.S., noting among other factual allegations that Lead Plaintiff's "contribution of Ethereum to the ICO became irrevocable only after it was validated by a network of global 'nodes' clustered more densely in the United States than in any other country."  MTD Decision at 14.

Therefore, under the irrevocable liability test, the issue of where irrevocable liability was incurred will raise common questions, including "where" transactions on the Bitcoin and Ethereum blockchains are located; where the nodes are located; how transactions are recorded on the blockchains; and when the transactions became irrevocable on the blockchains.  In addition, other common questions that may be relevant include the location of the server on which the crowdfund.tezos.com website was hosted, and the locus of the Tezos ICO marketing efforts.

Defendants have asserted that Class members' investments became irrevocable as a matter of law in the Channel Island of Alderney, where the so-called "contribution software" used by the Tezos

Foundation was purportedly located, but this does not raise individualized questions.  Tezos MTD Br. at 24.  To the contrary, questions concerning the function and relevance of the Contribution Software, and their relationship to the recording of transactions on the Bitcoin and Ethereum blockchains, are still common questions that are capable of "one stroke" resolution for all Class members.

Second, under the alternative transfer-of-title test, the Tezos Foundation transferred title in the Tezos tokens to investors on the *Tezos blockchain network*.  All transfers would have been effectuated and recorded on the nodes constituting the Tezos network, upon the launch of the network.  Ex. U, Contribution Terms, ¶ 31 ("the Contributor will have to import his XTZ Wallet into the Tezos Client after the Launch of the Tezos Network, in order to claim his XTZ. The XTZ will then be allocated to this wallet address.").  A majority of nodes on the Tezos network are located in the U.S., so the transfer of title would have occurred in the U.S.  *See* Ex. V (showing the U.S. runs 3606 out of 6428 total Tezos nodes).  Again, regardless of the merits, where title transferred is a purely common question relating to the Tezos network and the location of Tezos network nodes.

### 6.    The Class's Remedies Of Rescission And Damages Do Not Present Any Individualized Issues

Under Section 12(a)(1) of the Securities Act, a purchaser of an unregistered security may sue for rescission of "the consideration paid for such security with interest thereon, less the amount of any income received thereon," or for "damages if he no longer owns the security."  15 U.S.C. § 77l(a)(1).  Under either remedy, the calculations in this case are based on the same class-wide methodology.

With respect to rescission, Class members will be refunded, upon the tender of their Tezos tokens, the consideration they paid with interest calculated thereon.  In the Tezos ICO, investors paid for their Tezos tokens (XTZ) using either Bitcoin (BTC) or Ethereum (ETH).  However, the price of Tezos securities was denominated in Bitcoin.  Specifically, Class members were promised between 5,000 and 6,000 XTZ per Bitcoin.  For Class members who invested using Ethereum, the Tezos Foundation first determined the "BTC equivalent" of that Ethereum investment using the "historical

1    exchange rate of BTC/ETH at approximately the time of the ETH Contribution."[13]   As the Tezos

2    Foundation has previously confirmed, it then allocated tokens to Ethereum investors using the

3    Bitcoin-equivalent value. Tezos MTD Br. at 24 ("the Foundation's XTZ recommendation [was]

4    calculated based on a conversion to bitcoin.").

5           Therefore, the claims for rescission of *all* investors seeking this remedy – whether that investor

6    invested using Bitcoin or Ethereum or some combination thereof – will be governed by the same

7    class-wide methodology, *i.e.* the return of the Bitcoin or Bitcoin-equivalent value of their respective

8    investments.  Because Tezos allocations were calculated in the first place using the Bitcoin or Bitcoin-

9    equivalent value of an investor's contribution, using a class-wide methodology of returning the

10   Bitcoin or Bitcoin-equivalent value will ensure that investors receive in proportion to their relative

11   allocation of Tezos tokens, irrespective of whether they invested using Ethereum or Bitcoin.  Indeed,

12   the Court has already noted that it does not matter what "currency" investors used to invest in the

13   Tezos ICO.   *See* March 15, 2018 Tr. at 37:13-21 (""Why would the funding source, which is what

14   this is, Bitcoin or Ethereum is in this instance, … Why does that matter? If you pay in euros and

15   somebody paid in dollars, I mean, would you then say: Oh, we need a euro group and we need a

16   dollars group? I can't imagine that you would.") and 39:21-24 ("If you had a securities case, I can't

17   imagine that you would make any kind of subclass or distinction between, say, people who use U.S.

