BAKER MARQUART LLP
BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
DONALD R. PEPPERMAN (109809) (dpepperman@bakermarquart.com)
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
Telephone:  (424) 652-7814
Facsimile:  (424) 652-7850

Counsel for Defendants
DYNAMIC LEDGER SOLUTIONS, INC.
ARTHUR BREITMAN
KATHLEEN BREITMAN

COOLEY LLP
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934) (jvs@cooley.com)
DAVID S. HOUSKA (295918) (dhouska@cooley.com)
JESSIE A.R. SIMPSON LAGOY (305257) (jsimpsonlagoy@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:  (650) 843-5355
Facsimile:  (650) 618-0387

Counsel for Defendant
DYNAMIC LEDGER SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | CLASS ACTION |
| This document relates to:<br><br>ALL ACTIONS | **DEFENDANTS' ARTHUR BREITMAN, KATHLEEN BREITMAN, AND DYNAMIC LEDGER SOLUTIONS, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO SUBSTITUTE NEW LEAD PLAINTIFF**<br><br>Date: March 7, 2019<br>Time: 1:30 p.m.<br>Crtrm: 3<br>Judge:  Hon. Richard Seeborg<br>Trial Date:  Not yet set |

Cooley LLP
Attorneys At Law
San Francisco

{00130624.DOCX - v2}                    1

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

## I. INTRODUCTION

HGT Law and LTL Attorneys prevailed last year in a five-way battle to control this litigation. They were selected over their competitors as Lead Counsel pursuant to the selection process required by the Private Securities Litigation Reform Act ("PLSRA") entirely because their client, current Lead Plaintiff Arman Anvari ("Lead Plaintiff"), possessed the largest financial interest of all the movants. Having been appointed Lead Counsel, HGT Law and LTL Attorneys spent ten months litigating this matter with Anvari allegedly at the helm. But while Anvari served his purpose during the lead plaintiff contest, both sides rapidly discovered that Anvari has serious problems as a class representative. Anvari's passing reference to "various legal arguments which Defendants intend to make" in his declaration glides past the truth both sides know: Anvari has—among numerous other shortcomings—made statements contradicting his allegations in this case, waived his right to pursue a rescissionary remedy, and has a long and ugly history of racist, anti-Semitic, and homophobic statements directed at the parties and others. Now that Anvari has outlived his usefulness, HGT Law and LTL Attorneys seek to discard the plaintiff selected by this Court in favor of their own, hand-picked client, Artium Frunze ("Frunze").

On January 30, 2019, third party Trigon Trading Pty. Ltd. ("Trigon") filed a motion to substitute it as Lead Plaintiff. (Dkt. No. 198.) Ultimately, Defendants Arthur Breitman, Kathleen Breitman, and Dynamic Ledger Solutions Inc., (collectively, "DLS Defendants") take no position as to who is best suited to be lead plaintiff in this matter. However, DLS Defendants request that the Court take three procedural steps before considering the pending motion for class certification (Dkt. No. 187, filed on January 10, 2019) or any other proceedings in this action.

**First**, in light of the dueling motions to substitute filed by Frunze and Trigon, the Court should re-open the lead plaintiff selection process mandated by the PLSRA. The PLSRA simply does not contemplate that Lead Counsel should be able to unilaterally decide who will represent the putative class and control the litigation; indeed such an outcome contradicts the clear purpose of the statute. The Court should appoint a new lead plaintiff now, before the parties are put to the burden and expense of conducting further discovery and before DLS Defendants are required to oppose the class certification motion. The parties have already spent significant resources conducting discovery

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

directed at Anvari as Lead Plaintiff, anticipating that he would file a class certification motion and seek to be appointed class representative. The parties now need to start that effort anew with discovery of Frunze (and Pumaro LLC, another token holder belatedly added as a named plaintiff), Trigon, or anyone else who may be appointed as Lead Plaintiff. Those efforts, too, will be wasted if another putative class member is appointed or if the Court determines that Lead Counsel followed a defective process to replace Lead Plaintiff and those shortcomings impact the class certification motion.

