**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No.  17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TRIGON TRADING'S MOTION TO SUBSTITUTE** |
| ALL ACTIONS. | |
| | Date:     March 7, 2019 |
| | Time:     1:30 p.m. |
| | Crtrm:    3 |
| | Judge:    Hon. Richard Seeborg |

1

**TABLE OF CONTENTS**

2

**Page No.**

3
INTRODUCTION ............................................................................................................1

4
ARGUMENT..................................................................................................................3

5
6
I.     TRIGON AND ITS ATTORNEYS DELIBERATELY CIRCUMVENTED THIS
       COURT'S PLSRA ORDER, AND THEIR ATTEMPT NOW TO INVOKE THE
       PSLRA SHOULD BE DENIED..............................................................................3

7
8
II.    ALLOWING TRIGON TO RE-LITIGATE IN FEDERAL COURT VIOLATES
       *CYAN*. ................................................................................................................5

9
10
III.   TRIGON AND ITS ATTORNEYS HAVE ALREADY DEMONSTRATED THEIR
       INADEQUACY TO REPRESENT THE CLASS........................................................6

11
IV.    TRIGON'S REMAINING ARGUMENTS ARE BASELESS. ...................................7

12
CONCLUSION................................................................................................................9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>INTRODUCTION</u>**

2        On March 16, 2018, the Court consolidated a number of related federal actions, and appointed

3  Arman Anvari as Lead Plaintiff under the PSLRA.  Dkt. No. 101.  The Court appointed Mr. Anvari

4  over four other competing groups of plaintiffs.  In response to Plaintiffs' Motion to Substitute Lead

5  Plaintiff, filed on January 25, 2019, none of these competing groups of plaintiffs has stepped forward,

6  except for Trigon Trading Pty. Ltd. ("Trigon").  Trigon's motion to be appointed the substitute lead

7  should be denied, for the following reasons.

8        *First*, Trigon and its attorneys, Block & Leviton LLP ("Block & Leviton") and Hagens

9  Berman Sobol Shapiro LLP ("Hagens Berman"), have already openly repudiated the Court's

10  authority under the PSLRA, and therefore have no right to any relief under the PSLRA.

11        At the time of the lead plaintiff applications in January 2018, Block & Leviton and Hagens

12  Berman represented two plaintiffs before this Court: (a) Bruce MacDonald, who had commenced the

13  action entitled *MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 17-07095; and (b) Trigon, who

14  did not itself commence an action but sought to be appointed Lead Plaintiff.  On March 16, 2018, the

15  Court appointed Mr. Anvari as Lead Plaintiff.  Dissatisfied with the Court's PSLRA order, Trigon

16  and its attorneys chose to "take their talents to South Beach" by refiling in state court.  Specifically,

17  Trigon's attorneys voluntarily dismissed the *MacDonald* action and then, four days later, on April 24,

18  2018, filed a new lawsuit in the California State Superior Court, San Mateo County, on behalf of

19  Trigon and MacDonald together (the "Trigon/MacDonald State Court Action").  This lawsuit asserted

20  the same claims on behalf of the same putative Class and named the same Defendants in this

21  consolidated federal class action, and was possible only because of the Supreme Court's decision in

22  *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S.Ct. 1061 (2018), which held that state courts

23  had concurrent jurisdiction of claims under the Securities Act.  The Trigon/Macdonald State Court

24  Action added no value, did not serve the interests of the putative Class, and was filed solely to further

25  the interests of Trigon's lawyers.

26        Despite having *circumvented* the Court's PSLRA order, Trigon and its attorneys are now back

27  before this Court seeking to *invoke* the PSLRA and lead this federal action.  The Court should reject

28  such gamesmanship in the strongest terms, and ensure that other plaintiffs and other law firms will

1  be deterred from engaging in such conduct.  If Trigon and its attorneys are rewarded by being

2  appointed lead, this case will set a dangerous precedent in the era of *Cyan*.  It will encourage others,

3  like Trigon and its attorneys, to treat the PSLRA and federal courts with contumelious disregard.

4        *Second*, under *Cyan* and SLUSA, Trigon cannot litigate simultaneously in state court and

5  federal court.  In *Cyan*, the Supreme Court held that state courts retain concurrent jurisdiction of class

6  actions brought under the Securities Act, and such class actions may not be removed to federal court.

