# EXHIBIT C

BLANK ROME LLP
MICHAEL JOSEPH (pro hac vice)
JOSEPH O. CLICK (pro hac vice)
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
Telephone: 202/772-5966
202/572-8361 (fax)

BINGHAM MCCUTCHEN LLP
DALE BARNES (SBN 99273)
Three Embarcadero Center
San Francisco, CA 94111
Telephone: 415/393-2522
415/393-2286 (fax)

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re IMPAX LABORATORIES, INC. SECURITIES LITIGATION | Master File No. C-04-4802-JW |
| | <u>CLASS ACTION</u> |
| This Document Related To: | DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR LEAVE TO ADD PLAINTIFF OR, IN THE ALTERNATIVE, THE CITY OF DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE |
| ALL ACTIONS | |

i

**TABLE OF CONTENTS**

**PAGE**

**Table of Authorities** ...................................................................................................... ii

**Introduction** .................................................................................................................... 1

**Background** .................................................................................................................... 2

**Argument** ....................................................................................................................... 5

    I.    Local 655 Cannot Create a Case or Controversy by Simply "Inviting" Dearborn Heights to Join a Class Action ......................................................... 6

    II.    Appointment of Dearborn Heights as Lead Plaintiff or Class Representative Would Violate the PSLRA ..................................................... 6

    III.    Dearborn Heights' Intervention under Rule 23(b) Must Be Denied ............... 9

        A.    The Request to Intervene is Untimely ............................................... 10

        B.    Dearborn Heights' Claims Are Materially Different From Those of the Class ............................................................................. 11

**Conclusion** ................................................................................................................... 12

Blank Rome LLP
Watergate 600 New Hampshire Ave., NW Washington, DC 20037

i

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002)..................................6

*In re California Micro Devices Sec. Litigation*, 168 F.R.D. 257 (N.D. Cal. 1996).........11

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).....................................................2, 10

*In re Exodus Comm. Inc., Sec. Litig.*, 2006 WL 2355071 (N.D. Cal. Apr. 14, 2006) ........6

*Herrgott v. United States Dist. Court (In re Cavanaugh)*,
   306 F.3d 726 (9th Cir. 2002).................................................................................6, 7, 8

*Kelly v. Carr*, 691 F.2d 800 (6th Cir. 1980),..................................................................10

*Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ..........6

*In re Portal Software, Inc. Sec. Litigation*, No. CD-03-5138 VRW,
   2005 U.S. Dist LEXIS 41178 (N.D. Cal. March 9, 2005) ........................................7,8

*Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*,
   823 F.2d 302 (9th Cir. 1987)...................................................................................6, 10

*United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157 (1914) ........10

*In re Verisign, Inc. Sec. Litig.*, 2005 WL 88969 (N.D. Cal. Jan. 13, 2005) .......................6

## STATUTES AND RULES

1 U.S.C. § 1 ........................................................................................................................8

15 U.S.C. § 78u-4(a)(iii) ....................................................................................................6

15 U.S.C. § 78u-4(a)(2) ......................................................................................................8

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) .....................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(i) ..........................................................................................10

Fed. R. Civ. P. 15(a) ........................................................................................................11

Fed. R. Civ. P. 24(b) ..........................................................................................................5

Fed. R. Civ. P. 23 ..........................................................................................................1, 9

ii

**Introduction**

The "Request" of Lead Plaintiff United Food & Commercial Workers Union Local 655 (Local 655) that it be permitted to amend the Third Amended Complaint (TAC) to add City of Dearborn Heights Act 345 Police & Fire Retirement System (Dearborn Heights) as a lead plaintiff, or alternatively that Dearborn Heights be "permitted" to intervene, is highly unusual. The Request does not purport to be a motion, does not comply with the Local Rules concerning motions, is not filed by the putative new lead plaintiff itself, and is accompanied by the same standard-form "certification" that Local 655 and Dr. Melvin Owen signed almost three years ago. While the Request claims that Local 655 and Dr. Melvin Owen have "invited" Dearborn Heights to join the lawsuit, there is no declaration substantiating any such invitation. And, in arguing that the Court may allow Local 655 to add Dearborn Heights as a lead plaintiff without running afoul of the requirements of the PSLRA, the Request relies almost exclusively on cases decided before enactment of the PSLRA.

