**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No.  17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO SUBSTITUTE LEAD PLAINTIFF** |
| ALL ACTIONS. | |
| | Date:      March 7, 2019<br>Time:      1:30 p.m.<br>Crtrm:     3<br>Judge:    Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 3

I.    ONLY ONE OTHER PLAINTIFF HAS SOUGHT APPOINTMENT AS
       SUBSTITUTE LEAD PLAINTFF, AND NO PLAINTIFF ADVOCATES
       REOPENING THE PSLRA ..................................................................................................... 4

II.   DEFENDANTS IMPROPERLY SEEK TO REOPEN THE PSLRA IN ORDER TO
       AVOID ANSWERING PLAINTIFFS' STRONG MOTION FOR CLASS
       CERTIFICATION .................................................................................................................... 6

III.  DEFENDANTS IMPROPERLY SEEK TO REOPEN THE PSLRA AS A PRETEXT
       FOR RENEWING RULE 12(b)(6) MOTIONS ...................................................................... 9

IV.  A NEW LEAD PLAINTIFF AND LEAD COUNSEL WOULD BE HANDICAPPED
       IN THEIR PROSECUTION OF CLASS CLAIMS ................................................................ 11

CONCLUSION ..................................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page No(s).**

**CASES**

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,*
  657 F.2d 890 (7th Cir. 1981), *cert. denied* 455 U.S. 1017 (1982) .................................. 6

*In re BankAmerica Corp. Sec. Litig.,*
  350 F.3d 747 (8th Cir. 2003) ..................................................... 1

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ..................................................... 8

*In re Diasonics Sec. Litig.,*
  599 F. Supp. 447 (N.D. Cal. 1984) ................................................ 6

*In re Impax Labs., Inc. Sec. Litig.,*
  No. C04-04802-JW, 2008 U.S. Dist. LEXIS 104485 (N.D. Cal. Apr. 17, 2008) .......... 5

*In re NYSE Specialists Sec. Litig.,*
  240 F.R.D 128 (S.D.N.Y. 2007) ................................................... 4

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  199 F.R.D. 119 (S.D.N.Y. 2001) .................................................. 4

*In re Portal Software Sec. Litig.,*
  No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178 (N.D. Cal. Mar. 9, 2005)
  (Walker J.) .................................................................. passim

*In re Rackable Sys., Inc. Sec. Litig.,*
  No. C09-0222-CW (N.D. Cal. Mar. 22, 2010), Dkt. No. 53 ........................... 5

*In re Versata, Inc.,*
  No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17, 2001) ............ 9

*Morgan v. AXT, Inc.,*
  No. C04-04362 (MJJ) (N.D. Cal. Mar. 14, 2007), Dkt. No. 93 ....................... 5

*Morrison v. Nat'l Austl. Bank Ltd.,*
  561 U.S. 247 (2010) .......................................................... 10

*Serafimov v. Netopia, Inc.,*
  No. C-04-03364 RMW, 2004 U.S. Dist. LEXIS 25184 (N.D. Cal. Dec. 3, 2004) ......... 8

*Wenderhold v. Cylink Corp.,*
  188 F.R.D. 577 (N.D. Cal. 1999) ................................................ 4

ii

1

**STATUTES**

2

15 U.S.C. § 77z-1(a)(2)(A) ................................................................................ 7

3

15 U.S.C. § 77z-1(a)(3)(A) ................................................................................ 3

4

15 U.S.C. § 77z-1(a)(3)(B)(i) ............................................................................. 6

5

15 U.S.C. § 78u-4(a)(3)(B)(iv) .......................................................................... 9

6

**OTHER AUTHORITIES**

7

MANUAL FOR COMPLEX LITIGATION (FOURTH) ......................................... 4, 6, 8

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO SUBSTITUTE LEAD PLAINTIFF
NO. 3:17-CV-06779-RS

1

## __INTRODUCTION__

2    The Private Securities Litigation Reform Act ("PSLRA") was enacted by Congress as a shield

3   to protect the Class from opportunistic, lawyer-driven gamesmanship.  *In re BankAmerica Corp. Sec.*

4   *Litig.*, 350 F.3d 747, 751 (8th Cir. 2003).  But here, in asking the Court to reopen the PSLRA's Lead

5   Plaintiff selection process, Defendants seek to turn the PSLRA on its head and use it as a *weapon* to

6   undermine class interests.  Essentially, Defendants seek a "redo" of this litigation – insisting that the

7   Court deny class certification, go back to the pleading stage, and subject the Class's claims to another

8   round of 12(b)(6) motions – all for the benefit of Defendants and to the detriment of the proposed

9   Class.  But no case has ever allowed the PSLRA to be wielded as a weapon *against* the class.  This

10  should not be the first.

