Joel A. Fleming (SBN 281264)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
joel@blockesq.com
jake@blockesq.com

*Attorneys for Movant Trigon Trading Pty. Ltd.*

[Additional counsel listed on signature block]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Case No. 3:17-cv-06779-RS |
| This document relates to:<br>ALL ACTIONS | **REPLY IN SUPPORT OF MOTION TO SUBSTITUTE TRIGON TRADING PARTY LTD. AS LEAD PLAINTIFF**<br><br>Date:      March 7, 2019<br>Time:      1:30 p.m.<br>Courtroom: 3<br>Judge:     Hon. Richard Seeborg |

## I. ARGUMENT

### A. The Court Should Grant Trigon's Motion To Substitute

Anvari makes four arguments in his opposition to Trigon's motion to substitute[1] and tacks on a fifth in his reply in support of his motion to substitute Frunze as lead plaintiff.[2] Each fails.

Anvari's primary argument is that Trigon should not be permitted to invoke the PSLRA because it filed an action in state court.[3] This strongly suggests that Anvari does not like his chances if the Court *does* apply the PSLRA. And it is a weak argument. Anvari cannot cite one case in which a court has refused to follow a statute because a plaintiff filed a related action in a forum that has concurrent jurisdiction.[4] Nor is Trigon's filing in state court evidence of disregard for the interests of the Class. To the contrary, Trigon continued pressing forward in state court because of concerns about Anvari's adequacy to represent the class here. Those concerns were obviously justified.[5]

*Second*, Anvari argues that Trigon cannot litigate simultaneously in state court and federal court.[6] Agreed. But this is not an obstacle to granting Trigon's motion. If Trigon is appointed to lead the Federal Action, it will withdraw from the state court action.

*Third*, Anvari argues that Trigon and its counsel are inadequate for two reasons: (1) "It is

---

[1] *See* Docket No. 204 ("Anvari Opp."). All defined terms have the same meaning as in Trigon's opening brief.

[2] Docket No. 205 ("Anvari Reply").

[3] Anvari Opp. at 1-2, 3-4.

[4] *See Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S.Ct. 1061 (2018).

[5] Anvari writes that "adequate representation of Tezos investors requires careful vetting beyond the boilerplate certifications submitted pursuant to the PSLRA." Anvari Reply at 7. We agree! The fact that Hung Ta and LTL pushed forward—and went to mediation—with a lead plaintiff as obviously flawed as Mr. Anvari suggests a troubling disregard for the putative class.

[6] Anvari Opp. at 2, 5-6.

1

unclear how the same counsel can represent the putative Class and Trigon in federal court, while representing the same putative Class and [counsel's former client,] MacDonald, with or without Trigon, in an identical state court action"; and (2) "Trigon and its attorneys have asked this Court, in addition to appointing them lead, to deny the pending motion for class certification filed by Plaintiffs in this action."[7]

      The reference to MacDonald shows Anvari's counsel's lack of attention to detail. MacDonald dismissed his state court action eight months ago.[8] The other argument is equally silly. Trigon asks that the pending motion for class certification be denied *without prejudice* because it seeks to have Frunze and Pumaro appointed as class representatives and their counsel appointed as class counsel. For all the reasons set forth in the briefing, this contravenes the express command of the PSLRA. Instead, Tezos and its counsel should be appointed to lead the action. Once the motion to substitute is granted, they will promptly seek certification.

      *Fourth*, Anvari argues that "numerous courts in the Northern District of California" have permitted the substitution of a lead plaintiff who did not move within the original sixty-day window.[9] The first case that Anvari cites on this point, however, is *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002), which notes a critical distinction: "If other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff—*i.e.,* moved for appointment as lead plaintiff in response to the initial notice of pendency [as Trigon did]—then those plaintiffs

---

[7] Anvari Opp. at 2.

[8] *See* Notice Of Voluntary Dismissal Of Plaintiff Bruce MacDonald's Individual Claims Pursuant To California Code Of Civil Procedure Section 581 filed July 31, 2018 in *Trigon Trading Pty Ltd. v. Dynamic Ledger Solutions, Inc.*, *et al.*, No. 18-CIV-02045 (Sup. Ct. San Mateo).

[9] Anvari Opp. at 3, 7-9.

would arguably be entitled to priority over any other potential lead plaintiffs." *Id.* at 120 n.5.

Not a single one of Anvari's cases from this District involved a competing motion from a lead plaintiff applicant who filed a motion within the original sixty-day period. In *Morgan v. AXT, Inc.*, No. C04-04362 (MJJ), Docket No. 93 (N.D. Cal. Mar. 14, 2007) (cited in Anvari Opp. at 7), the other plaintiffs who had filed a timely motion within the original sixty-day period did not seek appointment when the original lead plaintiff withdrew. *Id.*, Docket No. 89 at 1-2 ("All of the other movants were represented by the law firm Glancy Binkow & Goldberg. … Current Lead Counsel consulted with Glancy Binkow & Goldberg and they do not seek lead plaintiff status for their prior movants."). Similarly, no other movants who had filed a timely motion within the original sixty-day period stepped forward in *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *1 (N.D. Cal. Apr. 17, 2008) (cited in Anvari Opp. at 7). And in *In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*, the Court initially denied the motion to substitute a new lead plaintiff group because, *inter alia*, "[wh]en the … complaint was initially filed, neither member of the [proposed substitute group] sought to act as Lead Plaintiff." No. MDL 09-02014 JSW, 2009 WL 2031764, at *2 (N.D. Cal. July 9, 2009). The Court ultimately acquiesced in the appointment of the proposed substitute group because no one else stepped forward. *In re Bank of Am. Corp.*, No. MDL 09-02014 JSW, 2009 WL 2710413, at *1 (N.D. Cal. Aug. 26, 2009) ("No other individual or group has filed a competing motion to be appointed as lead Plaintiff.").

