Pages 1 – 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

<u>IN RE TEZOS SECURITIES LITIGATION</u>  )  NO. C 17-06779 RS

San Francisco, California
Thursday, March 7, 2019

### <u>TRANSCRIPT OF PROCEEDINGS</u>

<u>**APPEARANCES**</u>:

For Plaintiffs:
                HUNG G. TA, ESQ. PLLC
                250 Park Avenue
                Seventh Floor
                New York, New York  10177
      **BY:  HUNG G. TA, ESQ.**

                LTL ATTORNEYS LLP
                300 South Grand Avenue
                14th Floor
                Los Angeles, California  90071
      **BY:  ALEXANDER H. HU, ESQ.**

For Defendant Trigon:
                BLOCK & LEVITON LLP
                155 Federal Street
                Suite 400
                Boston, Massachusetts 02110
      **BY:  JOEL A. FLEMING, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
             Official Reporter, U.S. District Court

(Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>**:


For Defendants Arthur and Kathleen Breitman:
                         BAKER MARQUART LLP
                         777 South Figueroa Street
                         Suite 2850
                         Los Angeles, California  90017
            BY:  **BRIAN E. KLEIN, ESQ.**
                 **SCOTT M. MALZAHN, ESQ**.

For Defendant Tezos Stiftung:
                         DAVIS, POLK & WARDWELL LLP
                         1600 El Camino Real
                         Menlo Park, California  94025
            BY:  **NEAL A. POTISCHMAN, ESQ.**


For Defendant Dynamic Ledger Solutions, Inc.:
                         COOLEY, LLP
                         3175 Hanover Street
                         Palo Alto, California  94304
            BY:  **PATRICK E. GIBBS, ESQ.**

<u>**Thursday - March 7, 2019**</u>                                    <u>**1:32 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

**THE CLERK:**  Calling Case C-17-6779, in re Tezos

Securities litigation.  Counsel, please state your

appearances.

**MR. TA:**  Good afternoon, Your Honor.  Hung Ta on

behalf of the plaintiffs.

**THE COURT:**  Good afternoon.

**MR. HU:**  Good afternoon, Your Honor.  Alex Hu, also

counsel for the lead plaintiff.

**THE COURT:**  Good afternoon.

**MR. FLEMING:**  Good afternoon, Your Honor.  Joel

Fleming, Block & Leviton, counsel for Trigon.

**THE COURT:**  Good afternoon.

**MR. KLEIN:**  Good afternoon, Your Honor.  Brian Klein

for Arthur and Kathleen Breitman.

**THE COURT:**  Good afternoon.

**MR. MALZAHN:**  Good afternoon, Your Honor.  Scott

Malzahn, with Baker Marquart, for Arthur and Kathleen

Breitman.

**THE COURT:**  Good afternoon.

**MR. POTISCHMAN:**  Good afternoon, Your Honor.  Neal

Potischman, Davis Polk, for the Tezos Foundation.

**THE COURT:**  Good afternoon.

**MR. GIBBS:**  Good afternoon, Your Honor.  Patrick

1    Gibbs from Cooley for Dynamic Ledger Solutions.

2         **THE COURT:**  Good afternoon.  So this matter is on for

3    the request to substitute the lead plaintiff.  Let me make

4    some preliminary comments, because I had a chance to take a

5    look at what you submitted.

6         I am not inclined to open this PSLRA process up completely

7    again.  I don't think we need a new amended complaint.  I

8    certainly don't think we need a new round of motions to

9    dismiss, which is a non-starter, as far as I'm concerned.  But

10   I do think that I can't simply look at the lead counsel, to

11   say:  Well, substitute someone new in, unless there is a basis

12   for doing that.

13        And my understanding is that the person that they propose

14   to substitute in was not amongst those who had sought

15   appointment under the PSLRA process at the beginning, which

16   would then indicate, I think, we would go to Trigon Trading.

17   And they have their own counsel that they would like to have

18   appointed.

