UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Case No. 17-cv-06779-RS<br><br>**ORDER ON PLAINTIFFS' MOTIONS TO SUBSTITUTE LEAD PLAINTIFF** |

## I. INTRODUCTION

This is a securities class action brought by cryptocurrency contributors in the Tezos blockchain project ("Tezos"), who allege various project participants sold them unregistered securities. After five different plaintiffs initially moved for appointment as lead plaintiff, Arman Anvari was appointed to file a consolidated complaint on behalf of all contributors. Motions to dismiss were filed by the four distinct groups of defendants: Arthur Breitman, Kathleen Breitman, and their company Dynamic Ledger Solutions (collectively, "DLS" or "DLS Defendants"), Timothy Draper and certain of his venture capital vehicles (collectively, "Draper"), Tezos Stiftung (the "Tezos Foundation"), and Bitcoin Suisse AG ("Bitcoin Suisse"). The Draper and Bitcoin Suisse defendants were dismissed, and the case moved forward with discovery. Plaintiffs then filed a class certification motion which remains pending.

Now Anvari moves to withdraw as lead plaintiff, as defined in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a), and seeks to substitute in his place named plaintiff Artiom Frunze. (Dkt. 196.) In opposition, Trigon Trading Pty. Ltd. ("Trigon")

filed a competing motion to appoint itself lead plaintiff, and a renewed motion to appoint Block & Leviton LLP and Hagens Berman Sobol Shapiro LLP as lead counsel to replace LTL Attorneys LLP and Hung G. Ta, Esq. PLLC.  (Dkt. 198.)  The DLS Defendants and Tezos Foundation take no position on the appropriate lead plaintiff but request the PSLRA selection process be reopened. (Dkt. 201, 203.)  They request the new lead plaintiff be ordered to file an amended complaint, defendants be given an opportunity for a new round of motions to dismiss, and the pending class certification motion be denied without prejudice.  (*Id.*)

For the reasons set forth below, the motion to withdraw Anvari as lead plaintiff is granted, the motion to substitute Anvari with Frunze as lead plaintiff is denied; the motion to substitute Trigon as lead plaintiff is granted; and the request to deny the class certification motion without prejudice is granted.  Defendants' request to restart the PSLRA process at the notice stage is denied.  Further, Block & Leviton LLP and Hung G. Ta, Esq. PLLC shall serve as co-lead counsel.

## II. LEGAL STANDARD

The PSLRA requires the court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members . . . ."  15 U.S.C. §78u-4(a)(3)(B)(i); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531 (N.D. Cal. 2009).  The Act creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" that (i) either filed the complaint or made a motion in response to the published notice; (ii) in the determination of the court, has the largest financial interest in the relief sought; and (iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u–4(a)(3)(B)(iii).

## III. DISCUSSION

### A. Anvari's Withdrawal as Lead Plaintiff

A plaintiff generally "should not be compelled to litigate if it doesn't wish to" or if it becomes an inadequate class representative.  *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409, 2004 U.S. Dist. LEXIS 22320, at *4 (S.D.N.Y. Nov. 3, 2004); *see also Z-Seven*

*Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("[T]he district court's order designating a lead plaintiff is not a conclusive, immutable determination of the issue. It can be revisited if circumstances warrant."). Anvari may withdraw as lead plaintiff as he no longer believes he can adequately represent the putative class. (*See* Ta Decl., Ex. A (Anvari Decl.).)

### B. Substitution of Lead Plaintiff

Anvari's counsel seeks to substitute in their hand-picked choice, Frunze, without restarting the PSLRA lead plaintiff process. Trigon simultaneously seeks its own appointment as the only other willing lead plaintiff who moved for an appointment within the initial 60-day notice period. 15 U.S.C. § 78u-4(a)(3)(A)(i). Defendants express no preference on lead plaintiff but insist on restarting the PSLRA notice process, having the new lead plaintiff file an amended complaint, and allowing further motions to dismiss. This raises the initial question whether the PSLRA requires re-noticing this action for the selection of a new lead plaintiff. It does not.

