**HUNG G. TA, ESQ. PLLC**
Hung G. Ta (*pro hac vice*)
JooYun Kim (*pro hac vice*)
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

**BLOCK & LEVITON LLP**
Jacob A. Walker (SBN 271217)
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: 617-398-5600
Fax: 617-507-6020
jake@blockesq.com

*Court-Appointed Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>    ALL ACTIONS. | Master File No. 17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**JOINT STATEMENT RE DISCOVERY DISPUTE** |

{00137235.DOCX - v1}

The parties submit this joint statement pursuant to the Court's Case Management Standing Order.

**Plaintiffs' position:**

In an attempt to prevent Plaintiffs from discovering highly relevant documents critical to the prosecution of this action, Defendants Dynamic Ledger Solutions, Inc., Kathleen Breitman, and Arthur Breitman (collectively, "Defendants") have sought to impose a cutoff date of November 26, 2017 for document collection—the date of the filing of the first Tezos class action complaint. However, documents created and obtained after that date continue to be relevant to whether, among other things, the Tezos tokens Defendants sold to tens of thousands of investors in a July 2017 initial coin offering (the "ICO") qualify as "investment contracts" under the test set forth in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). After months of good faith meet and confer attempts, Defendants have offered no reasoned basis for the imposition of this arbitrary, improper cutoff date. Accordingly, the Court should compel Defendants to produce all documents responsive to Plaintiffs' requests for production, regardless of the date on which they were created.

*Background of Dispute*. Plaintiffs served their first set of requests for production on August 16, 2018. *See* **Exhibit A** (excerpts from Plaintiffs' first set of requests for production). Defendants served their responses and objections on September 17, 2018, in which they agreed only to "conduct a reasonable search for documents dated on or before **November 26, 2017**." On September 24, 2018, the parties met and conferred telephonically regarding, *inter alia*, the November 26, 2017 limitation. On December 21, 2018, Defendants served supplemental responses and objections to Plaintiffs' requests for production, which again contained the November 26, 2017 limitation. Based on these responses, counsel met and conferred again to discuss, *inter alia*, the renewed assertion of the November 26, 2017 cutoff date.

Following the parties' meet and confer on January 15, 2019, Plaintiffs' counsel identified a number of requests that should not be subject to the November 26, 2017 limitation, specifically request numbers 6, 8, 11, 20-28, and 30-32.[1] In response, Defendants' counsel stated that Defendants were willing to review documents responsive to certain requests dated up to September 18, 2018. Plaintiffs' counsel inquired as to the basis for the new proposed cutoff of September 18, 2018, but Defendants' counsel stated in response simply that "[w]e proposed September 18, 2018 as the cut-off date because we have collected documents from the DLS Defendants through that date. A later date would require another collection." Plaintiffs' counsel inquired again as to the legal basis for the new proposed September 18, 2018 cutoff date, but Defendants' counsel stated only that "[i]t is not unreasonable or arbitrary to set a cutoff date for a document production," and that a further document collection and review would be "expensive." Defendants' counsel further stated that, unless Plaintiff agreed to the new September 18, 2018 cutoff date, Defendants would not produce any documents post-dating November 26, 2017, despite apparently having already collected and reviewed documents created between November 26, 2017 and September 18, 2018. Subsequently, Defendants' counsel finally explained that the September 18, 2018 represented the day after the launch of the Tezos mainnet and agreed to produce documents in response to request numbers 6, 8, 20-23, 26, and 31 up until that date. When Plaintiffs' counsel further inquired as to

---

[1] Notably, Defendants have refused to produce any documents at all in response to request numbers 24, 25, 27, and 32, which may be the subject of future motion practice pending further conference. Regardless, to the extent Defendants may ultimately be required to produce documents in response to these requests, they, like the others, should not be subject to any cutoff date.

why this cutoff date was appropriate, Defendants' counsel stated simply that this was Defendants' attempt at compromise.

*The Court Should Compel the Production of Documents Post-Dating November 26, 2017.* Under the Federal Rules of Civil Procedure, a party is entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, all of these factors support Plaintiffs' entitlement to documents post-dating November 26, 2017.

*First*, the requests identified by Plaintiffs all seek categories of documents that are relevant regardless of whether or not they pre- or post-date November 26, 2017.

