**HUNG G. TA, ESQ. PLLC**
Hung G. Ta (*pro hac vice*)
JooYun Kim (*pro hac vice*)
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

**BLOCK & LEVITON LLP**
Jacob A. Walker (SBN 271217)
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: 617-398-5600
Fax: 617-507-6020
jake@blockesq.com

*Court-Appointed Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **JOINT LETTER BRIEF RE DISCOVERY DISPUTE CONCERNING ASSERTION OF MARITAL COMMUNICATIONS PRIVILEGE** |
| ALL ACTIONS. | |
| | Judge: Hon. Sallie Kim |
| | Trial Date: Not Yet Set |

By the electronic signature below, Court-Appointed Lead Counsel and counsel for defendants Kathleen and Arthur Breitman attest under penalty of perjury that they met and conferred telephonically on July 1, 2019 pursuant to the Court's Standing Order prior to filing this joint letter, and at all times complied with Section 9 of the Northern District's Guidelines for Professional Conduct.

The parties jointly submit this letter concerning a dispute over the marital communications privilege. At this time, the Court has not set any case management deadlines or a trial date.

**Pertinent Procedural Background:** On September 17, 2018, Defendants Kathleen Breitman ("Kathleen"), Arthur Breitman ("Arthur"), and Dynamic Ledger Solutions, Inc. ("DLS") (collectively, the "DLS Defendants") served responses and objections to Former Lead Plaintiff's first set of requests for production. *See, e.g.*, **Exhibit A**. Kathleen and Arthur produced a privilege log on June 27, 2019, which lists documents withheld solely on the basis of the marital communications privilege. *See* **Exhibit B** (the "Privilege Log"). During meet and confer discussions, the DLS Defendants represented that attachments to emails were only withheld if they were themselves privileged and that duplicates of many attachments on the log have been or will be produced. In terms of compromise, Plaintiffs proposed that, as an initial step, the Court conduct an *in camera* review to assess privilege. The DLS Defendants took the position that *in camera* review is not necessary. Thus, the parties have been unable to reach any compromise on this issue.

**Plaintiffs' Position:** The Breitmans are business partners who conceived of the Tezos project. Together, they incorporated and managed DLS, the company they used to conduct the research, development, launch, and operations of the Tezos project. At all relevant times, Kathleen was the Chief Executive Officer of DLS, and Arthur was the Chief Technology Officer of DLS. Apart from the Breitmans, another investor, Draper Associates V Crypto LLC, is a shareholder of DLS. But because the Breitmans also coincidentally happen to be married, the DLS Defendants have now invoked the marital communications privilege to withhold all email communications sent to and from the Breitmans' work (DLS) email accounts (arthurb@tezos.com, arthur.breitman@tezos.com, and kathleen@tezos.com), whenever the communications were solely between the Breitmans. This assertion of privilege is entirely improper.

Federal Rule of Evidence 501 provides that "[t]he common law – as interpreted by United States courts … – governs a claim of privilege." The Ninth Circuit recognizes the "marital communications" privilege, which is limited to (1) "confidential" (2) "words or acts intended as communication to the other spouse," (3) "during a valid marriage." *United States v. Marashi*, 913

F.2d 724, 729-30 (9th Cir. 1990) (citations omitted). Because this privilege obstructs the truth-seeking process, it is "narrowly construe[d]." *Id.* at 730. For at least two reasons, the marital communications privilege does not apply here.

*First*, the withheld communications are purely business communications between business partners that would have occurred regardless of the marital relationship, and that, in addition, discuss or relate to information and documents that the Breitmans intended later to be publicly disclosed. *See, e.g.*, **Exhibit B,** No. 23 (an email discussing "allocation of tokens"); Nos. 156-58 (emails discussing "a draft public statement"). Under these circumstances, the marital communications privilege does not apply. *See New York Life Ins. Co. v. Mason*, 272 F. 28, 31 (9th Cir. 1921) ("The spirit of the rule as enforced at common law … is that the privilege shall be construed to embrace only the knowledge which the husband or wife obtains from the other, which, ***but for the marriage relation and the confidence growing out of it, would not have been communicated*** ….") (quotation marks and citation omitted; emphasis added); *see also*, *e.g.*, *G-Fours, Inc. v. Miele*, 496 F.2d 809, 811 (2d Cir. 1974) (affirming the district court's holding that the marital privilege was unavailable because the "information sought … related solely to 'ordinary business conversations …'") (citation omitted); *United States v. Nash*, 910 F. Supp. 2d 1133, 1137 (S.D. Ill. 2012) (noting that the spousal communication privilege does not protect business communications between spouses where the "marital relationship is merely incidental to the business transaction"); *Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 531 (M.D. Fla. 1998) (holding that "no reasonable person" could have believed that business-related communications between spouses were made in confidence where one spouse was the incorporator, director, majority shareholder, and president of a corporation); *DHA Corp. v. Hardy*, Case No. 15-mc-80201, 2015 WL 3707378, at *3 (S.D. Fla. June 15, 2015) (where a husband and wife were business associates, finding that "any business-related communications between them may not be shielded from discovery as privileged marital communications …."); *In re S. Air Transport, Inc.*, 255 B.R. 706, 713 (Bankr. S.D. Ohio 2000) (compelling a widow to testify "as to any business related conversations" with her deceased husband because she was an employee of the company,

