BAKER MARQUART LLP
BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
DONALD R. PEPPERMAN (109809) (dpepperman@bakermarquart.com)
SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
Telephone:   (424) 652-7814
Facsimile:    (424) 652-7850

Counsel for Defendants
ARTHUR BREITMAN
KATHLEEN BREITMAN
DYNAMIC LEDGER SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | CLASS ACTION |
| This document relates to: | **DECLARATION OF ARTHUR BREITMAN RE DISCOVERY DISPUTE CONCERNING ASSERTION OF MARITAL COMMUNICATIONS PRIVILEGE** |
| ALL ACTIONS | |
| | **FILED PURSUANT TO ORDER REGARDING DISCOVERY DISPUTE (ECF 232)** |
| | Judge:    Hon. Richard Seeborg<br>Trial Date:   Not yet set |

## DECLARATION OF ARTHUR BREITMAN

I, Arthur Breitman, hereby declare:

1. I am personally named as a defendant in this lawsuit and am the Chief Technology Officer for defendant Dynamic Ledger Solutions, Inc. ("DLS"). Except as otherwise stated, I have personal knowledge of the facts contained in this declaration. If called to testify, I could and would truthfully testify to these facts.

2. It is my understanding that my attorneys have withheld certain emails exchanged between my wife Kathleen Breitman ("Kathleen") and me during the period of September 11, 2016 to September 18, 2018 (the "relevant period") based on the marital communications privilege. I submit this declaration for this Court's consideration in connection with the resolution of a discovery dispute over that privilege and pursuant to the Magistrate Judge's July 15, 2019 Order Regarding Discovery Dispute (ECF 232).

3. Kathleen and I originally met in 2010 and married three years later in New York City on December 19, 2013. Kathleen and I live together and enjoy a close, intimate relationship. Due to our close relationship as spouses, I regularly share information and thoughts with Kathleen that I do not share with other people.

4. DLS was incorporated in 2015. I initially served as the company's sole officer, director and owner. In September 2016, Kathleen received shares in DLS. In March 2017, Kathleen replaced me as the Chief Executive Officer of DLS and I became the Chief Technology Officer. At present, Kathleen and I collectively own 90% of DLS. The remaining 10% of the company is owned by Draper Associates V. Crypto LLC. Besides Kathleen and myself, there have never been any other directors, officers, or employees of DLS.

5. During the relevant period, Kathleen and I communicated with each other through a variety of means, including our personal gmail accounts and email accounts associated with DLS that use the domain "tezos.com." As to my gmail account, I am the sole user of that account; no one else has the password or can access it. As to the tezos.com account, I obtained the domain name "tezos.com" on or about May 28, 2014 and later caused email accounts with that domain to be created. I was listed as the sole administrator with access privileges to those tezos.com email

accounts until the spring of 2018. At that time, the Foundation's Chief Security Officer was added as an administrator so that the Foundation could access other email accounts established for the Foundation's custodians, if needed. The Foundation agreed not to access my or Kathleen's emails; and given the litigation, my emails and Kathleen's emails were preserved.

6. At all times, I expected and understood that emails that I exchanged with Kathleen privately (*i.e.*, between the two of us only) would be kept confidential – regardless of whether those communications took place over a tezos.com or gmail account. I believed that our tezos.com accounts were akin to personal accounts and treated them as such. Additionally, DLS, Kathleen, and myself have never given any other person the right to access my electronic devices or my email communications with my wife, which I regard as confidential and privileged.

7. As discussed in more detail in Kathleen's declaration, DLS does not have any corporate policies that restrict or otherwise impair the confidentiality of my communications with Kathleen. Given that Kathleen and myself operate DLS as a two-person operation, there never was a reason to institute any such policies.

8. Aside from our personal lawyers, I am not aware of any other person who has viewed or monitored my or my wife's gmail or tezos.com email accounts or materials on any computer used by us for DLS business. In fact, until this litigation arose, I was never notified or warned that my private communications with Kathleen could conceivably be subject to disclosure to a third party.

9. It is extremely troubling to me that the plaintiffs and their lawyers in this lawsuit are attempting to obtain my confidential communications with my wife. Frankly, I feel it was an invasion of our privacy for our lawyers to look at our private communications.

10. Kathleen and I frequently emailed and shared documents with each other over Google drive about matters relating to the Tezos project and fundraiser, to share our thoughts and seek feedback. As I suspect many spouses do, Kathleen and I frequently seek advice from each other about how to handle communications with third parties and business matters. Among other things, we sometimes emailed each other about our interactions with other people. We also exchanged thoughts and edits for draft emails to third parties, drafts of public statements and other documents that had not been made public and might never be made public. We sometimes gossip,

vent, express our frustration, seek each other's personal opinions, and joke around and send GIFs to one another.  When Kathleen and I communicated using email, I felt free to express myself in an unfiltered manner because I understood that our communications were private.  I greatly value my wife's advice, and I do not communicate in this same manner with business partners or others.  I trusted Kathleen's judgment as to when our communications could be forwarded to others or third parties could be added to our email chain.  It would undermine the privacy of our marital relationship and could cause embarrassment or misunderstandings for our private communications to be publicly disclosed.

    I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

    Executed this 23rd day of July 2019, at London, United Kingdom.

By: _____
Arthur Breitman