BAKER MARQUART LLP
BRIAN E. KLEIN (258486) (bklein@bakermarquart.com)
DONALD R. PEPPERMAN (109809) (dpepperman@bakermarquart.com)
SCOTT M. MALZAHN (229204) (smalzahn@bakermarquart.com)
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
Telephone:	(424) 652-7814
Facsimile:	(424) 652-7850

Counsel for Defendants
ARTHUR BREITMAN
KATHLEEN BREITMAN
DYNAMIC LEDGER SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
|---|---|
| | <u>CLASS ACTION</u> |
| This document relates to: | **DECLARATION OF KATHLEEN BREITMAN RE DISCOVERY DISPUTE CONCERNING ASSERTION OF MARITAL COMMUNICATIONS PRIVILEGE** |
| ALL ACTIONS | |
| | **FILED PURSUANT TO ORDER REGARDING DISCOVERY DISPUTE (ECF 232)** |
| | Judge:	Hon. Richard Seeborg<br>Trial Date:	Not yet set |

## DECLARATION OF KATHLEEN BREITMAN

I, Kathleen Breitman, hereby declare:

1. I am personally named as a defendant in this lawsuit and am the Chief Executive Officer for defendant Dynamic Ledger Solutions, Inc. ("DLS"). Except as otherwise stated, I have personal knowledge of the facts contained in this declaration. If called to testify, I could and would truthfully testify to these facts.

2. It is my understanding that my attorneys have withheld certain emails exchanged between my husband Arthur Breitman ("Arthur") and me during the period of September 11, 2016 to September 18, 2018 (the "relevant period") based on the marital communications privilege. I submit this declaration for this Court's consideration in connection with the resolution of a discovery dispute over that privilege and pursuant to the Magistrate Judge's July 15, 2019 Order Regarding Discovery Dispute (ECF 232).

3. Arthur and I originally met in 2010 and married three years later in New York City on December 19, 2013. We live together and enjoy a close, intimate relationship. Due to our close relationship as spouses, I regularly share information and thoughts with Arthur that I do not share with other people.

4. Arthur and I run DLS together. We are the company's only officers, directors, and employees. Together, we hold a 90% stake in the company. There is one minority shareholder, Draper Associates V. Crypto LLC.

5. During the relevant period, Arthur and I communicated with each other through a variety of means, including our personal gmail accounts and email accounts associated with DLS that use the domain "tezos.com." As to my gmail account, I am the sole user of that account; no one else has the password or can access it. As to the tezos.com account, during the relevant period, I understood that this account was private to me. It is my understanding that Arthur and one other person are listed as administrators with access privileges to my tezos.com email account but that neither of them actually accessed my tezos.com email account.

6. At all times, I expected and understood that emails that I exchanged with Arthur privately (*i.e.*, between the two of us only) would be kept confidential – regardless of whether those

communications took place over a tezos.com or gmail account. I believed that our tezos.com accounts were akin to personal accounts and treated them as such. Additionally, DLS, Arthur, and myself have never given any other person the right to access my electronic devices or my email communications with my husband, which I regard as confidential and privileged.

7. DLS does not have any corporate policies that restrict or otherwise impair the confidentiality of my communications with Arthur. For example, there is no company policy that bans the use of work email or work computers for personal use. Nor is there any policy that gives the company the right to access, view, seize, disclose or otherwise monitor my or Arthur's tezos.com email accounts or work computers. Given that Arthur and I run DLS together and are the company's sole employees, it never occurred to me that some third person would ever be entitled to view our private communications with each other.

8. Aside from our personal lawyers, I am not aware of any other person who has viewed or monitored my or my husband's gmail or tezos.com email accounts or materials on any computer used by us for DLS business. In fact, until this litigation arose, I was never notified or warned that my private communications with Arthur could conceivably be subject to disclosure to a third party.

9. Arthur and I frequently emailed and shared documents with each other over Google drive about matters relating to the Tezos project and fundraiser, to share our thoughts and seek feedback. Indeed, due to our busy work schedules and given that I traveled a fair bit during the relevant period, as I often do, I relied on email as a private communication channel I used to keep in touch with my husband. Among other things, we sometimes emailed each other about our interactions with other people and business matters. We also exchanged thoughts and edits for draft emails to third parties, drafts of public statements and other documents that had not been made public and might never be made public. We sometimes gossip, vent, express our frustration, seek each other's personal opinions, and joke around and send GIFs to one another. When Arthur and I communicated using email, I felt free to express myself in an unfiltered manner because I understood that our communication channel was private. I do not communicate in the same manner with business partners or others. I trusted Arthur's judgment as to when our communications could be forwarded to others or third parties could be added to our email chain. It would undermine the

privacy of our marital relationship and could cause embarrassment or misunderstandings for our private communications to be publicly disclosed.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed this 23rd day of July 2019, at London, United Kingdom.

By: _____
Kathleen Breitman