UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br>ALL ACTIONS | Case No. 17-cv-06779-RS  (SK)<br><br>**ORDER ON DISCOVERY DISPUTE**<br><br>Regarding Docket Nos. 231, 235 |

Plaintiffs move to compel production of documents that Defendants Kathleen Breitman ("Kathleen") and Arthur Breitman ("Arthur") withheld from production based on the marital communications privilege. Both Kathleen and Arthur submitted declarations in response to the Court's Order dated July 10, 2019. (Dkt. 232.) The Court DENIES the motion to compel and holds that the marital communications privilege shields from disclosure communications between Kathleen and Arthur that were withheld from production in this litigation and placed on the privilege log. (Dkt. 231-2.) The Court also DENIES the administrative motion by Plaintiffs for leave to file a response to the declarations. (Dkt. 235.)

**Background**

In this matter, Plaintiffs allege that Defendants sold Tezos tokens to tens of thousands of investors in a July 2017 initial coin offering ("ICO"), that those Tezos tokens are "securities" under Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), and that Defendants sold the securities without registration and without an applicable exemption in violation of Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1).[1] (Dkt. 108, ¶¶137-143.)

Plaintiffs issued requests for production of documents, and Kathleen and Arthur withheld

---

[1] Plaintiffs allege that certain defendants are "control persons" who caused the unregistered securities to be sold and thus that they are liable under Section 15 of the Securities Act, 15 U.S.C. § 77o. (Dkt. 108, ¶¶ 144-150.)

from production documents in which they communicated only with each other. (Dkt. 231-2.) The documents at issue are electronic mail messages sent and received using DLS's email system or gmail accounts or documents shared on a Google drive. (*Id*.)

Kathleen and Arthur are married and have been married since December 2013. (Dkt. 233, ¶ 3; Dkt. 234, ¶ 3.) They also own 90% of Defendant Dynamic Ledger Solutions, Inc. ("DLS") (Dkt. 233, ¶ 4; Dkt. 234, ¶ 4), which was the entity selling Tezos tokens. They are the sole officers and employees of DLS. (Dkt. 233, ¶ 4; Dkt. 234, ¶ 4.)

Kathleen and Arthur communicated with each other through personal gmail accounts and their email accounts associated with Tezos and that included the domain name "tezos.com." (Dkt. 233, ¶ 5; Dkt. 234, ¶ 5.) Arthur was listed as the sole administrator with "access privileges" to the email addresses associated with tezos.com. (Dkt. 233, ¶ 5.) In the spring of 2018, the Chief Security Officer of the "Foundation"[2] was added as an administrator but the Foundation agreed not to access Arthur's or Kathleen's emails. (*Id*.)

Kathleen and Arthur understood at all times that their email would be confidential and believed and treated their email accounts, even those with tezos.com, as personal accounts. (Dkt. 233, ¶ 6; Dkt. 234, ¶ 6.) Kathleen and Arthur both declare that "DLS does not have any corporate policies that restrict or otherwise impair the confidentiality" of their communications ((Dkt. 233, ¶ 7; Dkt. 234, ¶ 7), but it is not clear if there are any policies at all about the confidentiality of communications made using email addresses associated with tezos.com.

Kathleen and Arthur communicated about both business and personal matters in their email communications about matters which they would only discuss with a spouse, and they expressed themselves freely because they thought that their communications were private. (Dkt. 233, ¶ 10; Dkt. 234, ¶ 9.)

///

---

[2] Although the letter brief and the declarations from Kathleen and Arthur are silent on the definition of the "Foundation," the Court assumes that the reference is to the Tezos Foundation. The District Court described the Tezos Foundation as a "purportedly independent non-profit organization" based in Switzerland that "was intended to oversee the [Initial Coin Offering], after which it would acquire DLS and assume full responsibility for the technology's future development." (Dkt. 148.)

**Analysis**

This case arises purely from federal claims and thus the Federal Rules of Evidence regarding privilege apply. Federal courts recognize the common law of privilege. F. R .Evid. 501. The Ninth Circuit protects from disclosure (1) words and acts that are intended to be a communication, (2) between two people in a valid marriage, and (3) that are confidential. *United States v. Vo*, 413 F.3d 1010, 1016 (9th Cir. 2005.) The privilege is construed narrowly "to promote marriage without thwarting the administration of justice." *Id*. (internal citation omitted). "Marital communications are presumptively confidential;" and thus the party opposing the application of the privilege has the burden of showing that the communications are not privileged. *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990) (citing *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983); *United States v. Weinberg*, 439 F.2d 743, 750 (9th Cir. 1971)).

Here, there is no dispute that the documents in question constitute communications and that the communications were made between two people in a valid marriage. The dispute centers on the confidential nature of the communications. Plaintiffs argue that, because Kathleen and Arthur used their business emails to communicate and because DLS "owns, controls, and possesses" the Tezos.com email accounts and servers on which the communications were stored, Kathleen and Arthur knew that third parties could learn of those communications. (Dkt. 231 at page 3.) Communications that are "likely to be overhead by . . . third parties" are not confidential for purposes of the marital communications privilege. *Marashi*, 913 F.2d at 730. In this context, the question is whether it is likely that a third party would have access to the email communications. Here, Kathleen and Arthur did not think that their communications would be overheard by third parties, and, given the unique nature of DLS and the specific facts surrounding the limited access to Kathleen's and Arthur's email communications, it was not likely that third parties would "overhear" their communications. Plaintiffs thus do not meet their burden to show that the privilege does not apply.

