1  **HUNG G. TA, ESQ. PLLC**
   Hung G. Ta (*pro hac vice*)
2  JooYun Kim (*pro hac vice*)
   250 Park Avenue, 7th Floor
3  New York, New York 10177
4  Tel: 646-453-7288
   hta@hgtlaw.com
5  jooyun@hgtlaw.com

6  **BLOCK & LEVITON LLP**
   Jacob A. Walker (SBN 271217)
7  260 Franklin Street, Suite 1860
8  Boston, MA 02110
   Tel: 617-398-5600
9  Fax: 617-507-6020
   jake@blockesq.com
10
11 *Court-Appointed Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **PLAINTIFFS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. NO. 236)** |
| ALL ACTIONS. | |
| | Judge:    Hon. Richard Seeborg |
| | Trial Date: Not Yet Set |

Pursuant to Civil Local Rule 72-2 and Federal Rule of Civil Procedure 72(a), Plaintiffs respectfully submit this motion for relief from the Magistrate Judge's July 30, 2019 order on discovery dispute (Dkt. No. 236) (the "Order"). The Order is clearly erroneous because it made factual determinations based entirely on the self-serving and conclusory assertions of Defendants Kathleen Breitman and Arthur Breitman (collectively, "the Breitmans," and with Defendant Dynamic Ledger Solutions, Inc. ("DLS"), the "DLS Defendants"), without first affording Plaintiffs an opportunity to challenge those assertions through discovery. Moreover, the Order is premised on a misapprehension of the law and Plaintiffs' arguments.

## BACKGROUND

Former Lead Plaintiff served his first set of requests for production on August 16, 2018. The DLS Defendants served their responses and objections on September 17, 2018 in which they asserted, *inter alia*, the marital communications privilege. On July 9, 2019, the parties submitted a joint letter concerning the applicability of this privilege to certain communications the Breitmans exchanged using their DLS work email addresses (*i.e.*, not messages exchanged through their private gmail accounts). Dkt. No. 231. In the joint letter, Plaintiffs argued that the marital communications privilege does not extend to these communications because they were business communications between business partners for which the marital relationship was merely incidental, and because these communications could not be deemed confidential due to the Breitmans' use of work email. Plaintiffs requested that the Court therefore order the production of these documents or conduct an *in camera* review. *Id.* On July 15, 2019, the Magistrate Judge permitted the Breitmans to submit declarations testifying to the purportedly confidential nature of these communications. Dkt. No. 232.

On July 23, 2019, the Breitmans each filed a declaration. Dkt. Nos. 233 ("AB Decl.") and 234 ("KB Decl.") (collectively, the "Declarations"). These attorney-drafted Declarations consisted entirely of conclusory and self-serving statements, and raised many important questions, *e.g.*:

- To support their assertion that their communications sent over DLS work email accounts were confidential, the Breitmans stated that they were the only "directors, officers, or employees of DLS," and that DLS was a "two-person operation." *See* AB Decl. ¶¶ 4, 7; KB Decl. ¶¶ 4, 7. However, DLS's document production reveals that a number of other individuals possessed or had access to DLS email addresses (*i.e.*, those ending with "@tezos.com"), including but not limited to: Ross Kenyon (listed next to the "support@tezos.com" email address); Charlie Wiser

(charlie.wiser@tezos.com), Lucas Kozinski (lucas.kozinski@tezos.com), Ryan Lackey (ryan.lackey@tezos.com), Ryan Jesperson (ryan.jesperson@tezos.com), and Alison Mangiero (alison.mangiero@tezos.com).

- The Breitmans conceded that the Chief Security Officer of a *third-party*, the Tezos Foundation, had access to the Breitmans' DLS email accounts. *See* AB Decl. ¶ 5, KB Decl. ¶ 5. And, despite the significant nature of this admission, the Breitmans failed to disclose the identity of this "Chief Security Officer," leaving open the question whether one person or multiple persons from the Tezos Foundation had access to the Breitmans' DLS email accounts.

- Arthur Breitman stated that he had an alleged "agreement" with the Tezos Foundation not to access "[his] or Kathleen's emails." *See* AB Decl. ¶ 5. However, he failed to provide any elaboration on this purported agreement, including when it was entered into or its terms. Moreover, despite having the opportunity to do so, neither of the Breitmans attached the alleged agreement to their declarations. The Declarations are also unclear as to whether the "emails" that are the subject of this alleged "agreement" were emails from the Breitmans' @tezos.com accounts or some other emails.

