Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com
joel@blockesq.com

*Co-Lead Counsel*

Hung G. Ta (*pro hac vice*)
JooYun Kim (*pro hac vice*)
**HUNG G. TA, ESQ. PLLC**
250 Park Avenue, 7th Floor
New York, NY 10017
(646) 453-7288 phone
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

*[Additional counsel listed on signature block]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | No. 3:17-cv-06779-RS (Consolidated) |
| This document relates to: | <u>CLASS ACTION</u> |
| ALL ACTIONS | **LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:        April 30, 2020<br>Time:        1:30 p.m.<br>Courtroom:  3, 17th Floor<br>Judge:       Hon. Richard Seeborg |

1

**TABLE OF CONTENTS**

2

3

NOTICE OF MOTION AND MOTION.................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED..................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES....................................................................2

I.    PRELIMINARY STATEMENT ..................................................................................................2

      A.    Statement of Facts .............................................................................................3

      B.    Procedural History .............................................................................................4

            1.    The Federal Litigation .......................................................................4

            2.    The State Litigation ............................................................................6

      C.    Settlement Negotiaions ......................................................................................8

II.    THE PROPOSED SETTLEMENT .............................................................................................9

      A.    Settlement Consideration...................................................................................9

      B.    Plan of Allocation .............................................................................................9

III.    ARGUMENT .................................................................................................................................10

      A.    The Court Should Grant Preliminary Approval of The Proposed Settlement..........10

            1.    The Proposed Settlement Is The Product Of Good Faith, Arm's Length Negotiations Among Experienced Counsel Mediated By An Experienced Private Mediator ..............................................................11

            2.    The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Settlement Class ...................................................12

            3.    The Proposed Settlement Falls Well Within The Range Of Reasonableness And Warrants Notice And A Hearing On Final Approval ...........................13

      B.    The Proposed Settlement Meets The Requirements of Fed. R. Civ. P. 23(e)(2).......15

      C.    The Proposed Settlement Class Also Meets The Prerequisites For Class Certification Under Rule 23...................................................................................................18

            1.    Numerosity ........................................................................................19

            2.    Commonality ......................................................................................20

            3.    Typicality............................................................................................20

4.     Adequacy .................................................................................22

5.     Common Questions of Law Predominate And A Class Action Is the Superior Method Of Adjudication.........................................................................23

D.    The Court Should Approve The Form Of Notice And Plan For Providing Notice To The Settlement Class ............................................................................26

IV.    CONCLUSION ....................................................................................30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652 (E.D. Cal. 2008) ......................................................................................... 10

4

5

*Alfus v. Pyramid Tech. Corp.,*
   764 F. Supp. 598 (N.D. Cal. 1991) ...................................................................................... 20

6

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ..................................................................................................... 20, 24

7

8

*Basile v. Valeant Pharm. Int'l., Inc.,*
   No. SACV 14-2004-DOC (KES), 2017 WL 3641591 (C.D. Cal. Mar. 15, 2017) ........................ 20

9

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ............................................................................................. 20

10

11

*Boyd v. Bank of Am. Corp.,*
   No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...................... 17

12

*Cheng Jiangchen v. Rentech, Inc.,*
   No. CV 17-1490-GW-FFMx, 2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) ............................... 17

13

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ............................................................................................. 14

14

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 10

15

16

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
   258 F.R.D. 545 (N.D. Ga. 2007) ........................................................................................ 24

17

18

*Danis v. USN Commc'ns, Inc.,*
   189 F.R.D. 391 (N.D. Ill. 1999) ......................................................................................... 21

19

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011) ......................................................................................................... 23

20

21

*Fernandez v. Victoria Secret Stores, LLC,*
   No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) ........................ 12

22

*Fraley v. Facebook, Inc.,*
   No. CV-11-01726 RS, 2012 WL 6013427 (N.D. Cal. Dec. 3, 2012) ....................................... 10

23

24

*Gittin v. KCI USA, Inc.,*
   No 09-CV-05843 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ....................................... 25

25

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 18, 22

26

27

28

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................................. 21

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ................................................................................................. 19

*Hicks v. Morgan Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 11, 16

*Hodges v. Akeena Solar Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ..................................................................................... 18, 21

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................................... 19

*In re Audioeye, Inc., Sec. Litig.*,
   No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017) ............................ 17

*In re Banc of Cal. Sec. Litig.*,
   No. SA CV 17-118-DMG (DFMx), 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ................. 17

*In re Cabletron Sys., Inc. Sec. Litig.*,
   239 F.R.D. 30 (D.N.H. 2006) ................................................................................................ 29

*In re Chiron Corp. Sec. Litig.*,
   2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ....................................................................... 18

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................... 18, 21, 25

*In re Diet Drugs*,
   Nos. 1203, 99-20593, 2000 WL 1222042, (E.D. Pa. Aug. 28, 2000) ..................................... 24

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) ........................................................................................... 25

*In re Heritage Bond Litig.*,
   No. CV 01-5752 DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ......................... 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................................ 27

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007 ................................................................................... 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......................... 11, 16

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................... 24

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ............................................................................................. 24

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ................................................................................. 24

*In re K12 Inc. Sec. Litig.*,
  No. 4:16-cv-04069-PJH, 2019 WL 3766420 (N.D. Cal. July 10, 2019) ........................ 17

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ............................................................................ 23, 25

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ................................................................... 22, 23

*In re OCZ Technology Group, Inc. Sec. Litig.*,
  No. 12-cv-05265-RS (N.D. Cal. Arp. 9, 2015) (ECF No. 96) ..................................... 18

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................................... 29

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................................ 17

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............... 14, 20, 29

*In re Seagate Tech. II Sec. Litig.*,
  843 F. Supp. 1341 (N.D. Cal. 1994) ............................................................................ 19

*In re Sorbates Direct Purchaser Antitrust Litig.*,
  Nos. C 98-4886MMC et al., 2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ............... 29

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................................... 10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................ 26

*In re UTStarcom, Inc. Sec. Litig.*,
  No. C 04- 04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ............... 18, 19, 21, 25

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............ 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ...................................................................................... 22

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..................................................................................... 10

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ............................... 11

*Louie v. Kaiser Found. Health Plan, Inc.*,
  No. 08-cv-0795 IEG RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ........................................ 14

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ........................................ 17

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ........................................ 24

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ........................................ 24

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................ 24

*Perez-Funez v. Dist. Director, I.N.S.*,
  611 F. Supp. 990 (C.D. Cal. 1984) ........................................ 19

*Ramirez v. DeCoster*, 203 F.R.D. 30 (D. Me. 2001) ........................................ 24

*Satchell v. Federal Express Corp.*,
  Nos. C 03-2659 SI, C 03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................ 10, 11

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ........................................ 25

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ........................................ 19

*Tawfilis v. Allergan, Inc.*,
  No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) ........................................ 17

*Vathana v. EverBank*,
  No. C 09–02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ........................................ 23

*Wahl v. Am. Sec. Ins. Co.*,
  No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559 (N.D. Cal. June 2, 2011) ........................................ 25

*Wehner v. Syntex Corp.*,
  117 F.R.D. 641 (N.D. Cal. 1987) ........................................ 20

*Welling v. Alexy*,
  155 F.R.D. 654 (N.D. Cal. 1994) ........................................ 19

