Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com
joel@blockesq.com

Hung G. Ta (SBN 331458)
JooYun Kim (*pro hac vice*)
**HUNG G. TA, ESQ. PLLC**
250 Park Avenue, 7th Floor
New York, NY 10017
(646) 453-7288 phone
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

*Co-Lead Counsel*

[Additional counsel listed on signature block]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No.  17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| ALL ACTIONS. | |
| | Date:      August 27, 2020 |
| | Time:      1:30 p.m. |
| | Courtroom:  3, 17th floor |
| | Judge:      Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..................................................................................................... 1

PRELIMINARY STATEMENT ....................................................................................... 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ............................................. 4

ARGUMENT .................................................................................................................. 5

I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
    UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED ............ 5

    A.  The Standards for Final Approval of Class Action Settlements .............................. 5

    B.  Application of the Ninth Circuit's Factors Supports Final Approval of the
        Settlement ..................................................................................................... 7

        1.  The Strength of Lead Plaintiff's Case on the Merits and the Risks
            Associated with Continued Litigation............................................................. 7

            (a)  Risks Related to Establishing an Injury to Class Members................. 8

            (b)  Risks Related to the Application of the U.S. Securities Laws .......... 11

            (c)  Risks Concerning the Contribution Terms ....................................... 12

        2.  The Complexity, Expense, and Likely Duration of Further Litigation........ 12

        3.  The Risk of Maintaining Class-Action Status Throughout Trial ................ 14

        4.  The Amount Offered in the Settlement.......................................................... 15

        5.  The Extent of Discovery Completed and the Stage of the Proceedings ...... 17

        6.  The Experience and Views of Counsel ......................................................... 18

        7.  The Presence of a Governmental Participant ................................................ 18

        8.  Reaction of the Settlement Class to Date...................................................... 19

    C.  The Factors Set Forth in Rule 23(e) also Support the Approval of the
        Settlement as Fair, Reasonable, and Adequate......................................................... 20

        1.  Plaintiffs and Co-Lead Counsel Have Adequately Represented the
            Settlement Class ............................................................................................. 20

        2.  The Settlement Is the Result of Arm's-Length Negotiations....................... 21

        3.  The Relief Provided to the Settlement Class Is Adequate ............................ 21

        4.  The Settlement Treats Class Members Equitably Relative to Each
            Other................................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II.    THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE
       AND SHOULD BE APPROVED .................................................................................. 23

III.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE
       SETTLEMENT CLASS .......................................................................................... 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Invest.*,
189 F.3d 1017 (9th Cir. 1999) ..................................................................................9

*Churchill Vill. L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...............................................................................6, 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..........................................................................5, 7, 23

*Destefano v. Zynga Inc.*,
No. 12-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................................13, 17

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ......................18

*Garner v. State Farm Mut. Auto Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................6

*Harris v. Best Buy Stores, L.P.*,
No. 17-CV00446-HSG, 2018 WL 3932178 (N.D. Cal. Aug. 16, 2018) ..............................14

*Hicks v. Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...........................21

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...........................21

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .............................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................6, 8, 15, 17

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ..................................................................................19

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................................15, 16, 18, 23

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015).........................................................................6

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................11

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)....................16

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..........................................................................................6

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...........................16

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir. 1980) ........................................................................................19

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010) ........................................................................3, 11, 12, 15

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................18

*Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6,
  2014) .................................................................................................................................10

*Officers for Justice v. Civil Serv. Comm'r*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................................5, 6, 7

*Redwen v. Sino Clean Energy, Inc.*,
  No. 11-3936, 2013 WL 12303367 (C.D. Cal. July 9, 2013) ....................................18, 23

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................................................18

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ..............................................................................................6

*United Housing Foundation, Inc. v. Forman*,
  421 U.S. 837 (1975) ........................................................................................................11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ............................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..............................................................................................15

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................25

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................15

Fed. R. Civ. P. 23(e) ....................................................................................................2, 6, 8

Fed. R. Civ. P. 23(e)(2) ..................................................................................................7, 20

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................................20

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................21

Fed. R. Civ. P. 23(e)(2)(C) .....................................................................................21, 25

Fed. R. Civ. P. 23(e)(3) ..................................................................................................23

Fed. R. Civ. P. 23(f) .......................................................................................................15

Fed. R. Civ. P 23(b)(3) .............................................................................................14, 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2020, at 1:30 p.m., or as soon thereafter as it may be heard, Lead Plaintiff Trigon Trading Pty. Ltd. ("Trigon" or "Federal Lead Plaintiff"), and plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Matser (collectively, the "Federal Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, will move this Court for orders, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final approval of the proposed Settlement of this Action; (ii) approving the proposed Plan of Allocation for the net proceeds of the Settlement; and (iii) finally certifying the Settlement Class, for settlement purposes only.

This motion is supported by the following memorandum of points and authorities; the accompanying Declaration of Jeffrey C. Block in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, dated July 28, 2020 ("Block Declaration" or " Block Decl."), and the exhibits attached thereto; and the Stipulation of Settlement dated March 16, 2020 ("Settlement Agreement" or "Stipulation"), and exhibits thereto which embody the terms of the proposed settlement between the parties.[1]

A proposed Judgment and proposed Order approving the Plan of Allocation and awarding attorneys' fees will be submitted with Plaintiffs' reply submission on August 21, 2020, after the August 6, 2020  deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement and/or Plan of Allocation has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Court should grant final approval to the proposed class action Settlement;

2.  Whether the Court should approve the proposed Plan of Allocation for distributing

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning ascribed to them in the Stipulation and in Lead Plaintiffs' Notice of Motion, Motion for Preliminary Approval of Settlement, and Memorandum of Points and Authorities in Support Thereof, ECF No. 246.

1    the proceeds of the Settlement to eligible Settlement Class Members.

2        3.       Whether the Court should finally certify the Settlement Class under Rules 23(a)

3    and 23(b)(3), for purposes of the Settlement.

