Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com
joel@blockesq.com

Hung G. Ta (SBN 331458)
JooYun Kim (*pro hac vice*)
**HUNG G. TA, ESQ. PLLC**
250 Park Avenue, 7th Floor
New York, NY 10017
(646) 453-7288 phone
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*                    *Co-Lead Counsel*

*[Additional counsel listed on signature block]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | No. 3:17-cv-06779-RS (Consolidated) |
| This document relates to: | **CLASS ACTION** |
| ALL ACTIONS | **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES AND CHARGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Hearing Date: Hearing Time: Courtroom: 3, 17th Floor Judge: Hon. Richard Seeborg |

1

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION .......................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

I.      PRELIMINARY STATEMENT ............................................................................... 2

II.     ARGUMENT ......................................................................................................... 5

        A.     Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund They Obtained .... 5

        B.     The Court Should Award Attorneys' Fees Based on the Percentage-of-the-Recovery Method ................................................................................................. 6

        C.     The Requested Fee is Reasonable ............................................................... 8

               1.     The Results Achieved ......................................................................... 9

               2.     The Substantial Risks of the Litigation Support the Fee Request ................. 11

               3.     The Skill Required and Quality of Work Performed Support the Fee Request ........................................................................................... 12

               4.     The Contingent Nature of the Fee Supports the Fee Request ...................... 14

               5.     A One-Third Fee Award Is Consistent with the Market Rate in Similar Complex, Contingent Litigation ............................................................ 16

        D.     A Lodestar Crosscheck Confirms the Reasonableness of the Fees Sought ............. 17

        E.     Plaintiffs' Counsel's Expenses are Reasonable and Should be Approved ............... 18

        F.     An Award Should Be Granted to Lead Plaintiffs ............................................ 19

III.    CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Ams. Mining Corp. v. Theriault*,
   51 A.3d 1213 (Del. 2012) ...............................................................................13, 14

*Armes v. Hot Pizzas, LLC*,
   No. CV-16-01152-PHX-JJT, 2017 U.S. Dist. LEXIS 89920, (D. Ariz. June 9,
   2017) ..........................................................................................................................6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ...................................................................................................6

*Bickley v. Schneider Nat'l Carriers, Inc.*,
   No. 4:08-cv-05806-JSW, 2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) .................9, 16

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...............................................................................................6, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...............................................................................................5, 6

*Buccellato v. AT&T Operations, Inc.*,
   No. 5:10-cv-00463-JW, 2011 WL 3348055 (N.D. Cal. June 30, 2011) .................17, 20

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ..................................................................................7

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012)..................................................................................7

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015).....................................................................................15

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994).....................................................................................7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994)..........................................................................................18

*In re Activision Blizzard, Inc S'holder Litig.*,
   124 A.3d 1025 (Del. Ch. 2015)..................................................................................12

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................8, 9

*In re Apollo Grp. Inc. Sec. Litig.*,
   No. 04-cv-2147-PHX, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ..........................16

*In re Atossa Genetics, Inc. Sec. Litig.*,
   No. 13-cv-01836-RSM, 2018 WL 3546176 (W.D. Wash. July 20, 2018) ...................16

*In re Audioeye, Inc., Sec. Litig.,*
No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Airz. May 8, 2017)..................................16

*In re Banc of California Sec. Litig.,*
No. SA CV 17-118 DMG (DFMx), 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)....................16

*In re Bluetooth Headset Prods. Liability Litig.,*
654 F.3d 935 (9th Cir. 2011).......................................................................................7, 17

*In re Brocade Sec. Litig.,*
No. 3:05-cv-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) ..........................................17

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .........................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
No. M:02-cv-01486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007)..................................11

*In re Equity Funding Corp. Sec. Litig.,*
438 F. Supp. 1303 (C.D. Cal. 1977)......................................................................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)......................................................................................................7

*In re Heritage Bond Litig.,*
No. 2:02-ml-01475-RGK, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..............................9, 10

*In re K12 Inc. Sec. Litig.,*
No. 4:16-cv-04069-PJH, 2019 WL 3766420 (N.D. Cal. July 10, 2019) ..................................16

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000)...............................................................................................9, 16

*In re Nexus 6P Prods. Liab. Litig.,*
No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)........................................9

*In re Omnivision Technologies Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................... passim

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934 (9th Cir. 2015).....................................................................................................9

*In re Pac. Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995).................................................................................................9, 16

*In re VA Data Theft Litig.,*
653 F. Supp. 2d 58 (D.D.C. 2009).............................................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.,*
No. 3:15-md-02672-CRB, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..................................17

*In re Wash Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994)...............................................................................................5, 11

*Jenson v. First Trust Corp.*,
   No. 05-cv-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ....................................10, 16

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010) ..................................................................................................................12

*Nat'l Fed'n of the Blind v. Target Corp.*,
   No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ..........................................14

*O'Connor v. Oakhurst Dairy*,
   No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) ..................................................7

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)....................................................................................................7, 9

*Rausch v. Hartford Fin. Servs. Grp.*,
   No. 01-cv-1529-BR, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007)...............................20

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993)............................................................................................................7

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   No. C13-1347-JCC, 2016 U.S. Dist. LEXIS 72915 (W.D. Wash. Apr. 19, 2016).......................19

*Roberti v. OSI Systems, Inc.*,
   No. 2:13-cv-09174-MWF-MRW, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)...........................18

*Scott v. ZST Dig. Networks, Inc.*,
   No. CV 11-3531 GAF (JCx), 2013 WL 12126744 (C.D. Cal. Aug. 5, 2013) ..............................16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990).......................................................................................................7

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ....................................................................................................................6

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003).......................................................................................................19

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
   No. CIV 06-02674-PHX-RCB, 2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ...............................4

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .............................................................................20

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)...........................................................................................................7

*Trustees v. Greenough*,
   105 U.S. 527 (1881) ....................................................................................................................5

*Vedachalam v. Tata Consultancy Services, Ltd.*,
   No. 06-cv-0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) ...........................................10

1

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002)..........................................................................9, 16, 17

2

**Statutes**

3

15 U.S.C. § 78u-4(a)(6).................................................................................................8

4

15 U.S.C. §77z-1.....................................................................................................4, 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 27, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Richard Seeborg, United States District Judge, at the United States Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave. San Francisco, California, Lead Plaintiff Trigon Trading Pty. Ltd. ("Trigon" or "Federal Lead Plaintiff"), plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Matser (collectively, the "Federal Plaintiffs"), and State Litigation Plaintiff Andrew Baker, will and do hereby move for an order awarding Plaintiffs' Counsel attorneys' fees and litigation expenses.

