1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffrey C. Block (*pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com

*Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

IN RE TEZOS SECURITIES LITIGATION

This document relates to:

ALL ACTIONS.

Master File No.  17-cv-06779-RS

**CLASS ACTION**

**DECLARATION OF JEFFREY C. BLOCK IN SUPPORT OF: (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES AND CHARGES**

Date:         August 27, 2020
Time:         1:30 p.m.
Courtroom:  3, 17th floor
Judge:        Hon. Richard Seeborg

**EXHIBIT LIST**

| Ex. No. | Description |
|:---:|:---|
| 1 | Declaration of Nicholas Schmidt Regarding (A) Electronic Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Online Case Website Advertisements; (D) Call Center Services; (E) Posting of Notice and Claim Form on Settlement Website; and (F) Report on Objections or Requests for Exclusion Received to Date ("Schmidt Decl.") |
| 2 | Declaration of Jeffrey C. Block in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Block & Leviton LLP ("B&L Decl.") |
| 3 | Declaration of Hung G. Ta in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Hung G. Ta., Esq. PLLC ("Ta Decl.") |
| 4 | Declaration of Reed R. Kathrein in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Hagens Berman Sobol Shapiro LLP ("Hagens Decl.") |
| 5 | Declaration of Caleb H. Liang in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of LTL Attorneys LLP ("LTL Decl.") |
| 6 | Declaration of Lucas F. Olts in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Robbins Geller Rudman & Dowd LLP ("RGRD Decl.") |
| 7 | Declaration of James Taylor-Copeland in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Taylor-Copeland Law ("JTC Decl.") |
| 8 | Declaration of William R. Restis in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of the Restis Law Firm, P.C. ("Restis Decl.") |
| 9 | Declaration of Joseph J. DePalma in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, filed on behalf of Lite DePalma Greenberg, LLC ("LDG Decl.") |
| 10 | Declaration of Matteo Salerno on Behalf of Trigon Trading Pty Ltd. ("Trigon Decl.") |
| 11 | Declaration of Pumaro, LLC in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Pumaro Decl.") |
| 12 | Declaration of Artiom Frunze in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of |

| | | |
|---|---|---|
| | | Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Frunze Decl.") |
| | 13 | Declaration of Hayden Hsiung in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Hsiung Decl.") |
| | 14 | Declaration of Gijs Matser in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Matser Decl.") |
| | 15 | Declaration of Andrew Baker ("Baker Decl.") |
| | 16 | Contribution Terms |
| | 17 | *Securities Class Action Case Filings, 2019 Year in Review* (Cornerstone Research 2020) |
| | 18 | Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 2020) |

I, Jeffrey C. Block, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am admitted to practice law before all of the courts of the Commonwealth of Massachusetts and I am admitted *pro hac vice* in this Action. I am the founding partner of the law firm Block & Leviton LLP ("Lead Counsel"), counsel of record for Lead Plaintiff Trigon Trading Pty. Ltd. ("Lead Plaintiff"), and Co-Lead Counsel for the Class. I respectfully submit this declaration in support of Lead Plaintiff's motions, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for: (a) final approval of the settlement of this Action, which provides for a cash payment of $25,000,000 (the "Settlement"), (b) the proposed Plan of Allocation for the net proceeds of the Settlement; (c) Lead Counsel's application for attorneys' fees and expenses.[1]

2.      I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this Litigation by attorneys working with me and under my supervision. Thus, if called upon, I can testify to the matters set forth herein.

## I.      PRELIMINARY STATEMENT

3.      After more than two years of hard-fought litigation and vigorous arm's-length negotiations with the assistance of two distinguished private mediators (Professor Eric Green and the Hon. Layn Phillips), Lead Plaintiff has achieved a substantial and valuable Settlement of this Action, which this Court preliminarily approved on May 1, 2020 in its order preliminarily approving the Settlement, and approving the proposed forms and methods of providing notice to the Settlement Class (the "Preliminary Approval Order"). ECF No. 250.

4.      This case has been vigorously litigated from the outset. The Settlement was achieved only after counsel, among other things: (i) conducted a comprehensive investigation into the allegedly wrongful acts; (ii) drafted a detailed Consolidated Complaint for Violations of the Federal Securities Laws (the "Consolidated Complaint"); (iii) researched and briefed an opposition to Defendants' motion to dismiss the Consolidated Complaint; (iv) engaged in comprehensive

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning ascribed to them in the Stipulation and in Lead Plaintiff's Notice of Motion, Motion for Preliminary Approval of Settlement, and Memorandum of Points and Authorities in Support Thereof. ECF No. 246.

discovery; (v) researched and briefed class certification; (vi) worked closely with experts to analyze damages issues; (vii) engaged in thorough mediation efforts, which included the exchange of comprehensive mediation statements, and two mediation sessions with the assistance of two experienced mediators; and (viii) engaged in extensive negotiations regarding the terms of the proposed Settlement. At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the parties' positions.

5.      Further, as discussed in more detail below, this Action presented significant challenges, particularly concerning damages, with estimates of total damages presented by the Parties during mediation discussions ranging from less than $1 million to over $150 million U.S. dollars.

6.      In deciding to settle, Lead Plaintiff and Lead Counsel took into consideration the significant risks associated with establishing liability, as well as the duration and complexity of the legal proceedings that remained ahead. The Settlement was achieved despite vigorous opposition by Defendants who would have continued to raise serious arguments concerning, among other things, the extent of any damages and injury to members of the Settlement Class, as well as the applicability of the Securities Act. Additionally, the Court denied, without prejudice, Plaintiff's motion for class certification, and there were significant risks that the Court would credit Defendants' arguments and either refuse to certify the Class or substantially reduce the size of the Class. Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class could have recovered nothing or an amount significantly less than the negotiated Settlement.

7.      The proposed Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert, and provides for the fair and equitable distribution of the Net Settlement Fund to Settlement Class Members.

8.      For the reasons set forth below, Lead Counsel believes that final approval of the Settlement and Plan of Allocation should be granted.

## II.      SUMMARY OF LEAD PLAINTIFF'S CLAIMS

9.      The fundamental allegation in this case is that for over two weeks in July 2017, Defendants unlawfully conducted an unregistered Initial Coin Offering ("ICO") for Tezos

"tokens" (also referred to as "XTZ" or "Tezzies") during which investors contributed digital currencies, including Bitcoin and/or Ethereum, in exchange for Tezos tokens.

