**HUNG G. TA, ESQ. PLLC**
Hung G. Ta (SBN 331458)
JooYun Kim
Angus Ni
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | Master File No. 17-cv-06779-RS<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES**<br><br>Date:    Oct. 29, 2020<br>Time:    1:30 p.m.<br>Dept.:    Courtroom 3, 17th Floor<br>Judge:    Hon. Richard Seeborg |

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT**, on October 29, 2020 at 1:30 p.m., before the Honorable Richard Seeborg of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Hung G. Ta, Esq. PLLC will move before this Court for an order distributing attorneys' fees according to each law firm's respective lodestar, or in the alternative, disqualifying Block & Leviton LLP from making any fee allocation. This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Hung G. Ta and exhibits attached thereto, the Proposed Order filed herewith, all pleadings and papers filed here, the arguments made regarding this matter, and any other information properly before the Court.

Respectfully Submitted,

Date: September 23, 2020

HUNG G. TA, ESQ. PLLC

By:  _s/ Hung G. Ta_
Hung G. Ta
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel and Counsel to Plaintiffs'*
*Pumaro LLC, Artiom Frunze, Hayden Hsiung,*
*and Gijs Matser*

Enoch H. Liang
LTL ATTORNEYS LLP
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
enoch.liang@ltlattorneys.com

James M. Lee
Caleb H. Liang
LTL ATTORNEYS LLP
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William R. Restis
THE RESTIS LAW FIRM, P.C.
402 West Broadway, Suite 1520
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joseph J. DePalma
Bruce D. Greenberg
Jeremy Nash
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
jdepalma@litedepalma.com
bgreenberg@litedepalma.com
jnash@litedepalma.com

*Additional Counsel to Plaintiffs
Pumaro LLC, Artiom Frunze,
Hayden Hsiung, and Gijs Matser*

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta (SBN 331458)
JooYun Kim
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES** |
| ALL ACTIONS. | |
| | Date: Oct. 29, 2020 |
| | Time: 1:30 p.m. |
| | Dept.: Courtroom 3, 17th Floor |
| | Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ........................................................................................................ iii

ISSUE TO BE DECIDED ............................................................................................................1

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

I.    APPOINTMENT OF CO-LEAD COUNSEL ...................................................................3

II.   THE WORK PERFORMED BY HGT LAW AND LTL AS CO-LEAD COUNSEL ...........4

III.  WITHDRAWAL OF LEAD PLAINTIFF ........................................................................6

IV.   AFTER TRIGON'S APPOINTMENT AS LEAD PLAINTIFF, HGT LAW
      CONTINUED TO SHOULDER THE BULK OF LITIGATION EFFORTS........................6

V.    MEANWHILE, THE STATE COURT ACTION HAD GROUND TO A HALT,
      WITH THE PLAINTIFFS UNABLE TO SERVE THE TEZOS FOUNDATION .................7

VI.   BLOCK & LEVITON REPEATEDLY SOUGHT TO PROTECT THE INTERESTS
      OF BAKER'S COUNSEL, ROBBINS GELLER .................................................................11

VII.  CO-LEAD COUNSEL ARE UNABLE TO AGREE ON THE ALLOCATION OF
      ATTORNEYS' FEES ......................................................................................................13

ARGUMENT ..............................................................................................................................14

I.    THE APPLICABLE LEGAL STANDARDS GOVERNING THE ALLOCATION OF
      ATTORNEYS' FEES BY LEAD COUNSEL ...................................................................14

II.   THE COURT SHOULD ADOPT HGT LAW'S PROPOSED FEE ALLOCATION ...........16

      A.    HGT Law's Proposal Of A Pro-Rated Allocation Of Fees Is Fair And
            Reasonable And Consistent With Established Ninth Circuit Precedent....................16

      B.    Block & Leviton's Proposed Fee Allocation Is Unfair And Unreasonable, And
            Should Be Rejected By The Court..............................................................................17

            1.    Block & Leviton's Proposal To Award 50% To Robbins Geller Is
                  Dramatically Disproportionate To The Benefit Robbins Geller
                  Conferred Upon The Class And The Work It Performed..............................17

            2.    It Was Unreasonable For Block & Leviton To Allocate The Same Fee
                  To Itself And Hagens Berman, Compared To Co-Lead Counsel HGT
                  Law and the HGT Group ............................................................................19

III.    ALTERNATIVELY, THE COURT SHOULD DISQUALIFY BLOCK & LEVITON
        FROM DECIDING ANY FEE ALLOCATIONS .................................................................20

        A.    Block & Leviton Violated Its Duties By Distributing Fees Without The
              Authority Of Its Co-Lead Counsel, HGT Law ...........................................................21

        B.    In Favoring Robbins Geller In Return For Favorable Treatment In Other Cases,
              Block & Leviton Has Abdicated Its Responsibilities As Co-Lead Counsel ..............22

        C.    Mr. Block Violated His Duty Of Candor To Co-Counsel And The Court.................24

CONCLUSION.............................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No(s).</u>

3

### CASES

4

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
5
   No. 11-cv-10230-MLW, 2018 U.S. Dist. LEXIS 111409 (D. Mass. May 14, 2018) ....... 21, 22, 23

6
*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994) ...................................... 14, 17

7

8
*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................... 19

9
*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
10
   No. 14-cv-2081, 2017 U.S. Dist. LEXIS 154458 (E.D. Cal. Sept. 20, 2017) .................. 15, 18, 20

11
*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*,
   814 F.3d 652 (2d Cir. 2016) ...................................... 2, 23

12

13
*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987) ...................................... 15, 21

14
*In re 1250 Oceanside Partners*,
15
   519 B.R. 802 (Bankr. D. Haw. 2014) ...................................... 19

16
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2016 U.S. Dist. LEXIS 167301 (N.D. Cal. Oct. 24, 2016), ............. 14, 15, 18, 20

17

18
*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ...................................... 23

19
*In re Critical Path, Inc.*,
20
   No. C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) .... 16, 18, 19, 20

21
*In re FPI/Agretech Sec. Litig.*,
   105 F.3d 469 (9th Cir. 1997) ...................................... passim

22
*In re HPL Techs., Inc. Sec. Litig.*,
23
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ...................................... 14

24
*In re Linerboard Antitrust Litig.*,
   MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004),
25
   *amended*, 2004 U.S. Dist. LEXIS 10531 (E.D. Pa. June 4, 2004) ............... 15

26
*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
27
   No. 07-ml-1827, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 13, 2013) ................ 15, 18, 20

28

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 8:10ML02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 ................................ 15

*In re Vitamins Antitrust Litig.*,
  398 F. Supp. 2d 209 (D.D.C. 2005)........................................................ 18, 20, 21, 24

*Keller v. Nat'l Collegiate Athletic Ass'n*,
  No. C 09-1967 CW, 2015 U.S. Dist. LEXIS 166545 (N.D. Cal. Dec. 10, 2015) ........................ 15

*Meinhard v. Salmon*,
  249 N.Y. 458 (1928)........................................................................ 21

*Milhouse v. Travelers Commer. Ins. Co.*,
  982 F. Supp. 2d 1088 (C.D. Cal. 2013) ...................................................... 19

*Prandini v. Nat'l Tea Co.*,
  557 F.2d 1015 (3d Cir. 1977), *disapproved on other grounds by*
  *Evans v. Jeff D.*, 475 U.S. 717 (1986) ...................................................... 16

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ................................................................ 14

*Smiley v. Sincoff*,
  958 F.2d 498 (2d Cir. 1992) ............................................................ 16, 18

*Taipe v Carson (In re Carson)*,
  510 B.R. 627 (Bankr. E.D. Cal. 2014)........................................................ 19

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
  623 F.3d 82 (2d Cir. 2010) ................................................................ 16

**STATUTES**

15 U.S.C. § 77z-1 ........................................................................... 3

**RULES**

Cal. Rule Prof. Conduct 1.15(c)(2).................................................... 13, 22

Cal. Rule Prof. Conduct 4.1(a) .......................................................... 25

Fed. R. Evid. 408 ........................................................................ 19

Northern District's Guidelines for Professional Conduct §18(b) ...................... 25

**TREATISES**

MANUAL FOR COMPLEX LITIGATION (4th ed.) § 10.22 ........................................ 21

1

## ISSUE TO BE DECIDED

1. Whether the Court should adopt the fee allocation proposed by Co-Lead Counsel Hung G. Ta, Esq. PLLC, which is based on the submitted lodestar of each law firm.

2. Alternatively, whether the Court should disqualify Block & Leviton LLP from deciding any fee allocations in circumstances where it has: (1) already distributed fees without the authority of its Co-Lead Counsel Hung G. Ta, Esq. PLLC; and (2) favored Robbins Geller Rudman & Dowd LLP without any rational, good faith justification.

