# Exhibit 9

1 | Neal A. Potischman (SBN 254862)
2 | Serge A. Voronov (SBN 298655)
  | DAVIS POLK & WARDWELL LLP
3 | 1600 El Camino Real
  | Menlo Park, California 94025
4 | Telephone: (650) 752-2000
  | Facsimile:  (650) 752-2111
5 | Email: neal.potischman@davispolk.com
  |        serge.voronov@davispolk.com
6 |
7 | Edmund Polubinski III (*pro hac vice* application pending)
  | Andrew S. Gehring (*pro hac vice* application pending)
8 | 450 Lexington Avenue
  | New York, New York 10017
9 | Telephone: (212) 450-4000
  | Facsimile:  (212) 701-5800
10 | Email: edmund.polubinski@davispolk.com
   |        andrew.gehring@davispolk.com
11 |
12 | *Attorneys for Specially Appearing Defendant*
   | *Tezos Stiftung*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**07/30/2019**
**Clerk of the Court**
**BY: ERNALYN BURA**
**Deputy Clerk**

13 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 | **COUNTY OF SAN FRANCISCO**

15 |

16 | COORDINATION PROCEEDING SPECIAL )  Case No. CJC-18-004978
   | TITLE [RULE 3.550]                            )
17 |                                               )  Judicial Council Coordination Proceeding
   | **TEZOS ICO CASES**                           )  No. 4978
18 |                                               )
   | _____)
19 |                                               )  <u>CLASS ACTION</u>
   |                                               )
20 | Included Action:                              )  **SPECIALLY APPEARING**
   |                                               )  **DEFENDANT TEZOS STIFTUNG'S**
21 | *Baker v. Dynamic Ledger Solutions, Inc., et al.,* )  **NOTICE OF MOTION AND MOTION**
   | Superior Court of California, County of San   )  **TO QUASH SERVICE OF SUMMONS;**
22 | Francisco, Case No. CGC-17-562144             )  **MEMORANDUM OF POINTS AND**
   |                                               )  **AUTHORITIES IN SUPPORT**
23 |                                               )
   |                                               )  Date:        August 27, 2019
24 |                                               )  Time:        1:30 p.m.
   |                                               )  Dept.:       613
25 |                                               )  Before the Honorable Teri L. Jackson
   |                                               )
26 |                                               )  Action Filed:  October 25, 2017
   |                                               )  Trial Date:    None set
27 |                                               )
28 |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2019 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Department 613 of the above-entitled Court, located at 400 McAllister Street, San Francisco, California 94102, Specially Appearing Defendant Tezos Stiftung (the "Foundation")[1] will and hereby does move the Court under California Code of Civil Procedure §§ 418.10(a)(1), 418.10(a)(2), and 581(h) for an order quashing the service of summons on it and dismissing the claims against it or, in the alternative, staying the action against it.  This Motion will be made on the grounds that the Court lacks personal jurisdiction over the Foundation and that California is an inconvenient forum in which to litigate this dispute.

The Motion is based upon this Notice of Motion and the supporting Memorandum of Points and Authorities, the pleadings and records on file with this Court, all matters of which this Court may take judicial notice, the concurrently filed declarations and exhibits, other materials in the record, argument of counsel, and such other matters as the Court may consider.

---

[1] The Foundation's Motion is intended to serve as a special appearance pursuant to California Code of Civil Procedure § 418.10(e)(1).  By making a special appearance in this matter, the Foundation does not waive its right to raise any defenses, including lack of jurisdiction, in any later proceedings, including in connection with any effort to enforce any judgment.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS.................................................................2

PROCEDURAL HISTORY......................................................................................................3

LEGAL STANDARDS .............................................................................................................3

ARGUMENT ..............................................................................................................................4

I.      This Court Lacks Personal Jurisdiction Over the Foundation ...........................................4

        A.      The Foundation's Alleged Conduct Did Not Target California,
                Nor Does Plaintiff's Claim Arise from That Alleged Conduct ...............................4

                1.      The Foundation Did Not Target Californian Contributors ........................5

                2.      Other Defendants' Conduct Is Not Attributable to the
                        Foundation ...............................................................................................6

        B.      Exercising Jurisdiction Over the Foundation Would Be
                Unreasonable.............................................................................................................8

II.     This Action Should Be Stayed Under the Inconvenient Forum Doctrine .........................9

        A.      Switzerland Is a Suitable Alternative Forum ...........................................................9

        B.      The Private and Public Factors Strongly Favor Adjudication in
                Switzerland .............................................................................................................10

        C.      The Forum-Selection Clause Requires the Action to Be Stayed ..........................12

III.    The U.S. District Court's Ruling on the Foundation's Motion to Dismiss
        Does Not Compel the Same Result Here.........................................................................14

CONCLUSION..........................................................................................................................15

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

5

*In re Alcon S'holder Litig.*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010) ................................................. 10, 11

6

*Alvarado v. Selma Convalescent Hosp.*,
   64 Cal. Rptr. 3d 250 (Ct. App. 2007) ........................................................ 12

7

8

*Aquila, Inc. v. Superior Court*,
   55 Cal. Rptr. 3d 803 (Ct. App. 2007) .......................................................... 6

9

10

*In re Auto. Antitrust Cases I & II*,
   37 Cal. Rptr. 3d 258 (Ct. App. 2005) .................................................. 3, 4, 8

11

*Bombardier Recreational Prods., Inc. v. Dow Chem. Can. ULC*,
   157 Cal. Rptr. 3d 66 (Ct. App. 2013) ......................................................... 5

12

13

*Burdick v. Superior Court*,
   183 Cal. Rptr. 3d 1 (Ct. App. 2015) ........................................................... 5

14

15

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
   125 F. Supp. 2d 1194 (C.D. Cal. 2000) ...................................................... 9

16

*Chong v. Superior Court*,
   68 Cal. Rptr. 2d 427 (Ct. App. 1997) ....................................................... 10

17

18

*DeBenedictis v. Merrill Lynch & Co.*,
   492 F.3d 209 (3d Cir. 2007) ...................................................................... 14

19

20

*Dendy v. MGM Grand Hotels, Inc.*,
   187 Cal. Rptr. 95 (Ct. App. 1982) ............................................................ 11

