Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com

*Co-Lead Class Counsel and Counsel to Lead Plaintiff Trigon Trading Pty Ltd.*

Reed R. Kathrein (139304)
Danielle Smith (291237)
**Hagens Berman Sobol Shapiro LLP**
715 Hearst Ave., Suite 202
Berkeley, CA 94710
(510) 725-3000 phone
reed@hbsslaw.com
danielles@hbsslaw.com

*Additional Counsel to Lead Plaintiff Trigon Trading Pty Ltd.*

(*Additional counsel listed on signature block.*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-06779-RS |
| This document relates to: | **CLASS ACTION** |
| ALL ACTIONS | **LEAD PLAINTIFF'S OPPOSITION TO MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES** |
| | Date:       N/A* |
| | Time:       N/A |
| | Courtroom:  N/A |
| | Judge:      Hon. Richard Seeborg |
| | *\* The Court's September 25, 2020 Order (ECF No. 268) vacated the October 29, 2020 hearing.* |

## Table of Contents

Table of Contents...................................................................................................... ii

Table of Authorities ................................................................................................. iii

Glossary of Defined Terms.........................................................................................v

Preliminary Statement ................................................................................................1

Relevant Facts.............................................................................................................3

A.   After Some Initial Skirmishing, The Court
Appoints the Ta Group to Lead the Federal Action ........................................3

B.   The Block/Robbins Group Works Together in State Court ............................4

C.   The Ta Group was Disruptive and Non-Cooperative.....................................6

D.   The Ta Group Knew of Trigon's Proposed Fee Allocation and
Insisted the Allocation be Removed from the Stipulation...............................8

E.   The Ta Group Refused to Engage in Meaningful Discussions to
Avoid Bringing this Dispute Before the Court..............................................10

F.   The Ta Group Was Offered its Share of Fees Without Prejudice to Its
Right to Challenge the Fee Allocation ..........................................................11

Argument ...................................................................................................................11

A.   Ta's Motion is Untimely Under Rule 54, and the
Court Lacks Jurisdiction to Hear This Dispute .............................................11

B.   Trigon's Fee Allocation Decision Should Be Presumed Correct...................12

C.   The Court Should Reject The Ta Group's
Reckless and Inaccurate Accusations That It Was
Somehow Misled About the Block/Robbins Group's Cooperation ...............15

D.   The Ta Group Overstates Its Contribution Relative to The Block/Robbins Group ..........18

Conclusion.................................................................................................................23

**Table of Authorities**

1
2      **Cases**

3      *Arkansas Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
4          No. 11-CV-10230-MLW, 2018 WL 11026335 (D. Mass. June 28, 2018) ............................16

5      *Barrera v. Gamestop Corp.*,
           2012 WL 1470170 (C.D. Cal. Apr. 27, 2012) .........................................................................12
6
       *Cohen v. U.S. Dist. Court for N. Dist. of California*,
7          586 F.3d 703 (9th Cir. 2009) ...................................................................................................13

8      *Dakota Med., Inc. v. RehabCare Grp., Inc.*,
9          No. 114CV02081DADBAM, 2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ........................14

10     *Flanagan, Lieberman, Hoffman & Swain v. Ohio Pub. Employees Ret. Sys.*,
           814 F. 3d 652 (2d. Cir. 2016) ..................................................................................................13
11
       *GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
12         2018 WL 1388488 (N.D. Cal. Mar. 16, 2018) ...........................................................................3

13     *In re Cavanaugh*,
14         306 F.3d 726 (9th Cir. 2002) ...........................................................................................12, 14

15     *In re Cendant Corp. Sec. Litig. ("Cendant II")*,
16         404 F.3d 173 (3d Cir. 2005) .....................................................................................................1

17     *In re Critical Path, Inc.*,
           C 01-00551, 2002 WL 32627559 (N.D. Cal. June 18, 2002)...................................................13
18
       *In re FPI/Agretech Sec. Litig.*,
19         105 F.3d 469 (9th Cir. 1997) .............................................................................................13, 19

20     *In re Linerboard Antitrust Litig.*,
21         No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004)..........................................14

22     *In re Network Assocs., Inc., Sec. Litig.*,
           76 F. Supp. 2d 1017 (N.D. Cal. 1999).....................................................................................14
23
       *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
24         No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .....................................13, 20

25     *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
26         No. 810ML02151JVSFMOX, 2013 WL 12327929 (C.D. Cal. July 24, 2013) ......................14

27     *In re Tut Sys., Inc. Sec. Litig.*,
28         No. C 01-2659 CW, 2007 WL 1722420 (N.D. Cal. June 13, 2007) ........................................13

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 1917, 2016 WL 6909680 (N.D. Cal. Oct. 24, 2016) ...................................................13, 20

*iPhone Warranty Litig.*,
40 F. Supp. 3d 1176 (N.D. Cal. 2014) ...................................................................................19

*K.C. ex rel. Erica C. v. Torlakson*,
762 F.3d 963 (9th Cir. 2014) ................................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ..............................................................................................................12

*Mannheim Video, Inc. v. County of Cook*,
884 F.2d 1043 (7th Cir. 1989) ..............................................................................................13

*Monaco v. Bear Stearns Companies, Inc.*,
No. CV0905438SJOJCX, 2015 WL 12669868 (C.D. Cal. Sept. 18, 2015) ..........................12

*Pearson v. Target Corp.*,
968 F.3d 827 (7th Cir. 2020) ................................................................................................18

*Ralston v. Mortg. Inv'rs Grp., Inc.*,
No. 08-CV-00536-JF (LHK), 2015 WL 5027603 (N.D. Cal. Aug. 25, 2015) ......................12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................................................................................19

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .................................................................................................15

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
623 F.3d 82 (2d Cir. 2010) ...................................................................................................13

## Glossary of Defined Terms

| | |
|---|---|
| **Anvari** | Arman Anvari |
| **Baker** | Andrew Baker |
| **B&L** | Block & Leviton LLP |
| **Block/Robbins Group** | Trigon, MacDonald, Baker, B&L, Hagens Berman, Robbins Geller, and Taylor-Copeland |
| **Breitmans** | Arthur Breitman and Kathleen Breitman |
| **Defendants** | The Tezos Foundation, DLS, the Breitmans, the Draper Defendants, and Bitcoin Suisse AG |
| **DLS** | Dynamic Ledger Solutions, Inc., |
| **Draper Defendants** | Timothy C. Draper, Draper Associates V Crypto LLC |
| **Federal Action** | *In re: Tezos Securities Litigation*, Master File No. 17-cv-06779-RS (N.D. Cal.) |
| **Hagens Berman** | Hagens Berman Sobol Shapiro LLP |
| **HGT Law** | Hung G. Ta, Esq. PLLC |
| **Lite DePalma** | Lite DePalma Greenberg, LLC |
| **LTL** | LTL Attorneys LLP |
| **MacDonald** | Bruce MacDonald |
| **PSLRA** | Private Securities Litigation Reform Act of 1995 |
| **Restis** | The Restis Law Firm, P.C. |
| **Robbins Geller** | Robbins Geller Rudman & Dowd LLP |
| **State Action** | *Tezos ICO Cases*, Case No. CJC-18-004978 (Cal. Sup. Ct.) |
| **Ta** | Hung G. Ta |
| **Ta Group** | Anvari, Artiom Frunze, GGCC, LLC, Hayden Hsiung, Gijs Master, Andrew Okusko, Pumaro LLC, HGT Law, Restis, LTL, and Lite DePalma |
| **Taylor-Copeland** | Taylor-Copeland Law |
| **Tezos Foundation** | Tezos Stiftung |
| **Trigon** | Trigon Trading Pty Ltd. |

### Preliminary Statement

The Court should not have to deal with this dispute. It is always unseemly for lawyers to be squabbling over a multi-million-dollar award of attorneys' fees. Worse, the Ta Group rejected repeated offers to engage in good-faith discussions to resolve this dispute (including before an independent neutral) before burdening the Court with this fight.[1] Trigon and the Block/Robbins Group apologize to the Court that counsel were unable to work things out among themselves and will work in the utmost good faith with Chief Magistrate Judge Spero to seek a fair negotiated resolution.[2]

If the dispute cannot be consensually resolved, the motion should be denied.

