**HUNG G. TA, ESQ. PLLC**
Hung G. Ta (SBN 331458)
JooYun Kim
Angus Ni
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION | Master File No. 17-cv-06779-RS |
| | **CLASS ACTION** |
| This document relates to: | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES** |
| ALL ACTIONS. | |
| | Date:     N/A |
| | Time:     N/A |
| | Dept.:     N/A |
| | Judge:     N/A |
| | Hearing vacated and matter referred to Chief Magistrate Judge Joseph C. Spero (Dkt. Nos. 268 and 270) |

1

## **<u>TABLE OF CONTENTS</u>**

2

**<u>Page No.</u>**

3
TABLE OF AUTHORITIES ............................................................................................................ ii

4
INTRODUCTION ........................................................................................................................... 1

5
ARGUMENT ................................................................................................................................... 5

6
7
I.    BLOCK & LEVITON'S ALLOCATION PROPOSAL SHOULD NOT BE
      ACCORDED ANY DEFERENCE .................................................................................... 5

8
9
II.   BLOCK & LEVITON FAILED TO DISCLOSE THE SIDE AGREEMENT, AND
      THE TRUE FEE ALLOCATION UNDER THAT SIDE AGREEMENT, TO THE
      COURT AND TO CO-LEAD COUNSEL .......................................................................... 9

10
11
III.  THE CONTRIBUTIONS OF THE HGT GROUP VASTLY OUTWEIGH THE
      CONTRIBUTIONS OF BLOCK & LEVITON AND ROBBINS GELLER ...................... 11

12
IV.   THE HGT GROUP'S MOTION IS TIMELY AND THE COURT HAS
      JURISDICTION ............................................................................................................... 14

13
CONCLUSION .............................................................................................................................. 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page No(s).</u>

3

### CASES

4
5
*Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*,
  2018 U.S. Dist. LEXIS 111409 (D. Mass. June 28, 2018).........................................10

6
*Clear-View Techs., Inc. v. Rasnick*,
  2015 U.S. Dist. LEXIS 191672 (N.D. Cal. Dec. 18, 2015).........................................14

7
8
*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*,
  814 F.3d 652 (2d Cir. 2016) ............................................................................ 4, 7, 8

9
10
*Hajro v. U.S. Citizenship & Immigration Servs.*,
  811 F.3d 1086 (9th Cir. 2016) ...............................................................................15

11
*In re Cardinal Health Inc. Sec. Litigs.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) .....................................................................5

12
13
*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ...................................................................................6

14
15
*In re Cendant Corp. Sec. Litig. ("Cendant I")*,
  264 F.3d 201 (3d Cir. 2001) .....................................................................................5

16
*In re Cendant Corp. Sec. Litig. ("Cendant II")*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................ 5, 6

17
18
*In re Critical Path, Inc.*,
  2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ...........................................5

19
20
*In re FPI/Agretech Sec. Litig.*,
  105 F.3d 469 (9th Cir. 1997) ...........................................................................5, 6, 8

21
*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .........................................12

22
23
*In re HPL Techs., Inc. Sec. Litig.*,
  366 F. Supp. 2d 912 (N.D. Cal. 2005)...................................................................6, 8

24
25
*In re Leapfrog Enters. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 84933 (N.D. Cal. Sep. 29, 2008) ...........................................5

26
*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ...................................................................................6

27
28
*In re Ray*,
  624 F.3d 1124 (9th Cir. 2010) ...............................................................................15

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re STEC Sec. Litig.*,
   2013 U.S. Dist. LEXIS 200219 (C.D. Cal. May 23, 2013) ........................................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Litig.*,
   914 F.3d 623 (9th Cir. 2019) ...................................................................................... 6

*K.C. ex rel. Erica C. v. Torlakson*,
   762 F.3d 963 (9th Cir. 2014) ...................................................................................... 14

*Keller v. NCAA*,
   2015 U.S. Dist. LEXIS 166546 (N.D. Cal. Dec. 10, 2015) ......................................... 7

*Kimball v. Pacific Gas & Electric Co.*,
   220 Cal. 203 (1934) ..................................................................................................... 10

*Ralston v. Mort. Inv'rs Grp., Inc.*,
   2015 U.S. Dist. LEXIS 112623 (N.D. Cal. Aug. 25, 2015) ........................................ 14

*Tancredi v. Metro. Life Ins. Co.*,
   378 F.3d 220 (2d Cir. 2004) ........................................................................................ 14

*Vasquez v. Jim Aartman, Inc.*,
   2005 U.S. Dist. LEXIS 49003 (E.D. Cal. Aug. 1, 2005) ............................................. 15

1

## **INTRODUCTION**

2       On August 27, 2020, Jeffrey Block of Block & Leviton stood before the Court and argued, in

3   support of Plaintiffs' counsel's fee application, that a 33% fee award was reasonable because even a

4   33% fee award "*doesn't make us whole*," and because "*it's not a situation where … we're going to*

5   *get a big windfall. In fact, it doesn't get us all to a hundred percent.*" Ta Reply Decl.[1] Ex. 18 at 10:21-

6   24 (emphasis added). Based on these representations and other considerations, the Court granted

7   Plaintiffs' counsel's fee application. Dkt. No. 262. Now, Block & Leviton proposes to allocate the

8   fee award in a manner directly contrary to Mr. Block's representations to the Court. Under Block &

9   Leviton's proposed fee allocation, Block & Leviton and Robbins Geller would both not just be made

10  "whole," but would in fact receive a *premium* on their lodestars. Block & Leviton proposes to allocate

11  50% of the fee award ($4,167,000) to Robbins Geller and its co-counsel, representing a windfall and

12  *premium of 81%* on their lodestar ($2,303,459). Opening Br. at 17. Block & Leviton also proposes to

13  allocate to itself and its co-counsel 25% of the fee award ($2,083,333), representing a *premium of 18%*

14  of their combined lodestar ($1,768,116). *Id.* In contrast, Block & Leviton proposes to allocate just

15  25% ($2,083,333) of the fee award to HGT Law and the other members of the HGT Group,

16  representing a substantial *discount of 61%* of their combined lodestar.

