**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Before The Honorable Richard Seeborg, Judge

IN RE TEZOS SECURITIES         )   **NO. C 17-06779 RS**
LITIGATION                      )
_____)

Thursday, August 27, 2020

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For the Class and Plaintiff Trigon Trading Pty. Ltd.:
              BLOCK & LEVITON LLP
              260 Franklin Street, Suite 1860
              Boston, Massachusetts 02110
      BY: **JEFFREY C. BLOCK, ATTORNEY AT LAW**
          **JACOB WALKER, ATTORNEY AT LAW**

For Plaintiff Trigon Trading Pty. Ltd.:
              HAGENS BERMAN SOBOL SHAPIRO LLP
              715 Hearst Avenue, Suite 202
              Berkeley, California 94710
      BY: **DANIELLE SMITH, ATTORNEY AT LAW**

For the Class and Plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Matser:
              HUNG G. TA, ESQ. PLLC
              250 Park Avenue, Seventh Floor
              New York, New York 10177
      BY: **HUNG G. TA, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED REMOTELY BY:  ANA M. DUB, CSR NO. 7445
                    RMR, RDR, CRR, CCRR, CRG, CCG
                    OFFICIAL UNITED STATES REPORTER

```
 1   APPEARANCES:  (CONTINUED)

 2   For Plaintiffs Pumaro, LLC, Artiom Frunze, Hayden Hsiung, and
     Gijs Matser and the Class:
 3                       LTL Attorneys LLP
                         300 South Grand Avenue, 14th Floor
 4                       Los Angeles, California 90071-3124
                   BY:   CALEB H. LIANG, ATTORNEY AT LAW
 5
     For the Class and Plaintiff Pumaro, LLC:
 6                       THE RESTIS LAW FIRM, P.C.
                         402 W. Broadway, Suite 1520
 7                       San Diego, California 92101
                   BY:   WILLIAM R. RESTIS, ATTORNEY AT LAW
 8
     For State Court Plaintiff Andrew Baker:
 9                       ROBBINS, GELLER, RUDMAN & DOWD LLP
                         655 West Broadway, Suite 1900
10                       San Diego, California 92101
                   BY:   LUCAS F. OLTS, ATTORNEY AT LAW
11
                         TAYLOR-COPELAND LAW
12                       501 W. Broadway, Suite 800
                         San Diego, California 92101
13                 BY:   JAMES Q. TAYLOR-COPELAND
                         ATTORNEY AT LAW
14
     For Defendant Tezos Foundation:
15                       DAVIS, POLK & WARDWELL LLP
                         1600 El Camino Real
16                       Menlo Park, California 94025
                   BY:   NEAL A. POTISCHMAN, ATTORNEY AT LAW
17
                         GOODWIN PROCTER LLP
18                       Three Embarcadero Center, 28th Floor
                         San Francisco, California 94111
19                 BY:   NICHOLAS A. REIDER, ATTORNEY AT LAW

20   For Defendants Arthur and Kathleen Breitman and Dynamic Ledger
     Solutions:
21                       BAKER MARQUART LLP
                         777 S. Figueroa Street, Suite 2850
22                       Los Angeles, California 90017
                   BY:   BRIAN E. KLEIN, ATTORNEY AT LAW
23                 BY:   SCOTT M. MALZAHN, ATTORNEY AT LAW

24          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant Dynamic Ledger Solutions:
                              COOLEY GODWARD
 3                            375 Hanover Street
                              Palo Alto, California 94304
 4                       BY:  JESSICA VALENZUELA SANTAMARIA
                              ATTORNEY AT LAW
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Thursday - August 27, 2020**                                              **1:34 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |

4    **THE CLERK:** Calling 17-6779, In Re Tezos Securities
5    Litigation.
6        Counsel, please state your appearances. Start with the
7    plaintiff first.
8        **MR. BLOCK:** Good afternoon, Your Honor.
9    Jeffrey Block, Block & Leviton, on behalf of Trigon Trading and
10   the class.
11       **THE COURT:** Good afternoon.
12       **MR. WALKER:** Jacob Walker, also of Block & Leviton,
13   the same.
14       **THE COURT:** Good afternoon.
15       **MR. TA:** Good afternoon, Your Honor. Hung Ta from
16   HGT Law on behalf of the class and also on behalf of the named
17   plaintiffs Pumaro LLC, Artiom Frunze, Gijs Matser, and Hayden
18   Hsiung.
19       **THE COURT:** Good afternoon.
20       **MR. RESTIS:** Good afternoon, Your Honor. William
21   Restis on behalf of the settlement class and Pumaro LLC.
22       **THE COURT:** Good afternoon.
