Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Co-Lead Counsel*

Hung G. Ta (SBN 331458)
JooYun Kim (*pro hac vice*)
**HGT LAW**
250 Park Avenue, 7th Floor
New York, NY 10017
(646) 453-7288 phone
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel*

[Additional counsel listed on signature block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | No. 3:17-cv-06779-RS (Consolidated)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR DISTRIBUTION OF NET SETTLEMENT FUND**<br><br>Hearing Date: May 5, 2022<br>Hearing Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ............................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................. 2

INTRODUCTION ............................................................................................................................... 2

I.   BACKGROUND ..................................................................................................................... 3

    A.   The Court's Approval of the Settlement ................................................................... 3

    B.   Claims Administration ............................................................................................... 3

II.  ARGUMENT ........................................................................................................................... 4

    A.   The Court Should Approve Epiq's Determinations to Accept and Reject Claims ...... 4

    B.   The Court Should Approve the Distribution of the Net Settlement Fund to Authorized Claimants in Accordance with Epiq's Proposed Distribution Plan ............................. 4

CONCLUSION ................................................................................................................................... 6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Trigon Trading Pty. Ltd. ("Trigon" or "Federal Lead Plaintiff"), plaintiffs Pumaro LLC, Artiom Frunze, Hayden Hsiung, and Gijs Matser (collectively, with Trigon, the "Federal Plaintiffs"), and State Litigation Plaintiff Andrew Baker (together with the Federal Plaintiffs ("Plaintiffs") will and do hereby move this Court before the Honorable Richard Seeborg on Thursday, May 5, 2022 at 1:30 p.m. in Courtroom 3 of the United States Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave. San Francisco, California, for entry of the accompanying [Proposed] Order (a) approving the administrative determinations of the Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), concerning the acceptance and rejection of the Claims submitted as recommended in the Declaration of Joseph Mahan in Support of Plaintiffs' Motion for Class Distribution Order ("Epiq Declaration" or "Epiq Decl.") (attached as Exhibit 1), and (b) directing payment of the Net Settlement Fund to the Authorized Claimants (as defined in the Epiq Declaration) (the "Distribution Order").[1]

The motion is unopposed. No Claimants are disputing the Claims Administrator's determinations with respect to their Claims.

Plaintiffs respectfully submit that this unopposed motion may be ruled upon without a hearing. Prompt entry of the Distribution Order will benefit the Class by permitting an earlier distribution of funds to Class Members. Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiffs' Counsel will file the required Post-Distribution Accounting within 21 days after the distribution of the Net Settlement Fund.

This motion is based upon the following memorandum; the accompanying Epiq Declaration, and its exhibits; and any additional information or argument that may be required by the Court. The proposed Distribution Order is attached hereto as Exhibit 2.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the accompanying Epiq Declaration or the Stipulation of Settlement dated March 16, 2020 (ECF No. 246-1) (the "Stipulation").

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should approve the Claims Administrator's administrative determinations to accept or reject Claims submitted herein; and

2. Whether the Court should authorize the distribution of the Net Settlement Fund to Class Members whose Claims have been accepted as valid and approved by the Court, pursuant to the distribution plan proposed by the Claims Administrator.

Plaintiffs, on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their motion to approve the distribution of the proceeds of the Settlement of this securities class action to those Settlement Class Members who submitted claims that have been found eligible by the Claims Administrator and to approve the recommended plan for funds remaining after the initial distribution.

**INTRODUCTION**

On August 28, 2020, the Court approved the Parties' settlement of this Action for $25 million. The Claims Administrator, Epiq, has diligently worked to process and audit the Claims received, allowing rejected Claimants an opportunity to dispute any claims determinations. Epiq has now completed that process, and no Claimants dispute the Claims Administrator's determinations with respect to their Claims. Accordingly, the Net Settlement Fund is now ready to be distributed to Authorized Claimants.

As is standard in securities class actions, the distribution must be approved by the Court following a motion. *See* Stipulation ¶ 6.1. Plaintiffs respectfully ask the Court to approve Epiq's administrative determinations concerning the acceptance and rejection of the Claims submitted and authorize the payment of the Net Settlement Fund to Authorized Claimants.

## I. BACKGROUND

### A. The Court's Approval of the Settlement

Plaintiffs, on behalf of the Settlement Class, agreed to settle all claims asserted in this Action for payment of $25 million. In accordance with the Court's May 1, 2020, Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") (ECF No. 251), Epiq emailed 59,498 E-Notices to potential Settlement Class Members. Epiq Decl. ¶ 5. The Notice informed Settlement Class Members that if they wished to be eligible for a payment from the Settlement, they were required to submit a properly executed Claim Form by October 16, 2020. *Id*. ¶ 8.

On August 28, 2020, the Court approved the Settlement and the proposed Plan of Allocation for the Net Settlement Fund. *See* Judgment Approving Class Action Settlement (the "Judgment") (ECF No. 263).

The Court's Judgment has become Final and the Effective Date of the Settlement has occurred. *See* Stipulation ¶ 8.1. Accordingly, under the terms of the Settlement, the Net Settlement Fund may now be distributed to Authorized Claimants. *See* Stipulation ¶ 6.3.

### B. Claims Administration

All Claims received through March 30, 2022, have now been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation. Epiq has worked with Claimants to help them correct any deficiencies in their Claims. *See* Epiq Decl. ¶¶ 8-28.

As discussed in the Epiq Declaration, if Epiq determined a Claim to be defective or ineligible, a Deficiency Notice was sent by Epiq to the Claimant describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim. *Id*. ¶¶ 17-18. The Deficiency Notices advised the Claimant that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the Deficiency Notice, or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶ 18. An example of the Defiency Notice is attached as Exhibit A to the Epiq Declaration.