18   dollars and people who used some other currency.").

19          With respect to damages, it is well settled that "the need for individual damages calculations

20   does not, alone, defeat class certification."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150,

21   1155 (9th Cir. 2016) (citing cases).  Here, for Class members who have already sold their tokens and

22   suffered damages, the calculations are a simple matter of arithmetic that is expressly prescribed by

23   the Securities Act itself, and therefore necessarily class-wide in nature.  *See* 15 U.S.C. § 77l(a)(1);

24   *Pinter*, 486 U.S. at 641 n.18 (Section 12(a)(1) "permits the buyer who has disposed of the security to

25   sue for damages – 'the consideration paid for such security with interest thereon, less the amount of

26

---

27   [13]      Ex. U, Contribution Terms ¶ 25; Ex. W, DLS00007116 (April 13, 2017 email from Arthur
     Breitman) ("Ether contributions will simply be converted into Bitcoin based on the prevailing rate at
28   the time of the contribution").

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
NO. 3:17-CV-06779-RS

any income received thereon.'"); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 155091, at *16 (C.D. Cal. Oct. 25, 2013) (in Section 12(a) claim, finding predominance and superiority because *inter alia* "the calculation of damages will be governed by statutory formulas.").[14]

As set forth above, because *all* of the issues "central to the validity" of Plaintiffs' claims raise questions fully susceptible to class-wide resolution, common questions of law and fact predominate over any individual questions. *Wal-Mart*, 564 U.S. at 350.

**C.     The Proposed Class Satisfies The "Superiority" Requirement For Class Certification Under Rule 23(b)(3)**

Rule 23(b)(3) also requires a plaintiff to show that the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Courts recognize the class action device as superior to other methods for fairly and efficiently adjudicating large-scale securities claims brought on behalf of numerous individuals.  *See In re Verisign Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").  *See also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("As the Ninth Circuit has so aptly stated, securities [ ] cases fit Rule 23 'like a glove.'"); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) ("securities cases easily satisfy the superiority requirement of Rule 23") (internal quotation marks and citation omitted).

In assessing the superiority prong, Rule 23(b)(3) sets forth the following four factors: (1) the interests of members of the class in "individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) the difficulties likely to be encountered in the management

---

[14]     *See also In re Banc of Cal. Secs. Litig.*, 326 F.R.D. at 651 ("damages models are only required when they're necessary to isolate damages by liability theory. … But this case isn't so complicated as to require damages models to separate liability theories.").

1 of a class action.  Fed. R. Civ. P. 23(b)(3).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

2 1190-92 (9th Cir. 2001).  Here, each factor weighs strongly in favor of class certification.

3         First, there are more than 30,000 members in the Class, each of whose individual damages

4 likely are small enough to preclude economical, individual litigation.  If the Class is not certified, the

5 burden and expense of litigating would not be distributed among the Class, one of the advantages

6 afforded by the class action mechanism.  *Verisign*, 2005 U.S. Dist. LEXIS 10438, at *32; *Valentino*

7 *v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)  ("class wide litigation of common issues

8 will reduce litigation costs and promote greater efficiency.");  *Phillips Petroleum*, 472 U.S. at 809

9 (class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate

10 individually," and noting that in the case before it, "most of the plaintiffs would have no realistic day

11 in court if a class action were not available").  Furthermore, Plaintiffs are unaware of any pending

12 individual cases that have been filed in any court, which confirms the limited interest of individual

13 Class members in prosecuting their own separate actions.  *See In re Phenylpropanolamine (PPA)*

14 *Prods. Liab. Litig.*, 214 F.R.D. 614, 621 (W.D. Wash. 2003) (no superiority where there were "almost

15 900" related individual cases pending in state and federal court).