**Second,** the Court should require the new lead plaintiff—be it Frunze, Trigon or anyone else—to file an amended complaint and give DLS Defendants an opportunity to move to dismiss. DLS Defendants do not intend to revisit every argument raised last year. However, the Court decided two issues based on factual allegations particular to Anvari: 1) that Anvari had sufficiently alleged that he was personally unaware of the Contribution Terms at the time of the Fundraiser; and 2) that Anvari's claims were not barred under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 269 (2010), because, as an American citizen, the Court found it plausible that Anvari's alleged transactions occurred in the United States. Plaintiffs should not be allowed to use Anvari to squeak by on these arguments only to drop him later on in favor of new representatives whose claims are never subjected to the same scrutiny. Indeed, given court filings made by Trigon and Frunze, there is reason to believe both Trigon and Frunze are Australian persons and their contributions should ***not*** be governed by U.S. securities law.

**Third**, given the need to re-open the lead plaintiff selection process and resolve any ensuing pleading challenges, this Court should deny the pending motion for class certification without prejudice to its re-filing at a later date.[1]

DLS Defendants accordingly request that the Court (1) appoint a new lead plaintiff pursuant to the procedures required by the PLSRA; (2) set a deadline for the new lead plaintiff to file an

---

[1] Pursuant to a stipulation, this Court recently reset the hearing date on the motion for class certification for July 31, 2019. (Dkt. No. 199.) However, a couple hours after the parties submitted this stipulation, Trigon filed its substitution motion. (*See* Dkt Nos. 197, 198.) Now that there is a live dispute as to the proper lead plaintiff, Defendants agree with Trigon that cleanest procedural path forward is for this Court to deny the pending class certification motion *without prejudice*, to allow other threshold issues to be sorted out first.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

amended complaint; and (3) deny the pending class certification motion without prejudice.

## II.   PROCEDURAL BACKGROUND

This matter consolidates four federal securities class actions, all of which generally alleged that a fundraiser held by the Tezos Foundation in the summer of 2017 (the "Fundraiser") violated the Securities Act of 1933. *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, Nos. 17-cv-6779, et al., 2018 WL 1388488, at *1 (N.D. Cal. Mar. 16, 2018). On January 25, 2018, five sets of plaintiffs and law firms moved for appointment as lead plaintiff and class counsel. *Id.* at 3.

The Court ultimately appointed Arman Anvari as lead plaintiff, finding that he had the largest financial stake in this matter. *Id.* at *3, *5. Simultaneously, the Court appointed Anvari's attorneys at HGT Law and LTL Attorneys as class counsel.[2] *Id.* Anvari filed the Consolidated Complaint in this action on April 3, 2018. (Dkt. No. 108.)

All Defendants moved to dismiss the counts against them asserted in the Consolidated Complaint on various grounds. *In re Tezos Secs. Litig.,* No. 17-cv-6779, 2018 WL 4293341, at *3 (N.D. Cal. Aug. 7, 2018). The Court granted the motions brought by Timothy Draper, Draper Associates V Crypto LLC, and Bitcoin Suisse but found that Anvari had adequately pled causes of action against the Tezos Foundation, Arthur and Kathleen Breitman, and Dynamic Ledger Solutions. *Id.* at *11.

In its order, the Court expressly recognized that it may need to re-visit two issues depending on what the discovery revealed. First was the application of the Contribution Terms. The Contribution Terms provide that any claims related to the Fundraiser are governed by Swiss law and must be heard in Zug, Switzerland. *In re Tezos*, 2018 WL 4293341, at *7. The Court found that the Contribution Terms could be enforceable if Anvari had actual notice of them. *Id.* Ultimately though, the Court determined that Anvari had adequately averred in the complaint—primarily by silence—that he was not aware of the terms and chose to grant him "what may ultimately prove to be fleeting procedural

---

[2] Shortly after this Court denied Trigon and Block & Leviton's bid to be named as Lead Plaintiff and/or Lead Counsel, on April 24, 2018, Block & Leviton's client voluntarily dismissed his federal court action and filed a virtually identical complaint in California state court. *See Trigon Trading Pty. Ltd. v. Dynamic Ledger Sols., Inc.*, No. 18-cv-2045, San Mateo Cty. Super. Ct. Subsequently, Trigon denied that it was engaged in forum shopping. Now, of course Trigon is back in federal court asking to be appointed lead plaintiff.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

mercy." *Id.* Second, the Court found that Anvari's claims did not offend *Morrison*'s bar on the extra-territorial application of U.S. securities law because "[v]iewed in the light most favorable to Anvari," it was reasonable to conclude that his contribution to the Fundraiser occurred in the United States. *Id.* at *8. The Court reached this conclusion based largely on Anvari's extensive contacts with the United States: the fact that he is an American citizen, that he participated in the transaction while he was in the United States, and (allegedly) that he responded to marketing targeting residents of the United States. *Id.*