7  However, for *Cyan* and SLUSA to have any meaning, a state court plaintiff must stay in state court.

8  Having avoided removal to federal court, the state court plaintiff cannot simultaneously be in federal

9  court.  Otherwise, the whole framework under *Cyan* and SLUSA would be rendered nugatory.  Here,

10  Trigon filed the Trigon/MacDonald State Court Action in state court.  That action is still pending.

11  Having elected to file in state court under *Cyan*, Trigon cannot simultaneously litigate in federal court.

12        *Third*, it is clear that Trigon and its attorneys cannot adequately represent the Class.  The

13  parallel Trigon/MacDonald State Court Action is *still pending*, and is being litigated by Trigon and

14  MacDonald.  *See Tezos ICO Cases*, Superior Court of California, San Francisco, CJC-18-004978,

15  Dkt. No. 27 (Dec. 14, 2018 case management statement filed by Trigon in coordinated state court

16  actions), attached to the Ta Declaration as Ex. A.[1]  As an initial matter, Trigon did not dismiss itself

17  from the Trigon/MacDonald State Court Action before moving to be appointed lead in this action.

18  But even if it were to do so, MacDonald would still remain in that state court action.  It is unclear

19  how the same counsel can represent the putative Class and Trigon in federal court, while representing

20  the same putative Class and MacDonald, with or without Trigon, in an identical state court action.

21        For example, underscoring this fundamental conflict, Trigon and its attorneys have asked this

22  Court, in addition to appointing them lead, to **deny** the pending motion for class certification filed by

23  Plaintiffs in this action.  This is an extraordinary, self-serving request that highlights how Trigon and

24  its attorneys will subordinate the interests of the proposed Class to their own interests.  Trigon has

25  offered no reason why the motion for class certification should be denied other than the fact it desires

26  to be appointed Lead Plaintiff.  In short, Trigon and its attorneys cannot be entrusted to zealously or

27

28  [1]      "Ta Declaration" refers to the Declaration of Hung Ta, dated February 13, 2019 submitted
concurrently herewith.

1    even adequately conduct the litigation of this federal action.

2        _Finally_, Trigon's motion is replete with legally and factually inaccurate assertions.  For

3    example, Trigon argues a substitute Lead Plaintiff must be appointed only from those persons who

4    applied to be lead in the original PSLRA 60-day window.  However, _numerous_ courts in the Northern

5    District of California have held precisely the contrary, and their decisions go unmentioned by Trigon's

6    attorneys.  Also, Trigon's attorneys accuse Lead Plaintiff of cutting a deal with Defendants to dismiss

7    the Draper and Bitcoin Suisse Defendants from this action.  This is patently absurd.  The Court

8    _dismissed_ those claims, and Lead Plaintiff amended his complaint simply to reflect this.

9        In the instant case, between March 2018 and January 2019, the Court-appointed Lead Counsel

10   and Lead Plaintiff, himself an experienced senior corporate attorney, vigorously litigated this action,

11   not only substantially prevailing on several motions to dismiss, but also conducting extensive

12   discovery as well as a full day of mediation, and filing a motion for class certification.  Despite

13   faithfully carrying out their duties on behalf of the Class, by January 2019, the extensive discovery

14   and arguments exchanged between the parties led Lead Plaintiff and Lead Counsel to conclude that

15   issues unique to Lead Plaintiff presented risks on class certification, and that other plaintiffs would

16   be better-positioned to represent the Class's interests.  Thus, on January 25, 2019, after supervising

17   this action up to now, Lead Plaintiff moved, solely for the benefit of the proposed Class, to substitute

18   Artiom Frunze, a named plaintiff and one of the two proposed class representatives, as Lead Plaintiff

19   in his stead.

20                                      **ARGUMENT**

21   **I.    TRIGON AND ITS ATTORNEYS DELIBERATELY CIRCUMVENTED THIS
22          COURT'S PLSRA ORDER, AND THEIR ATTEMPT NOW TO INVOKE THE
             PSLRA SHOULD BE DENIED.**

23       On March 16, 2018, the Court issued a carefully-reasoned, 11-page consolidation and
24   appointment order that discussed the PSLRA's lead plaintiff process in detail.  Dkt. No. 101.  The

25   Court cited Trigon's smaller investment amount as determinative in denying Trigon's request for

26   appointment as lead plaintiff.  _Id._ at 7.  The Court also denied Trigon's request not to consolidate the

27   _MacDonald_ action.  _Id._ at 3-4.