Moreover, even if the PSLRA permitted addition of a new lead plaintiff at this time, Dearborn Heights would not, as the PSLRA also requires, satisfy the "typicality" and "adequacy" requirements of Fed. R. Civ. P. 23(a). The linchpin of the Court's July 2007 holding that the TAC adequately alleges loss causation is its adoption of Local 655's argument that Impax's August 4, 2004 press release announcing second-quarter results disclosed something negative about Impax's first- and second-quarter financial results that somehow transformed Impax's November 3 announcement that it was delaying release of its third-quarter results into partial disclosure that the first- and second-quarter results were inaccurate. Dearborn Heights' certification, however, shows that on the very next day, August 5, it *purchased* 1,900 shares of Impax stock, conduct entirely inconsistent with the notion that the August 4 press release portended more bad news about the company. As the only way the purported class can hope to establish loss causation is by proving that the August 4 release somehow suggested to investors that Impax's first- and second-quarter financial results were incorrect, it is virtually impossible for Dearborn Heights—which obviously viewed the

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR, ALTERNATIVELY, DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

disclosure in a positive light—to adequately protect the interests of the class, and it is clear that its claim is not typical of the claim of the class.

**Background**

Local 655's "Request" is an attempt to avoid dismissal of this action for lack of jurisdiction due to the lack of any damages suffered by the lead plaintiff. The factual background and procedural context in which it arises is thus important to an understanding of the Request.

This action commenced more than three years ago, in November 2004, following Impax's November 9, 2004 announcement that its first- and second-quarter 2004 results would be restated. All versions of the complaints filed by Local 655, including the TAC, allege that Impax's first- and second-quarter 2004 financial statements overstated revenues and were thus false and misleading. All versions of the complaints filed by Local 655, including the TAC, allege that the overstatements were due to the failure of Impax's strategic partner, Teva Pharmaceuticals, to timely report credits that it had given to its customers for purchasers of the drug Bupropion, as required by Impax's agreement with Teva. The class period begins on May 5, 2004, when Impax announced its first-quarter 2004 results, and ends on November 3, 2004, when Impax issued a press release announcing a delay in the release of its third-quarter financial results. The TAC relies on the fraud-on-the-market theory to plead reliance, and alleges that during the class period Impax's stock price was inflated as a result of the fraud.

The lead-plaintiff notice required by the PSLRA was timely published, in response to which Local 655 and three other persons filed timely applications for appointment as lead plaintiff. Neither Dr. Melvin Owen nor Dearborn Heights filed an application. After the other putative lead plaintiffs withdrew their applications, the Court granted Local 655's application for appointment as lead plaintiff within the time prescribed by the PSLRA. The Court's order reflects that in doing so, the Court satisfied itself that all of the requirements of the PSLRA were met.

In Impax's July 2005 motion to dismiss the Amended Consolidated Complaint (and its subsequent motions to dismiss the First, Second and Third Amended Consolidated Complaints), Impax pointed out that Local 655 cannot plead loss causation in accordance with *Dura Pharms., Inc.*

2

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

1 *v. Broudo*, 544 U.S. 336, 342-43 (2005), because not only did Impax's November 3 press release not
2 disclose the truth about its first- and second-quarter results, even if it had disclosed that those results
3 overstated revenues, Local 655 sold all of its Impax stock before November 3.  Rather than respond
4 to Impax's motion to dismiss, Local 655 filed an amended complaint simply adding Dr. Melvin
5 Owen as a plaintiff[1] and, until Impax filed its motion for reconsideration of the July 2007 Order
6 denying its motion to dismiss the TAC, essentially ignored its lack of damages and inability to plead
7 loss causation.