11    As the former Chief Judge of this Court held, "[t]he PSLRA's lead plaintiff provision is

12  designed only to get cases off on the right foot."  *In re Portal Software Sec. Litig.*, No. C-03-5138

13  VRW, 2005 U.S. Dist. LEXIS 41178, at \*14-15 (N.D. Cal. Mar. 9, 2005) (Walker J.).  That objective

14  has been accomplished, as Lead Plaintiff Arman Anvari skillfully guided this case through

15  contentious motions to dismiss and extensive discovery, up to the point of class certification.  No

16  longer in its infancy, this case has now reached its most critical juncture.  Accordingly, there is no

17  need to reopen the PSLRA.

18    Against this context, the Court should reject Defendants' belated and self-serving attempts to

19  derail this litigation.

20    First, contrary to Defendants' argument, *numerous* courts in this district and in other districts

21  have substituted the Lead Plaintiff without reopening the PSLRA.  Importantly, in response to

22  Plaintiffs' motion to substitute the Lead Plaintiff ("Motion to Substitute"), only *one* other plaintiff –

23  Trigon Trading Pty. Ltd. ("Trigon") – has come forward seeking to be appointed lead.  It is the

24  members of the Class who have an interest, and therefore a say, in the selection of the Lead Plaintiff,

25  not Defendants.  Here, like proposed Lead Plaintiff and named plaintiff Artiom Frunze, Trigon does

26  *not* advocate reopening the PSLRA Lead Plaintiff selection process.  Because *no plaintiff or other*

27  *member of the Class* has requested reopening the PSLRA, the Court need not reopen the PSLRA and

28  should simply appoint from the plaintiffs who have come forward.  As set forth in Plaintiffs' Opening

Brief,[1] the Court should appoint Mr. Frunze as the substitute Lead Plaintiff because he is thoroughly vetted and is the plaintiff most capable of representing the interests of the proposed Class.

Second, the Court should not reopen the PSLRA because Defendants' manifest purpose is to weaponize the PSLRA against the putative Class. Specifically, despite claiming repeatedly that they do not care who is appointed Lead Plaintiff, Defendants' real purpose in reopening the PSLRA is to avoid opposing, on class certification, Mr. Frunze and Pumaro, LLC ("Pumaro," and together with Mr. Frunze, the "Class Representatives") (Dkt. Nos. 193-194). Before moving for class certification, the Class Representatives were thoroughly vetted by Lead Plaintiff and Lead Counsel to ensure excellent representation for the proposed Class. *See* Anvari Decl., Dkt. No. 196-2, ¶ 2. These Class Representatives have already provided extensive responses to Defendants' document production requests, interrogatories, and requests for admissions. As these discovery responses reflect, the factual circumstances surrounding the Class Representatives' investments in the Tezos ICO are pristine, as are their backgrounds. For example, neither Class Representative received *any* Tezos tokens in return for their investments – an inconvenient fact that negates many of Defendants' anticipated defenses. Thus, as Defendants have apparently realized, these Class Representatives are highly likely to prevail on class certification. Reopening the Lead Plaintiff selection process would serve no purpose other than to give Defendants a shot at obtaining a weaker class representative to oppose, one who may end up scuttling the putative Class's claims.

Third, Defendants seek to reopen the PSLRA in order to gain an unfair procedural advantage and sidestep their prior stipulations and the Court's prior orders. Specifically, with respect to Mr. Frunze, on January 4, 2019, "Plaintiffs and Defendants [ ] agreed that *Artiom Frunze may be added to the Complaint without the need to file an amended pleading* and, therefore, amended answers by Defendants" – a stipulation that was then so-ordered by the Court. Stipulation and Order to Add New Plaintiff, Dkt. No. 186 at 1:15-17 (emphasis added). Realizing the strength of Mr. Frunze as a Class Representative, Defendants now seek to reopen the PSLRA as a pretext for requiring the new Lead

---

[1]     "Plaintiffs' Opening Brief" or "Pl. Opening Br." refers to the Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Substitute Lead Plaintiff, dated January 25, 2019, Dkt. No. 196.