*Finally*, in his reply in support of the motion to substitute Frunze, Anvari argues that Trigon should not be appointed because Anvari's counsel "have spent thousands of hours researching the

3

law, reviewing evidence, and interacting with Defendants" and "[i]t is folly to believe that a substitute Lead Plaintiff and his or her counsel would be able to hit the ground running[.]"[10]

Nonsense. DLS has produced the same discovery to Trigon that it has produced to Anvari; Trigon's counsel have read the same case law. Anvari does not cite a single case adopting the don't-switch-horses-in-midstream argument. Several courts have considered and rejected it. *In re Outerwall Inc. Stockholder Litig.*, No. C16-1275JLR, 2017 WL 881382, at *7 (W.D. Wash. Mar. 6, 2017) ("courts in the Ninth Circuit have denied lead plaintiff status to plaintiffs who had already done considerable work on behalf of the putative class."); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587, at *2 (N.D. Cal. Nov. 23, 2005) ("over the last two years, the Cupples Movants have (1) filed a comprehensive amended complaint, (2) procured twenty-two document preservation subpoenas, and (3) developed an intimate knowledge of the case. Nevertheless, *Cavanaugh* squarely holds that such peripheral issues cannot be the basis for elevating a particular plaintiff to lead status.").

**B.   The Court Should Reject Defendants' Delay Tactics**

Defendants take no position on the cross-motions to substitute.[11] They do, however, ask that—regardless of who is appointed—they be given the opportunity to file successive motions to dismiss on certain issues (knowledge of the Contribution Terms and the applicability of the federal securities laws under *Morrison v. Nat'l Australian. Bank Ltd.*, 561 U.S. 247 (2010)). The Court should reject this request.

---

[10] Anvari Reply at 3; *id.* at 11 ("Lead Counsel have an in-depth understanding of Defendants' strategies and arguments for defending the case. This knowledge will be extremely difficult, if not impossible, to replace at this stage of the litigation. … [I]t makes no sense to change horses mid-stream[.]").

[11] Docket No. 201 ("Defs' Opp."); Docket No. 203 ("Foundation Opp.").

*First*, as set forth in its opening papers, Trigon can and will allege and testify that it did not see the Contribution Terms before making its purchase. So this is not a basis to seek dismissal.

*Second*, Trigon is Australian. But a transaction is domestic under *Morrison* if "the seller incurred irrevocable liability within the United States to deliver a security." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67-68 (2d Cir. 2012); *Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1008 (9th Cir. 2017) (same; citing *Absolute Activist*). Here, the securities are the Tezos tokens (which exist on the Tezos blockchain) and, at the time of the ICO, DLS owned all of the intellectual property in the Tezos project (including the source code for the blockchain). *In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *1 (N.D. Cal. Aug. 7, 2018) ("the Breitmans formed DLS to hold all Tezos-related intellectual property.").

DLS is a California-headquartered, Delaware-incorporated company. So it incurred the liability to deliver those securities in the United States. *Sec. & Exch. Comm'n v. Scoville*, 913 F.3d 1204, 1219 (10th Cir. 2019) ("Mr. Scoville conceived and created Traffic Monsoon in the United States. Through Traffic Monsoon, he created and promoted the Adpack investments over the internet while residing in Utah. We add that the servers housing the Traffic Monsoon website were physically located in the United States. For these reasons, the district court correctly held that the antifraud provisions of the federal securities acts encompass Defendants' sales of, and offers to sell, Adpacks to Traffic Monsoon members located outside the United States.").

As the Court noted in denying the motion to dismiss, the Tezos ICO took place through "an interactive website that was: (a) hosted on a server in Arizona and; (b) run primarily by Arthur Breitman in California" and contributions to the "ICO became irrevocable only after [they were] validated by a network of global 'nodes' clustered more densely in the United States than in any

5

other country." *Tezos* 2018 WL 4293341, at *8. Thus, regardless of Trigon's Australian citizenship, it can bring claims under the United States federal securities laws.

## II. CONCLUSION

The Court should substitute Trigon as lead plaintiff. It should deny, without prejudice, the motion for certification of a class represented by Pumaro and Frunze, deny Anvari's motion seeking to substitute Frunze as lead plaintiff, and deny Defendants' request for a second round of motion-to-dismiss practice.

February 20, 2019                              Respectfully submitted,

**BLOCK & LEVITON LLP**

/s/ Joel Fleming
Joel A. Fleming (SBN 281264)
Jacob A. Walker (SBN 271217)
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
joel@blockesq.com
jake@blockesq.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Danielle Smith (291237)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: 510-725-3000
510-725-3001 (fax)
reed@hbsslaw.com
mikes@hbsslaw.com
danielles@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Telephone: 206-623-7292
206-623-0594 (fax)
steve@hbsslaw.com

*Counsel to Trigon Trading Pty. Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2019, I authorized the electronic filing of the foregoing with the Clark of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Joel Fleming
Joel Fleming