19        What I am inclined to do is so we don't -- the class does

20   not lose the work that Mr. Ta and his colleagues have done, is

21   to have Trigon Trading come in, but then have a co-lead counsel

22   situation, with counsel for Trigon Trading, and then Mr. Ta.

23        I know there's a third firm that Trigon Trading wants, but

24   I would be inclined to do it co-lead with the -- one from

25   Trigon Trading, and then Mr. Ta, who's been already in the

1    case.

2         So that's my tentative view of things.  Who wants to start

3    off the discussion?

4              **MR. TA:**  Good afternoon, Your Honor.  Can I just

5     address the various points that you just made, Your Honor?

6         The -- I think the important thing to remember here is

7    that the PSLRA doesn't address itself to a situation where a

8    lead plaintiff has withdrawn.

9         So, Trigon's come in, and has said basically:  We were

10   second under the PSLRA process at the beginning back in March

11   of 2018.  And therefore, we -- because we're second, we should

12   automatically be appointed.

13        But there are two problems with that, at least.  First

14   problem as we see it is to be able to invoke that order, that

15   decision which held that they were second, second to us, they

16   have to basically abide by that order.  And they didn't abide

17   by that order.

18        What does it mean to abide by that order?  If they

19   submitted themselves to the PSLRA, and Your Honor held that

20   they were second, a person abiding by that order would have

21   stayed in federal court, would have continued to monitor the

22   litigation from federal court, and have been ready to step up.

23             **THE COURT:**  Yes, but my concern about what you want

24    to do would totally subvert the PSLRA.  It would say we go

25    through this whole process.  The focus of the process is who's

1   got the biggest skin in the game.   They then get to designate

2   their counsel.

3       You now were outside of -- you're saying:  Well, I'm here,

4   I'm lead counsel, so now I want to substitute in somebody else

5   for lead plaintiff.  It's putting -- it's putting everything

6   backwards.

7       And I can't find any case that justifies you doing -- I'm

8   not suggesting that this in any way is a bait-and-switch, but

9   it would be subjected -- it would open the door for such

10  tactics.

11      And I really -- there are various alternative ways to go.

12  But the one that I think I have the least solid ground to stand

13  on, frankly, is the one you are proposing.

14          **MR. TA:**  I understand, Your Honor.  But I think -- I

15   think this definitely was not a bait-and-switch.  Mr. Anvari

16   has litigated this case capably and skillfully.

17      And as you know, we've gone through motions to dismiss;

18  we've gone discovery.

19          **THE COURT:**  Sure.

20          **MR. TA:**  We've even done a mediation.  And we're now

21   at the point where we are at class certification, and there's

22   been extensive -- and the defendants know that.  They've been

23   sending discovery requests completely targeted at class --

24   classification.

25          **THE COURT:**  And I want to have you maintain your work

1   and continue on in this case.  So I just have a problem with

2   your notion that you can -- you, the counsel, can now

3   designate the new lead plaintiff, who wasn't even part of the

4   party when we were going through the process.

5          **MR. TA:**  I understand that, Your Honor.  Can I just

6   make several points?  One, I think this situation happens more

7   frequently than people intend.  Lead plaintiffs withdraw for

8   all sorts of reasons.  And the case law makes very, very clear

9   that a lead plaintiff's duty, a lead plaintiff's duty is to

10  withdraw if she or he perceives there to be a problem with her

11  or his adequate representation of the class.

12         **THE COURT:**  Let me ask it this way.  How can I simply

13  ignore the PSLRA process?  Because that's what you are asking

14  me to do.  We went through this whole process.  And now you're

15  saying:  Oh, just forget it.  How can I do that?

16         **MR. TA:**  Well, I wouldn't characterize it as ignoring

17  the PSLRA process.  I think -- I think we need to recognize

18  that the PSLRA process doesn't address itself to this

19  situation.  And numerous courts have held that, have

20  recognized that.  They have said that the PSLRA is not

21  designed to address this situation.