The PSLRA "does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation." *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2005 U.S. Dist. LEXIS 41178, at *9 (N.D. Cal. Mar. 9, 2005) (citing 15 U.S.C. §§ 77z-1(a)(3)(A), 77z-1(a)(3)(B)(i)). This is evident from the statute itself, which lacks guidance on repeating the lead-plaintiff process and suggests "Congress contemplated invoking the PSLRA's lead plaintiff process only once – at the very beginning of the suit." *Id*. at *10. This does not mean, however, that the withdrawing lead plaintiff or his lead counsel can hand-pick a substitute without abiding by the PSRLA.

*In re Portal Software*, which Anvari's counsel primarily rely on, is both informative and distinguishable. In that case, a lead plaintiff was appointed but then sought leave to file an amended complaint and add a new plaintiff along with him to address impending deficiencies in his representation under Rule 23 of the Federal Rules of Civil Procedure. The court considered reopening the PSLRA lead plaintiff process at that stage, but only if it would serve the purposes of the PSLRA. *Id.* at *9-10; s*ee* 15 U.S.C. § 77z-1(a)(3)(A) (requiring widely announced notice of

the putative class); § 77z-1(a)(3)(B)(iii) (adequacy of lead plaintiff with "the largest financial interest in the relief sought by the class"). It concluded the notice and adequacy purposes of the PSLRA would not be furthered by doing so in that particular case; not that the PSRLA no longer guides the substitution determination once the lawsuit moves "beyond the very earliest stages of the litigation." *In re Portal Software*, 2005 U.S. Dist. LEXIS 41178, at *9-11.

First, the court found re-noticing the class would serve no added benefit if it was sufficient the first time. *Id.* at *12 ("If [notice] was adequate for this purpose, then there is no value in publishing further notice."). Here, there also would be no benefit from re-noticing the class because this case does not lack "willing plaintiffs with large financial stakes in the litigation." *Id.* at *11. Trigon initially moved for appointment as lead plaintiff and was the next most adequate plaintiff after Anvari. (Dkt. 55.) Frunze was recently added as a named plaintiff by stipulation and has an even greater interest than Anvari did (though he did not move for lead initially). (Dkt. 186.)

Second, the court found "adequacy under the PSLRA's lead plaintiff provisions is beside the point once an intra-class conflict arises," and "[s]uch conflicts must inevitably be resolved in a judicial proceeding." *In re Portal Software*, 2005 U.S. Dist. LEXIS 41178, at *14–15. Unlike *In re Portal Software*, any intra-class conflict here does not rise to the level of different claimants with inherently different interests. There is no suggestion of an intra-class conflict in this case that would justify setting aside the PSLRA. This proves fatal to Anvari's argument, as it implies *In re Portal Software* would follow the PSLRA in appointing a substitute given the facts here. Trigon is the only existing sequential plaintiff with financial interests in the case who is willing to take the lead and timely applied for lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

Cases in which PSLRA provisions were followed to appoint the most "adequate" plaintiff consider timely applicants before moving beyond the noticed pool. For example, in *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049 (N.D. Cal. 2010), the court found the plain language of the PSLRA lead plaintiff provisions "precludes consideration of a financial loss asserted for the first

time in a complaint, *or any other pleading*, for that matter, filed [after] the sixty (60) day window has closed." *Id*. at 1053 (quotation omitted) (emphasis added).[1]

Several courts outside this jurisdiction have done the same. In one case, the court subsequently determined the lead plaintiff lacked standing after its appointment. *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009). A new lead plaintiff was appointed exclusively from the pool of movants who had applied within the initial 60-day period. *Id.* at 116-18. The court, in a footnote, found it could not consider the former lead plaintiff's request for a substitution of its choice because the substitute did not file an application within the 60-day requirement of the PSLRA. *Id*. at 117 n.2.