Request numbers 6, 8, 11, 20-23, and 26 are relevant to whether Tezos tokens are investment contracts under the *Howey* test, which defines an investment contract as "an investment of money in a common enterprise with profits to come *solely from the efforts of others*." *Howey*, 328 U.S. at 301 (emphasis added). In other words, a transaction qualifies as an investment contract (and, thus, a security) if it is: (1) an investment; (2) in a common enterprise; (3) with a reasonable expectation of profits; (4) *to be derived from the entrepreneurial or managerial efforts of others*. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) (emphasis added). Here, documents post-dating November 26, 2017 would clearly be relevant to the entrepreneurial and/or managerial efforts of Defendants in making Tezos tokens profitable. Indeed, prior to the ICO, Defendants made a number of representations regarding the actions they would take to ensure that the Tezos tokens would be promoted and adapted. Documents reflecting the pursuit of these goals post-ICO therefore are highly relevant to establishing the "entrepreneurial or managerial efforts" of Defendants.

Request number 24 seeks communications between Defendants and governmental regulators. Such communications reflect the position taken by Defendants regarding the nature of the Tezos token, and are therefore highly relevant regardless of when they were made. Request number 25 seeks information concerning audits of the Tezos Foundation, and is relevant to whether and, if so, how and when Defendants have been using the funds they obtained from the investors. Critically, the purpose of this request is served only if it is not subject to any cutoff date, as Defendants would otherwise be permitted to dissipate investor funds with impunity. Request number 27 seeks information concerning the KYC/AML process instituted by Defendants themselves months after the ICO as a precondition for receiving tokens, and is therefore indisputably relevant to the sale and allocation of the tokens. Request numbers 30, 31 and 32 seek documents upon which Defendants have relied or will rely in presenting their response to this lawsuit. There is no reason why such documents should be subject to any cutoff date, as any documents upon which Defendants have relied or seek to rely are those Defendants necessarily believe are relevant.

*Second*, the amount in controversy is substantial. Through the ICO, Defendants raised over $230 million dollars in cryptocurrencies, which ballooned to over $1.5 billion during the peak of the cryptocurrency boom. This entire amount is potentially at stake. If the ICO were found to be an unregistered offering of securities, investors who participated in the ICO and have held their tokens

{00137235.DOCX - v1}2

JOINT STATEMENT RE DISCOVERY DISPUTE

would be entitled to a rescission of their investments, while investors who have already sold their tokens at a loss would be entitled to damages.

*Third*, the information is largely if not entirely within Defendants' sole possession. For example, absent discovery, Plaintiffs would be unable to access any credible documents or information regarding the managerial and entrepreneurial efforts taken by Defendants, because such documents and information are not generally available to the public.

*Finally,* Defendants would not suffer undue burden if they were compelled to gather and produce documents post-dating November 26, 2017. Indeed, in response to Plaintiffs' counsel's repeated inquiries, Defendants have offered no reason why collecting, reviewing, and producing documents spanning approximately 7 months (from September 18, 2018 to present) would be unduly burdensome. Notably, Defendants apparently were able to collect and review documents spanning approximately *ten months*—from November 26, 2017 to September 18, 2018—without suffering any undue burden.

In sum, it is clear that the necessity for obtaining these documents outweighs any burden or expense of the proposed discovery. Accordingly, the Court should order Defendants to produce documents in response to Plaintiffs' requests for production numbers 6, 8, 11, 20-28, and 30-32 (to the extent they have already agreed or will be required to produce such documents), regardless of the date on which they were created.

**Defendants' position:** This consolidated putative class action arises out of a fundraiser that took place from July 1-13, 2017 (the "Fundraiser") tied to the development of a new blockchain technology, the Tezos protocol.

*Howey* and its progeny do not support Plaintiffs' argument that documents post-dating the filing of this lawsuit are relevant to whether the Fundraiser was an unregistered sale of securities in violation of the Securities Act of 1933. Indeed, Plaintiffs do not cite a single case to support their position that documents post-dating the Fundraiser at issue are relevant at all—not to mention proportional to the needs of the case under Rule 26(b)(1). In the spirit of compromise, defendants Dynamic Ledger Solutions, Inc., Arthur Breitman and Kathleen Breitman (collectively, the "DLS Defendants") agreed to produce certain documents through the launch of the Tezos mainnet on September 18, 2018. The two cutoff dates (November 26, 2017 and September 18, 2018) were carefully selected to strike an appropriate balance between providing Plaintiffs with the information they contend they need and the burden and expense to the DLS Defendants.