which "effectively rebut[s] the presumption of confidentiality"); McCormick on Evid. § 80 ("To cloak [business-related communications between spouses] with privilege when the transactions come into litigation would be productive of special inconvenience and injustice.").[1]

*Second*, the withheld communications cannot be deemed "confidential." As the Ninth Circuit has explained, the marital communications privilege does not extend to statements "made before, or likely to be overheard by, third parties." *Marashi*, 913 F.2d at 730. It also does not extend to communications that were not intended to be confidential. *See United States v. McCown*, 711 F.2d 1441, 1452 (9th Cir. 1983). Here, **DLS** owns, controls, and possesses the Breitmans' work email accounts (arthurb@tezos.com, arthur.breitman@tezos.com, and kathleen@tezos.com) as well as the servers on which communications to and from these email addresses are stored. Indeed, **DLS** has already produced approximately 16,000 pages of documents that included many emails sent to or from the Breitmans' work email accounts, confirming that DLS has the unfettered right and ability to access these email communications. And as the founders and principals of DLS, the Breitmans were well aware of these facts when they intentionally chose to use their work emails to communicate with each other.[2] Thus, the Breitmans lacked any reasonable expectation of privacy over these communications. *See*, *e.g.*, *Gauntlett v. Illinois Union Ins. Co.*, Case No. 11-cv-455, 2011 WL 5191808, at *9 (N.D. Cal. Nov. 1, 2011) (noting that "[c]ourts generally refuse to find a reasonable expectation of privacy in an employee's use of an employer's computers"); *Holmes v. Petrovich Development Co., LLC*, 191 Cal. App. 4th 1047, 1069 (2011) (concluding that an employee had no reasonable expectation of privacy in her personal e-mail messages sent to her attorney using her employer's computer); *TBG Ins. Servs. Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002) (noting that "use of computers in the employment context carries with it social norms

---

[1] In situations such as here, where there is no directly applicable binding precedent or controlling statute, "a federal court may consider state privilege law." *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975). Thus, to the extent these decisions involved state privilege law, they serve as important persuasive authority. Regardless, a number of these decisions concerns strictly *federal* privilege law. *See, e.g. Nash*, 910 F. Supp. 2d at 1137 (Seventh Circuit).
[2] Indeed, the DLS Defendants fail to offer any explanation why the Breitmans chose to use their *work* email accounts to conduct these purportedly private communications, when they both clearly had access to and used personal email accounts for other communications.

that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers").

The DLS Defendants argue that the Breitmans had a reasonable expectation of privacy in their use of work email under the test set forth in *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y 2005), but they are incorrect. As an initial matter, the *Asia Global* analysis does not apply to (or even consider) situations such as here, where the purportedly privileged communications are business communications between business partners. Indeed, the only opinion in the Northern District of California that has applied the *Asia Global* test in the spousal privilege context, *Flatworld Interactives v. Apple Inc.*, Case No. 12-cv-1956, 2013 WL 11319071 (N.D. Cal. Dec. 24, 2013), is readily distinguishable because the spouses there were *not* business partners.[3] Further, even assuming *arguendo* the *Asia Global* test were applicable,[4] it does not support the DLS Defendants' position because, in addition to the fact that the communications were unrelated and incidental to the marital relationship, a third party (DLS) indisputably had access to these emails, and the Breitmans, as the founders of DLS, were indisputably aware of this fact.

In light of the above, Plaintiffs respectfully request that the Court find that the marital privilege does not extend to communications between the Breitmans in which either or both of them used a work email address (*i.e.*, one with the @tezos.com domain), and compel the DLS Defendants to produce these documents. Critically, extending the privilege under these circumstances would provide an unwarranted shield over business communications between business partners who fortuitously happen to be married. That is not the purpose of the marital communications privilege. *See United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018) (noting that the privilege exists "to insure that spouses generally feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law"). In the alternative, Plaintiffs respectfully

---

[3] Moreover, the court in *Flatworld* conducted an *in camera* review of the documents at issue, *see id.* at *1, and the opinion—which turned entirely on whether there was actual monitoring of the emails at issue—has been noted as a minority position. *See Bingham v. Baycare Health Sys.*, Case No. 14-cv-73, 2016 WL 3917513, at *4 (M.D. Fla. Jul. 20, 2016).