Plaintiffs also argue that, even if the Breitmans meet all the standards of the marital communications privilege, there is an exception for business communications made between

3

spouses if they would have made those communications even if they were not married. Plaintiffs cite to several cases outside the Ninth Circuit for this proposition. *G-Fours, Inc. v. Miele*, 496 F.2d 809, 811 (2d. Cir. 1974); *United States v. Nash*, 910 F. Supp. 2d 1133, 1137 (S.D. Ill. 2012); *Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 531 (M.D. Fla. 1998); *DHA Corp v. Hardy*, 2015 WL 3707378, at * 3 (S.D. Fla. June 15, 2015); *In re S. Air Transport, Inc.*, 255 B.R. 706, 713 (Bankr. S.D. Ohio 2000).

In *G-Fours*, the Court of Appeals for the Second Circuit held that a party could not assert the marital communications privilege under New York state law, which states: "A husband or wife shall not be required, or without the consent of the other if living, allowed to disclose a confidential communication made by one to the other during marriage." 496 F.2d at 811. This statute under New York law differs from the marital communications privilege pursuant to Fed. R. Evid. 501 and the common law developed in the Ninth Circuit. This New York statute appears to be a combination of the marital communications privilege, which shields all communications, and the separate doctrine of spousal testimonial privilege, which provides that a witness cannot be compelled to testify against his or her spouse. *Hawkins v. U.S.*, 358 U.S. 74 (1958); *Trammel v. U.S.*, 440 U.S. 40 (1980).

In *U.S. v. Nash*, the District Court in Southern District of Illinois referred to the fact that the Seventh Circuit has also recognized a "business affairs" exception, where the spouse's marital relationship is merely incidental to the business transaction, citing *U.S. v. Byrd*, 750 F.2d 585, 593 n.3 (7th Cir. 1985), which in turn cited *U.S. v. Kahn*, 471 F.2d 191, 194 (7th Cir. 1972), *rev'd on other grounds*, 415 U.S. 143 (1974). *Nash*, 910 F. Supp. 2d at 1137. None of these three cases – *Nash*, *Byrd*, or *Kahn* – addresses the "business affairs" exception. The Courts in *Nash* and *Kahn* found that the marital communications privilege did not apply because both spouses were involved in the commission of a crime. *Nash*, 910 F. Supp. 2d at 1144-1145; *Kahn*, 471 F.2d at 194. Nash also found that the privilege did not apply because the exception for the privilege when one spouse commits a crime against the other spouse applied. *Nash*, 910 F.Supp.2d at 1144. *Byrd* found that the privilege did not apply because the couple had permanently separated. *Byrd*, 750 F.2d at 593. Thus, in other words, the Seventh Circuit has recognized in dicta that a business affairs exception

4

applies to the marital communications privilege, but no court in the Seventh Circuit has addressed the parameters of such an exception or applied it in any case.

The Court in *New York Life Ins. Co. v. Mason* did not address the marital communications privilege under federal common law but rather under a Montana statute. In that case, a wife attempted to testify about comments her husband had made before he died, and the life insurance company who objected to paying out on the policy alleged that the husband had committed suicide and argued that the Montana statute prevented the wife from testifying about her husband's comments casting doubt on the theory of suicide. The holding did not address a business exception to the marital communications privilege.

The Courts in *Hangar Orthopedic*, *DHA*, and *Southern Air Transport* addressed the marital communications privilege under Florida law and not under federal common law. 181 F.R.D. at 528; 2015 WL 3707378, at *1; 255 B.R. at 713. Nonetheless, the Court in *Hangar Orthopedic* analyzed the Florida statute and concluded that, "as a matter of law, no reasonable person could have believed that those business-related communications [between spouses] were made in confidence." 181 F.R.D. at 531. The Courts in *DHA* and *Southern Air Transport* reached a similar result. 2015 WL 3707378, at * 3; 255 B.R. at 713. Unlike here, there was no discussion of specific evidence regarding the confidential nature of the communications at issue but rather a general assumption that there was no confidentiality for the communications about business issues.

None of the cases that Plaintiffs cite are on point or controlling law. The Court declines to apply a "business" exception to the marital communications privilege. If there were such an exception to the marital communications privilege, courts would be required to analyze specific communications merely to determine whether the communication was purely about business or whether it also contained any personal information. This scrutiny for a communication made, as here, without the likelihood of disclosure to a third party, is exactly the type of scrutiny that the marital communications privilege is designed to avoid.

The Court realizes that it is always possible that some communications between spouses may be overheard by third parties, but the standard, as stated above, is that communications that

are "likely to be overhead by . . . third parties" are not confidential for purposes of the marital communications privilege. *Marashi*, 913 F.2d at 730. Spouses need not eliminate every possibility that third parties will overhear their communications to assert the privilege. Such a requirement would mean that spouses who communicate using private electronic mail services would not be able to assert the privilege over their communications because the private company that hosts the electronic mail messages potentially could "overhear" the communications. Given the manner in which spouses communicate in the modern world, and given the specific nature of the communications between the Breitmans, the Court finds that Plaintiffs have failed to overcome the presumption that the privilege applies.

For this reason, the Court DENIES the motion to compel production of documents withheld on the basis of the marital communications privilege as noted on the privilege log. (Dkt. 231-2.)

**IT IS SO ORDERED**.

Dated: July 30, 2019

_____
SALLIE KIM
United States Magistrate Judge