- The Breitmans conspicuously failed to address the critical issue of whether the Tezos Foundation's "Chief Security Officer" (whoever and however many people that may be), or anyone else, ever *actually* accessed the Breitmans' work emails.

- The Breitmans stated that they expected the communications they conducted using their work email accounts would be confidential. *See* AB Decl. ¶ 6, KB Decl. ¶ 6. However, they failed to offer any basis for this expectation, including any explanation why they supposedly believed their work email accounts were "akin to personal accounts" or why they intentionally chose to use their work email accounts for these specific communications, when they both had access to and regularly used their personal email accounts for other communications.

- The Breitmans stated that there are no "corporate policies that restrict or otherwise impair the confidentiality" of their communications (AB Decl. ¶ 7, KB Decl. ¶ 7), but these carefully-worded statements conspicuously failed to address whether there are any *non-corporate* policies or *any other practices* that govern access to such communications, even if they do not "restrict or otherwise impair the[ir] confidentiality."

Based on these facially questionable assertions and glaring omissions, on July 25, 2019, Plaintiffs submitted an administrative motion for leave to submit a response to the Declarations. Dkt. No. 235. Plaintiffs sought to highlight these deficiencies and request limited discovery.

On July 30, 2019, the Magistrate Judge issued the Order, which denied all relief sought by Plaintiffs. The Order relied solely on the Declarations, accepting the truth of the statements contained therein as if they were undisputed, and implicitly drawing all inferences in favor of the Breitmans.

Specifically, the Magistrate Judge accepted at face value the Breitmans' statements that: (1) they "understood at all times that their email would be confidential and believed and treated their email accounts, even those with tezos.com, as personal accounts" (Order at 2); (2) the Chief Security Officer of the Tezos Foundation "agreed not to access Arthur's or Kathleen's emails" (*id*); and (3) the Breitmans "communicated about both business and personal matters in their email communications about matters which they would discuss with a spouse, and they expressed themselves freely because they thought that their communications were private" (*id*). The Magistrate Judge found that, based on the above, DLS possessed a "unique nature" that resulted in "limited access to Kathleen's and Arthur's email communications," and thus concluded that "it was not likely that third parties would 'overhear' their communications." *Id.* at 3. The Order denied Plaintiffs' request to submit a response to the Declarations.

## **ARGUMENT**

### **I. THE MAGISTRATE CLEARLY ERRED IN RELYING ON THE DECLARATIONS WITHOUT AFFORDING PLAINTIFFS AN OPPORTUNITY TO RESPOND**

As discussed above, the Declarations consist almost entirely of conclusory, self-serving assertions that raise more questions than they answer. Yet, the Magistrate Judge made factual determinations by accepting these statements as if they were undisputed and drawing inferences in favor of the Breitmans. Thus, the Magistrate Judge clearly erred in issuing the Order. *See In re North Plaza, LLC*, Bankr. No. 04-00769, 2008 WL 7889912, at *1 (Bankr. S.D. Cal. May 30, 2008) (conducting an evidentiary hearing to determine, for purposes of a motion to compel, whether the attorney-client privilege attached to certain communications); *Callie v. Near*, 829 F.2d 888, 891 (9th Cir. 1987) (in evaluating a motion to enforce a settlement agreement where there was a dispute over the parties' intent, holding that "the district court erred in failing to conduct an evidentiary hearing regarding the intent of the parties"); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that the district court abused its discretion in denying jurisdictional discovery because such discovery could unearth facts that could change the outcome of the motion); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (where the defendants submitted new evidence in their summary judgment reply brief, and the district court denied plaintiffs' motion

to strike the new evidence and also refused to consider plaintiffs' supplemental declaration, holding that "the district court erred" because "[s]uch a result would be unfair…. Where new evidence is presented … the district court should not consider the new evidence without giving the [opposing party] an opportunity to respond.") (quotation marks and citation omitted); *In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. and Sales Practices Litig.*, Case No. 09-md-2015, 2013 WL 5424963, at *9-10 (N.D. Cal. Sept. 25, 2013) (in ruling on a motion for a preliminary injunction, noting that "the Court is reluctant to rely fully upon the new evidence because Plaintiffs have not had a meaningful opportunity to challenge it…. [T]he appropriate next step is to give Plaintiffs such an opportunity…. [T]he Court should not rely fully upon [the] new evidence until Plaintiffs have had a chance to challenge it."); *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1139 (9th Cir. 2019) (due process requires "notice and a meaningful opportunity to be heard") (citation omitted).