*West v. Circle K Stores, Inc.*,
  No. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................ 10, 13, 21, 29

*Yamner v. Boich*,
  No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................................ 19

*Ybarrondo v. NCO Fin. Sys., Inc.*,
  No. 05cv2057-L(JMA), 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ........................................ 24

*Young v. Polo Retail, LLC,*
   No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)............................................ 12

**Statutes**

15 U.S.C. §78u-4(a)(7) ......................................................................................................................... 26

**Treatises**

*Manual for Complex Litigation*, Second (1985) ................................................................................. 10

1

2
### NOTICE OF MOTION AND MOTION
3
**TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

4
　　　　PLEASE TAKE NOTICE that on April 30, 2020 at 1:30 p.m., or as soon thereafter as
5
counsel may be heard before the Honorable Richard Seeborg, United States District Judge, at the
6
United States Courthouse, United States District Court, Northern District of California, 450 Golden
7
Gate Ave., San Francisco, California, Lead Plaintiff Trigon Trading Pty. Ltd. ("Trigon" or "Federal
8
Lead Plaintiff"), and plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Master
9
(collectively, the "Federal Plaintiffs"), will and do hereby move for an order: (1) preliminarily
10
approving the proposed settlement of this Action; (2) preliminarily certifying a class for purposes of
11
implementing the proposed settlement; (3) approving the form and manner of giving notice of the
12
proposed settlement to the Settlement Class; and (4) scheduling a hearing before the Court to
13
determine whether the proposed settlement, and Lead Counsel's application for an award of
14
attorneys' fees and reimbursement of Litigation Expenses, should be granted final approval.
15

16
　　　　The grounds for this motion are that the proposed settlement is within the range of what could
17
be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to
18
members of the proposed Settlement Class and a hearing for final approval of the proposed
19
settlement scheduled.
20
　　　　This motion is supported by the following memorandum of points and authorities in support
21
thereof, and the Stipulation of Settlement ("Settlement Agreement" or "Stipulation") dated March
22
16, 2020, and exhibits thereto which embody the terms of the proposed settlement between the
23

24

25

26

27

28

parties, submitted herewith, the previous filings and orders in this case, and such other and further representations as may be made by Counsel at any hearing on this matter.[1]

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed $25,000,000 settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2.      Whether a Settlement Class should be preliminarily certified for purposes of settlement.

3.      Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the Members of the Settlement Class should be approved.

4.      Whether the Court should set a date for a hearing for final approval of the proposed settlement and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

Lead Plaintiff Trigon and Plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Master respectfully submit this memorandum of points and authorities in support of their motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement (the "Settlement") of this class action. The Settlement is made in conjuction with the related State Litigation (as defined herein) involving State Class Plaintiff Andrew Baker ("Baker" or the "State Class Plaintiff") (together with the Federal Plaintiffs, "Plaintiffs") and the

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation.

same Defendants. This settlement will resolve all pending litigation in the United States involving Defendants.

The Settlement, as set forth in the Stipulation of Settlement dated as of March 16, 2020 (the "Settlement Agreement" or "Stipulation") and filed contemporaneously herewith, provides for the payment of $25 million in cash for the benefit of the Settlement Class.[2]  Plaintiffs submit that the Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially when viewed in light of the substantial challenges the Settlement Class would face in establishing Defendants' liability, demonstrating the full amount of the Settlement Class' damages, and actually collecting any amount that may be awarded.

## A.    Statement of Facts

The allegations and claims in this Action are familiar to the Court, and Federal Plaintiffs therefore provide only a brief overview at this preliminary approval stage. Additional details regarding Plaintiffs' extensive prosecution of this case for over two years—including document discovery from Defendants and third-parties, filing motions to compel, opposing motions to dismiss, and moving for class certification—will be provided in connection with Plaintiffs seeking final approval of the Settlement, in the event the Court grants preliminary approval such that notice of the proposed Settlement may be sent to potential Settlement Class Members, as requested herein.

---

[2] The Settlement Class is defined in the Settlement Agreement as "all persons and entities who, directly or through an intermediary, contributed bitcoin and/or ether to what Plaintiffs describe as the Tezos blockchain 'Initial Coin Offering' and what Defendants describe as a fundraiser conducted between July 1, 2017 and July 13, 2017, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of Arthur Breitman, Kathleen Breitman, Johann Gevers, or Timothy Draper; (iii) any person who was an officer or director of the Foundation, DLS, Draper Associates, or Bitcoin Suisse during the Fundraiser and any members of their immediate families; (iv) any parent, subsidiary, or affiliate of the Foundation, DLS, Draper Associates, or Bitcoin Suisse; (v) any firm, trust, corporation, or other entity in which any Defendant or any other excluded person or entity had a controlling interest during the Fundraiser; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion." Settlement Agreement, at ¶1.28.

The fundamental allegation in this case is that for over two weeks in July 2017, Defendants unlawfully conducted an Initial Coin Offering (ICO)[3] for Tezos "tokens" (also referred to as "XTZ" or "tezzies") during which investors contributed digital currencies, including Bitcoin and/or Ethereum, in exchange for Tezos tokens. In the first 15 hours alone, Defendants collected $109 million worth of Bitcoin and Ethereum from investors. Upon its completion, the Tezos ICO was the largest in history, with Defendants having collected the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices). Since the ICO, the value of the contributed Bitcoin and Ethereum fluctuated significantly and reached a value of more than $1.52 billion on January 7, 2018.

Federal securities laws require any security that is offered or sold to be registered with the Securities and Exchange Commission ("SEC"). These laws are designed to protect the public by requiring various disclosures so that investors can better understand the security that is being offered or sold. Under Section 2(a)(1) of the Securities Act of 1933 ("Securities Act"), a "security" is defined to include an "investent contract."[4]

## B.    Procedural History

### 1.    The Federal Litigation

This Action was commenced on November 26, 2017. [ECF No. 1.]  By Order dated March 16, 2018, the Court consolidated the related actions,[5] appointed Arman Anvari ("Anvari") as the lead plaintiff, and approved LTL Attorneys LLP and Hung G. Ta, Esq. PLLC as Lead Counsel. See Order Regarding Consolidation, Appointment Of Lead Plaintiff, And Selection Of Lead Counsel [ECF No. 101]. On April 3, 2018, Anvari filed the Consolidated Complaint For Violations Of The Federal

---

[3] An ICO is similar to an initial public offering of stock and is a fundraising mechanism by which the founders of a "blockchain" project sell "tokens" or "coins" in exchange for cryptocurrencies or for fiat currencies (such as U.S. Dollars). ¶¶1-2. All "¶" cites refer to Lead Plaintiffs' Consolidated Complaint For Violations Of The Federal Securities Laws (the "Complaint"). [ECF No. 108.]

[4] See ¶ 3.

[5] See GGCC, LLC v. Dynamic Ledger Sols., Inc., Case No. 3:17-cv-06779, United States District Court, Northern District of California (filed November 26, 2017); Okusko v. Dynamic Ledger Sols., Inc., Case No. 3:17-cv-06829, United States District Court, Northern District of California (filed November 28, 2017); and MacDonald v. Dynamic Ledger Sols., Inc., Case No. 3:17-cv-7095, United States District Court, Northern District of California (filed December 13, 2017).