4                    **MEMORANDUM OF POINTS AND AUTHORITIES**

5        Lead Plaintiff Trigon Trading Pty. Ltd. and named Plaintiffs Pumaro LLC, Artiom Frunze,

6    Hayden Hsiung, and Gijs Matser respectfully submit this memorandum of points and authorities

7    in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e), requesting final

8    approval of the proposed Settlement of this Action, and approval of the proposed Plan of

9    Allocation.

10                          **PRELIMINARY STATEMENT**

11       The factual background and claims, as well as the procedural history of this Action and the

12   related State Litigation, are set forth in Lead Plaintiff's Notice of Motion, Motion for Preliminary

13   Approval of Settlement, and Memorandum of Points and Authorities in Support Thereof, filed on

14   March 20, 2020, ECF No. 246, and are incorporated herein. Under the Settlement, Defendant

15   Tezos Foundation, and Defendants Arthur Breitman and Kathleen Breitman (collectively, the

16   "Breitmans") have agreed to pay $25,000,000 in cash to settle the claims in the Action and related

17   claims that could have been brought ("Released Claims"). The terms of the Settlement are set forth

18   in the Stipulation, which was previously filed with the Court. ECF No. 246-1.

19       As discussed herein, Plaintiffs estimated that the maximum recoverable damages, under

20   the best-case-scenario, if Plaintiffs prevailed on all issues through trials and appeals, and using a

21   set of entirely Plaintiff-friendly assumptions, was $150 million *at most*. The $25 million settlement

22   represents more than 16% of best-case, maximum recoverable damages and, when considering all

23   the attendant risks of continued litigation in this Action, represents an excellent result for the

24   Settlement Class.

25       As described below and in the accompanying Block Declaration, the decision to settle was

26   well-informed by more than two years of hard-fought litigation that involved a comprehensive

27   investigation; preparation of a detailed consolidated complaint; briefing on Defendants' motions

28   to dismiss; extensive discovery; analysis of damages issues; and a hard-fought settlement process

with experienced defense counsel that involved two mediations facilitated by two well-known mediators. *See generally* Block Decl. ¶ 4.

There were significant risks to Plaintiffs and the class in continuing to prosecute the action:

*First*, if the Action were to proceed today, the majority of class members would be unlikely to establish they are entitled to recoverable damages, and the provable damages would be significantly less than Plaintiffs' estimated maximum recoverable damages of $150 million. Under the Tezos ICO, investors paid Bitcoin and Ethereum, valued at $232 million US Dollars in July 2017 prices, in return for Tezos tokens. Since the date of the Tezos ICO, the Tezos tokens have become freely-traded and the value of the Tezos tokens received by the Settlement Class has fluctuated widely. In fact, for considerable periods of time, prices of the Tezos tokens have *exceeded* the value of the consideration paid in the ICO, thereby reducing the number of potential claims and the size of potential recoverable damages against Defendants. Indeed, since November 25, 2019, when the parties agreed in principle to the Settlement, Tezos tokens have increased substantially in value and are now trading *significantly* above the value of the consideration paid by Settlement Class Members in the ICO. In short, if the Action were to go to trial today, no member of the Settlement Class who is still holding the Tezos tokens would have any incentive to seek rescission or would otherwise be damaged under Section 12(a)(1) of the Securities Act because the current value of the Tezos tokens exceeds the consideration paid in the ICO.

*Second*, Plaintiffs faced jurisdictional challenges including establishing the applicability of the Securities Act, under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), to investors in the Tezos ICO. In the Tezos ICO, the majority of investors were non-U.S. residents who made their investments while located overseas.

*Third*, Defendants have consistently argued that the Contribution Terms that governed the Tezos ICO included forum selection and class action waiver provisions and that investors had actual notice of these terms. If found applicable by the Court, these provisions would not only bar this Action, but the individualized question of actual notice of the Contribution Terms would be a high hurdle to clear in having a class certified.

Lead Plaintiff and Co-Lead Counsel, as well as state plaintiff Andrew Baker ("State Plaintiff") and State Lead Counsel,[2] were cognizant of these and other risks when entering into the Settlement. Viewed against the amounts raised in the Tezos ICO (then valued at $232 million), and the fact that many Settlement Class Members have not in fact suffered actual damages as of today based on the increased value of XTZ, the Settlement is very favorable. Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.[3] In addition, the Plan of Allocation, which seeks to achieve an equitable, *pro rata* distribution to members of the Settlement Class, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

On May 1, 2020, the Court entered an order preliminarily approving the Settlement, and approving the proposed forms and methods of providing notice to the Settlement Class (the "Preliminary Approval Order"). ECF No. 250.  Pursuant to and in compliance with the Preliminary Approval Order, and based on records maintained by Defendants, beginning on May 29, 2020, the Court-appointed Claims Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), caused the Notice to be e-mailed to all potential Settlement Class Members. *See* Declaration of Nicholas Schmidt Regarding (A) Electronic Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Online Case Website Advertisements; (D) Call Center Services; (E) Posting of Notice and Claim Form on Settlement Website; and (F) Report on Objections or Requests for Exclusion Received to Date, dated July 28, 2020, ¶ 5 ("Schmidt Decl.") (attached to the Block Declaration as Exhibit 1). A total of 118,979 Notice Packets have been e-mailed as of June 18, 2020 (emails sent twice to approximately 59,500 addresses). *Id*. ¶¶ 5, 7. On June 1, 2020, the Summary Notice was published in PR Newswire. *Id*. ¶8. The Notice and

---

[2] State Lead Counsel are Taylor-Copeland Law, and Robbins Geller Rudman & Dowd LLP. Additional information concerning the State Litigation is set forth in the Declaration of James Taylor-Copeland in Support of Lead Counsel's Motion for Final Approval of Class Action Settlement and Plan of Allocation, filed concurrently herewith.

[3] State Plaintiff also believes the Settlement to be in the best interests of the Class and thus supports final approval of the Settlement.

Claim Form were also posted on www.TezosFoundationSettlement.com ("Settlement Website"). *Id*. ¶ 11. On June 1, 2020, the Claims Administrator caused advertisements to begin running on websites associated with Tezos and cryptocurrency in general, including on Twitter, Reddit, the Google Display Network, and the Baidu Display Network. *Id*. ¶ 6. These advertisements contained links to the Settlement Website. *Id*.