The proposed fee and reimbursement of litigation expenses award is fair and reasonable, and should be granted. The Motion is supported by the accompanying memorandum and points of authorities, the Stipulation of Settlement dated March 16, 2020 ("Settlement Agreement" or "Stipulation"), and Exhibits thereto, the accompanying Declaration of Jeffrey C. Block in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses and Charges ("Block Decl."), and the previous papers filed in this Action and such other matters as the Court may consider.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve as fair and reasonable Plaintiffs' application for an award of attorneys' fees for Plaintiffs' Counsel in the amount of one-third of the Settlement Fund (the Settlement Amount, plus all interest accrued thereon), net of expenses.

2.      Whether the Court should approve as fair and reasonable Plaintiffs' application for litigation expenses and charges incurred by Plaintiffs' Counsel.

3.       Whether the Court should approve the request for a service award to Plaintiffs, as well as reimbursement of their costs and expenses directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Having achieved a $25 million all-cash settlement that completely resolves all outstanding

3

claims in this Action and the State Court Litigation, Plaintiffs' Counsel respectfully submit this

4

memorandum of law in support of their motion for an award of (a) attorneys' fees in the amount of

5

one-third of the Settlement Amount ($8,333,333); (b) $203,017.93 in litigation expenses that were

6

reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving these

7

Litigations;[1] and (c) awards for each Plaintiff in connection with their representation of the Settlement

8

Class.

9

## I.    PRELIMINARY STATEMENT

10

The proposed Settlement,[2] which provides for an all cash recovery of $25,000,000, is a

11

substantial and certain recovery obtained for the Class achieved through the skill, experience, and

12

effective advocacy of Plaintiffs' Counsel in the face of considerable risk and opposition from highly

13

experienced and skilled defense counsel. Plaintiffs' Counsel's efforts to date have been without

14

compensation of any kind and the fee has been wholly contingent upon the result achieved.

15

Plaintiffs' Counsel request an award of one-third of the common fund, an upward adjustment

16

from the 9th Circuit's benchmark 25% rate. Such an upward adjustment is appropriate here for at least

17

three reasons: *first*, to compensate Plaintiffs' Counsel for the quality of their legal work, which required

18

the application of their significant experience litigating securities cases to a new and unique set of

19

facts, *i.e.*, cryptocurrency; *second*, to account for the serious risks undertaken by Plaintiffs' Counsel in

20

taking on these Litigations, including against foreign defendants subject to unique defenses and issues

21

of collectability; and *third*, because a one-third award still results in a *negative* multiplier against the

22

time spent collectively by counsel in these Litigations.

23

24

---

25

26

[1] Plaintiffs' Counsel are Block & Leviton LLP; HGT Law; Hagens Berman Sobol Shapiro LLP; LTL Attorneys LLP; the Restis Law Firm, P.C.; Lite DePalma Greenberg, LLC; and State Lead Counsel Taylor-Copeland Law, and Robbins Geller Rudman & Dowd LLP.

27

28

[2] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation of Settlement dated March 16, 2020 ("Settlement Agreement" or "Stipulation") or the Declaration of Jeffrey C. Block ("Block Declaration" or "Block Decl."). Citations to "¶" in this memorandum refer to paragraphs in the Block Declaration.

As to the work they undertook: Plaintiffs' Counsel vigorously pursued this litigation from its outset by, among other things, (i) conducting an extensive investigation into the allegations surrounding the Tezos blockchain "Initial Coin Offering" ("ICO") (described by Defendants as a fundraiser) conducted between July 1, 2017 and July 13, 2017, inclusive; (ii) a thorough review of public information such as interview transcripts, news articles, Tezos marketing materials, and related litigation; (iii) moving for a temporary restraining order at the outset of the litigation; (iv) successfully arguing for electronic service of Defendants—including the Tezos Foundation (which resides outside of the United States)—which ultimately led to a stipulation from Defendant Tezos Foundation conceding to service, *MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 3:17-cv-07095-RS (N.D. Cal.) (ECF Nos. 12, 46) (v) drafting the highly detailed First Amended Consolidated Complaint based on Plaintiffs' Counsel's investigation; (vi) researching, briefing, and arguing oppositions to three separate sets of Defendants' motions to dismiss the complaints; (vii) engaging in and putting forth extensive and significant efforts with respect to the related State Litigation;[3] (viii) serving and responding to multiple document requests, interrogatories and requests for admissions; (ix) issuing document subpoenas to third parties; (x) reviewing and analyzing documents received from Defendants and non-parties; (xi) drafting and filing a motion for class certification; (xii) preparing Plaintiffs Anvari, Pumaro LLC, and Frunze for deposition and attending their depositions; (xiii) preparing and filing multiple motions concerning the parties' discovery disputes [ECF Nos. 219; 222; 231; 235; 237]; (xiv) negotiating a Stipulated Protective Order and subsequent amendments [ECF Nos. 177-178; 217; 224-225; 228-230]; (xv) engaging in multiple in-person and telephonic meet and confer conferences with Defendants; (xvi) preparing a Freedom of Information Act request to the SEC for documents pertaining to the Tezos ICO; and (xvii) engaging in intensive, arm's-length settlement negotiations.