10.     In the first 15 hours alone, Defendants collected $109 million worth of Bitcoin and Ethereum from investors. Upon its completion, the Tezos ICO was the largest in history, with Defendants having collected the equivalent of $232 million in Bitcoin and Ethereum (at July 2017 prices).

11.     Federal securities laws require any security that is offered or sold to be registered with the Securities and Exchange Commission ("SEC"). These laws are designed to protect the public by requiring various disclosures so that investors can better understand the security that is being offered or sold.

## III.   PROCEDURAL HISTORY

### A.   The Federal Litigation

12.     This Action was commenced on November 26, 2017. ECF No. 1. The Action was assigned to the Honorable Richard Seeborg, District Judge.

13.     By Order dated March 16, 2018, the Court consolidated the related actions,[2] appointed Arman Anvari ("Anvari") as the lead plaintiff, and approved LTL Attorneys LLP and Hung G. Ta, Esq. PLLC as Lead Counsel. ECF No. 101.

14.     On April 3, 2018, Anvari filed the Consolidated Complaint for Violations of the Federal Securities Laws. ECF No. 108. The Consolidated Complaint asserted claims under Sections 5 and 12(a)(1) of the Securities Act, as well as a claim for control person liability under Section 15 of the Securities Act, on behalf of a class of all investors who contributed digital currencies, including Bitcoin and/or Ethereum, to the Tezos ICO. The named defendants included defendants Dynamic Ledger Solutions, Inc. ("DLS"), Tezos Stiftung ("Tezos Foundation"), Kathleen and Arthur Breitman (the "Breitmans"), Timothy Cook Draper ("Draper"), Draper

---

[2] *See GGCC, LLC v. Dynamic Ledger Sols., Inc.*, Case No. 3:17-cv-06779, United States District Court, Northern District of California (filed November 26, 2017); *Okuso v. Dynamic Ledger Sols., Inc.,* Case No. 3:17-06829, United States District Court, Northern District of California (filed November 28, 2017); and *MacDonald v. Dynamic Ledger Sols., Inc.*, Case No. 3:17-cv-7095, United States District Court, Northern District of California (filed December 13, 2017).

1   Associates V Crypto LLC ("Draper Associates Crypto"), and Bitcoin Suisse AG ("Bitcoin
2   Suisse").

3       15.     On May 15, 2018, motions to dismiss were filed on behalf of the Tezos Foundation
4   [ECF Nos. 119-122], DLS [ECF Nos. 123-125], the Draper Defendants [ECF No. 117], and
5   Bitcoin Suisse [ECF No. 126].

6       16.     After the motions were fully briefed and the Court held oral argument, the Court
7   granted in part and denied in part Defendants' motions, by Order dated August 7, 2018. ECF No.
8   148. The Court's order dismissed all claims asserted against Bitcoin Suisse without leave to amend
9   and against the Draper Defendants with leave to amend. The Court's Order sustained the claims
10  against DLS, the Tezos Foundation, and the Breitmans.

11      17.     On September 6, 2018, the Court entered a Case Management Scheduling Order
12  which set deadlines for, among other things, the class certification briefing and completion of
13  discovery. ECF No. 165.

14      18.     Defendants answered the Complaint on September 14, 2018. ECF Nos. 168-171.

15      19.     On January 23, 2019, Plaintiffs Artiom Frunze and Pumaro LLC filed a motion for
16  class certification. ECF Nos. 193-195.

17      20.     On January 25, 2019, Anvari sought to withdraw as lead plaintiff, and to substitute
18  in his place named plaintiff Artiom Frunze. ECF No. 196. Class member Trigon Trading Pty. Ltd.
19  opposed the motion, and instead sought to appoint itself lead plaintiff in a competing motion. ECF
20  No. 198.

21      21.     On April 8, 2019, the Court granted the motion to withdraw Anvari as lead plaintiff,
22  denied the motion to substitute Anvari with Frunze as lead plaintiff, and granted the motion to
23  substitute Trigon as lead plaintiff. The Court also ordered that Trigon's counsel Block & Leviton
24  and Anvari's counsel Hung G. Ta, Esq. PLLC serve as co-lead counsel going forward, and denied
25  the pending class certification motion without prejudice. ECF No. 213.

26      22.     The Court's August 7, 2018 Order denying in part Defendants' motion to dismiss
27  the Complaint lifted the mandatory discovery stay imposed pursuant to the Private Securities
28  Litigation Reform Act of 1995 ("PSLRA"), and lead plaintiff Anvari (and later Trigon)

commenced discovery. Over the course of the litigation, Federal Plaintiffs' discovery efforts included, among other things: (1) serving and responding to multiple document requests, interrogatories and requests for admissions; (2) issuing document subpoenas to third parties; (3) reviewing and analyzing documents received from Defendants and non-parties; (4) preparing Plaintiffs Anvari, Pumaro LLC, and Frunze for deposition and attending their depositions; (5) preparing and filing multiple motions concerning the parties' discovery disputes [ECF Nos. 219; 222; 231; 235; 237]; (6) negotiating a Stipulated Protective Order and subsequent amendments [ECF Nos. 177-178; 217; 224-225; 228-230]; (7) engaging in multiple in-person and telephonic meet and confer conferences with Defendants; and (8) preparing a Freedom of Information Act request to the SEC for documents pertaining to the Tezos ICO.

23.     From August 2018 through October 2019, the parties engaged in a comprehensive fact discovery process. Following a November 22, 2019 mediation, the parties reached an agreement-in-principle to settle the case.

**B.     The State Litigation[3]**

24.     The State Litigation began with Andrew Baker filing the first complaint against defendants in San Francisco Superior Court on October 25, 2017.  Like the complaints filed in federal court, Baker also alleged that the ICO constituted an offering of unregistered securities. *Baker v. Dynamic Ledger Solutions, Inc. et al.*, Superior Court of California, County Francisco, Case No. CGC-17562144.

25.     Defendants removed the case to the U.S. District Court for the Northern District of California where it was ultimately assigned to this Court, prior to consolidation. *GGCC, LLC v. Dynamic Ledger Solutions, Inc.,* No. 17-cv-06779-RS, 2018 WL 1388488, at *1 (N.D. Cal. Mar. 16, 2018). Baker moved to remand the case to California state court.