## PRELIMINARY STATEMENT

On August 27, 2020, after a hearing, the Court approved the request of Plaintiffs' counsel for fees in the amount of $8,333,333.00. Dkt. 262. Despite its best efforts, Co-Lead Counsel Hung G. Ta, Esq. PLLC ("HGT Law") has been unable to secure the agreement of the other Court-appointed Co-Lead Counsel, Block & Leviton LLP ("Block & Leviton"), to a fair, rational and good faith allocation of the fee award. In fact, in complete disregard of its duties to its Co-Lead Counsel, Block & Leviton has proceeded, without HGT Law's authority, to distribute attorneys' fees to itself and several other firms with which it is aligned. The Court should not permit such brazen misconduct.

Presently before the Court are two competing fee allocation proposals. HGT Law has proposed that the fee award be allocated, *pro rata*, based on all firms' respective lodestars submitted to the Court. Under this proposal, HGT Law, together with former Co-Lead Counsel LTL Attorneys LLP ("LTL") and additional counsel, the Restis Law Firm, P.C. ("Restis Law") and Lite DePalma Greenberg LLC ("Lite DePalma") (collectively, the "HGT Group"), would receive approximately 57% of the fee award. Block & Leviton, its co-counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), and the counsel for the plaintiff in the parallel state court action, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Taylor-Copeland Law ("Taylor-Copeland") (collectively, the "Block Group"), would receive approximately 43%.

This proposal was extremely generous to the firms in the Block Group, because it attributes equal value to the lodestars of all the firms, even though most of the Block Group's lodestars were incurred in connection with the state court litigation, which was essentially a tagalong case that was

duplicative of, and significantly trailed, the consolidated action in this Court. Importantly, as of the date of the $25 million settlement in this litigation ("Settlement"), the state court plaintiff *still had not served Tezos Stiftung* ("Tezos Foundation"), the Defendant actually paying the Settlement, and therefore the most critical Defendant. Defendants made it clear that the state court litigation was effectively at an end, and of zero settlement value. In short, HGT Law could have, but did not, discount the lodestars of the Block Group to reflect that their work in the state court action did not benefit the Class.

In contrast, Block & Leviton has proposed a fee allocation, and has proceeded to unilaterally distribute fees according to this allocation, under which the Block Group received *75%* of the fee award – 25% to Block & Leviton/Hagens Berman, and *50%* to Robbins Geller.[1] This proposal is irrational and unreasonable. It bears no relationship to these firms' lodestars or the benefit achieved for the Class. Rather, as Block & Leviton (perhaps inadvertently) informed HGT Law, it is based on Block & Leviton's desire to maintain good relations with Robbins Geller and ensure favorable treatment from Robbins Geller *in other cases*. This is an improper basis for allocating fees, and violates numerous duties – to the Class in this action, to the Court, and also to Co-Lead Counsel, HGT Law. It is precisely the sort of backroom dealing between "repeat players" that the Second Circuit has described as "corrupt[ ]." *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*, 814 F.3d 652, 658 n.1 (2d Cir. 2016). In fact, as discussed in greater detail below, the proposed allocation is so economically irrational (it is contrary to Co-Lead Counsel Block & Leviton's self-interest to award itself and Hagens Berman collectively only 25%, but pay Robbins Geller *50%* of the fee award) that the Court can infer the existence of an undisclosed side agreement, under which Robbins Geller will return a portion of its 50% fee award to Block & Leviton/Hagens Berman. If there is in fact a side agreement, Block & Leviton (and the other firms in the Block Group) have attempted to deceive HGT Law, and have violated numerous ethical duties and guidelines of this District.

---

[1]    The 50% would purportedly be distributed to both Robbins Geller and its co-counsel, sole practitioner Taylor-Copeland. For ease of reference, "Robbins Geller" shall refer to these two firms, unless otherwise specified.

For these reasons, which are discussed more fully below, HGT Law requests that the Court: (a) find that Co-Lead Counsel HGT Law's proposed allocation of the attorneys' fees is fair and reasonable, and adopt that proposed allocation, or (b) in the alternative, disqualify Block & Leviton from making any fee allocation decision, and confer on HGT Law the sole authority to allocate the fee award fairly, reasonably and in good faith based on the firms' relative contributions and the benefits provided to the Class.

## STATEMENT OF FACTS

### I.    APPOINTMENT OF CO-LEAD COUNSEL

On March 16, 2018, the Court appointed Arman Anvari as Lead Plaintiff, and his counsel HGT Law and LTL, as Co-Lead Counsel. Dkt. 101. Mr. Anvari had the largest financial interest of all the competing movants, and was presumptively the most adequate plaintiff under the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Mr. Anvari prevailed over Trigon Trading Pty. Ltd. ("Trigon"), the client of Block & Leviton, which had the second largest loss, and the clients of Robbins Geller, which had the third largest loss. Dkt. 101 at 8. The Court consolidated several related purported class actions under the caption *In re Tezos Securities Litigation* (the "Federal Action"). *Id.*

After they were unsuccessful in obtaining leadership of the Federal Action, Block & Leviton and Robbins Geller simply ignored the results under the PSLRA lead plaintiff selection process, and shifted their efforts to parallel litigation in the Superior Court of the State of California.

On April 20, 2018, Block & Leviton, along with co-counsel Hagens Berman, commenced a purported class action on behalf of Trigon and Bruce MacDonald[2] in state court based on the same facts as in the Federal Action. *See Trigon Trading Pty. Ltd. and Bruce MacDonald v. Dynamic Ledger Solutions, Inc., et al.*, Case No. 18-CIV-02045 (Super. Ct. Cal. San Mateo County) ("*Trigon* Action").

Robbins Geller teamed up as co-counsel with Taylor-Copeland for plaintiff Andrew Baker in the California Superior Court. *See Baker v. Dynamic Ledger Solutions, Inc., et al.*, Case No. CGC-

---

[2]    MacDonald had commenced a related, purported class action in this Court. *See MacDonald v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-07095 (N.D. Cal. Dec. 13, 2017). On April 20, 2018, MacDonald voluntarily dismissed his action. Dkt. 110.

17-562144 (Super. Ct. Cal. San Francisco County) ("*Baker* Action").[3] On June 22, 2018, Baker filed a First Amended Complaint that asserted the same claims against the same defendants as in the Federal Action, *i.e.*, claims under Sections 5 and 12(a)(1) of the Securities Act, and a claim for control person liability under Section 15. In all material respects, Baker's First Amended Complaint was identical to the Consolidated Class Action Complaint filed in the Federal Action. Ta Decl.[4] Ex. 1.

## II.   THE WORK PERFORMED BY HGT LAW AND LTL AS CO-LEAD COUNSEL

After they were appointed Co-Lead Counsel by this Court, HGT Law and LTL worked diligently to prosecute the litigation, including, but not limited to, the activity discussed below.

On April 3, 2018, after completing a diligent investigation and research of potential claims, HGT Law and LTL, together with their co-counsel Restis Law and Lite DePalma, filed Lead Plaintiff's Consolidated Class Action Complaint against Defendants in connection with the Tezos ICO. Dkt. 108.[5]

On June 8, 2018, HGT Law and LTL opposed four separate motions to dismiss filed by Defendant Tezos Foundation, Defendants Dynamic Ledger Solutions, Inc. ("DLS"), Arthur Breitman and Kathleen Breitman ("Breitmans"), Defendants Timothy C. Draper and Draper Associates V Crypto LLC ("Draper Defendants"), and Defendant Bitcoin Suisse AG, respectively. Dkt. 131-135. HGT Law and LTL prepared extensively for these motions and, on August 1, 2018, HGT Law and LTL attended the oral argument before this Court. Dkt. 144.

---

[3]     The *Baker* Action was commenced in California Superior Court, County of San Francisco, on October 25, 2017. The *Baker* Action was then removed to Federal Court, where it was stayed. *Baker v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-06850 (N.D. Cal.) Dkt. 1, 18. On April 1, 2018, after the Supreme Court's decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund,* 138 S. Ct. 1061 (2018), this Court remanded the *Baker* Action to the California Superior Court. *Baker*, No. 17-cv-06850, Dkt. 34.

[4]     "Ta Decl." refers to the accompanying Declaration of Hung G. Ta, dated September 23 2020.

[5]     At all relevant times, HGT Law and LTL were assisted by valuable contributions from additional counsel Restis Law and Lite DePalma, who were assigned specific tasks by Co-Lead Counsel. *See* Restis and DePalma Declarations in Support of Lead Counsel's Motion for Award of Attorneys' Fees and Litigation Expenses. Dkt. 257-8 and 257-9 (describing the efforts of Restis Law and Lite DePalma at each stage of the Federal Action on behalf of the Settlement Class at the direction of Co-Lead Counsel).