21

*DVI, Inc. v. Superior Court*,
   128 Cal. Rptr. 2d 683 (Ct. App. 2002) ....................................................... 4

22

23

*FDIC v. Providence College*,
   115 F.3d 136 (2d Cir. 1997) ...................................................................... 14

24

*Great-W. Life Assurance Co. v. Guarantee Co. of N. Am.*,
   252 Cal. Rptr. 363 (Ct. App. 1988) ............................................................ 5

25

26

*Greenwell v. Auto-Owners Ins. Co.*,
   182 Cal. Rptr. 3d 873 (Ct. App. 2015) ........................................................ 5

27

*Guimei v. Gen. Elec. Co.*,
   91 Cal. Rptr. 3d 178 (Ct. App. 2009) ......................................................... 9

28

*HealthMarkets, Inc. v. Superior Court*,
  90 Cal. Rptr. 3d 527 (Ct. App. 2009) ...................................................................... 6

*Intershop Commc'ns v. Superior Court*,
  127 Cal. Rptr. 2d 847 (Ct. App. 2002) .................................................................. 13

*Long v. Provide Commerce, Inc.*,
  200 Cal. Rptr. 3d 117 (Ct. App. 2016) .................................................................. 13

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
  14 Cal. Rptr. 2d 906 (Ct. App. 1992) .................................................................... 13

*Malone v. Equitas Reinsurance Ltd.*,
  101 Cal. Rptr. 2d 524 (Ct. App. 2000) .................................................................... 7

*Morris v. AGFA Corp.*,
  51 Cal. Rptr. 3d 301 (Ct. App. 2006) ...................................................................... 2

*Nat'l Football League v. Fireman's Fund Ins. Co.*,
  157 Cal. Rptr. 3d 318 (Ct. App. 2013) .............................................................. 11, 15

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .............................................................................. 13

*Paper Consultants Int'l, Ltd. v. S.S. Hong Kong Amber*,
  513 F.2d 667 (9th Cir. 1975) ................................................................................ 15

*Pavlovich v. Superior Court*,
  58 P.3d 2 (Cal. 2002) ......................................................................................... 4, 5

*Pierbug GmbH & Co. Kg. v. Superior Ct.*,
  186 Cal. Rptr. 876 (Ct. App. 1982) ...................................................................... 11

*Richards v. Lloyd's of London*,
  135 F.3d 1289 (9th Cir. 1998) .............................................................................. 12

*Ripple Labs, Inc. v. R3 LLC*,
  No. CGC-17-561205, 2017 WL 9249197 (Cal. Super. Ct. Dec. 8, 2017) ................ 6

*Roman v. Liberty Univ., Inc.*,
  75 Cal. Rptr. 3d 828 (Ct. App. 2008) ................................................................. 7, 10

*Roy v. Superior Court*,
  25 Cal. Rptr. 3d 488 (Ct. App. 2005) .................................................................... 15

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................................ 14

*Sonora Diamond Corp. v. Superior Court*,
  99 Cal. Rptr. 2d 824 (Ct. App. 2000) ...................................................................... 7

*Spokane Eye Clinic, Inc. v. Superior Court*,
    133 Cal. Rptr. 838 (Ct. App. 1976) ......................................................................... 8

*Stangvik v. Shiley Inc.*,
    819 P.2d 14 (Cal. 1991) ......................................................................... 3, 9, 10, 15

*In re Tezos Sec. Litig.*,
    No. 17-CV-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ..................................... 15

*ViaView, Inc. v. Retzlaff*,
    204 Cal. Rptr. 3d 566 (Ct. App. 2016) ......................................................... 2, 3, 15

*Xu v. Nobel Assembly at Karolinska Institutet*,
    No. SACV 13-320-JLS (ANx), 2013 WL 9760036 (C.D. Cal. Nov. 20, 2013) ........................ 8

**Statutes and Regulations**

Cal. Civ. Pro. Code § 1989 ......................................................................... 11

Cal. Civ. Pro. Code § 410.30(a) ................................................................. 3, 9

Cal. Civ. Pro. Code § 418.10(a)(1) ................................................................. 4

Cal. Civ. Pro. Code § 418.10(a)(2) ............................................................. 3, 9

Cal. Civ. Pro. Code § 581(h) ......................................................................... 4

Regulation (EU) 2016/679, 2016 O.J. (L. 119) 1 ......................................................... 11

Swiss Civ. Code, art. 235.1 ......................................................................... 11

Swiss Civ. Code, art. 80 ......................................................................... 2

Swiss Civ. Code, art. 84 ......................................................................... 2

Swiss Financial Market Supervision Act, art. 5 ......................................................... 2

**Other Authorities**

FINMA, Guidelines for Enquiries Regarding the Regulatory Framework for Initial Coin
    Offerings (ICOs) (Feb. 16, 2018) ......................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

In 2017, Tezos Stiftung (the "Foundation"), a nonprofit entity located in Switzerland that is overseen by Swiss regulators, held a fundraiser (the "Fundraiser") to support a new blockchain technology called Tezos.  Contributors around the world donated to the Fundraiser using software located in Europe, pursuant to terms that expressly stated that contributions were made in Europe and that any disputes would be adjudicated in Switzerland under Swiss law.  Ignoring the fundamentally foreign nature of both the Fundraiser and the Foundation, plaintiff has brought suit in California state court, alleging that the Fundraiser was an unregistered securities offering.  But this Court does not have personal jurisdiction over the Foundation, nor is this the proper venue to address these claims.  The claim against the Foundation should be dismissed or, in the alternative, stayed until and while plaintiff pursues his claim in Switzerland.

As a threshold matter, plaintiff cannot meet his burden of establishing jurisdiction over the Foundation.  The Foundation has no physical presence in California; it has *no* offices and conducts *no* business here.  Plaintiff is thus unable to establish general jurisdiction.  Any claim to specific jurisdiction fares no better:  None of plaintiff's allegations regarding the Foundation's conduct—which amount to little more than that it accepted contributions during the Fundraiser—establish that the Foundation targeted California in any way.  To the extent that plaintiff alleges California activity by *other defendants*, plaintiff's conclusory assertion that those defendants controlled the Foundation fails as a matter of law to allow the Court to impute their activity to the Foundation. The claim against the Foundation should therefore be dismissed for lack of jurisdiction.