As a threshold matter, the Ta Group's motion is untimely. Motions regarding fees in a class action must be filed within fourteen days of judgment. The Ta Group has known since December 2019 that the sole lead plaintiff, Trigon, planned to allocate 25% of the total attorneys' fees to the Ta Group. The Ta Group **never** proposed a different fee allocation until after fees were awarded and sat on its hands until B&L sought to distribute the money consistent with Trigon's allocation. Because the motion was not timely filed, the Court lacks subject-matter jurisdiction.

The motion also fails on the merits. The Ta Group spends twenty-five pages slinging mud at other lawyers but fails even to acknowledge the governing law in a PSLRA case: "the district court should accord a presumption of correctness to lead plaintiff's [fee allocation] decision…"[3] Here, Trigon recommended that the Ta Group be allocated 25% of the fee—reflecting the Ta Group's relative contribution to the result achieved—and the Ta Group has not rebutted the statutory presumption that Trigon's allocation was correct.

---

[1] The Ta Group's refusal to negotiate is best illustrated by the email exchange between Ta and Block on September 1, 2020. *See* Block Dec., Ex. B. Block wrote to Ta offering to negotiate or to engage a neutral to assist in the efforts because the Court would undoubtedly want the parties to try to work the dispute out without Court involvement. Ta responded within 7 minutes with a single-word response: "No." *Id.*

[2] Alternately, the Block/Robbins Group reiterates its willingness—if the Ta Group would like to withdraw its motion without prejudice—to resolve this dispute either through further informal discussions or through more formal ADR mechanisms.

[3] *In re Cendant Corp. Sec. Litig.* ("*Cendant II*"), 404 F.3d 173, 199 (3d Cir. 2005).

The Ta Group's wild accusation that "Block & Leviton (and the other firms in the Block Group) have attempted to deceive HGT Law, and have violated numerous ethical duties and guidelines of this District" is absolutely false. Before Trigon was appointed as Lead Plaintiff, the members of the Block/Robbins Group did agree to share work and fees on a 50/50 basis.[4] But the Ta Group's feigned ignorance of that fact is not credible. When Trigon moved to replace Ta's client, Anvari, as lead plaintiff, B&L freely disclosed that it and Hagens Berman were working cooperatively with Robbins Geller and Taylor-Copeland and would continue to do so. Even Ta admits that, after the Court suggested it might appoint B&L and Ta as co-lead counsel, B&L again tried to raise the matter of working together with Robbins Geller. But Ta refused to engage. Then, after the parties agreed to a $25 million settlement, the Block/Robbins Group tried to include information about a fee allocation in the Stipulation of Settlement for full transparency. But the Ta Group insisted that information about the allocation be removed.

After the slander of other lawyers is stripped out, the Ta Group's motion boils down to the following syllogism: (1) the only correct way to allocate fees is on a pure lodestar basis; (2) Trigon's recommended allocation does not track lodestar; and (3) therefore, Trigon's allocation cannot be correct. Nonsense. In this Circuit, fees are awarded on a percentage-of-the-common-fund basis with lodestar serving only as a cross-check. The PSLRA expressly requires that fees be calculated as "a reasonable percentage" of the amounts "actually paid to the class."[5] And that is exactly how this Court awarded the attorneys' fees here: "the amount of fees awarded is fair and reasonable under the 'percentage-of-recovery' method…"[6]

Trigon's allocation follows that logic. Courts favor the percentage method because hours recorded are, at best, weakly related to value created. That was certainly true here. The Ta Group attempted to settle this case, on its own, in December 2018 and failed. One year later the case settled for $25 million. The only material change was the appointment of Trigon and B&L who were cooperating with formidable counsel at Robbins Geller and Hagens Berman. Those three

---

[4] *i.e.*, 50% to B&L and Hagens Berman and 50% to Robbins Geller and Taylor-Copeland.

[5] 15 U.S.C. § 78u–4(a)(6).

[6] ECF 262 ¶3.

firms have a significant track record of success in PSLRA actions, recovering billions of dollars for investors through settlements and trials. By contrast, this appears to be the first—and, to date, only—case in which the five-lawyer Hung Ta firm has ever been appointed as lead or co-lead counsel in a PSLRA case.

In short, Defendants did not agree to pay $25 million because of the hours the Ta Group billed generating a large lodestar, much of which provided no benefit to the Class. Defendants paid what they did because they faced the prospect of trying this case against Robbins Geller, Hagens Berman, and B&L. Trigon's recommended allocation reflects this undeniable reality and, so, the Court should deny the Ta Group's motion.

### Relevant Facts

**A.      After Some Initial Skirmishing, The Court
          Appoints the Ta Group to Lead the Federal Action**

The first complaint in this Action was filed by Baker in state court in October 2017. Thereafter, Restis filed another complaint in this Court in November 2017 and additional actions followed. Before the actions were consolidated, B&L and Hagens Berman sought a temporary restraining order (on behalf of their other client, MacDonald), which was briefed on an accelerated schedule. *See MacDonald v. Dynamic Ledger Solutions, Inc.*, 3:17-cv-07095-RS (N.D. Cal.), ECF 8. Although the Court ultimately concluded that MacDonald failed to show a likelihood of irreparable harm, he was able to secure an order from the Court permitting electronic service on the Tezos Foundation (which, in turn, led to the Foundation stipulating to service). *MacDonald*, ECF 12, 45, 49. When the actions were then consolidated, the Court—after expressing reservations about the Ta Group's experience—appointed the Ta Group's client, Anvari, as lead plaintiff, rejecting competing motions by Trigon and others. ECF 101.[7]

After being appointed as lead plaintiff, Anvari did defeat, in part, Defendants' motions to dismiss. But that order came with glaring warnings signs. The Court warned "the ICO Contribution

---

[7] As this Court recognized when it first appointed HGT Law as co-lead counsel, that firm had "less experience in litigating complex securities class actions" than the firms selected by other movants. *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 WL 1388488, at *5 (N.D. Cal. Mar. 16, 2018).

Terms' selection of Switzerland for all Tezos-related litigation" was a "strong" argument that might "well threaten Anvari's access to this forum pending discovery." ECF 148 at 11. The Court noted that Anvari's "complaint and opposition papers, even where called directly to the question, [were] conspicuously silent regarding whether he had actual notice" and suggested that the partial denial of the motions to dismiss "granted what [might] ultimately prove to be fleeting procedural mercy." *Id.* at 12 & n.12 (noting that "at oral argument, Anvari's counsel represented that they did not know whether Anvari had actual notice of the terms."). Anvari also had another problem that the Court did not (yet) know about: a lengthy (and disgusting) history of racist, homophobic, and sexist posts on Internet forums—including anti-Semitic slurs directed at certain Defendants. ECF 201 (including exhibits thereto).