17      Not only did Block & Leviton lack candor before the Court, Block & Leviton deceived its Co-

18  Lead Counsel, HGT Law. In an email on August 31, 2020, Mr. Block proposed that, as Co-Lead

19  Counsel, Block & Leviton would receive 25%. Mr. Block used this as a pretext for arguing that HGT

20  Law, as the other Co-Lead Counsel, should also receive 25%, leaving 50% to Robbins Geller.[2]

21  However, this was all a lie. Block & Leviton has now admitted that it has a side agreement with

22  Robbins Geller, under which the firms agreed to split fees equally between them ("Side Agreement").

23  Opp. at 4. In other words, Mr. Block lied to his Co-Lead Counsel that they each should receive a low

24  25%, *in order to maximize the allocation (50%) to Robbins Geller, so that a portion of this could*

25

26  ---
    [1]      "Ta Reply Decl." means the Reply Declaration of Hung G. Ta, Esq. submitted herewith.

27  [2]      *See* Ta Decl. Ex. 14 ("We suggest dividing the fee award 50/50 between Federal and State
    case and 50/50 between my firm and yours. I assume you will take care of LTL, Restis and Lite
28  DePalma and we will take care of Hagens Berman.").

1   *later be kicked back to Block & Leviton*, without the knowledge of HGT Law. Opening Br. at 24.

2   Thus, instead of receiving only 25% ($2,083,333), as Mr. Block claimed, Block & Leviton would

3   actually receive *37.5%* ($3,125,000).

4          Block & Leviton's serious misconduct in misleading the Court and in deceiving Co-Lead

5   Counsel, standing alone, is sufficient to disqualify it from making any fee allocation decisions. It is

6   also dispositive of the central question presented by this Motion. In the Ninth Circuit, lead counsel is

7   required to allocate a fee award in *good faith*, fairly and reasonably, based on two factors: the relative

8   efforts of counsel, and the value of counsel's contributions to the litigation. It is now clear that this

9   was not done here. Block & Leviton did not propose an allocation of 50% to Robbins Geller based

10  on Robbins Geller's efforts or contributions to the Settlement. Instead, Block & Leviton proposed

11  allocating 50% to Robbins Geller as part of a deception of Co-Lead Counsel, HGT Law.

12         As argued in the HGT Group's Opening Brief, Block & Leviton's proposed fee allocation is

13  simply untethered to the relative efforts and contributions of counsel. There is no reasonable basis for

14  allocating *75%* of the fee award to the Block Group collectively (Block & Leviton, Robbins Geller

15  and their co-counsel), when these firms only accounted for *43%* of the lodestar, and when most of

16  this lodestar was expended in the State Action, which Defendants viewed as effectively over and

17  having zero value. In contrast, the HGT Group's competing proposal reflects the efforts of counsel

18  (because it is based on the firms' respective lodestars) and the contributions of counsel (because it

19  generously attributes equal value to the work performed by all counsel, even though the HGT Group

20  performed most of the significant steps that led to the Settlement).

21         Seemingly unperturbed by the gravity of its misconduct, which violates multiple duties and

22  ethical rules, Block & Leviton doubles down in its Opposition and makes several arguments to justify

23  its conduct and its proposed allocation. However, these arguments should all be rejected.

24         *First*, Block & Leviton asserts the Court should simply accept its proposed allocation because

25  that is what Lead Plaintiff Trigon has (purportedly) decided. However, federal courts retain ultimate

26  authority over the allocation of fee awards, and do not confer on lead plaintiffs/lead counsel the

27  unfettered discretion to allocate fees on *any* basis, without reference to the relative efforts and

28

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

contributions of counsel. Regardless, deference should *not* be accorded to Trigon/Block & Leviton's proposal because: (a) HGT Law is also Co-Lead Counsel, and its allocation proposal is subject to equal deference; (b) Block & Leviton is estopped from any allocation that contradicts its prior representations to the Court; (c) Block & Leviton's proposal was not based on any consideration of the relative efforts or contributions of counsel, but was part of a scheme involving the Side Agreement to deceive Co-Lead Counsel HGT Law; and (d) the assertions that the HGT Group was "disruptive" for doing its job and pressing ahead with discovery are unfounded, especially in light of Trigon and Block & Leviton's refusal to participate in discovery. *See* Argument, Section I, *infra*.

*Second*, Block & Leviton contends that everyone was aware of its "cooperation" with Robbins Geller. However, this simply deflects from the central issue – that Block & Leviton failed to disclose the existence of the *Side Agreement*, and the true fee allocations under that agreement. When Block & Leviton represented to the Court that a 33% fee award "doesn't make us whole," and "doesn't get us all to a hundred percent," it came under a duty to disclose all facts relevant and material to those representations, including the Side Agreement, and Block & Leviton's intention to allocate itself and Robbins Geller premiums to their lodestars under the Side Agreement. Block & Leviton also came under a duty not to mislead its Co-Lead Counsel about the true allocation of the fee award under the Side Agreement. Contrary to Block & Leviton's argument, HGT Law did not prevent Block & Leviton from disclosing the proposed 50% allocation to Robbins Geller. Block & Leviton *chose* not to, because it knew that the 50% allocation to Robbins Geller was inconsistent with its representation to the Court that Plaintiffs' counsel would not be made "whole." *See* Argument, Section II, *infra*.