23       **MR. LIANG:** Good afternoon, Your Honor. Caleb Liang
24   of LTL Attorneys LLP, also on behalf of plaintiffs.
25       **THE COURT:** Good afternoon.

1    Anyone else wish to make their appearance on the plaintiff
2    side?
3         **MS. SMITH:**  Yes.  Good afternoon, Your Honor.  This is
4    Danielle Smith from Hagens, Berman, Sobol & Shapiro on behalf
5    of plaintiffs.
6         **THE COURT:**  Good afternoon.
7         **MR. OLTS:**  Good afternoon, Your Honor.  Lucas Olts
8    from Robbins Geller Rudman & Dowd on behalf of Andrew Baker,
9    the lead plaintiff in the state court action.
10        **THE COURT:**  Okay.  Good afternoon.
11        **MR. TAYLOR-COPELAND:**  Good afternoon, Your Honor.
12   James Taylor-Copeland on behalf of state plaintiff Baker.
13        **THE COURT:**  Good afternoon.
14     Anybody else on the plaintiff side?
15                      (No response.)
16        **THE COURT:**  Okay.  On the defense side?
17        **MR. POTISCHMAN:**  Good afternoon, Your Honor.  Neal
18   Potischman on behalf of defendant Tezos Foundation.
19        **THE COURT:**  Good afternoon.
20        **MR. REIDER:**  Good afternoon, Your Honor.  Nick Reider
21   from Goodwin on behalf of the Tezos Foundation.
22        **THE COURT:**  Good afternoon.
23        **MR. KLEIN:**  Good afternoon, Your Honor.  Brian Klein
24   on behalf of Arthur and Kathleen Breitman and their company,
25   DLS.

1    **THE COURT:**  Good afternoon.

2    **MR. MALZAHN:**  Good afternoon, Your Honor.  Scott
3 Malzahn on behalf of the same defendants, Arthur and Kathleen
4 Breitman and DLS.

5    **THE COURT:**  Good afternoon.

6    **MS. SANTAMARIA:**  Good afternoon, Your Honor.  Jessica
7 Valenzuela Santamaria from Cooley on behalf of Dynamic Ledger
8 Solutions.

9    **THE COURT:**  Good afternoon.

10   So everyone is accounted for, I think, from my list here.

11                    (No response.)

12   **THE COURT:**  Okay.  This is the hearing to consider
13 final approval of the disposition in this case, proposed
14 class-action settlement.

15   I covered most of the issues that I thought needed to be
16 covered in the preliminary approval hearing; so I think I can
17 just pick up on a few specifics here.

18   As indicated before, when I preliminarily approved the
19 settlement, I did think that it was certainly within the realm
20 of fair, reasonable, and adequate, and I haven't seen anything
21 that changes that view.  So we don't have to go over all of the
22 particulars of the settlement because, as I said, we've done
23 that and you've provided me with the papers that describe it.

24   Perhaps you can just give me an update on the claims rate,
25 if you will.  There was some discussion about what the

1    expectation was, what Epiq projected to be the case, your
2    claims administrator, but I just wanted to see where things did
3    stand.  I mean, what's the current status?
4        **MR. BLOCK:**  Certainly, Your Honor.  Jeffrey Block for
5    plaintiffs.
6        So as of yesterday, we received 1,445 claims, representing
7    about $30 million worth of token.  So that's where we stand
8    right now.
9        As Epiq indicated, usually around the deadline is when
10   they'll get a big onslaught of claims coming in; but to date,
11   that's what we have so far.
12       **THE COURT:**  Okay.  You advised me that there were a
13   small number -- I think 12 if my notes are right -- who
14   requested exclusion, and two of those requests came after the
15   deadline.  How are you proposing to treat the two that came
16   after the deadline?
17       **MR. BLOCK:**  Mr. Block again, Your Honor.
18       We've agreed with defendants that those two late opt-outs
19   can opt out, and we will, I guess, waive that late deadline.
20   So they should be included in the list of class members who are
21   excluded.
22       **THE COURT:**  Okay.  All right.  I know, hopefully, the
23   *cy près* facet of this will be quite small because you'll be
24   able to directly get the settlement funds to the class members.
25   But at the preliminary hearing discussion, I was inquiring as

1  to who the *cy près* recipient would be for, as I say, what we
2  hope will be not a great deal of leftover funds.
3      Have you picked the *cy près* recipient yet?
4          **MR. BLOCK:** Yes, we have, Your Honor.
5      Again, Mr. Block.
6      We agreed to the San Francisco Food Bank, and we actually
7  posted that right on the front page of the website so any class
8  member who went to the website would see who we were
9  recommending.