Epiq carefully reviewed Claimants' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. Epiq Decl. ¶¶ 17, 19. Consistent with the Stipulation, the Deficiency Notices advised the Claimant of their right, within 20 days after the mailing or e-mailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶ 18, and Exhibit A. No Claimant requested Court review of any rejection of their Claims. *Id*. ¶ 18.

Epiq carefully processed the Claims received and conducted various audits to ensure the accuracy of its processing. *See* Epiq Decl. ¶¶ 20-23. In accordance with the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiffs and the Claims Administrator will prepare and file a Post-Distribution Accounting within 21 days after the Net Settlement Fund is distributed.

**II.    ARGUMENT**

The Net Settlement Fund is ready to be distributed. Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Epiq Declaration and approve the distribution of funds to Authorized Claimants in accordance with the proposed Distrubution Plan set forth in the Epiq Declaration.

**A.    The Court Should Approve Epiq's Determinations to Accept and Reject Claims**

As detailed in Epiq Declaration, Epiq carefully processed and reviewed the Claims received and conducted audits to ensure the accuracy of its work. Epiq Decl. ¶¶ 20-23. Epiq determined that 1,890 claims should be accepted and that 247 claims should be rejected. *Id*. ¶¶ 24, 27. The Epiq Declaration includes a list of all rejected Claims and the reason for their rejection. Epiq Decl. Ex. B-2. Claimants whose claims were rejected by Epiq were provided the opportunity to contest the rejection and request that the Court review the disputed claim, but no Claimants have done so. Epiq Decl. ¶ 18. Accordingly, it is appropriate for the Court to approve Epiq's determinations.

**B.    The Court Should Approve the Distribution of the Net Settlement Fund to Authorized Claimants in Accordance with Epiq's Proposed Distribution Plan**

Plaintiffs also request that the Court authorize the distribution of the Net Settlement Fund to Authorized Claimants in the manner specified in Distribution Plan contained in the Epiq Declaration.

*See* Epiq Decl. ¶ 31. Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payments previously allowed and requested in the Epiq Declaration (¶ 30), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees. Epiq Decl. ¶ 31(a). Epiq will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the fund in accordance with the Plan of Allocation. *Id*. ¶ 31(a)(i). Purusant to the Plan of Allocation, Epiq will eliminate from the distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund is less than $10.00. Such Claimants will not receive any distribution from the Net Settlement Fund and Epiq will send letters to those Authorized Claimants advising them of that fact. *Id*. ¶ 31(a)(ii). After eliminating Claimants who would have received less than $10.00, Epiq will calculate and distribute the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 31(a)(iii). In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notion: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id*. ¶ 31(a)(iv). Epiq will conduct reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks. Epiq Decl. ¶ 31(a)(iv) n.2. Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 2 of the Epiq Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution described below. *Id*. ¶ 31(a)(v).

The proposed Distribution Plan also includes detailed provisions for the distribution of any funds remaining after the Initial Distribution. Specifically, the Distribution Plan provides that, after conducting reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than nine months after the Initial Distribution, Epiq will, if Plaintiffs' Counsel, in consultation with Epiq, determines that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). Epiq Decl. ¶ 31(b). Any amounts remaining in the Net Settlement Fund after the Initial Distribution (the funds for all void stale-dated checks), after paying any additional amounts due to Class Members, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including

1   Epiq's estimated costs of the Second Distribution), and after deducting the payment of any estimated

2   Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all

3   Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and who

4   would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the

5   remaining funds. *Id*.

6   After completion of the Second Distribution, whether by reason of returned funds, tax refunds,

7   interest, uncashed checks, or otherwise, if cost effective, not less than nine months after the Second

8   Distribution, Epiq will conduct a further distribution of the Net Settlement Fund in which, after

9   deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering

10  the Net Settlement Fund, and after the payment of any Taxes, the costs of preparing appropriate tax

11  returns, and any escrow fees, the Net Settlement Fund will be distributed to Authorized Claimants who

12  cashed their Second Distribution checks in an equitable and economic fashion. Epiq Decl. ¶ 31(c)(i).

13  Additional re-distributions after deduction of costs and expenses described above may occur thereafter

14  until Plaintiffs' Counsel, in consultation with Epiq, determines that further re-distribution is not cost-

15  effective. *Id*. If any funds remain in the Net Settlement Fund, the remaining balance, after payment of

16  any unpaid fees or expenses in connection with administering the Net Settlement Fund and after the

17  payment of any estimated taxes, the costs of preparing appropriate tax returns and any escrow fees,

18  will be contributed to the San Francisco Food Bank (d/b/a SF-Marin Food Bank), a non-sectarian,

19  501(c)(3) non-profit organization, subject to Court approval. *Id*. ¶ 31(c)(ii).

## CONCLUSION

21  For the foregoing reasons, Plaintiffs respectfully submit that Plaintiffs' Unopposed Motion for

22  Distribution of Net Settlement Fund should be granted, and the proposed Distribution Order should be

23  entered.

24  Dated: March 30, 2022                    Respectfully submitted,

/s/ Jacob A. Walker
Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110

(617) 398-5600 phone
joel@blockleviton.com
jake@blockleviton.com

*Co-Lead Counsel and Counsel to
Lead Plaintiff Trigon Trading Pty. Ltd.*

/s/ Hung G. Ta
Hung G. Ta, (SBN 331458)
JooYun Kim, *pro hac vice*
**HGT Law**
250 Park Avenue, 7th Floor
New York, NY 10177 (646) 453-7288
hta@hgtlaw.com
jooyun@hgtlaw.com

*Co-Lead Counsel and Counsel to
Plaintiffs Pumaro LLC, Artiom Frunze,
Hayden Hsiung, and Gijs Matser*