16         Second, the fact that two related class actions have been filed in the San Francisco Superior

17 Court also supports a finding of superiority.  Those state court actions are still in their infancy.

18 Although the state court actions are now coordinated, Defendants the Tezos Foundation and the

19 Breitmans have not even been served with a complaint, and the other Defendants have not answered

20 or demurred.  Ex. X (*Tezos ICO Cases*, Superior Court of California, December 19, 2018 Minutes of

21 Case Management Conference).  This weighs in favor of certifying the Class in this action.  *See In re*

22 *LendingClub*, 282 F. Supp. 3d at 1187 (finding certification of consolidated federal action was

23 superior to parallel state court case); *Parra v. Bashas', Inc.*, 291 F.R.D. 360, 396 (D. Ariz. 2013)

24 ("Given that [the related] action is in its relative infancy, and the court would have to speculate as to

25 how that action might, at some future date, impact the present case, it finds that the second

26 [superiority] factor also weighs in favor of class certification."); *In re LIBOR-Based Fin. Instruments*

27 *Antitrust Litig.*, 299 F. Supp. 3d 430, 607 (S.D.N.Y. 2018) ("This action has progressed further than

28

the other actions asserting similar claims, thereby supporting superiority under Rule 23(b)(3)(B)").

Third, it is desirable to "concentrate[ ] the litigation of the claims in [this] particular forum." Fed. R. Civ. P. 23(b)(3)(C). To begin, Defendant DLS is headquartered in this district, and Kathleen and Arthur Breitman reside in it.  ¶¶ 15, 20; *Hatamian*, 2016 U.S. Dist. LEXIS 34150, at *30 (finding superiority met where defendant's headquarters located in the district).  Also, this Federal Court has the expertise to adjudicate a complex class action alleging violations of the federal securities laws. *See Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 141 (E.D.N.C. 2018) (finding superiority despite a parallel class action pending in state court because the case involved "a nationwide class of plaintiffs and substantial questions of federal law. Thus, this court is a superior forum for resolving the claims at issue").  In addition, given the pending state court class actions, the likelihood of "additional burdens and expenses on the litigants," coupled with "a risk of inconsistent rulings" from multiplicity of actions, support a finding of superiority.  *Arellano v. Kellermeyer Bldg. Servs., LLC*, 2014 U.S. Dist. LEXIS 168986, at *18 (S.D. Cal. Dec. 5, 2014).

Fourth, a class action is manageable and weighs in favor of class certification.  Manageability "depends largely on whether Plaintiff's case rises and falls on common evidence. … This factor thus overlaps with the Court's commonality, typicality, and predominance analysis." *Datta v. Asset Recovery Sols., LLC*, 2016 U.S. Dist. LEXIS 36446, at *30 (N.D. Cal. Mar. 18, 2016) (internal quotation marks and citation omitted). "Manageability concerns must be weighed against the alternatives and will rarely, if ever, be sufficient to prevent certification of a class." *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017) (internal quotation marks and citation omitted); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (noting the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns") (internal quotation marks and citation omitted).  Here, additional proceedings in this case will focus almost exclusively on the common evidence concerning Defendants' conduct. *See supra*, Section II.B.  Splintering the case into more than 30,000 individual cases would not make the litigation more manageable.  Further, a class action is especially manageable in this case because all Class members were required to provide Defendants with an

1   email address to invest in the Tezos ICO, thus ensuring ease of notice and communication. *See Tezos*

2   *instruction video*, available at https://www.youtube.com/watch?v=Uti8-1Y-Wkk; *see also* Fed. R.