Anvari declined to amend his complaint and the parties proceeded with discovery. The parties quickly realized that Anvari had serious shortcomings as lead plaintiff and class representative. Beyond the distinct prospect that Anvari was in fact aware of the Contribution Terms at the time he participated in the Fundraiser, Anvari had previously made statements—some of them crude and vulgar—that blockchain-based tokens are not securities. Furthermore, Anvari's internet posts also contained numerous racist, homophobic, and anti-Semitic rants, some of them even directed at those involved in the Tezos Project and other Defendants. (Declaration of Scott M. Malzahn ("Malzahn Decl."), ¶¶ 2, 4-5; Ex. C, D.)[3]

Beginning in August 2018, DLS Defendants on multiple occasions placed Anvari's counsel on notice of these problems. On August 2, 2018, DLS Defendants sent a preservation demand letter in which they advised Anvari's counsel about pseudonyms they believe were used by Anvari on social media sites. (Malzahn Decl., ¶ 3; Ex. A.) Their counsel demanded that Anvari preserve "all [his] social media postings" and identified examples of posts made under pseudonyms, including one post in November 2017 *after this lawsuit was filed* in which Anvari expressed interest in purchasing XTZ (the tokens tied to the Tezos blockchain) from other contributors "'for the price you paid for them'" and other posts where Anvari asked users who had offered to sell XTZ to email him. (*See id.*, Ex. A at 1; Ex. B.) The letter also disclosed that Anvari had made "anti-Semitic posts directed towards" Arthur Breitman and Kathleen Breitman on Reddit and AutoAdmit, and that Anvari should preserve his internet and download history relating to the Fundraiser and Contribution Terms. (*See id.*, Ex. A

---

[3] Some documents referenced in this Declaration are currently in the process of being produced to counsel for Anvari.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

at 1-2; Ex. C, D.)  Even after being placed on notice of the problems with his case, Anvari continued to actively litigate and conduct discovery under the pretense that he would remain as Lead Plaintiff.

In November 2018, HGT Law and LTL Attorneys partnered up with two other firms to add Pumaro as a new named plaintiff. (Dkt. Nos. 180, 182).[4]

In January 2019, HGT Law and LTL Attorneys proposed the addition of yet another named plaintiff, Frunze, who allegedly contributed 238 Ether to the Tezos fundraiser.  As with Pumaro before him, the parties stipulated to add Frunze as a named plaintiff. (Dkt. No. 186.)

Two days after adding Frunze as a plaintiff, HGT Law and LTL Attorneys moved for class certification on January 9, 2019. (Dkt. No. 187-3.)  The motion for class certification, however, made no mention of Anvari himself and instead only offered Pumaro and Frunze as class representatives. (Dkt. No. 187-3 at 3.)

Two weeks after filing a motion for class certification, on January 25, 2019, HGT Law and LTL Attorneys filed a motion for Anvari to withdraw and to substitute Frunze as Lead Plaintiff. (Dkt. No. 196.)  On January 30, Trigon filed its own competing motion. (Dkt. No. 198.)

## III. ARGUMENT

### A. The Court Should Re-Open the PLSRA Lead Plaintiff Selection Process

As Trigon argues (Dkt. No. 196), DLS Defendants agree this Court should appoint a new lead plaintiff.  In theory, DLS Defendants do not object to Frunze, Trigon (or any other purported class member) serving as lead plaintiff.  But DLS Defendants have an interest in ensuring that the proper process is used to select and appoint a replacement lead plaintiff.  Otherwise, the lead plaintiff may be subject to challenge after DLS Defendants have, again, spent significant time and resources conducting discovery and litigating issues specific to the lead plaintiff.