28

LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION TO TRIGON'S MOTION TO SUBSTITUTE
NO. 3:17-CV-06779-RS

1   Dissatisfied with the Court's PSLRA decision, however, Trigon's attorneys proceeded to

2   dismiss *MacDonald* rather than have it be consolidated.  Together with Trigon, plaintiff MacDonald

3   then re-filed a substantively duplicative lawsuit in state court.  In state court, Trigon/MacDonald and

4   their attorneys asserted only claims under federal securities law to ensure that, pursuant to *Cyan*, the

5   case could not be removed to federal court.[2]  Thus, the Trigon/MacDonald State Court Action served

6   no purpose other than to circumvent the PSLRA Lead Plaintiff process and this Court's PSLRA order,

7   and to carve out a parallel, duplicative role for Trigon's attorneys.

8   Having already actively sought to undermine the PSLRA process, Trigon and its attorneys

9   should not be rewarded by this Court by being allowed to re-invoke the privileges of the PSLRA.  In

10  *In re BankAmerica Corp. Secs. Litig.*, 95 F. Supp. 2d 1044 (E.D. Mo. 2000), *aff'd*, 263 F.3d 795 (8th

11  Cir. 2001) the court enjoined (under the All Writs Act, 28 U.S.C. § 1651(a)) a state court action that

12  had been filed by a federal plaintiff who had been denied lead plaintiff status in federal court.  There,

13  "[w]hen it became clear that the firm's clients lacked the financial stake to become lead plaintiffs in

14  the federal case, and thereby select Milberg Weiss as lead counsel, Milberg Weiss dismissed the

15  federal case to focus on the California cases where no financial stake rules govern the selection of

16  lead plaintiffs and lead counsel."  *BankAmerica*, 95 F. Supp. 2d at 1046.  In issuing an injunction, the

17  court observed that "Milberg Weiss's behavior in these cases are precisely the sort of lawyer-driven

18  machinations the PSLRA was designed to prevent. Hindsight now reveals that the simultaneous filing

19  of suits in state and federal court was a blatant attempt at forum shopping. When the federal forum

20  proved unsavory because Milberg Weiss would not be able to control that case, the firm simply took

21  its marbles and went to play in the state court."  *Id.* at 1050.

22  The circumstances before this Court are nearly identical.  The only difference is that Trigon,

23  the state court plaintiff, has come *back* to federal court for a second bite at the apple.  Therefore, the

24  issue before the Court is even more straight-forward than that in *BankAmerica*, because Lead Plaintiff

25

26

27  [2]   *See* Ta Declaration, Ex. B, *Trigon Trading Pty. Ltd., et al. v. Dynamic Ledger Solutions, Inc., et al.* Superior Court of California, County of San Mateo, Case No. 18CIV02045, Dkt. No. 1 (Apr. 24, 2018) (complaint asserting only federal law claims).

28

1    does not seek to enjoin the Trigon/MacDonald State Court Action under the All Writs Act.  Instead,

2    Lead Plaintiff's argument is simply that Trigon should not be permitted to re-invoke the PSLRA after

3    previously repudiating this Court's jurisdiction under the PSLRA.[3]  Allowing Trigon to do so would

4    set a bad precedent and encourage other plaintiffs and other law firms in future cases to ignore the

5    jurisdiction of federal courts under the PSLRA.

6    **II.     ALLOWING TRIGON TO RE-LITIGATE IN FEDERAL COURT VIOLATES *CYAN*.**

7            Beyond the hurdle posed by its previous repudiation of this Court's jurisdiction under the

8    PSLRA, allowing Trigon to move for lead in this action would violate the carefully-constructed

9    balance, struck by the Supreme Court in *Cyan*, between state courts and the federal courts in class

10   actions brought under the Securities Act.  In *Cyan*, the Supreme Court affirmed the concurrent

11   jurisdiction of state courts over class actions brought under the Securities Act, holding: "SLUSA did

12   nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only

13   1933 Act violations. Neither did SLUSA authorize removing such suits from state to federal court."