8   On March 1, 2006, the Court dismissed Local 655's First Amended Complaint (FAC) for
9 failure adequately to plead scienter and thus found it unnecessary to decide whether the FAC
10 adequately alleged loss causation generally, or whether Local 655 had pleaded or could plead loss
11 causation with respect to its own stock transactions.  The Court nonetheless expressed concern with
12 whether Local 655 could plead loss causation, given that Impax's stock price increased after the
13 November 9 announcement of the restatement and in two days exceeded its November 3 closing
14 price, and advised Local 655 that "any amended complaint would benefit from an explanation as to
15 any causal connection between the restatements and Plaintiffs' alleged economic loss despite the
16 recovery of Impax's stock price between November 9, 2004 and November 11, 2004."

17  On January 3, 2007, the Court dismissed Local 655's Second Amended Complaint (SAC) for
18 failure to plead loss causation.  The January 2007 Order held that Impax's November 3, 2004 press
19 release did not disclose anything concerning Impax's first- and second-quarter financial results,
20 noting that the press release concerned only third-quarter results and said nothing about whether
21 prior results were incorrect or would be restated.  The Court also emphasized that when the truth
22 concerning the first- and second-quarter results was disclosed on November 9, the price of Impax's
23 stock increased dramatically and within two days closed at a price higher than its closing price
24 before the November 3 announcement.  In light of its determination that the SAC failed to allege

---

[1] Local 655 did not ask the Court for permission to add Dr. Owen, nor did Dr. Owen file a motion to intervene.

3

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

damages or loss causation generally, it was unnecessary for the Court to consider whether Local 655 had adequately pleaded loss causation with respect to its own stock transactions.

On July 18, 2007, the Court denied Impax's motion to dismiss Local 655's TAC, holding that lead plaintiff had this time adequately pled loss causation. Although the Court observed that the November 3 press release did not expressly disclose that Impax's first- and second-quarter financial results were incorrect or would be restated, the Court accepted Local 655's argument that Impax's August 3, 2004 press release—disclosing the second-quarter results that were later restated—converted the November 3 press release into a disclosure that Impax's first- and second-quarter financial results were incorrect, holding that, "in light of the August 3 press release," it was "reasonable to infer that the market understood" that Impax's November 3 press release "potentially implicated" prior representations that were allegedly false. The July 2007 Order did not address defendants' argument that, apart from whether loss causation was alleged generally, lead plaintiff Local 655 had not alleged and could not allege loss causation given its sale of all of its Impax stock prior to November 3.

During the October 11, 2007 hearing on Impax's motion for reconsideration of the July 2007 Order, the Court expressed concern as to whether it had jurisdiction given Local 655's lack of damages and queried whether counsel had any other plaintiff willing to serve as lead plaintiff. In response to the Court's request for the parties' views as to whether it could adopt some procedure for appointing a new lead plaintiff, Local 655 reiterated its belief that it had incurred actionable damages, despite the Court's July 2007 loss causation analysis, and expressed the view that the Court should nonetheless allow it to continue to serve as lead plaintiff even if it did not incur such damages.

Having apparently reconsidered its position, on October 16, 2007 counsel for Local 655 advised the Court by letter that Dearborn Heights was willing to join the action and serve as lead plaintiff. Apparently impatient for resolution, Local 655 has now followed up with the current "Request," which is neither denominated a motion nor calendared for a hearing, in which it states that it has "invited" Dearborn Heights to join this action, and requests that (1) Local 655 be allowed

4

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

1  to amend the TAC to add Dearborn Heights as a lead plaintiff or (2) Dearborn Heights be allowed to
2  permissively intervene in the case pursuant to Fed. R. Civ. P. 24 (b). Dearborn Heights itself has not
3  filed anything with the Court. The certification attached to the Request indicates that Dearborn
4  Heights has served as a lead plaintiff in no less than six securities fraud class actions in the last three
5  years. Although not disclosed in any of the filings, a review of the dockets in the six listed actions
6  shows that counsel for Local 655 here served as counsel for Dearborn Heights in all six.