1  Plaintiff to amend its complaint, thereby giving Defendants another opportunity to file motions to

2  dismiss under Fed. R. Civ. P. 12(b)(6).  DLS Defendants' Response to Plaintiffs' Motion to Substitute

3  New Lead Plaintiff, Dkt. No. 201 ("DLS Br.") at 8-10.  The Court should not permit Defendants to

4  re-write their prior agreements simply because they have changed their minds.

5      <u>Fourth</u>, even if another viable substitute Lead Plaintiff were available, it would not be in the

6  best interests of the putative Class to reopen the PSLRA selection process and allow strangers to the

7  litigation to parachute in at this critical juncture.  Lead Counsel and their team have spent thousands

8  of hours researching the law, reviewing evidence, and interacting with Defendants, including

9  conducting a full day mediation with Professor Eric Green. They have developed, and possess, a deep,

10  institutional knowledge that is extremely difficult, if not impossible, to replace at this stage of the

11  litigation.  It is folly to believe that a substitute Lead Plaintiff and his or her counsel would be able to

12  hit the ground running in the middle of this quarter-billion-dollar, complex, completely novel

13  securities class action.  Similarly, Defendants and their team of twenty-plus lawyers from four

14  different law firms have been litigating this case for over a year now, and would have a massive head

15  start against any new counsel in collecting evidence and preparing their arguments.  Defendants know

16  this, which is why they hope to use the PSLRA to prevent Lead Counsel and their team from

17  continuing their involvement in this case.  Trigon fails to analyze or even consider how denying

18  Plaintiffs' Motion to Substitute could negatively impact the putative Class.

19      In short, Lead Plaintiff and Lead Counsel at this stage of the litigation are best suited to

20  designate a substitute Lead Plaintiff and Class Representatives who can satisfy *all* the elements of

21  class claims, defeat *all* defenses, and meet *all* the requirements for class certification under Rule 23.

22  Plaintiffs' Motion to Substitute should be granted, and Defendants' proposal to reopen the PSLRA

23  should be denied.

24      **<u>ARGUMENT</u>**

25      As noted by former Chief Judge Walker, the PSLRA "does not contemplate any sort of lead-

26  plaintiff proceedings beyond the very earliest stages of the litigation."  *In re Portal Software,* 2005

27  U.S. Dist. LEXIS 41178, at *9 (citing 15 U.S.C. § 77z-1(a)(3)(A)).  "The absence of statutory lead-

28  plaintiff mechanics for suits already in progress stands in stark contrast to the detailed mechanics …

1   for suits that are only just beginning. This alone suggests that Congress contemplated invoking the

2   PSLRA's lead plaintiff process <u>only once</u> -- at the very beginning of the suit." *Id.* at * 10 (emphasis

3   added).  In other words, the role of the Lead Plaintiff is to start the litigation off on the "right foot."

4   *Id.* at *15.  It is the court-appointed class representatives who control the case after class certification.

5   *See In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 125 (S.D.N.Y. 2001) ("the class

6   representative is going to control the case. He is the Rule 23 fiduciary, not the lead plaintiffs.")

7   (internal quotation marks and citation omitted).

8        Furthermore, it is the *duty* of the Lead Plaintiff and Lead Counsel to select substitute

9   representatives where appropriate.  That duty is explicitly recognized in case law and in the MANUAL

10  FOR COMPLEX LITIGATION (FOURTH) (the "MANUAL").  *See*, *e.g.*, *In re NYSE Specialists Sec. Litig*.,

11  240 F.R.D 128, 134 (S.D.N.Y. 2007) ("It is certainly within the lead plaintiffs' discretion and, perhaps

12  more importantly, part of a lead plaintiff's responsibility to propose their own withdrawal and

13  substitution should it be discovered that they may no longer adequately represent the interests of the

14  purported plaintiff class."); MANUAL, § 21.26 at 277 (where replacement of a class representative

15  becomes necessary, "courts generally allow class counsel time to make reasonable efforts to recruit

16  and identify a new representative who meets the Rule 23(a) requirements.").