22         **THE COURT:**  It renders the first part of it

23  meaningless, under your approach.  It's:  Well, we can go

24  through this whole rigmarole, and then we get people in place,

25  and then the lead plaintiff elects to depart and so we just

1   turn to the lead counsel.  Who's only there because of the

2   lead plaintiff.

3       I mean, you're there only because the person at the time

4   who I concluded had the biggest stake wanted you as their

5   counsel.  Now, that person is nowhere to be found.  I let them

6   go.  And it's you who are now saying: I want this person as

7   lead plaintiff.  That's taking the PLSRA process, and turning

8   it on its head.

9       **MR. TA:**  Well, I think -- again, I think we went

10   through the PSLRA process, Your Honor.  So, the entire process

11   was not meaningless.  And the lead plaintiff performed a lot

12   of functions and a lot of purposes pursuant to his duty under

13   the PSLRA.  And so we're now at this situation where he needs

14   to withdraw.

15       And I don't think it's -- it's -- it's -- it's correct to

16   look back at the process and say that entire process was

17   meaningless.  As I said, we engaged in a one-day mediation with

18   the defendants.  So this litigation has been hard fought, hard

19   fought throughout.

20       So, so, I just take issue with that characterization that

21   the entire process is meaningless, and that we are somehow

22   subverting the process.  I think the PSLRA doesn't address

23   itself to this situation.  And in this situation, numerous

24   courts have fashioned their own remedies.

25       We have pointed out at least three or four decisions from

1   the Northern District of California where the judges simply

2   said:  Okay, who's available?  And, and if --

3           **THE COURT:**  Yeah, but those cases, several of them,

4    there was no opposition.  I mean, there was nobody else to

5    turn to, effectively.  So it was kind of a done deal.

6        Here, I had people who were participating in the process,

7   who were right behind you, who said -- who say: We're still

8   here, and we would like to participate.

9        And I have to say, I don't quite understand your argument

10  that:  Well, they went off and filed in the state court.  So

11  what?  I mean, I don't understand why that is somehow

12  disabling.

13       They're also telling me that if they come back in, then

14  they will throw their lot with the federal court.

15          **MR. TA:**  I think there are two problems with what

16   they're doing.  As I said, first of all, if you're going to

17   invoke Your Honor's decision from March of 2018, you have to

18   conduct yourself like you were abiding by that order.

19       And I think when a plaintiff presents herself or himself

20  in front of this Court, subjects itself to the PSLRA process

21  and then Your Honor issues a decision, and then the plaintiff

22  says:  You know what, I don't care for that decision I'm just

23  going to go file in state court, I think that shows that you've

24  withdrawn yourself from the process and that you've waived any

25  reliance on Your Honor's decision.

1        **THE COURT:**  Do you have any case for the proposition

2    that participating in state-court litigation is somehow

3    contrary to good-faith participation in the PSLRA process?

4        **MR. TA:**  I think the *Bank of America* case is the

5    closest example, where the judge said -- Milberg Weiss and its

6    clients filed in federal court.  And then once they were not

7    appointed lead, they then took themselves down to state court

8    and filed there.

9        And the judge, the District Court in that case was

10   understandably upset that the plaintiffs were trying to

11   circumvent the PSLRA.  And as Your Honor will recall --

12        **THE COURT:**  Well, this issue was litigated here.  And

13   I wasn't upset.

14        **MR. TA:**  I understand, Your Honor.  And I think

15   that's part of the problem.

16        The fact that you have a plaintiff who's in federal court,

17   removes itself from federal court to state court and says you

18   know what?  You can't touch me in state court and is litigating

19   actively -- litigating actively in state court.  And at the

20   same time when an opportunity arises in federal court, they

21   then jump back to the federal court.

22        And I think that's contrary to *Scion*.  In *Scion* the

23   Supreme Court said basically:  State-court plaintiffs, you stay

24   in your lane; federal court plaintiffs, you stay in your lane.