In another district court case, a class member sought to remove a lead plaintiff. *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 134 (S.D.N.Y. 2007). The court noted that it is "part of a lead plaintiff's responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class." *Id*. At the same time, however, the court rejected the challenger's motions to substitute because "[i]n general, courts have only considered lead plaintiff motions filed outside of the sixty-day window when necessary to have a lead plaintiff to represent the class," and another lead plaintiff had remained in the case. *Id*. at 142-43. The court also strictly construed the 60-day limit because of the fact that notice was given to all putative class members and "there is no need for the Court to re-open the process by ordering a new notice and motion period." *Id*. at 143.

Next, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) presents another variation on the lead plaintiff process. On the day an amended consolidated complaint was due, the lead plaintiff withdrew and sought to substitute its own choice for lead

---

[1] During the first lead plaintiff proceedings, movants relied on the 60-day requirement discussed in *Zhu* to argue Anvari (who filed one day late) should not be appointed lead. (*See* Dkt. 101 at 6.) Anvari's application was accepted as one of the "rare circumstances" that justified consideration. (*Id.* at 6-7); *see, e.g., In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000). In this current situation, however, Anvari's counsel provide no response to *Zhu* and have not shown why the adequacy purposes of the PSLRA should be ignored for a plaintiff who failed to apply within the allotted time period for the lead plaintiff appointment altogether.

plaintiff and new lead counsel. *Id.* at 430. Rather than accept the hand-picked substitute, the court reopened the PSLRA lead plaintiff process to movants. *Id*. at 430, 438. After the renewed process, the court appointed the same substitute that the lead plaintiff originally sought, which happened to be a movant who "suffered the largest loss of any investor who had *timely filed* an application for lead plaintiff status, and who was otherwise eligible to be named lead plaintiff[.]" *Id*. at 438 (emphasis added).

Finally, in *Endress v. Gentiva Health Servs., Inc.*, 276 F.R.D. 62, 63 (E.D.N.Y. 2011), a movant sought to intervene as lead plaintiff, before the present lead plaintiff filed a motion to withdraw which would have left it "the only *possible* candidate to serve as lead plaintiff." *Id*. at 64. First, the court denied the request because there was no dispute that the intervenor missed the 60-day window and was "precluded from being named as the lead plaintiff in this action." *Id*. Second, because the existing lead plaintiff had yet to withdraw there was no need to consider a lead plaintiff "who does not satisfy the letter of the PSLRA's requirements." *Id*.

Anvari's primary response is that courts have permitted substitution of lead plaintiffs under the PSLRA who did not move for an appointment in the initial period before. This is true, but it ignores that this has occurred only where sequential plaintiffs are unavailable or unwilling to take the lead; or when there is no opposition from other class members. A prime example is *Morgan v. AXT, Inc.*, No. C04-04362 (MJJ) (N.D. Cal. Mar. 14, 2007) (Dkt. 93), in which the court granted a motion to substitute a new lead plaintiff who had not previously applied, only because the motion was unopposed. *Id*. Likewise, in *In re Bank of Am. Corp. Auction Rate Sec. Mktg. Litig.*, No. MDL 09-02014-JSW, 2009 U.S. Dist. LEXIS 81946 (N.D. Cal. Aug. 26, 2009) there was no indication of other timely movants for lead plaintiff and no opposition from other plaintiff class members. Accordingly, the PSLRA favors appointing Trigon as the new lead plaintiff.

Moving away from his PSLRA-related arguments, Anvari contends Trigon should not be made the lead plaintiff because: (1) it filed a duplicative lawsuit in state court; (2) it would violate *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061 (2018); (3) it cannot satisfy Rule 23; and (4) it would handicap the class action prosecution. None are persuasive.