*Procedural Background.* The *sole* issue raised by this motion to compel concerns the propriety of the November 26, 2017 and September 18, 2018 cutoff dates. Plaintiffs do not challenge any of the DLS Defendants' other substantive objections in this motion.

The DLS Defendants initially agreed to produce certain documents through the filing of the first complaint on November 26, 2017. Plaintiffs contended (and contend) that documents postdating November 26, 2017 reflecting the pursuit of defendants' development goals for the Tezos protocol are "highly relevant to establishing the entrepreneurial or managerial efforts' of Defendants." In the spirit of compromise, the DLS Defendants agreed to produce documents

relating to the development of the Tezos protocol, as well as a handful of other topics, through the launch of the Tezos betanet[2] and mainnet.[3]

On May 8, 2019, the DLS Defendants voluntarily supplemented their responses to Request Nos. 6, 8, 20-23, 26 and 31 to include the later cutoff date. In particular, the DLS Defendants agreed to produce documents sufficient to show the work the DLS Defendants have performed in connection with development, certain communications concerning the Fundraiser or the Tezos project, documents concerning the listing and trading of Tezos tokens, and documents the DLS Defendants intend to rely on in opposition to a motion for class certification.

Over the past six months, the DLS Defendants have retained and trained contract reviewers, and engaged in an extensive, unusually complex, document review and production. To date, the DLS Defendants have produced more than 9,200 documents, and more than 26,000 pages. These productions contain a vast amount of information relating to the formation of the Tezos Foundation, the terms and conditions governing the Fundraiser, promotional and marketing materials, and other topics. The DLS Defendants are presently engaged in privilege and second-level review of documents for the November 26, 2017 through September 18, 2018 period. First-level review is complete through September 18, 2018, and the contract reviewers have been dismissed.

Plaintiffs have refused to agree to any cutoff date at all. They assert the November 26, 2017 and September 18, 2018 cutoff dates are "arbitrary" and that "there is no reasoned basis why the launch of Tezos main-net should serve as a cutoff date." Though Plaintiff accuses the DLS Defendants of failing to timely disclose the basis for the September 18, 2018 cutoff date, Plaintiff's counsel was well aware of the launch date for the Tezos mainnet (which is a matter of public knowledge). Moreover, Plaintiffs have offered no reason at all why the September 18, 2018 cutoff date is improper or unreasonable given the claims at issue here.

*The Court Should Deny the Motion Compel*. For multiple reasons, this Court should deny this motion to compel.

*First*, Plaintiffs have not upheld their initial burden of establishing that documents post-dating November 26, 2017 are relevant. *See* Fed. R. Civ. Proc. 26(b)(1). Plaintiffs' theory is that the Defendants' purported offer and sale of the Tezos token during the Fundraiser constituted an "investment contract" under the *Howey* test. As such, Plaintiffs must allege that they "(1) [invested] money (2) in a common enterprise (3) *with an expectation of profits produced by the efforts of others.*" *S.E.C. v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991) (emphasis added). Under that theory, the Ninth Circuit has held that the inquiry should be "determined at the time of issuance, rather than at some subsequent time." *Danner v. Himmelfarb*, 858 F.2d 515, 520 (9th Cir. 1988); *see also Gallagher v. Roberts*, 2017 WL 1365792, at *5 (S.D. Cal. April 14, 2017) (granting motion to dismiss where complaint failed to allege an expectation of profits "at the time of the offer and sale of the alleged security"). In other words, only the facts that existed at the time of the purported offering are relevant under Plaintiff's own theory. This is because the *Howey* test

---

[2] The betanet – an incomplete and experimental iteration of the Tezos protocol – went live on June 30, 2018. Upon the launch of the betanet, contributors to the Fundraiser were able to go through the "Know Your Customer/ Anti-Money Laundering" ("KYC/AML") process to claim their electronic tokens, and to engage in transactions on the network.