[4] The Ninth Circuit has not adopted this test, and it has been cited in only two opinions in the Northern District of California (including *Flatworld*), both of which are unpublished.

request that the Court conduct an *in camera* review of the allegedly privileged communications to determine whether such communications were truly induced by the marital relationship or simply business communications between business partners.[5] *See In re Grand Jury Investigation*, 974 F.2d 1068, 1074-75 (9th Cir.1992) (holding that *in camera* review is appropriate if a party challenging the privilege has shown "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged").

**Defendants' Position:** "[M]arital confidences" are "essential to the preservation of the marriage relationship[,]" and should not be lightly disregarded. *See Wolfle v. United States*, 291 U.S. 7, 14 (1934).

*Factual Background.* Kathleen and Arthur have been married since December 2013. They collectively own 90% of DLS, and serve as the company's sole officers and employees. Given the relationship of trust and confidence arising from their marital relationship, they communicated freely with each other over gmail and tezos.com email accounts and understood it to be confidential, *i.e.*, only between them. Among other things, they exchanged private emails and shared documents on Google drive to share their thoughts and solicit input from each other about possible communications with third parties, drafts of public statements and other documents that had not yet been made public and might never be made public. In doing so, they used an informal style and expressed themselves in a manner they would not have done with a business partner, which could cause embarrassment if disclosed.

Kathleen and Arthur had no reason to believe their emails were not confidential. DLS has no policy banning them from using work email for personal use, and does not give any third parties access to their email accounts. Aside from their legal counsel, no other person has actually monitored their work or private email with each other. While Your Honor's Standing Order

---

[5] It is notable that, while the DLS Defendants make numerous unsupported assertions about the alleged tone and style of these communications (and seek to submit one-sided declarations to bolster their position), they simultaneously claim that *in camera* review is unnecessary. The Court should not countenance the DLS Defendants' gamesmanship—there clearly is a legitimate factual basis that these communications are not privileged based on their alleged content and the Breitmans' use of work email addresses, as reflected in the Privilege Log.

prohibits the parties from submitting declarations in connection with a joint discovery letter, Kathleen and Arthur are willing to submit declarations in support of their privilege assertions.

*Legal Analysis.* In the Ninth Circuit, "(1) [the marital communications privilege] extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications." *United States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005). Each of these elements is satisfied. Kathleen and Arthur were married at the time of the withheld communications, which were intended to convey a message from one spouse to the other.

As private communications between spouses, they are "presumptively confidential"; the party challenging the privilege bears the burden of demonstrating that it does not apply. *Marashi*, 913 F.2d at 729-30. Plaintiffs first argue the privilege does not apply to "purely business communications." No such "business communications" exception to the marital communications privilege exists; federal courts in the Ninth Circuit and elsewhere recognize the privilege extends to communications between spouses on business related and other subjects. *See, e.g., Flatworld*, 2013 WL 11319071, *1 ("business communications" exchanged between spouses were protected by the privilege); *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998) (there is no "general rule" that "deprives spousal conversations of the privilege if they relate to financial matters").

As federal common law governs the privilege claim here, which Plaintiffs acknowledge, their reliance on state law is misplaced. *See* Fed. R. Evid. 501. Moreover, several of Plaintiffs' cases did not even involve so-called "business communications." *See New York Life,* 272 F. at 30-32 (under Montana law, a widow's testimony about two conversations with her husband about the purchase a gun and how he accidentally shot himself were not "confidential disclosures"); *Nash*, 910 F. Supp. 2d 1133 (privilege did not apply to a recorded conversation related to the commission of a crime under law of Seventh Circuit).

At most, Plaintiffs' cases, like *Hanger,* merely hold that that "[t]he fact that the communication relates to business *may* demonstrate the intent that a communication was not intended to be confidential." 181 F.R.D. at 530 (italics added) (applying Florida law). More specifically, "'statements about business agreements between the spouses, or about business matters

transacted by one spouse as agent for the other, or about property or conveyances'" may be non-confidential. *Id*. (quoting McCormick on Evidence, § 80 (4th ed. 1992)).  Thus, in *Hanger*, the court ruled "no reasonable person could have believed" the spouses' communications on the husband's role in forming a business were confidential, where state law required disclosure of this information to the government and others under various circumstances. *Id*. at 531-32.