## II.  THE MAGISTRATE MISAPPREHENDED PLAINTIFFS' ARGUMENTS AS WELL AS THE APPLICABLE LAW

The Order also misapprehended the applicable law and Plaintiffs' legal position.  First, with respect to the "business affairs" exception, it appears that the Magistrate Judge construed Plaintiffs' argument to be advocating the extreme position that the marital communications privilege is inapplicable whenever the communications discuss business.  *See* Order at 5 (noting that "[i]f there were such an exception to the marital communications privilege, courts would be required to analyze specific communications merely to determine whether the communication was purely about business or whether it also contained any personal information").  That is neither Plaintiffs' position nor the applicable legal standard.  Rather, Plaintiffs' argument turns on the specific facts and circumstances here—that the "business affairs" exception applies not only because these communications were purely business communications, but because they were made using business email addresses and between business partners who coincidentally happened to be spouses, which communications would have been made regardless of the marital relationship.  Under these circumstances, applying the marital communications privilege would provide an unwarranted, anomalous shield that is contrary to its spirit and purpose, and contrary to the law that requires such privilege to be "narrowly construe[d]."  *See* Dkt. No. 231 at 2-3.

4
PLAINTIFFF'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAG. JUDGE

Second, with respect to the alleged confidentiality of these communications, it appears that the Magistrate Judge construed Plaintiffs' argument to be that the marital communications privilege does not apply so long as there is even the slightest possibility that any third party could access the communications. *See* Order at 6 (holding that, if Plaintiffs' position were accepted, "spouses who communicate using private electronic mail services would not be able to assert the privilege … because the private company that hosts the electronic mail messages potentially could 'overhear' the communications"). Again, that is not Plaintiffs' position. Rather, Plaintiffs' position is premised on the fact that the Breitmans conducted these communications using *work* email accounts as opposed to personal email accounts, which eliminates any reasonable expectation of privacy under California law. *See, e.g.*, *Gauntlett v. Illinois Union Ins. Co.*, Case No. 11-cv-455, 2011 WL 5191808, at *9 (N.D. Cal. Nov. 1, 2011). And although the Order acknowledges the absence of any "on point or controlling law," Order at 5, it incorrectly fails to consider this directly applicable state law, *see* Dkt. No. 231 at 3; *see also Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975).[1]

## **CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs relief from the Magistrate Judge's Order and order the DLS Defendants to produce the documents they have improperly withheld under the guise of the marital communications privilege. In the alternative, the Court should order an *in camera* review of the communications at issue and/or permit Plaintiffs to take limited discovery concerning the subject matter of the Declarations prior to ruling on the marital communications privilege. If the Court were inclined to grant Plaintiffs an opportunity to conduct limited discovery, Plaintiffs request depositions of each of the Breitmans of no longer than two hours separate from Plaintiffs' deposition limits—similar to that ordered by the Court concerning former Lead Plaintiff's alleged knowledge (or lack thereof) of the purported Contribution Terms, *see* Dkt. No. 165.

---

[1] Moreover, even accepting the Declarations as true, it is clear that a number of third parties had the *right* to inspect these purportedly privileged emails. Aside from the "Chief Security Officer" of the Tezos Foundation, there is at least one third-party stockholder of DLS. *See, e.g.*, AB Decl. ¶ 4. Because DLS is a Delaware corporation, that stockholder had the right to examine DLS's books and records, including e-mails. *See* 8 Del. Gen. L. § 220; *In re Facebook, Inc. Section 220 Litig.*, No. C.A. No. 2018-0661-JRS, 2019 WL 2320842, at *18 (Del. Ch. May 30, 2019) (allowing for the production of internal e-mails).

| | | |
|---|---|---|
| 1 | | Respectfully Submitted, |
| 2 | Date: August 12, 2019 | HUNG G. TA, ESQ. PLLC |
| 4 | | By: */s/ Hung G. Ta* |
| 5 | | *Court-Appointed Co-Lead Counsel* |

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, Enoch H. Liang hereby attests that concurrence in the filing of the documents has been obtained from the signatories above.

Date August 12, 2019                                                          By: */s/ Enoch H. Liang*
                                                                                            Enoch H. Liang

---

6

PLAINTIFFF'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAG. JUDGE