Securities Laws. See Consolidated Complaint [ECF No. 108]. The Consolidated Complaint asserted

claims under §§5 and 12(a)(1) of the Securities Act of 1933 (the "Securities Act"), and under §15 of

the Securities Act, on behalf of a class of all investors who contributed digital currencies, including

Bitcoin and/or Ethereum, to the Tezos ICO. The named defendants included Defendants Dynamic

Ledger Solutions, Inc. ("DLS"), Tezos Stiftung ("Tezos Foundation"), Kathleen and Arthur

Breitman (the "Breitmans"), Timothy Cook Draper ("Draper"), Draper Associates V Crypto LLC

("Draper Associates Crypto"), and Bitcoin Suisse AG ("Bitcoin Suisse").

On May 15, 2018, motions to dismiss were filed on behalf of Tezos Stiftung [ECF Nos. 119-

122], DLS [ECF Nos. 123-125], the Draper Defendants [ECF No. 117], and Bitcoin Suisse AG [ECF

No. 126] arguing that the Complaint failed to state a claim upon which relief could be granted. [ECF

Nos. 119-126]. On June 8, 2018, Plaintiffs filed oppositions to the motions [ECF Nos. 131-135], and

Defendants filed reply briefs on June 29, 2018 [ECF Nos. 137-140].

On August 7, 2018, the Court granted in part and denied in part Defendants' motions. [ECF

No. 148]. The Court's Order dismissed all claims asserted against Bitcoin Suisse without leave to

amend and against the Draper Defendants with leave to amend. The Court's Order sustained the

claims against DLS, the Tezos Foundation, and the Breitmans.

On September 6, 2018, the Court entered a Case Management Scheduling Order which set

deadlines for, among other things, the class certification briefing and completion of discovery. [ECF

No. 165]. Defendants answered the Complaint on September 14, 2018 [ECF Nos. 168-171].

On January 23, 2019, Plaintiffs Artiom Frunze and Pumaro LLC filed a motion for class

certification, [ECF Nos. 193-195]. Shortly thereafter, on January 25, 2019, Anvari sought to

withdraw as lead plaintiff, and to substitute in his place named plaintiff Artiom Frunze. [ECF No.

196]. Class member Trigon Trading Pty. Ltd. opposed the motion, and instead sought to appoint

itself lead plaintiff in a competing motion. [ECF No. 198]. The Court granted the motion to withdraw

Anvari as lead plaintiff, denied the motion to substitute Anvari with Frunze as lead plaintiff, and granted the motion to substitute Trigon as lead plaintiff. The Court also ordered that Trigon's counsel Block & Leviton LLP and Anvari's counsel Hung G. Ta, Esq. PLLC serve as co-lead counsel going forward and denied the pending class certification motion without prejudice. [ECF No. 213].

The Court's August 7, 2018 Order denying in part Defendants' motion to dismiss the Complaint lifted the mandatory discovery stay imposed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and lead plaintiff Anvari (and later Trigon) commenced discovery. Over the course of the litigation, Federal Plaintiffs' discovery efforts included, among other things: (1) serving and responding to multiple document requests, interrogatories and requests for admissions; (2) issuing document subpoenas to third parties; (3) reviewing and analyzing documents received from Defendants and non-parties; (4) preparing Plaintiffs Anvari, Pumaro LLC, and Frunze for deposition and attending their depositions; (5) preparing and filing multiple motions concerning the parties' discovery disputes [ECF Nos. 219; 222; 231; 235; 237]; (6) negotiating a Stipulated Protective Order and subsequent amendments [ECF Nos. 177-178; 217; 224-225; 228-230]; (7) engaging in multiple in-person and telephonic meet and confer conferences with Defendants; and (8) preparing a Freedom of Information Act request to the SEC for documents pertaining to the Tezos ICO.

From August 2018 through October 2019, the parties engaged in a comprehensive fact discovery process. Following a November 22, 2019 mediation, the parties reached an agreement-in-principle to settle the case.

### 2.      The State Litigation

The State Litigation began with a complaint filed by Andrew Baker in San Francisco Superior Court on October 25, 2017, also alleging that the ICO constituted an offering of unregistered securities. *Baker v. Dynamic Ledger Solutions, Inc. et al.,* Superior Court of California,

County Francisco, Case No. CGC-17562144. Defendants removed the case to the U.S. District Court for the Northern District of California where it was ultimately assigned to this Court, prior to consolidation. *GGCC, LLC v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-06779-RS, 2018 WL 1388488, at *1 (N.D. Cal. Mar. 16, 2018). Baker moved to remand the case to California state court.

While the motion to dismiss in the federal case was pending, this Court remanded Baker's complaint to San Francisco Superior Court on April 1, 2018 following the Supreme Court's ruling in *Cyan*, a case that clarified that federal securities cases could be heard in state courts.

Baker then filed a First Amended Complaint which, like the federal case, asserted violations of Sections 5 and 12(a)(1) of the Securities Act, as well as a claim for control person liability under Section 15 of the Securities Act against the same defendants. Baker also began serving discovery requests on DLS.

After the *Cyan* decision, Trigon also filed a new action in San Mateo Superior Court on April 24, 2018 asserting the same securities law claims (violation of Sections 5 and 12(a)(1) of the Securities Act) on behalf of the same class. *Trigon Trading Pty. Ltd., et al. v. Dynamic Ledger Solutions, Inc., et al.*, Superior Court of California, County of San Mateo, Case No. 18CIV02045. DLS and the Draper Defendants moved to stay both the *Baker* and *Trigon* actions, and the courts in both cases stayed the case pending the resolution of a coordination petition filed by Trigon. On August 16, 2018, the Judicial Council ordered the *Baker* and *Trigon* actions coordinated, after which the two actions proceeded in a coordinated manner ("State Coordinated Proceeding"). After the first status conference in the State Coordinated Proceeding held on October 22, 2018, the parties negotiated a protective order and ESI protocol.

Following its lead plaintiff appointment in the instant federal action, Trigon requested dismissal without prejudice from the State Coordinated Proceeding on June 25, 2019, which the court granted on June 26, 2019. Thereafter, and after multiple rounds of demurrer briefing, a

renewed motion to stay, and briefing regarding jurisdiction and service of process on the Tezos Foundation, the parties in the State Coordinated Proceeding joined the federal case parties in the November 22, 2019 mediation and likewise reached an agreement-in-principle to settle the case.

**C.     Settlement Negotiaions**

Throughout this Action, the parties engaged in arm's length settlement discussions. On December 14, 2018, the parties conducted the first mediation in San Francisco, California with Eric Green acting as the mediator. The mediation was unsuccessful.

On November 22, 2019, the parties conducted a second mediation in New York with the assistance of the Hon. Layn Phillips, a former United States District Judge and a well-regarded private mediator with Phillips ADR Enterprises ("Phillips ADR"), who has considerable knowledge and expertise in the field of federal securities law.[6] Prior to this mediation session, Plaintiffs and Defendants exchanged lengthy mediation statements on the salient factual and legal issues expected to arise during the discussions. During the full-day session, the parties presented their respective legal positions in the case, and submitted liability and damages figures and analyses.