The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Settlement Class. *See generally* Schmidt Decl. Ex. B, Notice. The Notice also stated the deadlines for objecting, seeking exclusion and submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court. *Id*. To date, the Settlement Class's reaction to the proposed Settlement has been positive.  While the deadline (August 6, 2020) for requesting exclusion or objecting to the Settlement has not yet passed, to date there have been only two requests for exclusion, no objections to the proposed Settlement, and no objections to the Plan of Allocation. Schmidt Decl. ¶¶ 14, 16.[4]

## **ARGUMENT**

## I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED

### A.     The Standards for Final Approval of Class Action Settlements

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "there is an overriding public interest in settling and quieting litigations," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976). Class action suits readily lend

---

[4] Should any objections or additional requests for exclusion be received, Lead Plaintiff will address them in its reply papers, which are due to be filed with the Court on August 21, 2020. The reply papers will also include information about the claims submitted.

themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See*, *e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 998 (N.D. Cal. 2015). In making this determination, courts in the Ninth Circuit consider and balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice,* 688 F.2d at 625 (same). Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in a court's decision to approve a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The determination of whether a settlement is fair, adequate, and reasonable is committed to the Court's sound discretion. *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)). In applying the pertinent factors, the Court need not reach conclusions about the merits of the case. *See Officers for Justice*, 688 F.2d at 625 ("[T]he

settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). The Court's discretion in assessing the fairness of the settlement is also circumscribed by "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney*, 151 F.3d at 1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

Additionally, under the recent amendments to Rule 23(e)(2), a proposed settlement should be approved by the Court as "fair, reasonable, and adequate" only after considering the following four factors, most of which overlap with the factors already considered by the Ninth Circuit:

(A)   whether the class representatives and class counsel have adequately represented the class;

(B)   whether the proposal was negotiated at arm's length;

(C)   whether the relief provided for the class is adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;

    ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.   the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)   whether the proposal treats class members equitably relative to each other.

For the reasons discussed below and in Lead Counsel's Fee and Expense Application, the proposed Settlement satisfies both the requirements stated by the Ninth Circuit and expressly set forth in Rule 23(e).

**B.   Application of the Ninth Circuit's Factors Supports Final Approval of the Settlement**

**1.   The Strength of Lead Plaintiff's Case on the Merits and the Risks Associated with Continued Litigation**

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the risks of continued litigation against the benefits afforded to class members and

1   the certainty of a recovery. *See Mego*, 213 F.3d at 458. Although Lead Plaintiff believes that the

2   case against Defendants is strong, that confidence must be tempered by the fact that the Settlement

3   is certain and that every case involves the risk of no recovery, particularly in a complex case such

4   as this one. There is no question that to prevail here, Lead Plaintiff would have confronted a

5   number of significant legal and factual challenges, challenges that the Court itself highlighted in

6   its decision on Defendants' motions to dismiss. ECF No. 148.[5]

7   **(a)        Risks Related to Establishing an Injury to Class Members**

8       The principal risk of continued litigation was establishing damages and an injury to the

9   members of the Settlement Class. Although Plaintiffs estimated the best-case, maximum

10  recoverable damages to be $150 million, actual damages were likely to be significantly lower.

11      In the Tezos ICO, Defendants denominated the price of XTZ tokens at 0.0002 BTC.  *See*

12  Block Decl., ¶ 49 & Ex. 16, Contribution Terms, ¶ 28 ("[o]ne XTZ shall be allocated for the

13  amount … of 0.0002 BTC"). Put differently, one Bitcoin purchased 5,000 XTZ tokens (and with

14  bonuses, as much as 6,000 XTZ tokens). Investors paid for their XTZ tokens using either Bitcoin

15  or Ethereum, but in the case of those paying with Ethereum, the Ethereum was first converted to

16  the Bitcoin equivalent at the exchange rate prevailing at the time of purchase. *Id*. ¶ 25 (the

17  contribution software system "will record the equivalent value of Contributions in BTC. The BTC

18  equivalent for ETH shall be calculated using the historical exchange rate of BTC/ETH at

19  approximately the time of the ETH Contribution, calculated by TEZOS"). The Tezos blockchain

20  became active in September 2018. Block Decl. ¶ 50.  XTZ were then listed on numerous

21  cryptocurrency exchanges, and a liquid, global market for XTZ trading developed by the time of

22  the Settlement. *Id*.  The vast majority of ICO investors claimed their XTZ and were trading their

23  XTZ for more than a year before the date on which the Settlement was reached, November 25,

24  2019. *Id*.

25      For considerable periods of time since the commencement of this Action, including the

26  period since the Settlement in principle on November 25, 2019, the value of an XTZ token,

27

28  ─────────────────────
    [5] State Plaintiff would have faced similar challenges.

1    measured in Bitcoin, ***was higher than the value of Bitcoin paid*** to purchase the XTZ token in the

2    Tezos ICO. Block Decl. ¶ 51. For example, as of the date of filing of this motion, 6,000 XTZ were

3    worth $17,100, whereas one BTC was worth considerably less, at $10,948. *Id*. As a result, many

4    Class members who have already sold did not suffer a loss and have suffered no damages because

5    they received back more Bitcoin from their sale than they paid in Bitcoin to purchase their XTZ.

6    With respect to any Settlement Class Member who has not sold but still retains their XTZ,

7    these investors also do not currently have a loss on their XTZ investments. Because XTZ trades at

8    higher prices than the Bitcoin paid to purchase them, these investors would have no incentive to

9    rescind their purchases of XTZ tokens, but instead would be incentivized to retain their XTZ tokens

10   or sell them on the cryptocurrency exchanges. *See, e.g., Ambassador Hotel Co., Ltd. v. Wei-Chuan*

11   *Invest.*, 189 F.3d 1017, 1031 (9th Cir. 1999) (holding that plaintiff "may not receive the full

12   purchase price of the stock and also retain the stock itself").

13   Accordingly, a significant risk of continued litigation is an ever-shrinking group of

14   members of the Settlement Class who have no damages. Of the approximately 30,000 members of

15   the Settlement Class, the *only* class members who could prove an injury are: (a) those investors

16   who sold at a loss (*i.e.*, received back less Bitcoin when they sold their XTZ, than the amount of

17   Bitcoin that they paid); and (b) those investors who never received any tokens (for example,

18   because they were unable to complete the Tezos Foundation's "know-your customer"

19   requirements, or due to lost passwords), and therefore would have an incentive to seek rescission.