---

[3] *See Baker v. Dynamic Ledger Solutions, Inc. et al.,* Superior Court of California, County Francisco, Case No. CGC-17562144; *Trigon Trading Pty. Ltd., et al. v. Dynamic Ledger Solutions, Inc., et al.,* Superior Court of California, County of San Mateo, Case No. 18CIV02045; and *Tezos ICO Cases,* Superior Court of California, County Francisco, Case No. CJC-18-004978. A summary of the background and work performed by State Lead Counsel is set forth in the Declaration of James Taylor-Copeland, filed concurrently herewith.

1   Plaintiffs' Counsel undertook these extensive efforts on behalf of the Class on a contingent fee

2   basis and no payment has been made to Plaintiffs' Counsel to date for their services or expenses.

3   Plaintiffs' Counsel firmly believe that the Settlement is the result of their creative and diligent efforts,

4   as well as their reputations as attorneys who are unwavering in their dedication to the interests of the

5   Class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. It

6   is also the result of highly experienced securities attorneys applying their skills to develop law in an

7   emerging area—cryptocurrency—which has few, if any, precedents on which to rely. In a case

8   asserting claims based on both new and complex legal and factual issues, which were opposed by

9   highly skilled and experienced defense counsel, Plaintiffs' Counsel succeeded in securing a

10  tremendous result for the Class. As a result, Plaintiffs' Counsel submit that the requested fee is fair

11  and reasonable and should be awarded.

12  Moreover, this action is subject to the provisions of the PSLRA, 15 U.S.C. §77z-1, and,

13  therefore, by its nature, is extremely risky. The effect of the PSLRA is to make it harder for investors

14  to successfully plead and prove securities class actions. Lead Plaintiff and his counsel were mindful of

15  the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than

16  ever before amid defendants' constant attempts to push the envelope and contours of the PSLRA. "To

17  be successful, a securities class action plaintiff must thread the eye of a needle made smaller and

18  smaller over the years by judicial decree and congressional action." *Teamsters Local 617 Pension &*

19  *Welfare Funds v. Apollo Grp., Inc*., No. CIV 06-02674-PHX-RCB, 2011 WL 1253250, at *37 (D.

20  Ariz. Mar. 31, 2011) (*citing Alaska Elec. Pension Fund v. Flowserve Corp*., 572 F.3d 221, 235 (5th

21  Cir. 2009)). Indeed, over 50% of securities fraud class actions are dismissed.[4] In this case, which

22  involved the "initial coin offering" of a cryptocurrency, Plaintiffs' Counsel were subject to additional

23  risk because of the novel issues presented therein. This case was far from the typical Securities Act

24  case; it required the application of securities law precedent to a new field, greatly increasing the risk

25  of a negative outcome. This additional risk was magnified because one Defendant—and the Defendant

26

27

28  [4] *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, at 9 Figure 6 (NERA Feb. 2020)

1   holding the funds collected in the ICO—was a Swiss non-profit entity, which pressed both unique

2   jurisdictional defenses and presented serious issues of collectability.

3       Finally, the work ultimately undertaken by Plaintiffs' Counsel, when judged using customary

4   hourly rates, is greater than the amount being requested of the Court. As explained below, a one-third

5   award will still result in a *negative* multiplier against Plaintiffs' Counsel's lodestar.

6       In light of the significant recovery obtained, the time and effort devoted by Plaintiffs' Counsel,

7   the skill, quality, and expertise required, the wholly contingent nature of the representation, and the

8   considerable risks they undertook, Plaintiffs' Counsel respectfully submit that the requested fee award

9   is fair and reasonable and should be approved by the Court. The litigation expenses incurred by

10   Plaintiffs' Counsel are reasonable in amount and were necessarily incurred in the successful

11   prosecution of the Action, and they too should be approved.

12   **II.    ARGUMENT**

13       **A.    Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund They Obtained**

14       The Settlement was preliminarily approved by the Court's Order of May 1, 2020 (ECF No.

15   251), which conditionally certified a settlement class, preliminarily approved the Settlement terms and

16   directed distribution of the class Notice, and set a hearing for August 27, 2020 for final approval of the

17   Settlement and Plaintiffs' Counsel's request for attorney's fees and costs (the "Settlement Hearing").

18       The Supreme Court has long recognized the "common fund" exception to the general rule that

19   a litigant bears his or her own attorneys' fees. *Trustees* v. *Greenough,* 105 U.S. 527 (1881). The

20   rationale for the common fund principle was explained in *Boeing Co.* v. *Van Gemert,* 444 U.S. 472,

21   478 (1980), as follows:

22           [T]his Court has recognized consistently that a litigant or a lawyer who
            recovers a common fund for the benefit of persons other than himself or
23           his client is entitled to a reasonable attorney's fee from the fund as a
            whole .... Jurisdiction over the fund involved in the litigation allows a
24           court to prevent . . . inequity by assessing attorney's fees against the
            entire fund, thus spreading fees proportionately among those benefited
25           by the suit.