26.     While the motion to dismiss in the federal case was pending, this Court remanded Baker's complaint to San Francisco Superior Court on April 1, 2018 following the Supreme

---

[3] Additional information concerning the State Litigation is set forth in the Declaration of James Taylor-Copeland in Support of Lead Counsel's Motion for Final Approval of Class Action Settlement and Plan of Allocation, filed concurrently herewith.

Court's ruling in *Cyan*, a case that clarified that federal securities cases could be heard in state courts.

27.     Baker then filed a First Amended Complaint which, like the federal case, asserted violations of Sections 5 and 12(a)(1) of the Securities Act, as well as a claim for control person liability under Section 15 of the Securities Act against the same defendants. Baker also began serving discovery requests on DLS.

28.     On April 24, 2018, Trigon also filed a new action in San Mateo Superior Court asserting the same securities laws claims on behalf of the same class. *Trigon Trading Pty. Ltd., et al. v. Dynamic Ledger Solutions, Inc. et al.,* Superior Court of California, County of San Mateo, Case No. 18CIV02045.

29.     DLS and the Draper Defendants moved to stay both the *Baker* and *Trigon* actions, and the courts in both cases stayed the actions pending the resolution of a coordination petition filed by Trigon.

30.     On August 16, 2018, the Judicial Council ordered the *Baker* and *Trigon* actions coordinated, after which the two actions proceeded in a coordinated manner ("State Coordinated Proceeding"). After the first status conference in the State Coordinated Proceeding held on October 22, 2018, the parties negotiated a protective order and ESI protocol.

31.     Following its lead plaintiff appointment in the instant federal action, Trigon requested dismissal without prejudice from the State Coordinated Proceeding on June 25, 2019, which the court granted on June 26, 2019.

32.     Baker filed a Second Amended Complaint on May 16, 2019 and a Third Amended Complaint on September 17, 2019.  After multiple rounds of demurrer briefing, a renewed motion to stay, briefing regarding jurisdiction and service of process on the Tezos Foundation, and numerous discovery disputes, the parties in the State Coordinated Proceeding joined the federal case parties in the November 22, 2019 mediation and likewise reached an agreement-in-principle to settle the case.

## IV.   DISCOVERY

33.     Following the denial, in part, of Defendants' motion to dismiss the Consolidated

Complaint, Federal Plaintiffs engaged in a comprehensive discovery process, which included, among other things: (1) serving and responding to multiple document requests, interrogatories and requests for admissions; (2) issuing document subpoenas to various third parties; (3) reviewing and analyzing more than 29,000 pages of documents received from Defendants and non-parties, as well as an additional set of core documents produced by Defendants in connection with the second mediation; (4) preparing Plaintiffs Anvari, Pumaro LLC, and Frunze for deposition and attending their depositions; (5) preparing and filing multiple motions concerning the parties' discovery disputes, including issues pertaining to the date range for discoverable material [ECF No. 219]; the assertion of the marital communications privilege by Defendants Kathleen and Arthur Breitman [ECF Nos. 231; 235; 237]; (6) negotiating a Stipulated Protective Order and subsequent amendments [ECF Nos. 177-178; 217; 224-225; 228-230]; (7) engaging in multiple in-person and telephonic meet and confer conferences with Defendants; and (8) preparing a Freedom of Information Act request to the SEC for documents pertaining to the Tezos ICO.

34.     Had litigation continued, Plaintiffs faced significant challenges and increased expenses relating to discovery, particularly because the Tezos Foundation, the entity that maintained custody of investors' investments in the Tezos ICO, is based in Switzerland. Preparing this case for trial would require Plaintiffs to conduct substantial discovery at great expense and under foreign procedures. Indeed, throughout the discovery process, the Tezos Foundation consistently objected to discovery requests on the basis that it was based in Switzerland, and that Swiss, European, and other non-U.S. laws related to personal data and privacy barred it from producing discovery.

## V.    NEGOTIATION OF THE SETTLEMENT

35.     Throughout this Action, the parties engaged in arm's-length settlement discussions.

36.     On December 14, 2018, then-lead plaintiff Anvari and the Defendants conducted the first mediation in San Francisco, California with Eric Green acting as the mediator. The mediation was unsuccessful.

37.     On November 22, 2019, the parties conducted a second mediation in New York with the assistance of the Hon. Layn Phillips, a former United States District Judge and a well-

regarded private mediator with Phillips ADR Enterprises ("Phillips ADR"), who has considerable knowledge and expertise in the field of federal securities law.[4]

38.     Prior to the second mediation session, Plaintiffs and Defendants exchanged lengthy mediation statements on the salient factual and legal issues expected to arise during the discussions. During the full-day session, the parties presented their respective legal positions in the case, and submitted liability and damages figures and analyses.

39.     During these discussions, the parties discussed damages and the definition and scope of the class, among other things. Ultimately, the parties reach an agreement-in-principle that led to this Settlement. The entire process involved significant disputed issues, and even after an agreement-in-principle had been reached, negotiations about specific terms of the settlement agreement continued.

40.     At the time the parties agreed to settle, Plaintiffs and Co-Lead Counsel had developed a detailed and realistic understanding of the strengths and weaknesses of the claims and defenses asserted. This knowledge was based on, among other things, Co-Lead Counsel's investigation before filing a comprehensive consolidated amended complaint; the briefing and orders on Defendants' motions to dismiss; the review and analysis of more than 29,000 pages of documents produced by Defendants; the review of additional documents and other information produced by third parties, including entities involved in providing web-hosting services for the Tezos ICO; Co-Lead Counsel's understanding of Defendants' strategy and theories based on their depositions of the named Plaintiffs; consultations with experts on the functions of the blockchain; an additional core set of documents produced by Defendants in connection with the mediation;

---

[4] According to the Phillips ADR website, for the last decade, Judge Phillips has presided over cases that have collectively resulted in several billion dollars in settlements annually. As a judge, he presided over more than 140 trials in Oklahoma, New Mexico, and Texas. He also sat by designation on the United States Court of Appeals for the Tenth Circuit in Denver, Colorado, where he participated in numerous panel decisions and published opinions. As a result of his trial work, Judge Phillips was elected into the American College of Trial Lawyers. He has the dual honor of being named by LawDragon Magazine as one of the "Leading Judges in America" and as one of the "Leading Litigation Attorneys in America." In August 2016, Judge Phillips was named as one of the top seven mediators in the United States of America by Chambers and Partners. [*see* http://www.phillipsadr.com/bios/layn-phillips/].

and extensive settlement negotiations, including two all-day mediation sessions.