4

On August 7, 2018, the Court issued its Order on Defendants' Motions to Dismiss. Dkt. 148. HGT Law and LTL prevailed on the motions to dismiss filed by the Tezos Foundation, DLS and the Breitmans. *Id.* at 1.[6]

On August 29, 2018, HGT Law and LTL, together with Defendants, prepared and filed a joint case management statement. Dkt. 162. On September 6, 2018, HGT Law and LTL attended the initial case management conference. Dkt. 164.

HGT Law and LTL proceeded to conduct discovery, including (Ta Decl. ¶ 18):

- negotiating a protective order with Defendants, which was signed and entered by this Court on October 22, 2018. Dkt 178;

- drafting and serving Defendants with requests for documents in August 2018, November 2018 and October 2019;

- drafting and serving interrogatories on Defendants in January 2019, February 2019 and October 2019;

- issuing subpoenas on various third parties, such as Draper Associates V Crypto LLC, Timothy Draper, Polychain Capital, Amazon AWS, A Medium Corporation, Substack Inc., Strange Brew Strategies LLC, Coinbase, Inc. and Payward, Inc. d/b/a Kraken;

- assisting each of their clients in preparing and responding to discovery requests from Defendants, including multiple sets of requests for documents, multiple sets of interrogatories, and requests for admissions;

- conducting numerous meet-and-confers with Defendants in connection with various discovery disputes;

- reviewing the approximately 30,000 pages of documents produced by Defendants DLS, the Tezos Foundation, and the Breitmans; and

- interviewing and consulting with testifying and non-testifying experts regarding blockchain technology.

On November 21, 2018 (Dkt. 183) and January 7, 2019 (Dkt. 186), Pumaro LLC and Artiom Frunze were added as named plaintiffs to the Federal Action, respectively.

Throughout 2018, HGT Law and LTL discussed the possibility of settlement on several occasions with Defendants. In November 2018, Lead Plaintiff and Defendants agreed to a mediation before Professor Eric Green of Resolutions, LLC. The mediation was conducted in San Francisco

---

[6] The Draper Defendants were dismissed from the case, but with leave to amend. Dkt. 148. Lead Plaintiff decided not to pursue claims against these parties.

over a full day on December 14, 2018 (the "First Mediation"). The First Mediation was attended by HGT Law and LTL on behalf of Lead Plaintiff, as well as Restis Law and Lite DePalma, as additional counsel for the Class and counsel to named plaintiff Pumaro, LLC. In advance of the First Mediation, HGT Law and LTL and their additional counsel drafted, and exchanged with Defendants, detailed mediation submissions. The First Mediation was unsuccessful. Ta Decl. ¶ 20.

Thereafter, on January 9, 2019, HGT Law and LTL, with the assistance of their additional counsel, drafted and filed a motion for class certification. Dkt. 187; Ta Decl. ¶ 21.

## III.    WITHDRAWAL OF LEAD PLAINTIFF

On January 25, 2019, Lead Plaintiff Anvari filed a motion seeking to withdraw as Lead Plaintiff. Dkt. 196. In his motion, Anvari proposed that named plaintiff Artiom Frunze be substituted as the Lead Plaintiff. *Id.* at 4. Of the previous plaintiffs who applied to be lead under the PSLRA, only Trigon (represented by Block & Leviton and Hagens Berman) opposed the substitution of Lead Plaintiff. Trigon argued it should be appointed the substitute Lead Plaintiff, despite then litigating the State Action. Dkt. 198.

On April 8, 2019, the Court granted Anvari's motion to withdraw as Lead Plaintiff, and appointed Trigon as the substitute Lead Plaintiff. Dkt. 213. HGT Law and Block & Leviton were ordered to serve as Co-Lead Counsel going forward. On April 17, 2019, the Court denied Block & Leviton's motion for reconsideration of the appointment of HGT Law as Co-Lead Counsel. Dkt. 216.

## IV.    AFTER TRIGON'S APPOINTMENT AS LEAD PLAINTIFF, HGT LAW CONTINUED TO SHOULDER THE BULK OF LITIGATION EFFORTS

Even after Trigon was substituted as Lead Plaintiff, HGT Law continued to handle the bulk of the litigation efforts, including discovery. Specifically, it was HGT Law who performed the bulk of the review of Defendants' document productions. HGT Law also prepared and served subpoenas on various third parties, and negotiated the productions of documents from these third parties, including Cloudflare, Inc., Amazon.com, Inc., Substack, Inc., Strange Brew Strategies LLC, Coinbase, Inc. and Payward, Inc. d/b/a Kraken. Block & Leviton played no role in any of these discovery efforts. Ta Decl. ¶ 22.

HGT Law and its assisting counsel, LTL, also were responsible for pursuing various discovery issues with defense counsel, including corresponding with defense counsel and meeting and conferring on multiple occasions, and preparing the discovery motions when the discovery issues could not be resolved via meet-and-confer. *Id.* ¶ 23. For example, it was HGT Law who prepared and filed the motion to compel Defendants to produce documents post-dating November 26, 2017, which Defendants had unilaterally set as the cutoff for their document productions. Dkt. 219. On June 10, 2019, the Court issued an Order permitting Plaintiffs to obtain "documents regarding communications between Defendants and the SEC or any other governmental or regulatory agency … regardless of when they were created." Dkt. 223 at 2. It was also HGT Law who prepared and filed the motion to compel Defendants to produce documents that were withheld by Defendants Arthur and Kathleen Breitman based on the marital communications privilege. Dkt. 231.[7] Block & Leviton played only a limited role in reviewing these discovery motions before they were filed. Ta Decl. ¶ 23.

HGT Law also prepared and produced three named plaintiffs for deposition – former Lead Plaintiff Anvari, and named Plaintiffs Artiom Frunze and Pumaro LLC. Block and Leviton played no role in defending these Plaintiffs' depositions. *Id.* ¶ 24. Lead Plaintiff Trigon itself was never deposed.

## V.    MEANWHILE, THE STATE COURT ACTION HAD GROUND TO A HALT, WITH THE PLAINTIFFS UNABLE TO SERVE THE TEZOS FOUNDATION

After it was unable to obtain leadership of the Federal Action and shifted efforts to state court (*see supra* Statement of Facts, Section I), Trigon spent several months jockeying for leadership with Baker in the State Action. On August 16, 2018, the California Superior Court issued an order coordinating the *Baker* Action and the *Trigon* Action under Case No. CJC-18-004978 (collectively, the "State Action"). Ta Decl. Ex. 2. All proceedings in the State Action were automatically stayed under California Rule of Court 3.529(b).

At this point, the only Defendants who had appeared in the coordinated State Action were DLS and the Draper Defendants. The State Action Plaintiffs had been unable to serve the Tezos Foundation, which was a significant setback. The Tezos Foundation was the most critical Defendant,

---

[7]    The Court denied this motion. Dkt. 236.

because it was the entity that conducted the Tezos ICO in question, maintained custody of the investments raised in the Tezos ICO, and therefore was an indispensable party vis-à-vis any claim for rescission. On August 13, 2018, in the *Trigon* Action, the California Superior Court issued an order quashing an attempted service of a summons on the Tezos Foundation, based on lack of proper service. Ta Decl. Ex. 3. The State Action Plaintiffs also had not yet served Kathleen Breitman or Arthur Breitman, the Defendants who developed the Tezos project.

Meanwhile, on August 7, 2018, this Court issued its decision on Defendants' motions to dismiss the Federal Action, allowing the Federal Action to proceed. Dkt. 148.

On October 22, 2018, the California Superior Court held the first status conference in the coordinated State Action. The court kept a general stay in place except for (a) allowing Baker and Trigon to proceed with service on Defendants who had not been served; and (b) allowing the parties to negotiate a protective order and ESI protocol. Ta Decl. Ex. 4. Notwithstanding the court's direction, neither Trigon nor Baker took any steps to serve any of the absent Defendants, including the Tezos Foundation. Because the Tezos Foundation is a Swiss entity, service was required to be effected through the Hague Convention.

After a further status conference on December 19, 2018, the California Superior Court partially lifted the discovery stay but cautioned that no deadlines would run and that Defendants need not respond to any discovery until a protective order was in place. Apart from continuing to allow Trigon and Baker to serve any absent Defendants, the court maintained the stay on all responses and substantive pleadings. Ta Decl. Ex. 5.