The foreign locus of the Fundraiser compels another conclusion as well:  California is not the proper forum to hear this dispute.  Crucial witnesses and evidence are located in Europe, requiring discovery pursuant to the Hague Convention and consistent with Swiss and European data laws, and enforcement of any judgment would be subject to Swiss scrutiny.  These and other factors weighing in favor of a Swiss forum are reinforced by the terms governing the Fundraiser, which require that any disputes—including this one—be adjudicated by Swiss courts.  Thus, at a minimum, the claim should be stayed until and while plaintiff brings suit in the proper forum.

**STATEMENT OF FACTS AND ALLEGATIONS**

The Tezos protocol is decentralized software that facilitates verification of transactions through a cryptocurrency known as "XTZ."  Defendant Dynamic Ledger Solutions, Inc. ("DLS"), a U.S. company that was cofounded by defendants Arthur and Kathleen Breitman, initially developed the Tezos protocol beginning in 2014.  (*See* Decl. of Serge A. Voronov ("Voronov Decl."), Ex. A ("Overview") §§ 1, 3.1.)[2]  The developers working on the Tezos protocol have been primarily located in France since at least early 2017, well before the Fundraiser.  (*See id.* § 3.2.)

The Foundation, a duly organized Swiss nonprofit based in Zug, Switzerland, was founded in or around May 2017.  (Second Am. Compl. ("SAC") ¶ 18.)  It is an autonomous legal entity committed to a defined purpose, *see* Swiss Civ. Code, art. 80—here, to promote and foster the use of the Tezos protocol, including its ongoing development.  (Overview § 3.3.)  The Foundation's operations are located abroad, at its offices in Zug, and it is not alleged to have any offices, employees, or operations of any kind in California.  It is overseen by a six-member Board, and is subject to further oversight by the Swiss Federal Foundation Supervisory Authority (the "FSA").  *See* Swiss Civ. Code, art. 84; (Decl. of Eric Stupp ("Stupp Decl.") ¶¶ 13-14).  The Swiss Financial Market Supervisory Authority ("FINMA") also regulates participants in Switzerland's financial markets and monitors issuers of crypto tokens.  Swiss Financial Market Supervision Act, art. 5; (Stupp Decl. ¶¶ 16-17).[3]  Plaintiff does not allege that DLS has any ownership interest in the Foundation or that the Breitmans serve as directors, officers, or employees of the Foundation.

In July 2017, the Foundation held the Fundraiser and raised over $230 million to, among other things, develop and promote use of the Tezos protocol.  (SAC ¶¶ 6, 60, 65-66.)  The Fundraiser was governed by the Tezos Contribution and XTZ Allocation Terms and Explanatory Notes.  (Voronov Decl., Ex. B (the "Contribution Terms") ¶ 1.)  Those terms explained the mechanics of donating, noting that contributions "must be made using the contribution software

---

[2] On a motion to quash for lack of personal jurisdiction or based on inconvenient forum, the court may consider evidence outside the pleadings.  *See ViaView, Inc. v. Retzlaff*, 204 Cal. Rptr. 3d 566, 575 (Ct. App. 2016); *Morris v. AGFA Corp.*, 51 Cal. Rptr. 3d 301, 309 (Ct. App. 2006).

[3] *See also* FINMA, Guidelines for Enquiries Regarding the Regulatory Framework for Initial Coin Offerings (ICOs) (Feb. 16, 2018), https://www.finma.ch/en/~/media/finma/dokumente/ dokumentencenter/myfinma/1bewilligung/fintech/wegleitung-ico.pdf?la=en.

1  . . . provided by TEZOS," and that the contribution and protocol software were located in

2  Europe, where all contributions were deemed made.  (*Id.* ¶¶ 14, 17, 46.)  The Contribution Terms

3  also provided that Swiss law governed the contributions and that any dispute arising therefrom

4  "shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland."  (*Id.* ¶ 48.)

5        Plaintiff Andrew Baker is a resident of San Diego, California, who allegedly contributed

6  one bitcoin to the Fundraiser on July 12, 2017 (SAC ¶ 17), out of a total of 65,681 bitcoin and

7  361,122 ether contributed worldwide (Voronov Decl., Ex. C).

8                                        **PROCEDURAL HISTORY**

9        On October 25, 2017, plaintiff filed a complaint alleging violations of the federal securities

10  laws against the Foundation and other entities.  DLS removed the case to federal court, and it was

11  remanded on April 19, 2019.  The case was subsequently coordinated with *Trigon Trading Pty.*

12  *Ltd v. Dynamic Ledger Solutions, Inc.*, No. 18CIV02045 (Sup. Ct. San Mateo), but proceedings

13  in the cases were stayed in favor of a pending federal action concerning substantially similar

14  claims (Order (July 23, 2018)), though plaintiff was permitted to continue to attempt service

15  (Minutes (Oct. 19, 2018)).  On March 28, 2019, the Court lifted the stay and instructed the

16  parties who had appeared to share discovery from the pending federal action.  (Order (Mar. 28,

17  2019).)  Plaintiff has since received the entirety of DLS's document production in the federal

18  action, totaling thousands of documents.  On May 16, 2019, Baker filed the SAC, and the

19  Foundation acknowledged service on June 24, 2019 through the undersigned counsel.

20                                        **LEGAL STANDARDS**

21        Where a defendant challenges personal jurisdiction, the plaintiff has the burden of

22  proving "the factual bases justifying the exercise of jurisdiction."  *ViaView, Inc. v. Retzlaf*, 204

23  Cal. Rptr. 3d 566, 574 (Ct. App. 2016).  The plaintiff "must come forward with affidavits and

24  other competent evidence to carry this burden," *id.* at 575, not simply allegations in an unverified

25  complaint, *see In re Auto. Antitrust Cases I & II*, 37 Cal. Rptr. 3d 258, 269 (Ct. App. 2005).