Anvari was so plainly inadequate that the Ta Group did not even try to have him certified as a class representative. Yet despite these flaws, the lawyers in the Ta Group scheduled a mediation at which they, unsuccessfully, tried to settle a putative class action with a lead plaintiff whom they must have known could not be certified as a class representative. Ta Decl. ¶20.

**B.     The Block/Robbins Group Works Together in State Court**

After Anvari was appointed as lead counsel in the Federal Action, the Block/Robbins Group continued to litigate against Defendants in the State Action. Ultimately—in an agreement reached shortly before the Court appointed Trigon as Lead Plaintiff in the Federal Action—they agreed to share work and fees on an equal basis.[8]

In the State Action, Baker (and Trigon—until it was appointed to lead the Federal Action) continued to diligently litigate the claims on behalf of the Class, including, but not limited to: (1) amending the complaint with additional factual allegations obtained through discovery; (2) serving and responding to discovery requests, including requests for production of documents, interrogatories, requests for admissions, and deposition notices; (3) reviewing Defendants' and third-party document productions; (4) conferring extensively with Defendants regarding discovery disputes; (5) entering into a protective order; (6) serving the Foundation, Johann Gevers and

---

[8] *i.e.*, 50% to B&L and Hagens Berman, 50% to Robbins Geller and Taylor-Copeland.

Bitcoin Suisse AG through the Hague Service Convention; (7) filing a successful motion to serve Kathleen Breitman via publication; and (8) opposing Defendants' multiple motions to stay, motions to quash, demurrers and other attacks to the state action.[9] *See* ECF 258.

On August 28, 2019, the state court ***denied*** the DLS Defendants' demurrer and their renewed motion to stay the State Action. *Id.*; Olts Dec., Ex. B. The court sustained the Draper Defendants' demurrers and the Tezos Foundation's motion to quash service of summons, but granted Plaintiff leave to amend the complaint as to the Draper Defendants. *Id.* Shortly thereafter, Baker filed a Third Amended Complaint renewing Plaintiff's claims against the Draper Defendants. Baker also filed a motion for reconsideration of the state court's decision regarding jurisdiction over the Tezos Foundation, which cited extensive additional facts and evidence discovered after the briefing and hearing on the Foundation's motion to quash. *Id.*

Baker was entitled to discovery beyond what was produced in the Federal Action. The state court rejected Defendants' request to limit discovery "to documents produced in the Consolidated Federal Action," holding that "Plaintiffs [were] entitled to all information … reasonably calculated to lead to the discovery of admissible evidence." Olts Dec., Ex. A at 2.[10]

Thus, after years of hard-fought litigation, by the time of Settlement, the State Action was in the same procedural posture as the Federal Action with live claims against additional defendants not in the Federal Action, and pursuing additional discovery not obtained in the Federal Action.

---

[9] For example, Baker filed a Second Amended Complaint ("SAC") adding numerous allegations based on discovery obtained from Defendant DLS that were not included in the operative complaint in the Federal Action, including numerous additional allegations regarding the Draper Defendants, which had been dismissed form the Federal Action. Both the DLS Defendants and the Draper Defendants filed demurrers to Plaintiff's SAC, while the Tezos Foundation and Johann Gevers filed motions to quash service of summons. The DLS Defendants also filed yet another motion to stay the State Action.

[10] The Ta Group suggests Baker and his counsel may have been unable to adequately represent the class by quoting Defendants' motion to stay the State Action. Mot. 9. But the state court rejected these arguments, holding that "no good cause exists to further delay the instant case by a continued stay of proceedings," because the *Baker* action was "filed before each of the individual actions that comprise the Consolidated Federal Action was filed" and "Baker and his counsel . . . are willing to work with Trigon and its counsel." Olts Dec., Ex. A at 2.

**C.     The Ta Group was Disruptive and Non-Cooperative**

As noted above, when the Ta Group filed an abortive motion for class certification, it asked permission for Anvari to withdraw as lead plaintiff and proposed to appoint a different Tezos purchaser (who had not previously sought a lead plaintiff role) as lead plaintiff and a class representative. ECF 193 and 196. In response to Anvari's request to withdraw, Trigon renewed its leadership motion and asked that it be appointed as lead plaintiff and that B&L and Hagens Berman be appointed as co-lead counsel. ECF 198.

At the hearing on Trigon's motion to replace Anvari, B&L candidly disclosed that the Robbins/Block Group had agreed to work together and would continue to do so (ECF 210 at 20):

> MR. FLEMING: … [I]f Trigon is appointed as lead plaintiff here, it would dismiss the state-court action. I think we would probably – **we've been cooperating with Mr. Baker [Robbins Geller's and Taylor Copeland Law's client], who remains in state court. I think we would continue to do that, to the best of our ability**. I think it's important for the class not to have both actions sort of running off in different directions, or in [tension]. **I'm confident that we would be able to continue to work with Mr. Baker to the extent possible**.

Ultimately, the Court granted Trigon's motion to be appointed as lead plaintiff. But the Court also ordered—over Trigon's vigorous objection—that Hung Ta could remain as co-lead counsel. *See* ECF 213; ECF 216.

Despite B&L's best efforts, this forced marriage soon devolved into a deeply dysfunctional relationship. Even before Trigon was formally appointed as lead plaintiff, B&L tried to cooperate with Ta and encourage Ta to cooperate with others. As Ta's own declaration concedes, B&L affirmatively tried to raise the subject of sharing work and fees with Robbins Geller (and, by implication, Robbins Gellers's co-counsel, Taylor-Copeland) in an effort to get all plaintiffs' counsel working together. Ta Dec. ¶26. But Ta rejected this invitation and refused to engage in further discussions about the allocation of work and fees (*Id.* (emphasis added)):

> On March 7, 2019, immediately after the Court's hearing of the Motion to Substitute the Lead Plaintiff (Dkt. No. 196), Alex Hu of LTL and I spoke via telephone with Joel Fleming, the partner from Block & Leviton who attended the hearing. In light of the Court's oral ruling that Block & Leviton

and HGT Law should be designated Co-Lead Counsel,[11] I made a proposal to Mr. Fleming for the division of work and attorneys' fees. **Mr. Fleming responded that this was premature, and asked: 'What about Robbins Geller?'** Mr. Fleming did not fully explain why, as the Court-appointed Co-Lead Counsel in the Federal Action, we would need to take into account the interests of Robbins Geller, the counsel in the State Action.[12] At that point in time, the State Action was significantly behind the Federal Action. The Tezos Foundation still had not been served and thus was not even a party to the State Action. **As a result of Mr. Fleming's position, HGT Law and Block & Leviton did not engage in any further discussions about the allocation of work and fees.**

Shortly after Trigon's appointment, a different B&L partner, Jeffrey Block, contacted counsel for the Tezos Foundation to introduce himself, which led to a discussion of the possibility of reviving efforts at resolving the case through mediation. Block and the Foundation's counsel discussed the prior failed mediation, Defendants' views as to why it failed, and that a clean slate with a new mediator might prove more fruitful. Block Dec. ¶ 3.

After a number of discussions, the parties agreed to try another mediation, with a new mediator, and discussed having all parties attend, including plaintiffs in the Federal Action and the State Action.[13] Alone among Plaintiffs' counsel, Ta and the Ta Group opposed the inclusion of the state plaintiff (Robbins Geller and Taylor-Copeland Law's client) in the mediation. Block Dec. ¶ 5. Ultimately, however, the Ta Group agreed to participate in the mediation knowing the State Action would also participate.