*Third*, Block & Leviton argues that the HGT Group overstates its efforts. This argument is baseless. The achievements of the HGT Group cannot be questioned. It was the HGT Group who prepared the consolidated complaint and then prevailed on the motions to dismiss filed by Defendants Tezos Foundation and the Breitmans. Without this ruling, the Settlement would not have been possible. The HGT Group also conducted the First Mediation, performed the bulk of discovery, and prepared and filed a motion for class certification. All of this was achieved before any member of the Block Group appeared on the scene. Furthermore, Block & Leviton's present argument that the State

1  Action drove the Settlement is simply not credible. The Defendant paying the Settlement, the Tezos

2  Foundation, *was not even a party to the State Action at the time of the Settlement*, which explains why

3  the Settlement had to be approved by this Court in the Federal Action. Against this background, it is

4  simply irrational for Block & Leviton to propose a fee allocation of 50% to Robbins Geller (as counsel

5  in the State Action), and only 25% to the HGT Group. *See* Argument, Section III, *infra*.

6      *Fourth*, contrary to Block & Leviton's perfunctory argument, the Motion was timely. In

7  addition, the Court has jurisdiction of this Motion. *See* Argument, Section IV, *infra*.

8      The HGT Group wishes to make its position unequivocally clear, so that it cannot be

9  mischaracterized by Block & Leviton. The HGT Group agrees with the Court that law firms should

10  not in the first instance burden Courts with fee disputes. The HGT Group also agrees with the Court

11  that counsel are required to conduct themselves with the "utmost good faith." Here, HGT Law waited

12  23 days to file the Motion, during which time HGT Law exchanged with Block & Leviton competing

13  counter-proposals, engaged in follow-up settlement discussions, and even provided a draft of the

14  Motion to Block & Leviton for review before filing. Despite their reluctance to file this Motion, the

15  HGT Group was compelled to do so once Block & Leviton made it clear that it was not interested in

16  conducting itself with the "utmost good faith," and once Block & Leviton proceeded to unilaterally

17  distribute 75% of the fee award to itself, Hagens Berman, and Robbins Geller, without the authority

18  of Co-Lead Counsel HGT Law. *See* Ta Reply Decl. Ex. 19 (September 23, 2020 email from Hung G.

19  Ta to Jeffrey Block, stating "[w]e have already given you multiple opportunities to resolve this matter

20  without the Court's intervention, to no avail. … No one can blame our side for a lack of trying.").

21      Block & Leviton's conduct warrants the closest judicial scrutiny. Block & Leviton misled the

22  Court and its Co-Lead Counsel with no fear of consequence. By admitting the existence of the Side

23  Agreement, the Block Group has now admitted to precisely the sort of "corrupt" dealings among

24  "repeat players," which the Second Circuit has condemned. *See Flanagan, Lieberman, Hoffman &*

25  *Swaim v. Ohio Pub. Emples. Ret. Sys.*, 814 F.3d 652, 658 n.1 (2d Cir. 2016). Lawyers should not be

26  permitted to use the Federal Courts as a platform for such deceit. For these reasons, absent a

27  consensual resolution based on the "utmost good faith," the Court should grant the Motion.

28

4

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

1

## ARGUMENT

2

**I. BLOCK & LEVITON'S ALLOCATION PROPOSAL SHOULD NOT BE ACCORDED ANY DEFERENCE**

3

4       Block & Leviton's principal argument is that the PSLRA "gives broad authority to the Lead

5  Plaintiff to decide questions of allocation of attorneys' fees" and that its "allocation decision should

6  be presumed correct." Opp. at 12, 13. This argument is wrong. As a preliminary matter, *In re Cendant*

7  *Corp. Sec. Litig. ("Cendant II")*, on which Block & Leviton relies, concerns "the appropriate standard

8  for the court to use in evaluating fee requests by *non-lead counsel*." 404 F.3d 173, 199 (3d Cir. 2005)

9  (emphasis added). This Motion presents a dispute between Co-Lead Counsel. An earlier decision in

10  the same case, *In re Cendant Corp. Sec. Litig. ("Cendant I")*, describes a rebuttable "presumption of

11  reasonableness" that may attach "to any fee request submitted pursuant to a *retainer agreement* that

12  was entered into [at the outset of a case] between a properly-selected lead plaintiff and a properly-

13  selected lead counsel." 264 F.3d 201, 220 (3d Cir. 2001) (emphasis added).[3] Trigon's "approval" of

14  its fee allocation was provided *ex-post*, not in an *ex-ante* retainer agreement. Dkt. No. 273 at ¶¶ 8-9.

15  Therefore, neither *Cendant I* nor *II* bears on this Motion. *See Leapfrog*, 2008 U.S. Dist. LEXIS 84933,

16  at *9 (rejecting "presumption of reasonableness" where fee "was not negotiated until the conclusion

17  of the case"). In addition, at least one court in the Ninth Circuit has held that no deference should be

18  accorded to the allocation decisions of lead counsel, even in the PSLRA context. *See In re Critical*

19  *Path, Inc.*, 2002 U.S. Dist. LEXIS 26399, at *24 (N.D. Cal. June 18, 2002) ("this order rejects the

20  class counsels' assumption that they should be deferred to on the issue of fee allocation").