10         **THE COURT:** Okay.
11         **MR. BLOCK:** Certainly, giving the class some notice.
12         **THE COURT:** Okay. I will approve the settlement. And
13 I think, actually, it's a good settlement. It was cutting-edge
14 litigation, as we all know, and interesting issues that were
15 presented here. And while it didn't go particularly a
16 relatively long distance, it was active, and there was some
17 good lawyering going on on both sides. So I think it's a solid
18 settlement.
19     And I also might mention, the incentive payments to the
20 named plaintiffs, I think those are within the realm of
21 reasonable requests, and so I see no reason why they should not
22 be approved.
23     So the attorneys' fee request in the amount of -- I think
24 it's 8,333,000, I recognize that the lodestar cross-check
25 exceeds it and that this would represent approximately a third

1  of the settlement fund.  And before I ask for some further
2  discussion about it, I will preface that by saying, I do think
3  the lawyering activity was very good here and that the
4  benchmark in common fund cases of 25 percent is not the end of
5  the story here.  I think there was certainly a basis for an
6  award above that amount.
7       But why don't you just tell me, whoever wants to address
8  this, why it should be a full third as opposed to something
9  between the 25 percent and an actual full third of the fund.
10          **MR. BLOCK:**  Thank you.  Again, Your Honor, Mr. Block.
11 I'll address it.
12      I think there are a couple of factors that support the
13 upward adjustment in the one-third.  I think one of the first
14 factors, which you yourself just mentioned, is that this was
15 cutting-edge litigation.  This is one of the very first, I'll
16 call, ICO cases.  I think there was one other one which I think
17 resulted in a settlement in the six-figure range.  So this
18 certainly is the first in a substantial settlement.
19      I think, as Your Honor mentioned, there was fine lawyering
20 here, and I do think there was.  I think when you look at the
21 settlement that we achieved and when you look at that compared
22 to the litigation risks that were in this case, be it the
23 jurisdictional issue that we would have had to face, the issue
24 on the contribution terms, which would have been no small feat
25 when it came to class certification.  And, similarly, there was

1  a significant question about damages.  As we said, you know, if
2  we hit the home run at trial and got everything we wanted, it's
3  150 million.  So the 25 million compared to that -- it's almost
4  17 percent, 16.7 percent -- is a very good settlement.
5       When you look at what's actually happening now, in
6  reality, most of the Tezos tokens that people have received are
7  worth a lot more than what they would get back in bitcoin if
8  they were to rescind.  So the size of the class would be a lot
9  smaller than that $150 million damage number would represent.
10 And that leaves aside the question as to whether they would
11 actually get bitcoin or Ethereum.  If they got Ethereum, it
12 would be different.  But I think the damages are probably a lot
13 smaller.
14      So I think when you look at the litigation risks, the
15 damage issue, the fact that even had we gotten a judgment, we
16 now would have to go to Switzerland to collect against the
17 foundation, which would be no easy task, I think the 25 million
18 is really a terrific settlement.
19      And I think it recognizes that and rewards the lawyers for
20 cutting-edge litigation.  And also, recognizing, when you do
21 the lodestar cross-check, it doesn't make us whole.  So it's
22 not a situation where we're asking for a third and we're going
23 to get a big windfall.  In fact, it doesn't get us all to a
24 hundred percent, but it's close enough.  And I think given
25 those factors, I think that it would support the full one-third

1  request.

2  And also, Your Honor, there were no objectors to the
3  request.

4  **THE COURT:** My recollection in the case is we
5  certainly had, as you alluded to, some active motion practice.

6  The discovery work that was done in the case, remind me
7  how extensive -- what was entailed in that?

8  **MR. BLOCK:** There was a significant amount of
9  discovery, Your Honor. I mean, we had quite a number of
10 documents.

11 There were a lot of skirmishes that were going on in terms
12 of document production from both sides. There were a lot of
13 fights going on over production of documents that were produced
14 to the -- whether they were documents produced to the SEC and
15 whether we would get them. There were a lot of documents that
16 we were trying to seek. I know we did go to the magistrate.

17 I think while we were in the middle of those fights, we
18 agreed to go to a mediation and we agreed to conserve
19 resources, that we would lay down our arms, so to speak, until
20 we got to mediation to see if we could resolve it.

21 And we were also gearing up, with that discovery that we
22 did have, to get ready for depositions.

23 So I think we were about maybe halfway or two-thirds of
24 the way down the road in discovery. And then, of course, we
25 had to file the class cert motion. But there were a lot of --

1    **THE COURT:**  You never did get quite to the deposition
2    stage, then?