3   Civ. P. 23(c)(2)(B) (class "notice may be by one or more of the following: United States mail,

4   electronic means, or other appropriate means."); *Committee Notes* 2018 Amendment Fed. R. Civ. P.

5   23 ("Subdivision (c)(2) is also amended to recognize contemporary methods of giving notice to class

6   members.").

7       Accordingly, under the Rule 23(b)(3) factors, the class action mechanism is superior to any

8   other method to secure the just, speedy and efficient resolution of Class members' claims.

9   **III.   LTL AND HGT LAW SHOULD BE APPOINTED AS CLASS COUNSEL**

10      Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Plaintiff

11  respectfully requests that the Court appoint Lead Counsel, LTL and HGT Law, as Class Counsel. In

12  appointing class counsel, the Court considers counsel's work "in identifying or investigating potential

13  claims in the action," "counsel's experience in handling class actions," "counsel's knowledge of the

14  applicable law" and "the resources that counsel will commit to representing the class." Fed. R. Civ.

15  P. 23(g)(1)(A)(i)-(iv). As mentioned above, Lead Counsel are well-qualified to prosecute this case

16  on behalf of Plaintiffs and the other members of the Class, and have already undertaken a vigorous

17  prosecution of this action, including filing a consolidated amended complaint, defeating Defendants'

18  recent motion to dismiss (MTD Decision), conducting discovery and pursuing class certification. In

19  addition, the Court has already found LTL and HGT Law adequate during the PSLRA lead plaintiff

20  process. *See* Dkt. No. 101. Accordingly, LTL and HGT Law satisfy the requirements of Rule 23(g)

21  and should be appointed as Class Counsel. *See* Exs. Y and Z (firm CVs of LTL and HGT Law).

22                              **CONCLUSION**

23      Plaintiff respectfully requests that the Court: (1) certify this action as a class action pursuant

24  to Rule 23(a) and Rule 23(b)(3); (2) appoint Artiom Frunze and Pumaro LLC as Class

25  Representatives; and (3) appoint LTL and HGT Law as Class Counsel.

26

27

28

1   Date: January 9, 2019               LTL ATTORNEYS LLP

2

By:  *s/ Enoch H. Liang*
3                               Enoch H. Liang
                                LTL ATTORNEYS LLP
4                               601 Gateway Boulevard, Suite 1010
                               South San Francisco, California 94080
5                               Tel:   650-422-2130
                               Fax:  213-612-3773
6                               enoch.liang@ltlattorneys.com

7

James M. Lee
8                               Caleb H. Liang
                               LTL ATTORNEYS LLP
9                               300 S. Grand Ave., 14th Floor
                               Los Angeles, California 90071
10                              Tel:  213-612-8900
                               Fax:  213-612-3773
11                              james.lee@ltlattorneys.com
12                              caleb.liang@ltlattorneys.com

13                             Hung G. Ta
                               JooYun Kim
14                              HUNG G. TA, ESQ., PLLC
                               250 Park Avenue, 7th Floor
15                              New York, New York 10177
16                              Tel: 646-453-7288
                               Fax: 646-453-7289
17                              hta@hgtlaw.com
18                              jooyun@hgtlaw.com

19                           *Lead Counsel for Court-Appointed Lead*
                           *Plaintiff and the Class*
20

21                           William R. Restis
                            THE RESTIS LAW FIRM, P.C.
22                         402 West Broadway, Suite 1520
                         San Diego, CA 92101
23                         Tel: 619.270.8383
                         william@restislaw.com
24

25                         Joseph J. DePalma
                         Bruce D. Greenberg
26                         Jeremy Nash
                         LITE DEPALMA GREENBERG,
27                         LLC
                         570 Broad Street, Suite 1201
28                         Newark, NJ 07102

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg@litedepalma.com
jnash@litedepalma.com

*Additional Counsel for the Class*

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
NO. 3:17-CV-06779-RS