Frunze did not move to be, nor was he appointed, the lead plaintiff in this case under the original PLSRA process, and in fact, only became a plaintiff two days before the motion for class certification was filed.  However, Lead Counsel has unilaterally selected Frunze as the person "most

---

[4] Pumaro previously moved to be appointed as Lead Plaintiff, but this Court declined to appoint Pumaro to that position due to its relatively small financial interest (1.9 Bitcoin). (Dkt. Nos. 53, 101.) Apparently given this Court's prior decision to not appoint Pumaro as Lead Plaintiff, HGT Law and LTL Attorneys did not seek to replace Anvari with Pumaro in that position.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

capable of adequately representing the interests of [the] class members" even though Congress expressly entrusted that decision to the Court. 15 U.S.C. § 78u-4(a)(3)(B)(i).

Other courts that have confronted this basic fact pattern—the withdrawal of the PLSRA appointed lead plaintiff—have concluded that the replacement lead plaintiff must be selected in accordance with the PLSRA (potentially on an expedited schedule) before the court can consider any motion for class certification. *See, e,g., In re Neopharm Inc. Secs. Litig.*, No. 02-cv-2976, 2004 WL 742084, at *2-3 (N.D. Ill. Apr. 7, 2004) (denying class certification where motion sought to have putative class represented by plaintiffs other than those approved by the court); *Ft. Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326-27 (S.D.N.Y. 2012) (re-opening PLSRA appointment process and soliciting applications for a new lead plaintiff after original lead plaintiff withdrew); *In re Smith Barney Transfer Agent Litig.*, No. 05-cv-7583, 2011 WL 6318988, at *3 (S.D.N.Y. Dec. 15, 2011) (describing slightly modified standards for selection of substitute lead plaintiffs).

*In re Neopharm* is particularly instructive. There, the court initially appointed Larson Capital Management as lead plaintiff under the PLSRA and Larson's chosen attorneys at Milberg Weiss as class counsel. *In re Neopharm,* 2004 WL 742084, at *1. After the case had progressed, Larson Capital Management decided to withdraw. Its attorneys at Milberg Weiss proposed Operating Engineers Construction Industry and Miscellaneous Pension Fund as a substitute lead plaintiff and filed a motion for class certification on their behalf. *Id.* The Court refused, however, to simply accept Milberg Weiss's proposed substitution and re-opened the PLSRA lead plaintiff appointment process (on an abbreviated schedule). *Id.* at *3. The court denied the motion for class certification without prejudice "[c]onsidering the uncertainty caused by Larson's withdrawal as lead plaintiff . . . ." *Id.* Animating the court's reasoning was the fundamental goal of the PLSRA to move from lawyer to client-driven litigation; substituting one lead plaintiff appointed by the court for another handpicked by the lawyers without any scrutiny or oversight from the court would turn the PLSRA on its head. *Id.*

Anvari's motion to withdraw completely ignores the impact of his withdrawal on the pending motion for class certification and other aspects of the litigation, and the authority cited in his motion is inapposite. For instance, in *In re NYSE Specialists Securities Litigation*, the Court initially

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

appointed two lead plaintiffs: Empire NJ and CalPERS. 240 F.R.D. 128, 131 (2007). After a member of the putative class successfully moved to disqualify Empire NJ, the Court found that CalPERS could continue as the sole lead plaintiff, and therefore there was no need to reopen the lead plaintiff process. *Id.* at 139; *see also In re Impax Labs, Inc. Secs. Litig.*, No. 04-cv-4802, 2008 U.S. Dist. LEXIS 104485, at *25 (N.D. Cal. Apr. 17, 2008) (finding it unnecessary to reopen lead plaintiff process after appointed lead plaintiff was found to lack standing because one original named plaintiff remained and possessed the requisite standing). *In re Portal Software Securities Litigation.* is also distinguishable—there the Court found that there was no need to reopen the lead plaintiff process to add a Rule 23 class representative <u>in addition to</u> – not in replacement of – the lead plaintiff previously appointed by the Court. No. 03-cv-5138, 2005 U.S. Dist. LEXIS 41178, at *3-4 (N.D. Cal. Mar. 9, 2005).[5] In contrast to these cases, if the Court grants Anvari's motion to withdraw and to substitute, none of the plaintiffs who will control this litigation and represent the putative class will have been appointed by the Court through the process mandated by Congress.

Finally, DLS Defendants take no position as to whether Frunze or Trigon deserve to be appointed lead plaintiff under the PLSRA. Nor do DLS Defendants take any position as to what law firm or firms should represent the putative class.