14   138 S. Ct. at 1078.  However, for *Cyan* to have any meaning, a plaintiff who files in state court must

15   stay in state court.  The whole point of the Supreme Court's analysis in *Cyan* was to carve out *separate*

16   niches for state courts and federal courts with respect to class actions asserting claims under the

17   Securities Act.  It would entirely up-end *Cyan* and SLUSA for a plaintiff to file in state court, *escape*

18   *removal to federal court*, and then be allowed to simultaneously *litigate in federal court*.

19          Unsurprisingly, numerous courts both before and after *Cyan* have held that a plaintiff cannot

20   forum shop in *both* federal and state court simultaneously, but must make a choice.  *See Sciabacucchi*

21   *v. Salzberg*, C.A. No. 2017-0931-JTL, 2018 Del. Ch. LEXIS 578, at *15 (Del. Ch. Dec. 19, 2018)

22   ("after [*Cyan*], under the federal regime, a plaintiff wishing to sue under the 1933 Act could maintain

23   an action in **either** state or federal court") (emphasis added); *Peoples Nat'l Bank v. Darling*, No. 91-

24   1052-K, 1991 U.S. Dist. LEXIS 4230, at *5 (D. Kan. Apr. 1, 1991) (observing that the Securities Act

25

26

---

3       *See also In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*, 934 F. Supp. 2d 1219,

27   1231-33 (C.D Cal. Mar. 21, 2013) (refusing to extend the benefit of federal tolling law to a state
     plaintiff because that would allow an "abusive class action [to] remain[] in state court for years,

28   whereas the Federal Rules and PSLRA requirements might have led to a swifter resolution.").

claims may be brought in "either" state or federal court); *N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Trust 2006-4*, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008) (same); *Jian Guo v. ZTO Express (Cayman) Inc.*, No. 17-cv-05357-JST, 2017 U.S. Dist. LEXIS 211181, at *10 (N.D. Cal. Dec. 22, 2017) (in deciding a stay and remand motion shortly before *Cyan* was issued, holding that the case "will proceed in *either* state or federal court after … Cyan.") (emphasis added).

Here, invoking *Cyan*, Trigon was able to file and maintain the Trigon/MacDonald State Court Action in state court without being subject to removal to federal court under SLUSA.  Therefore, under *Cyan* and the above decisions, Trigon is now barred from double-dipping in federal court.

## III.   TRIGON AND ITS ATTORNEYS HAVE ALREADY DEMONSTRATED THEIR INADEQUACY TO REPRESENT THE CLASS.

Under the PSLRA, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).  Here, Trigon and its attorneys' actions establish that they are more than willing to advance their personal interests regardless of the potential harm to the proposed Class.

Specifically, having been rejected as Lead Plaintiff in this federal action, Trigon could have chosen to await an outcome and opt out if dissatisfied with that outcome.  Instead, Trigon sought to subvert the federal action by filing a parallel, duplicative action that served merely to carve out a role for its attorneys.  Then, as its first step in returning to federal court, Trigon has even asked the court to *deny* the pending motion for class certification, presumably so its lawyers can file a copycat motion of their own and receive credit.  Trigon advances no legitimate reason why it seeks to make *Defendants'* argument for them.  In short, Trigon and its attorneys are hopelessly conflicted, and cannot be entrusted with the interests of the putative Class in this federal action.  Moreover, Trigon and its counsel offer no explanation or even any discussion as to how they intend to continue advancing the lawsuit, including discovery in this case.  Trigon and its counsel apparently assume

1  that they can simply parachute into this case after it has been proceeding for nearly a year and pick

2  up right where Lead Counsel has left off.  To the contrary, permitting Trigon and its counsel to take

3  over this case would be severely disruptive of litigation strategy and discovery in this case, as to

4  which the parties have met and conferred on multiple, lengthy occasions, and for which many issues

5  remain outstanding.

6  **IV.    TRIGON'S REMAINING ARGUMENTS ARE BASELESS.**

7        In its motion, Trigon makes a number of other assertions that have no legal or factual merit.

8        Trigon argues that Artiom Frunze is not eligible to seek appointment as the substitute Lead

9  Plaintiff because he did not move during the original 60-day window under the PSLRA.  Trigon

10  Motion at 4-5.  Trigon is wrong.  As discussed in Plaintiffs' Motion to Substitute Lead Plaintiff (Dkt.

11  No. 196), the PSLRA is "entirely silent on the proper procedure for substituting a new lead plaintiff

12  when the previously certified one withdraws."  *In re Initial Public Offering Sec. Litig.*, 214 F.R.D.