**Argument**

The Court should make no mistake about what Local 655 is attempting here. Although it carefully couches its "invitation" in terms of satisfying the Court's concerns, it plainly intends Dearborn Heights to serve as lead plaintiff (and preserve lead counsel's status) without regard to, and indeed short-circuiting, the PSLRA.[2] Despite Local 655's avowed concern for its "fiduciary duty" to the class, it could have attempted to fulfill that duty in July 2005 when Impax first pointed out Local 655's lack of damages and inability to plead loss causation. Its failure to do so, despite its knowledge of its own problems, clearly demonstrates Local 655's lack of competence to serve as lead plaintiff in this or any other action.

The PSLRA sets forth a detailed, yet straightforward, process for appointing lead plaintiff that, as Local 655 acknowledges, does not contemplate applications or appointments made three years into the case. The time for that process has long since passed. Local 655's "Request" should be denied forthwith.

---

[2] *See* Request for Leave, 1 n.1 (Local 655's "Request" addresses the Court's concern about "open[ing] up the lead plaintiff selection process"); *id.*, 2-3 (Local 655's "Request" seeks to add Dearborn Heights as a "named plaintiff" so that "representative plaintiff" can be one with a significant financial interest who has not sold all its stock before the disclosure of the truth); *id.*, 4 (adding Dearborn Heights addresses the concern that the "representative" have held the stock through the last day of the Class Period); *id.,* Ex. A, ¶ 3 (Dearborn Heights "is willing to serve as a representative party on behalf of the class"); *id.*, Ex. A, ¶ 6 Dearborn Heights "will not accept any payment for serving as a representative party on behalf of the class beyond [its] pro rata share of any recovery …").

5

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

### I. Local 655 Cannot Create a Case or Controversy by Simply "Inviting" Dearborn Heights to Join a Class Action.

Local 655 makes the astonishing assertion that, as lead plaintiff, it may invite anyone to join the action as a lead plaintiff and that the Court must allow it to do so without regard to the lead-plaintiff selection procedures of the PSLRA. But if, as is undeniable, Local 655 does not have any damages, then Local 655 has no standing and the Court therefore lacks jurisdiction to add other plaintiffs or appoint a new lead plaintiff. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872, 879 (9th Cir. 2002) (standing requires injury in fact caused by defendant's conduct; a speculative damages claim may preclude standing).

Indeed, as Impax pointed out at the October 11 hearing on its motion for reconsideration, the Ninth Circuit has held that, even after class certification, when the lead plaintiff has no claim and has had no claim from the outset of the litigation, then a district court must decertify the class and dismiss the action for lack of jurisdiction. *See Lierboe v. State Farm Mutual Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). *Lierboe* has been applied in this district to dismiss a securities fraud class action where the putative lead plaintiffs lacked standing. *See In re Exodus Comm. Inc., Sec. Litig.*, 2006 WL 2355071 (N.D. Cal. April 14, 2006) (Chesney, J.). And the Court itself has recognized that "Lead Plaintiffs' individual standing is a threshold issue" and that *Lierboe* requires that the lead plaintiff in a securities fraud class action have standing in order for the Court to have jurisdiction. *In re Verisign, Inc. Sec. Litig.*, 2005 WL 88969 at *4 (N.D. Cal. Jan. 13, 2005) (Ware, J.) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) and *Lierboe, supra*).

The Ninth Circuit has also made clear that a "proposed amendment" that "attempts to create jurisdiction where none existed … is not acceptable." *Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987).

### II. Appointment of Dearborn Heights as Lead Plaintiff or Class Representative Would Violate the PSLRA.

Apart from the jurisdictional obstacle, Local 655's position would render irrelevant the PSLRA's process for appointment of lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(iii). "A

6

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY, DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

1  straightforward reading of the statutory language discloses a clear path that the district court *must*

2  follow in selecting the lead plaintiff." *Herrgott v. United States Dist. Court (In re Cavanaugh)*, 306

3  F.3d 726, 728 (9th Cir. 2002) (emphasis added).  The Ninth Circuit has construed the statutory

4  process—which is required to be essentially completed within 90 days of notice of the filing of the

5  action—as mandatory.  "[C]ourts may not depart from the statutory text because they believe some

6  other arrangement would better serve the legislative goals." *Id.* at 731-32.  In *Cavanaugh*, the court

7  of appeals went so far as to grant the extraordinary remedy of mandamus where a district court

8  "went off the statutory track." *Id.* at 731.  Indeed, Local 655 agrees (*see* Request at 4) that the

9  PSLRA provides that the lead-plaintiff appointment procedure may be invoked only once, at the

10 very earliest stage of the litigation, not three years later.