17       In appointing the substitute Lead Plaintiff, the Court's concern is for the best interests of the

18  putative class.  *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999) (district court

19  should inquire whether proposals for appointment of lead plaintiff would "do anything to advance the

20  aims of the PSLRA or otherwise protect the interests of class members.").

21       As set forth below, Defendants' request to reopen the PSLRA is directly contrary to the

22  interests of the proposed Class.

23  **I.    ONLY ONE OTHER PLAINTIFF HAS SOUGHT APPOINTMENT AS SUBSTITUTE LEAD PLAINTFF, AND NO PLAINTIFF ADVOCATES REOPENING THE PSLRA**

24

25       Defendants' central argument is essentially that, in *every* instance, substituting the Lead

26  Plaintiff requires reopening the PSLRA.  DLS Br. at 6-8.  However, this view is plainly incorrect.  It

27  is directly contrary to the statutory purpose of the PSLRA, as explained by Chief Judge Walker in *In*

28  *re Portal Software*.  As Chief Judge Walker admonished, taken to its extreme, Defendants' view

1   would entangle the Court and the parties in an endless loop of PSLRA selection contests every time

2   a Lead Plaintiff is subsequently found to be inadequate.  *See In re Portal Software*, 2005 U.S. Dist.

3   LEXIS 41178, at *14 (restarting the PSLRA selection process "would turn securities litigation into a

4   game of snakes and ladders to hold that any time a new plaintiff is added, the action must 'go back to

5   square one' and recommence the PSLRA lead plaintiff selection process. Relatedly, there is no

6   indication that Congress intended such repetitive preliminaries to securities litigation.").

7        Unsurprisingly, Defendants' argument is contrary to the *numerous* decisions cited by

8   Plaintiffs from the Northern District of California, and other districts, where courts have replaced the

9   Lead Plaintiff without reopening the PSLRA.  *See, e.g.*, *In re Impax Labs., Inc. Sec. Litig*., No. C04-

10  04802-JW, 2008 U.S. Dist. LEXIS 104485, at *24-25 (N.D. Cal. Apr. 17, 2008) (analyzing the

11  "legislative intent with respect to the PSLRA's lead plaintiff process," denying the defendants'

12  objection and appointing the City of Dearborn Heights Act 345 Police & Fire Retirement Systems as

13  the substitute Lead Plaintiff, without reopening the PSLRA); *Morgan v. AXT, Inc.*, No. C04-04362

14  (MJJ) (N.D. Cal. Mar. 14, 2007), Dkt. No. 93 (substituting new lead plaintiff without reopening

15  PSLRA); *In re Rackable Sys., Inc. Sec. Litig.*, No. C09-0222-CW (N.D. Cal. Mar. 22, 2010), Dkt.

16  No. 53 (permitting Lead Plaintiff to withdraw under Rule 21 and substituting in new Lead Plaintiff

17  without reopening PSLRA); *see generally* Pl. Opening Br. at 4, and Lead Plaintiff's Memorandum of

18  Points and Authorities in Opposition to Trigon Trading's Motion to Substitute, Dkt. No. 204, at 7-8.[2]

19       In this case, in response to Plaintiffs' Motion to Substitute, only Trigon has stepped forward.

20  No other plaintiff from the group of plaintiffs who sought appointment as Lead Plaintiff in the original

21  PSLRA selection process in January 2018, and no other member of the putative Class, has come

22  forward.  As to Trigon, it does not argue for a *reopening* of the PSLRA, but merely that it should be

23

---

24  [2]     Defendants' clumsy efforts to distinguish these decisions are unavailing.  For example,
    Defendants attempt to explain away *Impax* by suggesting, cryptically, that the court did not reopen
25  the PSLRA only because "one original named plaintiff remained and possessed the requisite
    standing."  DLS. Br. at 8.  However, this part of the *Impax* court's discussion has nothing to do with
26  its decision not to reopen the PSLRA, and concerned an entirely separate issue – whether the
    substitute Lead Plaintiff could cure the lack of standing of the original Lead Plaintiff, and whether
27  the court therefore had proper subject matter jurisdiction over the litigation.  *In re Impax Labs*., 2008
    U.S. Dist. LEXIS 104485, at *24-25.  It was in this context that the *Impax* court held that one other
28  named plaintiff did have standing, and therefore that the court still had subject matter jurisdiction.