25        And I think, very importantly, if Trigon wanted --

1          **THE COURT:**  So your position is their having gone,

2     consistent with *Scion*, to the state court because state court

3     has concurrent jurisdiction, they have somehow elected that

4     they will never come back into the federal process.

5          **MR. TA:**  Elected never to come back, or, if they

6     wanted to come back, Your Honor, an essential pre-condition

7     for that would have been to terminate the state-court action.

8          And why do I say that?  It's because when you present

9     yourself as an applicant under the PSLRA process, you are

10    basically submitting to the jurisdiction of the federal court.

11    And you can't submit to the jurisdiction of the federal court

12    when you have one foot firmly planted in state court.

13         And I think it's more than one foot.  I think it's more

14    like close to two feet.

15         **THE COURT:**  Let me ask you this.  Could you work with

16    counsel for Trigon if I stay with something along the lines of

17    what I was thinking about, and have co-lead counsel?

18         **MR. TA:**  Yes, Your Honor, I definitely can work with

19    them.  I'm actually working with them in another case.

20         **THE COURT:**  Okay.

21         **MR. TA:**  I would ask, however, Your Honor, that LTL,

22    who's been active in this case as well, that they be given

23    maybe not a co-lead role, but at least that they be recognized

24    and be allowed to work on this case as well.

25         **THE COURT:**  Okay.  Let me hear from --

1          **MR. FLEMING:**  So I'm a big believer in:  When you're

2     winning, shut up.

3          **THE COURT:**  Why don't you address the point about

4     having thrown your lot with the state court.

5          **MR. FLEMING:**  Sure, exactly.  And I understand why

6     the argument is made, but I don't think at all that it's

7     evidence of, somehow, a lack of good faith either on our part

8     or on our client's part.

9          Rather, we had a genuine concern, both for our client's

10    self-interest and the interest of the putative class, that

11    the -- this federal action litigated by Mr. Anvari was not

12    going to be the right vehicle or the best vehicle.  We

13    obviously didn't know -- and I don't need to get into some of

14    the more sort of incendiary allegations that defendants have

15    made.  But it was --

16          **THE COURT:**  Against Mr. Anvari.

17          **MR. FLEMING:**  Against Mr. Anvari, exactly.  That was

18    news to us when it was filed.  But it was certainly clear from

19    Your Honor's decision on the motion to dismiss, the

20    back-and-forth about the additional deposition of Mr. Anvari,

21    that there might be problems in having him certified as a

22    class representative.

23          And the reason that that's a problem and the reason that

24    we thought it was important to have another avenue for recovery

25    is that creates a dynamic where there's the possibility that

 1  the lead plaintiff would take a cheaper settlement,

 2  pre-certification.

 3       Your Honor might be familiar, Judge Alsup has a standing

 4  order that actually forbids settlement --

 5            **THE COURT:**  Quite familiar.

 6            **MR. FLEMING:**  Indeed, which is now up --

 7            **THE COURT:**  By the way, I don't have that order.

 8            **MR. FLEMING:**  Agreed.  And frankly, if I was asked, I

 9  would probably say that that's not the right approach.  There

10  are circumstances where pre-certification settlements are a

11  good idea.

12            **THE COURT:**  The Ninth Circuit is going to tell us,

13  one way or the other, very soon.

14            **MR. FLEMING:**  We will find out.  But the dynamic that

15  he identifies I think certainly is an important one.  And the

16  idea that Mr. Anvari and his counsel went to a mediation,

17  knowing that there were these problems, knowing, frankly, that

18  there were these allegations that were going to be highly

19  injurious to Mr. Anvari's reputation as a professional, that

20  creates almost -- I'm not saying defendants were deliberately

21  trying to blackmail Mr. Anvari, but it does create that sort

22  of risk, where he might have taken a cheaper settlement.