The first and second arguments fall to the wayside quickly. Trigon has committed to withdrawing its state court action if appointed the new lead. Anvari counsel's concern about allowing Trigon to "re-litigate" in federal court would be moot if it is not attempting to litigate simultaneously in state and federal court. Moreover, permitting Trigon to become lead plaintiff would not run afoul of *Cyan* because this is not in effect permitting Trigon to "remove" its state litigation to federal court. The key intervening event in this case is the departure of the lead plaintiff and the need to substitute a new one. With Trigon as lead plaintiff, there would be no continuation of its related state court action (in federal or state court), as again Trigon would terminate its state court action. Even if there were a scenario where there were colluding plaintiffs that both competed to secure lead plaintiff designation, the rejected plaintiff commenced a related state court action, and the accepted plaintiff agreed to step down in order to make way for the rejected plaintiff to become lead plaintiff, it is unclear how this improbable hypothetical would raise *Cyan* concerns. Both of the plaintiffs in this scenario, as in this case, were involved in the federal action from the start: this is not an instance where a plaintiff began a separate state court action, and then attempted to intervene in a related federal action to be named lead plaintiff in what would amount to a removal of their state case to federal court. The fact of Trigon's filing of a related action in state court does not serve as a bar to their being named lead plaintiff, nor does so naming them violate *Cyan*.

Trigon also meets the "typicality" and "adequacy" requirements of Rule 23(a). For purposes of assessing the lead plaintiff in a PSLRA action, typicality and adequacy of representation define the analysis. *In re Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy when assessing lead plaintiff). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Adequacy of representation is determined by considering two questions: "(1) do[es] the named plaintiff[] and [his] counsel have any conflicts of interest with the other class members and (2) will the named

plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

There is no serious dispute regarding typicality or adequacy, since Trigon is the sequential plaintiff who contributed the second-most to Tezos and has claims representative of the putative class. Indeed, Anvari's counsel conceded at oral argument that Trigon is the next party with the most at stake besides Frunze. (Dkt. 210 at 22:4-9.) Anvari's only argument that Trigon is inadequate or atypical is to focus on its decision to advance a separate state court action. Trigon, however, justifies its decision to litigate its own class action in state court as a direct response to the weaknesses that Anvari presented to representing this class. Moreover, there is nothing to suggest either Trigon or Trigon's counsel have any conflicts of interest with the other class members or would not prosecute this action vigorously on behalf of the class.

Anvari's last argument, averring Trigon's appointment would handicap the prosecution at this stage, also fails. For one thing, Trigon's appointment does not necessitate removing the current lead counsel who have litigated this case all the way to this stage. As discussed below, the current lead counsel will remain involved as co-lead counsel with Trigon's attorneys. Further, there is no evidence that Trigon has been disengaged from this case's development. Trigon asserts it has received the same discovery in this case so far, read the same case law, and can adequately represent the class moving forward.

### C. Lead Counsel and Class Certification

As a consequence of appointing Trigon as the new lead plaintiff, it would ordinarily select its own counsel, subject to approval of the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Trigon's choice of counsel is acceptable, with the caveat that only one such counsel, Block & Leviton LLP, is necessary. As just discussed, no party offers any serious argument as to why Trigon's choice is incompetent, conflicted, or otherwise incapable of prosecuting this action. That said, in light of Anvari's counsels' extensive work and knowledge of the case, the class would benefit from their continued prosecution of this case. Both parties' counsel represented in oral argument their ability and willingness to work together on behalf of the class. (Dkt. 210 at 11:15-19, 14:4-5.)

1  Therefore, Trigon's counsel Block & Leviton LLP and Anvari's counsel Hung G. Ta, Esq. PLLC
2  shall serve as co-lead counsel going forward.  Accordingly, Trigon's request to dismiss the class
3  certification motion with leave to amend is granted.

## IV.  CONCLUSION

For the foregoing reasons, the motion to withdraw Anvari as lead plaintiff is granted.  The motion to substitute lead plaintiff filed by Anvari is denied.  The motion to substitute filed by Trigon is granted.  Defendants' request to restart the PSLRA process at the notice stage is denied.  The pending motion for class certification is denied with leave to amend.  Block & Leviton LLP and Hung G. Ta, Esq. PLLC shall serve as co-lead counsel.

**IT IS SO ORDERED**.

Dated: April 8, 2019

_____
RICHARD SEEBORG
United States District Judge