[3] The mainnet, which launched on September 17, 2018, is a fully developed version of the Tezos protocol, although the protocol is designed to evolve over time through an amendment process.

focuses on "the terms of the [alleged] offer, the plan of distribution, and the economic inducements held out to the prospect." *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352-53 (1943); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (courts "must focus [the] inquiry on what the purchasers were offered or promised" and will "conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'").

Accordingly, under Plaintiffs' own theory, a November 26, 2017 cutoff date is appropriate for all the requests. That cutoff date captures documents through the Fundraiser that took place in July 2017, and leading up to the filing of the complaint. Documents pertaining to events post-dating the Fundraiser are unlikely to yield relevant information, since they will not go to the expectations of the persons who contributed to the Fundraiser *at the time of the Fundraiser*.

Plaintiffs cite no authority to support their contention that "documents post-dating November 26, 2017 would clearly be relevant to the entrepreneurial and/or managerial efforts" of the DLS Defendants. In the two cases cited by Plaintiffs, the courts examined promotional materials before the alleged offering – not post-offering documentation. *See Howey*, 328 U.S. at 296, 299; *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 843, 853-54 (1975) (considering "Information Bulletin" distributed to prospective investors). The Court should not permit this fishing expedition.

*Second*, Plaintiff makes no attempt whatsoever to explain why it needs documents beyond the September 17, 2018 launch of the Tezos mainnet. Defendants already agreed to produce, among other things, documents sufficient to show the development of the Tezos project, which is all Plaintiff contends it needs in connection with the *Howey* test. A reasonable end date to the production is appropriate. *See Viacom Intern., Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *5 (N.D. Cal. Aug. 18, 2008) (applying reasonable date restriction tied to the alleged claims).

*Third*, the production of documents post-dating the November 26, 2017 and September 18, 2018 cutoff dates is not proportional to the needs of the case. As an initial matter, any potential value to these documents is greatly outweighed by the burden and expense of the proposed discovery. To be clear, Plaintiffs demand that the DLS Defendants (a) conduct a *second* review of the post-November 26, 2017 time frame to search for "all documents concerning" 14 requests on a wide range of subjects; and (b) collect and review thousands of additional documents in the post-September 18, 2018 time frame.[4] The DLS Defendants already hired and trained contract reviewers (who have already been dismissed) and spent hundreds of hours on their document reviews and productions over a six-month period. A redo at this point would be extraordinarily expensive.

Further, a large amount of information concerning the Tezos project and the marketing and promotion of the Fundraiser is publicly available – not "solely" within the possession of the DLS Defendants. Indeed, much of this information is cited in the First Amended Consolidated Complaint. And, Plaintiffs' argument that this motion should be granted because there is a large "amount in controversy" is baseless. No class has been certified and Plaintiffs have not been approved as class representatives. At this point, the value of this action is limited to the amount Plaintiffs contributed to the Fundraiser – less than $100,000.[5]

---

[4] Counsel's understanding is that the DLS Defendants have more than 26,500 documents that post-date September 18, 2018.

[5] Plaintiffs acknowledge it is premature for this Court to order a production of any documents in response to Request Nos. 24, 25, 27, and 32, "which may be the subject of future motion practice

|     |                      |                                                                                    |
| --- | -------------------- | ---------------------------------------------------------------------------------- |
| 1   |                      | Respectfully Submitted,                                                            |
| 2   | Date: June 3, 2019   | HUNG G. TA, ESQ. PLLC                                                              |
| 4   |                      | By: *s/ Hung G. Ta*                                                                |
| 5   |                      | *Court-Appointed Co-Lead Counsel*                                                  |
| 7   | Date: June 3, 2019   | BAKER MARQUART                                                                     |
| 9   |                      | By: *s/ Scott M. Malzahn*                                                          |
|     |                      | Scott M. Malzahn                                                                   |
| 10  |                      | *Counsel for Defendants Dynamic Ledger Solutions, Inc., Kathleen Breitman, and Arthur Breitman* |
| 13  | Date: June 3, 2019   | COOLEY LLP                                                                         |
| 15  |                      | By: *s/ Jessica Valenzuela Santamaria*                                             |
|     |                      | Jessica Valenzuela Santamaria                                                      |
|     |                      | *Counsel for Defendant Dynamic Ledger Solutions, Inc.*                             |

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, Enoch H. Liang hereby attests that concurrence in the filing of the document has been obtained from all of the signatories above.