Plaintiffs' argument that all the communications on the Privilege Log are not confidential because they purportedly "discuss or relate to information and documents that the Breitmans intended later to be publicly disclosed" goes too far and is flawed.  Due to the relationship of trust and confidence arising from a marriage, spouses in all professions frequently exchange information and seek advice from each other about how to handle communications with third parties and business matters.  Like any other couple, that is what Kathleen and Arthur did.  They expected and understood their communications would be confidential, and would not have communicated as they did if they thought differently.  It would be destructive to marital relationships if spouses were forced to disclose such private, confidential communications merely because those communications relate to business matters.  *See, e.g., Cunney v. Patrick Comm'ns LLC*, 96 F. Supp. 3d 549, 551 (D. Md. 2015) ("confidential communications between Mr. and Mrs. Patrick are privileged, regardless of the subject matter", even though spouses are business partners).

Unlike in Plaintiffs' cases,[6] Kathleen and Arthur are not using the privilege to prevent disclosure of their business agreements with each other, or to conceal facts about their property or business transactions.  The DLS Defendants produced the actual emails sent by them to third parties, information disseminated to the public, and other alleged "marketing and promotional" materials relating to the Tezos fundraiser.  They also produced corporate documentation relating to the formation and ownership of DLS, relevant contracts, and countless other documents.

---

[6] As with *Nash*, several of Plaintiffs' cases involved situations where courts found that spouses could not use the privilege to perpetrate a crime or fraud.  *See G-Fours,* 496 F.2d at 812 (husband attempting to conceal assets); *In re S. Air Transport, Inc.*, 255 B.R. at 708-09, 713 (husband attempting to fraudulently transfer corporate assets).  The crime/fraud exception is not at issue here.

Plaintiffs' alternative argument that Kathleen and Arthur "lacked any reasonable expectation of privacy" over "work email accounts" is also without merit. In determining whether an employee's communications over a work computer are privileged, courts consider four factors:

> (1) does the company maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or email, (3) do third parties have a right of access to the computer or emails, and (4) did the corporation notify the employee, or was the employee aware, of the policy.

*Flatworld*, 2013 WL 11319071, *1. Federal courts consistently employ this test, which does not depend on the subject matter or the privilege at issue. *See, e.g., In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159-60 (S.D.N.Y. 2011); *Sprenger v. Rector & Bd. of Visitors of Virginia Tech*, No. CIV.A. 7:07CV502, 2008 WL 2465236, *3-4 (W.D. Va. June 17, 2008); *Kreuze v. VCA Animal Hosps., Inc.*, No. CV PJM-17-1169, 2018 WL 1898248, *3 (D. Md. Apr. 20, 2018).

All factors weigh in favor of upholding the marital communication privilege here. This case is not a situation where an employee lacked a reasonable expectation of privacy because the employee had signed a company policy acknowledging that his employer had the right to inspect his work email account. Nor did any third parties monitor Kathleen and Arthur's private emails. *Cf. Sims*, 2007 WL 2745367, *1; *TBG*, 96 Cal. App. 4th at 447; *Gauntlett*, 2011 WL 5191808, at *9.[7] In any event, there is no basis to order production of emails exchanged over their gmail accounts.

Finally, Plaintiffs have not submitted any – let alone sufficient – evidence to create a "reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *See In re Grand Jury Investigation*, 974 F.2d at 1075. Plaintiffs' own cases recognize courts should not "engage in an after-the-fact analysis of whether a statement is 'incidental to' or 'because of' the marital relationship." *Hanger*, 181 F.R.D. at 528. A married couple, like Kathleen and Arthur, "should be secure in the knowledge that their private communications are exactly that—private." *Id.* (internal quotations omitted).

---

[7] Likewise, Plaintiffs have introduced no evidence to support the claim that Kathleen and Arthur's private communications over work email accounts were "made before, or likely to be overheard by, third parties." *Cf. Marashi*, 913 F.2d at 730 ("[t]he presence of a third person . . . during the communications destroyed the privilege"); *McCown*, 711 F.2d at 1452 (the "obvious inference" from the evidence was that the husband disclosed the communication at issue to a third party).

Respectfully Submitted,

Date: July 9, 2019                    HUNG G. TA, ESQ. PLLC

By: /s/ Hung G. Ta

*Court-Appointed Co-Lead Counsel*

Date: July 9, 2019                    BAKER MARQUART

By: /s/ Scott M. Malzahn
　　　Scott M. Malzahn
*Counsel for Defendants Dynamic Ledger Solutions, Inc., Kathleen Breitman, and Arthur Breitman*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Scott M. Malzahn, attest that concurrence in the filing of this document has been obtained from each of the other signatories. Executed on July 9, 2019 in Los Angeles, California.

/s/ *Scott M. Malzahn*

Scott M. Malzahn