During these discussions, the parties discussed damages and the definition and scope of the class, among other things. Ultimately, the parties reached an agreement-in-principle that led to this Settlement. The entire process involved significant disputed issues, and even after an agreement-in-principle had been reached, negotiations about specific terms of the settlement agreement continued.

---

[6] According to the Phillips ADR website, for the last decade, Judge Phillips has presided over cases that have collectively resulted in several billion dollars in settlements annually. As a judge, he presided over more than 140 trials in Oklahoma, New Mexico, and Texas. He also sat by designation on the United States Court of Appeals for the Tenth Circuit in Denver, Colorado, where he participated in numerous panel decisions and published opinions. As a result of his trial work, Judge Phillips was elected into the American College of Trial Lawyers. He has the dual honor of being named by LawDragon Magazine as one of the "Leading Judges in America" and as one of the "Leading Litigation Attorneys in America." In August 2016, Judge Phillips was named as one of the top seven mediators in the United States of America by Chambers and Partners. [*see* http://www.phillipsadr.com/bios/layn-phillips/].

## II.      THE PROPOSED SETTLEMENT

### A.      Settlement Consideration

The Settlement provides that the Tezos Foundation will pay $25 million in cash into an Escrow Account for the benefit of the Settlement Class. This Settlement consideration, after the deduction of any attorneys' fees and Litigation Expenses provided for in the Settlement Agreement or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions (the "Net Settlement Fund"), will be distributed among Settlement Class Members who submit timely and valid Proof of Claim and Release Forms ("Authorized Claimants"), in accordance with the Plan of Allocation set forth in the Notice.

Plaintiffs believe that the proposed Settlement is an excellent recovery on the claims asserted in this Action, and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class.

### B.      Plan of Allocation

Under the Plan of Allocation, the Claims Administrator, selected by Plaintiffs for Court approval after a rigorous competitive proposal process, will calculate each Authorized Claimant's claim amount based on the information supplied in each Person's Proof of Claim and Release. The Net Settlement Fund will be allocated *pro rata* based on the amount of each Authorized Claimant's Recognized Claim as calculated by the Claims Administrator under the Plan of Allocation.

The structure of the Plan of Allocation, which is appended in full to the Notice, allows for the equitable distribution of the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws. The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a *pro rata* basis after determining the Settlement Class Members' Recognized Loss Amounts (based primarily on the difference in the genesis block XTZ price at the time of purchase or acquisition and at the time of

sale). The Plan of Allocation also takes into consideration the form of payment that an Authorized

Claimant used to purchase his/her/its XTZ tokens (i.e., Bitcoin or Ethereum), and, if the claimant

sold the tokens, when the tokens were sold. The Plan of Allocation was determined with the

assistance of Plaintiffs' expert, Chad Coffman, of Global Economics Group. Plaintiffs submit that

the Plan is fair and reasonable and should be approved together with the Settlement at the Settlement

Hearing.

## III.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of The Proposed Settlement

Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*,

955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir.

1998); *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal.

June 13, 2006). Settlements of complex cases greatly contribute to the efficient utilization of scarce

judicial resources and achieve the speedy resolution of justice.

A motion seeking preliminary approval of a settlement agreement in a putative class action

may be granted if, "[1] the proposed settlement appears to be the product of serious, informed,

noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential

treatment to class representatives or segments of the class, and [4] falls with the range of possible

approval ...." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing

*Manual for Complex Litigation*, Second § 30.44 (1985)).[7] Because some of the factors bearing on the

propriety of a settlement cannot be assessed prior to the final approval hearing, "a full fairness

analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

Applying these standards, the Settlement should be preliminarily approved.

---

[7] *See also Fraley v. Facebook, Inc.*, No. CV-11-01726 RS, 2012 WL 6013427, at * 1 (N.D. Cal. Dec. 3, 2012) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects, and was within the range of possible settlement approval); *Satchell v. Federal Express Corp.*, Nos. C 03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same).

1

**1.**    **The Proposed Settlement Is The Product Of Good Faith, Arm's Length Negotiations Among Experienced Counsel Mediated By An Experienced Private Mediator**

2

3       "The involvement of experienced class action counsel and the fact that the settlement

4   agreement was reached in arm's length negotiations, after relevant discovery had taken place creates

5   a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,

6   1997 WL 450064, at *5 (N.D. Cal. July 18, 1997). The procedural history of this Action, as

7   summarized above, clearly reflects an adversarial and contentious relationship among the parties.

8   This Action was filed more than two years ago, and the parties have engaged in vigorous litigation

9   since then, involving extensive motion practice by the parties and comprehensive fact discovery. The

10  Settlement was reached only after a burdensome process of analyzing the evidence and contesting

11  pertinent legal issues.

12      There were numerous issues in this Action that caused the parties to have different views of

13  the settlement value of this case. These issues included: (1) whether the Tezos tokens are securities;

14  (2) whether investors were bound by the so-called "Contribution Terms"; (3) whether Defendants are

15  "sellers" under Section 12(a)(1); (4) whether the Breitmans are controlling persons under Section 15;

16  and (5) whether the Securities Act applies under *Morrison*.

17      The mediation process also demonstrates that the Settlement was hard-fought and negotiated

18  at arm's-length. The fact that the initial mediation session was unsuccessful, and required further

19  negotiations, supports an inference that the Settlement was the product of arm's-length negotiations.

20  *See, e.g., Hicks v. Morgan Stanley,* No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y.

21  Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-

22  length and non-collusive nature.") (citation omitted). Both the first and second mediations were

23  conducted by an experienced mediator. As courts in this district and elsewhere have found, "[t]he

24  assistance of an experienced mediator in the settlement process confirms that the settlement is non-

25  collusive." *Satchell*, 2007 WL 1114010, at *4; *see also In re Indep. Energy Holdings PLC Sec.

26  *Litig.*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that

27  the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a

28

private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citation omitted).

During each of the mediations and follow-up, the parties fully explored the strengths and weaknesses of their respective claims and defenses, as well as the benefits of settlement. Negotiations focused on the highly complex and heavily disputed issues of class size and the proper measure of damages, if any. Estimates of total damages presented by the parties during mediation discussions ranged from less than $1 million to over $150 million US dollars. Throughout this process, Plaintiffs were actively involved and informed of the negotiations.

Courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). In *OmniVision*, the court held that the recommendation of counsel weighed in favor of settlement given their familiarity with the dispute and their significant experience in securities litigation. *Id.; see also Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012); *Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *7 (C.D. Cal. July 21, 2008). Lead Counsel likewise has a thorough understanding of the merits of the Action and extensive experience in securities litigation. Lead Counsels' (and Plaintiffs') recommendation as to the fairness and reasonableness of this Settlement warrants a presumption of reasonableness.

### 2. The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Settlement Class

The Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citation omitted). As discussed above, the $25,000,000 recovery constitutes a significant and certain benefit for Settlement Class

Members. Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as distributions to all other Settlement Class Members, and may also seek reimbursement of their costs and expenses for service as Plaintiffs for the benefit of the Settlement Class, as authorized by the PSLRA. Subject to the approval of the Court, and pursuant to approval of the Federal Plaintiffs, Federal and State Lead Counsel expect to apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed one-third of the Settlement Fund, or $8,333,333. In addition, Lead Counsel will seek payment in an amount not to exceed $300,000 for Litigation Expenses reasonably incurred while prosecuting this action.