20   All other class members, including those who had sold at a profit, or who are still holding their

21   XTZ tokens, will be unable to establish damages or will not have an incentive to seek rescission.

22   Furthermore, the Tezos blockchain allowed owners of XTZ to "bake" their tokens on the

23   blockchain, and receive additional XTZ as rewards, in a manner similar to "dividends." Block

24   Decl. ¶ 54. Numerous XTZ holders commenced baking upon receiving their tokens, and

25   Defendants would claim that such investors, by engaging in baking and the receipt of XTZ baking

26   rewards, waived their right to rescind. Defendants would also argue that such dividends further

27   diminished the actual damages suffered by investors, to the extent there were any damages at all.

28

1       The risks were even greater, and the number of injured class members would have been

2  even fewer, if Defendants' proposed models of calculating damages were accepted. Defendants

3  argued in the Joint Case Management Statement that the damages should be calculated by

4  comparing the *U.S. dollar* value of the consideration paid for the XTZ tokens, with the U.S. dollar

5  value of the XTZ tokens when sold. ECF No. 162, at 5:24-26. Under this measure, there would be

6  almost no damages at all, because, at almost all relevant times since the Tezos ICO, XTZ tokens

7  have traded at a higher dollar value than the amount paid to acquire the tokens at the time of the

8  ICO. Block Decl. ¶ 55. Effectively, this would leave, as injured Class members, just those investors

9  who have not been able to access their tokens.

10      As an alternative measure, Defendants also argued that damages should be calculated based

11  not on the Bitcoin or Bitcoin-equivalent contributed in the Tezos ICO, but on the actual

12  consideration that investors used to make their investment. This would have meant that investors

13  who used Ethereum to purchase their XTZ would not be able to establish an injury. At the time of

14  the ICO in July 2017, it cost approximately 10 Ethereum to purchase 5,000 XTZ. *Id*. ¶ 56. Just

15  before the Settlement was concluded in principle, the value of 5,000 XTZ was worth

16  approximately $7,000, whereas 10 Ethereum was worth approximately $1500 *Id*. As Defendants

17  made clear in the Joint Case Management Statement submitted to the Court, Defendants intended

18  to argue that Ethereum investors were not damaged at all given that the value of XTZ post-ICO

19  always exceeded the value of invested Ethereum. ECF No. 162, at 5:20-24. As alleged in the

20  consolidated Complaint, Ethereum investors accounted for 37.5% of the investments in the Tezos

21  ICO. ECF No. 108, ¶ 78.

22      Undoubtedly Defendants would have vigorously contested Plaintiffs' proposed damages

23  methodology and issues relating to damages would come down to a "battle of the experts," where

24  it would be impossible to predict with any certainty which arguments would find favor with a jury.

25  *See*, *e.g.*, *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL

26  1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving

27  and calculating damages required a complex analysis, requiring the jury to parse divergent

28  positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is

1   inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns Sec. Litig.*,

2   618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible

3   to predict with any certainty which testimony would be credited, and ultimately, which damages

4   would be found to have been caused by actionable, rather than the myriad nonactionable factors

5   such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

6               **(b)      Risks Related to the Application of the U.S. Securities Laws**

7               Had litigation progressed, Defendants would have argued that XTZ was not a security.

8   While Plaintiffs believe that the weight of authority confirms that XTZ was a security, Plaintiffs

9   recognized that establishing XTZ as a security posed challenges given that the investment in

10  question involved a novel cryptocurrency issued on a functioning, automated blockchain. For

11  example, Defendants would have argued that Tezos investors were motivated not by a desire to

12  make an investment with the intention to make a profit off the efforts of others, but by a desire to

13  participate in the XTZ network, "a desire to use or consume the item purchased." *United Housing*

14  *Foundation, Inc. v. Forman,* 421 U.S. 837, 852-53 (1975). While Plaintiffs believe that discovery

15  would have proven the fundamentally "investment"-driven nature of payments to purchase XTZ,

16  there was a possibility that a fact finder might agree with Defendants' argument.

17              Another risk posed to Plaintiffs was that, under *Morrison v. National Australia Bank Ltd.*,

18  561 U.S. 247 (2010), the Securities Act might be held not to apply to the Tezos ICO because

19  Defendants did not incur "irrevocable liability" to deliver the XTZ tokens to non-U.S. purchasers

20  in the U.S. In denying Defendants' motion to dismiss and holding that irrevocable liability was

21  incurred in the U.S., regardless of the location of Tezos investors, the Court premised its decision

22  on, among other factors, that the server hosting Defendants' ICO investment website was located

23  in Arizona. ECF No. 148, at 9:17, 14:6-16. Discovery revealed, however, that the Arizona server

24  was controlled by a company called Cloudflare, a "Content Delivery Network" service that

25  Defendants used to relay copies of their ICO website through geographically distributed access

26  points in order to ensure faster access by users in different locations around the world. The Arizona

27  server itself, however, did not host the original ICO website. Block Decl. ¶ 60. According to

28

1  Defendants' discovery responses, the primary, original "Contribution Software System" was

2  hosted on Amazon Web Services cloud data centers in or around Frankfurt, Germany. *Id.*

3  While these additional facts did not on their face foreclose the application of the Securities

4  Act to the Tezos ICO, they added layers of risk and complexity to the case. To counter this

5  argument, Plaintiffs would have had to establish that irrevocable liability was incurred when the

6  Tezos ICO investments were recorded on the blockchain, and that the blockchains that purchasers

7  used to purchase XTZ were hosted and operated on computers that were to a large extent housed

8  within U.S. borders and reliant on U.S.-dominated internet infrastructure. *Id.* ¶ 61. Nevertheless,

9  the risk remained that, under *Morrison*, the Securities Act might not cover a large portion of the

10  proposed class.