26   The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation

27   of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re*

28   *Wash Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994) *("WPPSS").* Plaintiffs

1    and Plaintiffs' Counsel have clearly bestowed a substantial common benefit upon the Settlement

2    Class Members here. Through their efforts, Settlement Class Members will share substantial

3    monetary relief, which satisfies the requirements of the common fund doctrine and entitles Plaintiffs'

4    Counsel to an award of attorneys' fees from the Settlement Fund.

5         The Supreme Court has also emphasized that private actions provide "'a most effective weapon

6    in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange]

7    Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985)

8    (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964)). Federal courts therefore have long

9    recognized that fee awards in successful cases, such as this one, encourage the prosecution of other

10   actions on behalf of individuals with valid claims, and thereby promote private enforcement of, and

11   compliance with, important areas of federal and state law, including the federal securities laws. Fee

12   awards, such as those requested in this action, encourage "capable attorneys, who otherwise could be

13   paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which

14   they may never be paid." *See*, *e.g.*, *Armes v. Hot Pizzas, LLC*, No. CV-16-01152-PHX-JJT, 2017 U.S.

15   Dist. LEXIS 89920, at *12-13 (D. Ariz. June 9, 2017).

16        **B.    The Court Should Award Attorneys' Fees Based on the Percentage-of-the-**
          **Recovery Method**

17

18        For their efforts in creating a common fund for the benefit of the Class, Plaintiffs' Counsel seek

19   as attorneys' fees a reasonable percentage of the fund recovered for the Class. The percentage method

20   of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common

21   fund cases throughout the United States. A percentage fee award is appropriate because it encourages

22   counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and,

23   hence, most fairly correlates Plaintiffs' Counsel's compensation to the benefit achieved for the class.

24        The Supreme Court has consistently calculated attorneys' fees in common fund cases on a

25   percentage-of-the-fund basis.[5] Since *Blum v. Stenson*, in which the Supreme Court recognized that

26   under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund

27

28   _____
     [5] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Boeing*, 444 U.S. at 478-79; *Sprague v.
     Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939).

bestowed on the class," virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases.[6] In addition, the *Manual for Complex Litigation* also endorses the use of the percentage-of-the-fund method in awarding attorneys' fees in common fund cases.[7]

Likewise, district courts within the Ninth Circuit have routinely held that the percentage of the fund method is the preferred method for calculating attorneys' fees in common fund cases. In *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989) and *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage method in common fund cases. Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions resulting in a common fund recovery.

Compensating counsel in common fund cases on a percentage basis makes good sense. *First*, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *Second*, it more closely aligns the lawyers'

---

[6] *See e.g.,Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (affirming the district court's decision to employ a "'percentage of the recovery' approach as a starting point in calculating the fee award.") (*citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2d Cir. 2000)); *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.") (citations omitted); *In re VA Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009) (*citing Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993)); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) ("The First Circuit has approved of the [percentage of fund] method as the prevailing approach used in common fund cases.") (*citing In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).

[7] *See* 14.121. Percentage-Fee Awards, Ann. Manual Complex Lit. § 14.121 (4th ed.) (stating that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases") (footnotes omitted); *see also* 32 *Moore's Federal Practice* - Civil 14.1 (2020).

1    interest in being paid a fair fee with the interest of the class in achieving the maximum possible

2    recovery in the shortest amount of time. *Third*, use of the percentage method decreases the burden

3    imposed on the court by eliminating the detailed and time-consuming lodestar analysis while assuring

4    that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See In*

5    *re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

6         Compared to the "lodestar" method, the percentage-of-recovery method conserves judicial

7    resources, is simple to calculate, is not subject to manipulation, and does not require the court to

8    "second guess" each and every decision made by counsel during the course of a complex case.

9    Moreover, multiple district courts within this Circuit have noted the comparative efficiency and

10   reasonableness of the percentage method. *See, e.g.*, *In re Omnivision Technologies Inc.*, 559 F. Supp.

11   2d 1036, 1046 (N.D. Cal. 2008) (collecting cases and notiong that the "advantages of using the

12   percentage method have been described thoroughly by other courts."). In addition, the PSLRA also

13   recognizes appropriateness of the use of the percentage method of fee awards by acknowledging that

14   attorneys' fees should not exceed a "reasonable percentage."[8] A percentage fee is also desirable

15   because it most fairly correlates the compensation of counsel to the benefit conferred upon the class.

16        Accordingly, Plaintiffs' Counsel respectfully requests that this Court calculate the attorneys'

17   fees in this case under the percentage of recovery method.

18        **C.    The Requested Fee is Reasonable**

19        For their efforts in creating a common fund here, Plaintiffs' Counsel seek one-third of the

20   Settlement Amount, plus $203,017.93 in litigation expenses. These requests are fair and reasonable

21   under the relevant standards.

22        Courts in this Circuit assessing the reasonableness of the percentage fee award consider the

23   following factors: (1) the results achieved, (2) the risks of the litigation, (3) the skill required and the

24   quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs,

25

26

27   _____

28   [8] *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

and (5) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (*citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-51 (9th Cir. 2002).

In the Ninth Circuit, 25 percent is the "benchmark" award for attorneys' fees. *See e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Paul, Johnson*, 886 F.2d at 273. Nonetheless, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *accord In re Heritage Bond Litig.*, No. 2:02-ml-01475-RGK, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005) (noting that "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions[,]" and granting fees of one-third of fund). Indeed, courts in this District have determined that 30 percent represents a more accurate benchmark in common fund cases. *See In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (quoting *Activision*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% . . .")). Furthermore, the district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming a one-third percent fee award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award).

Each of the above factors justifies an upward departure from the 25% benchmark (or "more accurate benchmark" of 30%): Plaintiffs' Counsel achieved an exceptional result, against significant risks, by applying their skill and experience to novel factual circumstances, on a completely contingent basis.