## VI.   SUMMARY OF THE SETTLEMENT

41.     The Settlement provides that the Tezos Foundation will pay $25 million in cash into an Escrow Account for the benefit of the Settlement Class. The "Settlement Class" is defined in the Settlement Agreement as "all persons and entities who, directly or through an intermediary, contributed bitcoin and/or ether to what Plaintiffs describe as the Tezos blockchain 'Initial Coin Offering' and what Defendants describe as a fundraiser conducted between July 1, 2017 and July 13, 2017, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of Arthur Breitman, Kathleen Breitman, Johann Gevers, or Timothy Draper; (iii) any person who was an officer or director of the Foundation, DLS, Draper Associates, or Bitcoin Suisse during the Fundraiser and any members of their immediate families; (iv) any parent, subsidiary, or affiliate of the Foundation, DLS, Draper Associates, or Bitcoin Suisse; (v) any firm, trust, corporation, or other entity in which any Defendant or any other excluded person or entity had a controlling interest during the Fundraiser; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion." Settlement Agreement, at ¶ 1.28.

## VII.   LEAD PLAINTIFF'S COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

42.     Pursuant to the Court's Preliminary Approval Order, Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program whereby through records maintained by Defendants, beginning on May 29, 2020, the Court-appointed Claims Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), caused, among other things, the Notice and Claim Form (together, the "Notice Packet") to be e-mailed to all potential Settlement Class Members. *See* Declaration of  Nicholas Schmidt Regarding (A) Electronic Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Online Case Website Advertisements; (D) Call Center Services; (E) Posting of Notice and Claim Form on Settlement Website; and (F) Report on Objections or Requests for Exclusion Received to Date, dated July 28, 2020, ¶ 5 ("Schmidt Decl.") (attached hereto as Exhibit 1). As of June 18, 2020, a

total of 118,979 Notice Packets have been e-mailed to potential Settlement Class Members (two emails to approximately 59,490 recipients). *Id*. ¶¶ 5, 7. On June 1, 2020, the Summary Notice was published in PR Newswire. *Id*. ¶ 8. The Notice and Claim Form were also posted, for review and easy downloading, on www.TezosFoundationSettlement.com (the "Settlement Website"). *Id*. ¶ 11. On June 1, 2020, the Claims Administrator caused advertisements to begin running on websites associated with Tezos and cryptocurrency in general, including on Twitter, Reddit, the Google Display Network, and the Baidu Display Network. *Id*. ¶ 6. These advertisements contained links to the Settlement Website. *Id*.

43.     The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Settlement Class. The Notice also provided the deadlines for objecting, seeking exclusion, submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court.

44.     As set forth in the Preliminary Approval Order, the deadline for Class Members to object to the Settlement, the Plan of Allocation, or to the application for attorneys' fees and expenses – or to exclude themselves from the Class – is August 6, 2020. While these deadlines have not yet passed, to date, not a single Class Member has objected to the settlement, and only two have requested exclusion from the Settlement. *See* Schmidt Decl. ¶¶ 14, 16. Should any objections or requests for exclusion be received, Lead Plaintiff will address them in its reply papers, which are due August 21, 2020.

## VIII.   RISKS OF CONTINUED LITIGATION

45.     Lead Plaintiff believes that it developed substantial evidence during discovery that support its claims. Lead Plaintiff also realized, however, that continued litigation would have been costly, risky, and drawn out. Lead Plaintiff and Lead Counsel carefully considered these risks during the period leading up to the Settlement and throughout the settlement discussions with Defendants and the mediator.

46.     In agreeing to settle, Lead Plaintiff and Lead Counsel weighed, among other things,

1   the substantial and immediate cash benefit to Settlement Class Members against: (i) the

2   uncertainties associated with trying complex securities cases; (ii) the difficulties and challenges

3   involved in establishing damages and an injury to the members of the Settlement Class, as well as

4   risks relating to the U.S. securities laws and Contribution Terms; (iii) the difficulties and

5   challenges involved in certifying a class; (iv) the fact that, even if Lead Plaintiff prevailed at

6   summary judgment and trial, any monetary recovery could have been substantially less than the

7   Settlement Amount; and (v) the inevitable delays that would follow even a favorable final

8   judgment, including appeals.

9       47.     The principal risks are discussed below.

10      **A.     Risks Related to Establishing an Injury to Class Members**

11      48.     Lead Plaintiff and Lead Counsel recognize that, while they prevailed at the motion

12  to dismiss stage, the principal risk of continuing the litigation of this Action was establishing

13  damages and an injury to the members of the Settlement Class.

14      49.     In the Tezos ICO, Defendants denominated the price of XTZ tokens in Bitcoin.

15  Specifically, Defendants set the price of one XTZ token at 0.0002 BTC. *See* Contribution Terms,

16  ¶ 28 (attached hereto as Exhibit 16). Investors paid for their XTZ investments using either Bitcoin

17  or Ethereum, but in the case of the Ethereum investors, the Ethereum was first converted to the

18  Bitcoin equivalent at the exchange rate prevailing at the time of purchase. *See Id.* ¶ 25.

19      50.     The Tezos blockchain became active in September 2018. XTZ were then listed on

20  numerous cryptocurrency exchanges, and a liquid, global market for XTZ trading had developed

21  by the time of the Settlement. The vast majority of ICO investors claimed their XTZ and thus had

22  been trading their XTZ for more than a year prior to when the Settlement was reached in principle

23  on November 25, 2019.

24      51.     For considerable periods of time since the commencement of this Action, including

25  the period since the Settlement in principle on November 25, 2019, the value of an XTZ token,

26  measured in Bitcoin, was higher than the value of Bitcoin paid to purchase the XTZ token in the

27  Tezos ICO. For example, as of the date of filing this motion, 6,000 XTZ were worth $17,100,

28  whereas one BTC was worth considerably less, at $10,948. As a result, many Class Members who

sold their XTZ tokens did not suffer a loss and would have no claims under the Securities Act, because they received more Bitcoin from their sale than they paid in Bitcoin to purchase their XTZ.