On March 28, 2019, the California Superior Court lifted the stay and instructed the parties who had appeared to share discovery from the pending Federal Action. Ta Decl. Ex. 6.

On April 8, 2019, Trigon was appointed substitute Lead Plaintiff in the Federal Action. As a result, it discontinued its action in the California Superior Court, leaving just plaintiff Baker in the State Action.

On May 16, 2019, Baker filed a Second Amended Complaint. Ta Decl. Ex. 7. On June 7, 2019, Defendant Arthur Breitman entered an appearance in the State Action. However, Defendant Kathleen

Breitman still had not been served. Nor had the Tezos Foundation.

On June 10, 2019, the Defendants who had been served filed demurrers to Baker's Second Amended Complaint. At the same time, Defendants renewed their motions to stay the *Baker* Action, based on considerations of judicial efficiency, and based on questions as to Baker and his counsel's ability to adequately represent the purported class. According to Defendants:

> Under principles of comity and efficiency, this Court has the inherent discretion to stay this action pending resolution of a duplicative proceeding in federal court [*i.e.*, the Federal Action]. Despite the temporary delays caused by the withdrawal of the original lead plaintiff, ***the Federal Action is far more advanced than this action***. There, all pleading challenges have been resolved, all defendants served, and discovery is well underway. In contrast, Baker only recently filed a second amended complaint and his Complaint has not yet survived the demurrers that defendants in this action are preparing in response to the facially defective Complaint. …
>
> Moreover, ***there are grave doubts regarding Baker's ability to adequately represent a class. Investigation has shown that Baker has a close personal friendship with his counsel, James Taylor-Copeland, who apparently served as a groomsman in Baker's wedding. Baker's suit is intended to benefit his groomsman-attorney, not the putative class***.

*See* Ta Decl. Ex. 8, Defendants Arthur Breitman and Dynamic Ledger Solutions, Inc.'s Memorandum of Points and Authorities in Support of Renewed Notice of Motion and Motion to Stay All Proceeding Pending Resolution of Federal Action, filed June 10, 2019, at 2 (emphasis added).

On July 8, 2019, the California Superior Court ordered that the summons be served on Defendant Kathleen Breitman by publication.

On July 30, 2019, the Tezos Foundation made a special appearance pursuant to California Code of Civil Procedure § 418.10(e)(1) and moved to quash Baker's service of a summons on the Tezos Foundation. Ta Decl. Ex. 9. On August 28, 2019, the California Superior Court granted the Tezos Foundation's motion to quash, finding that Baker had failed to establish personal jurisdiction of the California Superior Court over the Tezos Foundation. Ta Decl. Ex. 10. The California Superior Court held that "[t]he legal standard for jurisdiction in federal courts differs from the legal standard for jurisdiction in this [Superior] Court. Under California law, the Court finds that Plaintiff has not presented facts that would justify this Court's exercise of jurisdiction over the Foundation." *Id.* at 4.

9

1    On September 9, 2019, Baker claimed to discover new evidence after the ruling and filed a

2 motion for reconsideration. In support of this motion, Baker contended that he had "discovered

3 through documents recently produced by Arthur Breitman, that Arthur Breitman and Gevers, the

4 Foundation's President, utilized an encrypted messaging application … [which] demonstrate[ ] that

5 the DLS Defendants were coordinating with and directing the Foundation's activities from

6 California." Ta Decl. Ex. 11, Plaintiff's Memorandum of Points and Authorities in Support of Motion

7 for Reconsideration of Order Granting Specially Appearing Defendant Tezos Stiftung's Motion to

8 Quash Service of Summons, at 6. This evidence, however, was the very same evidence that Baker

9 had offered in opposition to a separate motion to dismiss for lack of personal jurisdiction that had

10 been filed by Switzerland-based Johann Gevers ("Gevers"), the Tezos Foundation's former president.

11    On September 24, 2019, after looking at all of these documents, the California Superior Court

12 granted Gevers's motion to dismiss, declining to find personal jurisdiction based on the use by Gevers

13 of the messaging application. Ta Decl. Ex. 12, September 24, 2019 Order, at 4 ("It is also not sufficient

14 for Plaintiff to assert Gevers … communicated through the Signal App with the DLS Defendants

15 about their activity in California."). Undoubtedly, the California Superior Court would have reached

16 exactly the same conclusion with respect to exactly the same documents on Baker's motion for

17 reconsideration. However, the Superior Court never reached a decision, because oral argument on the

18 motion for reconsideration was adjourned pending the Second Mediation.[8]

19    In short, as of the date of the Second Mediation, Baker still had not served the Tezos

20 Foundation, the most critical Defendant. In addition, a decision from the California Superior Court

21 was pending on Baker's motion for reconsideration that would have effectively ended the State Action,

22 because Baker would not have been able to proceed in good faith with a class action in which the

23 most important Defendant was absent.

---

[8]    The "Second Mediation" refers to the mediation that was conducted before the Hon. Layn R. Phillips (Ret.) on November 22, 2019. With Judge Phillips' assistance, the Second Mediation led to the Settlement of the Federal Action.

## VI. BLOCK & LEVITON REPEATEDLY SOUGHT TO PROTECT THE INTERESTS OF BAKER'S COUNSEL, ROBBINS GELLER

As soon as they were appointed Co-Lead Counsel, Block & Leviton repeatedly sought to favor Baker's counsel, Robbins Geller, even though Robbins Geller was not Co-Lead Counsel and even though the *Baker* Action was, at best, significantly behind the Federal Action.

On March 7, 2019, after the Court's hearing of the motion to substitute the Lead Plaintiff, Hung Ta of HGT Law and Alex Hu of LTL spoke via telephone with Joel Fleming, the partner from Block & Leviton who attended the hearing on the motion to substitute. In light of the Court's ruling that Block & Leviton and HGT Law should be designated Co-Lead Counsel, Mr. Ta offered a proposal for the division of work and attorneys' fees. Ta Decl. ¶ 26. Mr. Fleming responded that this was premature, and raised the question: "What about Robbins Geller?" Mr. Fleming did not fully explain why Co-Lead Counsel in the Federal Action would need to take into account the interests of Robbins Geller, counsel in the State Action that was significantly behind the Federal Action. The parties did not engage in any further discussions about the allocation of work and fees. *Id.*

On September 18, 2019, as Plaintiffs and Defendants were finalizing an agreement to conduct the Second Mediation, Mr. Ta spoke via telephone with Jeffrey Block and Jacob Walker, partners of Block & Leviton. In this conversation, Mr. Block disclosed for the first time that he had unilaterally invited State Action Plaintiff Baker and his counsel Robbins Geller/Taylor-Copeland to the Second Mediation. Mr. Block presented this as a *fait accompli*, without having first consulted with Co-Lead Counsel HGT Law. Mr. Ta asked Mr. Block what was the impetus for including Baker, given that the First Mediation had proceeded without the State Action Plaintiffs, and given that the Federal Action could settle class claims without approval or consent of Plaintiff Baker in the State Action. *Id.* ¶ 27.

According to Mr. Block, the impetus for including Baker and his counsel came from a telephone conversation Mr. Block had with defense counsel. During that conversation, it was Mr. Block himself who raised with defense counsel the question of whether Baker and his counsel should be included at the Second Mediation. Defense counsel responded that Defendants were proceeding on the understanding, from the First Mediation, that the Federal Action Plaintiffs did not want to include the State Action Plaintiffs at the mediation. Although defense counsel believed it might be

productive to include Baker and his counsel at the Second Mediation, defense counsel did not indicate that this was a precondition for the Second Mediation to proceed. According to Mr. Block, after this conversation with defense counsel, he proceeded to call Robbins Geller and invited them to the Second Mediation, without first consulting with his Co-Lead Counsel, HGT Law. *Id.* ¶ 28.

In light of these troubling unilateral actions by Mr. Block, Mr. Ta asked Mr. Block directly whether there was any agreement or understanding between Block & Leviton and Robbins Geller. Mr. Block responded: "What do you mean by agreement?" and then proceeded to give a non-responsive answer. *Id.* ¶ 29.

After the Second Mediation concluded successfully, Block & Leviton proceeded to assign the initial drafting of the Settlement Agreement to Robbins Geller, again without first consulting with HGT Law. Although this was simply an attempt by Block & Leviton to confer on Robbins Geller the opportunity to bolster its lodestar, HGT Law did not object, as Co-Lead Counsel, because it wished to maintain harmony amongst Plaintiffs' counsel. *Id.* ¶ 30.