26  Moreover, a court may stay an action on the ground of inconvenient forum if it finds that, "in the

27  interest of substantial justice," the action should be adjudicated elsewhere.  Cal. Civ. Pro. Code

28  §§ 418.10(a)(2), 410.30(a); *see also Stangvik v. Shiley Inc.*, 819 P.2d 14, 17 (Cal. 1991).

**ARGUMENT**

**I.      This Court Lacks Personal Jurisdiction Over the Foundation**

A court may exercise personal jurisdiction over a non-resident defendant only if the plaintiff establishes that the defendant has constitutionally adequate "minimum contacts" with California.  *See Pavlovich v. Superior Court*, 58 P.3d 2, 6 (Cal. 2002); *see also* Cal. Civ. Pro. Code §§ 418.10(a)(1), 581(h).  Plaintiff does not claim that this Court can exercise general jurisdiction over the Foundation,[4] so he must therefore establish specific jurisdiction.  Exercising specific jurisdiction over a defendant requires a plaintiff to show that (1) the defendant "*purposefully* availed [itself] of forum benefits"; (2) the claim arises out of the defendant's forum-related contacts; and (3) the exercise of jurisdiction comports with notions of fair play and substantial justice, i.e., that it is reasonable.  *Pavlovich*, 58 P.3d at 7 (emphasis added).

Plaintiff's mere allegations of jurisdiction cannot suffice to meet his burden.  *See Auto. Antitrust*, 37 Cal. Rptr. 3d at 269.  But even as alleged, nothing about the conduct underlying plaintiff's claims establishes that the *Foundation* purposefully targeted California.  And plaintiff's wholly conclusory—and unsupported—allegation that the Foundation was "controlled" by the other defendants (SAC ¶ 25) fails as a matter of law to establish the existence of jurisdiction.  In these circumstances, any exercise of jurisdiction over a Swiss nonprofit, overseen by a Swiss regulatory authority, with virtually no ties to California, fails to comport with "traditional notions of fair play and substantial justice."  *Pavlovich*, 58 P.3d at 6 (internal quotation marks omitted).

**A.      The Foundation's Alleged Conduct Did Not Target California,**

**Nor Does Plaintiff's Claim Arise from That Alleged Conduct**

Nothing alleged in the SAC demonstrates that plaintiff's claim arises from purposeful availment by the Foundation of California's laws.  The touchstone of this analysis is "defendant's intentionality," which "is only satisfied when the defendant *purposefully* and *voluntarily* directs its activities toward the forum."  *Bombardier Recreational Prods., Inc. v. Dow*

---

[4] Nor could he.  General jurisdiction lies only if the defendant's activities in the forum are "substantial, . . . continuous and systematic."  *DVI, Inc. v. Superior Court*, 128 Cal. Rptr. 2d 683, 690 (Ct. App. 2002) (internal quotation marks omitted).  Plaintiff has not alleged any facts demonstrating that the Swiss Foundation has a regular and systematic presence in California.

4

*Chem. Can. ULC*, 157 Cal. Rptr. 3d 66, 75 (Ct. App. 2013) (emphasis added).  Under the clear specific jurisdiction standard, neither of the SAC's two sets of allegations in support of plaintiff's jurisdictional argument (SAC ¶ 18) is sufficient as a matter of law.

### 1.    The Foundation Did Not Target Californian Contributors

Plaintiff first alleges that the Foundation itself had contact with California as a result of the Fundraiser.  But the Foundation's receipt of contributions from "California residents, including plaintiff" (*id.*) is wholly irrelevant.  *Plaintiff's* voluntary contribution cannot establish *the Foundation's* purposeful availment of California.  *See Great-W. Life Assurance Co. v. Guarantee Co. of N. Am.*, 252 Cal. Rptr. 363, 366 (Ct. App. 1988) (plaintiff's "[u]nilateral activity . . . cannot satisfy the requirement of contact with the forum State" (internal quotation marks omitted)).  The same is true of donations made by others, which in any event cannot create specific jurisdiction with respect to *plaintiff's* claim.  *See Greenwell v. Auto-Owners Ins. Co.*, 182 Cal. Rptr. 3d 873, 883 (Ct. App. 2015) (specific jurisdiction requires a "connection between the defendant's forum activities and *the plaintiff's* claim" (emphasis added)).

Likewise insignificant is plaintiff's allegation that the Foundation received contributions through a website, tezos.com, allegedly hosted in Phoenix, Arizona.  (SAC ¶ 18.)  That allegation is neither relevant—it demonstrates nothing about the Foundation's purposeful availment of *California*—nor true:  The tezos.com website was hosted in Europe.  (Voronov Decl., Ex. D.)  Moreover, plaintiff does not (because he cannot) allege that tezos.com was aimed in any way at soliciting California donors, had California advertisers, or even mentioned California.  That is far from the *purposeful targeting* of California that courts require to exercise specific jurisdiction.  *See Pavlovich*, 58 P.3d at 7 (defendant must "purposefully and voluntarily" direct activities toward forum); *Burdick v. Superior Court*, 183 Cal. Rptr. 3d 1, 9 (Ct. App. 2015) (holding that critical jurisdictional inquiry in case arising from website is whether defendant "manifested an intent to direct their website content . . . to a forum state audience").

In fact, all of the Foundation's actions demonstrate that it was *not* targeting California.  The Foundation is a Swiss entity, and the Fundraiser was intended to further the development of the Tezos protocol by developers in Europe.  The Fundraiser software was located in Europe.

5

(Voronov Decl., Ex. D.)  And contemporaneous documents, such as the Contribution Terms created by the Foundation to govern the Fundraiser, expressly provided that the contributions were deemed made in Europe and subject to Swiss law, and that any disputes arising between the parties are relegated exclusively to the Swiss courts.  (Contribution Terms ¶¶ 46, 48.)  These facts are inconsistent with any attempt to assert specific jurisdiction over the Foundation on the basis that it purposefully directed itself toward California.  *See, e.g.*, *Aquila, Inc. v. Superior Court*, 55 Cal. Rptr. 3d 803, 817 (Ct. App. 2007) (foreign choice of law and forum selection clause weigh against finding purposeful availment); *Ripple Labs, Inc. v. R3 LLC*, No. CGC-17-561205, 2017 WL 9249197, at *1 (Cal. Super. Ct. Dec. 8, 2017) (finding defendants "intentionally avoided directing their activities toward California by negotiating a New York choice-of-law provision").