---

[11] This reference to the Court's "oral ruling" is a perfect example of the Ta Declaration's misstatements of even easily verifiable facts. In truth, the Court initially suggested it was "inclined" to "have a co-lead counsel situation" but this was only a "tentative view." ECF 210 at 4-5. At the end of the hearing—after B&L had explained that, in its view, the PSLRA did not allow the Court to select co-lead counsel over the lead plaintiff's objection—the Court stated that "I'll go back and think through some of the issues that you've highlighted for me, and come up with some notion of how we're going to proceed." *Id.* at 22. It was not until one month after the hearing that the Court actually ordered that B&L and HGT Law would both be co-lead counsel. ECF 213.

[12] This remarkable sentence is a perfect example of Ta's deeply distorted view of whose interests he was supposed to represent. Ta was Co-Lead Counsel to—and owed a fiduciary duty to—the *Class*, not to the Federal Action or to the State Action. Cooperation amongst *all* counsel in *both* actions was plainly in the best interests of the Class.

[13] Despite admittedly not participating in any calls in which the subject of a new mediation was discussed between Block and defense counsel, Ta in his declaration misstates what was discussed between Block and defense counsel regarding mediation. See Ta Dec. ¶ 28.

The Ta Group's initial insistence that a mediation occur without the State Action, however, was counterproductive and almost derailed the mediation (and, in turn, the settlement).[14] Worse still, B&L learned that the Ta Group had engaged in counterproductive discovery tactics without B&L's knowledge or consent and had gone behind B&L's back to sabotage the mediation. Block Decl. ¶ 8. In September 2019, Trigon determined that Ta's tactics had become so detrimental to its ability to discharge its fiduciary obligations to the putative class, that it instructed B&L to file a motion asking the Court to either (1) allow Trigon, as lead plaintiff, to terminate Hung Ta as co-lead counsel or (2) allow Trigon to withdraw as lead plaintiff. *Id*. ¶ 9; Trigon Decl. ¶ 7.

After learning of Trigon's decision, Ta asked Trigon not to file and agreed to become more cooperative. In an email to Ta on September 22, 2019, Block wrote to Ta (Block Dec., Ex. A):

> Two points, however, still need to be addressed: 1 – you **cannot** continue to call and/or email defendants asking them to produce additional documents, or negotiate terms regarding the foundation assisting people who have lost their passwords, without **first** either informing me or Jake that this is something you would like to pursue. We do not appreciate receiving calls from defense counsel asking about actions you are taking that we do not even know about. We need to speak with **one voice** and us having separate conversations with defendants is not productive. 2 – you have repeatedly made comments along the lines of "when the mediation fails" and even your email below is conditioned on resuming the litigation "if the mediation is unsuccessful." . . . If you do not share the view that we are going into a mediation in good faith to attempt to resolve this case, you should let me know now. But to continuously state that "when the mediation fails," and condition your agreeing to proceed on the view that the litigation must ramp up again on November 23, suggests that you are not approaching the mediation in good faith.

Ultimately, despite the Ta Group's intransigence, the mediation occurred and resulted in a $25 million settlement for the Class—a home run by any measure.

**D. The Ta Group Knew of Trigon's Proposed Fee Allocation and Insisted the Allocation be Removed from the Stipulation**

Before Plaintiffs sent Defendants a draft Stipulation of Settlement, Ta had a conversation with B&L partner Jacob Walker in which Ta suggested that the Ta Group, on the one hand, and

---

[14] Indeed, even the Ta Group admits that defense counsel said it would be "productive" to include Baker, Robbins Geller and Taylor-Copeland in the second mediation. Mot. 11-12.

B&L and Hagens Berman, on the other hand, split any award of attorneys' fees among themselves 50/50. Walker Dec. ¶ 3. Ta must have recognized that *some* fees would be paid to Robbins Geller and Taylor-Copeland, so the only way to interpret this proposal is that he was proposing a 50/50 split of fees allocated to the Federal Action (the only action that Ta was ever involved in).

Thereafter, Block called Ta to continue the discussion about the allocation of attorneys' fees. Block (speaking on behalf of Trigon) proposed allocating the attorneys' fees 50% to the Federal Action and 50% to the State Action and allocating 50% of the fees in the Federal Action to the Ta Group (i.e., 25% of the total). Block Decl. ¶ 11-12. When Ta pushed back, Block explained that he did not believe a different percentage split was sufficiently material to justify a messy fight amongst the attorneys, and that he did not believe a fight with Robbins Geller, specifically, was worth it for anyone. *Id.* In any event, Block made clear to Ta that if he disagreed with the allocation that it should be discussed among counsel. *Id.*

Block and Ta disagree about significant details of that telephone call—including about Ta's ridiculous claim that he was somehow misled about the existence of an agreement amongst the members of the Block/Robbins Group that B&L had previously disclosed in open court. *Compare* Ta Dec. ¶ 31 with Block Dec. ¶¶ 11-12 and ECF 210 at 20. But the Court does not need to resolve this he-said-he-said dispute to resolve the motion. Even in Ta's version of the facts, he admits (i) the call occurred, (ii) Ta and Block discussed how to allocate fees and (iii) Ta came away from the call knowing Trigon would propose to allocate the Ta Group significantly less than the 57% of the total attorneys' fees that the Ta Group now seeks. Ta Dec. ¶¶ 31-32.

On December 18, 2019, the Robbins/Block Group sent the Ta Group a draft Stipulation of Settlement, which included a proposed allocation of fees between the Federal Action and the State Action. Ta Dec. ¶ 31. **Ta admits that he opposed disclosing the fee allocation in the Stipulation.** Ta Dec. ¶ 32.[15] In fact, the Ta Group's only comment to the entire Stipulation had to do with attorneys' fees: "Our main comment relates to section 7.8 [referencing the allocation]. That

---

[15] The Ta Group's assertion that B&L "violated its duty of candor . . . to the Court" is patently false and a misrepresentation of the facts. Mot. at 25.

provision **needs to be discussed**, but in any event, is not appropriate for inclusion in a settlement agreement with the Defendants." Ta Dec., Ex. 13 (emphasis added).

**E.   The Ta Group Refused to Engage in Meaningful
Discussions to Avoid Bringing this Dispute Before the Court**

Despite acknowledging that the fee allocation needed "to be discussed," Ta remained completely silent on the issue and never proposed a different allocation. Not until August 31, 2020—after the Court had approved the Settlement and awarded fees and Block sent Ta an email proposing to distribute those fees—did Ta ever propose a different allocation.

Rather than stating the proposed fee allocation was unfair to the Ta Group or explaining why the Ta Group deserved a higher share, Ta wrote back within minutes "No. We will let Judge Seeborg decide this." Block Dec. ¶¶ 13-14 and Ex. B. After a couple of other emails, Block left Ta a voicemail suggesting a further discussion of Ta's position and his views on how the attorneys' fees be allocated. Ta responded, via email on September 1, 2020, "Jeff, I got your voice mail." He then proposed that fees be divided based only on lodestar and that **"[t]his is our best and final (and only) offer**." Block Dec., Ex. C (emphasis added). He continued with a threat: "[i]f you disregard this proposal, we will file a motion" and "seek from the Court a percentage that is greater than our group's collective lodestar." *Id.*

In response to Ta's September 1, 2020 email, Block wrote back suggesting "before we burden the Court with a fee allocation dispute, that we consider using a neutral (such as [the mediator] Layn [Phillips] who is familiar with the case) to help us resolve this disagreement. I am sure the Court would appreciate our attempting to resolve this before seeking the Court's intervention." Block Dec., Ex. D. Seventeen minutes later, Ta sent a one-word response: "No." *Id.*[16]

---

[16] Before Ta filed his motion, he sent a draft to B&L, clearly hoping the Block/Robbins Geller Group would cede to his demands to avoid being embarrassed by false accusations of fraud. Block Dec., Ex. F. The Block/Robbins Group declined to be blackmailed.