21       Regardless, Block & Leviton concedes that district courts retain ultimate authority over the

22  award and allocation of attorneys' fees. *See In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 472 (9th

23  Cir. 1997) ("In class actions, the district court has broad authority over awards of attorneys' fees")

24

---

25  [3]      *See also In re Leapfrog Enters. Sec. Litig.*, 2008 U.S. Dist. LEXIS 84933, at *9 (N.D. Cal.
     Sep. 29, 2008) ("The *Cendant* court stressed that the basis for its presumption rested on strengthening
26  the 'ex ante fee arrangements' negotiated between the lead plaintiff and the attorney.") (citation
     omitted); *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 758 (S.D. Ohio 2007)
27  (observing that "an ex-ante agreement can more accurately reflect the market value of an attorney's
     services" and "will align the interests of the class and the attorneys throughout the litigation").
28

1  (citation omitted).[4] Even in the PSLRA context, the Court – *not a lead plaintiff* – bears ultimate

2  responsibility for apportioning attorneys' fees. *See In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002)

3  (citing 15 U.S.C. § 78u-4(a)(6), and holding "where there is a settlement, *the court must approve* the

4  actual fees paid" and the "actual fees paid *will be subject to close judicial scrutiny* based on counsel's

5  actual work done and results achieved") (emphasis added). The cases cited by Block & Leviton

6  likewise recognize that "the PSLRA affirmatively command[s] the court to remain involved in

7  approving lead counsel and lead counsel's fees" and that, "under the PSLRA courts must still play

8  the *central role* in making fee awards." *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 916-

9  17 (N.D. Cal. 2005) (discussing *Cendant II*) (emphasis added) (citations omitted).[5]

10        In discharging this ultimate authority, district courts may choose *not* to defer to lead plaintiff/

11  lead counsel's fee allocation where the lead plaintiff/lead counsel did not undertake the analysis

12  required by the Ninth Circuit and did not consider the relative efforts and contributions of counsel.

13  *FPI/Agretech*, 105 F.3d at 473 (courts may reject a proposed fee allocation "whenever there is good

14  cause to do so," and good cause exists where an allocation is disproportional "to the benefits that

15  attorney conferred upon the class" or where it "does not accurately reflect the amount of work

16  performed by the various attorneys") (citations omitted); *HPL*, 366 F. Supp. 2d at 917 ("[E]ven if the

17  PSLRA requires deference to lead plaintiff's negotiated fee arrangement with lead counsel, no

18  deference is owed here. Furthermore, even when deference is owed, lead plaintiff's deal with counsel

19

20  [4]    *See also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Litig.*, 914 F.3d
21  623, 641 (9th Cir. 2019) ("Although Rule 23 permits an award of fees when authorized by law or the
    parties' agreement, courts 'share an *independent obligation* to ensure that the award, like the
22  settlement itself, is reasonable, even if the parties have already agreed to an amount.'") (citations
    omitted and emphasis added). Courts retain ultimate authority because, "[d]uring the fee-setting stage
23  of common fund class action suits [ ], [p]laintiffs' counsel, otherwise a fiduciary for the class, …
    become[s] a claimant against the fund created for the benefit of the class," with the result that "the
24  district court must assume the role of fiduciary for the class plaintiffs … [and] act with a jealous
    regard to the rights of those who are interested in the fund in determining what a proper fee award is."
25  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (citations and internal
26  quotations omitted).

27  [5]    Block & Leviton makes much ado about *Cendant II*. Yet the *Cendant II* court explicitly held
    that "[s]ecurities class actions are still class actions" and "courts would be remiss if they abdicated
28  all responsibility to the lead plaintiffs." 404 F.3d at 198.

1    must still square with objectively reasonable fees and expenses."); *Flanagan*, 814 F.3d at 659 (in the

2    PSLRA context, stating that, "even when the presumption of correctness [of a lead counsel's fee

3    allocation] applies, it may be refuted through a prima facie showing that the proposed fee is either

4    procedurally improper, because it was clearly excessive in light of the actual contributions and

5    reasonable expectations of non-lead counsel").[6] In this case, the Court should not defer solely to

6    Trigon/Block & Leviton's fee allocation proposal, for multiple reasons.

7    First, the Court appointed *two* Co-Lead Counsel, Block & Leviton and HGT Law, both of

8    whom are entitled to equal deference. Dkt. No. 213, at 9. Although Block & Leviton once again rails

9    against the Court's decision (Opp. at 12-13), Block & Leviton cannot relitigate a matter that the Court

10   clearly decided, and then declined to reconsider. Dkt. No. 216. Under the Co-Lead Counsel structure,

11   Block & Leviton was required to act cooperatively with HGT Law, including with respect to the

12   allocation of fees.[7] Block & Leviton clearly has not done so.

13   Second, Block & Leviton should be estopped from allocating the fee award in a manner

14   contrary to what it represented to the Court. In support of the application for an award of attorneys'

15   fees, Mr. Block argued before the Court that the request was reasonable because it "*doesn't make us*

16   *whole*" and "*it doesn't get us all to a hundred percent.*" Ta Reply Decl. Ex. 18 at 10:21-24 (emphasis

17   added). The Court granted the fee application, based in part on that material representation. Now,

18   however, Block & Leviton proposes to allocate the fee award in a manner entirely contrary to its

19   representation to the Court, such that Block & Leviton and Robbins Geller would *both* receive a

20   *premium* on their lodestar, while HGT Law and the other members of the HGT Group would receive

21

22   _____

     [6]    *See also Keller v. NCAA*, 2015 U.S. Dist. LEXIS 166546, at *29 (N.D. Cal. Dec. 10, 2015)

23   ("If the plaintiffs seeking fees in a class action settlement jointly propose an allocation of those fees
     among co-counsel, a court should consider 'the relative efforts of, and benefits conferred upon the

24   class by, co-counsel' when deciding whether to accept the proposal.") (citation omitted).