3    **MR. BLOCK:**  No.  A few of the named plaintiffs were
4    deposed, but we never got to the point where we were going to
5    depose the defendants.  We were close, but we didn't take any.
6    **THE COURT:**  I know that there are cases all over the
7    map on what ultimately gets awarded.
8    Is there any particular case you would point me to where a
9    third of the common fund was awarded as an attorney's fee where
10   the circuit blessed that?  Is there any Ninth Circuit case you
11   would think is particularly instructive on that score?
12   You're muted.
13   **MR. BLOCK:**  Oh, there we go.  Sorry.
14   I think we cited to two cases where the Ninth Circuit
15   approved a one-third award.  It was the *Mego Financial Corp.*
16   case and the *Pacific Enterprises* case.
17   I can pull up the page numbers in the brief.
18   **THE COURT:**  No, that's all right.
19   **MR. BLOCK:**  So we've got those two cases where the
20   Ninth Circuit affirmed a third.
21   At page 16 of our fee brief, we cited a number of cases
22   within the Ninth Circuit where courts in securities cases have
23   awarded one-third of the settlement fund.
24   A couple of those were *Banc of California*, *Rentech*, and
25   there's a few more.  So there were a number of them.  So it

1  would not -- certainly would not be without precedent or
2  without support for a one-third award.
3      **THE COURT:**  Okay.  Anything any other participant here
4  wants to put on the record?
5      **MR. RESTIS:**  Your Honor, William Restis.
6      I would like to add a little context to this, as someone
7  who is slightly divorced from the issue of fees, not being lead
8  counsel.
9      But as the Court is aware, in the Ninth Circuit,
10 particularly in the *Hammond versus Chrysler* case, the
11 Ninth Circuit has recognized that concrete value that has been
12 provided to the class, even though it's not monetary, can be
13 added to the denominator in determining what the proper fee
14 ratio is.
15     And if the Court recalls, when the complaint was filed in
16 this matter, the Tezos tokens themselves had not been released.
17 In fact, there was a significant portion of the community that
18 thought that the Tezos platform would never launch.  In fact,
19 if you look at the offering documents that were relied upon by
20 the defendants, they claimed they had no legal obligation to
21 actually provide those tokens.  So I think that it is relevant
22 for the Court's consideration to implicitly, not explicitly,
23 value the tokens themselves that were released, that we believe
24 the filing of the lawsuit in this litigation had a significant
25 impetus in making sure that those tokens were released.

1    **THE COURT:**  Thank you.
2         Anything on the defense -- anything that any of the
3    defense counsel want to say?
4                        (No response.)
5         **THE COURT:**  No?  That's the usual way this all shakes
6    out.
7         Okay.  Well, as I say, I have approved the settlement, and
8    I also -- I'm comfortable that the requested attorneys' fee
9    award is appropriate.  I had to give it some thought because it
10   is a significant one.  Whether or not it makes you whole is
11   some discussion for another day.  But it's a substantial award,
12   but I do think it was a somewhat unique case.  It may not be
13   unique anymore because we'll have more and more of them, but it
14   was the first of its kind or one of the first.  And so I think
15   it's appropriate to recognize that in terms of the fee award,
16   even though the case didn't get as far as deposition work and
17   the like.  So there we are.
18        I think you did provide me with a proposed order.  If
19   today is the day that the settlement is finally approved, are
20   there -- have to go back and look -- do we need to fill in
21   various dates in the order?
22        I might ask you to supplement or file again the proposed
23   order reflecting today being the day that the settlement was
24   finally approved.  I haven't gone back and looked in that
25   regard.

1        **MR. BLOCK:** Certainly, Your Honor. It's Mr. Block.

2  I'm looking through a copy of the proposed judgment we

3  submitted.

4        **THE COURT:** Yeah.

5        **MR. BLOCK:** From what I can see, the only date that

6  gets filled in is the date when Your Honor signs it. There are

7  no dates that get submitted in there.

8    On the proposed attorney fee order, we left a bunch of

9  blanks for the amounts, et cetera. So we can certainly -- we

10  can fill both in and submit those to you now with the dates.

11       **THE COURT:** Why don't you go ahead and do that.

12       **MR. BLOCK:** Okay. I'll take care of that.

13       **THE COURT:** Okay. All right. Anything further in

14  this matter today?

15       **MR. BLOCK:** No.

16       **THE COURT:** All right. Thank you very much.

17  Congratulations on resolving it, and we'll see you later.

18       **MR. BLOCK:** Thank you, Your Honor.

19       (Proceedings adjourned at 1:53 p.m.)

20            ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Wednesday, September 23, 2020

*Ana M. Dub*
_____

Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
Official Reporter, U.S. District Court