### B. The Substituted Lead Plaintiff Should File an Amended Complaint That Defendants Should be Allowed to Challenge

Regardless of who is appointed to serve as the new lead plaintiff, DLS Defendants request that the Court order the filing of a new complaint and provide DLS Defendants with an opportunity to move to dismiss. To facilitate a swift resolution of any motion to dismiss, the lead plaintiff should be required to plead facts regarding their knowledge of the Contribution Terms, and explain their residency and their location at the time they contributed to the fundraiser.

There are at least two areas where a new lead plaintiff may not be able to make the same allegations as Anvari. The first issue is the new lead plaintiff's knowledge of the Contribution Terms.

---

[5] Plaintiffs also cite *Z-Seven Fund*, which is entirely irrelevant as it concerned whether an initial order designating a lead plaintiff under the PSLRA was appealable and says nothing about the proper procedure for substitution. *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219 (9th Cir. 2000).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

The Contribution Terms provide that any dispute related to the Fundraiser will be governed by Swiss law and heard by a Swiss court. *In re Tezos,* 2018 WL 4293341, at *2 & n.7. As the Court recognized, if a plaintiff had "actual knowledge" of the Contribution Terms they may be enforceable and would bar the plaintiff's claims here. *Id.* at *7. Anvari was (barely) able to state that he had no notice of the Contribution Terms at the time he participated in the Fundraiser. Neither the Court nor the DLS Defendants can simply assume that Trigon or Frunze (or some other new plaintiff) would be able to allege in good faith that it had no knowledge of the Contribution Terms and that the terms would not therefore bar its claims.

Second, a new lead plaintiff may not be able to allege facts showing that its participation in the Fundraiser occurred in the United States. Under *Morrison v. National Australia Bank Ltd.*, a plaintiff can only assert a claim under American securities law if it participated in the Fundraiser "in the United States." *See* 561 U.S. 247, 269.[6] In the last round of motion to dismiss briefing, the Court could not conclude as a matter of law that Anvari did not make his contribution to the Fundraiser in the U.S. in large part because Anvari is an American. *In re Tezos Secs. Litig.,* 2018 WL 4293341, at *3. Specifically, the Court found that Anvari (as alleged in the pleadings) made his donation while he was physically in the United States and likely did so in response to marketing materials that "targeted United States residents." *Id.* at *8. However, there is reason to believe based on court filings made by Trigon and Frunze <u>that they may be residents of Australia</u> (indeed, the fact that Frunze signed his declaration in that country would strongly suggest this, as do filings made by Trigon in the state court matter) and any allegations they make about their participation in the Fundraiser would likely be materially different from those of Anvari. In any event, the specific allegations of a substitute lead plaintiff could easily change the Court's analysis of whether such plaintiff contributed to the Fundraiser in the United States and the substitute accordingly should not be able to glide past the pleading stage simply because Anvari was successful.

DLS Defendants have no desire to needlessly re-tread the same ground again and would not move to dismiss for reasons (such as personal jurisdiction) that are not tethered to the identity of the

---

[6] The only other possibility—that the transaction involves a security listed on an American exchange—is not applicable here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS

lead plaintiff. It is also possible that a new lead plaintiff will be able to make the same good faith allegations that Anvari did, in which case DLS Defendants would not move to dismiss again. But pleadings exist for a reason, and a new lead plaintiff cannot be allowed to simply leapfrog past this critical step simply because another litigant—potentially one very differently situated with respect to key facts—was able to withstand a motion to dismiss.

## IV. CONCLUSION

DLS Defendants request that the Court's order on Anvari's motion to withdraw:

1) Re-open the PLSRA lead plaintiff selection process;

2) Require the substitute lead plaintiff to file an amended complaint by a certain date and give DLS Defendants an opportunity to move to dismiss that pleading; and

3) Deny the motion for class certification without prejudice.

Dated: February 7, 2019                    **BAKER MARQUART LLP**


                                           */s/ Scott M. Malzahn*
                                           Scott M. Malzahn (229204)

                                           Attorneys for Defendants
                                           DYNAMIC LEDGER SOLUTIONS, INC.

                                           **COOLEY LLP**


                                           */s/ Jessica Valenzuela Santamaria*
                                           Jessica Valenzuela Santamaria (220934)

                                           Attorneys for Defendant
                                           DYNAMIC LEDGER SOLUTIONS, INC.,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' RESPONSE TO MOTION
TO SUBSTITUTE LEAD PLAINTIFF
CASE NO. 17-CV-06779-RS