13  117, 120 (S.D.N.Y. 2002).  The PSLRA nowhere states that, in the event of a withdrawal of the

14  original court-appointed Lead Plaintiff, only a movant who filed within the original 60-day window

15  is entitled to move to be substituted.  In the absence of statutory guidance, numerous courts in this

16  and other districts have exercised their discretion and permitted substitution by plaintiffs who did not

17  originally move for appointment as Lead Plaintiff.  *See In re Impax Labs., Inc. Sec. Litig.*, No. C04-

18  04802-JW, 2008 U.S. Dist. LEXIS 104485, at *28 (N.D. Cal. Apr. 17, 2008) (Ware, J.) (analyzing

19  "legislative intent with respect to the PSLRA's lead plaintiff process" and appointing City of

20  Dearborn Heights Act 345 Police & Fire Retirement Systems as the substitute Lead Plaintiff, even

21  though the defendants argued that Dearborn Heights did not file an application for appointment as

22  Lead Plaintiff in the original 60-day window[4]); *Morgan v. AXT, Inc.*, No. C04-04362 (MJJ) (N.D.

23  Cal. Mar. 14, 2007), Dkt. No. 93 (granting motion to substitute a new lead plaintiff who had not

24  previously filed motion to be appointed lead[5]); *In re Bank of Am. Corp. Auction Rate Secs. Mktg.*

25

26  _____

[4]      *See* Ta Declaration, Ex. C, Dkt. No. 151, Defendants' Opposition to Plaintiffs' Request for
27  Leave to Add Plaintiff or, in the Alternative, the City of Dearborn Heights Act 345 Police & Fire
Retirement Systems' Request to Intervene, at 2.

28  [5]      *See* Ta Declaration, Ex. D, Dkt. Nos. 6, 9 and 12.

1   *Litig.*, No. MDL 09-02014-JSW, 2009 U.S. Dist. LEXIS 63433, at \*6-7 (N.D. Cal. July 9, 2009)

2  (permitting the Hamm Group to move for substitution as the Lead Plaintiff even though Defendants

3  argued that the "Hamm Group does not qualify as a Lead Plaintiff under the PSLRA's standards and

4  that the motion is either untimely, because the Hamm Group did not move at the outset of the litigation

5  to serve as Lead Plaintiff") and *In re Bank of Am. Corp. Auction Rate Secs. Mktg. Litig.*, No. MDL

6  09-02014-JSW, 2009, No. 2009 U.S. Dist. LEXIS 81946 (N.D. Cal. Aug. 26, 2009) (subsequently

7  appointing the Hamm Group as Lead Plaintiff); *Billhofer v. Flamel Techs. SA*, No. 07-civ-9920, 2010

8  U.S. Dist. LEXIS 99438, at \*8-9 (S.D.N.Y. Sept. 21, 2010) (ordering that "Billhofer's motion to

9  withdraw as Lead Plaintiff is granted, and Jenkins is substituted as Lead Plaintiff in this action," even

10  though Jenkins did not previously file a motion to appointed Lead Plaintiff).[6]

11       Further, the cases cited by Trigon are inapposite.  In *In re Microstrategy Sec. Litig.*, 110 F.

12  Supp. 2d 427, 430 (E.D. Va. 2000), the court reopened the PSLRA process because the substitution

13  motion came within weeks of the original lead plaintiff order and *before* an amended consolidated

14  complaint had even been filed.  Here, the litigation is far more advanced, having proceeded for nearly

15  a year, and Frunze is a named plaintiff in the operative complaint.  Moreover, even after re-opening

16  the lead plaintiff contest, the *MicroStrategy* court ultimately selected the counsel and plaintiff

17  proposed in the original lead plaintiff's substitution motion.  In *In re NYSE Specialists Sec. Litig.*, 240

18  F.R.D. 128, 142 (S.D.N.Y. 2007), the court did not appoint any new lead plaintiffs after removing

19  one because there remained another court-appointed co-lead plaintiff.  Indeed, the court in *NYSE*

20  *Specialists* even noted that, where appropriate, courts are free to appoint new lead-plaintiffs who