11     Local 655 contends, however, that Dearborn Heights may be added as a plaintiff without

12 regard to the PSLRA because "[c]ourts in this district have added plaintiffs to an existing action

13 without triggering the lead plaintiff selection process," citing *In re Portal Software, Inc. Sec. Litig.*,

14 No. CD-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178, at *10-*14 (N.D. Cal. Mar. 9, 2005), a case

15 it claims "presented … this very same situation."  But *Portal Software* is not like this case.  While

16 Judge Walker there found that "'the PSLRA does not in any way prohibit the addition of named

17 plaintiffs *to aid the lead plaintiff* in representing a class'" (emphasis added), the lead plaintiff in

18 *Portal Sofrware* had adequately pled the damages and loss causation elements of a Rule 10b-5 claim

19 and the Court thus had subject matter jurisdiction over the action because the lead plaintiff had

20 standing.  Here, Dearborn Heights is proposed, not to aid the existing lead plaintiff, but to *replace*

21 the lead plaintiff because the existing lead plaintiff clearly has not suffered any damages as a result

22 of any alleged fraud by Impax and thus cannot serve as lead plaintiff.  *Portal Software* thus provides

23 no support whatever for *appointing a substitute lead plaintiff* without following the mandatory

24 procedures of the PSLRA.[3]

---

[3] The lead plaintiff in *Portal Software* also sought to add both new claims (*i.e.*, under the Securities Act of 1933) and a new plaintiff (*i.e.*, one that had purchased securities in a stock offering governed by the 1933 Act and allegedly suffered damages as a result).  Here, in contrast, the claims that putative new plaintiff Dearborn Heights would assert are based on Rule 10b-5 and involve the same conduct as alleged by Local 655.

7

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

    Even if Local 655 had standing and could serve as lead plaintiff, the interpretation of the PSLRA's lead-plaintiff provisions in *Portal Software* is difficult to square with the statute's plain language and controlling Ninth Circuit precedent. In *Portal Software*, the court allowed addition of a plaintiff to serve as "class representative" with respect to securities claims different from those of the lead plaintiff, even though a lead plaintiff had already been appointed. While the court believed this was permissible because the PSLRA provides for only one lead-plaintiff selection process at the outset of the case, the PSLRA also does not sanction the addition of parties to effectively serve as lead plaintiffs without engaging the statute's mandatory selection process. The *Portal Software* court's attempt to distinguish a "lead plaintiff" from a "class representative," 2005 U.S. Dist. LEXIS 41178 at *15-*16, is a distinction without a difference. The PSLRA's plain language makes clear that its lead-plaintiff selection provisions apply to "[e]ach plaintiff seeking to serve as a *representative party on behalf of a class*." 15 U.S.C. § 78u-4(a)(2) (emphasis added).

    There are two additional reasons why the addition of Dearborn Heights would in any event contravene the requirements of the PSLRA. First, the lead-plaintiff selection process mandated by the statute had, as its principal purpose, protecting against lawyer-driven lawsuits. *In re Cavanaugh*, 306 at 737. One of the key provisions to effectuate this purpose is the PSLRA's prohibition against appointment of "professional plaintiffs," *i.e.*, plaintiffs who have served as lead plaintiff in five or more class actions within the last three years. See 15 U.S.C. § 78u-4 (a)(3)(B)(vi); *see also Cavanaugh*, 306 F.3d at 738 (professional plaintiff ban "will diminish the risk of lawyer-driven lawsuits"). Dearborn Heights, however, is the quintessential "professional plaintiff" who, according to its own certification, has served as lead plaintiff (represented by present counsel) in no less than six securities class actions in the last three years.[4]

---

[4] Some courts have held, based solely on legislative history, that the PSLRA's ban on professional plaintiffs does not apply to institutions. The PSLRA's plain language, however, imposes the ban on any "person." While the PSLRA itself does not define the word "person," 1 U.S.C. § 1 defines the term, for purposes of construing the United States Code, as including associations, firms, partnerships, and societies. The PSLRA ban thus on its face applies to institutional investors. "[C]ourts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals." *Cavanaugh*, 306 F.3d at 731-32.