appointed because it had the second largest loss behind Mr. Anvari in the *original* PSLRA process. The only parties who actually seek to reopen the PSLRA are Defendants. However, "the PSLRA only permits ***purported class members*** to challenge the adequacy of the presumptive lead plaintiff. … [D]efendants may challenge whether the lead plaintiff meets Rule 23 requirements at the ***class certification stage***." MANUAL, § 31.31 at 534 n.1789 (emphasis added).

Under these circumstances – where two candidates for substitute Lead Plaintiff have come forward, and no member of the putative Class asks the Court to reopen the PSLRA – the Court should simply appoint from these two plaintiffs. As set forth in Plaintiffs' separate opposition to Trigon's motion to be appointed substitute Lead Plaintiff (Dkt. No. 204), Trigon is not a viable Lead Plaintiff, and the Court should appoint proposed Lead Plaintiff and Class Representative Artiom Frunze, who has the *largest financial interest* of any plaintiff who has appeared before this Court, and is the "most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 77z-1(a)(3)(B)(i).

## II.   DEFENDANTS IMPROPERLY SEEK TO REOPEN THE PSLRA IN ORDER TO AVOID ANSWERING PLAINTIFFS' STRONG MOTION FOR CLASS CERTIFICATION

As a general matter, courts should be skeptical when defendants make proposals with respect to class matters because they have no concern for absent class members, only "not to be successfully sued by anyone." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451-52 (N.D. Cal. 1984). Indeed, "it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *Id.* (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir. 1981), *cert. denied* 455 U.S. 1017 (1982)).

This case presents a striking example of that "pious countenance," and why caution is warranted. Defendants argue that they are merely trying ensure that the "proper process" is used to select the Lead Plaintiff, "before the parties are put to the burden and expense of conducting further discovery." DLS Br. at 2, 6. But Defendants have already propounded numerous discovery requests on the Class Representatives, because they were also named plaintiffs. The Class Representatives have provided their substantive responses, and their depositions are scheduled to be completed within a month. Thus, if Mr. Frunze were to be appointed substitute Lead Plaintiff, discovery would be

nearly complete with respect to Mr. Frunze.  In contrast, Defendants would have to start "anew" only if a different Lead Plaintiff were selected.  Therefore, if Defendants' stated concern were genuine, it would in fact militate in favor of substituting Mr. Frunze in as Lead Plaintiff, and *against* reopening the PSLRA process.[3]

Defendants' real purpose in seeking to reopen the PSLRA is to weaponize the PSLRA against the putative Class.  What Trigon fails to appreciate – but Defendants clearly do – is that adequate representation of Tezos investors requires careful vetting beyond the boilerplate certifications submitted pursuant to the PSLRA.  *Cf.* 15 U.S.C. § 77z-1(a)(2)(A).  Through the lottery of a reopened PSLRA, Defendants hope that they will get plaintiffs that are easier to defeat than the Class Representatives, Mr. Frunze and Pumaro, who have already been presented to the Court in Plaintiffs' pending motion for class certification (Dkt Nos. 193-194).

For example, Defendants have repeatedly asserted that a plaintiff with actual knowledge of the so-called Tezos "Contribution Terms" cannot maintain a claim in this Court under the Securities Act.  *See*, *e.g.*, Dkt. No. 119 at 17-19.  Both of the Class Representatives – and Mr. Anvari as well – have submitted discovery responses under penalty of perjury, attesting that they had *no actual knowledge* of the Contribution Terms at the time they made their investments.  Mr. Anvari and the Class Representatives' verified responses were based on a review of their computers, mobile phones, browser search history, social media posts, and an exhaustive list of related items identified by Defendants.