23       And so by going forward in the state-court action, among

24  other things, it allowed us to get access to some of the

25  discovery that has been produced here, so that if a weaker

1   settlement, was reached we would at least have some ammunition.

2   We would have a sense of what the discovery that had been

3   produced in this action looked like.

4           **THE COURT:**  Can you work with Mr. Ta and Mr. Hu?

5           **MR. FLEMING:**  Yes.  As noted, we are co-counsel in

6   the *McKesson* litigation, where our co-counsel Hagens, Berman

7   is one of the two lead firms.  So we've worked together in

8   that case.

9           **THE COURT:**  Then I'm now getting to the point that if

10  you're there, Hagens, Berman is there, your two colleagues

11  here, isn't that more than we need?

12          **MR. FLEMING:**  Yes.  And so that was the second

13  question I was going to address.

14      So assuming that Your Honor does want this sort of

15  Solomonic approach of having Trigon as the lead plaintiff, with

16  assistance from counsel who have been litigating to date, I

17  think that does make sense.

18      What I would suggest -- and it wasn't entirely clear --

19          **THE COURT:**  I said "co-lead."  Not "with assistance

20  from."

21          **MR. FLEMING:**  Right.  So that was sort of -- I'm not

22  sure what the Court was envisioning, whether the Court was

23  envisioning that the Hung Ta and LTL firms be counsel to

24  Trigon, which I think invades the sort of lead plaintiff's

25  ability to select his own counsel, which is both a

 1 | constitutional right and something required --

 2 |       **THE COURT:**  No, but in class action cases, when I'm

 3 | asked to structure the case, I suppose the only difference

 4 | there is that they continue to have a client.  But --

 5 |       **MR. FLEMING:**  Right.

 6 |       **THE COURT:**  -- they can substitute, they can

 7 | represent a member of the class.

 8 |       **MR. FLEMING:**  Absolutely.  And so I think at the

 9 | point that a class is certified, the Court has the power under

10 | Rule 23 to appoint --

11 |       **THE COURT:**  I see --

12 |       **MR. FLEMING:**  My point is the PSLRA has a specific

13 | process for lead plaintiff.  And so I think there's a concern

14 | with -- I don't think either under the PSLRA, or that the

15 | Court can make Hung Ta and LTL Counsel to Trigon.

16 |     So what I would suggest is that the Court appoint Trigon

17 | as lead counsel.  And I will represent that we would add their

18 | plaintiffs as named plaintiffs to a complaint.  Including

19 | Pumaro, who we'll address.

20 |     To the extent there's any *Morrison* issue that the

21 | defendants want to raise, we will add those clients as named

22 | plaintiffs, and we will consult and work cooperatively with

23 | Hung Ta and LTL as our co-counsel.

24 |     But there can only -- I think it makes sense, and I think

25 | the PSLRA, frankly, requires that there be a lead plaintiff.

1    And that that lead plaintiff have the choice of counsel.

2          **THE COURT:**  Why do I need two firms from -- Hagens,

3    Berman and your firm?

4          **MR. FLEMING:**  I would have to consult with Hagens,

5    Berman.  I think we would agree to only one, with the

6    understanding that as lead counsel, my firm would have the

7    discretion to assign work as we see fit.  And we would rely on

8    the Hagens firm for some of that work, as well.  They've been

9    working with us throughout this.

10         They're obviously a well-respected firm in this court, so

11   I don't want to --

12         **THE COURT:**  Why don't you back up to the beginning,

13   which was Mr. Ta's point that he's suggesting I'm overreacting

14   to the notion that the PSLRA process means that you can't

15   address a situation like we have here, where it wasn't

16   anticipated that the lead plaintiff is exiting the scene.

17         Why -- why can't he, at this stage, consistent with the

18   PSLRA, designate someone new?

19         **MR. FLEMING:**  I think the problem is it would render

20   some of the language of the statute meaningless.  The statute

21   says within 20 days of the complaint being filed, issue a

22   press release telling people that if they want to be lead

23   plaintiff, they have to file a motion within 60 days.