Date: June 3, 2019                           *s/ Enoch H. Liang*
                                             Enoch H. Liang

---

pending further conference." For this reason, the DLS Defendants do not address these requests in this joint statement. The DLS Defendants reserve all objections in connection with these requests.

# EXHIBIT A

**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel:  650-422-2130
Fax:  213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee (SBN 192301)
Caleb H. Liang (Bar No. 261920)
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel:  213-612-8900
Fax:  213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | Master File No. 17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS ADDRESSED TO DYNAMIC LEDGER SOLUTIONS, INC., KATHLEEN BREITMAN AND ARTHUR BREITMAN** |

H.   Unless otherwise indicated, the Relevant Time Period shall apply to each of the Requests.

I.   The terms "and" and "or" shall be construed both conjunctively and disjunctively. Plural words shall include their singular and vice versa. The past tense shall include the present tense and vice versa. The terms "all", "each", "every" and "any" shall each be construed as meaning all and each and every and any.

J.   Any perceived ambiguity in these Requests, including the definitions and instructions, shall be construed so as to require the production of documents that might otherwise not be produced.

## III.   REQUESTS FOR PRODUCTION

<u>DOCUMENT REQUEST NO. 1</u>

All documents identified or referred to in Your answers to any interrogatories served by Lead Plaintiff on Defendants Dynamic Ledger Solutions, Inc., Kathleen Breitman and Arthur Breitman, without regard to the date of the document.

<u>DOCUMENT REQUEST NO. 2</u>

All documents concerning the organization or incorporation of DLS.

<u>DOCUMENT REQUEST NO. 3</u>

All documents concerning the organization or incorporation of the Tezos Foundation, and the work performed by the DLS Defendants, Draper, Draper Associates Crypto or any other investor of DLS in organizing and incorporating the Tezos Foundation, including but not limited to communications discussing the reasons why the Tezos Foundation was formed and the decision to form the Tezos Foundation as a Swiss entity.

<u>DOCUMENT REQUEST NO. 4</u>

All documents concerning the investment in and ownership of DLS, including but not limited to: (a) the acquisition of a 10% interest in DLS by Draper Associates Crypto, as described in the Memorandum of Points and Authorities in Support of the Motion of Defendants Timothy C. Draper and Draper Associates V Crypto LLC to Dismiss Consolidated Complaint, Dkt. No. 117, at 5 n.5;

and (b) the investments by Polychain Capital and any "Early Backers" referenced in Section 3.5 of the Tezos Overview.

DOCUMENT REQUEST NO. 5

All documents concerning the private pre-sale of Tezos tokens by the DLS Defendants conducted between approximately September 2016 and March 2017, as alleged in the Complaint, ¶ 36.

DOCUMENT REQUEST NO. 6

All documents concerning records of meetings of the DLS Board, including but not limited to minutes, agendas, reports, presentations and communications exchanged concerning such meetings.

DOCUMENT REQUEST NO. 7

All documents concerning the "contractual agreement" between Tezos Foundation and DLS, as described in the Transparency Memo, and as alleged in the Complaint, ¶ 47.

DOCUMENT REQUEST NO. 8

All documents concerning any other agreement, arrangement or understanding between Tezos Foundation, on the one hand, and any of the DLS Defendants, on the other hand.

DOCUMENT REQUEST NO. 9

All documents concerning the funds raised in the Tezos ICO, including but not limited to:

(a) documents concerning identifying information and location of the persons from whom the funds were raised and the amounts raised from each such person;

(b) documents concerning the custody, investment or other disposition of the funds raised in the Tezos ICO; and

(c) documents concerning any agreement or arrangement between Tezos Foundation and Bitcoin Suisse, including any agreement or arrangement by which Bitcoin Suisse was designated a "mandatory co-signatory on all crypto-asset transactions," as alleged in the Complaint, at ¶ 26.