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself evidence grounds to doubt its fairness. Rather, the substantial recovery to the Settlement Class, the arm's-length nature of the negotiations, and the participation of sophisticated counsel throughout the Action support a finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to justify notice to the Settlement Class and a hearing on final approval. Federal Plaintiffs respectfully request preliminary approval of the Settlement.

### 3. The Proposed Settlement Falls Well Within The Range Of Reasonableness And Warrants Notice And A Hearing On Final Approval

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (citation omitted). Federal Plaintiffs believe that the proposed $25,000,000 Settlement is an excellent result for the Settlement Class in light of all of the risks of continued litigation, and falls well within a range of what is considered fair, reasonable, and adequate.

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in securities litigation, took into particular account the risks inherent in establishing all of the elements of their claims under the federal securities laws, including in particular recoverable

damages, as well as the expense and likely duration of the Action. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) ("Based on the risk of summary judgment, which defendants had filed before settlement, . . . and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient or is not 'within the range of possible approval.'") (citation omitted).

Plaintiffs agreed to settle this Action on these terms based on its careful investigation and evaluation of the facts and law relating to the allegations in the Complaint and consideration of the facts noted and views expressed by the mediator, Judge Phillips, and Defendants during the settlement negotiations. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795 IEG RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) ("There is no evidence to suggest that the settlement amount is not fair and reasonable. Plaintiffs contend that the Parties engaged in lengthy settlement discussions before two retired judges. Accordingly, the settlement is presumed to be fair.").

In particular, Plaintiffs were aware that Defendants would argue, for instance, that the transactions at issue did not involve "securities" as defined under the federal securities laws, and that such transactions were otherwise exempt from registration. Plaintiffs were also aware that the value of the blockchain assets at issue could rapidly fluctuate. Thus, Plaintiffs knew that, even if they were successful, even after trial and appeals, they might actually recover substantially less than the amount obtained in this Settlement for the benefit of the Settlement Class.

Plaintiffs also took into consideration the immediate cash benefits to Settlement Class Members, the desirability of providing certain and effective relief to Settlement Class Members now, the attendant risks of continuing with complex litigation, and the uncertainty inherent in establishing Defendants' liability and collecting any judgment. Indeed, the risk, expense, complexity and likely duration of further litigation, strongly favor settlement because further litigation would entail substantial risk to the Settlement Class of recovering nothing. There is no doubt that both sides would have to present dense and nuanced information, including in the context of a "battle of the experts." Experts would be required to opine as to the workings of blockchains, accounting issues, causation, and damages.

Additionally, as the Tezos Foundation is based in Switzerland, preparing this case for trial would require Plaintiffs to conduct substantial discovery at great expense and under foreign procedures. The results of the trial would almost certainly not end the Action, as one side would likely appeal, and it is quite possible that both sides would do so in the event that the jury found for the Settlement Class but awarded substantially less than the damages sought. Absent a settlement, Settlement Class Members would have to wait substantially longer before they obtained any relief, even assuming Plaintiffs were successful and overcame every obstacle.

Plaintiffs, having considered the myriad risks of continued litigation, respectfully submit that if the Court preliminarily approves the Settlement, the Court ultimately will find that the Settlement is fair, reasonable, and adequate and is deserving of final approval.

**B.      The Proposed Settlement Meets The Requirements of Fed. R. Civ. P. 23(e)(2)**

Under Fed. R. Civ. P. 23(e)(2), a proposed settlement should be approved only after the Court considers whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

adequate; and (D) the proposal treats class members equitably relative to each other. Each element is met here.

First, the class has been represented adequately pursuant to Fed. R. Civ. P. 23(e)(2)(A). As explained in detail in Section III.C.4, Federal Plaintiffs and Lead Plaintiff have adequately represented the class by, among other things, reviewing the Complaint, participating in discussions with Co-Lead Counsel; supervising and monitoring court procedings; providing input as to strategy; sitting for depositions; and participating in discussions about the resolution of this Action. Co-Lead Counsel have also adequately represented the class in the prosecution of this action, as described in detail below.

Second, as required by Fed. R. Civ. P. 23(e)(2)(B), and as explained in detail in Section I.C, the resolution of this Action was reached at arm's length, including through two mediations, including the ultimately successful mediation with Hon. Layn Phillips on November 22, 2019. *See Hicks*, 2005 WL 2757792, at *5; *Indep. Energy*, 2003 WL 22244676, at *4.

Third, the relief provided to the class is adequate under the factors described in Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii): (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment.

For the reasons described in Section III.A.3, the considerations involved in determining to settle this case took into account the potential costs, risks, and delays associated with trial and appeal.

The payment of claims is also effective. Given the online nature of the claims in this case, payments will be made not only by paper check, but also by wire transfer (including international wire transfer) or through PayPal payment. *See* Settlement Agreement, Ex. A-2 (Claim Form at 4).

Lead Counsel is asking for an award of attorneys' fees not to exceed one-third of the Settlement Amount. This request will be detailed in the Final Approval briefing. No attorneys' fees will be paid until the Court executes the Judgment and an order awarding such fees. *See* Stipulation ¶ 7.2. The Ninth Circuit and numerous district courts have awarded fees of one-third of the

settlement in complex class action cases. *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash settlement in consumer class action); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming a fee award of one-third of a $12 million settlement fund in derivative and securities class actions); *In re Banc of Cal. Sec. Litig.*, No. SA CV 17-118-DMG (DFMx), 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund in securities class action); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW-FFMx, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) (approving 33.3% fee award on settlement of $2.05 million in securities class action); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% fee award on settlement of $3.5 million in securities class action); *Tawfilis v. Allergan, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding one-third of $13.45 million settlement fund in antitrust class action); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (approving 33.3% fee award on settlement of $1.525 million in securities class action); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (awarding one-third of $5,800,000 in FLSA case); *In re Heritage Bond Litig.*, No. CV 01-5752 DT (RCX), 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding one-third of a $27.78 million settlement fund in securities class action). Each of these factors supports a finding that the relief provided to the class is adequate.

Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed Settlement in light of any agreement required to be identified under Rule 23(e)(3). Here, the Parties have entered into one fully disclosed agreement that: "If Persons who would otherwise be Settlement Class Members have timely requested exclusion from this Settlement in accordance with the Notice, the Foundation shall have the option to terminate the Settlement in the event that Settlement Class Members representing more than 5% of all XTZ tokens allocated in the Tezos genesis block (i.e. 38,000,000 of XTZ tokens) exclude themselves from the Class." *See* Stipulation ¶ 8.4. This agreement is fully disclosed as part of the notice materials. *See* Notice at 18. The public disclosure of

1   this provision complies with the Court's Order in *In re OCZ Technology Group, Inc. Sec. Litig.*, No.