11  **(c)      Risks Concerning the Contribution Terms**

12  While the Court rejected Defendants' arguments concerning the application of the

13  Contribution Terms at the pleading stage, the Court's decision made clear that "evidence of …

14  'actual knowledge' of the agreement may provide the Foundation with an alternate method of

15  breathing life into the Contribution Terms." ECF No. 148, at 12:10-19. In the Joint Case

16  Management Statement, Defendants telegraphed their intention to argue that, with respect to any

17  plaintiffs who "reviewed the Contribution Terms" prior to investing, the "case would be subject to

18  dismissal in deference to proceedings in Switzerland, based on the forum-selection clause in the

19  Contribution Terms." ECF No. 162, at 13:1-6. While Plaintiffs continued to argue that the

20  Contribution Terms were invalid as a matter of law, because they were not incorporated by

21  reference on the Tezos ICO investment website, Defendants nevertheless successfully applied to

22  this Court to obtain discovery into the Lead Plaintiff's actual knowledge of the Contribution

23  Terms. ECF No. 165, at 1. As set forth below, Defendants also would have asserted this issue at

24  the class certification stage, arguing that the question of actual knowledge entailed individualized

25  inquiries that made the proposed class incohesive.

26  **2.      The Complexity, Expense, and Likely Duration of Further Litigation**

27  The complexity, expense, and likely duration of continued litigation all strongly weigh in

28  favor of approval of the Settlement. *See Churchill*, 361 F.3d at 576 (citing risk, expense,

1  complexity, and likely duration of further litigation as factors supporting final approval of

2  settlement). "Generally, unless the settlement is clearly inadequate, its acceptance and approval

3  are preferable to lengthy and expensive litigation with uncertain results." *In re Linkedin User*

4  *Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (citation omitted).

5      Given the nature of Tezos tokens, this litigation presented novel legal and factual issues

6  making this case more complex than a typical securities class action. Besides the damages issues

7  already discussed above, each side's experts would be required to opine as to the workings of

8  blockchains, the internet, and whether the transactions involved "securities" as defined under the

9  federal securities laws. The complexity of the case drives up the expense and uncertainty of further

10 litigation.

11     This expense and uncertainty are compounded by the fact that Defendant Tezos

12 Foundation, the entity that maintained custody of investors' investments in the Tezos ICO, is based

13 in Switzerland. Preparing this case for trial would require Plaintiffs to conduct substantial

14 discovery at great expense and under foreign procedures. For example, throughout the discovery

15 process, the Tezos Foundation consistently objected to discovery requests on the basis that it was

16 based in Switzerland, and that Swiss, European, and other non-U.S. laws related to personal data

17 and privacy barred it from producing discovery. Block Decl. ¶ 34.

18     Absent a settlement, class members would undoubtedly have to wait years before obtaining

19 any relief, even in a best-case scenario. Further litigation would entail additional discovery, pre-

20 trial motions (including class certification and summary judgment), preparing and trying the case,

21 post-trial motion practice, and appeals of the Court's rulings by one or both sides, all of which

22 would take considerable time and cost millions of additional dollars. Following trial and after

23 exhausting all appeals, Plaintiffs would then have to enforce a U.S. judgment against the Tezos

24 Foundation in Switzerland, which the Tezos Foundation has asserted it would vigorously oppose.

25 The end result may be no better for the Settlement Class and may be worse, including the risk that

26 the Settlement Class recovers nothing. *See Destefano v. Zynga Inc.,* No. 12-04007-JSC, 2016 WL

27 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("continuing litigation would not only be costly –

28 representing expenses that would take away from any ultimate classwide recovery – but would

1    also delay resolution and recovery for Settlement Class Members").  In contrast, the Settlement

2    provides immediate cash benefits and certain and sizeable relief to Settlement Class now, without

3    exposing Settlement Class members to the risks and uncertainty of continuing with complex

4    litigation.

5         Thus, the complexity, expense and duration of further litigation weighs strongly in favor

6    of final approval of the Settlement.

7         **3.        The Risk of Maintaining Class-Action Status Throughout Trial**

8         Plaintiffs also faced potential challenges in maintaining this Action as a class action

9    through trial. As discussed above, Defendants would have argued that whether individual investors

10   had actual notice of the Contribution Terms, and were therefore bound by the forum selection

11   clause contained therein, is an individualized question that supersedes any common questions and

12   precludes class certification. *See* Rule 23(b)(3); *Harris v. Best Buy Stores, L.P.*, No. 17-CV00446-

13   HSG, 2018 WL 3932178, at *5 (N.D. Cal. Aug. 16, 2018) ("'individualized inquiries' are

14   inappropriate for certification under Rule 23(b)(3)").  Despite denying Defendants' motion to

15   dismiss as it related to the applicability of the Contribution Terms, the Court itself noted that this

16   "may ultimately prove to be fleeting procedural mercy." ECF. No. 148, at 12:17-18.

17        Moreover, as reflected in the Joint Case Management Statement (ECF. No. 162, at 15:12-

18   20) and in Defendants' discovery requests, Defendants intended to argue that the Action did not

19   enjoy the support of the Class, that the majority of class members wanted to keep their XTZ tokens,

20   and therefore that Lead Plaintiff and the named Plaintiffs were inadequate representatives of the

21   class. *Id* (raising question "whether members of the Class want this litigation to continue.").

22        Plaintiffs believe they had strong arguments to counter Defendants' expected attacks as to

23   why a class should not be certified. Plaintiffs would assert that investors in XTZ tokens were not

24   bound by the Contribution Terms, because those terms were not incorporated by reference and

25   therefore, as a matter of law, class members could not have consented to them. Plaintiffs also

26   would argue that any class member who did not support the Action could simply opt out, as

27   permitted under Rule 23(c)(2)(B).

28

Nevertheless, even if the Court did certify the Action under Rule 23, there was a risk that the Court might certify a significantly smaller class than sought by Plaintiffs, one that excluded non-U.S. investors under *Morrison*. Under Rule 23(c)(1)(C), the Court's decision to grant certification "may be altered or amended before final judgment." *See also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Furthermore, even if the Court were to grant class certification, the Court's decision would be subject to interlocutory appeal under Rule 23(f). Defendants would almost certainly file such an appeal due to the novel issues raised in class certification (*e.g.*, the applicability of U.S. securities laws to a global issuance of digital tokens using multiple transnational blockchain networks). Such an appeal would have taken years to resolve, with the risk that the Ninth Circuit might reverse the Court's grant of class certification.