### 1.    The Results Achieved

Courts in this Circuit have assigned the greatest weight to the benefit achieved in the litigation. *See Nexus 6P*, 2019 WL 6622842, at *12 (noting that the "most critical factor is the results achieved for the class" and awarding 30% fee request); *Bickley v. Schneider Nat'l Carriers, Inc.*, No. 4:08-cv-05806-JSW, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding one-third for attorneys' fees for "substantial monetary recovery"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533 at *4 (N.D. Cal. Aug. 3, 2016) (granting 30% fee request where "[o]utstanding results merit a higher fee"); *Vedachalam v. Tata Consultancy Services, Ltd.*, No. 06-cv-

1   0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (30% fee request warranted due to

2   "excellent results obtained"); *Jenson v. First Trust Corp.*, No. 05-cv-3124 ABC, 2008 WL 11338161,

3   at *12 (C.D. Cal. June 9, 2008) (awarding one-third fee request where counsel achieved "highly-

4   favorable outcome"); *Heritage*, 2005 WL 1594403, at *19 ("significant results achieved" weighed

5   "strongly in favor" of one-third fee award).

6        Plaintiffs estimated their best-case scenario, maximum recoverable damages at $150 million,

7   using a model based entirely on plaintiff-friendly assumptions. However, the actual recoverable

8   damages was declining every day as the value of Tezos increased and stayed higher relative to all other

9   relevant currencies, resulting in no trading damages for investors and discincentivizing investors from

10  seeking rescission. Given this, a recovery of 16.7% of the best-case scenario, maximum recoverable

11  damages is significant. For example, an analysis by NERA found the "median ratio of settlements to

12  Investor Losses" between 2010 and 2019 fell between 1.3 and 2.6%. *See* NERA, Janeen McIntosh and

13  Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA

14  Feb. 2020), at 20. NERA calculates a median settlement of 4.7% for cases with losses between $50 –

15  $99 million; and while NERA does not publish the median ratio between $100 million and $5 billion,

16  the percentage drops to 1% for cases with more than $5 billion in losses. *Id.* at 18. By any measure, a

17  recovery of 16.7% of maximum recoverable damages (or, as is likely, a significantly higher percentage

18  of actual recoverable damages) far exceeds the results in typical securities litigation settlements.

19       Furthermore, at the time this litigation commenced, Defendants had yet to deliver the promised

20  Tezos tokens to the Class. During the course of the litigation, Defendants took the position that the

21  Class' ICO contributions were merely "donations," and Defendants had no liability whatsoever to

22  deliver tokens. *See*, *e.g.*, Motion to Dismiss (ECF No. 119 at 6) ("[T]he Foundation expressly stated

23  in the Contribution Terms that it cannot guarantee that Contributors shall have any allocation of XTZ

24  when the TEZOS Network is created . . . TEZOS cannot guarantee to Contributors that they shall have

25  any allocation and/or creation of XTZ as set forth in these terms."). The existence of this lawsuit likely

26  led to Defendants' delivering tokens to the Class, a result that was not at all assured based on

27  Defendants' arguments. As such, the benefit to the Class was not just in securing the $25 million cash

28

Settlement, but in helping to ensure that investors received their Tezos tokens. This additional significant value is yet another reason to support the fee request.

### 2.      The Substantial Risks of the Litigation Support the Fee Request

The Ninth Circuit has also confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted:

> Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M:02-cv-01486-PJH, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007).

Here, Plaintiffs' Counsel received no compensation during this litigation, invested 13,045.75 hours for a total lodestar of approximately $9,430,205.50, and incurred expenses totaling $203,017.97 in prosecuting the case. ¶¶ 83, 89. Any fee and expense award has always been contingent on the result achieved and on this Court's discretion in awarding such fees and expenses.

Despite the most vigorous and competent efforts, Plaintiffs' Counsel knows success in contingent litigation such as this is never guaranteed. The commencement of a securities class action and denial of motions to dismiss are no guarantee of success. These cases are not always settled, nor are cases always successful. Hard, diligent work by skilled counsel is required to develop facts and theories to prosecute a case or persuade defendants to settle on favorable terms.

As discussed in greater detail in the Final Approval Brief, at Section I.B.1.(a)-(c)), there were many substantial challenges to succeeding in this litigation and to obtaining a common fund recovery. *First*, market dynamics, including the increased value of XTZ during the course of the litigation, meant that fewer and fewer class members arguably were damaged. *Second*, the classwide damages amount was highly dependent on the method used to measure those damages (*e.g.*, in USD, BTC, or Ethereum). An adverse decision (*e.g.*, computing damages in USD rather than BTC) would have significantly reduced damages available to the class. *Third*, Plaintiffs still had to prove that XTZ was a security under the securities laws, an issue that would have been challenged by Defendants. *Fourth*, even if

1   successful in proving the application of the securities laws, Plaintiffs faced an argument that could

2   have significantly reduced the size of the class (and damages available) based on the application of

3   *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). *Fifth*, the Class faced a potential

4   barrier to class certification based on arguments that determining which class members had notice of

5   the Contribution Terms, and the forum selection clause contained therein, presented an individualized

6   question that would overwhelm any common questions and thus preclude certification of any class.

7   The Court recognized this risk when it noted that its ruling on this point at the motion to dismiss stage

8   "may ultimately prove to be fleeting procedural mercy." ECF No. 148, at 12:17-18. Among others,

9   these were serious risks that stood in the way of the Settlement Class (and thus Plaintiffs' Counsel)

10  ever receiving a recovery through these Litigations.

11          While Plaintiffs' Counsel believed in the merits of their claims, there would be many

12  challenges in establishing all of the requisite elements and a substantial risk that Plaintiffs might not

13  be able to do so. The arguments raised by Defendants could have materially reduced the amount of

14  recoverable damages and adversely affected any potential recovery. Recovering $25 million in cash,

15  representing at least 16.7% of maximum total damages, in the face of these substantial risks fully

16  supports the requested fee.

17          Finally, even if Plaintiffs' Counsel were successful at trial and obtained a judgment against

18  Defendants, there was a substantial risk that collecting a judgment against the Tezos Foundation, who

19  held possession of the funds raised in the ICO in Switzerland, would have been challenging, time-

20  consuming, and potentially unsuccessful. This significantly added to the risks associated with the

21  litigation.