52.     With respect to any Settlement Class Member who has not sold but still retains their XTZ, these investors also would not be experiencing a loss on their XTZ investments. Because XTZ trades at higher prices than the Bitcoin paid to purchase them, these investors would have no incentive to rescind their purchases of XTZ tokens, but instead would be incentivized to retain their XTZ tokens or sell them on the cryptocurrency exchanges.

53.     Thus, Plaintiffs were confronted with the significant risk of an ever-shrinking group of members of the Settlement Class who could establish an actual injury.

54.     Additionally, the Tezos blockchain allowed owners of XTZ to "bake" their tokens on the blockchain, and receive additional XTZ as rewards, in a manner similar to "dividends." Numerous XTZ holders commenced baking upon receiving their tokens, and Defendants would have accordingly argued that such investors, by engaging in baking and the receipt of XTZ baking rewards, waived their right to rescind. Defendants also would have argued that such dividends further diminished the actual damages suffered by investors, to the extent there were any damages at all.

55.     Lead Plaintiff also recognizes the significant risk that would result if Defendants' proposed models of calculating damages were accepted. Defendants argued in the Joint Case Management Statement that the damages should be calculated by comparing the U.S. dollar value of the consideration paid for the XTZ tokens, with the U.S. dollar value of the XTZ tokens when sold. ECF No. 162, at 5:24-26. Under this measure, there would be almost no damages at all, because at almost all relevant times since the Tezos ICO, XTZ tokens have traded at a higher dollar than the amount paid to acquire the tokens at the time of the ICO. Effectively, this would leave, as injured Class Members, just those investors who have not been able to access their tokens.

56.     As an alternative measure, Defendants also argued that damages should be calculated not on the Bitcoin or Bitcoin-equivalent contributed in the Tezos ICO, but on the actual consideration that investors used to make their investment. If accepted, this would mean that investors who used Ethereum to purchase their XTZ would not be able to establish an injury. At

the time of the ICO in July 2017, it cost approximately 10 Ethereum to purchase 5,000 XTZ. Just before the Settlement was concluded in principle, the value of 5,000 XTZ was worth approximately $7,000, whereas 10 Ethereum was worth approximately $1,500.

57.     Had litigation of this Action continued, Plaintiffs' proposed damages methodology would have been vigorously attacked by Defendants, and issues relating to damages would likely have been vigorously contested and the subject of a "battle of the experts," resulting in substantial risk and uncertainty as to the damages, if any, that could ultimately be recovered.

58.     In addition to the foregoing challenges, estimates of total damages presented by the parties during mediation discussions ranged from less than $1 million to over $150 million U.S. dollars. Thus, the $25 million cash Settlement represents an excellent result in light of the potential that even if Plaintiffs ultimately prevailed, any judgment at trial could have been significantly lower.

## B.     Risks Related to the Application of the U.S. Securities Laws

59.     Continued litigation also presented the risk that Defendants would press their argument that XTZ was not a security. Establishing XTZ as a security posed challenges in that the investment in question involved a novel cryptocurrency issued on a functioning, automated blockchain. Defendants would have argued that Tezos investors were motivated not by a desire to make an investment with the intention to make a profit off the efforts of others, but by a desire to participate in the XTZ network.

60.     Plaintiffs also faced the challenge of overcoming Defendants' argument that, under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), the Securities Act does not apply to the Tezos ICO because Defendants did not incur "irrevocable liability" to deliver the XTZ tokens to non-U.S. purchasers in the U.S. In denying Defendants' motion to dismiss and holding that irrevocable liability was incurred in the U.S., regardless of the location of Tezos investors, the Court premised its decision, in part, on the fact that the server hosting Defendants' ICO investment website was located in Arizona. ECF No. 148, at 9:17, 14:6-16. Discovery revealed, however, that the Arizona server was controlled by a company called Cloudflare, a "Content Delivery Network" service that Defendants used to relay copies of their ICO website through geographically

distributed access points in order to ensure faster access by users in different locations around the world. The Arizona server itself, however, did not host the original ICO website. According to Defendants' discovery responses, the primary, original "Contribution Software System" was hosted on Amazon Web Services cloud data centers in or around Frankfurt, Germany.

61.     Thus, establishing XTZ as a security would have required Plaintiffs to offer evidence that irrevocable liability was incurred when the Tezos ICO investments were recorded on the blockchain, and that the blockchains that purchasers used to purchase XTZ were hosted and operated on computers that were to a large extent housed within U.S. borders and reliant on U.S.-dominated internet infrastructure. While Plaintiffs were prepared to offer such evidence, Lead Plaintiff and Lead Counsel recognized the risk that Defendants might succeed on one or more of their arguments concerning the applicability of the Securities Act.

### C.     Risks Concerning the Contribution Terms

62.     In rejecting Defendants' arguments concerning the application of the Contribution Terms at the pleading stage, the Court made clear in its decision that "evidence of … 'actual knowledge' of the agreement may provide the Foundation with an alternate method of breathing life into the Contribution Terms." ECF No. 148, at 12:10-19. Defendants made clear their intention to argue that, with respect to any plaintiffs who "reviewed the Contribution Terms" prior to investing, the "case would be subject to dismissal in deference to proceedings in Switzerland, based on the forum-selection clause in the Contribution Terms." ECF No. 162, at 13:1-6. Despite Plaintiffs' argument that the Contribution Terms were invalid as a matter of law because they were not incorporated by reference on the Tezos ICO investment website, Defendants successfully applied to this Court to obtain discovery into the Lead Plaintiff's actual knowledge of the Contribution Terms. ECF No. 165, at 1. Defendants also would have pressed this issue at the class certification stage, arguing that the question of actual knowledge entailed individualized inquiries that made the proposed class incohesive.

## IX.     THE PROPOSED PLAN OF ALLOCATION

63.     Here, Plaintiffs prepared the Plan of Allocation after careful consideration of Plaintiffs' theories of liability and damages. Plaintiffs retained and consulted with economic expert

Chad Coffman of Global Economics Group to opine on the creation of the Plan of Allocation. The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan. *See* Schmidt Decl. ¶¶ 15-16.