On December 18, 2019, while Co-Lead Counsel were drafting the Settlement Agreement with Defendants, Mr. Block called Mr. Ta to provide advance notice of a draft of the Settlement Agreement that Block & Leviton was about to circulate for review and comment. In particular, Mr. Block highlighted a provision that Robbins Geller had inserted, that would divide any fee awarded by the Court 50%-50% between counsel for the State Action and counsel for the Federal Action, respectively. Mr. Block stated that he was calling in advance to let Mr. Ta know that the provision did not emanate from Block & Leviton. He further stated that he was currently working on a number of cases with Robbins Geller, and was therefore conflicted and did not want to pick a fight with Robbins Geller because it would affect his relationship with Robbins Geller in those other cases. *Id.* ¶ 31.

On December 23, 2019, Mr. Ta objected to the inclusion of the 50%-50% fee split provision. Apart from the lack of merit in such a split, Mr. Ta objected because it was inappropriate for inclusion in a settlement agreement with Defendants, who had expressly disclaimed any responsibility for the fee allocation. Ta Decl. ¶ 32, and Ex. 13. As a result, the 50%-50% fee split proposed by Robbins Geller was removed from the draft Settlement Agreement.

## VII.   CO-LEAD COUNSEL ARE UNABLE TO AGREE ON THE ALLOCATION OF ATTORNEYS' FEES

On August 31, 2020, after the Court finally approved the Settlement and awarded attorneys' fees in the amount of $8,333,333.00, Mr. Block emailed Mr. Ta to propose a division of the fee award. Despite the discomfort that he had previously expressed on December 18, 2019, which compelled him to call Mr. Ta to provide advance notice, Mr. Block once again proposed the same 50%-50% fee allocation that Robbins Geller had demanded. Ta Decl. Ex. 14. Mr. Block also stated that the 50% set aside for the Federal Action attorneys would be allocated 25% to Block & Leviton/Hagens Berman, and that the residual 25% would be allocated to the four firms comprising the HGT Group. *Id.*

On September 1, 2020, Mr. Ta responded with a best and final (and only) counter-proposal, under which all the firms in the HGT Group and the Block Group would be allocated a percentage of the fee award based on their share of the collective lodestar, resulting in a fee allocation of approximately 57% to the HGT Group and 43% to the Block Group. Ta Decl. Ex. 15. Mr. Block rejected this proposal, instead requesting a mediation. *Id*. By proposing mediation, Mr. Block was indicating that the Block Group should get more than 43%, *i.e.*, more than the value of their collective lodestar, while the HGT Group should get less. Accordingly, Mr. Ta declined mediation. *Id.*

On September 10, 2020, Mr. Block emailed Mr. Ta to inform him that Block & Leviton had proceeded to distribute fees to itself, Robbins Geller and the other members of the Block Group, *i.e.*, 75% of the fees awarded by the Court. Ta Decl. Ex. 16 ("we have distributed the fees to my firm, Hagens Berman and the attorneys for the state court action"). Mr. Block did not consult with and did not seek HGT Law's authorization before doing so. Later that day, Mr. Ta emailed Mr. Block to demand that he return the funds that he had misappropriated, without HGT Law's authority, and in violation of Cal. Rule Prof. Conduct 1.15(c)(2), which prohibits attorneys from removing from trust accounts funds that are in dispute. *Id.* On September 14, 2020, Mr. Block emailed Mr. Ta to state that he would not return the misappropriated funds. *Id* ("We have looked at Rule 1.15(c)(2) and it is not applicable here.").

On September 21, 2020, Mr. Ta provided Mr. Block a draft copy of this motion in a final attempt to meet and confer, but was unable to reach a resolution. Ta Decl., Ex. 17.

13

1

## ARGUMENT

2

### I. THE APPLICABLE LEGAL STANDARDS GOVERNING THE ALLOCATION OF ATTORNEYS' FEES BY LEAD COUNSEL

3

4   "In class actions, the district court has broad authority over awards of attorneys' fees," which

5   extends to the allocation of fees among class counsel. *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469,

6   472 (9th Cir. 1997) (quoting *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th

7   Cir. 1994)). "'It is well established that an award of attorneys' fees from a common fund depends on

8   whether the attorneys' specific services benefited the fund—whether they tended to create, increase,

9   protect or preserve the fund.'" *Id.* at 473 (quoting *Jaffe*). Accordingly, any allocation of attorneys'

10  fees must reflect "the relative efforts of, and benefits conferred upon the class by, co-counsel." *Id.* at

11  474 (citing *Jaffe*, 19 F.3d at 1308); *see also Rodriguez v. Disner*, 688 F.3d 645, 652 (9th Cir. 2012)

12  (remanding for reconsideration "the extent to which Objectors added value that increased the fund or

13  substantially benefitted the class members, and to award attorney's fees accordingly") (citation

14  omitted).[9]

15  In allocating attorneys' fees among counsel, the district court has discretion to use the lodestar

16  or the percentage of fund method, depending on the circumstances of the case. In the Ninth Circuit,

17  attorneys' fees are typically allocated relative to lodestar. *See, e.g., FPI/Agretech*, 105 F.3d at 474

18  (noting that the district court "awarded 25% of the settlement fund in attorneys' fees" and approved

19  an allocation of fees to counsel "calculated on a pro rata basis according to their respective lodestar");

20  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 U.S. Dist. LEXIS 167301, at

21  *17 (N.D. Cal. Oct. 24, 2016) (approving special master's allocation based on "the firm's current

22  lodestar amount (as reported to the Court in the September 2015 Motion for Attorneys' Fees []), the

23  firm's current lodestar amount less the 10% across-the-board cut applied by Lead Counsel to limit

24  inefficiencies, the proposed total payout, and the proposed multiplier"); *In re TFT-LCD (Flat Panel)*

25

---

26  [9]      This standard applies to PSLRA cases with the same force it applies in other class cases. *In re*
27  *HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 916 (N.D. Cal. 2005) (holding "there is no textual
    indication in the PSLRA that it supplants FRCP 23(h), which obligates the court to evaluate and
28  approve all fee awards in class actions").

14

1  *Antitrust Litig.*, No. 07-ml-1827, 2013 U.S. Dist. LEXIS 49885, at *79-80 (N.D. Cal. Apr. 13, 2013)

2  (approving special master's "use of the lodestar method, including the use of multipliers, to determine

3  the allocation of fees among the law firms involved" and the final allocation as "accurate and

4  supported by the record"); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081, 2017 U.S.

5  Dist. LEXIS 154458, at *30 (E.D. Cal. Sept. 20, 2017) (approving attorneys' fee allocation based on

6  consideration of "the hours each firm devoted to th[e] litigation").

7       District courts commonly permit lead counsel to "propose the initial plan of fee allocation

8  since 'class counsel are the most familiar with the amount of work actually contributed by each of

9  the . . . firms,' and can assess in a manner that they believe, *in good faith*, reflects the contributions

10  of counsel to the prosecution and settlement of the claims.'" *Cathode*, 2016 U.S. Dist. LEXIS 167301

11  at *173 (emphasis added) (citation omitted); *see also In re Linerboard Antitrust Litig.*, MDL No.

12  1261, 2004 U.S. Dist. LEXIS 10532, at *54 (E.D. Pa. June 2, 2004), *amended*, 2004 U.S. Dist. LEXIS

13  10531 (E.D. Pa. June 4, 2004) ("[F]rom the standpoint of judicial economy, leaving allocation to such

14  counsel makes sense because it relieves the Court of the 'difficult task of assessing counsel's relative

15  contributions.'") (citation omitted). However, counsel may not "'divide the award among themselves

16  in *any* manner they deem satisfactory.'" *FPI/Agretech*, 105 F.3d at 473 (quoting *In re "Agent Orange"*

17  *Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987)) (emphasis in original). Instead, lead counsel is

18  "required" to apportion fees on the same basis as the district court—based on "'the relative efforts of,

19  and benefits conferred upon the class by, co-counsel.'" *Cathode*, 2016 U.S. Dist. LEXIS 167301 at

20  *172 (quoting *Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW, 2015 U.S. Dist. LEXIS

21  166545, at *30 (N.D. Cal. Dec. 10, 2015)); *see also In re Toyota Motor Corp. Unintended*

22  *Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML02151 JVS (FMOx), 2013 U.S.

23  Dist. LEXIS 123298, at *316  (approving plan proposed by plaintiffs' counsel to "allocate the fees

24  among the eligible [] counsel in a manner that they believe, *in good faith*, reflects the contributions

25  of counsel to the prosecution and settlement of the claims against Toyota") (emphasis added).

26       The Court nevertheless "retains the ultimate power to review applications and allocations and

27  to adjust them where appropriate." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623

28

F.3d 82, 90 (2d Cir. 2010) (in PSLRA case, finding "that a standard counseling consideration of lead counsels' allocation of fees does not in any way limit the district court's ability to engage in a meaningful review of the fairness of the allocation and the overall reasonableness of fees"); *see also In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, at *24 (N.D. Cal. June 18, 2002) (rejecting "class counsels' assumption that they should be deferred to on the issue of fee allocation").