### 2.    Other Defendants' Conduct Is Not Attributable to the Foundation

No doubt recognizing that the Foundation never purposefully interacted with California, plaintiff also claims that jurisdiction exists over the Foundation because certain "acts that allowed the [Fundraiser] to be completed occurred in California."  (SAC ¶ 18.)  Critically, however, these were not acts undertaken by the Foundation.  Rather, according to plaintiff, Strange Brew, hired by Mr. and Ms. Breitman, developed marketing materials for the Fundraiser (*id.* ¶¶ 51-52); Mr. and Ms. Breitman and Draper promoted the Fundraiser (*id.* ¶¶ 21, 23, 44-50); Draper invested in DLS (*id.* ¶¶ 23, 49); and Mr. Breitman developed, and DLS owned, the intellectual property underlying the Tezos project (*id.* ¶¶ 20, 22, 42).

While plaintiff's basis for attributing these activities to the Foundation is confused—indeed the SAC appears to intentionally blur the lines between the Swiss Foundation and California-based defendants—at bottom it rests on the assertion that DLS and the Breitmans "controlled and directed" the Foundation's activities during the Fundraiser.  (*Id.* ¶ 25.)  But the critical question when assessing the relationship between two entities for personal jurisdiction purposes is "whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts."  *HealthMarkets, Inc. v. Superior Court*, 90 Cal. Rptr. 3d 527, 535 (Ct. App. 2009) (internal quotation marks omitted).  Thus, to establish jurisdiction over the Foundation based on the conduct of others, plaintiff was required to plead facts establishing

that the Foundation controlled DLS and the Breitmans and directed their actions to California. Plaintiff posits no such thing.  There is not a single allegation in the SAC suggesting that the Foundation even had the *ability* to direct the actions of DLS or the Breitmans, let alone that it actually *caused* them to perform Fundraiser-related functions in California.  As a result, there is no legal basis on which to impute any alleged conduct by DLS or the Breitmans to the Foundation.

Even if plaintiff's inverted theory of agency accurately reflected the state of the law—and it does not—he still could not show a basis for imputing DLS's and the Breitmans' activities to the Foundation.  Despite access to the entirety of DLS's document production, plaintiff's allegations of control amount to little more than that DLS "advises" the Foundation on technological matters and that DLS and the Foundation "have negotiated a contractual agreement" pursuant to which the Foundation may eventually acquire DLS.  (SAC ¶ 43.)  But advice is expressly *not* control, and if anything the need for an arm's-length agreement indicates that neither controlled the other.[5] Indeed, plaintiff's own allegations contradict the notion that DLS controlled the Foundation's affairs (*e.g.*, *id.* ¶¶ 84-87 (detailing dispute between Breitmans and the Foundation's president))— he even acknowledges that the Foundation's former president described Mr. and Ms. Breitman as merely "trying," but not succeeding, to control the Foundation (*id.* ¶ 25).[6]

With no basis to impute the actions of others to the Foundation, plaintiff has not shown *any* intentional connection between the Foundation and California.  For that reason, the Court cannot exercise personal jurisdiction over the Foundation.

---

[5] That agreement does not provide a basis for jurisdiction.  The mere existence of a contract with a California resident does not show purposeful availment of forum benefits.  *See, e.g.*, *Malone v. Equitas Reinsurance Ltd.*, 101 Cal. Rptr. 2d 524, 530 (Ct. App. 2000).  Nor does plaintiff's federal securities law claim even arise out of the agreement:  His contribution to the Foundation is not alleged to have been pursuant to or as a result of that agreement.  *See Roman v. Liberty Univ., Inc.*, 75 Cal. Rptr. 3d 828, 835-36 (Ct. App. 2008) (holding that specific jurisdiction could not be exercised where defendant university's scholarship agreement with plaintiff in California bore no connection to plaintiff's personal injury claim).

[6] Nor do these allegations establish an alter-ego relationship.  Doing so would require plaintiff to show "a unity of interest and ownership" between two entities such that separate corporate personalities no longer exist.  *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Ct. App. 2000).  The necessary evidence—that DLS has an ownership interest in the Foundation; that the Foundation and DLS have commingled their assets, share office space, or employees; or that the Foundation is inadequately capitalized or disregards corporate formalities, *see Sonora*, 99 Cal. Rptr. 2d at 836—simply does not exist and has not even been alleged.

7

## B.   Exercising Jurisdiction Over the Foundation Would Be Unreasonable

Because plaintiff's claim does not arise out of any purposeful forum-related contact, the Court need not reach the reasonableness question.  In any event, given the paucity of the Foundation's contacts with California, the exercise of jurisdiction would be unreasonable, providing an additional basis for dismissal.  *See Spokane Eye Clinic, Inc. v. Superior Court*, 133 Cal. Rptr. 838, 840 (Ct. App. 1976) (listing relevant reasonableness factors).

*First*, plaintiff's cause of action does not arise out of the Foundation's local activity because there *was no local activity* on the part of the Switzerland-based Foundation.  What little is alleged about the Foundation makes clear that its operations have been, and are, located in Europe.  (*E.g.*, SAC ¶¶ 18, 90, 94 (alleging that the Swiss FSA oversaw the Swiss Foundation's activities), 96 (Ms. Breitman referring to the Foundation as "those guys in Zug").)

*Second*, the burden on the Foundation to defend this case in California would be substantial.  *See Xu v. Nobel Assembly at Karolinska Institutet*, No. SACV 13-320-JLS (ANx), 2013 WL 9760036, at *5 (C.D. Cal. Nov. 20, 2013) (recognizing the "significant burden" on a foreign nonprofit to litigate in the United Sates).  That the Foundation is already being inconvenienced by defending against the more advanced, related federal action is not to the contrary.  The Foundation should not be required to defend against *multiple actions* addressing the same issues thousands of miles away from its headquarters.