**F.      The Ta Group Was Offered its Share of Fees
         Without Prejudice to Its Right to Challenge the Fee Allocation**

As discussed below, in a PSLRA case, the Lead Plaintiff decides the attorneys' fees allocation, not the lead counsel. So it was not until after Trigon voiced its final views on how to allocate the attorneys' fees that any attorneys' fees were distributed. Block Dec. ¶ 18. Ta makes much of the fact that the Block/Robbins Group has already distributed the attorneys' fees. But Ta fails to mention that B&L informed Ta that it was "happy to send you the allocated share [of attorneys' fees] to your firm, LTL, Restis and Lite DePalma which can be *without prejudice* to your challenging the allocation." Block Dec. ¶ 19, Ex. E (emphasis original.) And B&L made clear that "we have distributed the fees to my firm, Hagens Berman and the attorneys for the state court action, subject to their agreement to repay any amounts that might be reallocated." *Id.*

## Argument

The Ta Group's strategy is transparent. Rather than accepting Trigon's allocation (without prejudice to its ability to seek more), the Ta Group tried to prevent *any* distribution, holding up everyone else to extort higher fees for itself. Similarly, the Ta Group refused to engage in any discussion about the allocation of fees until after Trigon's formal proposal—that the Ta Group get 25%—set a floor. Having locked in his floor, Ta clearly believes he has nothing to lose by rolling the dice to see if he can do better via a reckless, baseless attack on other lawyers' reputations.

The Court should reject that attempt.

**A.      Ta's Motion is Untimely Under Rule 54,
         and the Court Lacks Jurisdiction to Hear This Dispute**

Rule 23(h) governs the award of attorneys' fees in a class action and provides that a "claim for an award must be made by motion under Rule 54(d)(2)." In turn, Rule 54(d)(2)(B) says that unless "a statute or court order provides otherwise, the motion must … be filed no later than 14 days after the entry of judgment." Here, both the Judgment dismissing this action with prejudice and the Order awarding attorneys' fees were entered on August 28, 2020. Thus, Ta's motion had to be filed no later than September 14, 2020, which makes it untimely.

"The exercise of ancillary jurisdiction over an attorney's fees dispute is discretionary." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 971 (9th Cir. 2014). In deciding whether to

exercise ancillary jurisdiction, a court must consider whether it would "(1) … permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) … enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994). A dispute about how to allocate fees that have already been awarded does not satisfy these criteria. Where, as here, "attorney's fees have already been awarded and distributed," the Court has no obligation to "resolve [a] private dispute not directly related to the underlying litigation." *Barrera v. Gamestop Corp.*, 2012 WL 1470170, at *2 (C.D. Cal. Apr. 27, 2012).[17]

**B.     Trigon's Fee Allocation Decision Should Be Presumed Correct**

If the Court reaches the merits, the motion should be denied.

Trigon is the sole Court-appointed Lead Plaintiff. ECF 213. Trigon retained B&L and Hagens Berman to represent it, never retained any of the lawyers in the Ta Group, and vociferously objected to having the Ta Group imposed upon it as a Co-Lead Counsel. ECF 210, 215. Its allocation of 25% of the fee to the Ta Group is a reasonable reflection of the Ta Group's contribution to the result achieved and should be presumed correct.

The Ninth Circuit has repeatedly emphasized the lead plaintiff's broad control over counsel in a PSLRA case. In a PSLRA case, "the district court does not select counsel" but merely approves (or disapproves) the lead plaintiff's choice. *In re Cavanaugh*, 306 F.3d 726, 732, 734 (9th Cir. 2002) ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative … [T]he Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff."). The "statute expressly provides that lead plaintiff has the power to select lead counsel … Nor does

---

[17] *See also Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-CV-00536-JF (LHK), 2015 WL 5027603, at *10 (N.D. Cal. Aug. 25, 2015) ("because the Court declines to exercise jurisdiction, the Court need not reach the merits of the parties' arguments regarding the amount of attorneys' fees and costs to which BGR is entitled."); *Monaco v. Bear Stearns Companies, Inc.*, No. CV0905438SJOJCX, 2015 WL 12669868, at *2 (C.D. Cal. Sept. 18, 2015) (declining to exercise ancillary jurisdiction where, as here, "The dispute between BW and BGR does not concern whether attorney's fees ought to have been awarded after settlement, which relates to Monaco, but rather the division of attorney's fees between counsel for the prevailing parties. The adverse parties in this Motion are not Plaintiffs and Defendants, but co-counsel for Plaintiffs.").

the statute, framed in mandatory language, designate any other actor as authorized to select lead counsel or suggest that the district court may appropriate this authority. It would be difficult for the statute to be more clear[.]" *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 709 (9th Cir. 2009) (emphasis added).

The PSLRA also gives broad authority to the Lead Plaintiff to decide questions of allocation of attorneys' fees. As the Third Circuit explained in *Cendant II*, "any attorney who wishes to be compensated out of the plaintiff class' recovery in a class action governed by the PSLRA must submit his fee requests to the PSLRA lead plaintiff, and … the district court should accord a presumption of correctness to lead plaintiff's decision" regarding the allocation of attorneys' fees. *In re Cendant Corp. Sec. Litig. ("Cendant II")*, 404 F.3d 173, 199 (3d Cir. 2005); *see also Flanagan, Lieberman, Hoffman & Swain v. Ohio Pub. Employees Ret. Sys.*, 814 F. 3d 652, 657-58 (2d. Cir. 2016) ("we agree that *Cendant II's* presumption of correctness . . . properly applies" to the allocation of attorneys' fees by the Lead Plaintiff);[18] *In re Tut Sys., Inc. Sec. Litig.*, No. C 01-2659 CW, 2007 WL 1722420, at *3 (N.D. Cal. June 13, 2007) (Wilken, J.) (citing *Cendant II* for the proposition that "courts may give deference" to the fee allocation proposed by lead plaintiff's chosen counsel in a PSLRA action).

Of the many cases that the Ta Group cites in the "applicable standards" section of its motion, only two—*Victor*[19] and *Critical Path*[20]—are even PSLRA cases.[21] And neither decision

---

[18] Notably, the Ta Group's brief cites both *Flanagan* and *Cendant II* (Mot. 22-23) but fails to mention their holdings or otherwise address a PSLRA lead plaintiff's role in fee allocations. This reflects, at best, their glaring lack of experience with the PSLRA and at worst, a desire to ignore unfavorable law in hopes that no one will notice. *Cf. Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1047 (7th Cir. 1989) (the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.").

[19] *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 90 (2d Cir. 2010).

[20] *In re Critical Path, Inc.*, C 01-00551, 2002 WL 32627559, at *8 (N.D. Cal. June 18, 2002).

[21] The remainder are not PSLRA cases. *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 470 (9th Cir. 1997) (securities litigation but filed before the PSLRA was adopted); *Rodriguez v. Disner*, 688 F.3d 645, 649 (9th Cir. 2012) (antitrust class action); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 6909680, at *1 (N.D. Cal. Oct. 24, 2016) (same); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *1 (N.D. Cal. Apr. 3, 2013) (antitrust actions brought by class, *parens patriae*, and governmental entity plaintiffs); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DADBAM, 2017 WL 4180497, at *5 (E.D.