     [7]    Block & Leviton surely understands this basic principle. During the litigation, Mr. Block

25   insisted that Mr. Ta "cannot" engage with Defendants on discovery matters "without first either
     informing [Mr. Block or his partner]" because Co-Lead Counsel must "***speak with one voice.***" Dkt.

26   No. 271 at 8:9-20 (emphasis added). While Block & Leviton is wrong to suggest that HGT Law
     excluded it from the discovery process (discussed further *infra*), Mr. Block is right that Co-Lead

27   Counsel must speak with "one voice." Yet Block & Leviton did the exact opposite when it allocated

28   and *disbursed* attorneys' fees over the strenuous objection of Co-Lead Counsel HGT Law.

a drastic *discount* of their combined lodestar. If the Court approves Block & Leviton's fee allocation proposal, the Court would be rewarding Block & Leviton for misleading the Court.

Third, in light of Block & Leviton's belated disclosure of the Side Agreement (*see infra*, Argument Section II), it is now clear that Block & Leviton/Trigon did not, as required in the Ninth Circuit, allocate fees based on the relative efforts and contributions of counsel. *FPI/Agretech*, 105 F.3d at 473. Rather, Block & Leviton attempted to deceive HGT Law by setting the two Co-Lead Counsel's allocations at a low 25% of the fee award, so that a larger portion (50%) could be allocated to Robbins Geller, with the intention that a portion of this would be kicked back to Block & Leviton under the Side Agreement. The Court should reject such a clearly fraudulent fee allocation. *See HPL*, 366 F. Supp. 2d at 917 ("[E]ven when deference is owed, lead plaintiff's deal with counsel must still square with objectively reasonable fees and expenses."); *Flanagan*, 814 F.3d at 659 (lead counsel's allocation "may be refuted through a prima facie showing that the proposed fee is [ ] *procedurally improper*, because the lead plaintiff [ ] breached fiduciary duties by proposing an allocation motivated by an interest other than the best interest of the class") (emphasis added).

Fourth, Block & Leviton claims that its fee allocation is justified because HGT Law was "disruptive" in seeking to pursue discovery in the lead-up to the Second Mediation. Opp. at 8, 14. This claim is ludicrous. HGT Law was simply advancing the litigation and pressing discovery for the benefit of the Class. In contrast, Lead Plaintiff Trigon and Block & Leviton were reluctant to participate because of two potential vulnerabilities concerning Trigon's adequacy as a Lead Plaintiff. Specifically, Defendants propounded discovery regarding Trigon's statement on its website that "[d]igital currencies are NOT considered securities and are NOT subject to the same regulatory requirements as SEC-registered securities, exchange traded funds, or similar investment vehicles." Ta Reply Decl. Ex. 20, Req. 35. This was exactly the opposite of what the Lead Plaintiff was required to argue in the Tezos litigation. In addition, Defendants sought to take discovery of the relationship between Trigon and a certain opprobrious individual, James Gino Salerno. *Id.*, Reqs. 42 to 44.

As a result, Trigon/Block & Leviton refused to press discovery leading up to the Second Mediation. Indeed, as the Tezos Foundation's counsel stated during a call on September 16, 2019,

8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

1  Defendants did *not* require that discovery be suspended pending the Second Mediation; rather, *Mr.*

2  *Block* made that suggestion. Ta Reply Decl. ¶ 7. Thus, Trigon's purported threat to remove HGT Law

3  as Co-Lead Counsel or to withdraw as Lead Plaintiff (Opp. at 14) was motivated not by any

4  "disruptive" behavior, but by Trigon's reluctance to participate in further discovery. Ta Reply Decl.

5  ¶ 8. In any event, Plaintiffs and Defendants ultimately agreed that the parties could continue to serve

6  discovery requests, and that these requests did not require responses unless the Second Mediation

7  failed. It was HGT Law who drafted and served these discovery requests. Ta Reply Decl. Ex. 21.

8  Block & Leviton also contends that it "tried to raise the subject of sharing work and fees with

9  Robbins Geller," and that HGT Law did not cooperate. Opp. at 6. This narrative is entirely false. HGT

10  Law raised the subject of cooperation soon after the Court indicated it would appoint Block & Leviton

11  as Co-Lead Counsel, but it was Block & Leviton who stated that the discussion was "premature,"

12  citing (without explanation) the involvement of Robbins Geller. Opening Br. at 11 (citing Ta Decl.

13  ¶ 26). Block & Leviton thereafter proceeded to evade HGT Law's questions about the involvement

14  of Robbins Geller. *Id.* at 12 (citing Ta Decl. ¶ 29). Thus, far from trying to raise the subject of Robbins

15  Geller's involvement, Block & Leviton affirmatively avoided discussing the subject in order to

16  advance Robbins Geller's interests without having to disclose their Side Agreement.

17  **II.      BLOCK & LEVITON FAILED TO DISCLOSE THE SIDE AGREEMENT, AND THE**
18  **TRUE FEE ALLOCATION UNDER THAT SIDE AGREEMENT, TO THE COURT**
   **AND TO CO-LEAD COUNSEL**

19  Block & Leviton next expends considerable effort arguing that it conducted itself forthrightly

20  at all times because everyone was purportedly aware of the "cooperation" between Block & Leviton

21  and Robbins Geller. Opp. at 15-18. This is pure misdirection. No one disputes that there was

22  "cooperation" between Block & Leviton and Robbins Geller, which was obvious from Block &

23  Leviton's numerous efforts to advance Robbins Geller's interests. Opening Br. at 11-12. However,

24  the central issue is that Block & Leviton failed to disclose the *Side Agreement*, and the true allocation

25  of fees under that Side Agreement. Block & Leviton concedes that it did "not disclose [ ] to the Court

26  or the Class [ ] the precise nature of the allocation" under the Side Agreement. Opp. at 16. However,

27  this information was materially relevant to the Court, and to Co-Lead Counsel.