21  move outside of the original 60-day moving period.  In *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112,

22  117 n.2 (S.D.N.Y. 2009), after the Lead Plaintiff was found to lack standing, the Court denied the

23  Lead Plaintiff's request for substitution because the Lead Plaintiff did not in fact file any motion for

24  substitution.  In *Endress v. Gentiva Health Servs.*, 276 F.R.D. 62, 64 (E.D.N.Y. 2011), the court

25  simply declined to appoint a new lead plaintiff where the current lead plaintiff did not move to

26

27

28    [6]    *See* Ta Declaration Ex. E, Dkt. No. 8, Notice of Non-Opposition to Christel Billhofer's Motion for Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel, at 2.

1  withdraw and had not been shown to be inadequate.  The court in *Endress* also noted that it would

2  consider a withdrawal and substitution motion if and when it was filed.

3       Trigon also accuses Lead Plaintiff of "trad[ing]" away the right to revive the Class's claims

4  against the Draper and Bitcoin Suisse Defendants for the ability to add new plaintiffs (Trigon Motion

5  at 3), but this is absurd.  The Court dismissed the claims against these Defendants and entered an

6  order dismissing them from the action.  *See* Dkt. Nos. 148, 163.  Moreover, nothing prevents claims

7  against these Defendants to be revived should ongoing discovery reveal facts that would warrant it.

8       Finally, Trigon suggests that Lead Plaintiff "abandoned" the litigation.  Trigon Motion at 1.

9  That is incorrect.  Being a sophisticated, practicing attorney himself, Lead Plaintiff was deeply

10  involved in and supervised all aspects of this action.  It was only after extensive discovery and

11  exchanges between counsel, as well as a mediation, that Lead Counsel and Lead Plaintiff together

12  concluded that certain facts unique to him presented risks on class certification.  Having shepherded

13  the action to the class certification stage, Lead Plaintiff is now advancing more suitable

14  representatives in his stead in order to ensure the success of the certification motion and thereby

15  advance the proposed Class's interests.  *See NYSE Specialists.*, 240 F.R.D. at 134 ("It is certainly

16  within the lead plaintiffs' discretion and, perhaps more importantly, part of a lead plaintiff's

17  responsibility to propose their own withdrawal and substitution should it be discovered that they may

18  no longer adequately represent the interests of the purported plaintiff class.").  Moreover, until the

19  Court decides his motion, Lead Plaintiff has continued, and will continue, to serve in his supervisory

20  and leadership role.

21                                    **CONCLUSION**

22       For all the reasons set forth above, Trigon's motion to substitute should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Date: February 13, 2019        LTL ATTORNEYS LLP

By:  *s/ Enoch H. Liang*
          Enoch H. Liang
          LTL ATTORNEYS LLP
          601 Gateway Boulevard, Suite 1010
          South San Francisco, California 94080
          Tel:  650-422-2130
          Fax:  213-612-3773
          enoch.liang@ltlattorneys.com

          James M. Lee
          Caleb H. Liang
          LTL ATTORNEYS LLP
          300 S. Grand Ave., 14th Floor
          Los Angeles, California 90071
          Tel:  213-612-8900
          Fax:  213-612-3773
          james.lee@ltlattorneys.com
          caleb.liang@ltlattorneys.com

          Hung G. Ta
          JooYun Kim
          Natalia Williams
          Angus Ni
          HUNG G. TA, ESQ., PLLC
          250 Park Avenue, 7th Floor
          New York, New York 10177
          Tel: 646-453-7288
          Fax: 646-453-7289
          hta@hgtlaw.com
          jooyun@hgtlaw.com
          natalia@hgtlaw.com
          angus@hgtlaw.com

          *Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

          William R. Restis
          THE RESTIS LAW FIRM, P.C.
          550 West C Street, Suite 1760
          San Diego, California 92101
          Tel: 619.270.8383
          william@restislaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph J. DePalma
Bruce D. Greenberg
Jeremy Nash
LITE DEPALMA GREENBERG,
LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg@litedepalma.com
jnash@litedepalma.com

*Additional Counsel for the Class*

LEAD PLAINTIFF'S MEMORANDUM IN OPPOSITION TO TRIGON'S MOTION TO SUBSTITUTE
NO. 3:17-CV-06779-RS