8

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

1  Second, Dearborn Heights cannot satisfy the requirements of Fed. R. Civ. P. 23, which is
2  another of the PSLRA's lead-plaintiff criteria. The rule requires that a class representative have
3  claims typical of those of the class and that it will fairly and adequately protect the interests of the
4  class. In holding that the TAC sufficiently pled loss causation, the July 2007 Order, while observing
5  that Impax's November 3, 2004 announcement of a delay in release of third-quarter financial results
6  did not expressly disclose that Impax's first- and second-quarter results were incorrect or would have
7  to be restated, went on to accept Local 655's argument that the November 3 announcement, when
8  read in conjunction with Impax's August 4, 2004 announcement of its second-quarter results, did
9  indicate that Impax's first- and second-quarter financial results were incorrect and thus disclosed the
10 truth about those results. Impax continues to maintain that the August 4 press release in no way,
11 shape, or form disclosed that Impax's first- and second-quarter financial results were incorrect or
12 would be restated.[5] The July 2007 Order's acceptance of Local 655's argument to the contrary,
13 however, makes clear that for the class here to establish loss causation it will have to prove that the
14 August 4 press release indicated a likelihood of future negative news about reported first- and
15 second-quarter results so as to lead a reader of the November 3 release to believe that those results
16 had been overstated. But Dearborn Heights has certified that it *purchased* an additional 1,900 shares
17 of Impax stock immediately following the August 4 announcement, demonstrating that it did not
18 read the August 4 announcement as portending such future bad news. It is hard to conceive of a
19 plaintiff less likely to adequately protect the interests of investors who must prove that they read the
20 August 4 announcement in an entirely different light. It is equally clear that its claims are not typical
21 of those of the purported class.

22 **III.  Dearborn Heights' Intervention under Rule 24(b) Must Be Denied.**

23 As noted, because Local 655 has not suffered any damages, there is no case or controversy
24 over which the Court has jurisdiction. It has long been held that "an intervening party cannot

---

[5] That press release, as noted in Impax's motion for reconsideration and as is plain from the face of the press release itself, announced the very same second-quarter results that Local 655 alleges were false, compared those results with the very same first-quarter 2004 results that Local 655 alleges were false, and announced results for the first nine months of 2004 that included the very same allegedly false first- and second-quarter results.

9

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

breathe life into a non-existing case." *Kelly v. Carr*, 691 F.2d 800, 806 (6th Cir. 1980); *United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157 (1914) (intervention cannot be used to convert an invalid lawsuit into a valid one because "rights to intervene and to file a claim, conferred by the statute, presuppose an action duly brought under its terms"); *see also See Rockwell*, 823 F.2d at 304 (party cannot create jurisdiction by amending complaint). Even if there were a case or controversy conferring jurisdiction here, however, the Court must deny Dearborn Heights' motion to intervene.

### A. The Request to Intervene is Untimely.

Local 655 contends that intervention by Dearborn Heights is timely because "[u]ntil the Court raised concerns regarding Local 655 Pension Plan's standing at oral argument, there was no apparent need for another class member to step forward … ." This is incorrect for several reasons.

First, the PSLRA mandates that all applications for lead plaintiff status be filed within 60 days of the statutorily mandated publication of notice of the action and that the court appoint the lead plaintiff within 90 days of the publication of such notice. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i). Dearborn Heights could have sought to serve as lead plaintiff at that time. The attempt by Local 655 or its counsel to have it intervene to serve as lead plaintiff is late by almost three years.