In addition, Defendants have argued that receiving Tezos tokens and taking affirmative actions (such as "staking" or "baking" these tokens on the Tezos network to earn rewards) is inconsistent with a claim for rescission.  Dkt. No. 162, Joint Case Management Statement, filed August 29, 2018, at 8.  However, neither Mr. Frunze nor Pumaro has received *any* Tezos tokens (or anything else) in exchange for the Bitcoin and Ethereum that they invested in the Tezos ICO.  This

---

[3]    Defendants also suggest that they have already expended resources defending against Lead Plaintiff Mr. Anvari, and that this was somehow wasted.  DLS Br. at 5-6.  This is ludicrous.  Defendants *achieved* their objective, by causing the Lead Plaintiff to withdraw.  Having achieved their objective, they cannot turn around and argue that they *wasted* their resources.

1   represents an inconvenient fact for Defendants, because it negates many of Defendants' anticipated

2   arguments and contradicts Defendants' public relations stance that the putative Class does not want

3   rescission.  *Id.*  In fact, as of the date of this filing, 26% of the proposed Class have not yet received

4   their Tezos tokens.[4]

5          Furthermore, current Lead Plaintiff and Lead Counsel vetted the Class Representatives against

6   numerous anticipated arguments by Defendants that are *not in the public record*.  Specifically, in non-

7   public communications between Defendants and Lead Counsel throughout the course of this

8   litigation, Defendants have raised or suggested a number of anticipated defenses to class certification

9   and liability.  With this knowledge, current Lead Plaintiff and Lead Counsel vetted the Class

10   Representatives to ensure adequate representation of the proposed Class.  No other potential plaintiff

11   or counsel has the same level of knowledge of Defendants' anticipated arguments.

12          For these reasons, Defendants seek to reopen the PSLRA not because of any concern about

13   "proper process," but because they seek to use the PSLRA as a backdoor for *defeating class*

14   *certification* through the appointment of a new plaintiff and new counsel who might potentially step

15   on hidden landmines.

16          That danger is real.  As Defendants are undoubtedly aware, under the PSLRA, "[t]he plaintiff

17   with the largest financial stake in the controversy that *preliminarily* satisfies the typicality and

18   adequacy requirements is presumed to be the most adequate plaintiff."  *Serafimov v. Netopia, Inc.*,

19   No. C-04-03364 RMW, 2004 U.S. Dist. LEXIS 25184, at *12-13 (N.D. Cal. Dec. 3, 2004) (emphasis

20   added).  As the Ninth Circuit noted in the seminal PSLRA case *In re Cavanaugh*, 306 F.3d 726, 732

21   (9th Cir. 2002), the PSLRA forbids comparatively testing would-be Lead Plaintiffs as would be

22   required to ensure adequate representation at the class certification stage.  Nor does the PSLRA permit

23   discovery from Lead Plaintiff applicants that would be necessary to ensure the appointee would be a

24   suitable class representative.  MANUAL, § 31.31, at 535 ("the PSLRA severely restricts discovery into

25   the adequacy of the representation of the proposed lead plaintiff.") (citing 15 U.S.C. § 78u-

26

27

28   [4]      https://tzscan.io/activations, last accessed February 15, 2019.

4(a)(3)(B)(iv)).  In contrast, at the class certification stage, the class representative must satisfy *all* the elements necessary to perfect class claims under Rule 23.

Here, before presenting the proposed Class Representatives Artiom Frunze and Pumaro, Lead Plaintiff and Lead Counsel vetted them against the elements of Rule 23.  For all these reasons, the Court should reject Defendants' attempt to use the PSLRA as a weapon to defeat class certification.[5]

## III.  DEFENDANTS IMPROPERLY SEEK TO REOPEN THE PSLRA AS A PRETEXT FOR RENEWING RULE 12(b)(6) MOTIONS

Apart from seeking to weaponize the PSLRA against the putative Class, Defendants seek to reopen the PSLRA as a pretext for forcing a new round of amended pleadings, and a new round of Rule 12(b)(6) motions to dismiss.  DLS Br. at 8-10; Dkt. No. 203 at 1.  However, Defendants *stipulated to the contrary* just weeks ago, and obtained the Court's approval for these stipulations.