24         If that's not the rule that the Court is going to apply,

25   then --

1          **THE COURT:**  I suppose the difference is -- and I

2     haven't been asked, nor am I suggesting I'm making some

3     finding that there was bad faith here.

4          If you could show bad faith, that would be a different

5     avenue.  You'd say:  Well, this was thwarting the PSLRA

6     process.  But here, you know, things do happen.  Not to go into

7     Mr. Anvari's situation, but lead plaintiffs come and go.  I

8     mean, I see that in other non-PSLRA cases with some regularity.

9     So there's got to be a mechanism for this.

10         And as Mr. Ta suggests, where it's unopposed, it hasn't

11    been a problem.

12         **MR. FLEMING:**  Sure.

13         **THE COURT:**  My colleagues have said okay.

14         **MR. FLEMING:**  And there is a mechanism.  And I think

15    the more usual mechanism is that the lead plaintiff remains in

16    the case and may add additional named plaintiffs, who may seek

17    appointment as class representatives.

18         You see that particularly common where you might have a

19    lead plaintiff who only can assert Exchange Act claims,

20    Rule 10b-5 claims.  But there's a potential Securities Act

21    claim, a Section 11 claim.  So you might need to go out and get

22    a named plaintiff who bought in the IPO, or who bought on the

23    secondary offering, and who has standing to assert those

24    additional counts.

25         So I think the statute does give flexibility to a lead

plaintiff to assemble a team of additional named plaintiffs, if necessary, and if in the best interest of the class.

But the lead plaintiff is a special statutorily carved-out role.  And I think it would sort of render the statute a nullity if the rule was once a lead plaintiff has been appointed, then it's sort of open season, and the lead plaintiff can step back.

I'm not suggesting there was bad faith here.  But I also do think it would create a very dangerous dynamic where people might be -- law firms might be incentivized to move forward with lead plaintiffs who they think might not make it all the way, as long as you can get appointed, and then swap someone else in.

So I do think, even ignoring the sort of strict text of the statute, that there is a real policy concern.  That the Court should be hesitant to incentivize a system where plaintiffs could be swapped in and out.

**THE COURT:**  So your notion is that you would file an amended complaint.

**MR. FLEMING:**  I think we would speak to defendants. And if we could, rather than filing, file a stipulation similar to those that have already been filed, adding a paragraph.  As we noted in our papers, Trigon can't allege that it didn't read the contribution terms.

I would want to think about whether the current complaint,

whether there are any other allegations that need to be made to

address any *Morrison* argument that the defendants might raise.

 But again, as I said, we would probably seek to add Pumaro

as well, which is a U.S. entity.  And wouldn't have those

problems, assuming that Pumaro's willing.

 **THE COURT:**  If I recall correctly, there was a motion

to -- a class certification motion that's been filed.

 Has it been filed, Mr. Ta?  Did you file it?

 **MR. TA:**  Yes.

 **THE COURT:**  So what happens to that?

 **MR. FLEMING:**  Again, I would talk to defendants.  It

would probably make sense that that be withdrawn and a new

motion filed, at the very least.  As I said, we have some of

the discovery.  I don't think it's all of it.  So we would

want a bit of time --

 **THE COURT:**  Whatever happens, Mr. Anvari is not going

to be there.  So you'll need a new one because I presume the

motion was --

 **MR. FLEMING:**  The pending motion was to appoint --

 **THE COURT:**  (Inaudible) -- adequacy would say

something about Mr. Anvari.

 **MR. FLEMING:**  The pending motion sought to add

Mr. Frunze and Pumaro.  But again, it would need to be amended

to add Trigon, which would seek appointment not only as a lead

plaintiff, but also a class rep.

1          So I think it would make sense for that motion to be

2     denied without -- denied without prejudice.  And then we can

3     work out a schedule to file a renewed motion with the new

4     leadership structure.