DOCUMENT REQUEST NO. 10

All documents concerning the marketing and promotion of the Tezos ICO and the Tezos Project, including but not limited to:

(a) all communications by Kathleen and Arthur Breitman posted on social media, including but not limited to communications posted on Reddit under the usernames "murbard," "abtezos" and "breitwoman," and tweets posted in the Twitter accounts @tez0s, @tezos, @TezosFoundation, @breitwoman and @ArthurB;

(b) all interviews, speeches and presentations given by the DLS Defendants;

(c) any communications between the DLS Defendants and the Tezos Foundation concerning the marketing and promotion of the Tezos ICO and the Tezos Project.

DOCUMENT REQUEST NO. 11

All documents concerning the payment of any monies, for any purpose, by the Tezos Foundation to any of the DLS Defendants.

DOCUMENT REQUEST NO. 12

All documents concerning the execution of the Tezos ICO, and the allocation of responsibilities for the execution of the Tezos ICO among and between Tezos Foundation, the DLS Defendants and any other persons, including but not limited to documents sufficient to identify the persons responsible for handling the execution of the Tezos ICO and the locations of these persons.

DOCUMENT REQUEST NO. 13

All documents concerning the Contribution Software System ("CSS"), as described in the Contribution Terms at ¶¶ 6, 7, 19, 20, 25, 26, 37, 38, 39, 42 and 43, including but not limited to: (a) the function(s) and purpose(s) of the CSS; (b) the "location" of the CSS; (c) the location of the server where all the files underlying the CSS are stored; and (d) the data and information purportedly generated by the CSS.

DOCUMENT REQUEST NO. 14

All documents concerning the "Contribution Software," as described in the Contribution Terms at ¶¶ 17, 18, 19, 37, 38, 39, 42, 43, and 46, including but not limited to: (a) the function(s) and

purpose(s) of the Contribution Software; (b) the "location" of the Contribution Software; (c) the location of the server where all the files underlying the Contribution Software are stored; and (d) the data and information purportedly generated by the Contribution Software.

DOCUMENT REQUEST NO. 15

All documents concerning the software technology or "Client," as described in the Contribution Terms, at ¶ 2, including but not limited to: (a) the "location" of the Client; and (b) the location of the server where all the files underlying the Client are stored.

DOCUMENT REQUEST NO. 16

All documents concerning the "terms and conditions set forth in the 'Contribution Software System' or 'CSS', existing on the blockchain at the addresses published before the start of the Contribution Period at https://crowdfund.tezos.com", as described in the purported Contribution Terms, ¶ 6.

DOCUMENT REQUEST NO. 17

All documents concerning the "separate independent database that creates a summary of the results," as described in the Tezos Foundation's July 5, 2017 update.

DOCUMENT REQUEST NO. 18

All documents concerning the registration, ownership, administration and control of the websites tezos.ch, tezos.com, crowdfund.tezos.com and tezosfoundation.ch, including but not limited to documents reflecting the hosting of these websites/subdomains and the location of the servers where each of these websites/subdomains is hosted.

DOCUMENT REQUEST NO. 19

All documents concerning the registration, ownership, administration and control of the Twitter accounts @tez0s, @tezos, @TezosFoundation, @breitwoman and @ArthurB.

DOCUMENT REQUEST NO. 20

All documents concerning the Tezos Foundation's and/or the DLS Defendants' development of the Tezos Project, including but not limited to:

(a) all work performed by the Tezos Foundation and/or the DLS Defendants to achieve the "Development Goals" and "Research Goals" described in the Tezos Overview, at 16-18;

(b) the hiring of employees or outside contractors to develop, complete, maintain and promote the Tezos Project, including the "development team" referred to in the Tezos Overview, at 16, and the persons identified in the Tezos Overview, at 19;

(c) the Tezos Foundation's and/or DLS Defendants' management and oversight of the work performed by third parties to develop the Tezos Project;

(d) the issue of grants to third parties such as Cornell University (Emin Gün Sirer), the University of Beira Interior, Decet Consulting, and France-IOI, as announced by the Tezos Foundation on August 9, 2018;

(e) all payments for services made by the Tezos Foundation to benefit the promotion of the Tezos protocol, as described in the Tezos Overview, at 13;

(f) any audits of the Tezos codebase conducted by code auditing services including but not limited to Inria; and

(g) any partnerships with third parties to develop applications on the Tezos protocol, including but not limited to the Tezos Foundation's partnership with Obsidian Systems announced on March 10, 2018.