2   12-cv-05265-RS (N.D. Cal. Arp. 9, 2015) (ECF No. 96 at 2) (citing *In re Chiron Corp. Sec. Litig.*,

3   2007 WL 4249902, at *9-11 (N.D. Cal. Nov. 30, 2007).

4   **C.      The Proposed Settlement Class Also Meets The Prerequisites For Class Certification
         Under Rule 23**

5

6            The Ninth Circuit has long recognized that class actions may be certified for the purpose of

7   settlement only. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998). Rule 23(a) sets forth the

8   following four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality,

9   and (iv) adequacy of representation. In addition, the class must meet one of the three requirements of

10  Rule 23(b). *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C 04- 04908 JW, 2010 WL

11  1945737, at *9 (N.D. Cal. May 12, 2010).

12           The proposed Settlement Class is defined in the Stipulation:

13

14       All persons and entities who, directly or through an intermediary, contributed bitcoin
         and/or ether to what Plaintiffs describe as the Tezos blockhain "Initial Coin Offering"
15       and what Defendants describe as a fundraiser conducted between July 1, 2017 and July
         13, 2017, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii)
16       members of the immediate family of Arthur Breitman, Kathleen Breitman, Johann
         Gevers, or Timothy Draper; (iii) any person who was an officer or director of the
17       Foundation, DLS, Draper Associates, or Bitcoin Suisse during the Fundraiser and any
         members of their immediate families; (iv) any parent, subsidiary, or affiliate of the
18       Foundation, DLS, Draper Associates, or Bitcoin Suisse; (v) any firm, trust, corporation,
         or other entity in which any Defendant or any other excluded person or entity had a
19       controlling interest during the Fundraiser; and (vi) the legal representatives, agents,
         affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or
20       entities. Also excluded from the Settlement Class are those Persons who timely and
         validly request exclusion.
21

22  *See* Stipulation ¶ 1.28.

23           Courts routinely endorse the use of the class action device to resolve claims brought under

24  the federal securities laws. *See*, *e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D. 259, 266 (N.D. Cal.

25  2011); *In re Cooper Cos. Inc. Sec. Litig.,* 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass actions

26  commonly arise in securities fraud cases as the claims of separate investors are often too small to

27

28

1
2
3
4
5
6
7

justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (same). This Action is no exception, and Federal Plaintiffs submit that the proposed Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

8

      **1.**        **Numerosity**

9
10
11
12
13
14
15
16
17
18
19
20
21
22

      Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Indeed, classes consisting of 25 members have been held to be large enough to justify certification. *See Perez-Funez v. Dist. Director, I.N.S.,* 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also Welling v. Alexy,* 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set number cut-off for numerosity). Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Welling*, 155 F.R.D. at 656*; see also Schwartz v. Harp,* 108 F.R.D. 279, 281-282 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

23
24
25
26
27
28

      In this case, there were 30,317 investors (or wallets that were funded) in the Tezos ICO during the two-week period in July 2017. ¶¶ 78, 131. A class of this size is sufficiently numerous to make individual joinder impracticable. *See UTStarcom*, 2010 WL 1945737, at *4; *Yamner v. Boich,* No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994). Thus, the numerosity element is satisfied.

### 2. Commonality

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *Wehner v. Syntex Corp.,* 117 F.R.D. 641, 644 (N.D. Cal. 1987). Further, commonality exists even if there are varying fact situations among individual members of the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975).

The common questions of fact and law include: (a) Whether the offer of the Tezos tokens through the Tezos ICO constituted the offer and sale of "securities"; (b) Whether Defendants were required to file a registration statement for the Tezos ICO; (c) Whether Defendants are sellers under Section 12(a)(1) of the Securities Act; (d) Whether the Breitmans are "controlling persons" under the Securities Act; and (e) Whether Plaintiffs and the Class are entitled to rescission, or damages, and the proper calculation and amount of those damages.

Each of these questions focuses on Defendants' conduct and their Class-wide impact, making the core factual and legal issues subject to common proof. *Portal*, 2007 WL 1991529, at *3 (commonality found where "[a]ll class members' claims share[d] … common questions of law and fact"); *Basile v. Valeant Pharm. Int'l., Inc.*, No. SACV 14-2004-DOC (KES), 2017 WL 3641591, at *11 (C.D. Cal. Mar. 15, 2017). The commonality requirement is therefore satisfied.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (common-issues test readily met in securities cases). However, differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.,* 764 F. Supp. 598, 606 (N.D. Cal. 1991). In other

words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.,* 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *see also West*, 2006 WL 1652598, at *5.

Here, the claims of Federal Plaintiffs arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory. *See UTStarcom*, 2010 WL 1945737, at *5 (explaining that the test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Indeed, this case satisfies the Rule 23(a)(3) typicality requirement because the claims of all Settlement Class Members derive from the same legal theories and allege the same set of operative facts. Federal Plaintiffs' claims, like the claims of the rest of the Class, are all based on Defendants' sale of unregistered securities, and Plaintiffs' purchases of Tezos tokens, in the July 2017 Tezos ICO. The legal and factual arguments that Plaintiffs advance regarding Defendants' liability are the same as the arguments that other Class members would advance in support of their claims. Thus, the typicality requirement is satisfied.

Further, the proof that Federal Plaintiffs would present to establish their claims also would prove the claims of the rest of the Settlement Class. Additionally, Plaintiffs are not subject to any unique defenses that could make them atypical members of the prospective Settlement Class. Therefore, Lead Counsel respectfully submit that this Court should find that Plaintiffs' claims are typical of the claims of the Settlement Class. *See Akeena Solar*, 274 F.R.D. at 266-67; *Cooper*, 254 F.R.D. at 635-36.

### 4.    Adequacy

The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that they will fairly and adequately protect the interests of the Settlement Class. To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020. In the Ninth Circuit, resolution of "two questions" determines legal adequacy: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (quoting *Hanlon*, 150 F.3d at 1020). The adequacy requirement is satisfied here.

As described above, Plaintiffs have claims that are typical of and coextensive with those of the Settlement Class. Plaintiffs, like all Settlement Class Members, invested Ethereum and/or Bitcoin in the Tezos ICO and were promised delivery of a corresponding amount of Tezos tokens. The other members of the Class also contributed either Bitcoin or Ethereum, and were promised corresponding amounts of Tezos tokens. Plaintiffs and the proposed Class members were all sold unregistered securities in violation of the Securities Act. Thus, Plaintiffs' interest in establishing Defendants' liability and obtaining appropriate relief is aligned with the interests of absent Class members.

Plaintiffs have also demonstrated their willingness and ability to serve as Class Representatives. Among other responsibilities during the litigation so far, Plaintiffs have: (1) reviewed the Complaint, and approved their addition as named plaintiffs to this litigation; (2) participated in numerous discussions with Co-Lead Counsel; and (3) supervised and monitored the progress of court proceedings, including providing input as to strategy. In addition, two of the Federal Plaintiffs, Pumaro LLC and Artiom Frunze, attended full-day despositions that were taken

1   by Defendants. In order to have his deposition taken, Mr. Frunze was required to travel from

2   overseas to San Francisco. In short, Plaintiffs have demonstrated that they are "'familiar with the

3   basis for the suit and their responsibilities,'" and Plaintiffs' willingness and ability to perform these

4   duties satisfies the "modest burden" of Rule 23(a)(4). *LendingClub*, 282 F. Supp. 3d at 1182

5   (citations omitted). Further, Plaintiffs have retained counsel highly experienced in securities class

6   action litigation and who have successfully prosecuted many securities and other complex class

7   actions throughout the United States.[8] Thus, Plaintiffs are adequate representatives of the Settlement

8   Class, and their counsel are qualified, experienced and capable of prosecuting this Action, in

9   satisfaction of Rule 23(a)(4).