The risk of not maintaining class certification status throughout trial therefore supports final approval of the Settlement.

### 4.  The Amount Offered in the Settlement

In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (citation omitted). Indeed, "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]..." *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

In light of the potential recovery at trial and the risks of continued litigation, the proposed $25 million Settlement is well within the range of reasonableness. Estimates of total damages presented by the parties during mediation discussions ranged from less than $1 million to a best-case-scenario, plaintiff-friendly model which estimated a maximum of $150 million US dollars. Block Decl. ¶ 58. However, as set forth above, the frequent periods of time during which XTZ

traded at higher values than the Bitcoin consideration paid for the tokens (including the period since the Settlement was reached in principle on November 25, 2019) meant that the number of injured investors was constantly decreasing, and therefore that the settlement value of this Action was steadily moving towards the lower end of the Parties' range of damages. *Supra* at Section I.B.1.(a). As such, the $25 million represented an excellent result because of the potential that any judgment at trial could have been significantly lower.

The $25 million Settlement is also favorable when compared with prior settlements approved in the Ninth Circuit. Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved numerous settlements that recovered a similar, or smaller, percentage of maximum damages. *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements") (citation omitted); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years). The Settlement also presents a favorable recovery considering that, from January 2009 to December 2018, median securities settlement values have ranged from $6 million to $13 million. *See* S. Boettrich & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019), at 30.

Here, the entire offering was $232 million, measured in US Dollars. A $25 million recovery, with all the attendant risks involving in this case, representing just over 10% of the entire offering proceeds in US Dollars, is an excellent result. Plus, Plaintiffs estimated maximum recoverable damages (measuring damages in Bitcoin, and making all assumptions in favor of

1   plaintiffs) was $150 million. The $25 million settlement represents more than 16% of maximum

2   recoverable damages, a highly favorable result for a securities class action.

3       Accordingly, Lead Plaintiff and Co-Lead Counsel respectfully submit that the Settlement

4   is a highly favorable result that falls well within the range of reasonableness.

5       **5.      The Extent of Discovery Completed and the Stage of the Proceedings**

6       The stage of the proceedings and the amount of discovery completed are also factors courts

7   consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213

8   F.3d at 459.  This factor, too, weighs in favor of approval of the Settlement.

9       This Action has been vigorously contested since its inception more than two and a half

10  years ago.  At the time the parties agreed to settle, Plaintiffs and Co-Lead Counsel had developed

11  a detailed and realistic understanding of the strengths and weaknesses of the claims and defenses

12  asserted. This knowledge was based on, among other things, Co-Lead Counsel's investigation

13  before filing a comprehensive consolidated amended complaint; the briefing and orders on

14  Defendants' motions to dismiss; the review and analysis of more than 20,900 pages of documents

15  produced by Defendants; the review of additional documents and other information produced by

16  third parties, including entities involved in providing web-hosting services for the Tezos ICO; Co-

17  Lead Counsel's understanding of Defendants' strategy and theories based on their depositions of

18  the named Plaintiffs; consultations with experts on the functions of the blockchain; an additional

19  core set of documents produced by Defendants in connection with the mediation; and extensive

20  settlement negotiations, including two all-day mediation sessions where the parties' claims and

21  defenses were fully articulated, including via the exchange of detailed mediation statements. *See*

22  Block Decl. ¶ 40.

23      In sum, Plaintiffs and their counsel possessed a firm understanding of the likelihood of

24  success and the potential recovery at trial at the time the Settlement was concluded. *See Zynga*,

25  2016 WL 537946, at *12 (noting that the extent of discovery completed and stage of proceedings

26  supports final approval of settlement where plaintiffs engaged in a pre-filing investigation,

27  opposed defendants' motions to dismiss and a motion for reconsideration, worked with

28  consultants, propounded and responded to some discovery, and prepared and participated in

mediation session); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.*, No. 11-3936, 2013 WL 12303367, at *7 (C.D. Cal. July 9, 2013) (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

This factor therefore also supports final approval of the Settlement.

### 6.      The Experience and Views of Counsel

The Settlement is a product of experienced counsel negotiating at arm's length.  As the Ninth Circuit stated in *Rodriguez v. West Publishing Corporation*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d 948, 965 (9th Cir. 2009). Courts accord "great weight…to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004); *accord Omnivision*, 559 F. Supp. 2d at 1043 ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'") (citation omitted).

Co-Lead Counsel have many years of combined experience in securities and class action litigation. S*ee* Block Decl. ¶ 79 & Exs. 2-9 (Firm Resumes). After a careful evaluation of the risks, burdens, and expense of continued litigation, including the appeals and post-judgment proceedings if Plaintiffs won a favorable verdict at trial, and the difficulties of recovering against well-funded foreign Defendants, Co-Lead Counsel concluded that the Settlement is fair, adequate, and reasonable, and a highly favorable outcome for the Settlement Class. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.  Thus, this factor weighs strongly in favor of approval of the Settlement.

### 7.      The Presence of a Governmental Participant

The seventh factor also militates in favor of approval of the Settlement.  Here, there was no governmental participant in the Action, and the SEC has not filed any enforcement action

1    against Defendants. This meant that the Settlement is the only recovery for the Settlement Class

2    Members who suffered losses as a result of the Tezos ICO. Thus, this factor also supports approval

3    of the Settlement.

4    **8.       Reaction of the Settlement Class to Date**

5    The Ninth Circuit has held that notice must be "reasonably calculated, under all the

6    circumstances, to apprise interested parties of the pendency of the action and afford them an

7    opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351

8    (9th Cir. 1980) (citation omitted). The Ninth Circuit has also ruled that the objection deadline

9    should fall after motions in support of approval and attorneys' fees and expenses have been filed.

10   *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (requiring

11   that fee motion be made available to the class before the deadline for objecting to the fee).

12   Here, the Notice provided to the Class readily meets these standards. As discussed above,

13   pursuant to this Court's Preliminary Approval Order, the Court-approved Notice and Claim Form

14   were sent to potential Settlement Class Members who could be identified with reasonable effort.