22          **3.      The Skill Required and Quality of Work Performed Support the Fee
                       Request**

23
24          "All else equal, litigation that is challenging and complex supports a higher fee award." *In re*

25  *Activision Blizzard, Inc S'holder Litig.*, 124 A.3d 1025, 1072 (Del. Ch. 2015); *see also Omnivision*,

26  559 F. Supp. 2d at 1047 ("The 'prosecution and management of a complex national class action

27  requires unique legal skills and abilities.' This is particularly true in securities cases because the

28  [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."); *Ams.*

*Mining Corp. v. Theriault*, 51 A.3d 1213, 1256 (Del. 2012) (complexity of the case "supports a substantial award of attorneys' fees").

Here, Plaintiffs' Counsel are among the most experienced and skilled practitioners in the corporate and securities litigation fields, and the firms have long and successful track records in securities cases throughout the country, including within this Circuit. *See* Block Decl. ¶ 79 & Exs. 2-9 (Firm Resumes). Plaintiffs' Counsel's reputations as experienced counsel in complex cases, persistent efforts and thorough investigation greatly enhanced Plaintiffs' Counsel's ability to negotiate the Settlement.

Plaintiffs' Counsel's skills and experience first came into play early in this case, when they obtained an order allowing for electronic service on the Tezos Foundation, among other Defendants located abroad. *MacDonald v. Dynamic Ledger Solutions, et al.*, No. 3:17-cv-07095-RS (N.D. Cal.) (ECF No. 12). Ultimately, this order led to the Tezos Foundation stipulating to waive service of the summons and complaint. *Id.* (ECF No. 46). Plaintiffs' skill brought a Swiss foundation Defendant to the Northern District of California, where the Court ultimately ruled that it could exercise personal jurisdiction over it.

Plaintiffs' Counsel drafted highly detailed complaints, successfully opposed four sets of Defendants' motions to dismiss, conducted extensive discovery, including serving and responding to document requests and interrogatories, and engaged in numerous discovery disputes with Defendants. In addition to the extensive investigatory and discovery efforts, the parties exchanged dozens of letters and likewise participated in dozens of meet-and-confer exchanges.

Plaintiffs' Counsel also participated in vigorous, arm's-length settlement negotiations, including two separate mediation sessions with experienced mediators. ¶¶ 36-39. The mediation sessions involved extensive presentations by Plaintiffs and Defendants analyzing the legal and factual nuances of the case. Plaintiffs' Counsel's extensive efforts and skill leading to the Settlement strongly support the requested fee.

Throughout the litigation, Plaintiffs' Counsel brought their signifigant skill and experience litigating securities class actions to bear on a novel area involving an "initial coin offering" of cryptocurrency. Far from a classic Securities Act case, this litigation required the application of new

1    arguments applicable to cryptocurrency, as this litigation was among the first to allege that the sale of

2    cryptocurrency constituted an unregistered securities offering in violation of the Securities Act's

3    registration provisions. The litigation also required Plaintiffs' Counsel to learn and bring technical

4    expertise to bear. For just one example, the case required the development of complex jurisdictional

5    arguments that concerned the use of web hosting and caching services located around the world,

6    including partly in the United States. *See* Final Approval Brief, at Section 1.B.1.(b).

7        The quality and vigor of opposing counsel are also important in evaluating the caliber of

8    Plaintiffs' Counsel's work. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337

9    (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful

10   defense lawyers, and should be compensated accordingly"); *Theriault*, 51 A.3d at 1256 (noting

11   Plaintiffs faced off "against major league, first-rate legal talent"). Defendants are each represented by

12   highly experienced and prestigious counsel, who vigorously represented their clients. Dynamic Ledger

13   Solutions, Inc. was represented by Cooley LLP and Baker Marquart LLP; and the Tezos Foundation

14   was represented by Davis Polk & Wardwell LLP and Goodwin Procter LLP. The fact that Plaintiffs'

15   Counsel achieved this excellent Settlement in the face of this formidable legal opposition further

16   evidences the quality of their work.

17        **4.    The Contingent Nature of the Fee Supports the Fee Request**

18        Plaintiffs' Counsel undertook this litigation on a contingent fee basis, assuming a significant

19   risk that the litigation would yield no recovery and leave them uncompensated. Unlike counsel for

20   Defendants, who are typically paid an hourly rate and paid for their expenses on a regular basis,

21   Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2017.

22   Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in

23   considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Nat'l*

24   *Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261, at *7 (N.D. Cal. Aug.

25   3, 2009), the court noted the risks that plaintiffs' counsel had taken:

26            Risk of non-payment is also an issue to be considered. 'A contingent fee
            must be higher than a fee for the same legal services paid as they are
27            performed. The contingent fee compensates the lawyer not only for the
            legal services he renders but for the loan of those services.' [internal
28            citations omitted] 'The purpose of a fee enhancement, or so-called

> multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.'

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. The risk of no recovery in complex cases of this type is very real. A study of securities class actions filed between 1997 and 2018, after passage of the PSLRA, found that 43% of the cases filed were dismissed in defendants' favor. *See Securities Class Action Case Filings, 2019 Year in Review* at 16 (Cornerstone Research 2020). Further, in 2019, about one-third of securities cases reached a settlement, but dismissals outnumbered settlements by more than two to one. Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* at 9, Figure 6 (NERA Feb. 2020). And while these statistics are based on classic securities litigation fact patterns (often involving securities traded on the public markets), there were no precedents to rely on in this litigation, which involved the application of the securities laws to a new area of cryptocurrency. This greatly increased the risk to Plaintiffs' Counsel, who were constantly paving new ground in litigating this action.