64.     The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a pro rata basis after determining the Settlement Class Members' Recognized Loss Amounts. Investors who sold their tokens prior to the date the Parties concluded a Settlement in principle are assigned a recognized loss based on any loss suffered in the sale of their tokens, measured in Bitcoin. *See* Schmidt Decl. Ex. B, Notice at 11, ¶ 5(i). Investors who held their tokens at the time of a Settlement in principle were entitled to a Recognized Loss calculated based on the BTC/XTZ price at the time the Settlement was reached (*i.e.*, 0.000178 BTC/XTZ, or those who received fewer than 5,618 XTZ per BTC), but in no event is any investor in this category entitled to less than 0.00001 BTC per XTZ, to account for surrendering any future right to a recessionary remedy should the value of XTZ become significantly lower. *See Id.* at 11, ¶ 5(ii). Finally, investors who have never claimed their tokens—and who through this Settlement and claims process agreed to never attempt to claim those tokens—were assigned a Recognized Loss equal to their investment or contribution during the ICO, measured in Bitcoin. *See Id.* at 11, ¶ 5(iii). The Plan of Allocation then provides a *pro rata* distribution based on each claimant's Recognized Loss.

65.     Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distribution will be made to eligible Authorized Claimants using wires, PayPal, and checks. Schmidt Decl. Ex. B, Claim Form at 4.

66.     After an initial distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of uncashed checks or otherwise), after at least six (6) months from the date of initial distribution, Co-Lead Counsel will, if feasible and economical, re-distribute the balance among eligible Authorized Claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. *See* Stipulation ¶ 6.8. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding

Notice and Administration Expenses or Taxes, if any, will be contributed to a not for profit charitable organization serving the public interest that is not affiliated with Plaintiffs or Co-Lead Counsel, subject to Court approval.

67.     During the Preliminary Approval Hearing, the Court asked for specific details about the recipient of any funds that are not feasible or economical to reallocate. Plaintiffs' Counsel determined to recommend any non-distributable residual balance to the San Francisco Food Bank d/b/a San Francisco-Marin Food Bank, a 501(c)(3) not for profit organization. Notice of this election was posted to the Settlement Website on July 23, 2020. Schmidt Decl. ¶ 12.

68.     In sum, the Plan of Allocation, developed in consultation with Lead Plaintiff's consulting damages expert, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants, does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiff and is thus fair, reasonable, and adequate and should be approved.

## X.     LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS FAIR AND REASONABLE

69.     For Plaintiffs' Counsel's efforts on behalf of the Class, Lead Counsel is applying to the Court for an award of attorneys' fees of 33.33% ($8,333,333) to be paid from the Settlement Fund. The percentage method is the standard and appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interests of Lead Plaintiff and the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. Use of the percentage method has been recognized as appropriate by the Supreme Court and Ninth Circuit for cases of this nature where an all-cash common fund has been recovered for the Class.

70.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in greater detail in the Fee Brief, a 33.33% fee award is consistent with fee award percentages granted in this Circuit in similar complex, contingent litigation, and is fair and reasonable in light of all the circumstances in this Action.

71.     To date, there have been no objections to the request for attorneys' fees and litigation expenses.

### A.     The Settlement Benefit Achieved

72.     Courts in this Circuit have consistently recognized that the result achieved is the most significant factor to be considered in making a fee award. Here, the $25 million Settlement is an excellent result. The cash recovery has been obtained solely through the efforts of Plaintiffs' Counsel at a fairly advanced stage of the litigation, but without the substantial expense, delay, risk, and uncertainty of continued litigation and trial. As a result of the Settlement, Class Members will receive compensation for their losses in Tezos and avoid the substantial expense, delay, and uncertainty of continued litigation.

73.     The Settlement obtained provides an immediate and substantial benefit to the Class and supports Lead Counsel's fee request.

### B.     The Substantial Risks of the Litigation

74.     This Declaration and the memoranda in support of the Settlement and fee request describe the substantial risks of the litigation. From the outset, this Action was an especially difficult and highly uncertain securities case, as evidenced by the significant risk that the case would be dismissed on jurisdictional grounds. Continuing this litigation presented the principal risk of an ever-shrinking group of members of the Settlement Class who could establish an actual injury. Since November 25, 2019, when the parties agreed in principle to the Settlement, Tezos tokens have increased substantially in value and are now trading significantly above the value of the consideration paid by Settlement Class Members. In short, if the Action were to go to trial today, no member of the Settlement Class who is still holding the Tezos tokens would have any incentive to seek rescission or would otherwise be damaged under Section 12(a)(1) of the Securities Act.

75.     Continued litigation posed additional challenges, including: establishing that Tezos tokens are a security; establishing the applicability of the Securities Act; and successfully rebutting Defendants' argument that the Contribution Terms governed the Tezos ICO, and that any investor who had actual notice of these terms should be bound by the terms, including its forum selection

1    and class action waiver provisions.

2        76.        Although Lead Counsel believes that the case against Defendants is strong, there is

3    no question that to prevail here, Lead Plaintiff would have had to overcome a number of significant

4    legal and factual challenges. Given the estimated damages range presented by the parties at

5    mediation, the $25 million Settlement is a highly favorable result under any scenario. When taking

6    into consideration the substantial risks involved this case, Lead Counsel's fee request is fair and

7    reasonable.

8        **C.        The Skill Required and the Quality of Work**

9        77.        The requested fee is also warranted in light of the extensive efforts on the part of

10   Plaintiffs' Counsel, as outlined above, required to produce this result.

11       78.        Given the nature of Tezos tokens, this litigation presented novel legal and factual

12   issues that made the case more complex than a typical securities class action case. These issues

13   included, among other things, the applicability of U.S. securities laws to a global issuance of digital

14   tokens using multiple transnational blockchain networks, as well as the significant hurdles related

15   to discovery due to the presence of Defendants and relevant third-parties who resided outside of

16   the United States.

17       79.        As evidenced by their firm resumes, Plaintiffs' Counsel are among the most

18   experienced and skilled practitioners in the corporate and securities litigation fields, and the firms

19   have long and successful track records in securities cases throughout the country, including within

20   this Circuit. *See* B&L Decl. Ex. A; Ta Decl. Ex. A; Hagens Decl. Ex. A; LTL Decl. Ex. A; RGRD

21   Decl. Ex. A; JTC Decl. Ex. A; Restis Decl. Ex. A; LDG Decl. Ex. A. I believe that Plaintiffs'

22   Counsel's reputations and experience in complex cases facilitated Plaintiffs' Counsel's ability to

23   negotiate the favorable Settlement on behalf of the Class.