Courts may therefore reject or modify a proposed fee allocation "whenever there is good cause to do so." *FPI/Agretech*, 105 F.3d at 473. An allocation may be rejected where the district court finds that it "rewards an attorney in disproportion to the benefits that attorney conferred upon the class." *Id.*(citing *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992)). A fee allocation may also be rejected where it "does not accurately reflect the amount of work performed by the various attorneys." *Id.* (citing *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019 (3d Cir. 1977), *disapproved on other grounds by Evans v. Jeff D.*, 475 U.S. 717 (1986)). "So long as the district court provides a 'concise but clear explanation' of its reasons, and those reasons are supported by the record," it may review and modify a proposed allocation of fees to address any "irregularity." *Id.* (citing *Smiley*, 958 F.2d at 502).

## II.   THE COURT SHOULD ADOPT HGT LAW'S PROPOSED FEE ALLOCATION

### A.   HGT Law's Proposal Of A Pro-Rated Allocation Of Fees Is Fair And Reasonable And Consistent With Established Ninth Circuit Precedent

HGT Law's proposal of a pro-rated allocation based on the respective submitted lodestars of each firm is rational and fair, and consistent with established Ninth Circuit precedent. In the Ninth Circuit, lodestar is a reliable measure of "the amount of work performed by the various attorneys." *FPI/Agretech*, 105 F.3d at 473 (citing *Prandini*, 557 F.2d 1015). Moreover, allocating fees based on relative lodestar is practical and imposes minimal demand on the Court's limited resources. Fee allocations should be accompanied by a "'concise but clear explanation'" and the reasons for the allocation should be "supported by the record." *FPI/Agretech*, 105 F.3d at 473 (quoting *Smiley*, 958 F.2d at 502). An allocation based on relative lodestar lends itself to mathematical certainty and, here, a record has already been established regarding counsel's respective lodestar amounts.

In this case, the firms' respective lodestars were as follows (*see* Dkt. 257 (Exhibits 2–9)):

| Law Firm | Lodestar | Lodestar as % of Total Loadstar ($9,430,205) | Block & Leviton's Allocation (%) | Lodestar Multiplier Under Block & Leviton's Allocation |
|---|---|---|---|---|
| HGT Law | $3,245,546 | 34% | | |
| LTL | $930,855 | 10% | | |
| Restis Law Firm | $638,072 | 7% | | |
| Lite DePalma | $544,157 | 6% | | |
| | **$5,358,630** | **57%** | **25.0%** | **0.39** |
| Block & Leviton | $1,149,756 | 12% | | |
| Hagens Berman | $618,360 | 7% | | |
| | **$1,768,116** | **19%** | **25.0%** | **1.18** |
| Robbins Geller | $1,711,514 | 18% | | |
| Taylor-Copeland | $591,945 | 6% | | |
| | **$2,303,459** | **24%** | **50.0%** | **1.81** |
| *Total* | *$9,430,205* | *100%* | | |

The Court should therefore award 57% to the HGT Group, and 43% to the Block Group.

Furthermore, HGT Law's proposal of a pro-rated allocation based on lodestar would be extremely generous to the Block Group. HGT Law's proposal would attribute *equal value* to each dollar of lodestar incurred by the Block Group, even though most of their lodestar was incurred litigating the duplicative State Action, which contributed nothing to the Settlement, was viewed by Defendants as essentially over and having zero settlement value, and therefore *conferred no benefit to the Class. See FPI/Agretech*, 105 F.3d at 473 ("'It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited the fund— whether they tended to create, increase, protect or preserve the fund.'") (quoting *Jaffe*, 19 F.3d at 1308).

**B.**   **Block & Leviton's Proposed Fee Allocation Is Unfair And Unreasonable, And Should Be Rejected By The Court**

**1.**   **Block & Leviton's Proposal To Award 50% To Robbins Geller Is Dramatically Disproportionate To The Benefit Robbins Geller Conferred Upon The Class And The Work It Performed**

Block & Leviton's proposed allocation is facially unreasonable because it allocates to Robbins Geller 50% of the fee award, even though Robbins Geller/Taylor Copeland's combined lodestar represents a mere *24%* of the total lodestar. A 50% allocation to Robbins Geller (*i.e.*, $4.167 million)

would thus be totally disproportional to its relative efforts in this case, and confer a windfall *81% premium* on Robbins Geller/Taylor-Copeland's collective lodestar. Block & Leviton's allocation also confers an *18% premium* on Block & Leviton/Hagens Berman's collective lodestar, but imposes a staggering *61% discount* on the collective lodestar of the firms in the HGT Group. Block & Leviton's allocation should be rejected on this basis alone. *See Critical Path*, 2002 U.S. Dist. LEXIS 26399, at *33 (awarding greater fees to counsel who "undertook most of the work"); *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 234 (D.D.C. 2005) (modifying fee allocation because lead counsel made a "fundamental mistake" in not considering whether the allocation to itself "was justified in relation to the contribution of all other firms"); *FPI/Agretech*, 105 F.3d at 473 (quoting *Smiley*, 958 F.2d at 501) (a district court may exercise its "broad discretion to review and modify a fee agreement [in] situations in which it finds windfall"). At minimum, the allocation to Robbins Geller and the other firms in the Block Group should have some rational relationship to each firm's lodestar. Block & Leviton's proposal does not even attempt to satisfy this standard.[10]

The proposed award of 50% of attorneys' fees to Robbins Geller is also disproportional to any benefits it secured on behalf of the Class. As described *supra*, Statement of Facts, Section V, the State Action was essentially a tagalong litigation which contributed nothing to the achievement of the Settlement. The pleading that Robbins Geller and its co-counsel Taylor-Copeland Law filed in the *Baker* Action was, in all material respects, identical to the Consolidated Class Action Complaint filed in the Federal Action. Robbins Geller neither identified nor preserved independent bases for Class recovery that might otherwise have added value to the Settlement. Robbins Geller did not develop any discovery beyond what they obtained from the Federal Action, and therefore did not bolster the Class claims in any discernible way. Most importantly, as of the date of the Second Mediation, the California Superior Court had ruled that it did not have personal jurisdiction of the Tezos Foundation,

---

[10]     *See also Cathode*, 2016 U.S. Dist. LEXIS 167301 at *173 (special master approving of allocation based on, among other things, "the firm's current lodestar amount" as reported in support of a motion for attorneys' fees); *TFT-LCD*, 2013 U.S. Dist. LEXIS 49885 at *79 (approving special master's "use of the lodestar method, including the use of multipliers, to determine the allocation of fees among the law firms involved"); *Dakota Med.*, 2017 U.S. Dist. LEXIS 154458 at *30 (approving attorneys' fee allocation based on consideration of "the hours each firm devoted to th[e] litigation").

1   so that the Tezos Foundation – the most critical Defendant and the Defendant who is paying the

2   Settlement in this litigation – *was still not a party to the State Action*.

3       As such, rather than *contributing* to the Second Mediation, the Second Mediation *bailed out*

4   the floundering State Action.[11] *See Critical Path*., 2002 U.S. Dist. LEXIS 26399 at *33 (awarding

5   greater fees to counsel who "actually delivered real benefit to the classes" and lesser fees to counsel

6   who "rode its coattails and received a (close to) free ride to settlement"). Apart from Block &

7   Leviton's unexplained desire to protect Robbins Geller, no participant to the Second Mediation

8   believed Robbins Geller's participation was required. *Cf. Class Plaintiffs v. Seattle*, 955 F.2d 1268

9   (9th Cir. 1992) (upholding district court's authority to enter anti-suit injunctions over state court cases

10  asserting claims subsumed by a class settlement, and to release claims of state court plaintiffs in

11  federal class settlement).