*Third*, California's interest in this suit is minimal.  Plaintiff donated to a Swiss foundation, under terms governed by Swiss law, to support a project being developed in Europe, and has now brought suit under federal—not even California—law.  Switzerland's interest in this case, on the other hand, creates "a high barrier of sovereignty [that] tends to undermine the reasonableness of exercising personal jurisdiction." *Auto. Antitrust Cases*, 37 Cal. Rptr. 3d at 268 (holding that courts should "be[] unwilling to find the serious burden on an alien defendant outweighed by minimal interests of the plaintiff or of California").  The Foundation is subject to oversight by the FSA, which monitors the Foundation to ensure that its assets are spent in accordance with its mission.  (Stupp Decl. ¶¶ 13-14.)  Separately, FINMA oversees the appropriate and lawful distribution of cryptocurrencies by Swiss entities under Swiss law.  (*Id.* ¶¶ 16-17.)  Switzerland's

1  policy interests are therefore clearly implicated because plaintiff seeks to assert U.S. law over a

2  Swiss-chartered entity.  *See Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d

3  1194, 1206 (C.D. Cal. 2000) (holding that the exercise of jurisdiction was "undermine[d]" by the

4  Canadian defendant's "corporate charter [issued] by the Canadian government").

5  *Finally*, Switzerland is available as an alternative forum to hear plaintiff's complaint.  *See*

6  *infra* Pt. II.A.

7  With the factors weighing against exercising jurisdiction, the Court should dismiss the

8  claims against the Foundation on this independent basis.

9  **II.    This Action Should Be Stayed Under the Inconvenient Forum Doctrine**

10  At a minimum, the Court should decline to exercise jurisdiction over the claims against

11  the Foundation because they are more appropriately and justly tried elsewhere—namely, in

12  Switzerland.  Even where a court has personal jurisdiction, it may stay an action on the ground of

13  inconvenient forum if it finds that, "in the interest of substantial justice," the action should be

14  adjudicated elsewhere.  Cal. Civ. Pro. Code §§ 418.10(a)(2), 410.30(a).  Switzerland is a suitable

15  alternative forum and both the public and private interest factors favor adjudicating the dispute

16  there.  That conclusion is bolstered by the Contribution Terms' forum-selection clause, which

17  mandates that all disputes in connection with the Fundraiser proceed in Switzerland.  The Court

18  should stay the claims against the Foundation until and while plaintiff brings suit in Switzerland.

19  **A.    Switzerland Is a Suitable Alternative Forum**

20  In considering whether to grant a motion based on inconvenient forum, a court first

21  determines whether the alternative forum is a "suitable" place for trial.  *Stangvik v. Shiley Inc.*,

22  819 P.2d 14, 17 (Cal. 1991).  Suitability rests on whether the alternative forum would have

23  jurisdiction over an analogous claim not barred by the statute of limitations.  *See Guimei v. Gen.*

24  *Elec. Co.*, 91 Cal. Rptr. 3d 178, 185 (Ct. App. 2009).

25  Switzerland is a suitable alternative forum.  Plaintiff's claim is that the Fundraiser involved

26  unregistered securities.  Like U.S. law, Swiss law requires that issuers of securities follow certain

27  procedures to apprise potential investors of the risks associated with the securities—such as

28  publishing a prospectus that discloses material information.  (Stupp Decl. ¶¶ 19-21.)  Failure to

9

publish such a prospectus, just like failing to register in the United States, entitles purchasers of the security to recover from the issuer. (*Id.* ¶ 22.) Swiss law also provides for recovery under broader causes of action, such as negligence and misrepresentation. (*Id.* ¶¶ 23-26.) These claims remain timely for years, and applicable statutes of limitations may be tolled by foreign lawsuits. (*Id.* ¶ 31.) Plaintiff can thus have a Swiss court consider the same type of matter that he has brought before this Court, and such courts provide a suitable alternative forum. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010) (holding that Switzerland was an adequate alternative forum in an action arising out of a securities transaction).

### B.   The Private and Public Factors Strongly Favor Adjudication in Switzerland

After determining that an alternative forum is suitable, courts look to whether the private and public factors favor a stay. *Stangvik*, 819 P.2d at 18. The numerous factors weighed by California courts are meant to be applied "flexibly," without undue emphasis on any one factor. *Id.*; *see Roman v. Liberty Univ., Inc.*, 75 Cal. Rptr. 3d 828, 838 (Ct. App. 2008) (in weighing the private and public factors, "[n]o single factor is predominant"). The private factors relate to where the trial and enforcement of any judgment will be most expeditious and least expensive, including the "ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses." *Stangvik*, 819 P.2d at 17. The public factors weigh the competing interests of California and the alternate jurisdiction in the litigation. *See Chong v. Superior Court*, 68 Cal. Rptr. 2d 427, 430 (Ct. App. 1997).

The foreign locus of this case means that the private interest factors militate strongly in favor of a stay. The Foundation's operations are in Switzerland, the network developers are primarily located in France, and the contribution software is located in Europe. The Foundation's European presence and contacts mean that the witnesses and documents needed to understand certain technical functions of the Tezos tokens—essential to a complete analysis of whether the tokens constitute a security—are located in Europe. Any discovery in United States courts would need to proceed pursuant to the Hague Evidence Convention, creating delays,

1  additional expense, and a significant burden on the parties.[7]  *See Pierbug GmbH & Co. Kg. v.*

2  *Superior Ct.*, 186 Cal. Rptr. 876, 882 (Ct. App. 1982) (acknowledging that compliance with the

3  Hague Evidence Convention may "entail additional cost"); *Alcon*, 719 F. Supp. 2d at 276

4  (finding that taking testimony from witnesses "who reside in Switzerland or elsewhere in

5  Europe" would require proceedings under the Hague Convention, "a prospect that entails

6  significant amounts of time even in ordinary cases," and would likely cause "greater financial

7  hardships" and "additional litigation").  Discovery would also be subject to a number of

8  European data protection and privacy laws, including the GDPR, that would compound delays

9  and expense.  *See* Regulation (EU) 2016/679, 2016 O.J. (L. 119) 1; Swiss Civ. Code, art. 235.1

10 (Federal Act on Data Protection imposing limitations on the use and disclosure of documents

11 abroad).  Similarly, non-party international witnesses with involvement in the Fundraiser, such

12 as former directors of the Foundation or the developers, may not be compelled to testify before

13 this Court.  *See* Cal. Civ. Pro. Code § 1989; *Dendy v. MGM Grand Hotels, Inc.*, 187 Cal. Rptr.