1    rejects, limits, or even discusses the lead plaintiff's authority to propose an allocation that is

2    entitled to a presumption of correctness. Both merely stand for the rule that a court has the ultimate

3    authority to decide (assuming jurisdiction exists, and a timely motion is made).

4    　　　If the Court reaches the merits, it should follow *Cendant II*, *Flanagan*, and *Tut*—which are

5    eminently consistent with the policy goals underlying the PSLRA—and affirm Trigon's fee

6    allocation. "One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven

7    litigation*." In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999)

8    (internal quotation omitted). The point of the PSLRA's lead-plaintiff provisions was to put clients

9    in control of the litigation. *Cavanaugh*, 306 F.3d at 734. And one of the best ways for a client to

10   control the case is to control the attorneys' fees.

11   　　　Indeed, the problem of lawyer-driven litigation was present here, precisely because Ta had

12   no lead plaintiff to answer to and was, instead, appointed to the role of co-lead counsel absent any

13   client relationship with the lead plaintiff. Without being subject to the lead plaintiff's control, Ta

14   was emboldened to do whatever he wanted and bill whatever amounts he wanted, without having

15   to justify himself to anyone. That is why Trigon threatened to file a motion in September 2019 to

16   have Ta removed as co-lead counsel: Ta was running amok and undermining Trigon's and B&L's

17   efforts through his myopic focus on maximizing his own lodestar.[22]

18   　　　The allocation reflects Trigon's considered judgment of each group's relative

19   contributions: the Ta Group was allocated 25% because it did successfully defeat, in part, a motion

20   to dismiss. But it was also a disruptive force throughout the litigation that often sought to advance

---

22   Cal. Sept. 21, 2017) (Telephone Consumer Protection Act class action); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) (antitrust class action); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12327929 (C.D. Cal. July 24, 2013) (consumer class action).

[22] Ta's claim that even after Trigon was appointed, the Ta Group "continued to handle the bulk of the litigation efforts" (Ta Decl. ¶ 22) underscores this point. The Ta Group continued to pursue inefficient, and, ultimately, ineffective discovery tactics and—more troublingly—negotiate with defendants, *without B&L or Trigon's knowledge*. Block Dec. ¶¶ 8-9. In fact, even after the parties, including Ta, agreed to suspend discovery to conserve resources and maximize the funds available at the mediation, Ta still insisted on having his client sit for a deposition. In hindsight, it's now clear why he insisted on this bizarre tactical choice: to bill more hours.

its own interests at the expense of the Class and made only a limited contribution to the ultimate result achieved. Trigon Dec. ¶¶ 8-10. By contrast, the Block/Robbins Group's ability, work, (and ability to work together)[23] was the primary reason the case was successfully settled. *Id.*

### C. The Court Should Reject The Ta Group's Reckless and Inaccurate Accusations That It Was Somehow Misled About the Block/Robbins Group's Cooperation

The Ta Group's Motion does not provide a basis for the Court to override the presumption of correctness accorded to Trigon's allocation. The bulk of the Ta Group's motion is devoted to unseemly mudslinging, inaccurate accusations of deceit, and unfounded claims of violations of the rules of professional conduct. None of these reckless charges survive scrutiny.

Trigon decided the attorney fee allocation, with full knowledge of and consent to, the fee- and work-sharing arrangement amongst the Block/Robbins Group. Trigon Decl. ¶¶ 6, 8-10. Trigon understood that having the lawyers in the Federal and State Actions aligned during the litigation— and, particularly *before* any mediation—would eliminate any counterproductive jockeying driven by concerns about attorneys' fees. And so it did!

The Ta Group's feigned ignorance that the Robbins/Block Group was working together is silly. As detailed above, B&L disclosed this cooperation in open court (ECF 210 at 20) and affirmatively tried to raise the subject with Ta (Ta Decl. ¶26). Ta's (accurate) admission—that he childishly refused to have any further conversations about allocating work and fees—cannot be squared with the Ta Group's (inaccurate) claims that B&L (or anyone else in the Block/Robbins Group) tried to deceive it about the allocation of work and fees.

These undisputed facts take this case far outside the scope of the *State Street* special-master report on which the Ta Group relies so heavily. In *State Street*, one law firm was alleged to have paid a substantial finder's fee to a politically connected lawyer without disclosing the **identity or existence** of the firm to certain co-counsel, the Court, or even its own client. *See Arkansas Teacher*

---

[23] Any experienced lawyer knows that when overlapping class actions are pending in multiple courts, the chances for a successful settlement increase exponentially if everyone is at the table because defendants are willing to pay more for "global peace." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) ("[A]chieving global peace is a valid, and valuable, incentive to class action settlements."). That is what happened here.

*Ret. Sys. v. State St. Bank & Tr. Co.*, No. 11-CV-10230-MLW, 2018 WL 11026335, at *111 (D. Mass. June 28, 2018) (special master report) ("The most significant issues … arise out of the nondisclosure of a payment of $4,102,549.43 to Damon Chargois … who neither appeared in the …. docket nor worked on the case. Chargois … was never disclosed to ATRS [the lead plaintiff], the other class representatives, or the class members[.]") *report and recommendation adopted in part, rejected in part*, No. CV 11-10230-MLW, 2020 WL 949885 (D. Mass. Feb. 27, 2020).

Here, by contrast:

- The lead plaintiff knew of and approved of the Block/Robbins Group's fee-and-work-splitting agreement (Trigon Dec. ¶ 4);
- B&L disclosed to the Court that the Block/Robbins Group was working together (ECF 210 at 20);
- B&L tried to discuss the allocation of fees and work with Robbins Geller and Taylor-Copeland Law with Ta (Ta Decl. ¶26);
- The Notice disclosed to the Class that Robbins Geller and Taylor-Copeland's client (Baker) was part of the Settlement, and that through the Settlement Defendants sought and obtained a release "in both the Federal Litigation and the State Litigation." (ECF 246-1; 246-3);
- The Stipulation of Settlement, which Ta signed, stated that both "Federal Lead Counsel and State Lead Counsel [i.e., Robbins Geller and Taylor-Copeland] may submit an application or applications . . . for an award of attorneys' fees." ECF 246-1 at 29; and
- The motion for fees included declarations from Robbins Geller and Taylor-Copeland (ECF 257-6, 257-7).

Unlike in *State Street*—where a $4 million fee was paid to a lawyer unknown to the class or the court—here, it cannot have come as a surprise to the Court or the Class that Trigon proposed to allocate fees to lawyers who submitted declarations in support of a motion for fees. The only thing that was not disclosed to the Court or the Class was the precise nature of the allocation. But (1) that disclosure was not required (*see* Fed. R. Civ. Proc. 23(h) and Fed. R. Civ. Proc.

54(d)(2)(B)(iv));[24] and (2) Trigon and the Block/Robbins Group tried to disclose more information about the fee allocation and the Ta Group demanded it be removed. Ta Decl. ¶¶ 31-32.

Even if the Ta Group was unaware of an agreement among the Block/Robbins Group to share the attorneys' fees—which is impossible to believe—the record is abundantly clear that the Ta Group knew, since December 2019, that Trigon proposed to allocate it 25% of the overall fee and that no one from the Block/Robbins Group ever suggested that the Ta Group would be allocated a penny more. Block Dec; Walker Dec; Kathrein Decl; Olts Dec; Ta Decl. ¶¶ 31-32.