28

9

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

As discussed *supra*, it was material for the Court to know, when Mr. Block represented to the Court that a 33% fee award "*doesn't make us whole*" and "*doesn't get us all to a hundred percent*," that Block & Leviton already had an agreement to allocate 50% of this fee award to Robbins Geller (representing an approximately 81% premium to its and its co-counsel's combined lodestar ). Ta Reply Decl. Ex. 18 at 10:21-24. It was just as material for the Court to know that a portion of this 50% allocation would be kicked back to Block & Leviton under the Side Agreement.[8] Block & Leviton argues that Rules 23(h) and 54(d)(2) do not require that fee splits be disclosed unless a Court so orders (Opp. at 16-17). However, once Mr. Block represented to the Court that the fee award would not make Plaintiffs' counsel "*whole*," he came under an obligation to disclose *all* facts material to this representation – including the intention to allocate both Block & Leviton and Robbins Geller a substantial premium to their lodestar, and the kickback arrangements under the Side Agreement.[9]

Also, it was of material importance to Co-Lead Counsel HGT Law to know of the existence of the Side Agreement, because the HGT Group would not have submitted a joint fee application and would not have allowed their lodestar and contributions to be used by the members of the Block Group to obtain a 33% fee award and enrich themselves. Here, Block & Leviton affirmatively hid the Side Agreement from HGT Law in an attempt to deceive it into accepting only 25% of the fee award.[10]

Block & Leviton also makes the claim that it "tried to disclose more information about the fee allocation and the [HGT] Group demanded it be removed." Opp. at 17. This argument is spurious. Block & Leviton refers to the fact that, during the drafting of the Settlement Agreement with Defendants, Robbins Geller and Block & Leviton sought to insert a provision allocating 50% of the

---

[8]     *Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*, 2018 U.S. Dist. LEXIS 111409, at *392 (D. Mass. June 28, 2018) ("As Lead Counsel here, Labaton had a legal and ethical duty to provide the Court with all information it needed to make an informed decision as to the award of attorneys' fees out of the State Street settlement fund.").

[9]     *Kimball v. Pacific Gas & Electric Co.*, 220 Cal. 203, 219 (1934) (once someone speaks, "either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated").

[10]     Block & Leviton argues that HGT Law knew of Block & Leviton's fee allocation intentions, based on a purported discussion on November 22, 2019 to split fees equally between HGT Law and Block & Leviton/Hagens Berman. Opp. at 8-9, 17. This is false. *See* Ta Reply Decl. ¶¶ 9-10.

1   fee award to Robbins Geller, but that this was rejected by HGT Law. HGT Law objected to the

2   inclusion of this provision because HGT Law *did not agree* to allocate 50% to Robbins Geller, and

3   stated that Robbins Geller's allocation proposal "*needs to be discussed.*" Ta Decl. ¶¶ 31-32 and Ex.

4   13 (emphasis added). Thereafter, Block & Leviton/Robbins Geller withdrew the proposal because

5   there was *no agreement*, not because Plaintiffs' counsel wanted less disclosure. If Block & Leviton

6   truly wished to disclose the proposal to allocate 50% to Robbins Geller, as it now claims, it had every

7   opportunity to do so in the *attorneys' fee application* submitted to the Court, as opposed to obliquely

8   in the text of a *Settlement Agreement* with Defendants. As the HGT Group has made clear in this

9   Motion, Block & Leviton should have disclosed its proposed fee allocations in the fee application.

10  **III.     THE CONTRIBUTIONS OF THE HGT GROUP VASTLY OUTWEIGH THE
            CONTRIBUTIONS OF BLOCK & LEVITON AND ROBBINS GELLER**

11

12          Block & Leviton next argues that it was the *State Action* which drove the Settlement, and that

13  the HGT Group overstates its contributions to the litigation and the Settlement. None of these

14  arguments is grounded in fact.

15          With respect to whether the State Action drove the Settlement, the Court need look no further

16  than Defendants' own contemporaneous arguments. On June 10, 2019, Defendants filed a motion in

17  the State Action arguing that "the Federal Action is far more advanced than this action. There, all

18  pleading challenges have been resolved, all defendants served, and discovery is well underway. In

19  contrast, Baker only recently filed a second amended complaint and his Complaint has not yet

20  survived the demurrers that defendants in this action are preparing in response to the facially defective

21  Complaint." Ta Decl. Ex. 8. Defendants also telegraphed grave concerns as to the adequacy of the

22  State Action plaintiff, Baker, and his counsel, the Taylor-Copeland firm.[11] Then, on August 28, 2019,

23  just three months before the Second Mediation, the California Superior Court held that it did not have

24  personal jurisdiction over the Tezos Foundation – the most critical Defendant and the Defendant who

25  is paying the Settlement. Ta Decl. Ex. 10. As a result, Defendants argued at the Second Mediation

26

27  ───────────────
    [11]    Defendants argued that "Baker has a close personal friendship with his counsel, James Taylor-
    Copeland, who apparently served as a groomsman in Baker's wedding. Baker's suit is intended to
28  benefit his groomsman-attorney, not the putative class." *Id.*

───────────────
11

that the State Action was essentially over, because the State Action plaintiff could not proceed in good faith to certify a class where (unlike in the Federal Action) the most important Defendant was absent.[12] Unsurprisingly, *because the paying Defendant, Tezos Foundation, was not even a party to the State Action*, the Settlement was approved in the Federal Action, not the State Action.