As for the contention that there was no apparent need for a lead plaintiff with standing until recently, Local 655 and Dearborn Heights knew or should have known of such need at least two years ago. In July 2005—almost two and a half years ago—Impax pointed out in its motion to dismiss the Amended Consolidated Complaint that, under *Dura Pharms., Inc. v. Broudo*, 544 U.S. at 342-43, Local 655 had no damages even if, as Local 655 alleged, the November 3 press release disclosed the truth regarding Impax's incorrect first- and second-quarter results. Local 655's counsel was thus aware of the issue, and, as noted, has served as counsel for Dearborn Heights in all six of the other class actions in which it has recently served as lead plaintiff. Dearborn Heights, as a pension plan with fiduciary duties, could have checked with Local 655 as to the status of the case and any issues, or even asked Local 655's counsel when performing its own monitoring duties in the six class actions in which Dearborn Heights had been appointed lead plaintiff. Local 655 or its

10

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY, DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

1  counsel could have invited Dearborn Heights to seek to intervene in July 2005, but instead chose to
2  file a first amended consolidated complaint, as a matter of rights under Fed. R. Civ. P. 15(a),
3  purporting to "add" Dr. Owens as a plaintiff.  Under these circumstances, Local 655 should not be
4  heard to complain that it had no inkling of jurisdictional problems until the Court raised the issue at
5  the October 2007 hearing.
6        Local 655 also asserts (Mem. 6) that "Courts in this district have routinely granted requests to
7  intervene when sought at the preliminary stage of the litigation," but the only case it can muster is *In
8  re California Micro Devices Sec. Litig.*, 168 F.R.D. 257, 277 (N.D. Cal. 1996).  In *California Micro
9  Devices*, however, the case was not over three years old, the lead plaintiff had not yet been selected,
10 and there was no jurisdictional issue, as those seeking lead-plaintiff status had incurred damages.
11 Further, the *California Micro Devices* court refused to approve what it regarded as a counsel-driven
12 and inadequate settlement, and there is no reason to believe the court would have been more
13 welcoming of the present counsel-driven proposal to replace the disqualified lead plaintiff.  Finally,
14 in *California Micro Devices* the court (Walker, J.) used procedures for determining lead plaintiff and
15 lead counsel, such as a lead counsel "auction" and surveys of putative class members, that the Ninth
16 Circuit has since disapproved in *Cavanaugh*.

        **B.    Dearborn Heights' Claims Are Materially Different From Those of the Class.**

18        Local 655 claims that Dearborn Heights is asserting the same claims as are set forth in the
19 TAC.  But Dearborn Heights' certification makes clear that its claims are materially different,
20 because it cannot establish loss causation on the same basis as the class.  As shown in connection
21 with Dearborn Heights' inability to satisfy the requirements of Rule 23, Dearborn Heights will be
22 unable to demonstrate that Impax's August 4 announcement indicated to it that future negative
23 developments were likely concerning the company's previously reported results, which, under the
24 Court's July 2007 Order, is the only basis on which the class can establish loss causation.  For these
25 same reasons, Local 655 is incorrect that there are sufficiently common questions of law and fact
26 with the claims it asserts, and the claims of Dearborn Heights.

11

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY,
DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE

**Conclusion**

For the foregoing reasons, the Court should reject Local 655's Request to allow Dearborn Heights to become a party to this case.

Respectfully submitted,

Dated: November 29, 2007

BLANK ROME LLP

BINGHAM MCCUTCHEN LLP

\_\_/s/ Joseph O. Click_____
JOSEPH O. CLICK (*pro hac vice*)

*Attorneys for Defendants*

**Blank Rome LLP**
Watergate 600 New Hampshire Ave., NW Washington, DC 20037

12

DEFENDANTS' OPPOSITION TO REQUEST FOR LEAVE TO ADD PLAINTIFF OR ALTERNATIVELY, DEARBORN HEIGHTS ACT 345 POLICE & FIRE RETIREMENT SYSTEMS' REQUEST TO INTERVENE