Specifically, on January 4, 2019, "Plaintiffs and Defendants [ ] agreed that Artiom Frunze may be added to the Complaint *without the need to file an amended pleading* and, therefore, amended answers by Defendants."  Dkt. No. 185 at 1:15-17 (emphasis added).  The stipulation was so-ordered by the Court.  Dkt. No. 186.  If Defendants had wished to file a renewed motion to dismiss, it was incumbent upon them to object instead of stipulate.  Then, on January 30, 2019, "in light of the recent addition of named plaintiffs, the proposed withdrawal of lead plaintiff Anvari, the pendency of the Substitution Motion, and the ongoing nature of discovery that the parties have served," Defendants "stipulated and agreed" to a briefing schedule under which Defendants were granted a close to *three-month* extension for responding to the Class Representatives' motion for class certification.  Dkt. No. 197, at 1:21-23 and 2:1.  Again, this stipulation was so-ordered by the Court.  Dkt. No. 199.  Having entered into these stipulations, and having submitted these stipulations for approval by the Court, Defendants cannot get a "redo" just because they are having second thoughts about opposing Plaintiffs' motion for class certification.  This would be unfair to Plaintiffs, who agreed to the

---

[5]     *See also In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *10 (N.D. Cal. Aug. 17, 2001) ("though the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are 'most capable of representing the interests of the class members.'")

1   extension of the briefing schedule only because they believed Defendants needed additional time to

2   oppose class certification – and not that Defendants would in fact turn around and request that the

3   entire PSLRA selection process be reopened.

4       Moreover, none of Defendants' arguments for requiring a new round of amended pleadings

5   and Rule 12(b)(6) motions withstands scrutiny.

6       Defendants argue that they require amended complaints to re-raise their *forum non conveniens*

7   argument.  However, as the Court previously ruled, "the Foundation's *forum non conveniens* motion

8   is denied without prejudice to the Foundation renewing the motion at a later date should doing so be

9   warranted by facts unearthed in discovery."  Dkt. No. 148 at 13:9-10.  Defendants have now

10  developed a factual record through discovery of Mr. Anvari and the Class Representatives.  Therefore,

11  nothing prevents Defendants from moving *right now* to dismiss on *forum non conveniens* grounds if

12  they believe there is a reasonable basis.  They have not, because the facts simply do not support their

13  argument.

14      Defendants also argue that they need amended complaints to address *Morrison v. Nat'l Austl.*

15  *Bank Ltd.*, 561 U.S. 247 (2010).  However, they already have received discovery responses from

16  proposed Lead Plaintiff Mr. Frunze, and they can confirm Mr. Frunze's citizenship using

17  interrogatories or depositions.  Also, Pumaro is unquestionably a U.S. citizen.  If Defendants wish to

18  contest whether the U.S. securities laws apply to the investments made by Mr. Frunze or Pumaro

19  under *Morrison*, they can contest it in their opposition to Plaintiffs' pending motion for class

20  certification or in a motion for summary judgment.  There is no need to return to the pleading stage.

21      In fact, as this Court ruled in its decision on Defendants' motions to dismiss, an important

22  factor why the U.S. securities laws applies to the Tezos ICO under *Morrison* is that irrevocable

23  liability was incurred on the Bitcoin and Ethereum blockchains – with the U.S. having the most

24  "nodes" of any country in the world.  Dkt. No. 148 at 14.  Presumably in light of this ruling,

25  Defendants viewed Mr. Frunze's citizenship as irrelevant to any pleading, and stipulated to the

26  addition of the following allegation as paragraph 14b of the Complaint: "Plaintiff Artiom Frunze is

27  an individual who invested 238 Ethereum in the Tezos ICO on July 2, 2017 and July 3, 2017. He was

28  promised delivery of 165,607.38 Tezos tokens upon the conclusion of the Tezos ICO and the launch

of the Tezos network." Dkt. No. 185 at 1:20-24. Again, if Defendants truly intended to re-raise *Morrison* at the pleading stage, Defendants would not have stipulated to this amendment.

## IV. A NEW LEAD PLAINTIFF AND LEAD COUNSEL WOULD BE HANDICAPPED IN THEIR PROSECUTION OF CLASS CLAIMS

Finally, even if another viable substitute Lead Plaintiff other than Mr. Frunze were available, it still would not be in the best interests of the putative Class to reopen the PSLRA selection process.