5          Certainly, it doesn't reference my firm or our adequacy to

6     be class counsel, so we'd need to address our adequacy.

7          **THE COURT:**  And run by again your view on the state

8      court proceedings, what you plan to do.

9          **MR. FLEMING:**  Sure.  So if Trigon is appointed as

10      lead plaintiff here, it would dismiss the state-court action.

11      I think we would probably -- we've been cooperating with

12      Mr. Baker, who remains in state court.  I think we would

13      continue to do that, to the best of our ability.

14          I think it's important for the class not to have both

15      actions sort of running off in different directions, or

16      intention.  I'm confident that we would be able to continue to

17      work with Mr. Baker to the extent possible.  Defendants have a

18      different view.  They're trying to stay the state-court action,

19      and I suspect would continue to do so.

20          **THE COURT:**  Okay.  Who on the defense side wants to

21      say anything?

22          (Off-the-Record discussion between counsel)

23          **MR. MALZAHN:**  This is Scott Malzahn with Baker

24      Marquart.  From the defendant's perspective, of course, it is

25      up to Your Honor to decide who's the proper lead plaintiff in

1    this case.  We just want to ensure that there is a proper

2    process that is followed.

3        It sounded like what Trigon's counsel was suggesting would

4    be acceptable.  We're happy to meet and confer with them about

5    a schedule, moving forward; that the motion for class

6    certification would be denied without prejudice.  And we can

7    talk about a stipulation, to avoid having to file an entirely

8    new amended complaint.  I think that process would make sense,

9    from our perspective.

10            THE COURT:  Okay.  Thank you.

11        Anyone else from the defense side?  You don't have to.

12            MR. GIBBS:  No -- I had just one very quick point.

13    Patrick Gibbs for Dynamic Ledger Solutions.

14        We may also need to rethink some other dates that have

15    been set, discovery items and the like.  But I would propose we

16    just kick that to the discussion with -- with the new

17    leadership group.

18            THE COURT:  Okay.  Mr. Ta?

19            MR. TA:  Your Honor, can I just clarify one or two

20    points?  Mr. Frunze and Pumaro LLC are already named

21    plaintiffs in this action.  They were added by stipulation,

22    and it was so ordered by the Court.

23            THE COURT:  They were not part of the process during

24    the initial period.

25            MR. TA:  Correct.  Oh, Mr. Pumaro was.  Pumaro LLC

1    was.

2            **THE COURT:**  Yes, but not Mr. Frunze.

3            **MR. TA:**  Not Mr. Frunze, correct, Your Honor.

4            **THE COURT:**  Right.  If you take Mr. Frunze and Mister

5    -- putting Mr. Frunze aside for a moment, you don't have any

6    argument, as I understand it, that Trigon isn't the next party

7    with the most skin in the game, if you will.

8            **MR. TA:**  Pursuant to the order structure that was set

9    back in March of 2018, correct, Your Honor.

10            **THE COURT:**  Right.  Thank you.  Okay.  Any further

11    discussion?

12        (No response)

13            **THE COURT:**  I'll go back and think through some of

14    the issues that you've highlighted for me, and come up with

15    some notion of how we're going to proceed.

16        And then I will encourage the parties -- whatever happens,

17    there will be a -- some meeting and conferring that I will want

18    you to all do, once you get the benefit of my order.  And then

19    you can go from there.

20        So, very good.  Thank you.

21            **MR. KLEIN:**  Thank you, Your Honor.

22        (Proceedings concluded)

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6   Court, Northern District of California, hereby certify that the

7   foregoing is a correct transcript from the record of

8   proceedings in the above-entitled matter.

9

10                     *Belle Ball*

11   _____
                       /s/ Belle Ball

12          Belle Ball, CSR 8785, CRR, RDR

13             Monday, March 11, 2019

14

15

16

17

18

19

20

21

22

23

24

25