DOCUMENT REQUEST NO. 21

All documents concerning communications among and between any of the DLS Defendants' employees or DLS Board members, concerning the Tezos Project and the Tezos ICO.

DOCUMENT REQUEST NO. 22

All documents concerning communications between the DLS Defendants, on the one hand, and the Tezos Foundation, Draper, Draper Associates Crypto, Bitcoin Suisse, Polychain Capital and any "Early Backers" referenced in Section 3.5 of the Tezos Overview, on the other hand, concerning the Tezos Project and the Tezos ICO.

DOCUMENT REQUEST NO. 23

All documents concerning the DLS Defendants' public communications concerning the Tezos Project and the Tezos ICO, regardless of form and forum, including but not limited to drafts of such communications and documents sufficient to identify the author of each such draft.

DOCUMENT REQUEST NO. 24

All documents concerning any communications between the DLS Defendants, on the one hand, and the SEC or any other regulator or governmental agency, on the other hand.  This Document Request includes all documents produced to any regulator or governmental agency.

DOCUMENT REQUEST NO. 25

All documents concerning any audits of the Tezos Foundation, including but not limited to the audit by Pricewaterhousecoopers announced on July 24, 2018.

DOCUMENT REQUEST NO. 26

All documents concerning the listing and trading of Tezos tokens on any exchange, alternative trading system or order execution venue, including any communications among and between the DLS Defendants, and any communications between the DLS Defendants, on the one hand, and any exchange, alternative trading system, order execution venue, intermediaries and market-makers for Tezos tokens, on the other hand.

DOCUMENT REQUEST NO. 27

All documents concerning the "KYC/AML Process," implemented by the Tezos Foundation on June 10, 2018 and available at https://verification.tezos.com/, including but not limited to all responses submitted to the KYC/AML Process.

DOCUMENT REQUEST NO. 28

All documents concerning the provision of services to the Tezos Foundation or the DLS Defendants by any person in the United States, including but not limited to Ross Kenyon.  The documents responsive to this Request include but are not limited to documents concerning the employment, hiring and retention of such persons.

DOCUMENT REQUEST NO. 29

All documents concerning any policy or practice of the DLS Defendants concerning the destruction or retention of records, files or other documents.

DOCUMENT REQUEST NO. 30

All documents You considered, consulted, relied upon, read, reviewed or analyzed in connection with the preparation of Your Answer to the Complaint.

DOCUMENT REQUEST NO. 31

All documents that You intend to rely on, introduce as evidence or otherwise use to oppose any motion for class certification, including but not limited to any documents concerning the adequacy of Lead Plaintiff.

DOCUMENT REQUEST NO. 32

All documents not falling within the above demands that You intend to rely on, introduce as evidence or otherwise use at the trial of this case.

Date: August 16, 2018

LTL ATTORNEYS LLP

By: *s/ Enoch H. Liang*
    Enoch H. Liang
    LTL ATTORNEYS LLP
    601 Gateway Boulevard, Suite 1010
    South San Francisco, California 94080
    Tel:  650-422-2130
    Fax: 213-612-3773
    enoch.liang@ltlattorneys.com

    James M. Lee
    Caleb H. Liang
    LTL ATTORNEYS LLP
    300 S. Grand Ave., 14th Floor
    Los Angeles, California 90071
    Tel: 213-612-8900
    Fax: 213-612-3773
    james.lee@ltlattorneys.com
    caleb.liang@ltlattorneys.com

| | |
|---|---|
| 1 | Hung G. Ta |
| 2 | JooYun Kim |
| | Natalia Williams |
| 3 | Angus Ni |
| | HUNG G. TA, ESQ., PLLC |
| 4 | 250 Park Avenue, 7th Floor |
| | New York, New York 10177 |
| 5 | Tel: 646-453-7288 |
| | Fax: 646-453-7289 |
| 6 | hta@hgtlaw.com |
| 7 | jooyun@hgtlaw.com |

*Lead Counsel for Court-Appointed Lead Plaintiff and the Class*

William R. Restis
THE RESTIS LAW FIRM, P.C.
550 West C Street, Suite 1760
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joe J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel for the Class*