10

### 5. Common Questions of Law Predominate And A Class Action Is the Superior Method Of Adjudication

11

12          In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3),

13   which requires that the proposed class representative establish that common questions of law or fact

14   predominate over individual questions, and that a class action is superior to other available methods

15   of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re*

16   *LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. C 09–02338

17   RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)]

18   encompasses 'those cases in which a class action would achieve economies of time, effort, and

19   expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

20   procedural fairness or bringing about other undesirable results'") (quoting Fed. Civ. P. 23 1966

21   advisory committee's note). Notably, Rule 23(a)(2)'s commonality requirement does not require that

22   "every question in the case, or even a preponderance of questions, is capable of class wide

23

24

25

26

27          [8] *See* Exhibits A-E to the Declaration of Jacob A. Walker in Support of the Motion for Preliminary Approval.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks and citation omitted). "So long as there is even a single common question, a would- be class can satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (internal quotation marks and citation omitted).

Common questions of law and fact predominate and a class action is clearly the superior method available to fairly and efficiently litigate this securities action.[9] "[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 345 (N.D. Ohio 2001). Further, the superiority of class actions in large securities cases is well recognized. *See Amchem,* 521 U.S. at 625 (finding common questions predominated in securities class action certified for settlement).

---

[9] When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under Rule 23(b)(3) may be relaxed because the Court does not need to consider the difficulties of managing the class in any future litigation or at trial. *See, e.g., Ybarrondo v. NCO Fin. Sys., Inc.,* No. 05cv2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 477 (E.D. Cal. 2010). Indeed, courts have certified class actions for settlement purposes even where certification was or likely would have been denied for litigation purposes. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that included § 11 claimants who had been excluded from the litigation class on grounds of "predominance") (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were intertwined and "because the litigation was no longer going to trial, manageability was no longer an issue, and the 'predominance defect [] no longer fatal'")); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class in antitrust case despite noting serious questions about whether a litigation class could be certified; finding "that the fact of settlement is relevant to the decision to certify a class" and that "Courts have, thus, certified classes at the settlement stage noting that such a certification does not present the same problems that certification of a litigation class proposing the same class definition would present"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying a settlement class bringing state law fraud claims; recognizing that a "manageability problem" was rendered moot by the settlement, and thus was not a bar to class certification in the settlement context); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying a settlement class despite having previously ruled that predominance requirement was not met; the settlement context mooted the court's concerns that calculation of individual damages would overwhelm common issues in the litigation); *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) ("[W]hen taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As discussed above, there are a number of common questions of law and fact that would warrant class certification of this matter. These questions clearly predominate over individual questions because Defendants' alleged conduct affected all Settlement Class Members in the same manner. Indeed, issues relating to Defendants' liability are common to all Members of the Settlement Class. *See LDK Solar*, 255 F.R.D. at 530; *UTStarcom*, 2010 WL 1945737, at *9 (same); *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class.").

Whether the Tezos tokens are securities, whether Defendants are "sellers" under Section 12(a)(1), whether the Breitmans are controlling persons under Section 15, and whether the Securities Act applies under *Morrison* are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010). Likewise, here, Defendant's alleged sale of unregistered securities "affect[ed] [all] investors alike" and proof that the Tezos tokens were securities will "be made on a class-wide basis*." Id.* at 685, 687; *Cooper*, 254 F.R.D. at 641. As a result, common questions of law and fact predominate.

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Federal Plaintiffs as class representatives, and appointing Lead Counsel as counsel for the Settlement Class. *See, e.g.*, *Wahl v. Am. Sec. Ins. Co.*, No. C08-00555-RS, 2011 U.S. Dist. LEXIS 59559, at *5-6 (N.D. Cal. June 2, 2011) (class certified for settlement purposes); *Gittin v. KCI USA, Inc.*, No 09-CV-05843 RS, 2011 WL 1467360, at *1 (N.D. Cal. Apr. 12, 2011) (same).

1

2

**D.      The Court Should Approve The Form Of Notice And Plan For Providing Notice To The Settlement Class**

3

The Court should approve the form and content of the proposed Notice and Summary Notice.

4

*See* Settlement Agreement, Exs. A-1 and A-3. The Notice is written in plain language and features a

5

question-and-answer format that clearly sets out the relevant information and answers most questions

6

Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice

7

objectively and neutrally apprises the nature of the Action, the definition of the Settlement Class, the

8

claims and issues, that the Court will exclude from the Settlement Class any Settlement Class

9

Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the

10

binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3), among other

11

disclosures.

12

With respect to items relating to the Settlement, the Notice also satisfies the separate

13

disclosure requirements imposed by the PSLRA. It states the amount of the settlement proposed to be

14

distributed to the parties; provides a statement from each party concerning the issues about which the

15

parties disagree; states the amount of attorney's fees and Litigation Expenses that Lead Counsel will

16

seek; provides the names, addresses, and telephone numbers of Lead Counsel, who will be available

17

to answer questions from Settlement Class Members; and provides a brief statement explaining the

18

reasons why the parties are proposing the Settlement. *See* 15 U.S.C. §78u-4(a)(7); *In re Tyco Int'l,*

19

*Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 258 (D.N.H. 2007) (discussing adequacy of notice and

20

PSLRA disclosure requirements).

21

Additionally, the Notice discloses the date, time, and location of the Settlement Hearing and

22

the procedures and deadlines for the submission of Proof of Claim and Release Forms and objections

23

to any aspect of the Settlement, Plan of Allocation, or attorney's fees and Litigation Expenses to be

24

sought by Lead Counsel. These disclosures are complete and should be approved by the Court. *See*

25

26

27

28

1  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice

2  that stated the settlement terms and plan of allocation, estimated potential recovery at trial, revealed

3  maximum request for attorney's fees and identified contact information of relevant attorneys).

4  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best

5  notice that is practicable under the circumstances, including individual notice to all members who

6  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1)

7  requires the court to "direct notice in a reasonable manner to all class members who would be

8  bound" by a proposed settlement, voluntary dismissal, or compromise. Fed. R. Civ. P. 23(e)(1). The

9  proposed notice program, which is set forth in the Preliminary Approval Order submitted herewith,

10  readily meets these standards. Particularly, given the unique, online-only nature of this case, the

11  notice program uses electronic mail for distribution of the notice, and provides an electronic claim

12  form which can be completed online.