15   *See* Schmidt Decl. ¶ 5. The Summary Notice was published in PR Newswire. *Id*. ¶ 8.  Additionally,

16   the Stipulation, Notice, Claim Form, and Preliminary Approval Order, among other documents,

17   were posted to the website dedicated to the Settlement. *Id*. ¶ 11. The Notice advised the Settlement

18   Class of the terms of the Settlement, the Plan of Allocation, and the maximum amount of Lead

19   Counsel's request for an award of attorneys' fees and expenses, as well as the procedure and

20   deadline for filing objections and opting out of the Settlement Class.  *See generally Id*. Ex. B

21   Notice.  The Notice advised the Settlement Class that any objections to the Settlement were to be

22   received no later than August 6, 2020, after the date of filing of this motion.

23   To date, 118,979 Notices have been emailed to potential Settlement Class Members.

24   Schmidt Decl. ¶¶ 5, 7. While the objection/exclusion deadline of August 6, 2020 has not yet passed,

25   no objections and only two exclusion requests have been received to date. *Id*. ¶¶ 14, 16.

26

27

28

**C.    The Factors Set Forth in Rule 23(e) also Support the Approval of the Settlement as Fair, Reasonable, and Adequate**

The proposed Settlement satisfies the requirements set forth in Rule 23(e)(2). Most of these requirements overlap with the Ninth Circuit factors already discussed above.

**1.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class pursuant to Rule 23(e)(2)(A).

As set forth in the previously filed motion for preliminary approval, Plaintiffs have claims that are typical of and coextensive with those of the Settlement Class. Plaintiffs, like all Settlement Class Members, invested Bitcoin and/or Ethereum in the Tezos ICO and were promised delivery of a corresponding amount of Tezos tokens. Plaintiffs and Settlement Class Members were all allegedly sold unregistered securities in violation of the Securities Act. Thus, Plaintiffs' interest in establishing Defendants' liability and maximizing recovery from Defendants aligns with the interest of all Settlement Class Members. *See* ECF No. 246.

Plaintiffs have also diligently represented the interests of the Settlement Class. Plaintiffs: (1) reviewed the Complaint, and approved their inclusion as Lead Plaintiff and as named plaintiffs to this Action; (2) participated in numerous discussions with Co-Lead Counsel throughout the Action; (3) supervised and monitored the progress of court proceedings, including providing input as to strategy; (4) actively participated in discovery, by providing discovery responses to numerous document requests and interrogatories, and in the case of Federal Plaintiffs, Pumaro LLC and Artiom Frunze, by attending full-day depositions that were taken by Defendants; and (5) participated in the settlement process and provided instructions for the resolution of this Action. Plaintiffs therefore had an informed understanding of the strengths and weaknesses of the claims, and support the Settlement. *See* Block Decl. ¶ 98 & Exs. 10-15 (Plaintiff Declarations).

Further, Plaintiffs have retained counsel knowledgeable and experienced in securities class action litigation and who have successfully prosecuted many securities and other complex class actions throughout the United States.  *See* Block Decl. ¶ 79 & Exs. 2-9 (Firm Resumes).

Thus, this factor clearly supports approval of the Settlement.

1

### 2.    The Settlement Is the Result of Arm's-Length Negotiations

2    As required by Rule 23(e)(2)(B), and as explained above, the Settlement was the result of

3   extensive arm's-length negotiations. *Supra*, Section I.B.5. Specifically, the Settlement was reached

4   after two mediations between the parties, conducted on December 14, 2018 and on November 22,

5   2019, that were facilitated by two different mediators (Professor Eric Green and the Hon. Layn

6   Phillips, respectively).  *See Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5

7   (S.D.N.Y. Oct. 24, 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS),

8   2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).   This factor clearly weighs in favor of

9   approval of the Settlement.

10

### 3.    The Relief Provided to the Settlement Class Is Adequate

11    Rule 23(e)(2)(C) requires the Court to consider a number of factors to determine whether

12   "the relief provided for the class is adequate."

13    Rule 23(e)(2)(C)(i) relates to whether the relief is adequate, taking into account "the costs,

14   risks, and delay of trial and appeal," and is discussed *supra*, Section I.B.1-3.

15    Rule 23(e)(2)(C)(ii) relates to whether the relief is adequate, taking into account the

16   "effectiveness of any proposed method of distributing relief to the class, including the method of

17   processing class-member claims."  As set forth in the section discussing the proposed Plan of

18   Allocation below, the proceeds of the Settlement will be distributed to Settlement Class Members

19   who submit valid and timely claims.  Using the formulas contained in the Plan of Allocation, the

20   Claims Administrator will calculate claimants' Recognized Claims using the transactional

21   information provided by claimants in their Claim Forms, which can be mailed to the Claims

22   Administrator, submitted online using the settlement website, or submitted via e-mail to the Claims

23   Administrator's electronic filing team. The Claims Administrator will then determine each eligible

24   claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total

25   "Recognized Claim," compared to the aggregate Recognized Claims of all eligible claimants.

26    Once the Claims Administrator has processed all submitted claims, notified claimants of

27   deficiencies or ineligibility, processed responses, and made claim determinations, distributions

28

will be made to eligible claimants using wires, PayPal, and checks. Schmidt Decl., Ex. B, Claim Form at 4.

After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of uncashed checks or otherwise), after at least six (6) months from the date of initial distribution, Co-Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. *See* Stipulation ¶ 6.8. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, if any, will be contributed to a not-for-profit charitable organization serving the public interest that is not affiliated with Plaintiffs or co-Lead Counsel, subject to Court approval.

During the Preliminary Approval Hearing, the Court asked for specific details about the recipient of any funds that are not feasible or economical to reallocate. Plaintiffs' Counsel determined to recommend any non-distributable residual balance be contributed to the San Francisco Food Bank d/b/a San Francisco-Marin Food Bank, a 501(c)(3) not-for-profit organization. Notice of this election was posted to the Settlement Website on July 23, 2020. Schmidt Decl. ¶ 12.