There are numerous contingent fee cases where plaintiffs' counsel, after the expenditure of thousands of hours, have received no compensation. Plaintiffs' Counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of the Plaintiffs' Counsel produced no fee for counsel. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial).

What is more, and as discussed above, even success at trial may have been insufficient to obtain a common fund capable of being distributed to the class. Plaintiffs' Counsel likely faced significant hurdles in collecting a judgment from the Tezos Foundation (who held all of the money raised in the ICO) in Switzerland. *See* Final Approval Brief, at Section I.B.2.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. Plaintiffs' Counsel committed enormous resources of both time and money to the vigorous and successful prosecution of this litigation for the benefit of the Class. The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5.     A One-Third Fee Award Is Consistent with the Market Rate in Similar Complex, Contingent Litigation

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino,* 290 F.3d at 1050 n.4. A one-third fee has been repeatedly awarded by the courts in this Circuit and District and in numerous other courts throughout the country. *See*, *e.g.*, *Mego*, 213 F.3d at 463 (affirming award of one-third of the total recovery); *Pac. Enters.*, 47 F.3d at 379 (affirming 33% fee award); *In re Banc of California Sec. Litig.*, No. SA CV 17-118 DMG (DFMx), 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% fee request); *Cheng Jiangchen v. Rentech, Inc*., No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (approving one-third fee award); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (same); *In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-cv-01836-RSM, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018) (same); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Airz. May 8, 2017) (same); *Bickley*, 2016 WL 6910261, at *4 (same); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-2147-PHX, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (same); *Jenson*, 2008 WL 11338161, at *11 (same). Plaintiffs' Counsel's present fee request is therefore consistent with fee award percentages awarded in this Circuit.

Moreover, if this were a non-representative litigation, the customary fee would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. In *Blum*, the Supreme Court*,* stated: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." 465 U.S. at 902 n.19; *Scott v. ZST Dig. Networks, Inc*., No. CV 11-3531 GAF (JCx), 2013 WL 12126744, at *9 (C.D. Cal. Aug. 5, 2013) ("[i]n private contingent litigation, fee contracts have traditionally ranged between 30 percent

1    and 40 percent of the total recovery.") (*quoting In re M.D.C. Holdings Sec. Litig*., Master File No. CV

2    89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990)).

3           **D.**     **A Lodestar Crosscheck Confirms the Reasonableness of the Fees Sought**

4           In cases where attorneys' fees are sought based on a percentage of the common fund, courts in

5    this Circuit frequently employ a lodestar crosscheck to assess the reasonableness of the fees sought.

6    *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the

7    percentage method, the lodestar may provide a useful perspective on the reasonableness of a given

8    percentage award."). In the Ninth Circuit, "multiples ranging from one to four are frequently awarded

9    in common fund cases when the lodestar method is applied." *Id.* at 1050, n.6 (28% fee award

10   represented a multiplier of 3.65); *see also Buccellato v. AT&T Operations, Inc.*, No. 5:10-cv-00463-

11   JW, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarded 4.3 lodestar multiplier as part of a

12   25% fee award); *In re Brocade Sec. Litig.*, No. 3:05-cv-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26,

13   2009) (awarding 25% of $160 million common fund, representing a 3.5 multiplier).

14          As set forth in the declarations attached to the Block Decl., Plaintiffs' Counsel has expended a

15   total of 13,045.75 hours over the course of three years of investigation, litigation, and negotiation of

16   the monetary payment reflected in the Settlement. Plaintiffs' Counsel's lodestar, derived by

17   multiplying the hours spent on the litigation by each attorney and professional by their current hourly

18   rates, is $9,430,205.50. ¶ 83. Accordingly, the requested fee of one-third of the Settlement Amount,

19   which equates to approximately $8.333 million, represents a 0.88 negative multiplier—*i.e.*, it would

20   not fully compensate counsel. This is below the multiplier range of one to four frequently used as a

21   crosscheck. Given the extraordinary results achieved in an untested and risky Securities Act action,

22   Plaintiffs' Counsel's 13,045 hours support the reasonableness of the fee request.

23          Across Plaintiffs' Counsel, Partners' rates range from $750 to $1,325 per hour, associates' rates

24   range from $250 to $745 per hour, and paralegals' rates range from $150 to $350 per hour. ¶ 83. These

25   are "reasonable hourly rate[s] for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d

26   at 941; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No.

27   3:15-md-02672-CRB, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (lodestar cross-check

28   supported the reasonableness of the requested fee award where "[t]he blended average hourly billing

rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]"); *Roberti v. OSI Systems, Inc.*, No. 2:13-cv-09174-MWF-MRW, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) ("Lead Counsel's attorney rates—between $525 to $975—are reasonable given that each has at least 15 years of litigation experience" except associates).

### E.   Plaintiffs' Counsel's Expenses are Reasonable and Should be Approved

Plaintiffs' Counsel also requests that the Court grant its application for an award of its litigation expenses incurred in prosecuting and resolving this litigation. Expenses are awarded in a common-fund case where they are of the type typically billed by attorneys to paying clients in the marketplace. *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Plaintiffs' Counsel were motivated to take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 90.