24       80.        Defendants are each represented by highly experienced and prestigious counsel,

25   who vigorously represented their clients. Dynamic Ledger Solutions, Inc. was represented by

26   Cooley LLP and Baker Marquart LLP; the Tezos Foundation by Davis Polk & Wardell LLP and

27   Goodwin Procter LLP, respectively. I believe the fact that Plaintiffs' Counsel achieved this

28   excellent Settlement in the face of this formidable legal opposition further evidences the quality of

1    its work.

2        81.      Plaintiffs' Counsel spent approximately 13,045 hours of time on this case. This

3    time was spent vigorously pursuing this litigation from its outset by, among other things: (i)

4    conducting an extensive investigation into the allegations surrounding the Tezos blockchain

5    "Initial Coin Offering" ("ICO") (described by Defendants as a fundraiser) conducted between July

6    1, 2017 and July 13, 2017, inclusive; (ii) a thorough review of public information such as interview

7    transcripts, news articles, Tezos marketing materials, and related litigation; (iii) drafting the highly

8    detailed First Amended Consolidated Complaint based on Plaintiffs' Counsel's investigation; (iv)

9    researching, briefing, and arguing oppositions to three separate sets of Defendants' motions to

10    dismiss the complaints; (v) engaging in and putting forth extensive and significant efforts with

11    respect to the related State Litigation;[5] (vi) serving and responding to multiple document requests,

12    interrogatories and requests for admissions; (vii) issuing document subpoenas to third parties; (viii)

13    reviewing and analyzing documents received from Defendants and non-parties; (ix) preparing

14    Plaintiffs Anvari, Pumaro LLC, and Frunze for deposition and attending their depositions; (x)

15    preparing and filing multiple motions concerning the parties' discovery disputes [ECF Nos. 219;

16    222; 231; 235; 237]; (xi) negotiating a Stipulated Protective Order and subsequent amendments

17    [ECF Nos. 177-178; 217; 224-225; 228-230]; (xii) engaging in multiple in-person and telephonic

18    meet and confer conferences with Defendants; (xiii) preparing a Freedom of Information Act

19    request to the SEC for documents pertaining to the Tezos ICO; and (xiv) engaging in intensive,

20    arm's-length settlement negotiations.

21        82.      Moreover, Plaintiffs' Counsel will continue to work towards effectuating the

22    Settlement in the event the Court grants final approval. No additional compensation will be sought

23    for this work.

24        83.      Plaintiffs' Counsel expended a total of 13,045.75 hours prosecuting this Action.

25

26    _____

27    [5] *See Baker v. Dynamic Ledger Solutions, Inc. et al.,* Superior Court of California, County
Francisco, Case No. CGC-17562144; *Trigon Trading Pty. Ltd., et al. v. Dynamic Ledger
Solutions, Inc., et al.*, Superior Court of California, County of San Mateo, Case No.
28    18CIV02045.

The billing rates for partners range from $750 to $1,325, associates' rates range from $250 to $745, and paralegals' rates range from $150 to $350. Detailed information concerning the rates and time billed by Plaintiffs' Counsel on this case is provided in the accompanying declarations. *See* B&L Decl. ¶ 4 & Ex. B; Ta Decl. ¶ 6 & Ex. B; Hagens Decl. ¶ 4 & Ex. B; LTL Decl. ¶ 10 & Ex. B; RGRD Decl. ¶ 4 & Ex. B; JTC Decl. ¶ 4 & Ex. B; Restis Decl. ¶ 17 & Ex. B; LDG Decl. ¶ 11 & Ex. B. As set forth below, Plaintiffs' Counsel expended a total of 13,045.75 hours prosecuting this Action, equating to a lodestar of $9,430,205.50.

| LAW FIRM: | HOURS | LODESTAR |
|---|---|---|
| Block & Leviton LLP | 1,565.4 | $1,149,756 |
| Hung G. Ta, Esq. PLLC | 4,085.55 | $3,245,546 |
| Hagens Berman Sobol Shapiro LLP | 1,008.0 | $618,360 |
| LTL Attorneys LLP | 1,270.1 | $930,855 |
| Robbins Geller Rudman & Dowd LLP | 2,660.2 | $1,711,514 |
| Taylor-Copeland Law | 763.8 | $591,945 |
| The Restis Law Firm, P.C. | 868.3 | $638,072 |
| Lite DePalma Greenberg, LLC | 824.4 | $544,157 |
| **TOTAL** | **13,045.75** | **$9,430,205.50** |

84.     Accordingly, the requested fee of one-third of the cash recovery, net of expenses, which equates to approximately $8.333 million, represents a negative multiplier of 0.88—*i.e.*, it would not fully compensate counsel for their hourly rates. This negative multiplier of 0.88 is below the multiplier range of one to four frequently used as a cross check. Given the extraordinary results achieved in this Action, Plaintiffs' Counsel's 13,045 hours, valued at $9,430,205, support the reasonableness of the fee request.

### D.     The Contingent Nature of the Fee

85.     This Declaration and the memoranda in support of the Settlement and fee request describe the substantial risks of the litigation. Those same difficulties also constituted risks that

1    Plaintiffs' Counsel might never be paid for their efforts. Indeed, Plaintiffs' Counsel have not been

2    compensated for any time or expense since this case began in 2017.

3         86.      Courts consistently recognize that the risk of receiving little or no recovery is a

4    major factor in considering an award for attorneys' fees. This risk is even more pronounced in

5    securities class actions. A study of securities class actions filed after the passage of the PSLRA

6    between 1997 and 2018, found that 43% of the cases filed were dismissed in defendants'' favor.

7    *See Securities Class Action Case Filings, 2019 Year in Review* (Cornerstone Research 2020) at 16

8    (attached hereto as Exhibit 17). Further, in 2019, dismissals outnumbered settlements in securities

9    cases by a rate of more than two to one. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends*

10   *in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 2020) at 9 Figure 6

11   (attached hereto as Exhibit 18).