### 2. It Was Unreasonable For Block & Leviton To Allocate The Same Fee To Itself And Hagens Berman, Compared To Co-Lead Counsel HGT Law and the HGT Group

14      Equally unreasonable is the proposed allocation of same amount of fees (25%) to Block &

15  Leviton/Hagens Berman, on the one hand, and HGT Law and the HGT Group (consisting of LTL,

16  Lite DePalma, and Restis Law), on the other hand. Block & Leviton and Hagens Berman's combined

---

18  [11]    Defendants' negative views as to the State Action is evident from their pre-mediation
19  submission, which can be produced to the Court for *in camera* review. Fed. R. Evid. 408(a) only
    prohibits the use of privileged materials to "prove or disprove the validity or amount" of the disputed
20  claim that was the subject of mediation, and submission of mediation materials here would be "for
    another purpose" and not to prove or disprove the validity of a claim. Fed. R. Evid. 408(b). In the
21  Ninth Circuit, there is no *per se* rule against the introduction of mediation materials where it does not
    violate Fed. R. Evid. 408. *See e.g. Milhouse v. Travelers Commer. Ins. Co.*, 982 F. Supp. 2d 1088,
22  1105 n.10 (C.D. Cal. 2013). Indeed, where claims for attorneys' fees are concerned, other federal
    courts have also held that "settlement communications are the most important evidence, and may be
23  the only evidence, showing whether a party made a substantial contribution to the settlement…." *In
    re 1250 Oceanside Partners,* 519 B.R. 802, 811 (Bankr. D. Haw. 2014) (allowing use of settlement
24  communications to show a party did not make a substantial contribution to the settlement of a chapter
25  11 case in an administrative expense claim by creditors for attorney's fees and costs). Nor can Block
    & Leviton contend that Robbins Geller was responsible for substantial contributions to the Settlement,
26  but "then hide the communications which are reflective of the litigation strategies, communications
    and legal posturing of the parties" at the mediation. *See Taipe v Carson (In re Carson)*, 510 B.R. 627,
27  637 (Bankr. E.D. Cal. 2014) (admitting settlement letters in action concerning attorneys' fees as
28  "evidence relating to the respective ongoing litigation strategies of the Plaintiff and the Defendant").

lodestar is 19% of the total lodestar amount. HGT Law and the HGT Group's combined lodestar is *three times* that amount, representing 57% of the total lodestar. This reflects the simple fact that, long before Block & Leviton was appointed Co-Lead Counsel, HGT Law and then Co-Lead Counsel LTL, assisted by Restis Law and Lite DePalma, had been litigating the Federal Action for over a year. During that time, the HGT Group prepared and filed the Consolidated Class Action Complaint, successfully opposed the motions to dismiss filed by the Tezos Foundation, DLS, and the Breitmans, developed significant party and third party discovery, conducted the First Mediation, and prepared and filed a motion for class certification. *See supra*, Statement of Facts, Section II.  Even after substitution of the Lead Plaintiff, HGT Law continued to handle the bulk of the litigation efforts, including discovery, some of which was contested and required motion practice. Block & Leviton played a limited role in preparing any of the discovery motions. *Id.* Essentially, Block & Leviton's principal contribution was to participate in the Second Mediation.

Thus, measured both in terms of their respective lodestar, as well as the benefits conferred upon the Class, an equal allocation of fees among Block & Leviton/Hagens Berman and HGT Law and the HGT Group would run counter to the Ninth Circuit's requirement that fee allocations reflect "the relative efforts of, and benefits conferred upon the class by, co-counsel." *FPI/Agretech*, 105 F.3d at 474. The Court should reject Block & Leviton's unilateral allocation for this reason. *See Critical Path*, 2002 U.S. Dist. LEXIS 26399 at *33; *Vitamins*, 398 F. Supp. 2d at 237; *Cathode*, 2016 U.S. Dist. LEXIS 167301 at *172; *TFT-LCD*, 2013 U.S. Dist. LEXIS 49885 at *79; *Dakota Med.*, 2017 U.S. Dist. LEXIS 154458 at *30.

## III.   ALTERNATIVELY, THE COURT SHOULD DISQUALIFY BLOCK & LEVITON FROM DECIDING ANY FEE ALLOCATIONS

In the alternative, instead of deciding between the competing allocations of HGT Law and Block & Leviton, the Court may simply disqualify Block & Leviton from any authority to allocate fees, and confer on HGT Law sole responsibility for the allocation.

The responsibility of lead counsel to allocate court-awarded fees derives from the Court's equitable powers, and the delegation of this authority to counsel is "a fundamental exercise of trust by the court." *Vitamins*, 398 F. Supp. 2d at 234. As such, there is a "demanding level of trust that is

1    imposed by the court on lead counsel." *Id.* at 237. This demanding trust is described as "not honesty

2    alone, but the punctilio of an honor the most sensitive." *Id.* (citing *Meinhard v. Salmon*, 249 N.Y. 458,

3    464 (1928) (Cardozo J.)).

4           The duties of a lead counsel extend to its co-lead counsel. As a special master overseeing a

5    fee dispute has noted, "perhaps [it] fall[s] short of imposing a true *fiduciary* duty," but the "general

6    principles of fairness and professional responsibility toward co-counsel, and toward the Court" are

7    very high. *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co*., No. 11-cv-10230-MLW, 2018 U.S. Dist.

8    LEXIS 111409, at *376 (D. Mass. May 14, 2018) (emphasis in original). "[W]hile a firm's

9    appointment as lead counsel does not create a true fiduciary obligation to co-counsel, the relationship

10   created is one rooted in trust, and co-counsel may reasonably rely upon a level of candor and

11   trustworthiness from appointed lead counsel." *Id.* at 378. Indeed, the MANUAL FOR COMPLEX

12   LITIGATION (4th ed.) counsels courts to remind lead counsel of "[their] responsibility to the court and

13   [their] obligation to act fairly, efficiently, and economically in the interests of all parties and [their]

14   counsel." *Id.* § 10.22 at 24.

15          The relationship of trust and confidence between co-counsel in turn inheres in the fee

16   allocation between co-counsel. "Though lacking a fiduciary relationship, the expectation of trust and

17   confidence between co-counsel rendered the fee-allocation negotiations distinct from traditional

18   arm's-length bargaining between contracting parties." *Ark. Teacher Ret. Sys.*, 2018 U.S. Dist. LEXIS

19   111409 at *386-87. Where a lead counsel misleads its co-counsel about fee arrangements, it has

20   "failed in its responsibility as Lead Counsel." *Id.* at *381. Specifically, a lead counsel fails in its

21   responsibilities by misrepresenting or failing to disclose the details of fee sharing agreements. *Id.* at

22   *379-422; *see also Agent Orange*, 818 F.2d at 221-24 (overturning district court's reluctant approval

23   of an undisclosed fee splitting agreement that created perverse incentives for class counsel).

24          Here, Block & Leviton has violated multiple duties, and ethical rules and guidelines.

25   **A.      Block & Leviton Violated Its Duties By Distributing Fees Without The Authority
             Of Its Co-Lead Counsel, HGT Law**

26

27          As set forth in the Statement of Facts, Co-Lead Counsel HGT Law expressly objected to Block

28   & Leviton's allocation and advised Block & Leviton that HGT Law would proceed to file a motion

with the Court for the allocation of attorneys' fees, after the parties were unable to reach agreement. Without any authority from HGT Law, Block & Leviton proceeded to distribute attorneys' fees from the escrow trust account in which the attorneys' fees were held. Ta Decl. Ex. 16. Block & Leviton therefore violated its duties to its Co-Lead Counsel. *Ark. Teacher Ret. Sys.*, 2018 U.S. Dist. LEXIS 111409, at *376-77. In addition, Block & Leviton violated Cal. Rule Prof. Conduct 1.15(c)(2), which states that "if a client or other person disputes [a] lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved." For this misconduct alone, Block & Leviton should be disqualified from making any fee allocations.

### B. In Favoring Robbins Geller In Return For Favorable Treatment In Other Cases, Block & Leviton Has Abdicated Its Responsibilities As Co-Lead Counsel

As set forth above, on December 18, 2019, Mr. Block telephoned Mr. Ta to provide advance notice of a draft settlement agreement, in which Robbins Geller had inserted a proposed 50%-50% fee split between the Federal Action and State Action. Mr. Block explained that he was not opposing the insertion because he was conflicted, and was working with Robbins Geller in other cases and wanted to maintain good relations with Robbins Geller in those cases. Even though Mr. Ta rejected the fee split, Mr. Block has once again proposed this precise fee allocation. Ta Decl. ¶ 31. Mr. Block's explanation for his favorable treatment of Robbins Geller is problematic for at least two reasons.

First, Block & Leviton cannot use the fee award in *this* case to reward Robbins Geller so that Block & Leviton is treated favorably in return by Robbins Geller in *other* cases. The fee award in this case includes fees in which another Co-Lead Counsel has an interest, and therefore is not currency that Mr. Block can freely dispense in order to confer favors on firms with whom Mr. Block seeks to maintain good relations. *Ark. Teacher Ret. Sys.*, 2018 U.S. Dist. LEXIS 111409 at *372 ("By paying Chargois from class funds [for doing no work], and having [Co-Counsel] Lieff and Thornton share in the payment, [Lead Counsel] Labaton shifted its own obligation onto the class and co-counsel."). If HGT Law had known of Block & Leviton's proposal to allocate 50% to Robbins Geller, HGT Law would have submitted a separate fee application on behalf of the members of the HGT Group.