14 95, 98 (Ct. App. 1982) (a California court may not compel the attendance of out-of-state

15 witnesses).  Moreover, any judgment that plaintiff might obtain in this action would face issues

16 with enforceability.  *See Alcon*, 719 F. Supp. 2d at 277.  Enforcement would require plaintiff to

17 show that this Court's exercise of jurisdiction over the Foundation was proper under Swiss law

18 and that the judgment is not contrary to Swiss public policy.  (Stupp Decl. ¶¶ 33, 35-36.)

19     Balanced against these concerns is only one factor: plaintiff's residence in California.

20 But his residence is given no greater weight than any other factor in the analysis where a

21 defendant seeks a stay rather than a dismissal.  *See Nat'l Football League v. Fireman's Fund Ins.*

22 *Co.*, 157 Cal. Rptr. 3d 318, 342-43 (Ct. App. 2013).  Indeed, his residence should be afforded

23 even less weight because plaintiff purports to represent a class of "[a]ll persons" who contributed

24 to the Fundraiser in July 2017—of which only a fraction reside in California, while many do not

25 even reside in the United States.

26

27

28

---

[7] Indeed, plaintiff did not even purport to serve the Foundation under the Hague Service
Convention for almost *seven months* after the Court lifted the stay of proceedings to allow him to
effect service, repeatedly suggesting that such service would be time-consuming and expensive.

None of these facts is mitigated by the related federal litigation that the Foundation is already being forced to litigate in the United States.  Indeed, that action only exacerbates the inconvenience to the Foundation of this nearly identical litigation.  If the Foundation must litigate these same issues in a parallel proceeding, the most logical place to do so would be in the country contemplated by the Contribution Terms, where the proceeds of the Fundraiser are being held, and where the majority of the purported class would expect it to proceed.  The private factors thus weigh substantially in favor of adjudicating this dispute in Switzerland.

The public factors likewise favor a stay.  Though California has some interest in protecting the interests of its own residents, plaintiff brings this action under federal, not California, law on behalf of a class that is overwhelmingly foreign.  California's interest in this case is correspondingly diminished.  Switzerland, meanwhile, has a significant interest in enforcing its own securities laws and controlling its own chartered entities.  That is particularly true here, where the Foundation's activities are overseen by Swiss authorities who are actively monitoring developments in Switzerland's "Crypto Valley."  In addition, this action arises in the context of a novel industry where federal policies have yet to be fully defined.  California courts have taken special care when dealing with cases involving complex economic issues.  *Cf. Alvarado v. Selma Convalescent Hosp.*, 64 Cal. Rptr. 3d 250, 254 (Ct. App. 2007) (noting that "[j]udicial intervention in areas of complex economic policy is inappropriate").  Indeed, courts have recognized that it simply is not the case that "federal and state securities laws are of 'fundamental importance to American democratic capitalism.'"  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998).

Whatever interest the Court may have in this case, it is significantly lessened by the fact that one small donor to the Fundraiser is asking the Court to consider issues under U.S. federal law on behalf of a largely foreign purported class.  Thus, the public interests weigh strongly in favor of granting a stay so that this action may proceed in Switzerland.

### C.     The Forum-Selection Clause Requires the Action to Be Stayed

The result dictated by the private and public factors—i.e., a stay until and while plaintiff brings his claims in Switzerland—is likewise required by the Contribution Terms.  Where a

contractual forum selection clause exists, the clause is presumed valid and will be enforced unless the plaintiff can show that enforcement of the clause would be unreasonable. *Intershop Commc'ns v. Superior Court*, 127 Cal. Rptr. 2d 847, 852 (Ct. App. 2002). The Contribution Terms expressly provide not only that plaintiff's contribution is governed by Swiss law, but also that "[a]ny dispute" arising out of that contribution "shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland." (Contribution Terms ¶ 48.) This language is mandatory, not permissive, under California law. *See Lu v. Dryclean-U.S.A. of Cal., Inc.*, 14 Cal. Rptr. 2d 906, 907 (Ct. App. 1992) (forum-selection clause stating "[a]ny and all litigation that may arise . . . shall be litigated in [Florida]" was mandatory).

Plaintiff cannot escape this mandatory forum-selection clause merely by claiming that he did not "see or agree" to the Contribution Terms. (SAC ¶ 128.) A browsewrap agreement such as those terms is binding if "a reasonably prudent user" would have been "on inquiry notice of [them]." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).[8] And here, any reasonable contributor would have been aware of the Contribution Terms. They were posted, along with other important information about the Fundraiser, on the Foundation's website, which contained a prominent link to "Contribution Terms" on its main page. (Voronov Decl., Ex. E.) The link would have been clearly visible to plaintiff when he—per his own allegations—"read up on Tezos on its own site." (SAC ¶ 125.) The terms were also distributed through the Foundation's Twitter and Facebook accounts, as well as in an email sent to a listserv of individuals interested in Tezos.[9] Moreover, the Overview document posted to tezos.com—on a slide bearing the heading "FUNDRAISER"—expressly instructed potential contributors to "refer to the legal document that will be issued by the Foundation for more details." (Overview § 4.) Reasonable prudence would have required any contributor to seek out the only legal document pertaining to the Fundraiser, which contained details not found in the summary Overview. Given these notifications, the Tezos community at large was well aware of the Contribution Terms and

---

[8] California applies federal law in determining whether a browsewrap agreement is enforceable. *See Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 122-23 (Ct. App. 2016).

[9] Voronov Decl., Exs. F (Tezos Foundation (@TezosFoundation), Twitter (June 30, 2017, 9:15 a.m.)), G (Tezos Foundation, Facebook (June 30, 2017)), H (Email from Tezos Foundation regarding "The fundraiser is now live" (June 30, 2017)).

discussed them on, among other places, Reddit and bitcointalk.org.[10]  Plaintiff's assertion that he was unaware of the terms is simply incredible in light of his allegations that he researched Tezos on "various cryptocurrency blogs and podcasts" (SAC ¶ 125)—likely including the same ones where the terms were posted.  *See, e.g.*, *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 217-18 (3d Cir. 2007) (in the securities context, holding that plaintiff was put on inquiry notice by publicly available news articles).[11]

In the context of a novel technology, reasonable contributors would have done their own research to understand the purpose and mechanics of the Fundraiser before contributing.  *Cf. FDIC v. Providence College*, 115 F.3d 136, 141-42 (2d Cir. 1997) (where a transaction is "novel and extraordinary," it creates inquiry notice regarding the background of the transaction).  If plaintiff was not actually aware of the Contribution Terms, he was at least willfully blind to them.  He cannot evade the clear requirements of the Contribution Terms in this manner.

**III.    The U.S. District Court's Ruling on the Foundation's Motion to Dismiss Does Not Compel the Same Result Here**

The Foundation contested both personal jurisdiction and venue in the related case pending in the U.S. District Court for the Northern District of California.  While the Foundation respectfully disagrees with that court's denial of the Foundation's motion, it should not carry any weight here, in a case with different allegations, standards and burdens of proof, and evidence.

Under Federal Rule of Civil Procedure 12(b)(2), a federal plaintiff can defeat a motion to dismiss for lack of personal jurisdiction merely by alleging a prima facie case of jurisdiction.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Accordingly,

---

[10] *See, e.g.*, Voronov Decl. Exs. I (*Tezos Contribution Terms have just been released.*, Reddit (June 30, 2017, 4:10 p.m.), J (*Re: Tezos discussion*, Bitcointalk (July 1, 2017, 4:48 a.m.)).

[11] Plaintiff's inquiry notice of the terms is further supported by his sophistication with cryptocurrencies and industry practice.  For instance, the genesis sale of ether—which plaintiff has owned for years (SAC ¶ 124)—was governed by its own set of terms.  Terms and Conditions of Ethereum Genesis Sale, Ethereum (July 21, 2014), https://github.com/ethereum/www/blob/master-postsale/src/extras/pdfs/TermsAndConditionsOfTheEthereumGenesisSale.pdf.  Similar agreements were also used in connection with, among others, the EOS Token Distribution and the IOTA Crowdsale.  *See* EOS Token Purchase Agreement (Sept. 4, 2017), https://d340lr3764rrcr.cloudfront.net/purchase_agreement/block.one+-+EOS+Token+Purchase+Agreement+-+September+4%2C+2017.pdf; *IOTA Crowdsale Purchase Agreement* (Nov. 25, 2015), https://factsaboutiota.wordpress.com/crowdsale/.

1    the federal court's ruling was predicated on that plaintiff's *allegations*, not evidence.  *See In re*

2    *Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *6 (N.D. Cal. Aug. 7, 2018)

3    (emphasizing the "relatively modest jurisdictional showing asked of a plaintiff facing dismissal

4    under Rule 12(b)(2)").  By contrast, California demands more:  Baker cannot defeat a motion to

5    quash service of summons by resting on his allegations; he is required to substantiate his

6    jurisdictional claims with competent evidence.  *ViaView*, 204 Cal. Rptr. 3d at 575; *see also Roy*

7    *v. Superior Court*, 25 Cal. Rptr. 3d 488, 492 (Ct. App. 2005) (recognizing more onerous burden

8    on plaintiff in California action at pleading stage as compared to federal practice).  Likewise, the

9    federal plaintiff needed to allege only the Foundation's contacts with the *United States* as a

10   whole—not with California specifically, which plaintiff here has utterly failed to do.

11          Similarly, the federal court's determination on the issue of forum non conveniens—where

12   it found that the argument "threaten[ed] [plaintiff's] access to this forum pending discovery" but

13   could not prevail on a motion to dismiss, *Tezos*, 2018 WL 4293341, at *7—has no bearing on

14   this Court's decision.  Whereas federal courts have held that a court should dismiss claims under

15   the doctrine of forum non conveniens only "in exceptional circumstances," *Paper Consultants*

16   *Int'l, Ltd. v. S.S. Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975), California requires only

17   a showing that the action "may be more appropriately and justly tried" in the alternative forum.

18   *Stangvik*, 819 P.2d at 17.  Moreover, because the Foundation seeks a stay of the proceedings,

19   rather than dismissal as it did in the federal action, the balance of factors is different here than in

20   the federal action.  *See Nat'l Football League*, 157 Cal. Rptr. at 343-44.  Thus the Court should

21   not give precedential weight to the federal court decision on this issue.

22                                      **CONCLUSION**

23          For the foregoing reasons, the Foundation respectfully requests that this Court grant its

24   motion to quash and to dismiss the claim against the Foundation or, in the alternative, to stay the

25   claim until and while plaintiff brings suit in Switzerland.

26          The Foundation expressly contests this Court's jurisdiction.  The Foundation reserves the

27   right to raise the defense of lack of jurisdiction in connection with any effort to enforce any

28   judgment abroad, including in Switzerland.

1    Dated: July 24, 2019                    Respectfully submitted,

2                                            DAVIS POLK & WARDWELL LLP

3

4                                            By:  */s/ Neal A. Potischman*
                                                  Neal A. Potischman (SBN 254862)
5                                                 Serge A. Voronov (SBN 298655)
                                                  DAVIS POLK & WARDWELL LLP
6                                                 1600 El Camino Real
                                                  Menlo Park, California 94025
7                                                 Telephone:  (650) 752-2000
                                                  Facsimile:   (650) 752-2111
8                                                 Email: neal.potischman@davispolk.com

9
                                                  Edmund Polubinski III
10                                                  (*pro hac vice* application pending)
                                                  Andrew S. Gehring
11                                                  (*pro hac vice* application pending)
                                                  450 Lexington Avenue
12                                                New York, New York 10017
                                                  Telephone:  (212) 450-4000
13                                                Facsimile:   (212) 701-5800
                                                  Email: edmund.polubinski@davispolk.com
14                                                        andrew.gehring@davispolk.com

15
                                                  *Attorneys for Specially Appearing Defendant*
16                                                *Tezos Stiftung*

17

18

19

20

21

22

23

24

25

26

27

28