The Ta Group's suggestion that B&L somehow violated a duty of candor is absurd. The Ta Group does not claim anyone ever lied to it—at most, Ta claims that "Block gave a non-responsive answer." Ta Dec. ¶ 29. The Ta Group naively believes that B&L was obligated to ensure that the Ta Group was allocated an attorney fee to its liking. Yet it ignores that the Ta Group was foisted upon Trigon over its objections, acted to undermine the litigation (causing Trigon to threaten to have the Ta Group removed from the case) and was extremely uncooperative in Trigon's attempts to resolve the action.[25]

B&L gave the Ta Group **every opportunity** to voice its views on a fee allocation and the Ta Group stood mute. The Ta Group's claim that if it had known of an arrangement between the Block/Robbins Group, it "would have submitted a separate fee application" (Mot. at 22) is disingenuous. The Ta Group knew since December 2019 that Trigon's proposed allocation to the Ta Group would be 25% (Walker Dec. ¶ 3; Block Dec. ¶¶ 11-12; Ta Dec. ¶¶ 31-32), yet it did not submit a separate application.

---

[24] As the *State Street* court noted (overruling the special master report on which the Ta Group relies), Rule 23(h) authorizes a court to *order* disclosure of fee allocations but does not *require* disclosure without an order. *State Street*, 2020 WL 949885, at *44 ("The court did not issue such an order in this case. In view of the fact that Rule 23(h) expressly addresses the obligations of counsel in seeking attorneys' fees and incorporates Rule 54(d)(2)(B)(iv)'s requirement that agreements concerning fees be disclosed [only] if ordered, the court finds that Rule 23(e)(3) should not be interpreted as requiring disclosure of the Chargois arrangement to the court in this case.").

[25] The Ta Group's **sole** support for its claim that B&L somehow was obligated to ensure that the Ta Group was allocated an attorney fee to its liking is the Special Master's report in *State Street* which, as discussed, is wide of the mark here.

Plus, the Ta Group makes no attempt to explain why it makes any difference, from the Ta Group's perspective, how the rest of the fees were divided among the rest of the lawyers. Notably, the Ta Group has never disclosed—to the Court, the Class or the Block/Robbins Group—how fees will be allocated amongst its own group (*i.e.*, how much to HGT Law vs. LTL vs. Restis vs. Lite DePalma). By the Ta Group's logic, this omission would equal fraud.

Finally, there is nothing nefarious about the Block/Robbins Group distributing fees per the lead plaintiff's allocation. The Ta Group's attempts to delay payment indefinitely were a cheap holdup tactic—nothing more, nothing less. Professional objectors frequently try the same nobody-gets-paid-till-I-get-paid tactic but federal courts refuse to play along. *See, e.g.*, *Pearson v. Target Corp.*, 968 F.3d 827, 829 (7th Cir. 2020) (discussing the "blackmail" tactics used by "selfish holdouts" to extract unfair rents by "slow[ing] things down until they [are] paid.").

The Block/Robbins Group had no obligation to be held up by Ta. The Court's order awarding fees provides that "the awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Plaintiffs' Counsel . . .". ECF 262 ¶5.[26] Nothing in the Order or the Stipulation of Settlement requires that the Ta Group approve the allocation before distribution. And the California Rules of Professional Conduct only prevent a lawyer from distributing "trust funds" that are disputed by a client or "other person to whom the lawyer owes a contractual, statutory, or other legal duty." Cal. R. Prof. Cond. 1.15(a)-(c). These were not "trust funds" and the members of the Ta Group are neither clients nor persons to whom the Block/Robbins Group owed any contractual, statutory, or other duties.

**D.    The Ta Group Overstates Its Contribution Relative to The Block/Robbins Group**

Other than baseless attacks on other lawyers' integrity, the Ta Group's only argument for overturning Trigon's proposed allocation is that Trigon's allocation does not track lodestar. But that does not make Trigon's allocation unreasonable.

---

[26] As noted above, B&L told Ta that it was "happy to send you the allocated share [of attorneys' fees] to your firm, LTL, Restis and Lite DePalma which can be *without prejudice* to your challenging the allocation." Block Dec., Ex. E (emphasis original). B&L also made clear that the members of the Block/Robbins Group had all agreed to pay any additional fees ordered by the Court. *Id.*

As this Court noted in the *iPhone Warranty* case, the use of "lodestar ... [in] common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. … In short, it does not encourage efficiency, but rather, it adds inefficiency to the process." 40 F. Supp. 3d 1176, 1180 (N.D. Cal. 2014) (internal quotation omitted). That's why, in this Circuit, the default method of valuing contingent-fee lawyers' work is the percentage-of-recovery method with lodestar used only as a cross-check. *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The PSLRA commands the same approach. 15 U.S.C. § 78u–4(a)(6). And Trigon's proposed fee allocation relies on the same logic; it reflects not relative contributions to lodestar, but instead "the relative efforts of, and benefits conferred upon the class by" each group. *FPI*, 105 F.3d at 472.

The Ta Group undoubtedly provided some benefit to the Class—particularly in partially defeating Defendants' Motions to Dismiss—but much of the work performed by Ta Group involved self-interested efforts to maintain control of the litigation or manage the fallout from putting forward a lead plaintiff (Anvari) whom it should have known was inadequate.[27]

These counterproductive efforts included: (1) Unsuccessfully opposing Baker's motion to remand (ECF 34 at 1); (2) Unsuccessfully trying to stay the State Action (ECF 109);[28] (3)

---

[27] Despite the Tezos Foundation's motion highlighting that Anvari "has nowhere alleged that he was unaware of the Contribution Terms when he made his contribution," Anvari's opposition papers remained "conspicuously silent regarding whether he had actual notice," and, at oral argument, the Ta Group "represented that they did not know whether Anvari had actual notice of the terms." ECF 148 at 12. In other words, six months after filing Anvari's lead plaintiff application and three months after Defendants raised the issue in their Motions to Dismiss, the Ta Group still had not bothered to check whether Anvari was a suitable class representative. As this Court observed at the hearing on the Motion to Dismiss, "[i]t would mean that you have the wrong plaintiff effectively." ECF 161 at 92:12-14.

The DLS Defendants also contend that, beginning in August 2018, they "placed Anvari's counsel on notice" that "Anvari had previously made statements—some of them crude and vulgar—that blockchain based tokens are not securities." ECF 201 at 5. The DLS Defendants furthers charged that "Anvari's internet posts also contained numerous racist, homophobic, and anti-Semitic rants, some of them directed at those involved in the Tezos Project and other Defendants." *Id.*

[28] This Court granted Baker's motion to remand and denied Anvari's motion to stay, noting that "*Baker* was the first Tezos action filed and so cannot rightly be characterized as a copycat action trying to piggyback on or disrupt an earlier filed federal action." ECF 130 at 5.

Unsuccessfully trying to stop Defendants from deposing Anvari (ECF 162), then unsuccessfully seeking reconsideration (ECF 165, 179, 181); (4) Unsuccessfully mediating (without informing the State Action Plaintiffs or their counsel and while representing a deeply flawed Lead Plaintiff (Anvari) who could not survive a contested motion for certification) (ECF 265 at 11); and (5) Unsuccessfully seeking to withdraw Anvari and replace him with other plaintiffs who had not participated in the initial lead plaintiff briefing while opposing Trigon's motion seeking to replace Anvari and moving for class certification with the proposed replacement plaintiffs (ECF 185, 193, 195, 213).

None of these tactics helped the Class. Yet the Ta Group's proposed allocation would give them full credit for all the hundreds (if not thousands) of hours devoted to these unhelpful, valueless tasks.

Trigon does not believe in rewarding failures and wasted time. Trigon accepts that the Ta Group did some important work that helped the Class (including defeating, in part, the motions to dismiss), which is why it proposed allocating over $2 million in fees to the Ta Group. But because so much of the Ta Group's work conferred no benefit to the Class, Trigon declined to allocate fees based solely on lodestar and focused, instead, on contributions to the result achieved.

The Ta Group's own authorities support this approach. For example, in in both the *CRT* and the *TFT-LCD* cases, the court approved proposed allocations that substantially adjusted lodestar to account for the actual benefit provided to the class. *CRT*, 2016 WL 6909680; *TFT-LCD*, 2013 WL 1365900. Notably, the *TFT-LCD* special master and Court "applied multipliers to the adjusted lodestar figures based on certain factors," including "contribution to the joint IPP effort, "demonstrating efficiency," "failure to act professionally and collaboratively to prosecute the joint IPP effort," and "performing unimportant or poor quality work." 2013 WL 1365900 at *9. The special master then applied multipliers ranging from 1.2 to 4.24—far greater than any multipliers resulting from Trigon's proposed allocation here. *Id.*

Having been involved in the State Action before being appointed Lead Plaintiff in the Federal Action, Trigon is uniquely positioned to assess the relative value of the State and Federal Actions and the contribution made by each to the result obtained for the Class. And the Ta Group's

motion badly understates the contribution of the work done by the members of the Block/Robbins Group in the State Action and the contribution of that action to the result obtained.

*First*, Defendants paid a premium for global peace. Defendants explicitly sought and obtained a release against "all Released Defendants . . . in ***both*** the Federal Litigation and ***the State Litigation***." ECF 246-1 (emphasis added). And the Settlement further recognized that "the State Plaintiff participated in the mediation conference before Judge Phillips," which "led to the parties' agreement-in-principle to resolve both Litigations." *Id.* at 6.[29]

*Second*, the risk posed to Defendants by the State Action is illustrated by the lengths they went to in trying to avoid or delay it. DLS removed the Baker Action even though "courts in the Northern District, and throughout the Ninth Circuit [had] been nearly uniform in rejecting arguments like those made by DLS and remanding class actions which solely allege claims under the Securities Act." *Baker v. Dynamics Ledger Solutions, Inc.*, No. 17-cv-06850-RS (N.D. Cal.), ECF 18 at 2, 5. After the Court remanded the State Action, Defendants sought to stay the State Action ***five times*** but ultimately failed.[30] It is no coincidence that Defendants agreed to settle only after Trigon replaced Anvari as Lead Plaintiff, B&L was appointed co-lead counsel in the Federal Action, and Defendants' attempts to escape the State Action were rejected.

*Third*, and contrary to the Ta Group's assertion, the pleadings in the State Action were **not** "in all material respects, identical to" Anvari's complaint. Mot. 4. As both this Court and the state court recognized, "*Baker* was the first Tezos action filed and so cannot rightly be characterized as a copycat action trying to piggyback on or disrupt an earlier filed federal action." ECF 130 at 5;

---

[29] Given the similar postures of the State Action and the Federal Action, the Ta Group's criticism of B&L for including everyone in the mediation defies reason. Trigon and the lawyers in the Block/Robbins Group were all focused on obtaining the best outcome for the Class, and even the Ta Group acknowledges that "defense counsel believed it might be productive to include Baker and his counsel at the Second Mediation." Mot. 12. The results speak for themselves.

[30] In denying Defendants' fourth motion to stay the State Action, the state court held that "California courts can decide actions arising under the Securities Act. The *Baker* action was filed before each of the individual federal actions that comprise the Consolidated Federal Action were filed.. Moreover, problems with the former lead plaintiff [Anvari] in the Consolidated Federal Action have already caused considerable delay in the Consolidated Federal Action . . ." Olts Dec., Ex. A at 2.

*see also* Olts Dec., Ex. A at 2. Moreover, the operative pleading in the first-filed State Action contained a litany of allegations based on discovery obtained from Defendants that were entirely absent from the Federal Action, including claims against the Draper Defendants, who had been dismissed from the Federal Action.[31]

*Finally*, the Ta Group's contention that B&L assigned the initial drafting of the Settlement Agreement to Robbins Geller was "an attempt by Block & Leviton to confer on Robbins Geller the opportunity to bolster its lodestar," similarly defies logic and once again reveals Ta's myopic focus on lodestar vs. results. It is unclear whether Ta has ever successfully led a class action other than this one, whereas Robbins Geller has drafted hundreds of successful securities class action settlements and calling on their decades of experience was eminently reasonable. Finally, the Settlement was approved by the Court without objection from the Ta Group or a single class member. The work was assigned to and performed by the attorneys best positioned to handle it.

At the end of the day, the Defendants did not pay $25 million because of the number of hours billed by the plaintiffs' lawyers. They paid $25 million because they believed that was a better option than the risk-adjusted expected value of continuing to litigate the case. And like any defendant evaluating his litigation prospects, these Defendants undoubtedly placed heavy weight on the abilities of the firms confronting them.[32]

The settlement Plaintiffs achieved was primarily a product of the skill of the Block/Robbins Group and the threat they posed to Defendants. Trigon's allocation reflects that reality.

---

[31] Significantly, the State Action also specifically alleged that Plaintiff Baker did not "see or agree to the Tezos ICO's purported terms and conditions" at any time during the purchase process, making it clear that Baker was not subject to the unique defense that ultimately disqualified Anvari.

[32] Robbins Geller has successfully tried multiple PSLRA cases to verdict and its firm resume includes the largest securities class action recovery in history ($7.2 billion in Enron) among multiple other recoveries in PSLRA actions in excess of a billion dollars. ECF 257-6, Ex. A. Hagens Berman has obtained multiple multi-billion-dollar recoveries and has successfully tried multiple class actions to verdict, including in this District. ECF 257-4, Ex. A. B&L is smaller than Robbins Geller or Hagens Berman but has achieved multiple nine-figure settlements in shareholder litigation and has recently ranked as high as #4 on Institutional Shareholder Services' ranking of securities class action firms. ECF 257-2, Ex. A.

## Conclusion

The Ta Group's motion should be denied, and the Ta Group allocated 25% of the fees awarded.

October 7, 2020                             Respectfully submitted,

                                            /s/ Jeffrey C. Block
                                            Jeffrey C. Block (*pro hac vice*)
                                            Jacob A. Walker (SBN 271217)
                                            **Block & Leviton LLP**
                                            260 Franklin Street, Suite 1860
                                            Boston, Massachusetts 02110
                                            (617) 398-5600 phone
                                            joel@blockesq.com
                                            jake@blockesq.com

                                            *Co-Lead Counsel and Counsel to*
                                            *Lead Plaintiff Trigon Trading Pty. Ltd.*

                                            Reed R. Kathrein (139304)
                                            Danielle Smith (291237)
                                            **Hagens Berman Sobol Shapiro LLP**
                                            715 Hearst Ave., Suite 202
                                            Berkeley, CA  94710
                                            Telephone: (510) 725-3000
                                            Facsimile:  (510) 725-3001
                                            reed@hbsslaw.com
                                            danielles@hbsslaw.com

                                            Steve W. Berman
                                            **Hagens Berman Sobol Shapiro LLP**
                                            1301 Second Avenue, Suite 2000
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile:  (206) 623-0594
                                            steve@hbsslaw.com

                                            *Additional Counsel to*
                                            *Lead Plaintiff Trigon Trading Pty. Ltd.*