Thus, given the multiple hurdles faced by the State Action, the Second Mediation and the Settlement provided a *lifeline* for the State Action plaintiff and his counsel. Defendants did not need to pay a "premium" to settle the State Action, because a settlement of the Federal Action would have barred further prosecution of the State Action. Under these circumstances, a 50% allocation of the fee award to Robins Geller is unjustified. *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *82-83 (C.D. Cal. June 10, 2005) (declining to award fees to law firm, MMK, for work it performed in a parallel state court securities action that was "dismissed after numerous unfavorable rulings and no recovery was obtained on behalf of the class").[13] Indeed, by litigating the futile State Action, Baker and his counsel may have *harmed* the interests of the Class, by depleting assets of Defendants that could have been used to fund the Settlement. *Id.* at *83 (counsel's "efforts in the State Court Action had a harmful effect on the class, in that the adverse rulings against MMK in the state court complicated litigation and wasted resources as various defendants expended significant amounts of money litigating the State Court Action for over a year.… The result of the State Court Action was less funds available to compensate the class.").

Block & Leviton further argues that, under the Settlement, Defendants settled both the Federal and State Actions to achieve "global peace," and that the Defendants' repeated attempts to stay the State Action demonstrates its importance. Opp. at 21-22. However, none of this is remarkable. Defendants did not want to incur litigation expense fighting a duplicative State Action, which asserted

---

[12]    As discussed in the Opening Brief, the Court may review the mediation submissions of Defendants without violating any mediation privilege. Opening Br. at 19, n.11. Block & Leviton has not opposed the Court's reference to the mediation submissions.

[13]    *See also In re STEC Sec. Litig.*, 2013 U.S. Dist. LEXIS 200219, at *22 (C.D. Cal. May 23, 2013) (in approving fees in a federal securities class action, stating that the "Court finds that awarding fees for BLBG's work relating to the State Court Action is unreasonable because the State Court Action did not serve to benefit the Settlement or Class Members").

exactly the same causes of action as the Federal Action, on behalf of the same Class. Block & Leviton also asserts that the Settlement was only achieved because Defendants feared the "skill of the Block/Robbins Group" and the "threat they posed to Defendants." Opp. at 22. However, if this were true, Defendants would have settled the State Action. Defendants did not. Defendants did not even invite the State Action plaintiff to the First Mediation. Furthermore, "skill" and "threat" were clearly absent from the State Action, because the Block Group were unable to even establish personal jurisdiction over Defendant Tezos Foundation, effectively ending the State Action at the threshold.

With respect to the HGT Group's contributions, Block & Leviton concedes that the HGT Group prevailed on the motions to dismiss filed by the Tezos Foundation and the Breitmans, thereby conceding that the Settlement would not have been possible but for the HGT Group's efforts. Opp. at 19. However, Block & Leviton argues the HGT Group expended efforts litigating various matters purportedly amounting to "thousands" of "valueless" hours. Opp. at 20. These arguments are baseless.

For example, Block & Leviton takes issue with the fact that the HGT Group conducted a First Mediation without including the State Action plaintiff. Opp. at 20. However, that was because both then Lead Plaintiff Anvari and *Defendants* agreed that it was not essential to include the State Action plaintiff to fully and finally resolve all claims in *both* cases. Block & Leviton also argue that the HGT Group expended effort "unsuccessfully seeking to withdraw" the Lead Plaintiff. *Id.* However, that was precisely what the HGT Group was required to do once the Lead Plaintiff sought to withdraw – *i.e.*, bring the matter promptly to the Court's attention and present substitute plaintiffs. Block & Leviton also question the HGT Group's opposition to Defendants' efforts to depose former Lead Plaintiff Anvari regarding the Contribution Terms, a document Defendants argued barred class claims. *Id.* This reveals Block & Leviton's lack of understanding of the central issues in the case, given that they were at that time treading water in the State Action. The HGT Group vigorously contested the deposition not because of any concerns about the Lead Plaintiff's notice, but to underscore for the Court that actual notice of the Contribution Terms was irrelevant, given that those terms were never incorporated into the contract for the Tezos ICO. This strategy was *successful*. At the September 6,

1  2018 initial case management conference, the Court agreed with the Lead Plaintiff that Defendants'

2  *forum non conveniens* arguments, based on the Contribution Terms, would ultimately be unsuccessful.

3          Putting aside the merits of the HGT Group's work in litigating the above matters, they took

4  up only a fraction of the total time expended on the case. Block & Leviton cannot challenge the

5  thousands of hours of work that the HGT Group performed in preparing the consolidated complaint,

6  opposing Defendants' motions to dismiss, serving and responding to discovery requests, issuing

7  subpoenas to third parties, reviewing documents, preparing witnesses for deposition, interviewing

8  experts, preparing for and attending the First Mediation, and preparing and filing a motion for class

9  certification. Nearly all of these tasks were performed by the HGT Group *before* Block & Leviton

10  joined the Federal Action, and undoubtedly benefited the Class. Opening Br. at 4-6.

11          Ultimately, for all their nit-picking of the HGT Group's work, Block & Leviton ignores the

12  elephant in the room – *i.e.*, how Block & Leviton can possibly justify allocating *50%* to Robbins

13  Geller, *twice* the 25% proposed for the HGT Group, when Robbins Geller litigated the fruitless State

14  Action, and when the HGT Group's lodestar is *2.4 times* the lodestar submitted by Robbins Geller.

15  **IV.     THE   HGT   GROUP'S   MOTION   IS   TIMELY   AND   THE   COURT   HAS**
16  **         JURISDICTION**

17          Block & Leviton's final argument is that the Motion is untimely under Rule 54(d)(2)(B).

18  However, that rule applies only to a motion for an initial award of attorneys' fees, not to motions for

19  the allocation of fees *already* awarded by a Court. *See*, *e.g.*, *Clear-View Techs., Inc. v. Rasnick*, 2015

20  U.S. Dist. LEXIS 191672, at *11-12 (N.D. Cal. Dec. 18, 2015) (because the initial fee request was

21  timely, the augmentation of a fee request after the 14-day period was proper). Regardless, "the

22  fourteen-day deadline of Rule 54 is not a fatal jurisdictional deadline." *Tancredi v. Metro. Life Ins.*

23  *Co.*, 378 F.3d 220, 227 (2d Cir. 2004). In fact, it is well-settled that courts can settle a fee dispute

24  "years after the entry of a judgment on the merits." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963,

25  968 (9th Cir. 2014); s*ee also Ralston v. Mort. Inv'rs Grp., Inc.*, 2015 U.S. Dist. LEXIS 112623, at

26  *14-15 (N.D. Cal. Aug. 25, 2015) (deciding a motion to finalize attorneys' fees in 2015 after the court

27  granted final approval, awarded attorneys' fees, and entered judgment in 2013).

28

14

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

As Block & Leviton recognizes (Opp. at 11-12), the relevant inquiry is not timeliness, but whether a court retains jurisdiction, which it does when the dismissal order "incorporate[s] the terms of the settlement agreement or expressly retain[s] jurisdiction." *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1099 (9th Cir. 2016). There is no question a court retains express jurisdiction when the "parties have provided for [ ] continuing jurisdiction." *Vasquez v. Jim Aartman, Inc.*, 2005 U.S. Dist. LEXIS 49003, at *13 (E.D. Cal. Aug. 1, 2005) (jurisdiction over fee dispute where settlement stated "[t]he Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement *and all orders and judgments entered in connection therewith*") (emphasis in original). Here, the Court's fee order states "the Stipulation [of Settlement]…[is] incorporated." Dkt. No. 262, ¶ 5, and the Stipulation in turn provides:

- Paragraph 6.2: "The Court shall have and retain exclusive jurisdiction over the Settlement Fund, which shall be applied as follows…(c) to pay attorneys' fees and expenses of Federal Lead Counsel and State Lead Counsel (the 'Fee and Expense Award')."

- Paragraph 9.17: "The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation *and matters related to the settlement*." (emphasis added).

Dkt. No. 246-1. In addition, under the Court's final Judgment, the Court "retains continuing jurisdiction over: (a) implementation of [the] Settlement and any award or distribution of the Settlement Fund… (b) disposition of the Settlement Fund; and (c) hearing and determining applications for attorneys' fees, expenses, and interest in the Litigations." Judgment, Dkt. No. 263, ¶ 15. There is simply no credible challenge to the Court's express jurisdiction here.[14]

## CONCLUSION

For the reasons set forth above, and in the Opening Brief, HGT Law respectfully requests that the Court grant this Motion.

---

[14] Additionally, contrary to Block's erroneous argument, the Court may exercise its ancillary jurisdiction, which rests "on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010). As discussed, the Court has expressly retained jurisdiction to resolve this matter under the second factor. Also, because there are no related lawsuits pending in another forum, the entirety of the dispute can be settled in this Court.

15

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF
MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES
NO. 3:17-CV-06779-RS

1   Date: October 14, 2020                    Respectfully Submitted,

2                                             HUNG G. TA, ESQ. PLLC

3                                             By:  _s/ Hung G. Ta_____

4                                                  Hung G. Ta
                                                   JooYun Kim
5                                                  Angus Ni
                                                   250 Park Avenue, 7th Floor
6                                                  New York, New York 10177
                                                   Tel: 646-453-7288
7                                                  hta@hgtlaw.com
8                                                  jooyun@hgtlaw.com

9                                             *Co-Lead Counsel and Counsel to Plaintiffs'*
                                              *Pumaro LLC, Artiom Frunze, Hayden Hsiung,*
10                                            *and Gijs Matser*

11                                                 Enoch H. Liang
12                                                 LTL ATTORNEYS LLP
                                                   601 Gateway Boulevard, Suite 1010
13                                                 South San Francisco, California 94080
                                                   Tel: 650-422-2130
14                                                 enoch.liang@ltlattorneys.com

15
                                                   James M. Lee
16                                                 Caleb H. Liang
                                                   LTL ATTORNEYS LLP
17                                                 300 S. Grand Ave., 14th Floor
                                                   Los Angeles, California 90071
18                                                 Tel: 213-612-8900
                                                   james.lee@ltlattorneys.com
19                                                 caleb.liang@ltlattorneys.com

20
                                                   William R. Restis
21                                                 THE RESTIS LAW FIRM, P.C.
                                                   402 West Broadway, Suite 1520
22                                                 San Diego, California 92101
                                                   Tel: 619.270.8383
23                                                 william@restislaw.com

24
                                                   Joseph J. DePalma
25                                                 Bruce D. Greenberg
                                                   Jeremy Nash
26                                                 LITE DEPALMA GREENBERG, LLC
                                                   570 Broad Street, Suite 1201
27                                                 Newark, NJ 07102
                                                   Tel: (973) 623-3000
28

1

jdepalma@litedepalma.com
bgreenberg@litedepalma.com
jnash@litedepalma.com

2

3

*Additional Counsel to Plaintiffs*
*Pumaro LLC, Artiom Frunze,*
*Hayden Hsiung, and Gijs Matser*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17