This litigation is now at a critical juncture. Lead Plaintiff and Lead Counsel have litigated this case all the way through to the point of filing a motion for class certification, which motion is pending. To arrive at this point, Lead Counsel and their team have already spent thousands of hours researching the law, propounding discovery requests, responding to Defendants' discovery requests, issuing subpoenas to third parties, and reviewing and analyzing the evidence. In addition, Lead Plaintiff and Lead Counsel conducted extensive preparation for the parties' December 14, 2018 mediation before Professor Eric Green. As such, Lead Counsel have an in-depth understanding of Defendants' strategies and arguments for defending the case. This knowledge will be extremely difficult, if not impossible, to replace at this stage of the litigation.

At the same time, Defendants and their team of twenty-plus lawyers from four different law firms (Cooley LLP, Davis Polk & Wardwell, Baker Marquart LLP and Goodwin Proctor) have been deeply involved in this case for more than a year. They, too, possess a deep institutional knowledge of the case. Any substitute counsel would require many months in order to catch up to these firms, and may, in fact, never do so at all.

Tellingly, Trigon and Defendants – it is notable that their arguments align – fail to discuss these issues, or how their proposals might negatively impact class representation. Viewed against the context of what is at stake – a quarter-billion-dollar, complex and completely novel securities class action – it makes no sense to change horses mid-stream, especially where the proposed substitute Lead Plaintiff has the largest financial interest and has already been thoroughly vetted. Changing the proposed Class's representation will only serve to negatively impact class interests, which is exactly why Defendants are pushing for it.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO SUBSTITUTE LEAD PLAINTIFF NO. 3:17-CV-06779-RS

1

**<u>CONCLUSION</u>**

2     On its face, the PSLRA does not apply under the circumstances here. *In re Portal Software,*

3   2005 U.S. Dist. LEXIS 41178, at *9, 10, 14. Indeed, no party has identified any benefits whatsoever

4   to the class from reopening the PSLRA Lead Plaintiff selection process and effectively restarting this

5   litigation.   To the contrary, accepting Defendants' proposal would significantly damage class

6   interests.  The PSLRA is not a weapon to be used by Defendants to derail the litigation.  Nor is it a

7   tool to be used by enterprising counsel to gain control of a lawsuit.  Accordingly, Plaintiffs' Motion

8   to Substitute should be granted in its entirety.

9                             Respectfully Submitted,

10   Date: February 15, 2019                LTL ATTORNEYS LLP

11                             By:   *s/ Enoch H. Liang*

12                                 Enoch H. Liang
                                   LTL ATTORNEYS LLP
13                                 601 Gateway Boulevard, Suite 1010
                                   South San Francisco, California 94080
14                                 Tel:   650-422-2130
                                   Fax:  213-612-3773
15                                 enoch.liang@ltlattorneys.com

16
                                   James M. Lee
17                                 Caleb H. Liang
                                   LTL ATTORNEYS LLP
18                                 300 S. Grand Ave., 14th Floor
                                   Los Angeles, California 90071
19                                 Tel:  213-612-8900
20                                 Fax:  213-612-3773
                                   james.lee@ltlattorneys.com
21                                 caleb.liang@ltlattorneys.com

22                                 Hung G. Ta
23                                 JooYun Kim
                                   Natalia Williams
24                                 HUNG G. TA, ESQ., PLLC
                                   250 Park Avenue, 7th Floor
25                                 New York, New York 10177
                                   Tel: 646-453-7288
26                                 Fax: 646-453-7289
27                                 hta@hgtlaw.com
                                   jooyun@hgtlaw.com
28                                 natalia@hgtlaw.com

1

2                                      *Lead Counsel for Court-Appointed Lead*
                                       *Plaintiff and the Class*
3

4
                                       William R. Restis
5                                      THE RESTIS LAW FIRM, P.C.
                                       402 West Broadway, Suite 1520
6                                      San Diego, California 92101
                                       Tel: 619.270.8383
7                                      william@restislaw.com

8

9                                      Joe J. DePalma
                                       Bruce D. Greenberg
10                                     LITE DEPALMA GREENBERG,
                                       LLC
11                                     570 Broad Street, Suite 1201
12                                     Newark, NJ 07102
                                       Tel: (973) 623-3000
13                                     Fax: (973) 623-0858
                                       Jdepalma@litedepalma.com
14                                     bgreenberg@litedepalma.com

15                                     *Additional Counsel for the Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO SUBSTITUTE LEAD PLAINTIFF
NO. 3:17-CV-06779-RS