13  The proposed settlement adminnistator is Epiq Class Actions & Claims Solutions, Inc., an

14  experienced and diligent settlement and claims administrator ("Epiq" or the "Claims

15  Administrator"). Lead Counsel distributed a request for proposal ("RFP") and received bid proposals

16  from six potential settlement administrators. Given the unique characteristics of the Settlement Class

17  Members, the RFP specifically requested that in addition to all normal and customary services,

18  proposals should provide information on the settlement administrator's ability to:

- Conduct individual notice entirely electronically;
- Run targeted online ads, including on *Reddit* and *Twitter*;
- Allow for claims forms to be completed entirely online with electronic signature ability;
- Provide an option for Claimants to receive electronic payment;
- Work with Settlement Class Members residing outside of the United States; and
- Conduct any necessary "Know Your Customer / Anti-Money Laundering" verification.

The estimates for the bid proposals received ranged from $132,556 to $300,000. Lead Counsel ultimately selected Epiq based on a combination of their estimated costs and fees, willingness to set a firm cap on costs and fees, and experience with international claims and electronic notice methods. Epiq's ability to offer international phone numbers and to allow all claims to be completed electronically, including by providing for international bank wires is particularly useful here, as Settlement Class Members invested in the ICO online. Epiq's estimated costs and fees are $7,231 and $134,420, respectively. Epiq has agreed to a firm cap on costs and fees of $170,000, or less than one perecent of the $25 million Settlement Amount. Lead Counsel believes the costs and fees are reasonable in relation to the value of the Settlement. The costs and fees will be paid out of the Net Settlement Fund.[10]

The Tezos Foundation will work in good faith to provide the Claims Administrator with information about the potential Settlement Class Members sufficient to allow claims to be verified and for the purpose of identifying and giving notice to the Settlement Class. The Claims Administrator will then promptly use reasonable efforts to send the Notice, including the Plan of Allocation and Proof of Claim and Release, to Persons who contributed to the Tezos blockchain ICO/fundraiser by electronic mail.

This Action is unique in that Settlement Class Members are spread throughout the world and contributed to the ICO electronically. Lead Counsel is unaware of previous securities settlements that are substantially similar to the Settlement here. Nonetheless, Epiq estimates that of the 30,317 potential Settlement Class Members, approximately 7,579 will submit claim forms. Lead Cousnel and Epiq have developed a plan to ensure that notice reaches the most potential Settlement Class

---

[10] Co-Lead Counsel Block & Leviton has not had any engagements with Epiq in the last two years. In 2017, Block & Leviton engaged Epiq as the claims administrator in *In re Amicus Therapeutics, Inc. Securities Litigation*, No. 3:15-cv-7350-PGS-DEA (D.N.J.); that engagement ended in the last year.

Members as possible. Notably, in addition to the electronic mail notice, Epiq will engage in a targeted marketing campaign on *Twitter*, *Reddit*, and *Google Display Network*. Epiq will also advertise the Settlement on *Baidu Display Network*, which will target potential Settlement Class Members in China.

The proposed notice program detailed above fulfills the requirements of due process because the proposed Notice alerts and informs those Members of the Settlement Class who can be identified through reasonable efforts. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (approving use of email notice); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving notice program that distributed notice packets to individual investors and nominees and published summary notice in national newspaper and wire services).

The Summary Notice, to be sent via e-mail to all Settlement Class Members, provides an abbreviated but informative description of the Action and the proposed Settlement, and also explains how to obtain the more detailed Notice, with hyperlinks to the settlement website. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g., Portal,* 2007 WL 1991529, at *7 (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)"); *In re Sorbates Direct Purchaser Antitrust Litig.,* Nos. C 98-4886MMC et al., 2002 WL 31655191, at *1 (N.D. Cal. Nov. 15, 2002); *see also West*, 2006 WL 1652598, at *11 (settlement notice that explains to class members what their options are is more than adequate).

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement. The parties respectfully propose the following schedule for the Court's consideration, as set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | No later than 10 business days after entry of Preliminary Approval Order |
| Deadline for beginning advertising program and publishing summary notice over newswire | No later than 10 business days after Notice Date |
| Deadline for filing final approval papers | 30 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | As soon as practicable 84 days after signing the Preliminary Approval Order |
| Deadline for submitting Proof of Claim and Release Forms | 120 calendar days after the Notice Date |

## IV.    CONCLUSION

For the foregoing reasons, Federal Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement, certify the Settlement Class for settlement purposes, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement and submitted herewith.

1    March 20, 2020                              Respectfully submitted,

2
                                                 /s/ Jacob A. Walker
3                                                Jeffrey C. Block (pro hac vice)
                                                 Jacob A. Walker (SBN 271217)
4                                                **Block & Leviton LLP**
                                                 260 Franklin Street, Suite 1860
5                                                Boston, Massachusetts 02110
                                                 (617) 398-5600 phone
6                                                jeff@blockesq.com
                                                 jake@blockesq.com
7
                                                 *Co-Lead Counsel and Counsel to*
8                                                *Lead Plaintiff Trigon Trading Pty. Ltd.*

9                                                /s/ Hung G. Ta
                                                 Hung G. Ta, pro hac vice
10                                               JooYun Kim, pro hac vice
                                                 **Hung G. Ta., Esq. PLLC**
11                                               250 Park Avenue, 7th Floor
                                                 New York, NY 10177 (646) 453-7288
12                                               hta@hgtlaw.com
                                                 jooyun@hgtlaw.com
13
                                                 *Co-Lead Counsel and Counsel to*
14                                               *Plaintiffs Pumaro LLC, Artiom Frunze,*
                                                 *Hayden Hsiung, and Gijs Matser*
15
                                                 Danielle Smith (291237)
16                                               Reed R. Smith (139304)
                                                 **Hagens Berman Sobol Shapiro LLP**
17                                               715 Hearst Ave., Suite 202
                                                 Berkeley, CA  94710
18                                               Telephone: (510) 725-3000
                                                 Facsimile:  (510) 725-3001
19                                               reed@hbsslaw.com
                                                 danielles@hbsslaw.com
20
                                                 Steve W. Berman
21                                               **Hagens Berman Sobol Shapiro LLP**
                                                 1301 Second Avenue, Suite 2000
22                                               Seattle, WA  98101
                                                 Telephone: (206) 623-7292
23                                               Facsimile:  (206) 623-0594
                                                 steve@hbsslaw.com
24
                                                 *Additional Counsel to*
25                                               *Lead Plaintiff Trigon Trading Pty. Ltd.*

26                                               Enoch H. Liang
27                                               **LTL Attorneys LLP**
                                                 601 Gateway Boulevard, Suite 1010
                                                 South San Francisco, CA 94080
28

1

(650) 422-2130
enoch.liang@ltlattorneys.com

2

James M. Lee

3

Caleb H. Liang
**LTL Attorneys LLP**

4

300 S. Grand Ave., 14th Floor
Los Angeles, CA 90071

5

(212) 612-8900 phone
james.lee@ltlattorneys.com

6

caleb.liang@ltlattorneys.com

7

*Additional Counsel to Plaintiffs*
*Pumaro LLC, Artiom Frunze,*

8

*Hayden Hsiung, and Gijs Matser*

9

**CERTIFICATE OF SERVICE**

10

I hereby certify that on March 20, 2020, I authorized the electronic filing of the foregoing with the

Clerk of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the

11

United States of America that the foregoing is true and correct.

12

/s/ Jacob A. Walker
Jacob A. Walker

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28