Rule 23(e)(2)(C)(iii) relates to whether the relief is adequate, taking into account the terms of any proposed award of attorneys' fees. This factor is addressed in Lead Counsel's accompanying Fee and Expense Application. Lead Counsel seeks an award of attorneys' fees and expenses pursuant to the common fund doctrine and the request is fully within the discretion of the Court, was not negotiated with Defendants, and is separate from the Settlement.  Any fees and expenses that are awarded by the Court are payable upon award.

Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed Settlement in light of any agreement required to be identified under Rule 23(e)(3). Here, the Parties have entered into one fully disclosed agreement that: "If Persons who would otherwise be Settlement Class Members have timely requested exclusion from this Settlement in accordance

with the Notice, the Foundation shall have the option to terminate the Settlement in the event that Settlement Class Members representing more than 5% of all XTZ tokens allocated in the Tezos genesis block (i.e. 38,000,000 of XTZ tokens) exclude themselves from the Class." *See* Stipulation ¶ 8.4. This was fully disclosed as part of the notice materials. *See* Notice at 18.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats all Class members equitably relative to each other. As discussed *supra*, in the Tezos ICO, the price of XTZ tokens was denominated in Bitcoin, and investors were allocated XTZ tokens based on the amount of Bitcoin invested. As explained below, Section II, under the Plan of Allocation, Recognized Losses will be calculated in the same manner for all investors, based on the Bitcoin or Bitcoin-equivalent consideration that investors paid. For all injured investors with a Recognized Loss, Settlement payments will be distributed to investors *pro rata*, based on the relative amounts of their losses calculated in Bitcoin.

\* \* \*

In sum, each of the relevant factors for considering approval of a class action settlement fully supports a finding that the Settlement here is fair, reasonable, and adequate.

## II.   THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED

The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs*, 955 F.2d at 1284; *Omnivision*, 559 F. Supp. 2d at 1045. An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at \*11 (C.D. Cal. June 10, 2005). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at \*8 (citation and internal quotation marks omitted).

Here, Plaintiffs prepared the Plan of Allocation after careful consideration of Plaintiffs' theories of liability and damages.  *Supra*, Section I.B.5.  Plaintiffs retained and consulted with economic expert Chad Coffman of Global Economics Group to opine on the creation of the Plan of Allocation. Block Decl. ¶ 63. The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan.  *See* Schmidt Decl. ¶ 16.

The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a pro rata basis after determining the Settlement Class Members' Recognized Loss Amounts. Investors who sold their tokens prior to the date the Parties concluded a Settlement in principle are assigned a recognized loss based on any loss suffered in the sale of their tokens, measured in Bitcoin. *See* Schmidt Decl. Ex. B, Notice at 11, ¶ 5(i). Investors who held their tokens at the time of the Settlement in principle were entitled to a Recognized Loss calculated based on the BTC/XTZ price at the time the Settlement was reached (*i.e.*, 0.000178 BTC/XTZ), but in no event is any investor in this category entitled to less than 0.00001 BTC per XTZ, to account for surrendering any future right to a recessionary remedy should the value of XTZ become significantly lower. *See Id.* at 11, ¶ 5(ii). Finally, investors who have never claimed their tokens—and who through this Settlement and claims process agreed to never attempt to claim those tokens in the future—were assigned a Recognized Loss equal to their investment or contribution during the ICO, measured in Bitcoin. *See Id.* at 11, ¶ 5(iii). The Plan of Allocation then provides a *pro rata* distribution based on each claimant's Recognized Loss.

Accordingly, for all of the reasons set forth herein and in the Block Declaration, it is respectfully submitted that the Plan of Allocation is fair, reasonable and adequate and should be approved, and that the Settlement satisfies the proposed approval criteria set forth in Rule 23(e)(2)(C)(ii).

## III.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The Court previously granted preliminary certification to the Settlement Class under Rules 23(a) and (b)(3).  ECF No. 251, at 2. Because nothing has occurred since then to cast doubt on the

propriety of class certification for settlement purposes, and no objections have been received to date, the Court should grant final class certification.

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation as fair, reasonable, and adequate; and (iii) finally certify the Settlement Class, for settlement purposes only.

Dated: July 28, 2020             Respectfully submitted,


/s/ Jeffrey C. Block
Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
joel@blockesq.com
jake@blockesq.com

*Co-Lead Counsel and Counsel to
Lead Plaintiff Trigon Trading Pty. Ltd.*

/s/ Hung G. Ta
Hung G. Ta, (SBN 331458)
JooYun Kim, *pro hac vice*
**Hung G. Ta., Esq. PLLC**
250 Park Avenue, 7th Floor
New York, NY 10177 (646) 453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel and Counsel to
Plaintiffs Pumaro LLC, Artiom Frunze,
Hayden Hsiung, and Gijs Matser*

Danielle Smith (291237)
Reed R. Smith (139304)
**Hagens Berman Sobol Shapiro LLP**
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
**Hagens Berman Sobol Shapiro LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

1

Facsimile:  (206) 623-0594
steve@hbsslaw.com

2

3

*Additional Counsel to*
*Lead Plaintiff Trigon Trading Pty. Ltd.*

4

5

Enoch H. Liang
**LTL Attorneys LLP**
601 Gateway Boulevard, Suite 1010
South San Francisco, CA 94080
(650) 422-2130
enoch.liang@ltlattorneys.com

6

7

8

9

James M. Lee
Caleb H. Liang
**LTL Attorneys LLP**
300 S. Grand Ave., 14th Floor
Los Angeles, CA 90071
(212) 612-8900 phone
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

10

11

12

13

14

William R. Restis (SBN 246823)
**The Restis Law Firm, P.C.**
402 West Broadway, Suite 1520
San Diego, CA 92101
(619) 270-8383
william@restislaw.com

15

16

17

18

Joseph J. DePalma (*pro hac vice*)
Bruce D. Greenberg (*pro hac vice*)
**Lite DePalma Greenberg, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000 phone
jdepalma@litedepalma.com
bgreenberg@litedepalma.com

19

20

21

22

23

*Additional Counsel to Plaintiffs*
*Pumaro LLC, Artiom Frunze,*
*Hayden Hsiung, and Gijs Matser*

24

25

26

27

28