As discussed in detail in the declarations accompanying the Declaration of Jeffrey C. Block, Plaintiffs' Counsel incurred $203,017.97 in litigation expenses in litigating the Action. ¶ 88. The litigation expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type routinely charged to hourly paying clients. These include mediator fees, expert fees, document-management costs, online research, service of process expenses, out-of-town travel expenses, court fees, copying costs, and postage expenses. A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is presented in Paragraphs 91 to 95 of the Block Decl. *See also Id.* Exs. 2-9 (B&L Decl. ¶ 5; Ta Decl. ¶ 8; Hagens Decl. ¶ 5; LTL Decl. ¶ 12; RGRD Decl. ¶ 5;

1   JTC Decl. ¶ 5; Restis Decl. ¶ 19; LDG Decl. ¶ 13). These expense items are incurred separately by

2   Plaintiffs' Counsel and are not duplicated in the firms' rates.

3          The Notice provided to stockholders informed them that Plaintiffs' Counsel intends to apply

4   for an award of litigation expenses up to $300,000. The amount of expenses now sought by Plaintiffs'

5   Counsel is $203,017.97. The deadline for objecting to the fee and expense application is August 6,

6   2020. To date, there have been no objections to the request for attorneys' fees and litigation expenses.

7          **F.     An Award Should Be Granted to Lead Plaintiffs**

8          Plaintiffs' Counsel request that the Court approve awards for Lead Plaintiff Trigon Trading

9   Pty. Ltd. ($7,500), and additional Federal Plaintiffs Pumaro LLC ($7,500), Artiom Frunze ($7,500),

10  Hayden Hsiung ($5,000), and Gijs Matser ($5,000), and to State Litigation Plaintiff Andrew Baker

11  ($5,000), to be deducted from the Settlement Fund. An "award of reasonable costs and expenses

12  (including lost wages) directly relating to the representation of the class" may be made to "any

13  representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4); *see also Staton v. Boeing

14  Co*., 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable"

15  payments as part of class-action settlement).

16         An award "compensates Plaintiffs for the services they performed on behalf of the Settlement

17  Class and the risk they undertook bringing this action."[9] Here, Plaintiffs spent a significant amount of

18  time contributing to the litigation and benefiting the class by reviewing the relevant documents,

19  including court filings; staying apprised of developments in the case and making themselves available

20  to Plaintiffs' Counsel; providing Plaintiffs' Counsel with extensive information and materials

21  regarding their investments; responding to numerous document requests, interrogatories and requests

22  for admission served by Defendants; and conferring with counsel throughout the litigation, including

23  throughout both mediations. Additionally, Federal Plaintiffs Pumaro LLC and Artiom Frunze prepared

24  for and attended full-day depositions that were taken by Defendants, while Lead Plaintiff Trigon

25  Trading Pty. Ltd. and its representatives and agents logged over 250 hours working on this matter from

26  its inception. Block Decl. Exs. 10-15 (Trigon Decl. ¶ 10; Pumaro Decl. ¶ 11; Frunze Decl. ¶ 10; Hsiung

27

28  _____
    [9] *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2016 U.S. Dist. LEXIS 72915, at *15
    (W.D. Wash. Apr. 19, 2016).

Decl. ¶ 10; Matser Decl. ¶ 10; Baker Decl. ¶ 10). The requested awards are also consistent with (and even less than) service awards in other cases.[10] *See, e.g., Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award approved); *Buccellato*, 2011 WL 4526673, at *4 ($20,000 award approved). Payment of the awards, when combined with Plaintiffs' Counsel's expenses of $203,017.97, would not exceed the $300,000 maximum described in the Notice to the Class. Schmidt Decl. Ex. B, Notice at 3.

## III.    CONCLUSION

For the reasons set forth above, the Court should: (i) award Plaintiffs' Counsel one-third of the $25 million Settlement Fund ($8,333,333) in fees, (ii) award $203,017.97 for Plaintiffs' Counsel's litigation expenses, (iii) approve service awards totaling $37,500 for Federal Plaintiffs and for State Litigation Plaintiff Andrew Baker, and (iv) approve the reimbursement of $475 in expenses directly incurred by Lead Plaintiff Trigon Trading Party Ltd.

Dated: July 28, 2020                         Respectfully submitted,

/s/ Jeffrey C. Block
Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
joel@blockesq.com
jake@blockesq.com
*Co-Lead Counsel and Counsel to*
*Lead Plaintiff Trigon Trading Pty. Ltd.*

/s/ Hung G. Ta
Hung G. Ta (SBN 331458)
JooYun Kim, *pro hac vice*
**Hung G. Ta., Esq. PLLC**
250 Park Avenue, 7th Floor
New York, NY 10177 (646) 453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

---

[10] *See e.g., Rausch v. Hartford Fin. Servs. Grp.*, No. 01-cv-1529-BR, 2007 U.S. Dist. LEXIS 14740, at *9 (D. Or. Feb. 26, 2007) (granting $10,000 incentive fee award).

*Co-Lead Counsel and Counsel to*
*Plaintiffs Pumaro LLC, Artiom Frunze,*
*Hayden Hsiung, and Gijs Matser*

Danielle Smith (291237)
Reed R. Smith (139304)
**Hagens Berman Sobol Shapiro LLP**
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
**Hagens Berman Sobol Shapiro LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Additional Counsel to*
*Lead Plaintiff Trigon Trading Pty. Ltd.*

Enoch H. Liang
**LTL Attorneys LLP**
601 Gateway Boulevard, Suite 1010
South San Francisco, CA 94080
(650) 422-2130
enoch.liang@ltlattorneys.com

James M. Lee
Caleb H. Liang
**LTL Attorneys LLP**
300 S. Grand Ave., 14th Floor
Los Angeles, CA 90071
(212) 612-8900 phone
james.lee@ltlatorneys.com
caleb.liang@ltlattorneys.com

William R. Restis (SBN 246823)
**The Restis Law Firm, P.C.**
402 West Broadway, Suite 1520
San Diego, CA 92101
(619) 270-8383
william@restislaw.com

Joseph J. DePalma (*pro hac vice*)
Bruce D. Greenberg (*pro hac vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Lite DePalma Greenberg, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000 phone
jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Additional Counsel to Plaintiffs*
*Pumaro LLC, Artiom Frunze,*
*Hayden Hsiung, and Gijs Matser*