12        87.      Lead Counsel knows from experience that despite the most vigorous and competent

13   of efforts, attorneys' success in contingent litigation such as this is never assured. Even plaintiffs

14   who get past summary judgment and succeed at trial may find a judgment in their favor overturned

15   on appeal or on a post-trial motion. Because the fee to be awarded in this matter is entirely

16   contingent, the only certainty from the outset was that there would be no fee without a successful

17   result and that such a result would be realized only after a lengthy and difficult effort. As discussed

18   in greater detail above, this case was fraught with significant risk factors concerning liability and

19   damages. Indeed, were this Settlement not achieved, Lead Plaintiff and Lead Counsel faced the

20   very real threat of an ever-dwindling class size with little to no damages. Lead Counsel therefore

21   believe that the contingent nature of counsel's representation strongly favors approval of the

22   requested fee.

23   **XI.    REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES IS FAIR
     AND REASONABLE**

24

25        88.      Plaintiffs' Counsel are also moving for reimbursement of $230,017 in litigation

26   expenses that were reasonably and necessarily incurred in prosecuting and resolving this Action,

27   as outlined in the accompanying declarations. Plaintiffs' Counsel advanced all of the litigation

     expenses. *See* B&L Decl. ¶ 5; Ta Decl. ¶ 8; Hagens Decl. ¶ 5; LTL Decl. ¶ 12; RGRD Decl. ¶ 5;
28
     JTC Decl. ¶ 5; Restis Decl. ¶ 19; LDG Decl. ¶ 13.

89.     As detailed below, Plaintiffs' Counsel is seeking reimbursement of a total of $203,017 in out-of-pocket costs and expenses:

| LAW FIRM: | EXPENSES |
|---|---|
| Block & Leviton LLP | $52,267.92 |
| Hung G. Ta, Esq. PLLC | $56,292.47 |
| Hagens Berman Sobol Shapiro LLP | $14,808.45 |
| LTL Attorneys LLP | $19,867.90 |
| Robbins Geller Rudman & Dowd LLP | $45,351.37 |
| Taylor-Copeland Law | $4,735.75 |
| The Restis Law Firm, P.C. | $2,872.83 |
| Lite DePalma Greenberg, LLC | $6,821.24 |
| TOTAL EXPENSES: | $203,017.93 |

90.     From the beginning of the case, Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced by them to prosecute this Action. Thus, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

91.     Of the total amount of litigation expenses, approximately $30,987 or 15% was expended on Plaintiffs' experts and consultants. Plaintiffs retained and consulted with experts in the fields of loss causation and damages to assist in the prosecution of the Action. Plaintiffs' experts on damages also assisted Lead Counsel during the mediation and settlement negotiations with the Defendants and with the development of the proposed Plan of Allocation.

92.     Costs related to out-of-town travel for court appearances and depositions amounted to $84,025 or 41% of the total out-of-pocket litigation expenses.

93.     Another substantial component of Plaintiffs' Counsel's out-of-pocket litigation

expenses was for mediation fees. Plaintiffs' Counsel's share of the mediation fees amounted to $35,106 or 17% of the total out-of-pocket litigation expenses.

94.     Other substantial expenses included $16,545 for online legal and factual research as well as for document review and litigation support, including costs for an outside vendor to create and maintain the electronic database through which the large volume of documents produced in the Action could be maintained and reviewed; and $14,010 related to service – primarily due to the costs associated with serving process on non-U.S. Defendants and third-parties.

95.     The other out-of-pocket litigation expenses for which Plaintiffs' Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. Those expenses include, among others, court fees and copying costs.

96.     In view of the complex nature of this Action, the litigation expenses incurred were reasonably and necessary to pursue the interests of the Class. Accordingly, Lead Counsel respectfully submit that the request for expenses be granted.

## XII.     THE REQUESTED AWARDS FOR PLAINTIFFS ARE FAIR AND REASONABLE

97.     Plaintiffs' Counsel request that the Court approve awards for Lead Plaintiff Trigon Trading Pty. Ltd. ($7,500), and additional Federal Plaintiffs Pumaro LLC ($7,500), Artiom Frunze ($7,500), Hayden Hsiung ($5,000), and Gijs Matser ($5,000), and to State Litigation Plaintiff Andrew Baker ($5,000). An award for reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. § 78u-4(a)(4).

98.     As set forth in the accompanying declarations, Federal Plaintiffs and State Litigation Plaintiff spent a significant amount of time contributing to the litigation and benefitting the class by reviewing the relevant documents; staying apprised of developments in the case and making themselves available to Plaintiffs' Counsel; providing Plaintiffs' Counsel with extensive information and materials regarding their investments; and conferring with counsel throughout the litigation. *See* Trigon Decl. ¶¶ 3-6, 10; Pumaro Decl. ¶¶ 3-6, 11; Frunze Decl. ¶¶ 3-6, 10; Hsiung Decl. ¶¶ 3-6, 10; Matser Decl. ¶¶ 3-6, 10; Baker Decl. ¶¶ 3-6, 10. Additionally, Federal Plaintiffs,

Pumaro LLC and Artiom Frunze, attended full-day depositions that were taken by Defendants. *See* Pumaro Decl. ¶ 5; Frunze Decl. ¶ 5.

99.     Moreover, the Notice stated that Lead Counsel would request reimbursement of litigation costs and expenses in an amount not to exceed $300,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Federal Plaintiffs and State Litigation Plaintiff directly related to their representation of the Settlement Class. To date, there have been no objections to such a request. Thus, Lead Counsel believes that the requested awards for the time and effort Federal Plaintiffs and State Litigation Plaintiff have expended on behalf of the Settlement Class is fair and reasonable.

## CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court: (1) grant final approval of the Settlement and Plan of Allocation as fair, reasonable, and adequate; (2) approve the application for an award of attorneys' fees of 33.33% of the Settlement Fund, plus reimbursement of $203,017.93 in litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving this Action; (3) services awards totaling $37,500 for Federal Plaintiffs and for State Litigation Plaintiff Andrew Baker; and (4) reimbursement of $475 in litigation expenses actually incurred by Lead Plaintiff Trigon Trading Party Ltd. I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of July 2020, at Boston, Massachusetts.

By: /s/ Jeffrey C. Block
Jeffrey C. Block (*pro hac vice*)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
jeff@blockesq.com
*Co-Lead Counsel and Counsel to*
*Lead Plaintiff Trigon Trading Pty. Ltd.*