Second, even if Block & Leviton were *sole* Lead Counsel, Mr. Block's conduct would still be improper, because his purported justification for giving Robbins Geller 50% of the total fees

1    constitutes precisely the type of "corrupt" arrangement that federal courts have censured. In *Flanagan*,

2    814 F.3d 652, the Second Circuit expressly rejected the Third Circuit's suggestion, in *In re Cendant*

3    *Corp. Sec. Litig.*, 404 F.3d 173, 199 (3d Cir. 2005), that one reason for deferring fee allocations to

4    the discretion of lead plaintiffs and lead class counsel is "that lead plaintiffs and lead counsel are

5    likely to be repeat players in the securities class action business. They will therefore want to develop

6    a reputation for fair dealing-especially since lead counsel in one class action are likely to be non-lead

7    counsel in another, and will therefore want to maintain good relations with the rest of the securities

8    plaintiffs' bar." The Second Circuit "expressly reject[ed]" this reasoning, stating unequivocally: "This

9    seems to be backwards. These considerations should not bear upon the decisions of a fiduciary and

10   ***invite corruption***." *Flanagan*, 814 F.3d at 658, n.1 (emphasis added).

11           The Second Circuit is undoubtedly correct. By awarding fees totaling 33% of the settlement

12   fund in this action, the Court was approving a fee award from the settlement fund for work performed

13   in *this litigation*, to be paid at the expense of the Class *in this litigation*. It was improper for Co-Lead

14   Counsel Block & Leviton to use settlement funds of the Class in this litigation to pay an un-deserving

15   counsel, in order to curry favor with, and obtain benefits from, that co-counsel in other cases. If this

16   was Block & Leviton's intention all along, it was required to disclose this to the Class. *Ark. Teacher*

17   *Ret. Sys.*, 2018 U.S. Dist. LEXIS 111409 at *360 ("It defies common sense to believe that information

18   that a lawyer who never appeared in the case and who did no work to produce the class recovery stood

19   to receive more than $4 million from the class fund would not reasonably have influenced members

20   of the class in deciding whether to exercise their right to object to the settlement and the fees

21   contemplated to be awarded as summarized in the Notice.").

22           Block & Leviton was also required to disclose this to the Court. *Id.* at *392 ("As Lead Counsel

23   here, Labaton had a legal and ethical duty to provide the Court with all information it needed to make

24   an informed decision as to the award of attorneys' fees out of the State Street settlement fund."). It is

25   inconceivable that, had Block & Leviton informed the Court that it intended to award 50% of the total

26   fee award (or $4.17 million) to Robbins Geller, representing an approximately 81% *premium* to its

27   and Taylor-Copeland's combined lodestar, the Court would have approved it. As discussed above,

28

the State Action did not contribute meaningfully to the Settlement. Furthermore, during both the preliminary approval and the final approval hearing, Mr. Block repeatedly represented to the Court that the fee award was less than the collective lodestar of all counsel – implying that *all* counsel would be taking a haircut, not that the only firms receiving a haircut were the firms in the HGT Group.

Thus, Block & Leviton should be disqualified for the above additional, and independent, reasons. *See Vitamins*, 398 F. Supp. 2d at 235 (in fee allocation dispute, discussing whether lead counsel should be disqualified, but declining to do so because, in contrast to this case, "[o]n the whole, [Lead Counsel]'s distribution was amply justified by what she knew about the contributions made and, while it was not flawless, I cannot possibly say that it was such a departure from reason and rationality that it could possibly justify imposing on the court the responsibility of re-allocating the entire fee").

### C.    Mr. Block Violated His Duty Of Candor To Co-Counsel And The Court

Block & Leviton should also be disqualified because of another, potentially more troubling, reason: the possibility that Block & Leviton has misled HGT Law (and the Court) about the true nature of its allocation proposal. Under its proposal, Block & Leviton represented that it would allocate 25% of the total fees to itself and to Hagens Berman *collectively*, but allocate *50%* of the total fees to Robbins Geller. Ta Decl. Ex. 14. This proposal is economically irrational. Even accounting for Mr. Block's explanation that he is seeking to ensure good relations with Robbins Geller in other cases, it makes no sense for the Court-appointed Co-Lead Counsel to disregard its own economic self-interest, and allocate a significantly higher lodestar multiplier to Robbins Geller, the counsel in a State Action that Defendants viewed as essentially over. Moreover, Hagens Berman is an 89-lawyer firm, and it is equally implausible that it would agree to a fraction of 25% of the attorneys' fees, for its work in jointly representing Lead Plaintiff Trigon with Block & Leviton.

Under these circumstances, the only plausible inference is that there is in fact an undisclosed side agreement among Block & Leviton, Hagens Berman and Robbins Geller, under which Robbins Geller will kick back a portion of its 50% to Block & Leviton and Hagens Berman. The inference is supported by the following logic. Block & Leviton likely realized that it could not propose any percentage of the fee award for itself without its Co-Lead Counsel, HGT Law, also claiming an

1    entitlement to a percentage that was *at least* the same, if not significantly higher, because of HGT

2    Law's larger lodestar and greater contributions to the litigation. Accordingly, by misrepresenting to

3    HGT Law that Block & Leviton/Hagens Berman would collectively receive only 25%, Block &

4    Leviton could use this as a pretext to propose that Co-Lead Counsel HGT Law should also only

5    receive 25%. This would leave 50% to be allocated to Robbins Geller, a portion of which Robbins

6    Geller would kick back to Block & Leviton and Hagens Berman, without HGT Law's knowledge.

7         This inference is also supported by Block & Leviton's repeated, unexplained conduct in

8    favoring Robbins Geller, and in particular, by Mr. Block's evasive answer to HGT Law's direct

9    question whether there was an agreement between Block & Leviton and Robbins Geller. *See supra*

10   Statement of Facts, Section VI.

11        If counsel is correct about the existence of an undisclosed side agreement, it would mean

12   Block & Leviton violated its duty of candor to its Co-Lead Counsel, and to the Court, by perpetrating

13   a fraud on Co-Lead Counsel, HGT Law. It would mean Mr. Block violated Cal. Rule Prof. Conduct

14   4.1(a), which states that "a lawyer shall not knowingly: make a false statement of material fact or law

15   to a third person." It would also mean Mr. Block violated §18(b) of the Northern District's Guidelines

16   for Professional Conduct, which is clear that "[a] lawyer should not make statements which are false

17   [or] misleading [concerning] fees." Hagens Berman and Robbins Geller, as parties to the side

18   agreement, would have been complicit in these violations. Such conduct alone would also be grounds

19   for disqualifying Block & Leviton, as well as the imposition of sanctions by the Court.

20                                          **CONCLUSION**

21        For the reasons set forth above, HGT Law respectfully requests that the Court grant this

22   motion and order that: (a) the fee allocation proposed by HGT Law be adopted, with 57% of the fee

23   award to be allocated to the HGT Group and 43% of the fee award to be allocated to the Block Group,

24   based on their respective percentages of the collective lodestar; or (b) in the alternative, Block &

25   Leviton be disqualified from making any fee allocation decision, and HGT Law is conferred sole

26   authority to allocate the fee award fairly, reasonably and in good faith based on the firms' relative

27   contributions and benefits provided to the Class.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Date: September 23, 2020

HUNG G. TA, ESQ. PLLC

By: _s/ Hung G. Ta_
    Hung G. Ta
    JooYun Kim
    Angus Ni
    250 Park Avenue, 7th Floor
    New York, New York 10177
    Tel: 646-453-7288
    hta@hgtlaw.com
    jooyun@hgtlaw.com

*Co-Lead Counsel and Counsel to Plaintiffs'*
*Pumaro LLC, Artiom Frunze, Hayden Hsiung,*
*and Gijs Matser*

Enoch H. Liang
LTL ATTORNEYS LLP
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
enoch.liang@ltlattorneys.com

James M. Lee
Caleb H. Liang
LTL ATTORNEYS LLP
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com

William R. Restis
THE RESTIS LAW FIRM, P.C.
402 West Broadway, Suite 1520
San Diego, California 92101
Tel: 619.270.8383
william@restislaw.com

Joseph J. DePalma
Bruce D. Greenberg
Jeremy Nash
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000

26

1

jdepalma@litedepalma.com
bgreenberg@litedepalma.com

2

jnash@litedepalma.com

3

*Additional Counsel to Plaintiffs*

4

*Pumaro LLC, Artiom Frunze,*
*Hayden Hsiung, and Gijs Matser*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DISTIRBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS